**PALADIN LAW, APC**

**BENJAMIN PAVONE, ESQ.**
STATE BAR NUMBER 181826
901 WEST CIVIC CENTER DR., SUITE 200
SANTA ANA, CALIFORNIA 92703
TELEPHONE: 619 224 8885
EMAIL: bpavone@cox.net

<u>ATTORNEYS FOR PLAINTIFFS</u>

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STOP THE MADNESS,** a California Non-Profit Corporation; **CALIFORNIA SOLO AND SMALL-FIRM LAWYERS ("CASTLE")**, a California Non-Profit Corporation; **BENJAMIN LAURENCE PAVONE,**<br><br>　　　　**PLAINTIFFS,**<br>**v.**<br><br>**GEORGE CARDONA;**<br>**LAURA ENDERTON-SPEED;**<br>**PATRICIA GUERRERO;**<br>**ALEX HACKERT;**<br>**ANDREW VASICEK;**<br>**STATE BAR OF CALIFORNIA;**<br>**CALIFORNIA SUPREME COURT;**<br>**AND DOES 1-20,**<br><br>　　　　**DEFENDANTS.** | **CASE NO.: _____**<br><br>**COMPLAINT FOR PROSPECTIVE INJUNCTIVE RELIEF:**<br><br>**I.　VIOLATION OF FEDERAL DUE PROCESS (JUDICIAL BIAS)**<br><br>**II.　VIOLATION OF FEDERAL EQUAL PROTECTION (GENDER DISCRIMINATION)**<br><br>**III. VIOLATION OF FEDERAL EQUAL PROTECTION (SELECTIVE PROSECUTION)**<br><br>**IV. VIOLATION OF FEDERAL PROHIBITION AGAINST EXCESSIVE FINES** |

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................................... 3
II.     JURISDICTION .................................................................................................................... 3
III.    PLAINTIFF PARTIES........................................................................................................... 4
IV.     DEFENDANT PARTIES........................................................................................................ 5
V.      AGENCY ALLEGATIONS ................................................................................................... 6
VI.     ADMINISTRATIVE EXHAUSTION .................................................................................... 6
VII.    STATEMENT OF FACTS...................................................................................................... 7
        A.  PLAINTIFF'S PROFESSIONAL BACKGROUND ...................................................... 7
        B.  EVIDENCE RELATING TO THE STATE BAR DISCIPLINE SYSTEM ..................... 7
                TABLE 1............................................................................................................ 8
        C.  PLAINTIFF'S TWO DISCIPLINE CASES.................................................................. 20
                1. *MARTINEZ* DISCIPLINE CASE ................................................................ 20
                2. *WILLIS* DISCIPLINE CASE ...................................................................... 21
        D. GIRARDI SCANDAL EXPOSES THE SHADOW SYSTEM ........................................ 25
**CAUSES OF ACTION** ................................................................................................................ 29
VIII.   STATE DUE PROCESS (JUDICIAL BIAS) ........................................................................ 30
                TABLE 2........................................................................................................... 34
IX.     STATE EQUAL PROTECTION (GENDER DISCRIMINATION) ...................................... 35
                TABLE 3........................................................................................................... 36
X.      STATE EQUAL PROTECTION (SELECTIVE PROSECUTION) ...................................... 37
XI.     STATE EXCESSIVE FINES.................................................................................................. 38
**DEFENSES & IMMUNITIES**....................................................................................................... 42
XII.    DEFENSES & IMMUNITIES, GENERALLY ...................................................................... 42
XIII.   ELEVENTH AMENDMENT ................................................................................................. 43
XIV.    RES JUDICATA/COLLATERAL ESTOPPEL ...................................................................... 44
XV.     *ROOKER-FELDMAN* DOCTRINE ..................................................................................... 45
XVI.    *YOUNGER* DOCTRINE ...................................................................................................... 47
XVII.   *NOERR-PENNINGTON* IMMUNITY .................................................................................. 47
XVIII.  JUDICIAL IMMUNITY ........................................................................................................ 49
                TABLE 4........................................................................................................... 52
XIX.    QUASI-JUDICIAL IMMUNITY ........................................................................................... 54
XX.     QUALIFIED IMMUNITY ..................................................................................................... 56
XXI.    GOVERNMENT CODE SECTION 818.4 IMMUNITY ........................................................ 57
XXII.   GOVERNMENT CODE SECTION 821.2 IMMUNITY ........................................................ 58
XXIII.  GOVERNMENT CODE SECTION 821.6 IMMUNITY ........................................................ 58
XXIV.   CAUSE SPLITTING............................................................................................................... 61
PRAYER.................................................................................................................................... 62
REQUEST FOR JURY ............................................................................................................. 63

## I.
## INTRODUCTION

1.  **Introduction: the Two State Bar Discipline Systems**.  The State Bar Discipline System ("Discipline System") is, in reality, two legal systems.  One system reflects the ordinary course of a discipline action, from the filing of the NDC, to a Hearing Department trial, to a Review Department appeal, and then the final petition to the California Supreme Court.  This system is putatively governed by the stated rules, such as the State Bar Rules of Procedure and the Rules of Practice (the "Paper System").  However, behind the Paper System is a second system, a shadow legal system ("Shadow System"), the one that actually determines how the Discipline System operates, regardless of, and often in contravention to, the rules in the Paper System.

2.  **The State Bar Shadow System**. The rules of the Shadow System were decided off the record, in non-public places.  These include places like Tom Girardi's private jet, during private luncheons between discipline judges, at private events, or in other non-public venues.  The Shadow System is defined by corruption.  The Shadow System primarily imposes a rule that outcomes in the Discipline System are foregone: the targeted attorney is expected to lose.  Thus, revenue in the form of fines is illegally maximized.  One gender is systematically targeted.  Selective prosecution is the norm, with the targets being solo and small-firm attorneys.  Bribery and favor-trading often influence outcomes.  It is the kind of place where a wealthy, corrupt, celebrity lawyer like Mr. Girardi could thrive, but one where even less high-profile attorneys, like the ones at medium and large firms, can game, bribe, and/or exploit the political advantages of the Shadow System, in order to avoid disciplinary action for their ethical misconduct.  While Mr. Girardi may offer a shocking, singular window into the Shadow System, it ignores the daily mechanisms by which one segment of the attorney population – solo and small-firm attorneys – are targeted and by which another segment, lawyers with political connections to the State Bar, are not.

## II.
## JURISDICTION

3.  **Federal Jurisdiction**.  The Central District of California possesses federal jurisdiction over this action, as it implicates the rights and obligations of a plaintiff whose principal office is located in Orange County, California.  Such a venue is reasonably convenient for defendants who reside or maintain offices throughout California, including in Orange County, Los Angeles County, and San

---

Francisco County.  Title 42 United States Code section 1983 provides that every person who, under color of law, causes another to be deprived of any of their constitution rights or protections under federal law, may be subject to injunctive relief pursuant to a lawsuit in federal district court. Defendants are either located in this district and/or substantial activity related to the gravamen expressed in this case occurred here.  This is a proper venue pursuant to 28 U.S.C. § 1391(b).

4.    **State Bar's Jurisdictional Dispute**.  The State Bar has contended that any court, apart from the California Supreme Court, does not possess jurisdiction to adjudicate civil claims emanating from discipline matters, on the theory that the Supreme Court possesses exclusive jurisdiction over the discipline function.  But that is just the point: the Supreme Court possesses exclusive jurisdiction *to impose discipline*.  The Supreme Court is not an evidentiary court entertaining civil claims: naturally, it does not possess jurisdiction to hear affirmative civil claims at the trial level (which require discovery, evidence, and a trial, and corresponding forms of relief) – none of which the California Supreme Court or any of its advisory courts are permitted to do.  Thus, any objection that a federal district court cannot entertain regular federal constitutional claims, because they are in some way related to a discipline action, is inaccurate.  Federal courts around the nation routinely hear claims asserting federal violations emanating out of state processes; indeed, this was the very purpose of the passage of Section 1983.  The State Bar's objection would only have merit if a litigant sought to impose discipline on an attorney in federal court; in this regard, a case for this purpose would fail on jurisdictional grounds because the California Supreme Court has designated the Hearing Department, and only the Hearing Department, as the proper court to initiate a disciplinary action.  Federal courts do not possess subject matter jurisdiction over state disciplinary matters, in terms of imposing such discipline.  Indeed, not even OCTC can bring a discipline action in federal court.  However, constitutional claims relating to improper practices in the context of a disciplinary action must be prosecuted in regular state or federal court, depending on the claim, as they have been on many occasions.

### III.
### PLAINTIFF PARTIES

5.    **Plaintiff One, Stop the Madness**: Plaintiff "Stop the Madness" is California non-profit corporation, formed in 2025 for the purpose of reforming the State Bar Discipline System, with its principal office located in Santa Ana, Orange County, California.  Stop the Madness generally advances

the interests of attorneys targeted by the State Bar Discipline System and on this basis asserts that it possesses standing to seek injunctive relief on an organizational basis.

6. **Plaintiff Two, Castle**:  Plaintiff "California Solo and Small-Firm Lawyers" (aka "Castle") is a California non-profit corporation, formed in 2022, dedicated to advocating for the interests of solo and small-firm attorneys, especially in terms of their treatment by the State Bar of California.  Solo and small-firm attorneys are uniquely targeted by the State Bar Discipline System as detailed herein.  Its principal office is located in Santa Ana, Orange County, California.  Accordingly, Castle seeks organizational standing to seek injunctive relief on this basis.

7. **Plaintiff Three, Benjamin Pavone:**  Plaintiff Attorney Benjamin Laurence Pavone (Pavone, Plaintiff, undersigned counsel, counsel, or narrated in the first person) is a 30-year civil litigation and trial attorney, presently focused on mass torts and class actions, and has practiced law exclusively as a licensed California attorney.

## IV.
## DEFENDANT PARTIES

8. **Defendant One, George Cardona**.  Defendant George Cardona is the head of the Office of Chief Trial Counsel and is therefore responsible for every State Bar's disciplinary case including *Willis*.  He is sued in his individual and official capacity, inasmuch as it is not clear to Plaintiff which capacity enables Plaintiff to obtain injunctive relief against Cardona.  To the extent the 11th Amendment would grant Cardona, or any of the defendants, immunity in their official capacity, *Gibson v. Berryhill* enjoined the Alabama Board of Optometry in a similar case.

9. **Defendant Two, Defendant Laura Enderton-Speed**.  Defendant Laura Enderton-Speed is the current Executive Director of the State Bar of California and is responsible for its rules, practices, and policies.  She is sued in her individual and official capacity.

10. **Defendant Three, Patricia Guerrero.** Defendant Patricia Guerrero is the current chief justice of the California Supreme Court and is an appropriate person to be restrained in the event of federal intervention as to the *Willis* discipline case.  She is sued in her individual and official capacity.

11. **Defendant Four, Alex Hackert**.  Defendant Alex Hackert is the current OCTC prosecutor in terms of advancing Plaintiff's pending state court disciplinary action in *Willis*.  He is sued in his individual and official capacity.

12. **Defendant Five, Andrew Vasicek**. Defendant Andrew Vasicek is the OCTC prosecutor who filed and tried the disciplinary action in *Willis*. He is sued in his individual and official capacity.

13. **Defendant Six, Defendant State Bar of California**. Defendant State Bar of California, through its "Office of Chief Trial Counsel," is the California state entity that operates the Discipline System.

14. **Defendant Seven, Defendant California Supreme Court**. Defendant California Supreme Court is the California state branch that is responsible for the operation of the Discipline System.

## V.
## AGENCY/EMPLOYMENT

15. **General Agency Allegations**. Plaintiffs are informed and believe, and thereon allege, that each of the defendants, including the fictitiously-named defendants, is responsible in some manner for the claims and obligations sued upon herein.

15. **Agency**. Plaintiffs are informed and believe, and thereon allege, that at all relevant times, unless otherwise alleged, Defendants 1, 2, 4, and 5 are agents of the State Bar and the State Bar is an agent of the California Supreme Court. Defendant Three is an agent of the Supreme Court.

16. **Conspiracy**. Plaintiffs are informed and believe, and thereon allege, that the State Bar, State Bar Court, and California Supreme Court (and their respective employees) conspire to operate the Discipline System in violation of the laws, rules, and constitutional principles of the Paper System, pursuant to the Shadow System.

## VI.
## ADMINISTRATIVE EXHAUSTION

17. **Administrative Compliance: Civil Rights Department**. On or about February 12, 2026, Plaintiff Pavone filed an administrative complaint with the California Department of Civil Rights. On information and belief, Plaintiffs allege that no claim is necessary for a case seeking only injunctive relief.

18. **Administrative Compliance: DGS.** On or about February 17, 2026. Plaintiff Pavone filed a Government Code section 910, *et seq.* claim with the State Bar and with the Department of General Services. On information and belief, Plaintiffs allege that no claim is necessary for a case seeking only injunctive relief.

19. **Administrative Compliance: California Supreme Court.**  On or about March 3, 2026, Plaintiff Pavone filed a government claim with the California Supreme Court.  On information and belief, Plaintiffs allege that no claim is necessary for a case seeking only injunctive relief.

## VII.
## STATEMENT OF FACTS

### A.  Plaintiff Three's Professional Background

16. **Attorney Background**.  Attorney Pavone is a 30th-year civil litigation and trial attorney with a present emphasis on civil rights class actions.  Counsel has litigated approximately 500 cases of many types and varieties, has tried many cases, is a member of every federal court in California, is a graduate of Cornell and UCLA Law, has filed in the United States Supreme Court, and has litigated cases around the state and country.  However, Plaintiff has been continuously investigated, prosecuted, and punished by the Discipline System, since 2019.

### B.  Evidence Relating to the State Bar Discipline System

17. **Structure of Disciplinary System/Merits**.  The State Bar Discipline System is a three-tiered administrative legal system, in which the State Bar of California, through its "Office of Chief Trial Counsel" (aka, prosecutor), brings disciplinary charges against California attorneys by filing charges in the State Bar Court, called a "Notice of Disciplinary Charges."  Having read a vast volume of State Bar disciplinary literature, and communicated with many discipline targets, along with being continuously prosecuted by a system that is consumed by inaccuracy, Plaintiff has developed an undisputed estimate that 30-40% of OCTC's filings are simply unmeritorious.

18. **The State Bar Discipline System: Paper System**.  The "regular" State Bar Discipline System reflects the ordinary course of a discipline action, from the filing of the NDC, to a Hearing Department trial, to a Review Department appeal, and then the final petition to the California Supreme Court.  This system, the Paper System, is governed by the stated rules, such as the ones found in the State Bar Rules of Procedure, the Rules of Practice, and the disciplinary opinions published by the State Bar Court and the California Supreme Court.

19. **The State Bar Discipline System: Shadow System**.  Behind the Paper System is a second system, the Shadow System, which contains an entirely different set of illegal rules, policies, and procedures.  They are unpublished, because they are illegal.  The Shadow System determines how the

Discipline System actually operates, regardless of, and often in contravention to, the Paper System.  The rules of the Shadow System were decided off the record, in non-public places, private meetings, and private venues.  The Shadow System is defined by corruption and illegality: it practices selective prosecution, gender discrimination, and it automates outcomes.  It renders the operation of the Paper System to be a formality, a sham, and causes the associated courts to qualify as federally-prohibited "kangaroo courts."  It illegally prioritizes revenue-generation over protection of the public (which is a distant consideration) in derogation of Business & Professions Code section 6001.1.   Indeed, by virtue of the various forms of illegality that the Shadow System imposes on the attorney population, the Shadow System is itself the true danger to the public, by, for example, all the carnage caused over 30 years as reflected by the Girardi scandal.

20.  **The State Bar Discipline System: Extrajudicial Shadow System**.  The most prominent evidence to support Plaintiffs' belief, and allegations, that the Shadow System operates in an extrajudicial fashion comes from the Halpern report.[1]  As it details, Girardi corrupted employees of the State Bar by cultivating contacts that were outside the scope of their employment at the State Bar.  This is partially detailed in a sampling of 50 extrajudicial contacts, itemized in **Table 1** below.

| No. | STATE BAR TARGET | NATURE OF CONTACT | REP'T PAGE[2] |
|---|---|---|---|
| | | **TABLE 1** | |
| 1 | Dunn, Joseph | Trip to Mongolia with Girardi.[3] | 13 |
| 2 | Dunn, Joseph | Dunn sent OCTC employees to Las Vegas for a group that Girardi supports or is affiliated with. | 20 |
| 3 | Dunn, Joseph | Dunn made offers (without necessarily mentioning Girardi) to various State Bar personnel (including Craig Holden, Luis | 27 |

---

[1]  Exhibit 5.
[2]  White entries refer to the Halpern investigation report dated February 4, 2023.  Orange entries refer to the July 31, 2014 State Bar report by Munger, Tolles, and Olsen.
[3]  For example, there is no scenario where a trip to Mongolia to putatively advise that country about a regulatory system for lawyers is part of the State Bar of California's legitimate business. (*See* Bus. & Prof. Code, § 6001, subd. (b), 6001.1; *Keller v. State Bar* (1990) 496 U.S. 1, 13-14 [expenditures of mandatory dues "necessarily or reasonably incurred for the purpose of regulating the legal profession or improving the quality of legal service available *to the people of the State*."].

| | | TABLE 1 | |
|---|---|---|---|
| No. | STATE BAR TARGET | NATURE OF CONTACT | REP'T PAGE[2] |
| | | Rodriguez, and Jon Streeter) to provide them assistance with professional advancement. | |
| 4 | Dunn, Joseph | Performed as speaker at 2013 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 5 | Dunn, Joseph | Performed as speaker at 2014 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 6 | Dunn, Joseph | During his tenure at the State Bar, Dunn attended lunches with Girardi, including at Morton's and the Jonathan Club. | 26 |
| 7 | Dunn, Joseph | During his tenure at the State Bar, Dunn attended parties hosted by Girardi, including Superbowl and Christmas parties. | 26 |
| 8 | Dunn, Joseph | Dunn's office, by and through his secretary Oehler, was involved in assisting a third-party who wanted to attend one of Girardi's parties. | 26 |
| 9 | Dunn, Joseph | In 2012, Dunn planned to attend the dedication of the "Thomas V. Girardi Chair" at Loyola Law School. | 27 |
| 10 | Dunn, Joseph | In 2013, Dunn was included on Girardi Keese's guest list for an ASCDC (likely the Association of Southern California Defense Counsel) event. | 27 |
| 11 | Dunn, Joseph | GK apparently paid $240,000 to the Law Offices of Joseph Dunn over 2009 and 2010, before Dunn joined the State Bar, thus explaining so much special treatment of Girardi during his tenure | 27 |
| 12 | Dunn, Joseph | Dunn flew on Girardi's private plane before, during, and after his tenure at the State Bar, at least five times while he was Executive Director of the State Bar. | 27 |
| 13 | Dunn, Joseph | Girardi paid for hotel expenses and concert tickets for Dunn in 2012, while Dunn was still working for the State Bar. | 28 |
| 14 | Dunn, Joseph | Dunn asked a GK employee about tickets to a show and the employee confirmed that the tickets had been procured, in conjunction with a suite at the Wynn Hotel. | 28 |
| 15 | Greenberg, Murray | Greenberg used a personal email account to have backchannel communications in relation to a Girardi case. | 4 |
| 16 | Greenberg, Murray | Greenberg met with Girardi at Girardi Keese's ("GK") offices, for no legitimate reason related to State Bar business. | 4 |
| 17 | Greenberg, Murray | Greenberg attended parties hosted by Girardi, outside of State Bar business. | 4 |
| 18 | Greenberg, Murray | Greenberg attended other social events hosted by Girardi, outside of State Bar business. | 4 |
| 19 | Greenberg, Murray | Greenberg filed a declaration attesting that no misconduct relating to Girardi occurred, after retiring from the State Bar. | 4 |
| 20 | Greenberg, Murray | Performed as speaker at 2008 CAALA event in Las Vegas affiliated with Girardi. | 21 |

STOP THE MADNESS, *et al.* v. CARDONA, *et al.*
FEDERAL CIVIL RIGHTS COMPLAINT: PROSPECTIVE INJUNCTIVE RELIEF - PAGE 9

| TABLE 1 | | | |
|---|---|---|---|
| **No.** | **STATE BAR TARGET** | **NATURE OF CONTACT** | **REP'T PAGE[2]** |
| 21 | Greenberg, Murray | Performed as speaker at 2010 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 22 | Greenberg, Murray | Performed as speaker at 2013 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 23 | Greenberg, Murray | Performed as speaker at 2014 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 24 | Kim, Jayne | Kim said that Tom Layton came to her when she first became Chief Trial Counsel to offer assistance from Tom Girardi in helping her to become a judge or some other professional goal. | 27 |
| 25 | Noonan, John | Noonen's daughter had worked at GK. | 5 |
| 26 | Noonan, John | Keese handled a personal legal matter for Noonen. | 5 |
| 27 | Layton, Thomas | GK leased Layton multiple cars over the years. | 4 |
| 28 | Layton, Thomas | GK provided Layton a credit card for expenses. | 4 |
| 29 | Layton, Thomas | Girardi provided Layton a large bank loan, which GK repaid. | 4 |
| 30 | Layton, Thomas | GK employed two of Layton's children while Layton employed with the State Bar | 4 |
| 31 | Layton, Thomas | Girardi routinely met with Layton off the State Bar's premises, including at GK's offices, Morton's Steakhouse, or other restaurants. | 4 |
| 32 | Layton, Thomas | Performed as speaker at 2008 CAALA event in Las Vegas affiliated with Girardi. | 21 |
| 33 | Layton, Thomas | Performed as speaker at 2010 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 34 | Layton, Thomas | Performed as speaker at 2013 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 35 | Layton, Thomas | Performed as speaker at 2014 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 36 | Layton, Thomas | Trip to Mongolia with Girardi. | 13 |
| 37 | Layton, Thomas | Allowed Girardo to use his name as leverage in civil disputes, by invoking the disciplinary authority of the State Bar | 24 |
| 38 | Layton, Thomas | In 2013, Dunn was included on Girardi Keese's guest list for an ASCDC (likely the Association of Southern California Defense Counsel) event. | 27 |
| 39 | Miles, Donald | Performed as speaker at 2013 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 40 | Miller, Howard | Trip to Mongolia with Girardi | 13 |
| 41 | Miller, Howard | Girardi threw a party in Miller's honor, a formal lunch to celebrate Miller's election as State Bar Board President, with approximately 200 people attending, including many people affiliated with the State Bar | 30 |
| 42 | Oehler, Sonja | During the Munger investigation, Girardi unexpectedly appeared as counsel for Sonja Oehler and launched an unprofessional tirade | 21 |

| No. | STATE BAR TARGET | NATURE OF CONTACT | REP'T PAGE[2] |
|-----|------------------|-------------------|---------------|
| | | **TABLE 1** | |
| | | of threats against the Munger attorneys. (Thus, Girardi possessed an outside-of-State-Bar-business, attorney-client relationship with Oehler.) | |
| 43 | Oehler, Sonja | Dunn's office, by and through his secretary Oehler, was involved in assisting a third-party who wanted to attend one of Girardi's parties. | 26 |
| 44 | Oehler, Sonja | In 2014, before Dunn was terminated, Oehler emailed the Foundation for Democracy and Justice to inform it that Girardi would be making a $25,000 donation, and telling the Foundation that Dunn requested that correspondence related to Girardi's donation be routed through Oehler, so that Oehler could "ensure it gets to the right person at the law firm." | 32 |
| 45 | Platel, Richard | Performed as speaker at 2008 CAALA event in Las Vegas affiliated with Girardi. | 21 |
| 46 | Platel, Richard | Performed as speaker at 2010 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 47 | Platel, Richard | Performed as speaker at 2013 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 48 | Platel, Richard | Performed as speaker at 2014 CAALA event in Las Vegas affiliated with Girardi. | 22 |
| 49 | Rodriguez, Luis | Luis Rodriguez indicated that Craigh Holden should have lunch with Tom Layton, in which Girardi then appeared, because Layton was not yet sure if he would throw his support to Holden for president. | 20 |
| 50 | Rodriguez, Luis | Rodriguez flew on Girardi's private plane | 27 |

25.    **The State Bar Discipline System: Extrajudicial Shadow System**.  Based on **Table 1**, Plaintiffs allege that similar extrajudicial conduct, outside the scope of all of Defendants' legitimate roles and offices, provides the framework for the Shadow System to create and implement its illegal rules, policies, and practices, including, but not limited to, selective enforcement of the discipline system against solo and small-firm attorneys, gender discrimination, and automation of disciplinary outcomes. These illegal practices were decided outside the scope of any authority, rules, procedures, or lawful behavior.

26.    **The State Bar Discipline System: Extrajudicial Shadow System**.  The Shadow System was created, constructed, and organized outside of the parameters of the rule-based Paper System.  The Shadow System's rules, policies, and practices would never gain traction in a regular legislative or

formal rulemaking exercise. (For example, employees of the State Bar Board would never even suggest, much less pass, a formal rule that says 4 out of 5 discipline targets must be men.) It is, simply, an entire extrajudicial legal system – one that exists outside of all published processes, rules, oversight, and reform. Indeed, it is difficult to imagine a scenario where Defendants' patently illegal conduct could take root inside the scope of Defendants' legitimate, within-the-scope activity.

27. **The Shadow System's Perpetual Operation**. Periodically, the State Bar gets caught. For example, on July 31, 2014, Munger Tolles produced a State Bar report which specifically admonished the Board "to instruct senior management how important it is to cultivate and maintain a public perception that the Bar represents all attorneys, and that no one law firm or segment of the bar has a special position. It should further instruct management that its conduct to date may have created an unhealthy perception that Girardi and his firm have special influence or receive special treatment – and that management should take steps to dispel and avoid contributing further to this perception in the future." Yet, at the time, only 105 of the 204 complaints against Girardi had been opened by the State Bar. After the Munger report, another 99 complaints, from August 2014 through September 28, 2022, against Girardi would come rolling in. Thus, the Munger report appears to have had no effect on the State Bar in terms of regulating Girardi; it did not stop his operation within the Shadow System. The Bar still closed every case against him until the Los Angeles Times article appeared on March 6, 2021. Plaintiffs' point is that, unless the Discipline System is reformed, the Shadow System will continue unabated. The tactics may change, but it will continue to operate according to its most prominent, unpublished principles: to target solo and small-firm practitioners, to insulate politically connected attorneys through various illegal means, to automate outcomes in order to illegally maximize revenue, and to practice gender discrimination.

28. **Extrajudicial Shadow System Does Not Merit Immunity**. Action that does not fall within the scope of designated conduct of Defendants' offices, known in Latin as "*ultra vires*" (as here, the extrajudicial creation, operation, and maintenance of the Shadow System, with its own rules, policies, and practices) is excepted from immunity.[4]

---

[4]  *See, e.g., Church of Scientology v. Kolts* (C.D. Cal. 1994) 846 F.Supp. 873, 879, *citing Dugan v. Rank* (1963) 372 U.S. 609, 621-22 *and Pena v. Gardner* (9th Cir. 1992) 976 F.2d 469, 474.

29. **Wall of Immunities and Defenses.**  To insulate itself, the State Bar avails itself of every imaginable defense and immunity.  This list of defenses is staggering, from ones founded in the 11th Amendment, the *Rooker-Feldman* doctrine, res judicata/collateral estoppel, lack of jurisdiction in any court, the *Noerr-Pennington* doctrine, the *Younger* doctrine, absolute immunity, quasi-judicial immunity, qualified immunity, Government Code section 818.4, 821.2, and 821.6 immunity, and others. The State Bar is clearly attached to its Shadow System as it enables the Bar to collect many millions of dollars in revenue from the most vulnerable members of the profession, to target the weak while protecting the powerful, to liberate attorneys politically connected to it from their ethical misconduct, to punish and/or destroy critics, to avoid any need, grounds, or effort to undergo reform, and to abuse power with impunity.  The State Bar Shadow System is a formidable fraud scheme, in that it is insulated by the many protections afforded to a legitimate legal system, when it is anything but.

30. **Unique Insulation from Reform**.  Any other government agency or business that operated in the manner that the Shadow System operates would have been shut down long ago, pursuant to various state and federal laws, brought by a normally vibrant California plaintiff bar (if not criminal authorities) that detects and incentivizes public interest litigation to remedy illegal conduct.  However, the State Bar Shadow System is uniquely insulated, even beyond its extraordinary number of immunities and defenses, because it possesses an asset other compromised systems and businesses do not: the ability to suspend or disbar any attorney who might challenge it.  Normally, it need not resort to such measures, as efforts to reform the system bounce off it by its layered wall of immunities.  Direct retaliation is not necessary.  However, occasionally a critic is credible enough, or vocal enough, such that the State Bar feels compelled to employ pretextual administrative prosecutions as a weapon to neutralize a particularly thorny challenger.  The *Willis* disciplinary action, with its 2,017 accusations, is one such example.

31. **Failed Challenges Due to Wall of Immunities**.  Despite the risk of retaliation, many solo and small-firm attorneys have brought legal challenges to the discipline system's constitutional and legal integrity, only to see them fail because they, unable to detect the extrajudicial Shadow System, face the normal application of the State Bar's barrage of immunity defenses provided to legitimate legal systems.  However, these various immunity defenses ultimately fail once the State Bar Discipline System is seen

for what it is: two systems, one that would ordinarily merit such immunity (the Paper System), and the real one, the Shadow System, which does not merit immunity because it is an extrajudicial compilation of political agreements, illegal rules, illegal practices, and illegal policies agreed to and executed by the stakeholders that control and operate it, outside the scope of Defendants' offices.

32.    **Illegal Practice/Injunctive Relief**.  The Shadow System created the illegal practices complained about in this action: targeting of Plaintiff because he is both a man and a solo/small-firm practitioner, along with the necessary lawlessness and rule-breaking during the process to ensure that he is found culpable and punished.  Its proponents are no more entitled to immunity than a hypothetical bank teller, generally immune for performing the functions of bank tellers, who commits an off-the-clock robbery every night.  She must be enjoined.   Put another way, to grant immunity in these circumstances is to brazenly allow an extrajudicial legal system, one composed of illegal rules, practices, and policies, to operate with impunity.  The Discipline System cannot be permitted to operate in this fashion.

33.    **Features of the Shadow System: Selective Prosecution**.  In a 2021 review of 676 discipline cases conducted by Plaintiff, 99% of targets were detected to be solo and small-firm attorneys, despite this pool of attorneys only drawing 55% of the State Bar complaints.  This represents a basic equal protection violation.  It is a product of the fact that law firms and other politically-connected State Bar operators effectively secure insulation from disciplinary prosecution – thereby free to commit all manner of ethics offenses with impunity – by capitalizing on the opportunities to escape discipline offered by the Shadow System, including but not limited to, ingratiation, bribery, corruption, co-opting of employees, gaming of the rules, insider practices, and other illegal methods of insulation.

34.    **Features of the Shadow System: Foregone Outcomes – Supreme Court**.  It was detected in late December 2025 that disciplinary outcomes are foregone.  In a Discipline System defined by routinely unmeritorious and often frivolous accusations, targeted attorneys nevertheless lose their cases between 96-100% of the time.  This violates the most fundamental due process rules relating to judicial bias and neutrality.  In a pool of 2,080 cases in the California Supreme Court, 100% of cases – that is, every single case – resulted in the targeted attorney being required to suffer discipline and imposition of fines.  Thus, it can be deduced that one of the most important principles of the Shadow

System is the expectation that every targeted attorney will lose in the California Supreme Court and will be subject to paying the fines.

35. **Features of the Shadow System: Foregone Outcomes – Supreme Court**.  Preordained outcomes in the California Supreme Court are also established by virtue of observing that, across 247 petitions for review that Plaintiff tabulated from 1990-2025, not a single case resulted in an outcome where the attorney avoided the fines.  Indeed, the Supreme Court invariably ruled in just one of three ways: (1) to deny review, find the attorney culpable, and impose the fines; (2) to grant review, find the attorney culpable, and impose the fines; (3) to refer the matter back to the Review Department, but either way, to ultimately find the attorney culpable and impose the fines.

36. **Features of the Shadow System: Foregone Outcomes – Hearing Department.**  In the Hearing Department, 97% of the decisions in contested cases result in culpability and imposition of the fines.  This is an order of magnitude lower than the merit of these cases warrants, which again, supports and corroborates the most important principle of the State Bar Shadow System – to find attorneys culpable in virtually every case and impose the fines, in derogation of merit.

37. **Features of the Shadow System: Foregone Outcomes – Review Department**.  In the Review Department, 96% of the decisions in contested cases result in culpability and imposition of the fines; 4% prevail.   This is also an order of magnitude lower than the merit of these cases warrants, which again, supports and corroborates the most important principle of the State Bar Shadow System – to find attorneys culpable in virtually every case and impose the fines, regardless of merit.

38. **Features of the Shadow System: Gender Discrimination**.  Beyond targeting solo and small-firm attorneys 99% of the time, and beyond automating outcomes, the Shadow System targets men 83% of the time.  This constitutes yet another, massive, daily violation of constitutional law, of the most fundamental protections against gender discrimination.  Such a high percentage of targeting one gender shatters the "four-fifths rule," which is a rule of thumb commonly employed to determine if there is discrimination in a system.  Naturally, no legislation or rules could possibly pass anything that formally authorizes such lawlessness.  Rather, this practice must have been effectuated within the Shadow System.  Gender discrimination is especially important in this context, because, as far as Plaintiffs can tell, every OCTC prosecutor practices it.  As no thinking attorney could not notice that he

or she is charging one sex over 80% of the time, it can be inferred that every State Bar prosecutor is aware of and participates in the Shadow System, at least as far as knowing that there is a secret, off-the-books postulate, practice, and/or expectation of the Discipline System to discriminate against men, by charging them more than 80% of the time.

39.    **Features of the Shadow System: Bribery/Corruption**.  As extensively detailed in the 2023 Halpern Report,[5] Thomas Girardi used a compendium of tactics to avoid discipline, based on exploiting his celebrity status, ingratiating himself into the State Bar's architecture, bribing employees, muscling or co-opting them, eliminating threats through indirect terminations, and generally making it politically impossible for any State Bar employee, or faction of employees, to mount a viable disciplinary campaign against him.  It is unclear whether Mr. Girardi can be credited with creating part of the State Bar's Shadow System or whether he was simply an over-achiever in terms of exploiting it.  On information and belief, he is not.  Rather, the Shadow System has been created over years of conduct by involved stakeholders, including lawyers at big firms, who possess the group resources to implement a coordinated operation designed to game or compromise the Bar to thus insulate the entire firm from disciplinary accountability.  Girardi is just the guy who got caught, because he managed his law firm so irresponsibly that it collapsed, with creditors forcing it into involuntary bankruptcy and revelations of his malfeasance following in its wake.

40.    **Features of the Shadow System: Excessive Fines**.  The Shadow System, around the early part of the 21st century, determined to swiftly escalate the fines for no logical reason, in violation of various laws against excessive fines.  Since fines would not be enforceable if they were secret, they became public "law" through the State Bar's miniature fraud scheme in its "cost" schedule.  The "cost" schedule is a fiction and is not supported by any known authority; Business & Professions Code section 6086.10 allows the State Bar to recover its "costs" – which in every other context means its actual costs – however, the State Bar took this section as license to create fines as some sort of function of its overhead, which, as imposed on discipline targets, is an order of magnitude higher than its actual investigative or litigation costs relating to the discipline target.   Section 6086.10(b)(3), purporting to give the State Bar power to itself determine its "reasonable costs," is an illegal delegation of legislative

---

[5]    Exhibit 5.

authority.  The State Bar cannot constitutionally decide, or pass on, the costs of its overhead to discipline targets found culpable, since the actual targets – as opposed to the entire profession that draws complaints from clients – represent only a tiny portion of that overhead.   Consequently, the fines themselves are excessive, untied to their own conduct, and often outrageous, sometimes exceeding $20,000 based on flips of verbiage and other non-substantive, non-prejudicial, and often trivial "ethics" violations.  Over the roughly 25 years in which imposition of the "cost" system has become automated, targeted solo and small-firm attorneys have suffered imposition of about $53,000,000 in illegal and excessive fines.[6]

41.  **Exoneration Rates Off by an Order of Magnitude.**  Every NDC (charging document) warrants scrutiny, in the same way a capable defense lawyer can pick apart a civil complaint.  Given the extraordinarily broad standards for granting review under California Rules of Court 9.16,[7] and the generally controversial nature of these administrative prosecutions, the exoneration statistics are too low by an order of magnitude to conform to merit.  For example, despite possessing dispositive defenses as to both of counsel's disciplinary cases – particularly, the truth – Plaintiff unsuccessfully resisted them (in one case, the courts simply pretended a dispositive legal argument did not exist and in another they violated the most axiomatic principles of constitutional law) and as a result he has incurred about $45,000 in fines to date.

42.  **Features of the Shadow System: Intentional Conduct**.  The creation, operation, and maintenance of the Shadow System is a product of intentional conduct.  Thus, for example, even if there might be multiple causes of Plaintiff's periods of suspensions, one of which is California Supreme

---

[6]  This does not account for the fact that an additional $3M in filing fees was generated by a court that systematically denied relief to all litigants and ought to be recoverable as a sham expense.

[7]  California Rules of Professional Conduct, Rule 9.16(a) broadly allows challenges to a lower court disciplinary recommendation if any of the following criteria apply:
(1)  Necessary to settle important questions of law;
(2)  The State Bar Court has acted without or in excess of jurisdiction;
(3)  Petitioner did not receive a fair hearing;
(4)  The decision is not supported by the weight of the evidence; or
(5)  The recommended discipline is not appropriate in light of the record as a whole.
   If one were feeling conspiratorial, one might theorize that the Supreme Court passed such inviting standards to solicit a mass of petitions, at a current charge of $710 per filing, in order to maximize revenue, all the while knowing it would quickly and easily reject them across the board.

Court's suspension order, other legal causes still exist – for example, the systematic targeting of men, which is a prime feature of the Shadow System.  In situations where there are multiple causes for a particular consequence, and one of them is based on intentional conduct, that conduct is as a legal matter fully responsible for the damage, even if other causes are contributory.[8]

43.  **Universe of Cases/Fines: $53M**.  In the window between January 1, 1990 through December 31, 2025, Plaintiff identified a universe of discipline cases that exceeds 6,000 matters.  These were mostly stipulations, which are akin to a disciplinary plea bargain.  Preliminary statistics relating to the amount of the fines imposed, which was based on sampling 491 cost certificates, returned an average figure of $8,813 per case.  Thus, across roughly 6,000 matters at an average of $8.8K per, the total amount of fines imposed by the State Bar is about $53M.[9]

44.  **Proportion of Fines Imposed by Sex**.  Assuming fines are proportionately imposed as between the sexes, this means that men, who suffer about 83% of the charges, have incurred about $44M of this pool of fines, while women have incurred about $9M.  From what Plaintiff could determine from reviewing gender statistics published by the State Bar and other sources, the population of attorneys by gender is about equal, perhaps from 2000-2020 weighted toward men at about 55/45, while in recent years, it appears to be closer to 50/50.  Naturally, imposing $44M in fines on men, while imposing just $9M on women, in a profession that is roughly split between men and women, reflects rampant gender discrimination.

45.  **Individual State Bar Judges (Honn)**.  Judge Richard Honn, who has worked in the Hearing and Review Departments, appears to have imposed the fines in 191/198 Review cases, or 96.5% of the time.[10]  This is consistent with his practices when he was a Hearing Department judge, where, in a pool of 29/30 cases, he imposed fines 96.7% of the time.[11]  Justice Honn's cases, sitting in the Review Department, involved men about 87% of the time.  In the Hearing Department, his cases involved men about 84% of the time.

---

[8]  *See, e.g., Helm v. K.O.G. Alarm* (1992) 4 Cal.App.4th 194, 202.
[9]  Exhibit 8.
[10]  Exhibit 9.
[11]  Exhibit 18.

46.  **Individual Judges (McGill)**.  Judge W. Pearse McGill (in the Review Department) appears to have imposed the fines in 135/141 cases, or about 96% of the time.  His cases involved men about 85% of the time.[12]

47.  **Individual Judges (Ribas)**.  Judge Tamara Ribas (in the Review Department), in a pool of 22 cases, imposed the fines 21/22 times, or about 95% of time.  In this pool, 86% of her cases involved men.[13]

48.  **Individual Judges (Roland).**  Judge Yvette Roland (in the Hearing Department), in a pool of 76 contested cases, imposed the fines 98.6% of the time.  In her pool, 79% involved men.[14]

49.  **Individual Judges (Saab).**  Judge Dennis Saab (in the Hearing Department), in a pool of 15 contested cases, resulted in the fines being imposed 100% of the time.  In a larger pool of 21 contested and uncontested cases, 81% involved men.[15]

50.  **Individual Judges (Wang).**  Judge Phone Wang (in the Hearing Department), in a pool of 13 contested cases, imposed the fines 84% of the time.  In a larger pool of 17 contested and uncontested cases, 88% involved men.[16]

51.  **Individual Judges (Valenzuela).**  Former State Bar Judge Cynthia Valenzuela (in the Hearing Department), in a pool of 20 contested cases, imposed the fines 95% of the time.  In that pool, 80% involved men.[17]

52.  **Individual Judges (Chawla).**  Judge Manjari Chawla (in the Hearing Department), in a pool of 21 contested cases, imposed the fines 100% of the time.  In a larger pool of 23 contested and uncontested cases, 83% involved men.[18]

53.  **Individual Judges (Platel)**.  Former State Bar Judge Richard Platel (in the Hearing Department), in a pool of 11 contested disciplinary cases, imposed the fines 100% of the time.  In a larger pool of 14 contested and uncontested cases, 93% involved men.[19]

---

[12]  Exhibit 10.
[13]  Exhibit 13.
[14]  Exhibit 21
[15]  Exhibit 24.
[16]  Exhibit 25.
[17]  Exhibit 15.
[18]  Exhibit 4.
[19]  Exhibit 20.

54. **Individual Judges (McElroy)**. Former State Bar Judge Patricia McElroy (in the Hearing Department), in a pool of 15 contested disciplinary cases, imposed the fines 80% of the time. In a larger pool of 29 contested and uncontested cases, 83% involved men.[20]

16. **Individual Judges (Miles)**. Former State Bar Judge Donald Miles (in the Hearing Department), in a pool of 111 contested disciplinary cases, imposed the fines 110 times, or 99% of the time. In a larger pool of 137 contested and uncontested cases, 84% involved men.[21]

55. **Undisputed Nature of the Evidence.** The substance of the above statistics, as they have been developed and have evolved from December 2025 through March 2026, has been presented to the California discipline system multiple times, at all levels. All defendants have consistently declined to address the merits of this body of evidence, which serves as an implied admission that they are accurate. The State Bar has not presented any evidence whatsoever in opposition to these various motions to suggest it is inaccurate or invalid. Accordingly, the substance of the above evidence is undisputed.

## C. Plaintiff's Two Discipline Cases

### 1. *Martinez* Discipline Case

56. *Martinez* **Discipline Allegations**. After an investigation in 2019, the State Bar's Office of Chief Trial Counsel ("OCTC") brought charges against Plaintiff in 2020. After four years of litigation, Plaintiff was found culpable for "disrespecting" a civil trial judge, by arguing in several appellate briefs that her ruling was intellectually dishonest. As a matter of the truth, the ruling was intellectually dishonest, as established by the fact that the State Bar never contended otherwise. Truth is an absolute defense. Plaintiff also disclosed the basis for the opinion being intellectually dishonest; this is also a dispositive First Amendment defense, as more fully detailed below. Nevertheless, the discipline courts either denied or ignored these arguments and found Plaintiff culpable. Plaintiff was fined over $27,000, and suspended for 30 days in this disciplinary matter, for the "offense" of making legal arguments, which is about 2.5 times more than the average fine for commission of a felony in the State of California.

57. **Dispositive First Amendment Disclosure Defense Ignored**. Plaintiff's "intellectual dishonesty" arguments were specifically insulated by a First Amendment doctrine referred to as the

---

[20]    Exhibit 19.
[21]    Exhibit 23.

defense of disclosure.  Under this defense, when a person discloses the facts upon which a conclusory legal allegation is based (here, "intellectual dishonesty"), the speaker is protected by the First Amendment.  Plaintiff liberally disclosed in the appellate briefing the facts upon which he based his conclusion that the ruling was intellectually dishonest.  The idea is that the conclusion or label is effectively irrelevant; what is important to the hearer are the facts; since the facts have been disclosed by the speaker, the hearer can evaluate for herself whether she thinks they are true or not and therefore whether the conclusion is fair or not.  Plaintiff raised this disclosure defense over a dozen times to the Discipline System during the case, which it simply, consistently, and conveniently ignored, because the Shadow System prioritizes the imposition of fines over legal accuracy.  Plaintiff also raised a second dispositive defense, because the Ninth Circuit held in *Standing Committee v. Yagman* that allegations of intellectually dishonesty were effectively impossible to prove one way or another and thus such a label could not serve as grounds to impose discipline.  This defense was also either dismissed or ignored.

### 2. *Willis* Discipline Case

54. *Willis* **Disciplinary Proceedings.**  Through the Discipline System, Plaintiff was charged in 2023 with eight disciplinary offenses, and in 2024, was recommended to be suspended from practicing law for 18 months, as well as being fined $18,000 for his handling of the *Willis* probate case.

55. **Nature of *Willis* Case.**  In 2015, Pavone accepted a kidnapping/probate case, *Willis*, in which a severely incompetent elder, Teresa McClain, had been surreptitiously transported from her home in San Diego to the outskirts of Indiana, by a team of neighbors, probate lawyers, and an estranged relative, Teresa's sister (Barbara Carson), who lived in Indiana.[22]

56. **Teresa Incompetent.**  Teresa was incompetent as reflected by a staggering, overwhelming, and conclusive amount of evidence, beginning in September 2014 and continuing throughout her passing in June 2016, which included a formal competency test conducted on September 14, 2015 in which a medical doctor, Dr. John Chase, found that she was severely incompetent after scoring 2/30 on the MOCA competency test.[23]

57. **Textbook Conspiracy**.  A team, consisting of local probate insider attorneys, Teresa's neighbors, and Barbara Carson, Teresa's sister, conspired to make a play for McClain's $2M estate by

---

[22]   Exhibit 6
[23]   Exhibit 7.

kidnapping Teresa and thus seizing control over her estate.[24]  It was the solution to their financial problems: Carson was destitute, two neighbors wanted to own the property they rented from Teresa, and others saw a financial opportunity to extract money from her estate.  Yet, they possessed no inheritance or other legal rights: Teresa's immediate family, the Willis family, had lived near Teresa in San Diego, her home of 50 years, and had taken care of her since 2012.  They were uniformly designated as her heirs and caretakers pursuant to Teresa's estate plan.  Under that plan, specifically Teresa's 2011 Advanced Health Care Directive, they were empowered to make decisions for her in the event of incompetence – not the Carson team and not a court.  Accordingly, because Teresa was incompetent, the estate plan determined who possessed the right to control custody of Teresa.  The Carson team was, therefore, by law, kidnappers, when they surreptitiously, without lawful authority, and without permission from the Willis family, surreptitiously transported Teresa from her home in San Diego to another state, Indiana.

58.  **Kidnapping was Criminal**.  Because Teresa was incompetent, and probate insiders knew this from the Chase report, and because Teresa was later placed in danger when Carson transferred her to Kearns Comfort Care (a makeshift, unlicensed, and dangerous elder care facility that was raided by Indiana authorities while Teresa was there), Teresa's kidnapping not only constituted a civil violation under the Welfare and Institutions Code, it also constituted the California state crime of kidnapping, under Penal Code section 368.  Moreover, because the motive for the kidnapping was financial – to attack Teresa's estate – her illegal transportation across state lines also probably violated the federal crime of kidnapping, pursuant to 18 U.S.C. 1201.

59.  **Retention of Counsel**.  The Willis family hired counsel in September 2015 to liberate Teresa from her Indiana captors and protect the estate.  Plaintiff successfully did so, in that, on an emergency basis over the course of a nine-month sprint of litigation, counsel recovered $1.4M of the estate for the family, kept the thieving neighbors and professionals to just $300K, and recovered the elder herself in a legal rescue operation, from Indiana.

60.  **Coordinated Resistance by Carson Team**.  This outcome was despite a concerted, coordinated resistance effort by the Carson kidnapping team, who pretended Teresa was competent and

---

[24]   Exhibit 6.

sought to hold her in Indiana, in order to drain her estate for their benefit. As long as they had physical control over her person, they were able to extract money from her estate.

61. **Liberation Effort**. Plaintiff's effort to liberate McClain required a complex litigation campaign against the kidnappers, and against hostile probate systems in two states, for both refused to face the reality that they did not have authority to invade her estate, at all, or distribute money to insiders, since Teresa was incompetent and Teresa's estate plan governed control over her.

62. **Estate Plan Governed**. If she was incompetent – and she was unquestionably so, having scored 2/30 on the MOCA competency test among many other indicia – her estate plan dictated that her granddaughter, Myzsa Willis, would be empowered to make all decisions for her. The courts had no authority to intervene, but they did so in two different states.

63. **Lack of Judicial Authority**. The California probate court had no authority to seize control of Teresa's estate, and if it had recognized this reality (or, more realistically, it did recognize it and prioritized wealth-distribution over truth and merit) upon Pavone's early legal submissions, the kidnappers would never have had any basis to claim Teresa was a resident of Indiana, in order to initiate a second legal action and cause the Willis family's bill to substantially increase.

64. **Refusal to Recognize Incompetency**. The California probate system ignored Plaintiff's continuous jurisdictional objections and tactically delayed a critical competency ruling for five months, long enough for the kidnappers to claim she was an Indiana resident and start a whole new case there. The California probate judge refused to face the fact that she did not possess jurisdiction over an incompetent person, despite Plaintiff's meticulous submissions, evidence, and motions. Indeed, to this day, the California legal system incredibly maintains that competency is not even a requirement in trust actions, in brazen derogation of Probate Code section 17004 and in contravention of the most fundamental legal principles.

65. **Practice of Probate Court.** This lawlessness in favor of probate insiders was part of a standard playbook in probate, in that the probate judge received a remarkable number of reports on a feedback website that indicated that she favored probate insiders at the expense of the heirs.[25] Because of the probate court's lawlessness in seizing control over an estate for which the court possessed no

---

[25] Exhibit 3.

fundamental legal authority, Counsel's disclosure to the client of a possible $100K fee increased dramatically, to an ultimate bill of $650K, as Plaintiff battled the competency/jurisdiction issue, various other trust and conservatorship disputes with probate insiders, and was required to litigate a second action, including to go to trial, in Indiana. The *Willis* case should have ended at $100K, by Plaintiff proving to the probate court in October 2015 that McClain was incompetent and that McClain's estate plan governed the issue. But, because the San Diego probate system was itself operating lawlessly and decided to illegally seize control of an estate, it required dramatically more work legal work than the case should have necessitated.

66. ***Willis* Case Victorious**. Despite the challenges imposed by the Carson kidnapping, and a lawless and hostile probate system, Plaintiff ultimately recovered $1.4M for the client, out of the $1.7M net value of the estate.

67. **Plaintiff Charged for Handling of *Willis* Case**. Because of the escalated bill, and Plaintiff's perception that there was dysfunction in the San Diego probate court – which there obviously was, since the probate judge, by delaying the proceeding, was effectively assisting an ongoing state and federal criminal kidnapping – Plaintiff was nevertheless charged by OCTC in August 2023.

68. **2,017 Ethical Charges Filed**. The *Willis* discipline case is a sham, because OCTC filed 2,017 distinct ethical accusations against Plaintiff. This rendered the entire proceeding a farce, a sham, impossible to defend, not a serious or real proceeding, strictly intended to retaliate and punish Plaintiff, and a grievous due process violation across metrics. The Discipline System nevertheless seeks to suspend Plaintiff for 18 months on this farcical construct, along with imposing another $18,000 in fines. For comparison's sake, the largest number of accusations in any known case filed by OCTC was 153 accusations, in *In re Hindin*, which took many years to resolve and involved an attorney mishandling numerous cases. OCTC charged Petitioner with 2,017 ethics offenses, because he had emerged as a credible critic of the organization and therefore had to be destroyed with every ounce of firepower OCTC could muster. In contrast, Plaintiff was forced to trial in just five months and the entire case was concluded in about a year. Only four days of trial were allocated to a case that would have required 200 days of trial to adjudicate responsibly (assuming 10 accusations per day could be processed).

**D. Girardi Scandal Exposes the Shadow System.**

69.    **Girardi Scandal: Introduction**.  While the State Bar was lording its supposed ethical superiority over attorneys like Plaintiff, by in counsel's case accusing him of 2,017 ethical violations, it was ignoring 30 years of actual felony crime, involving millions of dollars of stolen client funds, by Attorney Thomas Girardi.

70.    **Girardo Modus Operandi**.  Over the course of approximately 30 years, Girardi infiltrated the State Bar across functions and effectively insulated himself from the risk of any disciplinary action whatsoever, by seducing OCTC with various forms of bribery, by exploiting his celebrity status to weak-minded State Bar employees, by gaming the conflict rules, by directly employing State Bar investigators, by indirectly threatening State Bar employees who tried to stand up to him, and by various other tactics that disguised a career anchored by crime of the most ethically grievous sort – stealing money from one's clients.[26]   In doing so, he made full use of the State Bar's Shadow System.

71.    **Expose Report**.  A 2023 report, commissioned by the State Bar in response to public outrage, provides detail how Girardi maneuvered within the Shadow System.[27]  The success of his tactics allowed him to avoid any public disciplinary action over the course of some 200 complaints filed against him dating back to 1984.[28]  The report outlines his tradecraft in detail, is partially detailed in **Table 1**, and the full report is incorporated herein.

72.    **Sponsoring Events**.  Girardi's tactics included ingratiating himself with State Bar personnel by throwing lavish parties, hosting lunches, and sponsoring events, which further leveraged his celebrity status.[29]  His aura of celebrity was too bright for certain State Bar personnel to overcome, even in the face of him committing obvious ethical misconduct, and thus reveals how he could create a political aura that rendered him to be too close to divinity to suffer the humiliation of disciplinary charges advanced by mere mortals.

---

[26]    Exhibit 5.
[27]    Exhibit 5.
[28]    Exhibit 3.
[29]    Exhibit 2.

73.    **Private Jet**.  Girardi routinely permitted State Bar personnel to fly on his private jet, further displaying his celebrity status, which tended to compromise State Bar personnel, and which cultivated the relationships that insulated him from disciplinary prosecution.

74.    **Compromising State Bar Employees**. Through various acts of bribery, including to put several State Bar employees on his firm's payroll, Girardi was able to compromise the Bar's public protection function and thus negate the political viability of any disciplinary action against him.

75.    **Complaints Withdrawn Pursuant to Settlement.**  One of Girardi's tactics to eliminate complaints against him, after he would hold settlement money from a client prompting the client's disciplinary complaint, would be to settle with the client on condition that the client withdraw the complaint.   This should not have affected any disciplinary case against him, but in practice, it negated OCTC's will to prosecute him due to his high-profile status at the State Bar.

76.    **Exploitation of State Bar Political Connections.**  Girardi cultivated political connections across the State Bar, which enabled him to cash in on favors earned and owed, in order to thwart any disciplinary prosecution against him.  With this magnitude of political clout, he held the implied power to terminate State Bar employees, which served as a powerful disincentive for any State Bar employee to consider initiating discipline proceedings against him.

77.    **Gaming the Conflict Rules**.  Girardi also gamed the conflict rules such that complaints against him would be referred to a third-party outsider, often an attorney without proper professional experience, who would decide not to prosecute him for reasons that were not valid.  The best chance the State Bar possessed to charge Girardi, when the Ninth Circuit referred him in relation to serious misconduct in a collection case before it, resulted in the conflict attorney electing in his discretion to not prosecute because he had "suffered enough" by the public nature of the Ninth Circuit's criticisms.   On information and belief, Girardi used one or more tactics in his influence toolbox, including conceivably to directly bribe this conflict prosecutor, to secure such an utter lack of respect for the prosecutorial duties of the State Bar's Paper System.

78.    **Misconduct Shielded by Privacy Laws**.  The State Bar's Shadow System is enabled by certain privacy laws that hide misconduct underneath them.  Like so many other situations, the lack of

transparency allows all manner of misconduct, since attorney complaints and prosecutorial decisions remain secret and usually shielded from public scrutiny.

79.   **Political System.**  The Shadow System is, at its core, a political free-for-all.  Decisions to charge attorneys are not driven based on merit or severity of misconduct, but on political considerations.  The Girardi case establishes that State Bar employees can be bribed, incentivized, threatened, "wowed" by celebrity, politically outmaneuvered, and otherwise manipulated to abuse their power – by either looking the other way to blatant ethical misconduct or by targeting attorneys without political power, in the prosecuting attorney's personal interest.   Rules governing behavior, such as conflict rules, can be violated, gamed, intellectualized out of, and otherwise defeated by State Bar lawyers who have a higher political priority.  On information and belief, the Shadow System of State Bar corruption as reflected by the Girardi scandal is just a small part of its overall architecture.  The State Bar Discipline System is a political free-for-all, in which multiple basic constitutional protections are directly disrespected (equal protection and due process, most importantly), including the most important one of all – judicial neutrality – in deference to the self-serving agenda of its beneficiaries, including the attorneys at medium and large law firms.

80.   **Summary of Shadow System**.  In short, there is an entire extrajudicial system at work in the State Bar Discipline System that involves all sorts of events, contacts, communications, relationships, meetings, agreements, conspiracies, historical understandings, and other outside-of-the-job activity – a shadow legal system with its own rules, laws, and policies – that has created a set of unpublished rules, practices, and policies that exists as the real driver of how the Discipline System operates: the Shadow System.

81.   **Shadow System and Immunity.**  As discussed in more detail below, this Shadow System merits no insulation in the form of immunity, as the "rules" of this system are completely outside the realm of the normal functions of the personnel, including the judges, that operate the system.  Beyond any of the rules of the Paper System or the processes by which the published rules are implemented or enforced, the Shadow System enforces unpublished rules, practices and policies, including but not limited to, rules that men should be disproportionately targeted, over 80% of the time; that solo and small-firm attorneys should represent the vast majority of targets (estimated at 99%); that

attorneys at medium or big firms are to be insulated and discipline complaints against them squashed; that excessive fines should be imposed; and that imposing the fines are all but foregone against the targets (and which relieves OCTC of filing serious, responsive legal briefs).  It is, simply, both a corrupted and a corruptible system.  Thomas Girardi may have exploited it, but the basic infrastructure of the Shadow System has been in place long before he got caught, since it appears that the California Supreme Court was ruling against discipline targets without exception since around the year 2000.

82.    **Administrative Proceedings Qualify as "Sham" Litigation**.   Sham litigation is generally regarded as objectively baseless litigation characterized by features that give it a pretextual, or show trial, quality.  It is not advanced for the purpose of objectively establishing the truth or a legally accurate outcome, but to suppress these features and oppress the target, for a myriad of possible reasons (financial extraction, retaliation, to disguise larger misconduct (scapegoating), for political benefit, *etc*.)  Sham litigation is the product of a party weaponizing judicial power against a target.  The *Willis* discipline case was a sham proceeding.  It was and is objectively baseless, because a prosecutor that feels the need to resort to charging a discipline target with 2,017 distinct ethical offenses – incidentally, the one and only time the subject OCTC prosecutor employed such an ignominious tactic – fundamentally reveals that he is incapable of charging a legitimate, real, normal, serious, or meritorious case.  Charging such a morass of accusation necessarily disguises the fact that the charging complaint lacks merit.  It seeks to prevent the target from mounting any real defense, because no one can prepare a defense to 2,017 accusations, especially in what amounted to be only four days of trial. (Proper litigation of such a massive number of accusations would require approximately 200 days of trial to sort through.) This is all the more obvious when the target, as here, is rushed to trial, when numerous filings are bounced (always being deemed to lack "good cause" for exhibit submissions tendered beyond the 50-page rule), when the discipline judge is especially (and without any known cause) hostile to the target, when the discipline judge will not even recognize that 2,017 accusations have been leveled, when the judge will not permit an oversize document listing them (which requires a 405 page, single-spaced document), when fundamental rules of evidence are broken or dishonored (such as the court's refusal to craft an opinion from the foundational origin that McClain was incompetent, which changes the entire legal analysis), when discovery rights are denied thereby preventing the target from tackling such a

morass of accusation, when the judge constantly tells the discipline target to move on to a different subject as he zeroes in seeking to secure important admissions at trial, and when the outcome was foregone, as per the statistics about this system and especially relating to the judge who handled his case.

83.    **State Bar Court Qualifies as "Kangaroo Court.**"  Similar in concept to sham litigation, a "kangaroo court" includes one that prosecutes a sham legal proceeding.  It is detected by the same kinds of dynamics that make a case a sham proceeding, one in which the target's legal rights are disregarded, trampled, systematically ignored, and most importantly, where the result is foregone.[30]  A court system that operates by virtue of a Shadow System qualifies as a federally-designated "kangaroo court."

84.    *Willis* **Discipline Action: A Sham Lawsuit Before a Kangaroo Court**.  However, a private party, or government prosecutorial agency, can prosecute a sham proceeding even if it is not brought before a kangaroo court.  Here, however, OCTC prosecuted a sham proceeding in *Willis* before a kangaroo court.  A court system that rules against discipline targets 96%-100% of time, depending on the tier of the system, is completely out of whack with the merits of these cases.  The subject judge handling Plaintiff's case, Judge Yvette Roland, ruled against discipline targets in 75/76 contested cases Plaintiff was able to identify.  Such foregone outcomes are the *sine qua non* of a "kangaroo court."

**CAUSES OF ACTION**

**VIII.**
**CAUSE OF ACTION 1**

**CALIFORNIA CONSTITUTION -**
**ARTICLE 1, SECTION 7**

**VIOLATION OF CALIFORNIA CONSTITUTION'S**
**RIGHT TO DUE PROCESS OF LAW**

**(RELIEF SOUGHT: PROSPECTIVE INJUNCTIVE RELIEF)**

**(Against All Defendants)**

85.    **Incorporation**.  Plaintiffs incorporate the allegations of paragraphs 1-84, as if fully set forth herein.

---

[30]    *Butcher v. Michigan Supreme Court*, No. 07-14940, 2008 U.S. Dist. Lexis 39377, 2008 WL 2067028, *2 (E.D. Mich. May 15, 2008), *citing* Black's Law Dictionary 780 (5th ed. 1979); *see also Medlin v. Algood*, 355 F.Supp.3d 707, 714 (M.D. Tenn. 2019).

86.    **Creation of Shadow System**.  Defendants created, operate, and maintain a shadow legal system, the Shadow System, composed of unpublished rules, policies, and priorities (principally practices of selective prosecution, gender discrimination, and biased adjudication), which deviate from the legal Paper System.  The Paper System is supposed to govern the State Bar Discipline System, but it does not.  Prosecutors file sham proceedings and litigate before a kangaroo court.  The Shadow System itself constitutes many tortious acts, which can be remedied pursuant to the California Constitution's due process clause, in which judges, among other things, are illegally biased in favor of finding discipline and imposing fines.

87.    **State Due Process: Basics**.  Article I, Section 7 of the California Constitution provides in relevant part that "[a] person may not be deprived of life, liberty, or property without due process of law."

88.    **Duties of Judges: Generally**.  Judges in California, like judges everywhere, are under an extensive set of canonical and legal obligations to implement this fundamental axiom of California (and American) law, including to perform their judicial duties competently,[31] to rule in a neutral and impartial manner,[32] to avoid self-interest,[33] to respect the law,[34] to be assiduously honest,[35] to avoid misuse of the office,[36] and to find and honor the truth.[37]

89.    *Willis*: **Basics**.  What should have been viewed as a successful, hard-earned probate victory in *Willis* after the dedicated work of a nine-month emergency sprint in 2015-2016, counsel has instead spent 10 years being vilified by elements of the California legal system, one that cannot face the most basic truth about *Willis* – that McClain was severely incompetent, that the probate court did not possess personal jurisdiction over the main trust action as a result,[38] that none of the litigation

---

[31]    *In re Mallery* (2024) 15 Cal.5th CJP Supp. 1, 8.
[32]    *In re Murchison* (1955) 349 U.S. 133, 136; *Mistretta v. United States* (1989) 488 U.S. 361, 407; *People v. Hernandez* (1984) 160 Cal.App.3d 725, 750-751.
[33]    *In re Mallery* (2024) 15 Cal.5th CJP Supp. 1, 49.
[34]    Code Jud. Ethics, Can. 2A.
[35]    *In re Mallery* (2024) 15 Cal.5th CJP Supp. 1, 84.
[36]    *In re Mallery* (2024) 15 Cal.5th CJP Supp. 1, 17.
[37]    *Pettis v. United States* (7th Cir. 2025) 129 F.4th 1057, 1062; *see, e.g., Kansas v. Cheever* (2013) 571 U.S. 87, 94; *United States v. Mezzanatto* (1995) 513 U.S. 196, 204-05; *Crosby v. New York* (S.D.N.Y. 2010) 269 F.R.D. 267, 274; *Damaj v. Farmers* (N.D. Okla. 1995) 164 F.R.D. 559, 560; *Smith v. Groose* (8th Cir. 2000) 205 F.3d 1045, 1049.
[38]    Prob. Code, § 17004; Code Civ. Proc. §§ 372, 410.10.

gymnastics in two states should have been necessary, and that the bill should have only been, as a result, about $100K, in line with contractual expectations.  That it cost more than six times more is a direct product of the probate court's refusal to face the fact that McClain was incompetent, and as such, that McClain's estate plan exclusively controlled the outcome to that situation.

90.   ***Willis*: Lawlessness**. Yet, because the probate court did not respect the law of jurisdiction and did not respect McClain's estate plan, this caused *Willis* to mushroom into a much greater bulk of litigation.  *Willis* has now transmogrified into an even larger set of challenges and obligations, because in the process of being wrongfully prosecuted, counsel has detected the State Bar's Shadow System, and this explains why attorneys charged with disciplinary offenses, including Plaintiff, always seem to lose their case.[39]

91.   **California Supreme Court: Prior Attention to Discipline Cases**.  Back in the 1980's and 1990's, the Supreme Court generously provided real attention to discipline matters.  A collection of legal principles emanated from that era and established a high-minded consideration of every discipline target's case, for example.

- "It is well established that we exercise our independent judgment in determining whether the recommended discipline is appropriate, excessive, or inadequate. In exercising our authority we traditionally accord great weight to the review department's determination."[40]

- "… [W]e exercise our independent judgment in deciding appropriate discipline [citation] considering all relevant aggravating and mitigating circumstances."[41]

- "As is our practice in disciplinary matters, we have weighed the evidence before the referee and independently conclude that it was more than sufficient to sustain each of the referee's findings with respect to the Hester matter."[42]

92.   **California Supreme Court: Discipline Cases Too Time-Consuming**:  However, by 1990, the Supreme Court realized that discipline cases were consuming too much of its time.  It

---

[39]   Exhibit 14.
[40]   *Drociak v. State Bar* (1991) 52 Cal.3d 1085, 1089, *citing In re Prantil* (1989) 48 Cal.3d 227, 234.
[41]   *Kelly v. State Bar* (1991) 53 Cal.3d 509, 518, *citing Howard v. State Bar* (1990) 51 Cal.3d 215, 220 (1990) *and Waysman v. State Bar* (1986) 41 Cal.3d 452, 457.
[42]   *Bach v. State Bar* (1991) 52 Cal.3d 1201, 1207.

observed in *In re Rose* that "[b]y 1990, before we adopted a policy of discretionary review pursuant to rule 954, we were issuing more than 40 opinions annually in State Bar disciplinary proceedings, and the number was increasing… ."[43]  True to that concern, in 1990-1991, the Supreme Court appears to have issued at least 50 disciplinary decisions, about half of which reflected content-rich, published opinions.[44]

93.  **California Supreme Court: Changes in *Rose***.  Accordingly, the Court made a change. Discipline targets were relegated to petitioning for Supreme Court review.  This resulted in a challenge in the 2000 *Rose* decision, where the Supreme Court defended its change in practices against a long series of constitutional arguments.[45]  The Court nevertheless assured attorneys that it would not merely delegate disciplinary matters to the State Bar Court.

- "Because the State Bar Court is simply an administrative arm of this court and exercises none of our inherent authority over attorney discipline, the judicial power in disciplinary matters remains with this court, and was not delegated to the State Bar."[46]

- "… an attorney may petition for review of a State Bar Court decision recommending disbarment or suspension (rule 952(a)), and that we *will order review* if, among other things, the petitioner did not receive a fair hearing, the decision is not supported by the weight of the evidence, or the recommended discipline is not appropriate in light of the record."[47]

- "As we repeatedly have emphasized, when an attorney petitions for review of a State Bar Court decision recommending disbarment or suspension, we thoroughly review the attorney's contentions and the entire record, and reach an independent determination whether he or she should be disciplined as recommended. We will order review of the State Bar Court's decision whenever it appears that one or more of the grounds enumerated in rule 954(a) are present."[48]

---

[43]  *In re Rose* (2000) 22 Cal.4th 430, 457.
[44]  *See e.g., Middleton v. State Bar* (1990) 51 Cal.3d 548.
[45]  *In re Rose* (2000) 22 Cal.4th 430, 438-460.
[46]  *Id.,* at 442 [internal quotations omitted].
[47]  *In re Rose* (2000) 22 Cal.4th 430, 443 [emphasis added].
[48]  *Id., at* 457 [emphasis added].

94. **California Supreme Court: Promises in *Rose***. The Supreme Court made many similar promises within *Rose*.[49] Consequently, many attorneys facing discipline have sought relief based on these inviting standards (under current Rule of Court, 9.16), and this ought to have resulted in a solid percentage of cases being reviewed and reversed. Yet the reality is that this Court mechanically denies all petitions across the board, at least as to the feature that is critically important about them: the imposition of the fines.[50]

95. **Discipline Cases: 30-40% Lack Merit**. Having read a vast volume of State Bar disciplinary literature, and communicated with many targets, Counsel's undisputed estimate is that 30-40% of OCTC's filings are simply unmeritorious; clearly, every NDC warrants scrutiny, in much the same way a capable defense lawyer can dismantle a civil complaint.

96. **California Supreme Court: Foregone Outcomes**. In a review of 2,080 cases from 1990-2025, not one attorney avoided the fines.[51] At least 247 petitions for review were directly denied; counsel is not aware of any case in which the Supreme Court relieved the attorney of the fines.[52]

97. **California Supreme Court: Outcomes based on Shadow System**. In other words, the State Bar Attorney Discipline System operates based on a Shadow System where the directive is not to adjudicate cases based on truth and merit, but to engage in as much intellectual dishonesty as is necessary in order to assure that targets are found sufficiently culpable to suffer the fines – one finding of an ethics violation being sufficient – in an average figure of about $9,000 per case.[53]

98. **California Supreme Court: Denied Petitions by Justice**. In their respective window of service, and consistent with the Supreme Court's practice (and because discipline matters are typically disposed of "en banc"), each of the current justices has denied review between 30 and 229 times in a row, respectively, as per **Table 2** below.

---

[49] *Id.,* at 444-446, 448, 456, 459.
[50] Exhibit 16.
[51] Exhibit 14.
[52] Exhibit 14.
[53] Exhibit 8.

| TABLE 2 | | | | |
|---|---|---|---|---|
| NO. | JUSTICE | RANGE OF TENURE | PFR RANGE[54] | NO.[55] |
| 1 | Kelli Evans | January 2023-Present | 02/01/23 – 02/01/26 | 32 |
| 2 | Patricia Guerrero | March 2022-Present | 03/01/22 – 02/01/26 | 46 |
| 3 | Martin Jenkins | December 2020–Present | 01/01/21 – 02/01/26 | 60 |
| 4 | Joshua Groban | January 2019–Present | 02/01/19 – 02/01/26 | 75 |
| 5 | Leondra Kruger | January 2015–Present | 02/01/15 – 02/01/26 | 148 |
| 6 | Goodwin Liu | August 2011–Present | 09/01/11 – 02/01/26 | 190 |
| 7 | Carol Corrigan | January 2006–Present | 02/01/06 – 02/01/26 | 229 |

99.    **California Supreme Court: Outcomes Foregone:**  This uniformity of denying petitions does not vary as to the other 10 justices that served from 1990-2025.  Plaintiffs have not found any case at this level where the fines were not ultimately imposed by the Supreme Court, such that an attorney could conclude that he won his case.

100.    **California Supreme Court: Foregone Outcomes Violate Due Process**.  A judiciary that rules only one way, against the private party and in favor of the government – in this case, itself effectively, as the State Bar is part of the Supreme Court – always or virtually always ordering expensive fines, would crash head-on into this, and countless other, principles of due process: "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. … [t]o this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.  That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that "every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law."[56]

101.    **California Supreme Court: Shadow System**. Ruling one way in every case, which nets the state government about $9K per case, suggests that the Defendants' practices are tainted by self-interest.[57]  Because such a practice exists within a larger Shadow System of unpublished rules,

---

[54]    Given the tenure dates, this column reflects the window where it can be inferred that a given justice was actively participating in normal adjudication.

[55]    This is the number of petitions itemized per justice.

[56]    *In re Murchison* (1955) 349 U.S. 133, 136, *citing Tumey v. Ohio* (1926) 273 U.S. 510, 532.

[57]    Exhibit 8, 14, 16.

practices, and priorities – ruling against the targeted attorney being the prime directive – creation, operation, and maintenance of this system is itself a liability-creating event.  Plaintiff's several discipline cases are only examples, or instances, of the illegal practices of the Shadow System, including to manifest itself in various violations of law during the discipline case itself.

102.    **Shadow System Warrants Prospective Injunctive Relief.**  Defendants' creation, operation, and maintenance of the Shadow System cause systematic violation of state constitutional requirements and merits prospective injunctive relief.  In Plaintiff's case, as a representative example, he was targeted as a man; he was targeted as a solo and small-firm practitioner; he was administratively prosecuted, via a charging document designed to prevent him from mounting a defense; he was rushed to trial for a case, with so many accusations, that should have taken years to prosecute (given the many First Amendment defenses applicable to a given statement, which composed the vast majority of the 2,017 accusations that were levied); and most importantly, across cursory, inaccurate, and illegal rulings during the case, since the State Bar judicial system is not composed of neutral adjudicators.

## IX.
## CAUSE OF ACTION 2
### CALIFORNIA STATES CONSTITUTION - ARTICLE 1, SECTION 17
### EQUAL PROTECTION: GENDER DISCRIMINATION
### (RELIEF SOUGHT: PROSPECTIVE INJUNCTIVE RELIEF)
### (Against All Defendants)

103.    **Incorporation**.  Plaintiffs hereby incorporate paragraphs 1-102, as if fully set forth into this cause of action.

104.    **State Constitution Equal Protection: Basics**.  Article I, Section 7 of the California Constitution provides in relevant part that "[a] person may not be … denied equal protection of the law."

105.    **NDC Gender Statistics**:  Upon a review of over 3,600 NDC over the last 25 years, Plaintiff developed the following table reflecting the gender targets by year.  Thus, based on the available data, average charging rates of men have consistently hovered around 80%, for the last 30 years, with the average percentage landing at 83.2%.

| TABLE 3 | | | |
|---|---|---|---|
| NDC GENDER COUNT | | | |
| YEAR | FEM | MALE | % MEN |
|  | 0 | 1 | 100 |
| 1996. | 0 | 2 | 100 |
| 1997. | 0 | 2 | 100 |
| 1998. | 0 | 0 | 0 |
| 1999. | 0 | 0 | 0 |
| 2000. | 0 | 3 | 100 |
| 2001. | 0 | 3 | 100 |
| 2002. | 1 | 7 | 87 |
| 2003. | 1 | 3 | 75 |
| 2004. | 1 | 4 | 80 |
| 2005. | 7 | 40 | 85 |
| 2006. | 16 | 125 | 88 |
| 2007. | 22 | 144 | 87 |
| 2008. | 18 | 182 | 91 |
| 2009. | 32 | 129 | 80 |
| 2010. | 28 | 188 | 87 |
| 2011. | 31 | 229 | 88 |
| 2012. | 47 | 241 | 84 |
| 2013. | 47 | 229 | 83 |
| 2014. | 42 | 205 | 83 |
| 2015. | 42 | 138 | 77 |
| 2016. | 47 | 161 | 77 |
| 2017. | 29 | 121 | 81 |
| 2018. | 32 | 126 | 80 |
| 2019. | 28 | 138 | 83 |
| 2020. | 31 | 132 | 81 |
| 2021. | 16 | 81 | 84 |
| 2022. | 34 | 88 | 72 |
| 2023. | 24 | 104 | 81 |
| 2024. | 10 | 107 | 91 |
| 2025. | 22 | 92 | 81 |
| Total | 608 | 3025 | 83.2% |

106.    **Practice of Gender Discrimination**.  As detailed above, Defendants practice gender discrimination by charging men about 83% of the time and this has been occurring for the last 30 years; therefore, it is an intentional and purposeful practice.

107.    **Gender Discrimination: Four-Fifths Rule**.  The high percentage shatters any and every metric for measurement of systemic discrimination, including the "four-fifths" rule, which

generally expects a protected class to be no less than 80% of the more dominant class.  In other words, for there to be no discrimination in this system assuming an equal population, women would have to be charged at least 80% as frequently as men; here, they are only charged about 20% as frequently as men (17/83).

108.    **Gender Discrimination: Purposeful**.  Given the length of the practice, Defendants' gender discrimination proclivities are long-term, targeted, systematic, and purposeful.  Plaintiff, being a member of a protected gender class, was therefore denied equal protection of the law upon revelation that Defendants, in a decision made in the Shadow System, decided to install a practice of charging men in grand disproportion to women.  Plaintiff was therefore treated differently (and more harshly) than women, including to be charged with 2,017 offenses in the *Willis* discipline matter.  The merits of the discipline case against Plaintiff, and all discipline cases involving men, are generally subordinated in favor of a practice to charge men, and not charge women, in the vast majority of cases.  There is no rational basis for treating men and women differently for purposes of attorney discipline.

109.    **Gender Discrimination: Injunctive Relief Warranted**.  Plaintiff has been discriminated against in a compendium of smaller ways and means by Defendants' sexually discriminatory practices, including for complaints against him to be elevated, prioritized, over-charged, prosecuted, found culpable, and punished in various ways; to live under a professional regulatory system that is defined by sexual discrimination; to be investigated, targeted, and punished by this discriminatory system; and to be punished in a harsher manner because of his gender.

### X.
### CAUSE OF ACTION 3
**CALIFORNIA STATES CONSTITUTION -
ARTICLE 1, SECTION 17**
**EQUAL PROTECTION: SELECTIVE PROSECUTION**
**(RELIEF SOUGHT: PROSPECTIVE INJUNCTIVE RELIEF)**
**(Against All Defendants)**

110.    **Incorporation**.  Plaintiffs hereby incorporate paragraphs 1-109, as if fully set forth into this cause of action.

111.    **Selective Prosecution: Basics**.  Selective prosecution is a constitutional violation founded in equal protection; therefore, it is a cause of action presented here under Article 1, Section 7 of the California Constitution.

112.    **Selective Prosecution: Facts**.  As detailed above, the basic complaint here is that lawyers in medium and large firms, and other politically connected actors to the State Bar system, employ techniques in the Shadow System – where they can bribe, maneuver, game, threaten, *etc.*, as exemplified by Mr. Girardi's tactics – to evade ethical prosecution, while the State Bar focuses on bringing disciplinary charges, 99% of the time, against solo and small-firm attorneys.

113.    **Selective Prosecution: Elements**.  Again, such a high percentage reflects a long-term, intentional, purposeful, invidious, irrational, and discriminatory practice in terms of targeting one attorney population over another, for no legitimate reason, based on a number of complaints against each population that is nearly equal (55/45 in favor of solo/small).  The facts relating to the Girardi scandal establish the most stunning example of how a politically connected attorney selectively avoids prosecution, and based on the many tactics he employed, Plaintiffs allege that there are additional, larger, and ongoing tactics and methods in the Shadow System that enable politically connected attorneys to be afforded special treatment, and be exempted from prosecution, while OCTC "throws the book" at solo and small-firm attorneys, like Plaintiff.

**XI.**
**CAUSE OF ACTION 4**

**CALIFORNIA STATES CONSTITUTION -**
**ARTICLE 1, SECTION 17**

**EXCESSIVE FINES**

**(RELIEF SOUGHT: PROSPECTIVE INJUNCTIVE RELIEF)**

**(Against All Defendants)**

114.    **Incorporation**.  Plaintiffs incorporate the allegations of paragraphs 1-113, as if fully set forth herein.

115.    **Excessive Fines**: Article I, Section 17 of the California State Constitution provides that "cruel or unusual punishment may not be inflicted or excessive fines imposed."

116.   **Excessive Fines: Abuses.**   Excessive fines have been used to retaliate against or chill the speech of political opponents.[58]   They have also been employed by government agencies (for example, in the California State Bar discipline system), as a source of revenue, as fines collected over the last 25 years amount to about $53M.[59]

117.   **Excessive Fines: Standard**.   A fine is excessive if it is grossly disproportional to the gravity of a defendant's offense.[60]

118.   **Excessive Fines: Admittedly Excessive**.   The fines imposed by the State Bar were clearly excessive at a time when Plaintiff was being prosecuted (in *Martinez*), as itself admitted by State Bar leadership.   In September 2024, Leah Wilson, then State Bar president, issued a press release stating in relevant part, "[t]he outstanding work of the Ad Hoc Commission on the Discipline System revealed that discipline costs imposed by the State Bar not only outpaced those of any other attorney licensing agency nationwide, but also exceeded those of any other professional licensing entity in California.   I'm proud that our Board recently approved a revised cost structure, significantly reducing these fees moving forward."

119.   **Excessive Fines: Fraudulent Characterization as Costs.**   However, as a matter of the rules, the State Bar cannot even bring itself to admit that these excessive fines are "fines."   The Bar, through its rules, instead pretends that these extraordinary impositions – which was over $27,000 for the finding of any ethical violation at all that a targeted attorney appeals as of 2023 – are "costs."

120.   **Excessive Fines: Fraudulent Characterization as Costs**.   This is simply a fraudulent statement.   The California legislature has announced appropriate fines in a discipline case, between a few hundred to a maximum of $50,000 for egregious misconduct, and are typically around $2,500 to $5,000.   The State Bar has no right to quintuple the applicable fines by fraudulently relabeling these significant financial impositions as "costs," when they are clearly not costs in any real sense of the word.

---

[58]   *See Browning-Ferris v. Kelco* (1989) 492 U. S. 257, 267.
[59]   *See Timbs v. Indiana* (2019) 586 U.S. 146, 154, *citing Harmelin v. Michigan,* 501 U. S. 957, 979, n. 9.
[60]   *See United States v. Bajakajian*, 524 U.S. 321, 327-28 (1998); *Anton v. United States*, 225 F.Supp.2d 770, 780 (E.D. Mich. 2002).

121.    **Excessive Fines: Illegally Tied to Resistance Rather than Merit.**  In addition, discipline fines – masquerading as costs – are imposed based on an automated schedule premised on the amount of resistance the targeted attorney mounts.[61]  But courts may not automate legal findings.[62]  Nor is it rational to tie fines to the amount of resistance an attorney mounts, instead of the gravity of the putative misconduct, in violation of one's due process right to resist a case.[63]

122.    **Excessive Fines: Excessiv**e. In 1994, a State Bar case illegally authorized the automated schedule as a proxy for its costs, but at the time, "costs" were only $3,309.  That would be about $7,000 today, adjusted for inflation.  But the fines imposed on Plaintiff were over $27,000 in *Martinez* and over $18,000 in *Willis* – over three times more than it did in 1994, adjusted for inflation.

123.    **Excessive Fines**: Discipline fines (imposed as "costs") imposed against Plaintiff totaled to some $45,000, in one case for making an appellate argument, and in *Willis*, for alleged overbilling and criticizing a probate judge who was assisting a criminal kidnapping operation.[64]  In other words, a massive number in fines has been imposed based on actions that are not even crimes; they involve allegations that Plaintiff did not comply with a 72-page, single-spaced CPRC rulebook. The entire system of prosecuting attorneys for lack of compliance with these rules and extracting four- and five-figure fines, based on vague standards, often technical violations, including for the mere act

---

61    Exhibit 1.
62    *Wolff v. McDonnell* (1974) 418 U.S. 539, 558 ["The touchstone of due process is *protection of the individual* against arbitrary action of government"]; *Demore v. Kim*  (2003) 538 U.S. 510, 551 [""Due process calls for *an individual determination*" before rights are taken away]; *People v. Peoples* (2016) 62 Cal.4th 718, 741, 747, 759, 768, 774 [repeatedly memorializing basic due process contention that defendant entitled to reliable *and individual determination* of his rights]; *United States v. Grant* (C.D. Cal. 2007) 524 F.Supp.2d 1204, 1214-1215 ["The right to substantive due process protects *individual* liberty against certain government actions regardless of the fairness of the procedures used to implement them"]; *People v. Hernandez* (1984) 160 Cal.App.3d 725, 747-748; Karst, Supreme Court (1977) "*1976 Term –Foreword: Equal Citizenship Under the Fourteenth Amendment,*" 91 Harv. L. Rev. 1, 5-11 [there is an "important due process interest in recognizing the dignity and worth *of the individual* by treating him as an equal, fully participating and responsible member of society"]; *In re C.P.* (2020) 47 Cal.App.5th 17, 30, fn. 8.
63    *United States v. Goodwin* (1982) 457 U.S. 368, 372; *Bordenkircher v. Hayes* (1978) 434 U.S. 357, 363; *see* Bus. & Prof. Code, §§ 6085, 6085, subd. (e) ["Any person complained against shall … have a fair, adequate, and reasonable opportunity and right … to exercise any right guaranteed by the California Constitution or the United States Constitution, including the right against self-incrimination."]; Bus. & Prof. Code, § 6085, subd. (e).
64    Bus. & Prof. Code, § 6086.10; *see* Exhibit 1:17

---

of making a statement (that is neither tortious nor criminal and is at best characterized by this dubious system as "false"), such that the attorneys are sometimes fined tens of thousands of dollars, is preposterous, excessive, illegal, and in violation of the California State Constitution.

124. **State Bar Rules Fines Not Worthy of Substantial Fines.** Attorneys are rarely criminals committing Penal Code offenses, yet California criminal fines, even after the commission of a felony, are typically only a fraction of the current State Bar fines (which are about $9K on average). There is no proportion in California law, when criminals routinely suffer lower fines than State Bar targets.

125. **State Bar Fiction of Wealthy Targets.** The State Bar's fine imposition system is possibly premised on the fiction that attorneys make lots of money and can afford these significant sums, but many solo and small-firm practitioners do not make much money. As relevant here, having been the continuous target of State Bar prosecutions for the last six years, undersigned counsel's once prosperous law practice has been financially decimated.

126. **Fines Beyond "Costs".** On top of "cost" fines, the State Bar also imposes "regular" fines, adding even more money to the agency's pot of extractions taken from the target if it "wins" the case – winning being curiously defined as victory on even one charge, even if it loses every other claim (which of course, it never does, since the system is biased in favor of ensuring that attorneys lose) – which are anywhere from $1,000 to $50,000 per case.[65]

127. **Fines in *Martinez*.** Thus, in Plaintiff's first case, *Martinez*, the one in which the discipline system refused to address the dispositive First Amendment disclosure principle, the "fine fine" imposed was $2,500, on top of $24,700.50 in "cost" fines, for a total fine package of over $27,000.

128. **Fines in *Willis*.** In Plaintiff's second discipline case, *Willis*, the system cannot face the truth and is simply inventing the idea that Plaintiff committed ethical misconduct, after Plaintiff moved heaven and earth to recover a kidnap victim, defeat probate crooks in two states, and the cost would have come in on budget at around $100K, if the probate system respected the most elemental principles of personal jurisdiction.

---

[65]   SBRP, Rule 5.137(A); Bus. & Prof. Code, § 6086.13.

129. **Illegal Prohibition on Challenges to Fines**. Incredibly, State Bar Rules prohibit any challenge to these fines.[66] Such a rule violates one of the oldest and most venerable notions of due process in the history of this republic, the prerogative of judicial review, originally expressed in *Marbury v. Madison*.[67]

130. **Illegal Prohibition on Challenges to Fines**. The State Bar's continued enforcement of this rule, even after its obvious *Marbury* illegality was pointed out, is a singularly telling indicator of how laser-focused the discipline system is on protecting its contrived revenue stream, without any regard for fundamental constitutional principles.

## XII.
## DEFENSES & IMMUNITIES

131. **Decision to Address Defenses and Immunities**. Plaintiffs do not ordinarily address immunities and defenses in their pleadings, however, the situation here is so unique that a responsible litigator is required to explain why none of the State Bar's many immunities and defenses possess merit in this case.

132. **Immunity Removed in Sham/Kangaroo Proceedings**. As a general matter, immunity is removed in cases where a defendant prosecutes a sham proceeding or a case is overseen by a kangaroo court.[68] As to the State Bar's various defenses and immunities, Plaintiffs believe, and thereby generally assert, that a sham proceeding, including one litigated in a kangaroo court, operates as a reason to deny the validity of that immunity defense.

133. **"Heads I Win, Tails You Lose" Defenses**. The complex of defenses and immunities typically advanced by the State Bar – which are akin to a maze with no obvious exit – are waged in such

---

[66] State Bar R. Proc, Rule 5.130(A).

[67] *Hamilton v. Dudley* (1829) 27 U.S. 492, 526, 7 L. Ed. 496; *United States v. Enas* (9th Cir. 2001) 255 F.3d 662, 673; *Byers v. Board of Supervisors* (1968) 262 Cal.App.2d 148, 157 [courts have inherent authority to determine whether statutes enacted by the Legislature transcend the limits imposed by either federal or state Constitutions [citing *Marbury*.]. "This power of the courts to pass on the constitutionality of legislative enactments is not derived from any specific constitutional provision, but is a necessary consequence of our system of government. It is the duty of courts to maintain supremacy of the Constitution."]; *People v. Ramirez* (1979) 25 Cal.3d 260, 267–268 ["For government to dispose of a person's significant interests without offering him a chance to be heard is to risk treating him as a nonperson, an object, rather than a respected participating citizen"].

[68] *See, e.g., CSMN v. Cordillera,* 956 F.3d 1276, 1284 (10th Cir. 2020).

a way by the Bar that it amounts to a procedural "heads I win, tails you lose" situation for the Plaintiffs. This is not a new tactic.  CDCR, a different California government agency, attempted similar tactics in *MDI v. CDCR*.[69]

134.    ***MDI* Solution to "Liability Free Zones**."  In *MDI*, the Ninth Circuit was faced with a creditor of CDCR seeking payment for services rendered, which, after a receivership was installed over the Department's medical function, both the receiver and CDCR asserted that they were immune from all claims.  The Ninth Circuit responded, "[t]he result which the Receiver and CDCR advocate is untenable.  A receivership does not create a liability-free zone for the business or organization that is the subject of the receivership.  If MDI has a valid claim, something we have to assume at this point, it cannot be left out in the cold with nowhere to turn."[70]

135.    **State Bar Cannot Be a Liability-Free Zone**.  To the extent the State Bar seeks to create its own "liability-free zone" by the assertion of various defenses and immunities, Plaintiff relies on *MDI* for the proposition that a Plaintiff with various colorable claims against both entities and individuals – the evidence here clearly raising legitimate constitutional issues in the wake of the compromised function, operation, and integrity of the State Bar discipline system – must possess a permissible method to vindicate these claims.

136.    **Immunities: Rarely for Entities**.  Plaintiffs generally dispute that entities are entitled to immunity, except for sovereign immunity under the 11th Amendment and ones specifically provided for by California state law (for example, pursuant to Government Code section 818.4, *et. seq.*)  Thus, Plaintiff generally alleges that entities are not entitled to judicial immunity, quasi-judicial immunity, qualified immunity, *Noerr-Pennington* immunity, the *Younger* doctrine, Government Code Section 821.6 Immunity, and any other immunity Defendants might cite.

137.    **Immunity: for Injunctive Relief**.  Plaintiffs generally allege that Defendants are not entitled to immunity with respect to claims for injunctive relief.

**XIII.**
**ELEVENTH AMENDMENT**

138.    **Eleventh Amendment: No Federal Activity**.  Plaintiff only seeks prospective

---

[69]    *MDI v. CDCR*, 585 F.3d 1211 (9th Cir. 2009)
[70]    *MDI v. CDCR*, 585 F.3d 1211, 1220 (9th Cir. 2009).

injunctive relief in this action, to reform the Discipline System from punishing attorneys in violation of the federal constitutional principles outlined herein, including claims that the Discipline System has crossed the line into self-interest, which is much the same concern raised in *Gibson*.  There, the United States Supreme Court affirmed the district court's decision to enjoin the Alabama Board of Optometry from suspending certain optometrists, without regard to concern about infringing on the 11th Amendment.  Moreover, under the reasoning of *MDI* (no "heads I win, tails you lose" situations), it is not a tenable position to assert that Plaintiff's resort to federal court, in order to reform a state function headed by the California Supreme Court, which Plaintiff contends is compromised along due process lines by its feature of preordained outcomes, can only be litigated consistent with the 11th Amendment in state court, where the California Supreme Court is itself the final arbiter.  Plaintiff alternatively contends that by creating, operating, and maintaining the Shadow System, all defendants waived their 11th Amendment immunity or are not entitled to it.

## XIV.
### RES JUDICATA/COLLATERAL ESTOPPEL

139.    **Claim Preclusion: No Final Judgment**.  The *Willis* discipline case is still pending.  Therefore, there is no final judgment that would implicate claim preclusion principles against Plaintiff Three.  There is no prior litigation between Plaintiffs One and Two and Defendants.  Even if the discipline case eventually proceeds to a final judgment in the California Supreme Court, given the evidence herein, it should not be accorded any weight since it is the product of the Shadow System.  In other words, proper respect for another court's judgment rests on the foundation that the other court adjudicated it consistent with basic due process principles.  In this case, Plaintiffs have presented a mass volume of undisputed evidence that the State Bar Discipline System operates in reality by virtue of a political free-for-all Shadow System instead of the legal Paper System, the *Willis* discipline case, with its 2,017 accusations, is a sham proceeding if ever there was one, prosecuted in a court defined by its automation, gender discrimination, and the commission of selective prosecution, and any judgment therefore cannot be respected for claim preclusion purposes.

140.    **Claim Preclusion: Shadow System Not Litigated**.  In addition, because the main evidence of the Shadow System – the foregone outcomes – has only been recently detected (in December 2025, after the Review Department's opinion), which was after the close of any permissible

procedural vehicles under the State Bar Rules of Procedure for the Discipline System to consider such evidence, this evidence was not actually litigated in the discipline proceeding, nor, given the timing of the detection, could it have been litigated consistent with the rules in that forum.

## XV.
### *ROOKER-FELDMAN* DOCTRINE

141.    ***Rooker-Feldman* Doctrine Basics: Lack of Subject Matter Jurisdiction**.  The *Rooker-Feldman* doctrine exists on the fundamental premise that the remedy for a state judgment that violates the federal constitution is an appeal to the United States Supreme Court; accordingly, state superior courts do not possess subject matter jurisdiction to hear such appeals.  This doctrine is not conceivably applicable to Plaintiffs One and Two.

142.    ***Rooker-Feldman* Doctrine: No Final Judgment**:  However, this case was filed before any final judgment has been entered in Plaintiff's discipline case, *Willis*.  By definition, it cannot constitute an appeal of a final state judgment since one does not even exist.

143.    ***Rooker-Feldman* Doctrine: Challenge to Shadow System Beyond *Willis*.**  Moreover, this case is miles beyond a mere challenge to one or two discipline cases, attendant to the *Martinez* and *Willis* discipline matters.  It is a fundamental challenge seeking to prove the general lawlessness of an entire so-called legal system (better named an "illegal system"), of which only one manifestation are the two referenced discipline cases.   Plaintiff, and all solo and small-firm attorneys, live under the constant threat of suspensions, fines, imposed obligations, disbarment, and a host of other burdens attendant to a Shadow System that is fundamentally lawless.  Plaintiff, discipline targets, and solo and small-firm attorneys in general are competitively disadvantaged by a system that only targets solo and small-firm attorneys, apart from any one discipline case, while medium and large firms are exempted.  Plaintiff, discipline targets, and solo and small-firm attorneys in general, are harmed by a system that targets men 83% of the time, which is another competitive disadvantage, apart from the general outrageousness of the Shadow System's practice of mass sexual discrimination at all, especially in a hyper-sensitized state like California.

144.    ***Rooker-Feldman* Doctrine: Beyond *Willis***.  Plaintiff Three invested years to become a skilled, 30-year civil litigation attorney, yet he has been personally and professionally decimated by Defendants, by virtue of their operation of the Discipline System through a Shadow System of

unpublished rules, principles, priorities, and political free-for-all – all of which are illegal, tortious, and deeply offensive – in all of its forms and formats including, but certainly not limited to, the direct imposition of disciplinary charges.  As another example of the ongoing harm, certain state judges use the Discipline System to retaliate against critics.  This is another feature of the Shadow System: the power of state judges to employ it to silence or punish critics, including in the *Willis* case.  Persons who detect malfeasance in state court, including Plaintiff who detected that a San Diego probate judge was systematically favoring her probate insider colleagues, can be targeted by such judges through the imposition of pretextual and invalid disciplinary charges.  Many seasoned, competent, and ethical attorneys are targeted by the Shadow System, because they are the ones that the State Bar sees as politically viable to attack.

145.     ***Rooker-Feldman* Doctrine: Systemic Challenge Beyond *Willis***.  Thus, regardless of how the *Willis* discipline case might turn out, Plaintiff seeks significantly broader, prospective injunctive relief based on facts and dynamics of the Shadow System that go significantly beyond the rulings in *Martinez* or *Willis*.  In other words, this case is no more a "*de facto*" appeal of *Willis* than the *Plata* case seeks a remedy for the poor medical care afforded to Mariano Plata.

146.     ***Rooker-Feldman*: Exception for Extrinsic Fraud**.  Plaintiff also avails himself of an exception to the *Rooker-Feldman* doctrine for situations involving extrinsic fraud.[71]  The Shadow System's operation qualifies for the extrinsic fraud exception to any judgment, including to the earlier *Martinez* discipline judgment, although once again, a suit seeking prospective injunctive relief, based on challenging State Bar practices, is not foreclosed because of a single instance of that system, no matter how it turned out.[72]

147.     ***Rooker-Feldman*: No Jurisdiction in Discipline Forum for Civil Claims**.  The California Supreme Court possesses exclusive jurisdiction over disciplinary matters, but civil injunctive claims arising out of such matters cannot be brought in discipline matters.  Therefore, while the Supreme Court does possess jurisdiction over discipline, civil injunctive claims, whether they putatively emanate from the discipline case or from an extrajudicial shadow system that sits above it, are not

---

[71]  *See, e.g., Kougasian v. TMSL,* 359 F.3d 1136, 1140-41 (9th Cir. 2004).
[72]  *See, e.g., Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 470; *San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1067-1068.

permitted during disciplinary matters.  Consequently, such claims cannot be barred on the impossible basis that no court has jurisdiction to hear them, in light of *MDI*.

## XVI.
### *YOUNGER* DOCTRINE

148.     ***Younger* Doctrine: Basics**.  Federal law allows federal court to enjoin a state action on certain conditions.[73]  This does not apply to the entity plaintiffs.

149.     ***Younger* Doctrine: Basics**.  The *Younger* doctrine sets forth a paradigm to determine whether a court should intervene in a state court proceeding.[74]

150.     ***Younger* Doctrine: Injunctive Relief Only.**   However, as Plaintiff is not seeking injunctive relief to stop the *Willis* discipline action in this lawsuit, the *Younger* doctrine has no application here.

## XVII.
### *NOERR-PENNINGTON* IMMUNITY

151.     ***Noerr–Pennington* Doctrine: Basics**.  This doctrine ensures that those who petition the government for redress of grievances enjoy immunity from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved.[75]  The idea here is that OCTC possesses a First Amendment right to petition, by invoking the legal system to charge discipline targets with ethics offenses.  Plaintiffs dispute that the *Noerr–Pennington* immunity applies to defendant entities.  Plaintiffs dispute that it has any application to entity plaintiffs.  Moreover, generally speaking, defendants' First Amendment rights to petition are limited by their compliance with other laws, such as the federal Due Process and Equal Protection clauses.

152.     ***Noerr–Pennington* Doctrine: Exceptions.**  In the *Noerr-Pennington* doctrine, there are multiple exceptions for sham litigation.[76]

153.     ***Noerr–Pennington* Doctrine: First Sham Exception**: The first sham exception is where the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically

---

[73]   28 U.S.C. § 2283; *see Mitchum v. Foster*, 407 U.S. 225, 235-37 (1972) [Title 42 U.S.C. § 1983 been construed to provide implied authority to enjoin state court proceedings where necessary to vindicate federal constitutional rights].

[74]   *Middlesex County v. Garden State Bar*, 457 U.S. 423, 432 (1982).

[75]   *PREI v. Columbia Pictures*, 508 U.S. 49, 56 (1993).

[76]   *PREI v. Columbia Pictures*, 508 U.S. 49, 54 (1993).

expect success on the merits."[77]  No reasonable person could think that a discipline prosecution alleging 2,017 distinct ethical accusations has any merit, otherwise it would not have been pled by abusing power to such an obscene degree.  (The fact that the Review Department has validated *Willis* is a product of its automation of outcomes.)

154.    ***Noerr–Pennington* Doctrine: First Sham Exception**.  Moreover, the case against Plaintiff was based on OCTC's refusal to face the fact that McClain was incompetent.  Thus, the discipline action is akin to a government prosecuting a defendant based on the "magic bullet" theory being true.  Once it admits – and here, the Hearing Department and Review Department eventually admitted McClain was incompetent – that the magic bullet theory is untrue, the entire analysis flips like a light switch.  McClain's incompetence meant she was kidnapped; once it was a kidnapping, Plaintiffs' various appellate and federal efforts trying to persuade the system to invalidate the trust case, and to thereby immediately undo the entire kidnapping operation (by returning McClain to her rightful custodians, the Willis family, pursuant to McClain's estate plan), were both reasonable and necessary.  The probate court had no jurisdiction; seeking to establish that reality was reasonable.  Indeed, had the system faced the reality of McClain's incompetence in October 2015, the $650K bill would have been within the $100K contractual expectations.  But as the probate judge refused to face McClain's incompetence, dubiously pretending that personal jurisdiction was not a requirement in trust actions, the *Willis* case required ninth months of daily litigation work to recover the hostage and this greatly escalated the bill.

155.    ***Noerr–Pennington* Doctrine: First Sham Exception**.  In other words, anyone can fabricate a massive discipline case against an attorney based on treating a key, elemental assumption of a legal case as if it is untrue.  Moreover, OCTC's prosecutors were diabolical enough to mask this linchpin assumption in a sea of accusations.  For example, what attorney could not be prosecuted in the most massive case of ethical misconduct by virtue of his entire failure to attend to a client's case, premised on the assumption that the attorney actually represented the client in question.  All the criticism related to the attorney's putative failure to perform work collapses on the failure of this linchpin assumption.  Naturally, there is no basis for discipline.   The same dynamic applies here.  In a

---

[77]    *PREI v. Columbia Pictures*, 508 U.S. 49, 56 (1993).

Discipline System that admits McClain was incompetent, it flips the entire analysis in Plaintiff's favor.

156. ***Noerr–Pennington* Doctrine: Second Sham Exception**:  A second sham exception under the *Noerr–Pennington* doctrine exists if the administrative prosecution "consists of making intentional misrepresentations to the court."[78]  Here, the NDC in question made several thousand false false representations in the NDC based on treating Plaintiff's private communications to the client (which basically advised the client, accurately, that probate insiders, having kidnapped McClain, were after their inheritance and the judge's attitude was a serious problem in her decisions refusing to do anything about it) as false.  The accusations by OCTC were false for at least three reasons (1) issuing that many accusations is itself conclusive evidence of their falsity, because it is a simple (and massive) abuse of power to allege thousands of accusations at a discipline target, which masks the NDC's underlying lack of merit; (2) OCTC was not interested in the truth, it was interested in retaliating against Plaintiff for detecting and revealing in a December 2022 LA Times article that OCTC charges solo and small-firm attorneys 99% of the time; and (3) the accusations are based on pretending there was no conspiracy to steal McClain's estate, when of course, any group of people that takes the trouble to coordinate a multi-state criminal kidnapping operation is driven by leveraging that power for as much as can be gained, including, preferably, to capture all estate assets.  Indeed, the lead kidnapper, Barbara Carson, left a note to herself indicating that she expected to be able to sell one of two of McClain's houses on or around August 5, 2015, even though she never possessed any inheritance rights in McClain's estate plan, whatsoever.  Carson kidnapped McClain two days later, on August 7, 2015, with the obvious hope of capturing McClain's estate through one tactic or another, starting with the sale of the first property, once her co-conspirators (illegally) seized control of the estate through the probate system.

## XVIII.
## JUDICIAL IMMUNITY

157. **Judicial Immunity: Entities**.  Plaintiffs generally dispute that entities are entitled to judicial immunity.  Plaintiffs also generally dispute that entities are entitled to judicial entity for cases seeking injunctive relief.

158. **Judicial Immunity: Not Absolute**.  The defense of judicial immunity is sometimes

---

[78]   *Sosa v. DIRECTV*, 437 F.3d 923, 938 (9th Cir. 2006).

referred to as "absolute judicial immunity."  However, this doctrine is subject to specific standards to qualify for such immunity, much as other immunity defenses.  There is nothing "absolute" about "absolute judicial immunity" and it will not be referred to as such.

159.    **Judicial Immunity: Not Available for the Shadow System**.  Defendants are not entitled to judicial immunity for their decision to create, operate, and maintain the Shadow System, in terms of a pursuit of injunctive relief.

160.    **Judicial Immunity: Policy**.  In the seminal 1872 case of *Bradley v. Fisher*, the courts first announced the policy underlying judicial immunity: it is "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequence to himself."[79]  There is no real "personal consequence" to an entity in an injunctive case, except to modify the entity's behavior to conform it to lawful behavior – a proposition that should not be controversial.

161.    **Judicial Immunity: Standard.**  In a 1978 U.S. Supreme Court decision, *Stump v. Sparkman*, the Court announced a two-part test: one, did the judge deal with the plaintiff in his judicial capacity (if no, no immunity), and if yes, did the judge act in the "'clear absence of all jurisdiction."[80]

162.    **Judicial Immunity: Defendants Did Not Deal with Plaintiff, Per *Stump***.  In creating, operating, and maintaining the Shadow System, Defendants did not deal with Plaintiffs in their judicial capacity: they had no contact with Plaintiffs at all.  Again, the Shadow System is an extrajudicial legal system with its own set of rules, practices, and policies, outside the scope of any legitimate judicial activity.  These are the wrongful acts.  Plaintiff was not present when this activity occurred – these rules, practices, and policies were created and implemented long before Plaintiff Three's first discipline case, *Martinez*.  Therefore, on a straight reading of *Stump's* first element – that the judge dealt with the plaintiff in his judicial capacity – in implementing the Shadow System (somewhere around the early oughts), Defendants did not deal with any Plaintiff at all and certainly not in their judicial capacity.  Accordingly, Defendants do not enjoy judicial immunity.  In addition, Defendants had no contact whatsoever with Plaintiffs One and Two, at any time.  Defendants Guerrero

---

[79]    *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L. Ed. 646 (1872).
[80]    *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

and California Supreme Court dealt with Plaintiff Three in *Martinez*, but they were carrying out rules, practices, and policies of the Shadow System and thus not entitled to judicial immunity.

163.    **Judicial Immunity: Expansion in _Rankin_.**  In 1980, in the specific situations where judges preordain their rulings, in *Howard v. Rankin* the Ninth Circuit set a standard for absolute judicial immunity by observing that, "[a]lthough a party conniving with a judge to predetermine the outcome of a judicial proceeding may deal with him in his 'judicial capacity,' the other party's expectation, i.e., judicial impartiality, is actively frustrated by the scheme. In any event, the agreement is not 'a function normally performed by a judge.'  It is the antithesis of the 'principled and fearless decision-making' that judicial immunity exists to protect."[81]

164.    **Judicial Immunity: Contraction in _Ashelman_.**  However, six years later, in *Ashelman v. Pope*, the Ninth Circuit overruled its decision in *Rankin* by citing *Dykes*, an 11th Circuit case, which *Ashelman* quoted as saying, "Were we to follow *Rankin*, judges, on mere allegations of conspiracy or prior agreement, could be hauled into court and made to defend their judicial acts, the precise result judicial immunity was designed to avoid."[82]

165.    **Judicial Immunity: Reliance on _Holloway_.**  The *Ashelman* Court also cited *Holloway*, a Fifth Circuit case, which concluded that "*Rankin* is inconsistent with the fundamental policies underlying judicial immunity."[83]

166.    **Judicial Immunity: Policy Analysis Favors Liability.**  The conclusion in *Ashelman*, overruling *Rankin*, was undergirded by five policies that justified immunity, even for a dynamic as egregious as a conspiracy to preordain judicial outcomes.  However, an examination of those five policies reveals that the opposite conclusion is warranted here (that is, *Ashelman* is distinguishable) for the straightforward reason that a *practice* of preordaining judicial rulings represents a dramatically, and exponentially, greater threat to the legal system than the risks associated with releasing the protections of judicial immunity for the mere benefit of a single case.

167.    **Judicial Immunity: Five Policies.**  The five policies, and their refutation, is set forth in

---

[81]    *Howard v. Rankin*, 633 F.2d 844, 847 (9th Cir. 1980).
[82]    *Ashelman v. Pope*, 793 F.2d 1072, 1076-1077 (9th Cir. 1986), *citing Dykes v. Hosemann*, 776 F.2d 942, 946 (11th Cir. 1985).
[83]    *Ashelman v. Pope*, 793 F.2d 1072, 1076-1077 (9th Cir. 1986), *citing Holloway v. Walker,* 765 F.2d 517, 522 (5th Cir. 1985).

Table 4:

| TABLE 4 | | |
|---|---|---|
| **No.** | **POLICY** | **REFUTATION** |
| 1 | A judge must be free to act upon his own convictions. | A practice of preordaining rulings already establishes that the judge is not acting based on his own convictions, but as loyalty to the principles of an illegal shadow system.  The Shadow System here defeats virtually every other principle, law, postulate, rule, and practice that otherwise makes a legal system legitimate.  The Shadow System is by definition systematically dishonest, and pursuant to settled California law as announced many times by the California Supreme Court itself, "without value in its place in the administration of justice."[84] |
| 2 | The losing party may be overly willing to ascribe malevolent motives to the judge. | Plaintiff takes no position on the judges' motives for operating the Shadow System, for purposes here; the undisputed facts speak for themselves.  However, it is probably safe to draw the inference that the creation, operation, and maintenance of a shadow legal system, based on violating the most fundamental rules of constitutional law, does not reflect "good faith." |
| 3 | Judges facing the prospect of damages would be driven to wasteful and distractive self-protection devices, such as excessive record-keeping. | There is no amount of record-keeping that can justify the creation, operation, and maintenance of the Shadow System.  Any judge who participates in the Shadow System possesses every incentive for his activity to remain secret and ideally undiscoverable, not, in contrast, for him to be distracted by maintaining "extensive record-keeping" of his own illegal behavior. |
| 4 | Alternative remedies such as appeal and impeachment reduce the need for private rights of action against judges. | As the Shadow System in this case is authorized by the California Supreme Court, the highest court in California, resort to appellate review is of little value. |
| 5 | The ease of alleging bad faith would make a qualified "good faith" immunity virtually worthless | The substance of the evidence supporting the Shadow System has been presented in various motions and has been met with no opposition.  Therefore, the essential facts are not in dispute.  A "good faith" immunity cannot possibly apply to the creation, operation, and maintenance of an |

---

[84]  *Tatlow v. State Bar of California* (1936) 5 Cal.2d 520, 524; *Alkow v. State Bar of California* (1952) 38 Cal.2d 257, 264; *Tomlinson v. State Bar* (1975) 13 Cal.3d 567, 577; *Coppock v. State Bar* (1988) 44 Cal.3d 665, 679-680.

| TABLE 4 | | |
|---|---|---|
| **No.** | **POLICY** | **REFUTATION** |
| | | extrajudicial legal system founded on automating outcomes, practicing systematic gender discrimination, practicing selective prosecution, and imposing excessive fines. |

168.    **Judicial Immunity: Evidence of a Practice Changes the Analysis**.  The cases addressed to judicial immunity invariably involve a single dispute.  Probably the most controversial of these situations involved a judge who allegedly took control of an oil company as a bid to capture it with his confederates by abusing judicial power.[85]  But even an egregious example of alleged abuse of judicial power like that alleged in *Holloway* is categorically incomparable to a *practice* in which State Bar discipline targets are *systematically* discriminated against, *systematically* subject to losing their cases through automation of outcomes, and *systematically* subject to excessive fines, in service to the priority of revenue generation.   This quantum of illegality must be subject to a remedy.

169.    **Judicial Immunity: Shadow System Profoundly Dangerous**.  Indeed, Defendants' creation, operation, and maintenance of the Shadow System represents one of the singularly greatest threats to the public interest in the State of California today.  Day in and day out it decimates solo and small-firm practitioners for the practical benefit of lawyers who are politically connected to the State Bar.  It allowed felons like Girardi to operate with impunity and cause unspeakable damage to his clients – members of the public.  The Shadow System is fundamentally a fraud scheme, and reduces the pool of solo and small-firm attorneys able to represent individual citizens by inaccurately marking them with various professional scarlet letters.

170.    **Judicial Immunity: Shadow System Uniquely Parasitic:**  Moreover, the Shadow System's illegal revenue generation scheme not only takes the form of cash payments made by targeted attorneys pursuant to fines.  State Bar disciplinary judgments contain a compendium of obligations and effectively support an entire ecosystem of parasitic businesses, such as MPRE providers and other beneficiaries of dubious value to practicing lawyers, inherent to the many probation conditions that extract money from discipline targets upon most attorneys' decisions to capitulate.

---

[85]    *Holloway v. Walker*, 765 F.2d 517 (5th Cir. 1985).

171.    **Judicial Immunity: Must be Remedy to Combat Extrajudicial Legal System**.  For these reasons, judicial immunity is not a viable defense in this case, as there is no possible way a rational legal mind can tolerate the creation, operation, and maintenance of an entire extrajudicial legal system, one defined by practices involving bribery, corruption, foregone rulings, mass gender discrimination, and selective prosecution, so as to thereby justify judicial immunity in a mere injunctive effort to reform it.

**XIX.**
**QUASI-JUDICIAL IMMUNITY**

172.    **Quasi-Judicial Immunity: Entities**.  Plaintiff generally alleges that entities are not entitled to quasi-judicial immunity.  Plaintiff generally alleges that entities are not entitled to quasi-judicial immunity when the relief sought is only injunctive.  Plaintiffs generally allege that Defendants forfeited their immunity by participating in the Shadow System.  Plaintiffs generally allege that quasi-judicial immunity does not apply to the entity plaintiffs.

173.    **Quasi-Judicial Immunity: OCTC Not Similar to Criminal Prosecutors**.  Quasi-judicial immunity ordinarily provides immunity for officials performing functions that are essentially identical to prosecutors.  However, exceptional treatment is warranted here, because OCTC's prosecutorial functions are not similar or identical to that of regular prosecutors.  Rather, the legitimacy of the State Bar prosecutorial function is subordinated to the creation, operation, and maintenance of the Shadow System, which no legitimate criminal prosecutor possesses or has access to, by virtue of features in which men are, in advance, systematically targeted in an OCTC-wide gender discrimination practice; by an outside-the-system understanding to target solo and small-firm practitioners in terms of selective prosecution; and by a conspiratorial understanding with State Bar judges that the discipline proceeding outcome is foregone.  Consequently, serious, responsive submissions by the State Bar are not necessary because, again, prosecutions are discriminatory, a sham, and foregone.  It is an unnecessary expenditure of time for OCTC prosecutors to bother filing competent briefs, as repeatedly reflected by the cursory filings in both the *Martinez* and *Willis* discipline matters.

174.    **Quasi-Judicial Immunity: No Shadow System in Regular Criminal Law**.  There is no known "dual system" in any other area of prosecutorial law to Plaintiff's knowledge, where there is a Paper System and a Shadow System, such that it can be said that the functions of OCTC prosecutors are

comparable, similar, or identical to that of regular prosecutors.  Rather, it is assumed by Plaintiff in every other prosecutorial jurisdiction that prosecutions are based who commits crime; there is no Shadow System picking on one gender, on one professional group (like solos/small), or automating outcomes.  There is no way to game a regular prosecutorial system to allow long-term impunity from criminal behavior, by bribing prosecutors across an entire department or putting them on your payroll.  There is no criminal system where an attorney like Tom Girardi could commit felonies for decades on end with impunity by simply ingratiating himself with a local prosecutor's office and thereby maneuvering his way out of over 200 crimes.  Accordingly, because OCTC plays by both the rules of the Paper System and the Shadow System, whereas regular prosecutors only play by their Paper System, OCTC's function is simply not like a regular prosecutorial office and it is not entitled to quasi-judicial immunity as a result.

175.    **Quasi-Judicial Immunity: Shadow System Creates Attorneys Who Are "Too Big to Prosecute**."  In the regular criminal setting, there is no criminal who is "Too Big to Prosecute," which appears to be the case with respect to attorneys in medium and large law firms vis-à-vis the State Bar Discipline System.  It was obviously the case with Girardi.  In the real world, celebrities or powerful citizens are routinely prosecuted when they commit crimes – indeed, criminal prosecutors often see such cases as desirable to advance their career – as opposed to the criminal using his celebrity status or professional standing to generally immunize himself from the criminal law.

176.    **Quasi-Judicial Immunity: *Butz* Factors Applied**.   Thus, OCTC prosecutors are subject to essentially the same arguments as Plaintiff advances to overcome judicial immunity, except that a slightly different set of factors governs the policy analysis, derived from *Butz v. Economou*, in cases involving administrative agencies.[86]  The *Butz* analysis justifies immunity because it was thought that there was *(i)* insulation of the judge from political influence, *(ii)* the availability of precedent in resolving controversies, *(iii)* the adversarial nature of the process, and *(iv)* the correctability of error on appeal.  Yet, these assumptions all fail in the situation where illegal practices are carried out in a Shadow System, including daily gender discrimination, selective prosecution, and automation of outcomes.  Specifically, an administrative system that only rules one way is clearly not free of political

---

[86]    *Butz v. Economou*, 438 U.S. 478, 512 (1978).

influence on judges; precedent and case law simply do not matter if the outcome is foregone; the adversarial nature of the process also does not matter given foregone outcomes; and there is no meaningful correctability on appeal, when the Shadow System originates in the highest court itself.

177. **Quasi-Judicial Immunity: Shadow System**.  Plaintiff is not suing OCTC for filing the NDC.  The discipline case waged against Plaintiff in *Willis*, while offensive, inaccurate, and a pretext to disguise an underlying criminal kidnapping aided by a probate judge, is just a symptom, or element, of damage from Defendants' unconstitutional practices.  The legal wrongs are the creation, operation, and maintenance of the Shadow System, which is a dispositive feature that simply does not exist in regular prosecutorial systems.

178. **Quasi-Judicial Immunity: No Immunity for Sham Filings**.  Plaintiff believes and thereon alleges that, even if someone regarded this case as a challenge to a single discipline prosecution – of course, it is not, as it is a prospective injunctive case challenging unconstitutional practices – sham filings, including ones that are as obviously a sham as one alleging 2,017 distinct ethical offenses (again, an excellent disguise to mask the misconduct inherent to an underlying criminal kidnapping operation aided by a probate judge), operates as an exception to quasi-judicial immunity.

## XX.
## QUALIFIED IMMUNITY

179. **Qualified Immunity: Inapplicable**.  Qualified immunity applies as a defense if either no constitutional right was involved, or even if it was, that right was not clearly established at the time of the incident.  Here, it has been established for many years that gender discrimination, selective prosecution, biased judges, and excessive fines are clearly illegal, and it is obviously illegal to engage in any of these wrongs on a systematic basis.[87]  Plaintiffs generally dispute that Defendants are entitled to qualified immunity for an injunctive action.

---

[87]  Right to unbiased judges: *see, e.g.*, *In re Murchison* (1955) 349 U.S. 133, 136; *Tumey v. Ohio* (1926) 273 U.S. 510, 532.
Freedom from gender discrimination: *see, e.g.*, *Reed v. Reed* (1971) 404 U.S. 71, 75.
Freedom from selective prosecution: *see, e.g.*, *Oyler v. Boles* (1962) 368 U.S. 448, 456; *Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 290.
Freedom from Excessive Fines: *see, e.g.*, *Timbs v. Indiana* (2019) 586 U.S. 146, 151.
General exception for any "obvious" wrong: *see, e.g.*, *Hope v. Pelzer* (2002) 536 U.S. 730, 738.

## XXI.
## GOVERNMENT CODE SECTION 818.4 IMMUNITY

180.    **Section 818.4 Immunity: Basics**.  Government Code section 818.4, as relevant here, states that "[a] public entity is not liable for an injury caused by the … suspension or revocation of … any … license … or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be … suspended or revoked."  Plaintiffs believe and allege that this is a state immunity, which is inapplicable to a federal claim.  Plaintiffs believe and allege that Section 818.4 immunity does not apply to claims seeking prospective injunctive relief.[88]  Plaintiffs also believe and allege that it would not apply to the entity plaintiffs, since no license of theirs has been suspended.

181.    **Section 818.4 Immunity: Limited to California Supreme Court**.  Because only the California Supreme Court possesses authority to "determine" whether an attorney's license to practice law should be revoked, only Defendant California Supreme Court can potentially avail itself of this immunity.  Individual justices do not make the determination.   Other Defendants created, implemented, and/or enforced illegal practices that warrant injunctive relief, apart from any suspension imposed by the California Supreme Court.  In seeking prospective injunctive relief, Plaintiff is not suing over the *Martinez* 30-day suspension itself and Plaintiff has not been suspended in *Willis*.  Plaintiff is suing Defendants for the creation, operation, and maintenance of the Shadow System, which reflect a series of unconstitutional practices, outside the scope of Defendants' roles and offices.

182.    **Section 818.4 Immunity: Exceptions Are Necessary for Constitutionality.**  Furthermore, to the extent section 818.4 is read to authorize immunity for any tort, wrong, or crime whatsoever that a public entity may commit that results in suspension – for example, if the justices of the California Supreme Court, acting in their official capacity, conspired to frame an attorney for murder, which then justified the Court to pretextually suspend his license to practice – this immunity law as applied is irrational and violates state and federal due process.  In other words, to be constitutional, section 818.4 must impose some limits on the misconduct that may justify immunity.  We cannot have government officials shooting people, framing people, or kidnapping people, as

---

[88]    *See Fairview v. Department of Forestry* (2015) 233 Cal.App.4th 1262, 1272.

hypothetical examples, or as a real one, creating extrajudicial legal systems (composed of constitutional wrongs) to enrich themselves through pretextual charges based on suspending the citizenry's professional licenses.  As per other arguments and policies discussed herein, engaging in sham behavior represents a common exception to immunity.  Unlike the normal reasons a license might be suspended and such suspension would be immunized pursuant to 818.4 – for example, based on garden-variety negligence – the California Supreme Court's disciplinary practices are dramatically more problematic, in creating a sham *system*.  Automated outcomes remove all legitimacy to a system and thus justify denying public entity immunity from injunctive relief, within ordinary parameters for this immunity law to remain constitutional.

## XXII.
## GOVERNMENT CODE SECTION 821.2 IMMUNITY

183.    **Government Code Section 821.2 Immunity: Text.**  Government Code Section 821.2 states in relevant part that, "[a] public employee is not liable for an injury caused by his …. suspension or revocation of … any license … or similar authorization where he is authorized by enactment to determine whether or not such authorization should be … suspended or revoked."

184.    **Government Code Section 821.2 Immunity: Inapplicable**.  As Plaintiff is bringing only federal claims in this action, this immunity is inapplicable.  Plaintiffs generally allege that this code section does not restrict claims for prospective injunctive relief.

## XXIII.
## GOVERNMENT CODE SECTION 821.6 IMMUNITY

185.    **Section 821.6 Immunity: Basics**.  Government Code section states that, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."   This is also inapplicable in that no state claims have been filed as of this writing.  Plaintiffs generally allege that this provision does not restrict claims for prospective injunctive relief.

186.    **Section 821.6 Immunity Limitations: Must Be Within the Scope**.  Beyond this, as detailed above, Defendants have created an entire extrajudicial legal system in the Shadow System.  While State Bar employees perform acts within the Paper System, such as filing notice of discipline charges or conducting Hearing Department trials, acts which might themselves be immunized, the

creation, operation, and maintenance of the Shadow System is outside the scope of Defendants' employment.

187. **Section 821.6 Immunity Limitations: Shadow System Outside the Scope**.  One must appreciate the scale and magnitude of effort to create an extrajudicial legal system, one where the result is that 99% of discipline targets are solo and small-firm practitioners, where more than 80% of charges target men, and where, on an inter-generational basis, discipline targets are never victorious in the California Supreme Court (despite broad grounds for relief under California Rules of Court, Rule 9.16). The Shadow System is a substantial enterprise.  It has been created, operated, maintained, and refined over many years, passed along by generations of government lawyers and judges from one to the next, and yet, quite incredibly, it has never been detected (to Plaintiff's knowledge) by any of the attorney victims.

188. **Section 821.6 Immunity Limitations: Shadow System Outside the Scope**.  The Shadow System's illegal rules, practices, and policies must be created, operated, and maintained outside of normal legal channels, as no ordinary rule-making mechanism, or permissible policy meeting, would allow even the discussions of such practices.  For example, there is no procedure inside the scope of State Bar employees' employment whereby they could collectively meet to discuss, and ultimately decide to target, solo and small-firm practitioners, or men, or automate outcomes.  For this reason, the creation, operation, and maintenance of the Shadow System necessarily sit outside the scope of employment for any employees involved in it.  As detailed above, and based on information and belief, Plaintiff alleges that it was created outside of the State Bar, in places like Mr. Girardi's private jet, or at CAALA events in Las Vegas, or at Morton's Steakhouse.  Plaintiff does not know, and cannot know, at this stage exactly where and how Defendants' Shadow System was created, is operated, and is maintained.  But its rules, policies, and practices are clearly outside the scope of any legitimate regulatory or judicial function and therefore they sit outside of any legislative immunity.

189. **Section 821.6 Immunity: Beyond Malice, Lack of Probable Cause**.  There is one notable difference between public employee immunity under section 821.6 and public entity immunity under 818.4, in that employee immunity is granted for administrative prosecutions even when the employee acts maliciously and without probable cause.  Plaintiffs generally allege that the creation,

operation, and maintenance of the Shadow System goes beyond the malice exception in section 821.6. While a garden variety case might rightly justify such immunity, the idea of applying the malice/probable cause qualification to immunize the Shadow System's illegal practices is constitutionally untenable. The policy undergirding this exception is to "protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil action."[89] But there is surely a constitutional line of rationality where the policy of protecting employees from harassment is breached, in a situation when the employees, along with the entities, conspire to construct an entire extrajudicial legal system composed of torts and crimes, in order to harass the solo and small-firm attorney population. Application of immunity in this circumstance is government gone mad; it is government abusing immunity to systematically harass, and extract money from, the target population.

190. **Section 821.6 Immunity: Outside of Malice, Probable Cause** *Etc*. Notably, in 1963, when the Government Tort Claims Act was enacted, government agents possessed no significant financial stake in the outcome of a given case. They were classic public servants, performing a job that was not well paid relative to the private sector, and rightly expected that they would at least avoid becoming a target of litigation for their public service. Today, the pendulum has swung to the opposite end: no longer is the concern that public servants will be harassed by vexatious attorneys; the concern is that public servants engage in harassment of discipline targets as part of a tortious, unconstitutional, and illegal revenue-generation business, one in which they are direct stakeholders. Today, as reflected by the massive amount of money that government agents have imposed as fines against attorneys, estimated at $53M imposed over the last 25 years (which is surely a reason why OCTC prosecutors, often with limited skills as litigators, often make as much or more than federal judges), the underlying policy of protecting OCTC prosecutors with immunity has evaporated. As reflected by the facts relating to Girardi, and underscored by the practices of the Shadow System, OCTC prosecutors are engaged in all manner of crimes, torts, and wrongs. OCTC prosecutors abuse the privilege of immunity – for example, charging a discipline target with 2,017 accusations and then forcing him to answer such a morass at trial, just five months later – on the assumption that these immunity provisions will protect them as an absolute defense, no matter how much they develop the Shadow System. The Shadow System practices

---

[89] *Ovando v. Los Angeles* (2008) 159 Cal.App.4th 42, 72, *citing Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1293.

multiple forms of tortious behavior, committed daily, committed for many years, and to be committed in perpetuity if some court does not find a way to scale back applicable immunities. This case provides that cause, fundamentally premised on maxim, "[w]hen the reason of a rule ceases, so should the rule itself."[90] While Plaintiffs are not saying that immunity should be simply eliminated, they are saying that, by the time the government has become a provable, daily tortious actor in a long-term fraud scheme, by carrying it out through an extrajudicial legal system, there needs to be a common law exception (or other relief) created in order to restore balance to the system and preserve the constitutionality of statute. In short, a Shadow System cannot simply be chalked up to statutory "malice, without probable cause," as if this case presents nothing more than a single, overzealous prosecutor.

## XXIV.
## CAUSE SPLITTING

191. **Cause Splitting: Damages v. Injunctive Relief**. This case only seeks prospective injunctive relief, as a product of unconstitutional practices committed within the Shadow System that, as one of several forms of manifestations, results in attorneys being wrongfully targeted by the discipline system. Plaintiff is merely an example of this. The reason Plaintiffs only seek injunctive relief on a prospective basis is to avoid any argument that the claims in this case represent a forbidden appeal of Plaintiff's discipline action.[91] In other words, Plaintiffs claims are colorable on a larger basis, regardless of what happens in Plaintiff Three's discipline action.

192. **Cause Splitting: Including Injunctive Claims in Damage Suit Risks _Rooker-Feldman_ Violation.** Plaintiff is not seeking any remedy or relief in this action that can be provided by the discipline courts; those courts do not afford a litigant the right to affirmatively seek injunctive relief for unconstitutional practices, and as such, it cannot be argued that the proper jurisdiction for a damage claim resides within the discipline action (_viz._, within the original jurisdiction of the California Supreme Court or its lower advisory courts).

193. **Cause Splitting: Damages Only Suit Necessary.** Since a claim for damages must be separated from a claim for injunctive relief – to avoid accusations for the damage case that the injunctive

---

[90] Civ. Code, § 3510; _see, e.g., Webber v. Webber_ (1948) 33 Cal.2d 153, 164 [ignoring requirement of Code of Civil Procedure 657, requiring affidavits for new trial motion, when argument relied exclusively on matter in the record].

[91] _See, e.g., Albert v. Tyler Technologies_, No. 8:25-cv-00647, Dkt. 158:14 (C.D. Cal. 2025).

aspect of the claim, and thus the whole claim, is nothing more than a *Rooker-Feldman*-prohibited appeal of a state court discipline action – any cause-splitting concerns between Plaintiff Three's damage action and this action are necessarily overcome by the exceptional circumstances doctrine of the cause-splitting doctrine.[92]

194.    **Cause Splitting: Relationship to *Younger* Doctrine.**  Furthermore, to avoid any contention that Plaintiff's case for prospective injunctive relief should be dismissed pursuant to the *Younger* doctrine, it was necessary to plead Plaintiff Three's suit seeking to stop the *Willis* discipine action in a separate lawsuit, while seeking strictly prospective injunctive relief in this one.

195.    **Cause Splitting: State v. Federal**.  Plaintiff will file, or has filed, actions in state court, in order to avoid application of the 11th Amendment for certain, while contending in this action that certain state entities can be subject to suit here.

## PRAYER FOR RELIEF

*Wherefore*, on each cause of action, Plaintiffs seek the following relief:

(1)    A declaration outlining the constitutional violations of the Discipline System;

(2)    A declaration acknowledging the existence of the Shadow System and its unconstitutional practices;

(3)    A temporary injunction shutting the Discipline System down, pending proof that it complies with the above referenced constitutional requirements;

(4)    A preliminary, and later permanent, injunction crafted by the Court to reform the Discipline System, including to impose orders that begin to rectify Defendants' practices of selective prosecution, gender discrimination, automation of outcomes, and excessive fines, and other issues, as detailed and discussed above;

(5)    Appointment of a federal receiver to take control of the Discipline System and to assist, manage, and oversee its reform, including as to any injunctive orders, under the Court's supervision;

(6)    A declaration acknowledging that the Shadow System causes discipline targets to be subject to selective prosecution, gender discrimination, automation of outcomes, and excessive fines;

(7)    An injunction prohibiting the practice of all illegal rules, practices, and policies of the Shadow System, as proven at trial;

(8)    Attorney's fees, as permitted by law;

(9)    Costs;

---

[92]    *See Mezzadri v. Medical Depot* (2015) 113 F.Supp.3d 1061, 1065 (S.D. Cal. 2015).

(10)  Such other and further relief as the Court deems appropriate;

Date: April 15, 2026                                    PALADIN LAW, APC

_____
Benjamin Pavone, Esq.
Attorneys for Plaintiff

## REQUEST FOR TRIAL BY JURY

Plaintiff respectfully requests trial by jury.

Date: April 15, 2026                                    PALADIN LAW, APC

_____
Benjamin Pavone, Esq.
Attorneys for Plaintiff

# EXHIBIT 1

# EXHIBIT 1



**PRIVILEGED AND CONFIDENTIAL**

# Independent Investigation for the State Bar of California: Summary of Findings and Recommendations

Mark B. Helm
Bart H. Williams
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100

**ATTORNEY-CLIENT PRIVILEGE**
**ATTORNEY WORK PRODUCT**

PRIVILEGED AND CONFIDENTIAL

This report summarizes the major findings and recommendations of an independent investigation that Munger, Tolles & Olson LLP conducted as outside counsel for the State Bar of California ("State Bar" or "Bar").  We will provide a fuller recitation of the results of the investigation to the Board of Trustees ("Board") at a closed session meeting scheduled for October 17, 2014.

## I.    BACKGROUND AND SCOPE OF INVESTIGATION

The investigation began on August 26, 2014, in response to a July 31, 2014 Report of Improper Activity from the Bar's Chief Trial Counsel, Jayne Kim.  Attachment 1.  Among other things, Kim reports "concerns related to certain actions by Executive Director Joseph Dunn (ED), Chief Financial Officer Peggy Van Horn (CFO) and General Counsel Thomas Miller (GC) that demonstrate a disturbing [] lack of transparency at the highest levels within the organization."  She claims that "State Bar leadership is failing to adhere to basic principles of governance" and that a "'five layer chess game' with key stakeholders and other executives" has "systematically fostered a culture of intimidation and isolation within the organization and resulted in dishonest communications to the Board of Trustees."  In the investigation's early stages, we also received a memorandum from Deputy Executive Director Robert Hawley raising some issues relating to Van Horn's handling of various finance matters, including her handling of certain expense reports for Dunn's travel.  Attachment 2.

We conducted an initial investigation consisting of interviews of five designated witnesses and a preliminary review of documents.  This culminated in an interim report to the Board at a closed session meeting held September 14, 2014.  The Bar then engaged us to undertake a second phase of the investigation that has involved, among other things, interviews of nineteen additional witnesses, collection and review of additional documents, and further legal analysis.

Our investigation probed the issues raised in Kim and Hawley's memoranda with particular focus on the following issues:

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

**Ex. 1:1**

PRIVILEGED AND CONFIDENTIAL

- Whether Joseph Dunn misled the Board or allowed the public to be misled about the use of Bar funds in connection with travel to Mongolia;

- Whether Dunn and Thomas Miller failed adequately to inform the Board about the California Supreme Court's reservations about pending legislation (A.B. 852) when the Board was voting to sponsor that bill;

- Whether Van Horn mishandled expense reports relating to Dunn's travel, and whether she knowingly concealed those reports from the Bar's auditors;

- Whether Dunn engaged in cronyism or violated Bar procedures in his hiring of certain Bar employees (including General Counsel Thomas Miller), his handling of certain contracts for the provision of services, and/or offers of assistance to Board members or others.

The third phase of the investigation involved the preparation of this report.  We reach the following major conclusions and recommendations:

- Dunn failed on several occasions to satisfy his contractual and fiduciary duties to provide complete and accurate disclosures to the Board.  In particular, he misled the Board or allowed the public to be misled about the use of Bar funds in connection with travel to Mongolia; failed to inform the Board of the Supreme Court's concerns regarding A.B. 852; and made misstatements to a Board committee regarding the Supreme Court's views on the Bar's possible move to Sacramento.  These concerns are aggravated by Dunn's lack of candor on several issues during the investigation.  This misconduct justifies termination of Dunn's at will employment, although the Board should consider various factors discussed below in deciding whether to take that action.

- The quality and effectiveness of Van Horn's work as the Bar's chief financial officer are subject to serious question.  In particular, Van Horn failed to correct improper accounting for the Mongolia travel and did not properly handle expense

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

2

**Ex. 1:2**

PRIVILEGED AND CONFIDENTIAL

reports relating to Dunn's travel. For these reasons, we recommend that Van Horn be reprimanded and that the Board take appropriate steps to bring about that result.

- If it decides not to terminate Dunn, the Board should consider taking steps to strengthen the General Counsel position as a possible independent check on the Executive Director. First, it may want to consider replacing Miller, whose ability to serve as an independent counterweight is questionable in light of his performance at the Board meetings on A.B. 852. Second, whoever continues in that role, the Board should reinvigorate the policy that the General Counsel reports directly to both the Board and the Executive Director.

## II.   MAJOR FINDINGS

### A.   Mongolia Travel

In January 2014, Dunn, Bar employee Thomas Layton, and former State Bar President Howard Miller of the Girardi Keese law firm traveled to Mongolia in response to a request from the Mongolian government for help in implementing a new regulatory system for lawyers. In April 2014, Layton and Miller traveled to Mongolia a second time. Our investigation has focused on whether false statements were made about the use of Bar funds for the trip and how the Bar accounted for expenses related to the trip.

#### 1.   Statements concerning the use of Bar funds for travel to Mongolia

There is substantial evidence that Dunn (i) misinformed the Board that Bar funds would not be used for the Mongolia trip, and (ii) failed to correct Howard Miller's public statement that Bar funds had not been used—or at least failed to bring the issue to the Board's attention for its consideration.

The evidence strongly suggests that Dunn told the Board no Bar funds would be used for travel to Mongolia. Three trustees recall that, at a meeting in November 2013, Dunn told the Board that no Bar funds would be used because Mongolia would cover the expenses. Another

24870086.1

PRIVILEGED AND CONFIDENTIAL

trustee could not recall whether Dunn affirmatively denied whether Board funds would be used for that purpose. No interviewees recalled Dunn ever telling the Board that Bar funds would be spent on trips to Mongolia, either in November or later. And several persons interviewed believed that, if Dunn *had* disclosed that information, it would have prompted Board discussion.

Dunn's representation that no Bar funds would be used proved to be untrue. In connection with the January trip, the Bar paid $6,041.72 in mandatory Bar dues for Dunn and Layton's airfare and cell phone roaming charges.[1] In connection with the April trip, the Bar paid $1,046.72 in expenses from the Administration of Justice Fund to cover Layton's hotel, meals and taxis. *Id*. Indeed, Dunn and Past President Luis Rodriguez acknowledge that they decided from the outset to use Bar funds for at least some of the costs of the January trip to Mongolia.

The extent to which Bar funds were used for the trip is complicated somewhat by the deposit into a State Bar fund on April 3, 2014 of a $5,000 check from the Girardi Keese firm dated March 20, 2014. Howard Miller said that the check was intended to cover past and future expenses related to Mongolia, and Van Horn has said she plans at some point to account for that deposit as a credit against Mongolia expenses. For several reasons, however, this check does not significantly mitigate the inaccuracy of Dunn's statement to the Board.

First, as of the start of this investigation on August 27, 2014, more than seven months after the first trip to Mongolia, and nearly five months after the check was received by the Bar, no accounting entry has been made to credit the donation against the expenses.

Second, the intent of the donation remains ambiguous, which may account for the delay in accounting treatment. Although Miller told us that the check dated March 20 was meant to reimburse the Bar for both past and future expenses, his contemporaneous email to Dunn indicated that the check was timed to enable booking the future *April* trip to Mongolia. That the

---

[1] This figure does not include $107.60 in expenses relating to meals and travel to and from the airport that Dunn submitted for reimbursement but that have not been processed.

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

check was intended to cover only future expenses is also consistent with Dunn and Rodriguez's stated understanding, noted above, that Bar funds *would* be used for the first trip.

Third, even if accounted for to cover past expenses, the $5,000 check is insufficient to cover the full $7,088.44 in expenses incurred by the Bar.

The inaccurate information that Bar funds had not been used for the Mongolia trip later appeared in an article written by Howard Miller, published in the *Daily Journal* on April 23, 2014. Miller wrote:

> *Under the direction of State Bar President Luis Rodriguez, and discussions with CEO/Executive Director Joseph Dunn, it was decided* since a sovereign state had asked for help in the administration of justice in a unique area of its expertise, the State Bar would designate representatives to visit and work with Mongolia, *so long as no bar funds were used*, and the State Bar would simply be acting as a facilitator and advisor.
>
> *With that understanding, three of us, including Dunn and Thomas Layton . . . .went to Ulaan Bataar, Mongolia* in January.

Miller, *The Mongolian Connection*, DAILY JOURNAL, Apr. 23, 2014 at 5 (emphasis added). Dunn admitted that he saw the article at the time and noticed the statement. Several trustees and State Bar staff reported that they read the article at the time it was published and noted the statement that no Bar funds would be used. But Dunn took no steps to correct the statement, either by requesting Miller to do so or by issuing his own correction. The two explanations Dunn offered for his failure to correct the statement were troubling and, in our view, were inadequate to explain the failure to take any corrective action.

First, he claimed that the article is ambiguous and can be read to say only that no Bar funds would be used for *future* trips (an interpretation Rodriguez echoed). But this is an untenable interpretation of the article's plain meaning.

Second, Dunn said that he felt no obligation to correct the inaccurate statement because he did not write it. But Miller was (or at least appeared to outsiders to be) acting as an agent of the Bar in connection with the trip to Mongolia: he participated in the official trips; he was the Bar's representative at a ceremony in Mongolia in April; and he was designated in the

24870086.1

PRIVILEGED AND CONFIDENTIAL

memorandum of understanding between the State Bar and the Mongolian Bar Association as someone who, along with Dunn and Layton, would "manage all activities" related to that memorandum. *See* Memorandum of Understanding, ¶ 6; *see also* Cal. Civ. Code § 2317 ("Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."). For this reason, the Bar had an obligation to correct misstatements by Miller about the trip. *See* Restatement (Second) Agency § 256, cmt b ("If the principal discovers the untruth of a statement made by an agent on his account, he is under the same duty to reveal the truth to the other party as if he himself had innocently spoken an untruth.").

Indeed, quite apart from any legal obligations involved, Dunn's apparent insensitivity to the problems that could be created by perceived inaccurate statements by persons affiliated with the Bar—particularly in the area of how Bar funds are used—is troubling. The unique role of the organization he heads—administrator of the state's legal profession and the system of ethical rules governing the profession—heightens the need for the chief executive to be sensitive to such issues. This is particularly true in light of the Bar's recent pledge to make its commitment to transparency "paramount." *See* Five-Year Strategic Plan, p. 5.

At the very least, Dunn should have brought the inaccuracy of Miller's public statement to the Board's attention so that it could decide whether a correction was warranted. Instead, Dunn appears to have done the opposite, by taking steps to minimize attention paid to the trip-related expenditures. Communications officer Laura Ernde reported that Rex Bossert told her that Dunn was unhappy that she had circulated within the office a different article about the Bar's work with Mongolia—allegedly because Dunn believed the issue was causing problems with the Board. Dunn also asked Ernde to edit a draft of an article about the Mongolian delegation's visit to the Bar in June to remove a statement that no Bar funds were used for the two previous trips to Mongolia, presumably because he knew the statement was not true. According to Ernde, she told Dunn that the statement was from Miller's April article. Instead of

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

telling Ernde that the Miller article was inaccurate, Dunn simply told her that that article was not authorized by the Bar.

Dunn's inaccurate disclosures, failures to correct, and/or failures to disclose violated various duties he had. Under his contract, one of Dunn's "essential duties" is to "keep the Board and its President fully informed on matters of significance." Employment Agreement § II(E)(1). Likewise, as a senior executive of the Bar and the Board's agent, Dunn has a fiduciary duty to disclose material facts to the Board. *See Salahutdin v. Valley of Cal., Inc.*, 24 Cal. App. 4th 555, 562 (1994) ("The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud . . . ."); *People ex rel. Harris v. Rizzo*, 214 Cal. App. 4th 921, 950-51 (2013) (city reposed trust and confidence in its assistant chief administrative officer giving rise to fiduciary duties owed by the officer); *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) (liability for nondisclosure of information may lie where the defendant is in a fiduciary relationship with the plaintiff). Other duties could also be implicated by Dunn's lack of candor with and failures to make disclosures to the Board.[2]

### 2.    Improper accounting of the Mongolia travel expenses

As noted above, the Bar has charged the $6,041.72 in expenses for the January trip to a mandatory dues account. Although Van Horn stated that she thought a case might be made for use of mandatory funds for the trip, no one else has suggested that this would be appropriate, and

---

[2]Although our findings and recommendations do not depend on it, Dunn's failure to keep the Board informed also could implicate his ethical duties as a lawyer. *See Sodikoff v. State Bar*, 14 Cal. 3d 422, 429 (1975) ("When an attorney assumes a fiduciary relationship and violates his duty in a manner that would justify disciplinary action if the relationship had been that of attorney and client, he may properly be disciplined for his misconduct."); Cal. Ethics Op. 1995-141 at *3 ("[W]hen rendering professional services that involve a fiduciary relationship, a member of the State Bar must conform to the professional standards of a lawyer even if the services performed could also be rendered by one licensed in a different profession."); *cf.* Cal. R. Prof. Conduct 3-500 ("A member shall keep a client reasonably informed about significant developments relating to the employment or representation . . . .").

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

it plainly would not be.  *Keller v. State Bar of Cal.*, 496 U.S. 1 (1990), requires that expenditures of mandatory dues be "necessarily or reasonably incurred for the purpose of regulating the legal profession or improving the quality of legal service available to the *people of the State.*"  *Id.* at 13-14 (emphasis added).  Helping Mongolia to implement a new regulatory regime, though a laudable goal, hardly satisfies this standard, and the accounting for these expenses raises two concerns.

First, although Van Horn has stated that she intends to change the accounting of these expenses so that they are no longer charged to mandatory dues, as of the date of her interview that had not happened.  Under these circumstances, it is unclear whether, absent this investigation, Van Horn would have changed the accounting for these expenses to an appropriate voluntary account.

Second, Dunn himself showed a troubling lack of attention to whether expenses for the trip would be charged to mandatory or voluntary fees.  The expense report he submitted for his own expenses for the January trip included an account code for mandatory fees.  Seeking to disclaim responsibility for this allocation, he noted that his practice is to give his travel expenses to his administrative assistant and to let her and Van Horn decide how the expenses should be treated.

This explanation is not adequate.  Given the unusual nature of the Mongolia trip, Dunn should have taken pains to direct Van Horn to make sure that *all* expenses were allocated to voluntary fees, which he did not do.  Indeed, Sonja Oehler reported that she received no training on the circumstances under which mandatory Bar dues may be used to cover expenses.  His failure even to ensure that his *own* expenses were properly allocated shows an inadequate sensitivity to what is a centrally important issue for the Bar, its reputation, and its relationship with its constituencies.

At a minimum, the Board should reprimand or counsel Dunn on his lack of leadership on this issue.  It should also direct him to institute additional internal controls or training to ensure

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

that incidents of this kind do not occur in the future and that his CFO is more closely attuned to the need for scrupulous compliance in this area.

### B.      Dunn's communications with the Board regarding A.B. 852

After the Governor vetoed A.B. 888, the Bar was involved in promoting A.B. 852, which would have permitted it to bring civil enforcement actions against persons engaged in the unlawful practice of law (UPL).  Last April, Beth Jay emailed Tom Miller (who forwarded it to Dunn) that the Chief Justice wants to "delay further action" – and emailed Dunn and Miller that the Chief Justice "wants this bill stopped" – pending the Bar's development of further information showing a need for the measure.  The request that the Bar stand down on further efforts was repeated at a May 1, 2014 regular quarterly meeting attended by three Court and eight Bar representatives, including Dunn.

Dunn nonetheless thought it appropriate to ask the Board at its May meeting, just over a week later, to authorize the Bar to sponsor the legislation.  Given constraints in the legislative calendar, Dunn says, the bill would have died had it not proceeded further that month, and he believed that killing the bill for this legislative session went beyond the Court's request.  Dunn reasoned he could always pull the plug later if the Court ultimately so directed, but he could not later resurrect it if the Court ultimately were persuaded to let the bill proceed.  He did not discuss this rationale with Court representatives, however, before making the request to the Board at its May meetings.

Nor did Dunn mention the Supreme Court's concerns to the Board so it could make its own decision on the wisdom of his rationale for proceeding despite the Court's request to stand down.  In a memorandum dated May 6, 2014, to the Board Committee on Operations and the Board of Trustees outlining the proposed legislation, Dunn stated "[t]here is no known opposition to the measure."  Dunn did not mention the Supreme Court's concerns in this memorandum, in his presentation to the Board Operations Committee on May 8, or in any discussions with the full Board on May 9, where the measure was on the consent calendar.

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

**Ex. 1:9**

PRIVILEGED AND CONFIDENTIAL

Dunn said that he felt constrained not to mention directly to the Board the Court's possible opposition to the bill, because the Board meeting was held in public, and Beth Jay had previously said that Court views should not be mentioned in public, especially on possible legislation that might come before the Court later.  He claimed in his interview, however, that he reconciled this dilemma by giving the Board a coded reference to the Court's directive, stating to the Board that a "critical stakeholder has concerns" and "we are trying to resolve them to decide if the bill can move forward."  When Beth Jay asked Dunn after the Board meeting why he had not shared the Court's position with the Board, Dunn claimed in an email to her that the Board was "quietly aware" of the Supreme Court's interest.

The weight of the evidence contradicts Dunn's claim that he told the Board at one or more of the May meetings that a "critical stakeholder has concerns."  No trustee we interviewed recalled any such reference, nor did his co-presenter at the May 8 meeting Jennifer Wada (though she said she could not rule it out).  Moreover, two people who were present at one or more of the meetings, Jayne Kim and Jim Fox, were keenly listening to Dunn's remarks on this subject, because they were present at the May 1 meeting with Court representatives and were expecting some form of disclosure about the Court's concerns.  Both are quite certain Dunn made no such reference, and they complained to Beth Jay afterwards precisely because they say he did not.

Indeed, Fox was so upset with the lack of disclosure that he says he specifically requested an exit interview with Dunn before leaving his employment at the Bar so he could voice his objection.  Dunn and Fox met for that interview on July 29, 2014.  When Dunn defended his conduct at that meeting by noting the constraints on mentioning Court views at open meetings, Fox told us (without any prior prompting) that he told Dunn he could easily have advised the Board that "there are unresolved issues with some of the key stakeholders that need to be resolved."  The similarity between this phrase and the phrase that Dunn *claimed* during his interview with us to have used at the Board meeting is too striking to be pure coincidence—and

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

it seems unlikely that it was he who borrowed the phrase from Dunn rather than the other way around.

For these reasons, we think a factfinder would most likely conclude that Dunn did not tell the Board, either directly or through a veiled reference, about the Supreme Court's concerns regarding the bill. Further, the Court's concerns were plainly material to the decision Dunn was asking the Board to make and therefore should have been disclosed—as he implicitly concedes when he claims that he in fact attempted to make a disclosure of some kind. Finally, Dunn's evident violation of his duties discussed above to disclose material information to the Board was compounded by his (evidently) false claims to us in his interview that he in fact made a disclosure of some kind.

## C.    Misstatements Regarding Move to Sacramento

Our investigation has uncovered misrepresentations that Rodriguez and Dunn made to a Board committee about the Supreme Court's views regarding the Bar's possible move to Sacramento following a sale of its building in San Francisco. Rodriguez told the Board Operations Committee at a meeting held September 2, 2014, as well as at one or more earlier meetings in August, that the Supreme Court was aware of the possible move to Sacramento and supported or was amenable to it. Some present at that September 2, 2014 meeting also recall that Dunn made similar statements to the effect that the Chief had no problem with moving the Bar to Sacramento, that the issue had been "socialized" through both the Supreme Court and the Legislature, and that the Court was behind the Bar if it decided to move to Sacramento.

Rodriguez knew his statements were false. The Chief Justice told us that, although she said she was intrigued when she was told that the Bar's real estate brokers felt that the Bar could fetch an enormous sum for the building, she told him in the July 2014 time period that she did not think a move to Sacramento was a good idea. Specifically, she told him she was concerned about displacing long-term employees (which she said Rodriguez told her was a concern he shared). The Chief Justice also reported that, in a call held the day after the September 2

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

meeting, she expressed the view that she did not think it was wise to have the Bar headquartered near the Legislature, though she does not believe she mentioned that concern in the call before that September 2 meeting. The Chief Justice did not believe that her comments to Luis Rodriguez could fairly be characterized as supportive of a move to Sacramento.

The evidence also indicates that Dunn knew that his statements about Supreme Court amenability to the move were severely exaggerated at best and false at worst. First, Beth Jay reported that she attended a lunch with Dunn in June or July 2014, where the possible sale of the building was discussed. She says that she told him: "I hope you won't be moving to Sacramento!" Ms. Jay reported that she made the comment because she knew that Dunn had an affinity for the Sacramento setting but she was concerned that such a move would be inappropriate. Second, the Chief Justice recalls having a few conversations with Dunn before or during the Summer of 2014 when Dunn mentioned the possibility of selling the building and moving to Sacramento. Although she was not asked and did not express her opinion on the move, let alone express the opinion of the full Court, the Chief Justice told us she said nothing from which Dunn could have fairly concluded that she or the Court supported the move.

Based on this input from Court representatives, Dunn's statements to the Board committee that the Court supported the move, that the matter had been "socialized" with the Supreme Court and the Legislature, and that the Court was behind the Bar if it decided to move to Sacramento were unfounded and inaccurate. Dunn's claim that he in fact told the Board committee that the Chief Justice saw both downsides and upsides to the move does not accord with committee members' recollections of his statements to them—nor with the Chief's recollection of the import of her statements to Dunn.

### D.    Treatment of Dunn's expense reports

Hawley's memorandum provided twenty-three expense reports by which Dunn was seeking reimbursement for various expenses, which included some minor expenses associated with the Mongolia trip and other trips. Kim alleges that Van Horn knowingly concealed a

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

Mongolia-related expense report in that set from the State Bar's auditors. While we are unable to conclude whether or not Van Horn knowingly concealed any of these expense reports, the treatment of the expense reports raises concerns regarding Van Horn's leadership and the Bar's internal controls.

On February 4, 2014, Van Horn received nineteen Dunn expense reports seeking reimbursement for meals and other travel expenses incurred between August and December 2013 (including for foreign travel). On or about April 7, 2014, Van Horn received four expense reports from Dunn seeking reimbursement for travel in the beginning of 2014 (including approximately $110 incurred on the January Mongolia trip). Van Horn signed the first seven expense reports and asked Office of Finance Director Andrew Conover to look into certain taxi expenses on one report. Van Horn never signed the remaining sixteen reports. It was not until late May or early June 2014 that she provided the expense reports to Hawley, who needed to approve them for late processing because the reports had been submitted beyond the Bar's 60-day limit.

According to Hawley, Van Horn told him in words or substance that the expense reports "are late from Joe" and that she had held onto the reports, including the reports submitted several months earlier in February, because she did not want the auditors to see them. Hawley stated that the Bar's auditors had recently concluded a review of the Bar's 2013 Statement of Expenditures of Mandatory Membership Fees at the time Van Horn made this remark. A primary focus of the audit was whether the Bar had properly accounted for 2013 expenditures as between those chargeable to mandatory fees or not, as required under *Keller v. State Bar of Cal.*, 496 U.S. 1 (1990). Hawley expressed concern that Dunn and Van Horn proposed to charge the travel expenses to mandatory fees, even though in Hawley's view it would be improper to treat the expenses in that manner. Hawley also expressed concern that, in presenting the 2013 audit to the Board in July 2014, Van Horn failed to disclose that she had withheld these expenditures from the auditors. To date Hawley has not approved the expense reports.

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

Van Horn does not deny that she gave the February expense reports to Hawley approximately two months after she received them. But Van Horn denied trying to conceal documents from the auditors, and she denied telling Hawley that she had done such a thing. Van Horn repeatedly stated that she never would have sent expense reports to Hawley without signing them first. During our initial interview with her (we had a few follow-up telephonic interviews as well), Van Horn stated that she felt so certain of this fact that she wondered whether Hawley had obtained the unsigned expense reports from her unlocked office. She further disputed that the *de minimis* amounts reflected in the expense reports would have been likely to prompt concerns with an auditor. Van Horn also noted that the auditors had conducted a review of expenses for calendar year 2013, and that the Mongolian travel all occurred during 2014.

When Andrew Conover of the procurement office was shown the unsigned expense reports during his initial interview, he did not supply an explanation for how Hawley would have received the reports unsigned. Conover told us in a subsequent email, however, that expense reports that are older than 60 days late are usually sent directly to Hawley for "late" approval before the procurement processing continues. Hawley rejected this explanation and stated that expense reports must be signed by the authorizing approver and submitted to him with an explanation (generally in writing) as to why they are late. Hawley reported that one of the reasons why he did *not* approve the late expense reports that he received in his in-box from Van Horn was that the vast majority of them had not been signed by Van Horn, the only person authorized to approve Dunn's expense reports.

Because there are no known other witnesses to the conversation between Van Horn and Hawley, we cannot definitively establish that Van Horn made the remarks attributed to her concerning the Bar's auditors, and the evidence points in conflicting directions.

On the one hand, it is difficult to understand why she would have confided in Hawley that she was withholding the reports from the auditors given that she does not like or trust

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

Hawley, and he could have used such an admission against her. It also is hard to understand why Van Horn would have been motivated to conceal the expense reports from the auditors. In comparison to airfare and cell phone roaming charges associated with Dunn's overseas trips—which no one claims anyone sought to conceal—the amounts that Dunn claimed on the expense reports (for meals and taxis on those and other trips) are small. The reports for the Mongolia travel in particular reflect expenses that are *de minimis* by any measure—just over one hundred dollars. Moreover, because Dunn incurred the Mongolia trip expenses in 2014, the auditors would not have examined them in connection with the 2013 audit in any event.

On the other hand, certain idiosyncrasies in these reports raise questions that no one has been able to answer, and there is some reason to credit Hawley's recollection of the conversation.

First, Van Horn has been unable to explain why she delayed for so long in submitting the expense reports to Hawley and why she gave Hawley sixteen unsigned expense reports, some of which refer to foreign travel, when it is her responsibility to review Dunn's expense reports as part of the approval process.[3] Hawley vehemently denies Van Horn's speculation that Hawley may have taken unsigned Dunn expense reports from her office or that he would have had any reason to do so. Second, although the Mongolia trip expenses were small, the Mongolia trip expenses were the subject of some discussion among Bar employees, particularly in light of the Miller article published on April 23, 2014. Van Horn read the Miller article at the time and may have had on her mind these concerns about of the use of Bar funds before she gave the expense reports to Hawley. Third, Hawley has shown himself to be a careful individual with respect to

---

[3] Van Horn said that she reviewed the expense reports all at once and stopped reviewing the reports when she came across one with an apparent $70 error in taxi expenses. She asked Andrew Conover to investigate the taxi expenses, and Conover provided her with corrections on a copy of the expense report. For reasons that are unclear, Van Horn did not correct the original expense report, and gave that report and the rest of the reports in the set to Hawley at some later date.

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

international travel and expenditures generally.  When he travels internationally on behalf of the Bar, he does so on his personal time and refuses to have the Bar pay for any of his expenses.

In short, we cannot determine whether or not Van Horn knowingly concealed the Dunn expense reports from auditors as alleged by Kim.  At the same time, the evidence suggests several deficiencies in how Van Horn is performing her duties.

- Although she criticizes Hawley for failing to process the expense reports since she provided them to him in late May or early June, Van Horn did not deal promptly with the expense reports she received in February and instead let them sit for over three months.

- She approved for payment expense reports for the Mongolian trip (*e.g.*, approximately $600 in cell phone roaming charges) using mandatory Bar dues coding.

- As of the date that this investigation commenced – nearly five months after the second Mongolian trip took place and seven months after the first trip – she had not taken any steps to ensure that ledger entries were made on the Bar's books and records to connect the $5,000 check from the Girardi firm to the Mongolian trip expenses.

- Van Horn did not ensure that Dunn and his assistant are familiar with the account coding system.

## E.    Expense Budget Modifications

Van Horn's handling of Dunn's expense reports has fueled a troubling perception among Bar staff that Van Horn does not audit Dunn's expenses with the same level of attention and care afforded to other expenses.  In particular, some witnesses reported that Van Horn polices each executive's use of the business expense account, except Dunn.  Administrative Advisory No. 14-01 provides in part:

> Senior management may budget for "Business Expenses" (account code 40570).  The amount in this account is determined by the Executive Director annually during the

24870086.1

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

budget planning process and is to be funded with non-mandatory fee revenues. This account is to be used at the senior managers' discretion in the course of their duties to cover applicable business expenses for themselves and others. . . .

No reimbursement will be made against the Business Expense Account unless there is a sufficient amount budgeted in the account to cover the expense. . . .

Business expenses that may be covered under this section include meals during which discussion of State Bar business occurs and there is a business need to keep participants together. Expenses for business meals will not be authorized for meetings where State Bar business is only nominally discussed or meetings with potential or existing vendors.

Administrative Advisory No. 14-01, VII A, C and D.

Both Van Horn and Hawley explained that the implementation of this policy changed sometime during Dunn's tenure. Before that policy change, senior executive staff members each had an individual expense budget of approximately $1,500 for their respective cost centers. Executives were expected to manage to the budgeted amount each year. Sometime during Dunn's tenure, all of the expense budget limits were aggregated into one budget line item. An expense budget limit of $50,000 was set for all senior management. Hawley, for example, explained that he no longer had visibility into how management was doing against the expense budget limit, and he does not have an individual expense limit to manage against.

Our review of financial records indicated that, during 2013, Dunn alone expensed at least $13,576.93 against the $50,000 limit, not including additional business expenses charged by employees within the Executive Director's business unit. Van Horn reported that the $50,000 limit was not exceeded even if all of the senior executives' expenses were combined. While we do not believe that this policy change constitutes a basis for discipline, the effect of this change was essentially to give Dunn an unlimited business expense budget. We recommend that the Board set a business expense budget limit for the Executive Director and that the finance committee of the board take over responsibility for review and approval of the Executive Director's expense reports.

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

### F.        Issues Related to General Counsel Thomas Miller

#### 1.        Hiring Issues

Kim alleged that the Bar hired Thomas Miller as the General Counsel over allegedly more qualified candidates because he is friends with Dunn.  The selection process, however, even if not perfect, did proceed with input and involvement by the Board, so we do not see a basis for finding wrongdoing in how Miller was selected.  Rules & Regs. Pertaining to the Employment of Executive Staff Employees § 9(A) (senior executives are appointed by and serve at the pleasure of the Executive Director); Board Book, Tab 18 § 7(b) (Board approves selection of General Counsel); see also *id*. Tab 5, § 2(b)(11(D) (president's role is to manage the Executive Director by, inter alia, providing input with respect to the selection of the General Counsel).

#### 2.        Travel issues

Kim also complained that Miller has improperly billed for travel between Southern California, where he lives, and San Francisco, where the Office of General Counsel is based. We have learned that, between March and July 2014, Miller spent some forty-three nights in hotels in the Bay Area for a total cost of $7,855.88.  Air fare expenses for the same period totaled $8,746, and Miller incurred $4,415.76 in additional expenses in this period for ground transportation, lodging, meals, and other miscellaneous travel expenses.  Total travel related expenses for the period were therefore $21,017.64.

Expenses at these levels are not surprising, as the Bar clearly appears to have contemplated that Miller would be incurring travel expenses in order to take the position.  His employment offer letter provides that he "will work out of the San Francisco and Los Angeles State Bar offices with frequent travel.  As the Office of General Counsel is based in San Francisco, that office will be your 'home base.'"  Because everyone seems to have known that Miller lived in San Clemente and never committed to move to the Bay Area, but he was told he would be based in San Francisco, the travel expenses were an expected result of this arrangement.  The travel records also confirm that, at least through July, he lived up to the

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

requirement that he spend most of his time in San Francisco—something he did three or four days a week.

There is, however, a discrepancy in the parties' expectations going forward. Miller says that he told the Board members who interviewed him that he would spend most of his time (usually three days a week) in San Francisco for the first six months but that after he had established himself he hoped to spend most of his time (usually three days a week) in Los Angeles. Miller still believes that was the arrangement to which the parties agreed. At least one board member confirms that Miller said this in his first interview with a Board working group, which recommended he not be hired in part for that reason. But the board member also recalls Dunn and/or Rodriguez stating at a later time that Miller was now willing to commit indefinitely to having his home base be San Francisco—and that his hiring was approved on that basis. Miller was not aware of this but rather expects to wind down his San Francisco travel to two days per week rather than three. This suggests that Dunn and/or Rodriguez's representations to the Board about Miller's intentions and understanding were not accurate. For that reason, the Board will need to reach some common understanding with Miller about his future plans.

### 3.    Disclosure Issues

Miller was aware that Beth Jay had directed the Bar to stand down on A.B. 852 before the May 8 and 9 Bar Board meetings and was present during Dunn's discussion of that bill, but he did nothing to inform the Board about the Supreme Court's concerns. Although he did not clearly recall that Dunn failed to mention Supreme Court concerns at the Board meetings, Miller said he would not have taken it upon himself to make this disclosure to the Board even if Dunn had not done so, for two reasons. First, he believed that Luis Rodriguez had been informed of the Supreme Court's concerns, though he admits he was not sure at the time of the May Board meeting that he knew this. Second, he thought the Board did not need to know about the Supreme Court's concerns, because he and Dunn were still trying to persuade the Court about the need for the bill and needed to keep the bill moving forward to avoid having it die for that

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

session.  As with Dunn, Miller's nondisclosure raises questions about his commitment to giving the Board all of the information it needs to do its job.

### G.     Perceived Girardi Keese Influence at the Bar

Although we have not uncovered instances of any sort of misconduct involving or untoward influence exerted by Tom Girardi or his firm, the closeness of the relationship between some senior managers and that firm does raise potentially troubling perceptions that the Board should take action to rectify going forward.

The frequency with which Girardi's firm has surfaced in matters we investigated is striking.

- Kim alleged that Dunn violated Bar policy in sending OCTC employees to a seminar in Las Vegas for a group that Girardi supports or is affiliated with.  Although we did not consider the policy so important that a deviation from it would be grounds for discipline, it is an example where Dunn bent (or attempted to bend) the normal rules to accommodate a request perceived as helpful to Girardi.

- Girardi surfaced in an extremely unusual meeting with Craig Holden before he was elected as Bar president.  Luis Rodriguez indicated that Holden should have lunch with Tom Layton, because Layton was not yet sure if he would throw his support to Holden for president.  That a bar employee is believed to have such an important role in who is elected bar president is unusual enough.  But when Holden attended the meeting, Girardi showed up, suggesting that the "power broker" on whose support Holden's election depended was in fact Girardi.

- Girardi's name has also come up in other (disputed) allegations discussed below about offers of professional assistance to Jayne Kim.

- Dunn chose Girardi's partner Howard Miller to be an emissary for the Mongolia trip.  We believe that Miller was eminently qualified for and deserving of this role, but others certainly would have fit the bill too.  In light of the other accommodations

24870086.1

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

Dunn has made for members of that firm, the selection forms a smaller piece of a larger pattern.

- In emails we reviewed on other topics, we noted that Miller was being consulted on matters related to A.B. 1515, a bill concerning client trust accounts. Again, we assume there are completely valid reasons for his involvement, and that he served admirably in whatever role he had, but the continuing connections are notable.

- During the investigation, Girardi suddenly and unexpectedly appeared as counsel for Sonja Oehler. In that capacity, he launched an unprofessional tirade of threats that we will recount more fully at the Board meeting. Although Girardi claims he became involved because our firm was rude during interviews and he is a long-time friend of Oehler's, his involvement also could be explained because he perceives a threat to Dunn as a threat to his possibly favored position with the Bar.

Although we do not believe that these incidents, either individually or collectively, form a basis for discipline, the pattern contributes to a potentially troubling perception that the Board should address.

### H.    Interference with Investigation

Luis Rodriguez engaged in various improper efforts to impede or influence the course of this investigation. The extent to which Dunn may or may not have participated in these efforts cannot be established conclusively. Although these efforts do not form a basis for imposing discipline at this time, the Board should consider taking steps to avoid problems like these in the future.

*First*, after Kim's complaint was sent, Rodriguez recused himself from the investigation and set up a working group composed of then-President Elect Craig Holden and two members of the Audit Committee (Heather Rosing and Michael Colantuono). As we discussed at the September Board meeting, Rodriguez later decided to rescind his recusal and form a newly configured working group based on two dubious grounds.

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

One such ground was that Holden had supposedly revealed to one of his partners information about the investigation.  Rodriguez made this claim as a result of questions Tom Layton asked Rodriquez, which questions in turn arose from an oblique comment by Holden's partner at a lunch Layton had with him.  In fact, Holden did nothing more than make a routine, confidential request to two of his partners for a referral without revealing the substance of the allegations or the identity of any complainant.  Layton later told us he was wrong to leap to conclusions based on the stray comment from the partner—and said he had since apologized to the partner for doing so.

The second such ground was that the investigation might result in civil liability to the Bar by thwarting Dunn's chance to become Administrative Director of the Judicial Council.  Rodriguez asserted that "Joe has been tapped" for that position and "is number one on [the Chief Justice's] list."  Dunn told us the Chief Justice told him in the third week in July that he was "at the top of her list," something he repeated at the time to Rodriguez.

The Chief Justice told us, however, that this was not true.  She told Dunn that, while some justices supported him, she had someone else in mind for the job, not Dunn; that she had not asked and would not ask him to apply for the job; but that, only in the event the other applicants did not work out, she might come back to him to offer him the job.  When asked if there was any way Dunn could have concluded from their conversation that he was at the top of her list, she said there was not, because she was very clear that she had her eye on someone else (who in fact was offered the job).

*Second*, after rescinding his recusal and forming a new working group, Rodriguez attempted to influence the investigation by calling Van Horn just fifteen minutes before her interview was scheduled to begin and instructing her not to appear.  During his call with Van Horn, Rodriguez raised a challenge to our firm's involvement in the investigation.  When asked for his basis for advising Van Horn not to appear, he said that he did not think it was fair that Dunn's interview was postponed, while Van Horn's interview was not.

24870086.1

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

22

Ex. 1:22

PRIVILEGED AND CONFIDENTIAL

*Third*, an issue arose at the last Board meeting whether our firm should question the Chief Justice on certain matters relating to the investigation. Apparently in an effort to stop this line of inquiry, Rodriguez advised Heather Rosing that the Chief Justice and Beth Jay were upset at the prospect of being pulled into the investigation as witnesses. The Chief Justice, however, denies that she ever conveyed such a sentiment to Rodriguez. According to the Chief Justice, Rodriguez told her that he was having disputes with Craig Holden, and she merely responded that any such dispute was between the two of them. Far from being reluctant to be questioned as part of this investigation, she told us she was happy to do so and spoke to us freely on more than one occasion. Beth Jay similarly reported that she was not at all reluctant to be interviewed in connection with this investigation and that she had never told anyone that that was the case.

Rodriguez's actions to interfere with the investigation were ill-advised and improper. Although they provide a cautionary tale for the Board about the handling of investigations in the future, we are not aware of any statute Rodriguez violated. Further, although he may well have violated his fiduciary duties, we see no reason to consider taking action against him unless he continues to receive Bar funding to permit him to represent the Bar as a past President.

If it could be shown that Dunn wrongfully participated in efforts to impede the investigation, this would violate his legal duty to "withdraw from any participation in" matters as to which he had a personal interest and to "refrain from attempting to influence" such matters[4] – violations that potentially could give rise to criminal liability.[5] However, evidence that he did so is inconclusive. The evidence does clearly show that Dunn misrepresented in July his status as the front-runner for the Administrative Director position. But we found no direct evidence that,

---

[4] Cal. Bus. & Prof. Code § 6036(d); *id.* (b) (Board members must disqualify themselves "where there exists a personal nonfinancial interest that will prevent the member from applying disinterested skill and undivided loyalty to the State Bar in making or participating in the making of decisions"); *id.* §6038 (subjecting to section 6036 employees designated in the Conflict of Interest Code of the State Bar); Conflict of Interest Code of the State Bar section 2, App. A (designating Executive Director).

[5] Cal. Bus. & Prof. Code § 6037.

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

after the Kim complaint was lodged, he reasserted this falsehood in an effort to persuade Rodriguez to change the course of the investigation.[6]  The misrepresentation may still be relevant to other issues raised in this investigation relating to Dunn's truth-telling propensities, but we have not concluded that it amounts to proof of interference with the investigation that would provide a basis for imposing discipline.

## I.    Consultant Hiring Irregularities

We uncovered certain irregularities in connection with the contract for communications contractor Richie Ross.  Ross had previously assisted Dunn in his races for Senate and Controller.  At Dunn's request, the State Bar retained Ross on a sole source basis in June 2011 at $6,000 a month to provide communications services, especially in connection with the Sergio Garcia litigation.  Although State Bar procurement rules require the approval of a written memorandum justifying a sole source contract, Ross provided services for three months without a sole source memorandum.

For consulting services performed in June, July and August of 2011, Van Horn placed Ross's contract within the budget of the Office of General Counsel as a litigation related cost, which is excluded from the Bar's procurement process.  Van Horn pressured Cathy Torney, then Director of Administration in the Office of the General Counsel, to approve the first three $6,000 invoices, which were for amounts over her approval authority.  Torney alerted then-General Counsel Starr Babcock to the situation, and Babcock apparently took steps to prevent Ross's contract from being added to his office's budget.  It was only then that Hawley prepared a sole

---

[6] There is circumstantial evidence suggesting he likely did so.  An email from Rodriguez stated that Dunn was "very upset" about possible violations of his privacy rights, which implies that they did have a conversation about Dunn's concerns before Rodriguez rescinded his recusal. Further, Dunn told us in his interview that he believed the timing of Kim's complaint was calculated to interfere with his chances as front-runner for the job.  Given that Dunn apparently expressed to Rodriguez other concerns that made him "very upset," it seems highly likely he also expressed his concern that the complaint was designed to upset his chances for the new job, for which he inaccurately claimed he was the front-runner—but we have no admission from either Dunn or Rodriguez that he in fact did so.

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

source memorandum, dated September 23, 2011.  It was not until December 5, 2011 that a fully-executed contract was finalized for Richie Ross, though it was executed with a retroactive effective date of June 1, 2011.

On March 29, 2013, the Recorder published an article discussing the Bar's contracts with Ross and his daughter Esperanza Ross, as well as the Bar's refusal to release copies of the contracts.  Kim alleges that Dunn did not inform the senior executive management team of Richie Ross's contract before this article was published.  This claim is inaccurate at least with respect to Hawley, Van Horn, and Babcock—all of whom became aware of the contract relationship sometime in 2011.  The article, however, does appear to have prompted another action by the Bar—an April 9, 2013 Request for Proposal for the consulting services that Ross had been providing since June of 2011.  In May of 2013, seven contractors (including Ross) submitted competitive bids, and Ross was selected as the most responsive bid.

The gravamen of Kim's observations regarding Ross is that the Bar's competitive bidding and sole source contracting procedures lack sufficient controls and are potentially subject to abuse.  The foregoing episode confirms some of those concerns.  On the one hand, the Bar's decision to initiate a RFP after the publication of the Recorder article raises questions about the propriety of the Bar's decision to contract Ross on a sole source basis.  Torney's account also suggests that Van Horn attempted to "fix" a paperwork error by accounting for the sole source requisition in a way that may have been inappropriate.  On the other hand, several witnesses reported a misunderstanding that Richie Ross was performing legal work, as his services related in part to the Sergio Garcia matter.  If Babcock had agreed that Ross's work fell within his office's budget, the contract would have been excluded from the procurement process.

Although the Ross contracting process, by itself, does not serve as a basis for discipline, we recommend that the Board instruct senior management to adhere strictly to the competitive bidding and sole source requirements.  The Board may also wish to ensure that senior management has a clear, shared understanding of the cost center that will be charged for any

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

contractor providing services on litigation related issues, directly or indirectly, *before* any fees are incurred.  Finally, the senior manager who requests that the Bar retain a vendor on a sole source basis must take personal responsibility for the prompt completion of a memorandum supporting the sole source request.

### J.    Governance Issues Arising From Promises of or Requests for Assistance

We investigated certain governance issues arising from promises of assistance to Board members or others.  In her interview, Kim said that Tom Layton came to her when she first became Chief Trial Counsel to offer assistance from Tom Girardi in helping her to become a judge or to achieve some other professional goal.  Although Layton denies this, it is undisputed that Dunn made similar offers (without necessarily mentioning Girardi) to various Bar Presidents.  Both Dunn and Craig Holden have confirmed that Dunn initiated a discussion in which Dunn asked how he could help Holden achieve any aspirations he had of becoming a judge or running for office.  (Holden says that Dunn also offered Layton's assistance, and Layton and Holden both confirm that Holden later asked Layton to meet with a friend whom Holden recommended for a district court position.)  While not recalling necessarily that he initiated other conversations, Dunn admits to making similar offers to Luis Rodriguez, who openly had political aspirations, and Jon Streeter, who wanted to become a judge.

Although we do not rely on these events as a basis to recommend discipline, we do believe that conversations like this during the term of a Bar President (or other trustee, if such conversations took place) pose unhealthy risks to proper governance.  The provision of such assistance could make the Board President or trustee feel beholden to the chief executive or other staff member in a way that undermines the Board member's exercise of proper supervisory control.

### III.    ISSUES AS TO WHICH NO RECOMMENDATIONS ARE MADE

Several issues arose during our investigation that either did not result in recommendations or that we did not investigate.

24870086.1

**ATTORNEY-CLIENT PRIVILEGE**
**ATTORNEY WORK PRODUCT**

PRIVILEGED AND CONFIDENTIAL

- *UPL unit*. Kim complained that the development of the UPL unit raises concerns regarding cost inefficiency, overlapping jurisdiction with OCTC, and a lack of independence by the General Counsel. This appeared to us to be a turf issue that has been aggravated by a perception of favoritism and insularity within the organization. While we do not believe that this issue has resulted in any actionable wrongdoing, the Board may wish to consider giving an opportunity to be heard on this issue to Kim, who feels that her concerns on the issue have been ignored and disrespected.

- *Speakers fees*. Kim also raised concerns regarding the cost of outside speakers' fees. For reasons discussed on September 14, we did not see a problem here and have not pursued the issue further.

- *Retaliation*. Jayne Kim provided Hawley with a supplemental memorandum, dated September 16, 2014, regarding her concerns of a hostile work environment and potential retaliatory efforts towards her. Attachment 3. These issues seemed collateral to the thrust of our investigation, and with the agreement of the working group we have not pursued them. The Board should consider what if any additional action to take on the allegations.

- *Alleged manipulation of backlog numbers*. OCTC's Managing Director of Investigation John Noonen said during our interview that he believed Jayne Kim was manipulating her backlog numbers, but he expressed a fear of retaliation if Kim ever learned that he was making such accusations. We agreed with the working group that this matter was more appropriately addressed in some forum other than the present investigation.

## IV.    RECOMMENDATIONS

### A.    Joseph Dunn

Although certain other deficiencies in Dunn's performance would warrant counseling or reprimand only (such as his inattention to proper allocation of expenses between mandatory and

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

**Ex. 1:27**

PRIVILEGED AND CONFIDENTIAL

voluntary fees), Dunn's repeated failure to provide adequate or truthful information to the Board plainly provides an adequate basis to terminate his at will employment.  Whether the Board should do so is a slightly different question, which requires evaluation of factors including how strongly Dunn has been performing in other ways—something as to which the Board has more information than we do.  Nonetheless, however strong his performance has otherwise been, the nature of the misconduct involved here and the attitude Dunn showed when questioned by counsel could certainly justify termination.

Dunn repeatedly provided inadequate or inaccurate information to the Board in a way that undermined its ability to exercise its decision-making authority.  He told (or implied to) the Board that no Bar funds would be used for the trip to Mongolia, when that was not the case.  He failed to inform the Board about the Supreme Court's concerns regarding A.B. 852 that were highly relevant to a decision it was being asked to make about sponsoring the legislation.  He misrepresented the Supreme Court's views about moving Bar operations to Sacramento even though the Board's discussions made plain to him that the Supreme Court's views were a central factor the Board was considering in making a hugely important decision for the Bar's future.

His truth-telling tendencies have also been called into question more generally based on how he described (or allowed to be described) to the Board Tom Miller's intentions about working in San Francisco, how he described to Luis Rodriguez his chances for a Judicial Council position, and how he described to Beth Jay and to us in his interview his disclosures to the Board about A.B. 852.

One piece of information that is often relevant to termination decisions of this kind is how effective and valuable the individual has been to the organization.  Boards may be willing to tolerate more problems associated with an executive who is bringing huge value than with an executive who is a more average performer.  The Board is far better able to judge the importance of Dunn's contributions to the Bar than we are.  At the same time, two considerations are relevant to weighing this factor in the termination decision.

PRIVILEGED AND CONFIDENTIAL

First, while Boards sometimes are willing to overlook or seek work-arounds for certain deficiencies in a high-performing executive, the deficiency of failing to be candid and truthful with the Board seems to strike at the very core of what a Board requires in its single employee.

Second, in assessing whether the problem is one that can be avoided in the future through reprimand or counseling, the Board should consider how Dunn responded on this issue when interviewed. It would be one thing if he were contrite and apologetic, acknowledging that his behavior in certain respects fell short of Board expectations. Dunn was the opposite: unapologetic, disingenuous, and (at least in one instance) untruthful. This reaction bodes ill for the possibility that future performance will be better.

Should it decide to do so, the Board plainly has the authority to terminate Dunn. Dunn's agreement provides that he is an at will employee who "serves at the pleasure and discretion of the Board and shall be terminable at will." Employment Agreement, § IV(C). "The Board as a whole has the authority to hire, supervise, and fire the Executive Director, and may do so through its designated leadership of Board President or other designate." Board Book Tab 18, Art. 3.

### B.     Peggy Van Horn and Financial Controls

Van Horn should be reprimanded for failing to perform her duties in accordance with applicable standards. There are constraints, however, on the extent to which the Board may do so directly.

Section 5 of the Rules and Regulations Pertaining to the Employment of Executive Staff Employees ("Exec. Staff Rules") provides: "Unless the Board has retained to itself the discretion to appoint or terminate an Executive Staff Employee, an Executive Staff employee serves at the pleasure of the State Bar and may be terminated, disciplined or demoted at will by the Executive Director." Exec. Staff Rules § 5(A) (emphasis added); see also Board Book, Tab 17, Art. 4, § 2 ("No personnel action . . . shall be undertaken without the approval of the Executive Director, or designee, through the Office of Human Resources."). The Board's Lines

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

of Authority Policy Statement provides that the Board "may provide advice to the Executive Director to support her/his management, but will not assume the role of managing other staff members unless there is a compelling reason to do so. Such a step would be considered a temporary and emergency action." Board Book, Tab 18, Art. 3, p. 18.

If the Board decides that Van Horn should be reprimanded, we recommend that it instruct Dunn (or his replacement) to do so. If he refuses, the Board may (1) "assume the role of managing" Van Horn in light of the "compelling" concerns raised by the investigation's findings and Dunn's refusal to take appropriate action; and/or (2) take Dunn's conduct into account in his performance review and the re-negotiation of his contract.

Further, management should implement additional internal controls and/or training to ensure that State Bar funds are appropriately administered and accounted for in accordance with all legal requirements. Specifically, we recommend the following:

- All members of the Board, senior management, and any Office of Finance staff member responsible for auditing travel and business expenses should undergo training on the *Keller* requirements, as well as the business unit account codes applicable to chargeable versus non-chargeable expenses.

- At a minimum, management should ensure that travel expenses for the Mongolia trip are properly allocated to voluntary fees.

- The Board should instruct senior management to allocate each executive staff member with an individual business expense budget each year. These allocations should be included in the annual budget to be approved by the Board, and internal controls should be implemented to ensure that each executive staff member's business expenses are appropriately audited by the Office of Finance. The Executive Director's business expenses should be audited by the finance committee of the Board.

PRIVILEGED AND CONFIDENTIAL

### C.    Thomas Miller

The Board should consider several matters with respect to Miller's position as General Counsel.

First, as noted above, unless it has changed its view, the Board should instruct Miller that it has always understood that he would spend a majority of his time in San Francisco indefinitely, and that it expects that practice to continue. It may deliver that feedback through the existing evaluation process. See Board Book Tab 18, Art. 3, p. 22 ("The General Counsel is subject to an annual performance review by both the Executive Director and the Board.").

Second, if the Board decides to reprimand but not terminate Dunn, it may want to revisit whether Miller is the best person for the General Counsel job. Having a strong General Counsel can act as a valuable check on a chief executive whose trustworthiness or candor has been called into question. Given the problems that have now come to light about Dunn, the Board may feel a greater need to have such a General Counsel in place than it did when Miller was hired, and it may question whether Miller is the right person if Dunn remains. Certainly, Miller failed to take action to correct the non-disclosure regarding AB 852 though he was in a position to do so, and his party-line explanation for failing to do so raises questions whether he has the gumption and independence to stand up to Dunn when the Board would want him to.

If the Board concludes that Miller should be replaced, we can discuss further at the Board meeting how to go about doing so. While the Executive Director must bring his or her choice for General Counsel to the Board for approval, it is unclear whether the Board has retained the discretion to dismiss someone from the General Counsel position. Compare Board Book Tab 18, Art. 1, § 7 (stating that Board must approve General Counsel hiring, but "otherwise all personnel decisions reside exclusively in the executive director"), with Board Book Tab 18, Art. 3, p. 17 ("The Executive Director will make recommendations for hiring and dismissal of these positions to the Board for their final approval.").

Finally, whoever continues in the role of General Counsel, the Board should reinvigorate the policy that the General Counsel reports directly to both the Board and the Executive Director.

24870086.1

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

PRIVILEGED AND CONFIDENTIAL

See Board Book, Tab 18 § 7 Authority of the General Counsel.  The job description posted, and Miller's understanding of the reporting relationship, do not precisely track the stated policy.  The Board should take steps to cultivate a direct relationship with the General Counsel and express an expectation that he or she perform a watchdog role.

### D.    Other Recommendations

1.    The State Bar should make a corrective public statement to clarify that Bar funds were in fact used for the Mongolia trip.

2.    The Board should adopt a policy that prohibits Bar employees from providing or offering to Board members during their terms of service assistance in professional matters unrelated to Bar activities and prohibits Board members from requesting such assistance.

3.    At some appropriate meeting, retreat, or other forum, the Board should receive from an outside expert training in protocols related to the proper conduct of independent investigations and should consider adopting written guidelines for the handling of such investigations in the future.

4.    The Board should instruct senior management how important it is to cultivate and maintain a public perception that the Bar represents all attorneys, and that no one law firm or segment of the bar has a special position.  It should further instruct management that its conduct to date may have created an unhealthy perception that Girardi and his firm have special influence or receive special treatment – and that management should take steps to dispel and avoid contributing further to this perception in the future.

5.    The Board should instruct all senior management to ensure strict adherence to the Bar's competitive bidding and sole source requirements.

6.    Bar management should be instructed to conduct all Bar business through their official email accounts and not to use personal email addresses for such matters (as it appeared to us that Dunn did on many occasions).

24870086.1

ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

# EXHIBIT 2

# EXHIBIT 2

# LOS ANGELES TIMES

**CALIFORNIA**

# Vegas parties, celebrities and boozy lunches: How legal titan Tom Girardi seduced the State Bar



Tom Girardi was able to stay in the state bar's good graces for decades while attorneys accused of similar wrongdoing were reprimanded, suspended or disbarred.
(Al Seib)

By HARRIET RYAN,
MATT HAMILTON

MARCH 6, 2021 5 AM PT

- Facebook

Ex. 2:1

- Twitter
- Show more sharing options

The warning signs about Tom Girardi flashed year after year, allegations that he skimmed settlement money, inflated costs, abandoned clients and cheated colleagues.

The vaunted Los Angeles trial lawyer, a regular on "Real Housewives of Beverly Hills," and his firm were sued more than a hundred times between the 1980s and last year, with at least half of those cases asserting misconduct in his law practice.

Yet through it all, Girardi's record with the State Bar of California, the government agency that regulates attorneys, remained pristine. The bar took no action to warn the public despite receiving what The Times has learned were multiple complaints. That spotless license allowed him to continue marketing himself as one of the nation's most renowned civil lawyers, and to sign up thousands of new clients, some of whom would later say he absconded with millions of dollars of their settlement money.

In the wake of the stunning collapse this winter of Girardi's law firm and reputation, The Times investigated how he was able to stay in the bar's good graces for decades while attorneys accused of similar wrongdoing were reprimanded, suspended or disbarred.

ADVERTISING

The newspaper, in months of interviews and reviews of documents, found that Girardi cultivated close relationships with bar officials that at times appeared improper. Agency staffers received annual invitations to a Las Vegas legal conference, where Girardi hosted over-the-top parties at the Wynn casino featuring Jay Leno and other celebrity entertainers, according to attendees, event programs and an internal bar investigation.

**Ex. 2:2**



Jay Leno performs at Tom Girardi's 2014 party in Las Vegas.
(Matt Hamilton / Los Angeles Times)

After the bar's executive director, a longtime Girardi pal, violated policy by using a state credit card to pay for a trip to Mongolia, the Girardi Keese law firm sent a $5,000 check to reimburse the agency, according to the internal investigation and court records.

While under investigation for misconduct in 2010, Girardi bankrolled a lavish retirement bash for the chief justice of the state Supreme Court, which oversees the

**Ex. 2:3**

bar, even booking crooner Paul Anka to perform, according to news reports, court records and interviews with attendees.

He forged a particularly tight relationship with a bar investigator named Tom Layton. Over the decade and a half Layton worked at the bar, Girardi routinely treated him to pricey meals at the Jonathan Club, Morton's and the Palm, according to Layton's sworn testimony. The investigator rode on Girardi's private jet and two of his children got jobs at Girardi Keese, according to the testimony and an online resume. When he and his wife were sued by the contractor building their "dream house," Girardi provided years of free legal work, records of the case show.

There was open talk at the agency about whether the legal titan's connections had shielded him from discipline, according to interviews with more than 15 current and former bar officials.

**The legal titan and the 'Real Housewife': The rise and fall of Tom Girardi and Erika Jayne**

The bar's inaction came at a profound cost. Orphans, widows, a burn victim and other vulnerable clients who trusted Girardi to win them justice have instead lost millions of dollars apparently spent or otherwise misappropriated, according to judges' orders in the recent cases.

In one of the biggest scandals in California legal history, Girardi's firm has ceased operation and he has been forced into bankruptcy. He has been referred to federal prosecutors for criminal investigation, his wife, "Housewives" star Erika Jayne, is divorcing him, and the power he wielded at the bar and elsewhere has vanished.

Girardi was not available to answer questions, according to an attorney for his younger brother. Robert Girardi has said in court filings that his brother has short-term memory loss, and a judge last month placed the 81-year-old attorney in a conservatorship.

"Any interview with Tom Girardi would be inappropriate, given the circumstances that have given rise to the conservatorship," said Nicholas Van Brunt, an attorney for Robert Girardi.

**READ MORE TIMES REPORTING ON TOM GIRARDI**

**Ex. 2:4**

**[‘Real Housewives’ attorney Tom Girardi used cash and clout to forge powerful political connections](#)**

For decades politicians were happy to take Tom Girardi's money and put up with his requests for something in return.

[A state bar spokeswoman](#) said the confidentiality of bar investigations along with other restrictions prevented them from answering many of The Times' queries about Girardi.

"Beyond those constraints is the reality that much of what you are asking about concerns a time period many years past," the spokeswoman said in a statement. "The current [Board of Trustees](#) and staff leadership team have no knowledge of the information you are seeking."

## Alarming track record



Tom and Erika Girardi on "Real Housewives of Beverly Hills." (Bravo)

**Ex. 2:5**

It was 2000, the year the film "Erin Brockovich" gave Girardi a national profile, but proceedings in Superior Court were focused on a previous legal victory.

The roughly $128-million settlement on behalf of hundreds of former employees of Lockheed's Burbank facility was celebrated by the legal press and, at least initially, by the injured workers themselves.

But after the checks went out, some began questioning how the money was distributed.

The accounting records Girardi reluctantly turned over showed client funds went to "a huge number of persons" unconnected to the litigation, including individuals listed as "K. Ernest Citizen," "Giovanni Medici" and "Lee Marvin," according to correspondence filed by the workers' attorney in subsequent lawsuits.

The records also showed money going to companies and lawyers that the Lockheed workers said had no clear ties to their case, such as $500,000 to a brokerage firm and $25,000 to his close friend, attorney Robert Baker.

Asked recently about the accounting, Baker, a prominent L.A. litigator, said he never received those funds and noted he and his firm "did not have anything to do with that case."

Lockheed workers came to believe "millions and millions" were missing, as one of their attorneys wrote in a 2002 letter, and filed suit against Girardi. He insisted he had done nothing wrong, but he refused to make his bookkeeper available for a deposition. In what would become a pattern in such cases, he brushed aside demands for access to his firm's books and other financial records for more than a year — even in the face of three court orders.

As the judge was preparing to send the accounting firm KPMG into Girardi's Wilshire Boulevard office to conduct an audit, he settled the case. The terms were not disclosed.

The financial improprieties alleged were precisely the sort of misconduct the State Bar of California was supposed to investigate. The main mission of the agency, an arm of the state Supreme Court, is to protect the public by setting licensing standards for California's 250,000 lawyers and disciplining those who violate ethical duties.

**Ex. 2:6**

With a budget of about $240 million, the bar has a staff of 600 employees in offices in San Francisco and Los Angeles. Most employees are assigned to the discipline system, which includes prosecutors, investigators and administrative judges. The bar fields about 15,000 complaints a year, primarily from unhappy clients, but it also has the power to initiate investigations based on news reports, lawsuits or referrals from judges.

The offices of the State Bar of California in downtown Los Angeles. (Robert Gauthier / Los Angeles Times)

Girardi was the subject of complaints on multiple occasions, according to people familiar with the matter. The nature and timing of those reports are not clear. By law, complaints generally become public only if they result in formal charges in state bar court.

By the time of the dispute over the Lockheed settlement, at least one bar investigator was well known to Girardi.

The attorney and Layton traveled in similar political circles but had different roles. A major Democratic fundraiser since the 1970s, Girardi had the ear of governors and became known widely as a judgemaker who could secure or doom appointments to the bench.

Layton was a registered Republican and a former L.A. sheriff's deputy. Though he had never risen high in the department, he served on a union committee for political endorsements and became known among law enforcement for his savvy and connections with government officials, according to media accounts and interviews with lawyers and police officials. An injury forced his early retirement in the mid-'90s, but even after he joined the state bar, he retained his place in the power structure, presenting himself as a "special assistant" to Sheriff Lee Baca.

He and Girardi, two decades his senior, were often seen side-by-side at political fundraisers and restaurants, according to interviews with associates and sworn testimony. Girardi held extravagant Super Bowl parties and annual Christmas feasts, where Layton mingled with a powerful crowd of judges, attorneys and politicians.

**Ex. 2:7**

With Girardi's support, Layton also became known for helping ambitious attorneys who sought judgeships. He assisted governors Gray Davis and Arnold Schwarzenegger as they vetted applicants, according to Layton's sworn testimony and news accounts.

His official duties as a bar investigator were less high profile. The post paid under $42,000 a year when he started in 1999, payroll data show, and consisted mainly of interviewing disgruntled clients and tracking down records. It did give him access to a river of confidential information about lawyers and their alleged misdeeds.

It's unclear what Layton knew about complaints that came in against Girardi over the years. After he left the agency in 2015, he was questioned under oath about his relationship with the attorney, and insisted he never worked on an investigation involving Girardi Keese.

What is undisputed is that Girardi had a lot of dissatisfied clients. He and the firm have been sued at least 45 times for legal malpractice or misappropriation of client money, according to court dockets. In at least 14 other cases, attorneys or expert consultants have alleged he stiffed them out of fees. Girardi did not carry malpractice insurance and relied on employees or attorney friends to represent him, according to retainer agreements filed in court and interviews. He prevailed in some cases. The files of others have been destroyed or are unavailable for review. Many settled before trial.

As the sole owner of Girardi Keese, he was accountable only to himself and shared little about firm operations with the dozens of attorneys who worked there. He was especially secretive about finances, associates said.

One of the few to get a clear look was the forensic accountant Girardi's second wife hired during their divorce. The accountant was alarmed by what he discovered in the firm's books. A cardinal rule of the legal profession is that attorneys may not touch a cent of their client's money — a transgression that can result in disbarment, prison or both.

The accountant described "indiscriminate and inappropriate use of the client trust accounts," including a $9-million payment Girardi made to himself that was never recorded on his firm's books, according to the accountant's sworn declaration.

**Ex. 2:8**

**CALIFORNIA**

**Brother of attorney Tom Girardi asks to be named guardian; law firm heads for Chapter 7**

**Jan. 13, 2021**

"We have discovered several examples of monies taken directly from client trust accounts to pay for [Girardi's] personal expenditures," the accountant, Alfred Warsavsky, wrote, describing a $50,000 check made out to the holding company for his private jets, an unexplained $500,000 payment to a title company, and a $340,000 purchase of shares in a Las Vegas hotel, according to declarations from the accountant. Girardi's lawyer contested the claims.

It's not clear whether the bar was notified. The judge, one of the lawyers and Girardi's second wife are dead.

In the years that followed, there was a drumbeat of additional complaints. One former client accused Girardi in 2002 of not conducting basic legal work in her lawsuit against a businessman for allegedly drugging and raping her.

An executive fired by Lee Iacocca accused Girardi that same year of failing to depose key witnesses and file necessary motions in a wrongful termination case. Both cases settled before trial with no finding of wrongdoing.

Other Lockheed workers filed additional suits, and Girardi kept fighting their requests for documents. In one case, he racked up nearly $60,000 in penalties for defying court orders. Ultimately, the cases were dismissed on statute of limitations grounds, and the misappropriation allegations never got a full hearing.

## A connect at the bar

Tom Girardi presents closing arguments in the civil trial in Bryan Stow's lawsuit against former Dodgers owner Frank McCourt and the Los Angeles Dodgers.
(Irfan Khan / Los Angeles Times)

The longer Layton worked at the bar, the closer his connection with Girardi became. His teenaged son began working as a clerk at Girardi Keese in 2003 and remained

**Ex. 2:9**

employed there for seven years, according to an online resume. Layton's daughter was hired briefly to do filing, he said in a deposition.

He traveled on one of two private planes the attorney kept at the Van Nuys airport, according to his sworn testimony.

The men often ate together at restaurants beyond the budget of most government workers, such as Morton's, where filet mignon starts at $43, and the Palm, with its $36 chicken parmesan. Girardi ordered bottles of pricey red wine for the table — even for lunch. Layton became such a fixture that his caricature was added to the Palm's wall, right above former U.S. attorney Debra Yang. Girardi almost always picked up the check, according to interviews with people who attended the meals and Layton's sworn testimony.

When questioned under oath about these meals, Layton described their conversations as primarily about politics and law enforcement.

During these years, Layton and his wife, a USC accounting professor, embarked on a remodel of their modest La Cañada Flintridge residence. The project doubled the square footage to create the six-bedroom, five-bath home of his wife's dreams.

Two years into the project, with costs approaching a half-million dollars, the Laytons fired their contractor, who then sued the couple.

Girardi and his firm were on the case immediately, with the lawyer's attorney son-in-law, David Lira, dispatching a construction expert to inspect the project. In the years that followed, Girardi Keese poured resources into the case without charging the Laytons.

"As I previously indicated, this is a pro bono case for the firm," Girardi wrote to the arbitration company JAMS in 2009.

Three other veteran litigators at the firm worked on the case, which went all the way to the state Supreme Court. At times, Girardi appeared deeply invested in its outcome, and during one mediation, he stormed down a hallway, loudly demanding the Laytons receive money, one attorney recalled.

**Ex. 2:10**

The contractor prevailed and the couple were ordered to pay more than $235,000. The sides reached a confidential settlement in 2014 as the case was awaiting a Supreme Court hearing. The same year, Girardi signed on to handle another personal issue for the Laytons: A suit against the La Cañada Unified School District for allegedly failing to protect their teenage son from bullying. It settled a year later for $190,000, according to district officials.

State law caps the value of gifts or services many public employees can accept from one individual, with the current limit at $520 per year. Investigators like Layton, however, were not covered by the law until 2014, the final year of the contractor litigation.

That year, he did not list Girardi's legal services as a gift in a mandatory disclosure form. It's unclear if Girardi Keese was still working for free. The value of Girardi's legal work was not disclosed, but his opposing counsel's total fees tallied in court papers offer some idea: $114,000.

Ann Ravel, former chair of the California Fair Political Practices Commission, which enforces public employee ethics laws, called the free legal representation "incredible."

"There are some exemptions for gifts, but this would not be one of them," Ravel said, adding, "Not thousands of dollars for someone who clearly would come under the authority of the individual who is receiving those gifts."

## Case for Nicaraguan banana workers leads to trouble

Former banana workers rally in Nicaragua in support of Dole workers.
(Annie Wells / Los Angeles Times)

When Girardi was called out publicly for his behavior, it wasn't by the bar, but a more feared and respected body: the federal judiciary.

What brought him into the judges' crosshairs was a potential bonanza of legal fees Girardi had spotted in the early 2000s in the banana plantations of Nicaragua. He and his longtime friend, Century City litigator Walter Lack, and local attorneys signed up more than 400 field workers for a suit against Dole and other companies over the use of a toxic pesticide.

**Ex. 2:11**

The problem was that the Nicaraguan lawyers had mangled Dole's name, suing a defendant that did not exist — "Dole Food Corporation" — instead of the global conglomerate Dole Food Company. The Nicaraguan court handed down a $489-million judgment in 2002 against the nonexistent entity and other companies.

To collect the head-spinning amount, Girardi headed with Lack to a jurisdiction where the judges knew their names and reputations, L.A. Superior Court. The corporate defendants wanted the case in federal court, seen as friendlier to businesses, and it was there that things began to unravel.

In their efforts to ensure the case was heard in L.A. Superior, Girardi and his colleague had filed what purported to be a translation of the Nicaraguan court order for payment. In it, the name of the nonexistent corporation had been replaced with the name of the actual Dole company headquartered in Westlake Village.

The ruse was detected by a federal judge, who threw out the case. But Girardi and Lack continued appealing for years, incensing the 9th Circuit's chief judge and others on the court. A 2008 investigation by a retired jurist lambasted Girardi and Lack for "the persistent use of known falsehoods."

Lack received a six-month suspension from practicing in federal courts and a $250,000 fine. Girardi, who claimed he hadn't read the court papers before filing, was found to have "recklessly" made false statements and fined $125,000. In a recent interview, Alex Kozinski, then chief judge of the U.S. 9th Circuit Court of Appeals, described it as "about as serious a case of misconduct as I had ever seen."

The court discipline triggered an automatic investigation by the bar, but there was a gap of more than two years between the time the retired judge's report made it clear Girardi would face an investigation and the court decision making the sanction official.

During that interlude, there was a change in leadership of the bar that some observers saw as beneficial to Girardi. An attorney friend, Howard Miller, who worked at Girardi Keese, was elected president, and Girardi attended his 2009 swearing in.

Under his law partner's leadership, the bar's board of trustees forced out the longtime executive director, and Miller recruited Joe Dunn, another friend of Girardi, to fill the post.

**Ex. 2:12**

Dunn was an Orange County plaintiff's attorney and former state senator. His experience in Sacramento was attractive to trustees, who perpetually confronted problems securing funding from the Legislature. Dunn's appointment sailed through.

*'There's only one guy, Tom Girardi, who could even conceive of this.'*

CHIEF JUSTICE RON GEORGE

Just before Dunn came aboard in 2010, the state bar held its annual convention in Monterey, and Girardi was there. The Dole matter had been referred to the bar for investigation by then, and to many legal insiders, Girardi's career was on the ropes. If he was worried, he didn't show it. Indeed, his firm paid for a lavish party at the convention for retiring Chief Justice Ron George. Girardi flew in an orchestra and hired Paul Anka to serenade the chief in a soaring white tent on the hotel grounds.

The ethical implications of an attorney under investigation by the bar underwriting a party for its de facto boss troubled some agency officials and they declined to attend or left early, according to several who spoke to The Times.

"There's only one guy, Tom Girardi, who could even conceive of this," the chief justice told the hundreds of lawyers and judges at the bash, the Daily Journal reported. Interviewed recently, George said he was unaware Girardi was under investigation at the time and that he had not considered the event problematic because it also honored Miller, the departing bar president.

Because Miller worked for Girardi's firm, the Dole investigation was assigned to a private lawyer, but that attorney had never handled a bar investigation. He decided not to pursue charges against Girardi and Lack, reasoning that the fines and public scolding by the federal court were punishment enough.

Girardi was elated, telling the Daily Journal he was "totally vindicated."

Many legal insiders were shocked at what they saw as a slap on the wrist. Kozinski described the outcome as "very surprising." Referencing the recent revelations about Girardi, he said that if the bar had taken its investigation more seriously, "Maybe some of this would never have happened."

## 'Avoiding Trouble with the State Bar'

**Ex. 2:13**

When a partner at an L.A. law firm decided to seek the presidency of the bar in 2014, the outgoing president gave him some advice: Go to lunch with Tom Layton and get his support.

The aspiring candidate, corporate litigator Craig Holden, was surprised given that Layton was a low-level bar staffer with no role in the election, but he agreed to meet him nonetheless at Morton's.

After Holden settled in at the swanky steakhouse, everything clicked into place. Girardi materialized at the table, sat down next to Layton and launched into his expectations for bar leadership.

The message, board lawyers would later write in a confidential internal report, was "that the 'power broker' on whose support Holden's election depended was in fact Girardi."

Several former bar officials disputed that Girardi ever had the kind of power he was displaying, noting, for example, that Holden ran unopposed. But there was no doubt that in the years after his friend Dunn became the bar's executive director, Girardi appeared comfortable publicizing his connections.

One example was the annual convention of the [Consumer Attorneys Assn. of Los Angeles](#) (CAALA) held in Las Vegas. As one of the state's best-known plaintiffs' attorneys, Girardi had enormous influence in the group and poured his firm's money into the yearly meeting, a mash-up of training seminars, networking and bacchanalia. While many law firms sponsored events or meals coinciding with the conference, Girardi Keese's boozy gala each year at the Wynn resort stood apart for its extravagance and comedy and musical performances.

Layton regularly attended, as did a group of bar attorneys and judges with ties to Girardi. For the 2014 convention, five bar employees, including Dunn, were invited to speak on a panel entitled "Avoiding Trouble with the State Bar," according to a program. Bar lawyers would later say the event, which took place on a workday, deviated from office policy and was "an example where Dunn bent (or attempted to bend) the normal rules to accommodate a request perceived as helpful to Girardi," they later wrote in the internal report.

**Ex. 2:14**

Then there was the Mongolia trip. After the country's consul contacted the bar in 2013 for advice about setting up a regulatory system for attorneys, Dunn decided to travel there. He took with him Girardi's friends, Layton and Howard Miller, the former bar president.

Dunn told trustees that no state bar funds would be used to pay for the travel, according to an arbitrator's subsequent findings. But he ended up relying on a government purchasing card for the airfare for him and Layton, and he racked up additional costs in cellphone roaming fees. Shortly before Dunn submitted his expense report, Girardi's firm sent over a check for $5,000. "The intent of the donation remains ambiguous," bar lawyers later wrote in the internal report.

Meanwhile, Girardi's close relationship was raising questions within the bar. Some at the agency understood that Layton was working part-time for the lawyer, though they were unclear about the arrangement, according to two former high-ranking officials.

Layton was later asked at a deposition whether he had worked for Girardi while a bar employee.

He replied, "I don't recall."

Evidence surfaced after Layton left the bar that suggested he had been referring potential cases he encountered to Girardi's firm. In one instance, the investigator contacted Girardi Keese by email about a scam involving a phony law firm that was targeting Marines at Camp Pendleton, according to emails cited in testimony.

A junior attorney at Girardi's firm replied to Layton, "Is GK a go for this case? I.e., has Tom said anything?"

Layton said that he planned to meet soon with the San Diego district attorney's office and the state attorney general. "I am going to ask if a representative of GK [can] attend the meeting."

Layton said in deposition testimony that he was never paid for referrals and did not refer cases he learned about through investigations.

***

**Ex. 2:15**

Not everyone shrugged off Girardi's grip on the bar. Chief trial counsel Jayne Kim was a former federal prosecutor who had been hired in 2011 to professionalize the disciplinary system and eliminate the backlog in investigations. She was apolitical, no-nonsense and unyielding when it came to rules and ethics.

"The highest character and integrity, really impeccable," former bar trustee and San Diego attorney Heather Rosing recalled.

Kim had crossed paths with Layton in the early 2000s when she was a staff attorney, and now back at the bar, with him under her supervision, she saw that little had changed.

Layton was on the phone with Girardi during work hours, he crowed about their friendship to colleagues and he "often disappeared during the work days, and appeared to be engaging in political activities during State Bar time," she later wrote in a formal complaint.

After Kim reported her concerns to Dunn, the executive director moved Layton away from her supervision and into a post that was officially classified as "public information officer." His actual role was the subject of much speculation.

"Whatever he was doing for Joe ... was unclear, was not official," a former bar executive who worked in the same department, Carol Madeja, later testified.

Trustees puzzled at how Layton hovered around Dunn at board meetings wearing what appeared to them to be a gun.

"I can remember thinking at the time, what role does a guy like Tom Layton have in anything to do with leadership of the board?" said Dennis Mangers, a former bar trustee.

Dunn later asserted in a court declaration that he had tasked Layton with being a "liaison" to "the California judiciary, legislature, and law enforcement."

Though Kim no longer supervised Layton, she and Dunn clashed on other fronts, including whether her lawyers and investigators should be permitted to attend the Las Vegas convention.

**Ex. 2:16**

Kim complained formally in July 2014 in a 17-page report alleging Dunn and others in power were serving "private or personal agendas." One page devoted to Layton began, "I know no one within the State Bar that can explain, in any meaningful detail, Layton's duties and responsibilities." She noted "Layton's close ties to Tom Girardi … and the appearance of impropriety."

The board hired the white-shoe firm Munger, Tolles & Olson to conduct a confidential investigation. It didn't stay a secret from Girardi for long.

When investigators tried to question Dunn's longtime assistant, "Girardi suddenly and unexpectedly appeared" as her lawyer and "launched an unprofessional tirade of threats," the Munger Tolles investigators wrote to the board in their internal report.

Girardi claimed he was concerned they might treat the assistant rudely, but the investigators had another theory. Perhaps, they wrote, "He perceives a threat to Dunn as a threat to his possibly favored position with the Bar."

Though they hadn't uncovered instances of misconduct involving Girardi, the investigators concluded, it was "striking" how frequently he and his firm turned up in their investigation.

"The closeness of the relationship between some senior managers and that firm does raise potentially troubling perceptions that the Board should take action to rectify going forward," the Munger Tolles lawyers wrote.

The internal report was shared with the chief justice, Tani Cantil-Sakauye, who made it available to the state Supreme Court's other justices. A spokesman for the chief justice said she took no action and said she did "not recall any details of the report nor any sections involving Mr. Girardi."

The Munger Tolles lawyers had identified other misconduct by Dunn that had nothing to do with Girardi and Layton, and the board terminated him. Layton and Dunn's assistant's positions were eliminated.

## Secretly copying documents with a phone
*If a stranger to the State bar had engaged in this conduct, he would surely be prosecuted*

**Ex. 2:17**

BAR ATTORNEYS IN A DRAFT COMPLAINT.

The State Bar of California offices in downtown Los Angeles.
(Robert Gauthier / Los Angeles Times)

It was a fall weekend. The state bar offices on Figueroa Street were dark, but a lone figure moved stealthily on the floor where confidential case files were held.

John Noonen had been at the agency since the Reagan administration, working his way up to managing director of investigations, but he was not on official business that Sunday afternoon in 2015.

Noonen was on the hunt for a particular file with highly sensitive records about an attorney with whom he was close. He found it, snapped 15 photos with his phone and slipped out, according to a draft lawsuit later prepared by bar attorneys.

Most of Girardi's allies had been forced out of the bar by then. Noonen remained. He counted Layton as a friend and was also acquainted with his powerful patron, Girardi, who for a time had employed Noonen's daughter as a law clerk, according to her online resume.

The ouster of Layton and Dunn had cost Girardi his insider status, and he was furious.

**Ex. 2:18**



Tom Layton, left, and John Noonen.
(State Bar of California)

Working with his close friend, attorney Robert Baker, and L.A. lawyer Mark Geragos, Girardi coordinated suits against the agency on behalf of Dunn, his assistant and Layton. The former employees presented Dunn's termination as the result not of managerial incompetence, but of machinations by Kim, the agency's top prosecutor, to conceal her own alleged deficiencies. Layton and the assistant, Sonja Oehler, contended they were pushed out in retaliation.

Girardi, then in his mid-70s, appeared particularly concerned about the impact on attorney investigations. In a lawsuit he eventually filed on behalf of Dunn's assistant, Oehler, Girardi expressed fear that bar leadership was retaliating against him and the attorneys representing the ousted employees by ordering any complaints "that were

**Ex. 2:19**

filed in the past 30 years be re-opened despite the fact all of the complaints had been closed for decades."

As the legal war waged, Noonen began downloading and copying records. He would later say he needed confidential materials to support a whistleblower claim against Kim and others.

For nearly a year, he gathered a trove of information about the agency's most sensitive work: ongoing investigations of lawyers. He amassed more than 15,000 emails, memos, spreadsheets and other records, including hundreds of photos he took during 10 off-hours visits to the bar office, according to court filings and the draft complaint. The records contained unfiltered information such as client complaints and interview notes.

"If a stranger to the State bar had engaged in this conduct, he would surely be prosecuted," bar attorneys later wrote in the draft complaint.

Noonen was not charged with a crime.

The bar laid Noonen off in November 2015, but it did not end his search for confidential bar information. The following year, he met with Oehler, Dunn's erstwhile assistant, at the Wynn casino during the CAALA convention, and she handed him an agency laptop she had kept after her dismissal.

Noonen copied materials from the laptop onto a flash drive and delivered them to Girardi, according to sworn accounts by Oehler and Noonen.

Noonen later said in sworn declaration he did only a "cursory review" of the laptop for information helpful to Girardi in bringing Oehler's case. But the bar attorneys accused Noonen of having "mined" its contents, citing a forensic examination that showed it had been accessed at least 11 times using three storage devices.

In this period, Girardi was being sued regularly by dissatisfied clients. People he represented in Lockheed and another case concerning Shell Oil were in court demanding financial records from their settlements. Dozens of cancer survivors also alleged Girardi had misappropriated part of their $17-million settlement from a pharmaceutical company.

**Ex. 2:20**

There were "a number" of complaints to the bar about Girardi then, according to Robert Hawley, who served as acting executive director after Dunn's firing. He said he did not know the nature of the reports. Because of the ongoing litigation, they had to be referred outside the agency and it was his job to find private attorneys to investigate them. He left his post before the cases concluded. They did not result in public discipline.

With Girardi at the helm, the legal battle by the ex-employees rolled on for years. Esteemed attorneys across the state who served as bar trustees had to sit for depositions. The chief justice along with her private attorney each faced questioning under oath.

An arbitrator sided with the bar and gave Dunn no money, and he did not respond to messages seeking comment. The others settled: Noonen negotiated an $85,000 payout and Oehler, Dunn's assistant, received $150,000, according to settlement agreements obtained through public records laws.

With Girardi by his side, Layton worked out a $400,000 settlement in 2019 in exchange for dropping his lawsuit. The bar declined to provide a rationale for the sum. The agreement contained a non-disparagement clause for both sides.

Layton and Noonen did not respond to interview requests or a detailed list of questions.

Girardi's practice was already falling apart by the time of the settlements. He had turned to high-interest lenders, who were demanding the return of millions of dollars. Vendors clamored for payment. Attorneys left the firm. A burn victim Girardi had represented years earlier against PG&E sued for settlement funds, eventually calculated at $12 million, he said the attorney had pocketed.

## CALIFORNIA

### Judge freezes assets of famed L.A. lawyer Tom Girardi, citing millions unpaid to clients

**Dec. 14, 2020**

California's legal world seemed unable to grasp what was happening to one of its most prominent attorneys. The judge overseeing the burn victim's lawsuit, Holly

**Ex. 2:21**

Fujie, was a former state bar president. As the months passed, more and more evidence surfaced indicating that Girardi had spent his client's money. Fujie raised the possibility of alerting the bar, but Girardi assured he would pay the money he owed, according to the burn victim's attorney, Boris Treyzon. Fujie did not respond to questions from The Times; judicial ethics limit jurists from commenting on pending cases.

As 2020 came to a close, a judge outside California finally took action. U.S. District Court Judge Thomas Durkin in Chicago was handling airline crash litigation and learned that Girardi had failed to pass on millions due his clients, widows and orphans in Indonesia. At a December hearing, Durkin erupted in anger, condemning Girardi's conduct as "unconscionable," and referring him immediately to federal prosecutors.

The move attracted massive media coverage and the next day, Fujie scheduled a hearing about whether she should report Girardi to the state bar.

To this day, he holds an active license to practice law.

## CALIFORNIATIMES INVESTIGATIONS

Newsletter

**The perils of parenting through a pandemic**
**What's going on with school? What do kids need? Get 8 to 3, a newsletter dedicated to the questions that keep California families up at night.**

SIGN ME UP

**You may occasionally receive promotional content from the Los Angeles Times.**

Harriet Ryan

- Twitter
- Instagram
- Email
- Facebook

**Ex. 2:22**

Harriet Ryan is an investigative reporter for the Los Angeles Times. Since joining the paper in 2008, she has written about high-profile people, including Phil Spector, Michael Jackson and Britney Spears, and institutions, including USC, the Catholic Church, the Kabbalah Centre and Purdue Pharma, the manufacturer of OxyContin. Ryan won the Pulitzer Prize for investigative reporting with colleagues Matt Hamilton and Paul Pringle in 2019. She previously worked at Court TV and the Asbury Park Press. She is a graduate of Columbia University.

**Ex. 2:23**

# EXHIBIT 3

# EXHIBIT 3

**Attachment B:**
**Business and Professions Code section 6086.1(b)(2) Disclosure re Girardi Disciplinary Matters**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 82-O-10609 | 8/10/1982 | 12/5/1983 | Failure to perform, delay, abandonment of client | Closed -- Investigation -- Insufficient Evidence |
| 83-O-10470 | 1/20/1983 | 4/25/1985 | Failure to account, deposit | Closed -- Investigation -- Insufficient Evidence |
| 83-O-11567 | 9/26/1983 | 1/12/1984 | Discretionary decisions; failure to perform, delay, abandonment of client | Closed -- Investigation -- Insufficient Evidence |
| 83-O-11655 | 10/7/1983 | 3/11/1985 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client; commission of crime/moral turpitude | Closed -- Investigation -- Insufficient Evidence |
| 84-O-11187 | 2/2/1984 | 5/8/1985 | Misrepresentations to client; misrepresentation to court; commission of crime/moral turpitude | Closed -- Investigation -- Insufficient Evidence |
| 84-O-11185 | 2/3/1984 | 10/29/1985 | Exorbitant/unconscionable fee; commingling; conversion or misappropriation; misrepresentations to client; representation of adverse interests | Closed -- Investigation -- Insufficient Evidence (request for review denied by Board of Governors 12/20/1985; final closing letter sent 1/24/1986) |
| 84-O-12554 | 5/24/1984 | 3/11/1985 | Discretionary decisions; lack of/failure to communicate; failure to turn over file/documents; failure to honor agreement/stipulation | Closed -- Investigation -- Insufficient Evidence |
| 84-O-12847 | 6/21/1984 | 4/19/1985 | Discretionary decisions; failure to perform, delay, abandonment of client; lack of/failure to communicate with client; limiting liability to client | Closed -- Investigation -- Insufficient Evidence |
| 84-O-13538 | 8/16/1984 | 8/24/1984 | Original Discipline | Closed -- Investigation -- Insufficient Evidence |
| 85-O-12626 | 5/31/1985 | 2/6/1987 | Failure to account, deposit; failure to perform, delay, abandonment of client | Closed -- Investigation -- Insufficient Evidence |
| 85-O-14292 | 10/24/1985 | 11/13/1985 | Exorbitant, unconscionable fee | Closed -- Investigation -- Insufficient Evidence |

1

**Ex. 3:1**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 85-O-14914 | 12/10/1985 | 5/19/1986 | Commission of crime/moral turpitude | Closed -- Investigation -- Insufficient Evidence |
| 86-O-12985 | 6/16/1986 | 1/2/1987 | Failure to honor liens; commission of crime/moral turpitude | Closed -- Investigation -- Insufficient Evidence |
| 86-O-13382 | 7/21/1986 | 4/3/1987 | Conversion or misappropriation; failure to account, deposit; failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Investigation -- Insufficient Evidence |
| 86-O-15516 | 12/8/1986 | 2/6/1987 | Solicitation; failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Investigation -- Insufficient Evidence |
| 87-O-11697 | 4/6/1987 | 4/29/1987 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Investigation -- Insufficient Evidence |
| 87-O-16137 | 9/16/1987 | 9/1/1989 | Conversion or misappropriation; failure to account, deposit; failure to honor liens | Closed -- Investigation -- Insufficient Evidence |
| 87-O-18399 | 12/28/1987 | 8/18/1992 | Failure to account, deposit; failure to perform, delay, abandonment of client; lack of/failure to communicate with client; misrepresentations to client. | Closed -- Pre-filing -- Non-Public Resolution (originally closed 8/24/1988; ordered reopened by Complainant's Grievance Panel 9/14/1990) |
| 88-00464 | 12/28/1987 | 2/9/1988 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client. | Closed -- Intake  -- Matter Resolved Between CW and R |
| 88-O-11569 | 4/5/1988 | 5/11/1989 | Failure to diligently perform; failure to keep client reasonably informed of case status; abandonment of client through withdrawal as counsel without cause | Closed -- Investigation -- Insufficient Evidence (closure affirmed by Complainant's Grievance Panel 8/2/1991) |

**Ex. 3:2**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 88-O-11756 | 5/27/1988 | 2/25/1992 | Withdrawal of funds in dispute; misrepresentations to client; limiting liability to client; representation of adverse interests; commission of crime/moral turpitude | Closed -- Investigation -- Insufficient Evidence (closure affirmed by Complainant's Grievance Panel 7/9/1993) (originally closed 12/28/1989; ordered reopened by Complainant's Grievance Panel 5/8/1991) |
| 88-10043 | 6/1/1988 | 9/13/1988 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Intake -- CW Failure to Cooperate (complaint form mailed 6/1/1988 not returned) |
| 89-O-10983 | 3/14/1989 | 8/18/1992 | Conversion or misappropriation; failure to account, deposit; commission of crime/moral turpitude; fee limitation re medical malpractice (B&P Code § 6146) | Closed -- Pre-filing -- Non-Public Resolution |
| 89-O-12014 | 5/2/1989 | 8/18/1992 | Conversion or misappropriation; failure to account, deposit; failure to honor liens; commission of crime/moral turpitude | Closed -- Pre-filing -- Non-Public Resolution |
| 89-O-12946 | 6/26/1989 | 8/18/1992 | Failure to honor liens | Closed -- Pre-filing -- Non-Public Resolution |

**Ex. 3:3**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 89-O-15641 | 8/9/1989 | 10/3/1990 | Failure to perform, delay, abandonment of client; misrepresentations to client; schemes to defraud; commission of crime/moral turpitude; harassment claim, not warranted; reportable actions (self reported)<br><br>Bus. & Prof. Code, § 6068.1(c):<br>Kathy Bernick v. Firemen's Fund Insurance Co., et al., No. C650547 (L.A. Super. Ct.)<br>Denise Breakman v. Thomas Girardi, No. C646455 (L.A. Super. Ct.)<br>Nathan Schiff v. Thomas Girardi, et al., No. C670638 (L.A. Super. Ct.)<br>Sylvia Manheim v. Anthony Brazil, et al., No. C672753 (L.A. Super. Ct.)<br>Martin & Associates v. Thomas Girardi, No. C680418 (L.A. Super. Ct.)<br>Medi-Cal (Kizer) v. Girardi, Keese and Crane<br>Michael v. Girardi, Keese and Crane<br>Wilson v. Olsten & Girardi, Keese and Crane<br>Duralia v. Girardi, Keese and Crane<br>Tiedman v. Girardi, Keese and Crane<br>Life Center v. Girardi, Keese and Crane | Closed -- Investigation -- Insufficient Evidence |
| 89-O-15098 | 8/28/1989 | 8/18/1992 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Pre-filing -- Non-Public Resolution |
| 89-O-17526 | 12/21/1989 | 1/17/1991 | Failure to honor liens | Closed -- Investigation -- Insufficient Evidence |
| 90-00797 | 1/12/1990 | 1/23/1990 | Failure to turn over file/documents | Closed -- Intake -- Matter Resolved between CW and R |
| 90-O-12614 | 4/26/1990 | 9/18/1990 | Lack of/failure to communicate with client; retaliatory withdrawal from employment | Closed -- Investigation -- Insufficient Evidence |

**Ex. 3:4**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 90-14117 | 6/25/1990 | 7/12/1990 | Lack of/failure to communicate with client | Closed -- Intake -- Communication |
| 90-15343 | 7/11/1990 | 7/11/1990 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Intake -- Error |
| 90-27634 | 10/19/1990 | 12/5/1990 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client; withdrawal from employment | Closed -- Intake -- No Merit |
| 90-O-17655 | 12/5/1990 | 10/10/1991 | Original discipline; lack of/failure to communicate with client; failure to turn over file/documents; failure to account, deposit | Closed -- Investigation -- Insufficient Evidence |
| 91-O-03923 | 6/10/1991 | 4/23/1992 | Failure to account, deposit | Closed -- Pre-filing -- Insufficient Evidence |
| 91-O-04209 | 6/20/1991 | 8/30/1991 | Conversion or misappropriation; failure to account, deposit | Closed -- Investigation -- Error |
| 91-O-05449 | 6/25/1991 | 3/2/1992 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Investigation -- Insufficient Evidence |
| 91-O-07791 | 11/13/1991 | 8/18/1992 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Pre-filing -- Non-Public Resolution |
| 91-O-07877 | 11/18/1991 | 1/30/1992 | Original discipline | Closed -- Investigation -- Duplicate |
| 92-O-15406 | 7/2/1992 | 12/5/1994 | Failure to account, deposit; incompetence; lack of/failure to communicate with client; failure to turn over file/documents | Closed -- Investigation -- Non-Public Resolution |
| 93-O-11598 | 3/5/1993 | 4/21/1993 | Failure to account, deposit | Closed -- Investigation -- Matter Resolved Between CW and R |
| 93-O-12104 | 3/23/1993 | 6/29/1993 | Original discipline | Closed -- Investigation -- Insufficient Evidence |

**Ex. 3:5**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 93-18038 | 3/30/1993 | 6/7/1993 | Failure to account, deposit | Closed -- Intake -- Error (complaint is basis for 93-O-14209) |
| 93-O-14209 | 3/30/1993 | 11/28/1999 | Conversion or misappropriation; failure to account, deposit; failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Post-Filing -- Non-Public Resolution |
| 93-O-13654 | 5/6/1993 | 7/14/1993 | Division among attorneys | Closed -- Investigation -- Insufficient Evidence |
| 93-O-15913 | 7/8/1993 | 9/21/1993 | Failure to account, deposit | Closed -- Investigation -- Matter Resolved Between CW and R |
| 93-O-16928 | 8/23/1993 | 11/8/1994 | Failure to account, deposit | Closed -- Investigation -- Insufficient Evidence |
| 94-O-18874 | 12/5/1994 | 7/26/1995 | Exorbitant, unconscionable fee; failure to perform, delay, abandonment of client; lack of/failure to communicate with client; oath and duties | Closed -- Investigation -- Insufficient Evidence |
| 95-O-11864 (95-13589) | 2/1/1995 | 11/28/1999 | Incompetent representation (Reportable Action -- Court Information)<br><br>Bus. & Prof. Code, § 6068.1(c):<br>Keith v. Girardi, Keese & Krane, et al., BC038023 (L.A. Super. Ct.) | Closed -- Post-Filing -- Non-Public Resolution |
| 95-O-10852 | 2/7/1995 | 10/5/1999 | Representation of adverse interests | Closed -- Pre-filing -- Insufficient Evidence |
| 95-O-13372 | 5/18/1995 | 11/4/1995 | Solicitation; adverse business interest; schemes to defraud | Closed -- Investigation -- Insufficient Evidence |
| 95-23932 | 5/25/1995 | 7/25/1995 | Oath and duties | Closed -- Intake -- Lack of Jurisdiction (closure confirmed following internal review 4/16/1996) |

**Ex. 3:6**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 95-O-16942 | 10/11/1995 | 8/28/1996 | Conversion or misappropriation; failure to account, deposit | Closed -- Investigation -- Insufficient Evidence |
| 96-10040 | 1/25/1996 | 4/5/1996 | Conversion or misappropriation; failure to account, deposit; appearing/performing without authorization | Closed -- Intake -- Insufficient Evidence |
| 96-O-01060 | 2/21/1996 | 7/17/1996 | Failure to account, deposit; failure to honor liens; failure to honor agreement/stipulation | Closed -- Investigation -- Insufficient Evidence |
| 96-O-01837 | 3/20/1996 | 11/28/1999 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Post-Filing -- Non-Public Resolution |
| 96-O-06526 | 10/7/1996 | 3/31/1999 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Investigation -- Insufficient Evidence |
| 97-O-16122 | 9/9/1997 | 3/19/1999 | Failure to account, deposit; lack of/failure to communicate; appearing/performing without authorization | Closed -- Investigation -- Insufficient Evidence |
| 97-33282 | 9/18/1997 | 9/30/1997 | N/A | Closed -- Intake -- No Complaint Articulated |
| 97-O-16688 | 9/24/1997 | 3/19/1999 | Fee contracts; appearing/performing without authorization | Closed -- Investigation -- Insufficient Evidence |
| 97-O-16781 | 10/3/1997 | 3/31/1999 | Advertisements; advertising communication re mail; division with non-lawyer | Closed -- Investigation -- Insufficient Evidence |
| 97-O-18393 | 12/23/1997 | 3/19/1999 | Conversion or misappropriation; failure to account, deposit; failure to perform, delay, abandonment of client; lack of/failure to communicate with client; commission of crime/moral turpitude | Closed -- Investigation -- Insufficient Evidence (Closed as duplicative of 93-O-14209) |
| 98-O-02011 | 4/13/1998 | 5/4/1998 | Failure to account, deposit; failure to perform, delay, abandonment of client | Closed -- Investigation -- No Merit |

**Ex. 3:7**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 98-23887 | 9/3/1998 | 7/14/1999 | Conversion or misappropriation; failure to account, deposit | Closed -- Investigation -- Insufficient Evidence |
| 99-O-11880 | 8/20/1999 | 3/28/2000 | Commingling; failure to account, deposit; payment of client expenses | Closed -- Investigation -- Matter Resolved Between CW and R |
| 00-05826 | 4/11/2000 | 5/24/2000 | Failure to account, deposit; lack of/failure to communicate | Closed -- Intake -- Insufficient Evidence (following 5/25/2000 request for review, closure affirmed by intake 11/2/2000) |
| 00-O-13160 | 7/28/2000 | 6/26/2001 | Failure to perform, delay, abandonment of client; adverse business interest | Closed -- Intake -- Insufficient Evidence |
| 01-O-03204 | 8/6/2001 | 4/23/2002 | Failure to account, deposit; other; failure to perform, delay, abandonment of client | Closed -- Investigation -- Resource Letter |
| 02-O-10958 | 2/20/2002 | 3/27/2002 | Conversion or misappropriation; lack of/failure to communicate | Closed -- Investigation -- Insufficient Evidence |
| 02-09927 | 5/30/2002 | 6/25/2002 | Failure to turn over file/documents | Closed -- Intake -- Return of File Letter Sent |
| 02-11859 | 6/28/2002 | 9/9/2002 | Failure to perform, delay, abandonment of client; lack of/failure to communicate; communication-settlement offer | Closed -- Intake -- Insufficient Evidence |
| 02-14699 | 8/12/2002 | 10/18/2002 | Failure to perform, delay, abandonment of client; lack of/failure to communicate | Closed -- Intake -- Insufficient Evidence (following 11/15/2002 request for review, closure affirmed by intake 2/24/2003) |
| 03-06913 | 4/25/2003 | 5/23/2003 | Failure to perform, delay, abandonment of client | Closed -- Intake -- Insufficient Evidence |
| 03-07921 | 5/13/2003 | 7/10/2003 | Lack of/failure to communicate with client | Closed -- Intake -- Insufficient Evidence |

**Ex. 3:8**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 05-01525 | 1/28/2005 | 3/15/2005 | Failure to perform, delay, abandonment of client | Closed -- Intake -- Matter Resolved between CW and Respondent |
| 06-20052 | 6/23/2006 | 8/28/2006 | Threatening criminal, administrative charges | Closed -- Intake -- Insufficient Evidence (following 8/31/2006 request for review, closure affirmed by intake 1/8/2007) |
| 06-29601 | 12/6/2006 | 1/5/2007 | Report/NSF trust account transaction | Closed -- Intake -- Insufficient Evidence |
| 06-29602 | 12/6/2006 | 1/5/2007 | Report/NSF trust account transaction | Closed -- Intake -- Insufficient Evidence |
| 07-12185 | 2/5/2007 | 4/17/2007 | Failure to perform, delay, abandonment of client; failure to turn over file/documents | Closed -- Intake -- Insufficient Evidence |
| 07-21717 | 7/11/2007 | 4/28/2008 | Contact with/gifts to official; harassment, claim not warranted | Closed -- Intake -- Insufficient Evidence |
| 08-O-12613 | 6/25/2008 | 1/17/2011 | Misrepresentation to court; commission of crime/moral turpitude | Closed -- Investigation -- Prosecutorial Discretion |
| 10-09589 | 4/20/2010 | 7/27/2010 | Misrepresentation to court; commission of crime/moral turpitude | Closed -- Intake -- Duplicate |
| 10-J-06845 | 7/19/2010 | 1/27/2011 | Discipline in other jurisdiction<br><br>Bus. & Prof. Code, § 6068.1(c):<br>In re: Thomas V. Girardi, Walter J.. Lack, Paul A. Traina, et al.; Sonia Eduarda Franco, et al. v. Dow Chemical Company, et al. (Ninth Circuit Case Nos. 08-80090, 03-57038) | Closed -- Investigation -- Prosecutorial Discretion<br>(after reopened 6/30/2011, Closed -- Pre-Filing -- Prosecutorial Discretion, 4/26/2013) |

**Ex. 3:9**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 10-18253 | 7/30/2010 | 8/6/2010 | Report/attorney held in contempt<br><br>Bus. & Prof. Code, § 6068.1(c):<br>In re: Thomas V. Girardi, Walter J.. Lack, Paul A. Traina, et al.; Sonia Eduarda Franco, et al. v. Dow Chemical Company, et al. (Ninth Circuit Case Nos. 08-80090, 03-57038) | Closed -- Intake -- Duplicate |
| 10-J-08337 | 9/9/2010 | 11/4/2010 | Discipline in other jurisdiction<br><br>Bus. & Prof. Code, § 6068.1(c):<br>In re: Thomas V. Girardi, Walter J.. Lack, Paul A. Traina, et al.; Sonia Eduarda Franco, et al. v. Dow Chemical Company, et al. (Ninth Circuit Case Nos. 08-80090, 03-57038) | Closed -- Pre-Filing -- Insufficient Evidence |
| 10-26141 | 10/29/2010 | 11/19/2010 | Failure to perform, delay, abandonment of client | Closed -- Intake -- Insufficient Evidence |
| 10-27314 | 11/12/2010 | 12/16/2010 | Offensive language or actions; harassment, claim not warranted | Closed -- Intake -- Insufficient Evidence |
| 11-16918 | 4/7/2011 | 8/15/2011 | Representation of adverse interests; commission of crime/moral turpitude | Closed -- Intake -- Insufficient Evidence |
| 11-18676 | 5/2/2011 | 7/6/2011 | Exorbitant, unconscionable fee; conversion or misappropriation; commission of crime/moral turpitude | Closed -- Intake -- Insufficient Evidence |
| 12-O-12006 | 5/6/2011 | 3/26/2012 | Conversion or misappropriation; withdrawal of funds in dispute; failure to support constitution/laws | Closed -- Investigation -- Matter Resolved Between CW and R<br>(originally closed 8/11/2011; reopened 3/6/2012 in accordance with recommendation from semi-annual random audit of closed cases) |

**Ex. 3:10**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 11-26130 | 8/8/2011 | 10/26/2011 | Failure to perform, delay, abandonment of client; lack of/failure to communicate with client | Closed -- Intake -- Matter Resolved between CW and R |
| 11-26135 | 8/9/2011 | 8/15/2011 | N/A | Closed -- Intake -- No Complaint Articulated |
| 11-35398 | 11/29/2011 | 12/27/2011 | N/A | Closed -- Intake -- No Complaint Articulated |
| 12-03261 | 2/14/2012 | 3/2/2012 | Failure to turn over file/documents | Closed -- Intake -- Matter Resolved between CW and R |
| 12-08523 | 4/19/2012 | 5/2/2012 | Failure to account, deposit; failure to turn over file/documents | Closed -- Intake -- Insufficient Evidence |
| 12-08796 | 4/23/2012 | 6/21/2012 | Misrepresentation to court; pursuit of unjust cause | Closed -- Intake -- Insufficient Evidence (after CW provides additional information, determination to leave closed 12/7/2015) |
| 12-O-911225 | 5/25/2012 | 6/29/2012 | Failure to perform, delay, abandonment of client | Closed -- Intake -- Rule of Limitation (after CW provides additional information, determination to leave closed 1/2/2013) |
| 12-14555 | 7/13/2012 | 8/24/2012 | Failure to return part; failure to perform, delay, abandonment of client | Closed -- Intake -- Insufficient Evidence (after CW provides additional information, determination to leave closed 1/14/2013) |
| 12-O-15515 | 7/26/2012 | 11/2/2012 | Failure to perform, delay, abandonment of client; lack of/failure to communicate; withdrawal from employment | Closed -- Investigation -- Insufficient Evidence (after CW requests review, determination to leave closed 8/8/2013) |
| 12-O-16066 | 8/23/2012 | 11/26/2012 | Failure to account, deposit; failure to honor liens; misappropriation of $25,000 or greater; misrepresentation to court; commission of crime/moral turpitude | Closed -- Investigation -- Insufficient Evidence |

**Ex. 3:11**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 12-22361 | 11/5/2012 | 11/28/2012 | Commission of crime/moral turpitude | Closed -- Intake -- Insufficient Evidence |
| 12-24077 | 12/3/2012 | 1/9/2013 | Failure to return part; failure to perform, delay, abandonment of client | Closed -- Intake -- Matter Resolved between CW and R |
| 13-26286 | 9/4/2013 | 10/22/2013 | Failure to perform, delay, abandonment of client | Closed -- Intake -- Insufficient Evidence |
| 13-33967 | 12/19/2013 | 1/3/2014 | N/A | Closed -- Intake -- Rule of Limitation (after CW provides additional information, determination to leave closed 9/22/2014) |
| 14-16046 | 4/1/2014 | 4/24/2014 | Failure to turn over file/documents | Closed -- Intake -- Return of File Letter Sent |
| 14-28979 | 10/28/2014 | 6/9/2015 | Threatening criminal, administrative charges; misrepresentation to court | Closed -- Intake -- Withdrawal |
| 14-30049 | 11/19/2014 | 10/19/2016 | Failure to account, deposit | Closed -- Intake -- Insufficient Evidence |
| 14-30061 | 11/19/2014 | 10/19/2016 | Failure to account, deposit | Closed -- Intake -- Insufficient Evidence |
| 14-30269 | 11/19/2014 | 10/19/2016 | Exorbitant, unconscionable fee; conversion or misappropriation; failure to account, deposit; lack of/failure to communicate | Closed -- Intake -- Insufficient Evidence |
| 15-12318 | 2/13/2015 | 10/19/2016 | Failure to account, deposit; failure to perform, delay, abandonment | Closed -- Intake -- Insufficient Evidence |
| 16-O-17380 (15-14329) | 3/17/2015 | 2/21/2018 | Failure to account, deposit; lack of/failure to communicate with client | Closed -- Investigation -- Insufficient Evidence |
| 16-O-17383 (15-30007) | 11/30/2015 | 2/21/2018 | Failure to account, deposit; lack of/failure to communicate with client | Closed -- Investigation -- Insufficient Evidence |

Ex. 3:12

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 16-O-15214 (15-30257) | 12/4/2015 | 7/8/2020 | Misrepresentation to court; pursuit of unjust cause; commission of crime/moral turpitude; conversion or misappropriation | Closed -- Investigation -- Insufficient Evidence |
| 16-O-17384 (15-31489) | 12/29/2015 | 2/21/2018 | Failure to account, deposit | Closed -- Investigation -- Insufficient Evidence |
| 16-O-15215 | 4/4/2016 | 4/30/2020 | Commission of crime/moral turpitude; conversion or misappropriation | Closed -- Investigation -- Rule of Limitation |
| 16-O-17385 | 6/20/2016 | 6/14/2017 | Withdrawal from employment | Closed -- Pre-Filing -- Insufficient Evidence |
| 17-02400 | 2/10/2017 | 2/25/2017 | Conversion or misappropriation | Closed -- Intake -- Insufficient Evidence |
| 17-O-02388 | 4/3/2017 | 11/15/2017 | Advertisements; legal advertising/false, misleading; advertising communication re testimonial | Closed -- Investigation -- Non-Public Resolution |
| 17-08854 | 5/30/2017 | 7/9/2017 | Commingling; conversion or misappropriation; failure to account, deposit; schemes to defraud | Closed -- Intake -- Insufficient Evidence |
| 19-O-10279 (18-29529) | 10/24/2018 | 3/9/2019 | Failure to account, deposit | Closed -- Investigation -- CW Failure to Cooperate |
| 19-O-10151 | 11/20/2018 | 4/17/2019 | Failure to account, deposit | Closed -- Investigation -- Matter Resolved Between CW and R |
| 19-O-10247 | 12/12/2018 | 4/17/2019 | Conversion or misappropriation; failure to account, deposit; failure to communicate with client | Closed -- Investigation -- Insufficient Evidence |
| 19-O-10248 | 12/14/2018 | 3/12/2019 | Failure to honor liens | Closed -- Investigation -- Matter Resolved Between CW and R |

**Ex. 3:13**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 19-O-10694 | 1/7/2019 | 7/28/2022 | Incompetence; failure to perform, delay, abandonment of client; failure to communicate with client; withdrawal from employment; communication -- settlement offer | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 19-O-910584 | 1/8/2019 | 2/25/2019 | Solicitation | Closed -- Intake -- Insufficient Evidence |
| 19-O-10695 | 1/22/2019 | 3/7/2019 | Limiting liability to client | Closed -- Investigation -- Non-Public Resolution |
| 19-O-16483 | 5/24/2019 | 7/15/2019 | 1.15(d)(7) -- Failing to promptly distribute undisputed funds/property as requested by client/other | Closed -- Intake -- Withdrawal |
| 19-O-25820 | 10/23/2019 | 2/24/2020 | 6106 -- moral turpitude/dishonesty/corruption: misrepresentation; 3-110(A) -- Intentional/reckless/repeated failure to perform competently: incompetence | Closed -- Intake -- CW Failure to Cooperate |
| 19-O-29284 | 12/26/2019 | 6/4/2020 | 6068(a) -- failing to support constitution/laws: breach of fiduciary duties | Closed -- Intake -- Rule of Limitation (originally closed 3/16/2020: Closed -- Intake -- CW's Failure to Cooperate; reopened 6/3/2020 after CW provided additional information) |
| 20-O-00434 | 1/8/2020 | 5/19/2020 | 4.2(a) -- communicating with represented party re subject of representation | Closed -- Investigation -- Non-Public Resolution |
| 20-O-04157 | 3/11/2020 | 4/20/2020 | 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 1.3 -- intentional/ repeated/reckless/grossly negligent failure to act with reasonable diligence | Closed -- Investigation -- Insufficient Evidence |

**Ex. 3:14**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 20-O-04436 | 3/19/2020 | 7/28/2022 | 3-110(A)-intentional/reckless/repeated failure to perform competently: abandonment/failure to perform; 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 1.4(a)(3)-failing to keep client reasonably informed re significant developments; 1.4(a)(3)-- failing to promptly comply with reasonable requests for information/documents; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 1.16(e)(1)-failing to promptly release materials/property to client upon termination; 1.16(b)-withdrawing from representation despite absence of reasons for permissive withdrawal | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 20-O-15684 | 11/9/2020 | 7/1/2022 | 6106-committing act involving moral turpitude/dishonesty/corruption; 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 6106--moral turpitude/ dishonesty/corruption: misappropriation of $25,000 or more; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 6068(i)-failing to cooperate/participate in disciplinary/ regulatory investigation or proceeding; 1.4(a)(3)-failing to keep client reasonably informed re significant developments; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 1.4(a)(3)-failing to comply with reasonable requests for information/documents; 1.15(d)(4)-failing to promptly account in writing to client/ other re funds/property | Closed -- Post-Filing -- Discipline -- Disbarment (3/30/2021 Notice of Disciplinary Charges Filed SBC 21-O-30192) |

**Ex. 3:15**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 20-O-16589 | 12/3/2020 | 4/23/2021 | 1.15(a)-failing to maintain in client trust account funds received/held for client/other person;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or more;<br>6068(a)-failing to support constitution/laws;<br>8.4(a) violating rules of professional conduct or State Bar act;<br>8.4(b)-committing criminal act reflecting adversely on attorney's honesty/trustworthiness/fitness;<br>8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations | Closed -- Investigation -- Duplicate (duplicate to 20-O-17192) |
| 20-O-16767 | 12/7/2020 | 7/29/2022 | 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion;<br>8.4(a) violating rules of professional conduct or State Bar act;<br>8.4(b)-committing criminal act reflecting adversely on attorney's honesty/ trustworthiness/fitness;<br>8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations;<br>1.15(a)-failing to maintain in client trust account funds received/held for client/other person;<br>6068(a)-failing to support constitution/laws | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:16**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 20-O-17192 | 12/17/2020 | 7/1/2022 | 6103-failing to comply with court order; 1.15(a)-failing to maintain in client trust account funds received/held for client/ other person; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or more; 6106--moral turpitude/dishonesty/corruption: misrepresentation; 6068(i)-failing to cooperate/participate in disciplinary/ regulatory investigation or proceeding; 6068(a)-failing to support constitution/ laws: breach of fiduciary duties; 6106--moral turpitude/dishonesty/corruption: scheme to defraud | Closed -- Post-Filing -- Discipline -- Disbarment (3/30/2021 Notice of Disciplinary Charges Filed SBC 21-O-30192) |
| 20-O-17505 | 12/18/2020 | 7/1/2022 | 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or more; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 6106--moral turpitude/dishonesty/corruption: misrepresentation; 1.4(a)(3)-failing to keep client reasonably informed re significant developments; 1.4.1(a)(2)-failing to promptly communicate to client terms of written settlement offer; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments | Closed -- Post-Filing -- Discipline -- Disbarment (3/30/2021 Notice of Disciplinary Charges Filed SBC 21-O-30192) |

**Ex. 3:17**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 20-O-17427 | 12/22/2020 | 7/29/2022 | 1.15(d)(1)-failing to promptly notify client/other re receipt of funds/property;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>6068(m)-failing to respond to client inquiries/keep client informed re significant developments | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-00974 | 1/15/2021 | 7/28/2022 | 1.15(a)-failing to maintain in client trust account funds received/held for client/other person;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater;<br>6068(a)-failing to support constitution/laws: breach of fiduciary duties;<br>1.15(c) -- commingling | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-00654 | 1/19/2021 | 2/3/2021 | 1.4(a)(3) -- Failing to promptly comply with reasonable requests for information/ documents | Closed -- Intake -- Communication |
| 21-O-00698 | 1/20/2021 | 2/10/2021 | 6068(m) -- Failing to respond to client inquiries/keep client informed re significant developments | Closed -- Intake -- Communication |
| 21-O-00763 | 1/20/2021 | 7/29/2022 | 1.4(a)(3) -- failing to promptly comply with reasonable requests for information/documents;<br>6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently;<br>1.3 -- intentional/ repeated/reckless/grossly negligent failure to act with reasonable diligence;<br>6106 -- moral turpitude/dishonesty/corruption: misappropriation or conversion | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:18**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 21-O-00800 | 1/21/2021 | 7/29/2022 | 6106 -- moral turpitude/dishonesty/ corruption: misappropriation or conversion; 1.4(a)(3) -- Failing to promptly comply with reasonable requests for information/ documents; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 1.3 -- intentional/ repeated/reckless/grossly negligent failure to act with reasonable diligence; 1.4(a)(3)--failing to keep client reasonably informed re significant developments | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-01129 | 1/21/2021 | 7/29/2022 | 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 1.4(a)(2) -- failing to reasonably consult with client re means to accomplish objectives; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 1.15(d)(4)-failing to promptly account in writing to client/other re funds/ property; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-01178 | 1/25/2021 | 7/29/2022 | 6106--moral turpitude/dishonesty/ corruption: scheme to defraud; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:19**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-01045 | 1/26/2021 | 7/29/2022 | 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently;<br>1.3 -- intentional/repeated/ reckless/grossly negligent failure to act with reasonable diligence;<br>1.4(a)(3) -- Failing to promptly comply with reasonable requests for information/ documents;<br>6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>1.15(a)-failing to maintain in client trust account funds received/held for client/other person;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-01068 | 1/27/2021 | 7/28/2022 | 6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-01071 | 1/27/2021 | 7/29/2022 | 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently;<br>1.4(a)(3) -- failing to promptly comply with reasonable requests for information/ documents;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>6106-moral turpitude/ dishonesty/corruption: misappropriation or conversion | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:20**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-01074 | 1/27/2021 | 3/8/2021 | 6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other | Closed -- Intake -- CW Failure to Cooperate |
| 21-O-01204 | 2/1/2021 | 7/29/2022 | 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently;<br>1.4(a)(3) -- Failing to promptly comply with reasonable requests for information/ documents;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>6106-moral turpitude/dishonesty/corruption: misappropriation or conversion | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-01594 | 2/4/2021 | 7/28/2022 | 6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:21**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-01628 | 2/10/2021 | 7/28/2022 | 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 6106 -- moral turpitude/dishonesty/corruption: misappropriation or conversion; 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 1.3 -- intentional/ repeated/reckless/grossly negligent failure to act with reasonable diligence; 1.4(a)(3)--failing to keep client reasonably informed re significant developments; 1.4(a)(3) -- Failing to promptly comply with reasonable requests for information/ documents; 1.15(d)(1)-failing to promptly notify client/other re receipt of funds/property | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-01673 | 2/11/2021 | 7/29/2022 | 6106-moral turpitude/dishonesty/ corruption: misappropriation of $25,000 or greater; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 6106--moral turpitude/ dishonesty/ corruption: scheme to defraud | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-02131 | 2/22/2021 | 7/28/2022 | 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 6106 -- moral turpitude/dishonesty/corruption: misappropriation or conversion; 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 1.3 -- intentional/ repeated/reckless/grossly negligent failure to act with reasonable diligence; 1.16(d) -- terminating representation without taking reasonable steps to avoid prejudice to client | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:22**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-02333 | 2/25/2021 | 7/29/2022 | 6106-moral turpitude/dishonesty/ corruption: issuance of NSF checks/transactions;<br>6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>1.4(a)(3) -- failing to promptly comply with reasonable requests for information/ documents | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-04024 | 3/29/2021 | 7/29/2022 | 6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>6106 -- moral turpitude/dishonesty/corruption: misappropriation or conversion;<br>1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently;<br>1.3 -- intentional/ repeated/reckless/grossly negligent failure to act with reasonable diligence;<br>1.16(d) -- terminating representation without taking reasonable steps to avoid prejudice to client | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:23**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 21-O-04531 | 4/8/2021 | 7/29/2022 | 6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>6068(a)--failing to support constitution/laws: breach of fiduciary duties;<br>6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater;<br>1.4(a)(3)--failing to keep client reasonably informed re significant developments;<br>1.4.1(a)(2)--failing to promptly communicate to client terms of written settlement offer;<br>8.4(a) violating rules of professional conduct or State Bar act;<br>8.4(b)-committing criminal act reflecting adversely on attorney's honesty/trustworthiness/fitness;<br>8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations;<br>1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>6148--entering into fee agreement in excess of $1,000 without written fee contract;<br>6148(a)--failing to provide copy of signed/written fee contract to client | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:24**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-05409 | 4/27/2021 | 7/29/2022 | 3-110(A)--Intentional/reckless/repeated failure to perform competently: delay/lack of diligence; 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 1.15(a)-failing to maintain in client trust account funds received/held for client/ other person; 1.15(d)(4)-failing to promptly account in writing to client/other re funds/property; 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-05726 | 5/5/2021 | 7/28/2022 | 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 1.3 -- intentional/repeated/ reckless/grossly negligent failure to act with reasonable diligence; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 6068(a)--failing to support constitution/ laws: violating oath and duties | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-05791 | 5/6/2021 | 7/29/2022 | 3-110(A)--Intentional/reckless/repeated failure to perform competently: delay/lack of diligence; 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; 3-500--failing to keep client informed re significant developments/comply with requests for information/ documents; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:25**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-05825 | 5/6/2021 | 7/28/2022 | 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 1.4(a)(3)--failing to keep client reasonably informed re significant developments; 1.4(a)(3) -- failing to promptly comply with reasonable requests for information/ documents | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-06211 | 5/10/2021 | 7/29/2022 | 3-110(A)--Intentional/reckless/repeated failure to perform competently: abandonment/failure to perform; 1.1-Intentional/Reckless/ Grossly Negligent/Repeated failure to perform legal services competently; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; 3-500--failing to keep client informed re significant developments/comply with requests for information/documents; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-06091 | 5/11/2021 | 7/29/2022 | 1.5(a)--Making agreement for/charging/ collecting an unconscionable fee; 6068(m)--failing to respond to client inquiries/keep client informed re significant developments; 1.15(d)(7)--failing to promptly distribute undisputed funds/property as requested by client/other; 1.16(d)--terminating representation without taking reasonable steps to avoid prejudice to client; 1.16(e)(1)--failing to promptly release materials/property to client upon termination; 1.16(e)(2)--failing to promptly refund unearned fees/unused costs upon termination; 1.15(d)(4)-failing to promptly account in writing to client/other re funds/property | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:26**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-06248 | 5/11/2021 | 7/8/2021 | 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 1.4(a)(3)--failing to keep client reasonably informed re significant developments; 1.5(a)--Making agreement for/charging/collecting an unconscionable fee; 1.8.5(a)--paying/agreeing to pay/guaranteeing client's personal or business expenses; 1.15(d)(4)-failing to promptly account in writing to client/other re funds/property; 1.4(a)(3) -- failing to promptly comply with reasonable requests for information/ documents | Closed -- Intake -- CW Failure to Cooperate |
| 21-O-06346 | 5/17/2021 | 7/28/2022 | 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 6106-moral turpitude/ dishonesty/corruption: misappropriation or conversion; 3-500--failing to keep client informed re significant developments/comply with requests for information/documents; 4-100(A)--failing to maintain in client trust account funds received/held for client; 4-100(B)(4)--failing to promptly pay/deliver client funds/property as requested by client; 1.4(a)(3)--failing to keep client reasonably informed re significant developments; 1.4(a)(3) -- Failing to promptly comply with reasonable requests for information/ documents; 1.15(a)-failing to maintain in client trust account funds received/held for client/ other person; 1.15(d)(7)--failing to promptly distribute undisputed funds/property as requested by client/ other | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:27**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-06412 | 5/17/2021 | 7/29/2022 | 6106-moral turpitude/dishonesty/ corruption: misappropriation or conversion;<br>4-100(A)--failing to maintain in client trust account funds received/held for client;<br>4-100(B)(4)--failing to promptly pay/deliver client funds/property as requested by client;<br>1.15(a)-failing to maintain in client trust account funds received/held for client/other person;<br>1.15(d)(7)--failing to promptly distribute undisputed funds/property as requested by client/ other | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-06413 | 5/17/2021 | 7/29/2022 | 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:28**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-06465 | 5/17/2021 | 7/29/2022 | 6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>6106-moral turpitude/dishonesty/corruption: misappropriation or conversion;<br>3-500--failing to keep client informed re significant developments/comply with requests for information/ documents;<br>4-100(A)--failing to maintain in client trust account funds received/held for client;<br>4-100(B)(4)--failing to promptly pay/deliver client funds/property as requested by client;<br>1.4(a)(3)--failing to keep client reasonably informed re significant developments;<br>1.4(a)(3) -- Failing to promptly comply with reasonable requests for information/ documents;<br>1.15(a)-failing to maintain in client trust account funds received/held for client/ other person;<br>1.15(d)(7)--failing to promptly distribute undisputed funds/property as requested by client/ other | Closed -- Investigation -- Disbarment in Other Matter<br>(5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:29**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-06536 | 5/18/2021 | 7/15/2021 | 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 3-110(A)--intentional/reckless/repeated failure to perform competently: delay/lack of diligence; 3-500--failing to keep client informed re significant developments/comply with requests for information/ documents; 1.4(a)(3)--failing to keep client reasonably informed re significant developments; 1.4(a)(3) -- Failing to promptly comply with reasonable requests for information/ documents; 1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property; 1.15(d)(4)-failing to promptly account in writing to client/other re funds/property; 1.15(d)(7)--failing to promptly distribute undisputed funds/property as requested by client/ other; 1.16(d)--terminating representation without taking reasonable steps to avoid prejudice to client; 4-100(B)(1)--failing to promptly notify client re receipt of client funds/property; 4-100(B)(3)--failing to render appropriate accounts to client of client funds/property; 4-100(B)(4)--failing to promptly pay/deliver client funds/property as requested by client; 4-210(A)--paying/agreeing to pay/guaranteeing client's personal or business expenses | Closed -- Intake -- CW Failure to Cooperate |

**Ex. 3:30**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-06493 | 5/19/2021 | 7/29/2022 | 6068(a)--failing to support constitution /laws: breach of fiduciary duties; <br> 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; <br> 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; <br> 1.1-Intentional/Reckless/Grossly Negligent/Repeated failure to perform legal services competently; <br> 1.4(a)(3)--failing to keep client reasonably informed re significant developments; <br> 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; <br> 1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property; <br> 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; <br> 8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations | Closed -- Investigation -- Disbarment in Other Matter <br> (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-06569 | 5/20/2021 | 7/28/2022 | 6068(a)--failing to support constitution /laws; <br> 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; <br> 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; <br> 1.4(a)(3)--failing to keep client reasonably informed re significant developments; <br> 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; <br> 1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property; <br> 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; <br> 8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations | Closed -- Investigation -- Disbarment in Other Matter <br> (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

31

**Ex. 3:31**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-06766 | 5/24/2021 | 7/29/2022 | 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 1.3 -- intentional/repeated/reckless/grossly negligent failure to act with reasonable diligence; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 1.4(a)(3)--failing to promptly comply with reasonable requests for information/ documents; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 1.16(e)(1)--failing to promptly release materials/property to client upon termination; 1.16(d)--terminating representation without taking reasonable steps to avoid prejudice to client | Closed -- Investigation -- Disbarment in Other Matter (5/27/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-07636 | 6/14/2021 | 7/29/2022 | 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other | Closed -- Investigation -- Disbarment in Other Matter (11/24/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-07731 | 6/17/2021 | 7/29/2022 | 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 6106-committing act involving moral turpitude/ dishonesty/corruption | Closed -- Investigation -- Disbarment in Other Matter (11/24/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:32**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-07854 | 6/21/2021 | 7/29/2022 | 6106-moral turpitude/ dishonesty/corruption: misappropriation or conversion; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 8.4(b)-committing criminal act reflecting adversely on attorney's honesty/ trustworthiness/fitness; 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 1.15(d)(4)-failing to promptly account in writing to client/other re funds/ property; 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently | Closed -- Investigation -- Disbarment in Other Matter (11/24/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-08205 | 6/28/2021 | 7/29/2022 | 6106-moral turpitude/ dishonesty/corruption: misappropriation or conversion; 1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property; 1.15(d)(7)--failing to promptly distribute undisputed funds/property as requested by client/ other; 4-100(B)(1)--failing to promptly notify client re receipt of client funds/property; 4-100(B)(4)--failing to promptly pay/deliver client funds/property as requested by client | Closed -- Investigation -- Disbarment in Other Matter (10/5/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-08411 | 6/30/2021 | 7/29/2022 | 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion; 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other | Closed -- Investigation -- Disbarment in Other Matter (12/9/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:33**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-08777 | 7/12/2021 | 7/29/2022 | 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion;<br>1.15(a)-failing to maintain in client trust account funds received/held for client/other person;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other | Closed -- Investigation -- Disbarment in Other Matter<br>(1/19/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-08785 | 7/12/2021 | 7/29/2022 | 6068(a)--failing to support constitution/laws: breach of fiduciary duties;<br>6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater;<br>1.4(a)(3)--failing to keep client reasonably informed re significant developments;<br>1.15(a)-failing to maintain in client trust account funds received/held for client/other person;<br>1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations | Closed -- Investigation -- Disbarment in Other Matter<br>(11/23/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:34**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-08791 | 7/12/2021 | 7/29/2022 | 6068(a)--failing to support constitution/laws: breach of fiduciary duties;<br>6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater;<br>1.4(a)(3)--failing to keep client reasonably informed re significant developments;<br>1.15(a)-failing to maintain in client trust account funds received/held for client/other person;<br>1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations | Closed -- Investigation -- Disbarment in Other Matter<br>(11/24/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-08796 | 7/12/2021 | 7/28/2022 | 6068(a)--failing to support constitution/laws: breach of fiduciary duties;<br>6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater;<br>1.4(a)(3)--failing to keep client reasonably informed re significant developments;<br>1.15(a)-failing to maintain in client trust account funds received/held for client/other person;<br>1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations | Closed -- Investigation -- Disbarment in Other Matter<br>(11/23/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:35**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 21-O-08935 | 7/14/2021 | 7/29/2022 | 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property; 1.15(d)(3)--failing to maintain complete records of funds/property of client/other 1.15(d)(4)-failing to promptly account in writing to client/other re funds/ property; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater | Closed -- Investigation -- Disbarment in Other Matter (11/24/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-09514 | 7/26/2021 | 7/29/2022 | 6068(a)--failing to support constitution/laws: breach of fiduciary duties; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; 1.4(a)(3)--failing to keep client reasonably informed re significant developments; 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 8.4(c)-engaging in conduct involving dishonesty/fraud/ deceit/reckless or intentional misrepresentations | Closed -- Investigation -- Disbarment in Other Matter (11/23/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:36**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 21-O-09707 | 8/3/2021 | 7/28/2022 | 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion; 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other | Closed -- Investigation -- Disbarment in Other Matter (12/9/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-10456 | 8/18/2021 | 7/29/2022 | 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion | Closed -- Investigation -- Disbarment in Other Matter (11/24/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-10784 | 8/30/2021 | 7/29/2022 | 6068(a)--failing to support constitution/laws: violating civil code section 2944.7(a)(1); 6068(m)-failing to respond to client inquiries/keep client informed re significant developments; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; 1.4(a)(3)--failing to keep client reasonably informed re significant developments; 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations | Closed -- Investigation -- Disbarment in Other Matter (12/16/2021 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:37**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-10982 | 8/31/2021 | 7/29/2022 | 3-110(A)--Intentional/reckless/repeated failure to perform competently: abandonment/failure to perform; 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 1.3 -- intentional/repeated/reckless/grossly negligent failure to act with reasonable diligence; 6068(m)-failing to respond to client inquiries/keep client informed re significant developments | Closed -- Investigation -- Disbarment in Other Matter (3/3/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-11591 | 9/16/2021 | 7/28/2022 | 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 6068(a)--failing to support constitution/laws; 6106--committing act involving moral turpitude/ dishonesty/corruption; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 8.4(c)-engaging in conduct involving dishonesty/fraud/ deceit/reckless or intentional misrepresentations; 1.15(a)-failing to maintain in client trust account funds received/held for client/other person | Closed -- Investigation -- Disbarment in Other Matter (3/9/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:38**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 21-O-12605 | 10/12/2021 | 7/29/2022 | 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion;<br>1.15(a)-failing to maintain in client trust account funds received/held for client/other person;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>1.16(e)(1)-failing to promptly release materials/property to client upon termination;<br>3-700(D)(1)--failing to promptly release papers/property to client upon termination<br>4-100(A)--failing to maintain in client trust account funds received/held for client;<br>4-100(B)(4)--failing to promptly pay/deliver client funds/property as requested by client | Closed -- Investigation -- Disbarment in Other Matter<br>(3/3/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-13251 | 10/25/2021 | 7/29/2022 | 1.15(a)-failing to maintain in client trust account funds received/held for client/other person;<br>1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other;<br>6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater;<br>1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property;<br>6068(a)--failing to support constitution/laws: breach of fiduciary duties;<br>1.4(a)(3)--failing to keep client reasonably informed re significant developments;<br>6068(m)-failing to respond to client inquiries/keep client informed re significant developments;<br>8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations | Closed -- Investigation -- Disbarment in Other Matter<br>(1/19/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

**Ex. 3:39**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)* | Disposition+ |
|---|---|---|---|---|
| 21-O-13363 | 10/27/2021 | 7/28/2022 | 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion; 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other | Closed -- Investigation -- Disbarment in Other Matter (5/3/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 21-O-15248 | 12/15/2021 | 7/28/2022 | 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion | Closed -- Investigation -- Disbarment in Other Matter (3/4/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 22-O-00875 | 1/8/2022 | 7/29/2022 | 1.15(d)(1)--failing to promptly notify client/other re receipt of funds/property; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 6106-committing act involving moral turpitude/dishonesty/corruption | Closed -- Investigation -- Disbarment in Other Matter (5/11/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 22-O-01603 | 1/28/2022 | 3/8/2022 | 6068(a)--failing to support constitution/laws | Closed -- Intake -- Insufficient Facts |
| 22-O-02959 | 3/7/2022 | 7/28/2022 | 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; 6103-failing to comply with court order | Closed -- Investigation -- Disbarment in Other Matter (4/22/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 22-O-02961 | 3/7/2022 | 7/28/2022 | 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; 6103-failing to comply with court order | Closed -- Investigation -- Disbarment in Other Matter (4/22/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |

40

**Ex. 3:40**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 22-O-02962 | 3/7/2022 | 7/28/2022 | 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other; 1.1-intentional/reckless/grossly negligent/repeated failure to perform legal services competently; 6068(a)--failing to support constitution/laws; 8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations | Closed -- Investigation -- Disbarment in Other Matter (4/22/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 22-O-02972 | 3/7/2022 | 7/28/2022 | 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; 6103-failing to comply with court order | Closed -- Investigation -- Disbarment in Other Matter (4/22/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 22-O-02976 | 3/7/2022 | 7/28/2022 | 1.15(a)-failing to maintain in client trust account funds received/held for client/other person; 6106-moral turpitude/dishonesty/corruption: misappropriation of $25,000 or greater; 6103-failing to comply with court order | Closed -- Investigation -- Disbarment in Other Matter (4/22/2022 abated pending NDC and subsequent proceedings arising from OCTC cases 20-O-15684, 17192, 17505) |
| 22-O-04807 | 4/13/2022 | 5/10/2022 | 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion; 1.15(a)-failing to maintain in client trust account funds received/held for client/other person | Closed -- Intake -- Insufficient Facts |
| 22-O-05971 | 5/9/2022 | 7/6/2022 | 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other | Closed -- Intake -- Disbarment in Other Matter |

**Ex. 3:41**

| Case Number | Date Opened | Date Closed | Alleged Violation(s)[*] | Disposition[+] |
|---|---|---|---|---|
| 22-O-07262 | 6/1/2022 | 6/13/2022 | 6104-appearing as attorney for party without authority; 6106--committing act involving moral turpitude/dishonesty/corruption | Closed -- Intake -- Disbarment in Other Matter |
| 22-O-08126 | 6/21/2022 | 7/12/2022 | 6106-moral turpitude/dishonesty/corruption: misappropriation or conversion | Closed -- Intake -- Disbarment in Other Matter |
| 22-O-10802 | 8/18/2022 | 8/29/2022 | 1.5(a)-making agreement for/charging/collecting an illegal fee; 1.15(d)(4)-failing to promptly account in writing to client/other re funds/ property; 1.15(d)(7)-failing to promptly distribute undisputed funds/property as requested by client/other | Closed -- Intake -- Disbarment in Other Matter |
| 22-O-12756 | 9/28/2022 | 10/20/2022 | 6106-moral turpitude/dishonesty/corruption: misrepresentation; 8.4(c)-engaging in conduct involving dishonesty/fraud/deceit/reckless or intentional misrepresentations | Closed -- Intake -- Disbarment in Other Matter |

[*] The alleged violation(s) column reflects potential violations of the State Bar Act or Rules of Professional Conduct identified by the State Bar based on information received in the disciplinary proceeding. An attorney who is the subject of a disciplinary proceeding has a right to a fair hearing and must be presumed innocent of any alleged misconduct until any charges that might be brought have been proven by clear and convincing evidence in a proceeding before the State Bar Court.  In addition, pursuant to Business & Professions Code section 6086.1(c), to the extent the disciplinary proceeding involves civil or criminal filings and dispositions otherwise a matter of public record made available to the State Bar pursuant to Business & Professions Code section 6068(o), 6086.7, or 6086.8, the alleged violation(s) column includes a reference to the case name and, if available, case number.

[+] The accompanying Chart 2 in Attachment A provides an explanation of the closing reasons identified in the disposition column.

**Ex. 3:42**

# EXHIBIT 4

# EXHIBIT 4

# CHAWLA, MANJARI – CASE TRACKER

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | Contested: 21/21: 100% ADP: 4/4: 100% | | | | | Gender Notes: 27 out of 34 female: 79% |
| | A* | | | | | |
| 1. | Amaya, Maria J. | 16O15037 | 2019-04-23 | | Chawla | 2019-04-23 - Amaya, Maria J. - Decision (16O15037) (MC) |
| 2. | Amezaga, Rafael | 18C12888 | 2019-02-14 | | Chawla | 2019-02-14 - Amezaga, Rafael - Decision (18C12888) (MC) |
| 3. | Atwater, Bruce | 15O15635 | 2019-04-23 | | Chawla | 2019-04-23 - Atwater, Bruce Hall III - Decision (15O15635) (MC) |
| | B* | | | | | |
| 4. | Bobus, Richard | 16O14185 | 2019-04-11 | | Chawla | 2019-04-11 - Bobus, Richard - Decision (16O14185) (MC) |
| 5. | Bulloch, Kent | SBC24N30926 | 2025-07-31 | | Chawla | 2025-07-31 - Bulloch, Kent - Decision (SBC24N30926) (Default) (MC) |
| | C* | | | | | |
| 6. | Carrillo, Rafael | SBC24O30171 | 2024-11-25 | | Chawla | 2024-11-25 - Carrillo, Rafael - Decision (Default) (MC) |
| 7. | Chan, Carolyn | SBC23O30324 | 2023-10-25 | | Chawla | 2023-10-25 - Chan, Carolyn - Decision (Default) (MC) |
| 8. | Collins, Sherry | SBC24O30204 | 2025-02-04 | | Chawla | 2025-02-04 - Collins, Sherry - Decision (Default) (MC) |
| 9. | Crowley, John | 16O13071 | 2019-05-06 | | Chawla | 2019-05-06 - Crowley, John - Decision (16O13071) (MC) |
| | D* | | | | | |
| 10. | Daughetee, Renee | SBC23O30661 | 2024-05-28 | | Chawla | 2024-05-28 - Daughetee, Renee - Decision (SBC23O30661) (MC) |
| | E* | | | | | |
| | | | | | | |
| | F* | | | | | |
| 11. | Fargey, Micah | SBC22O30347 | 2022-11-30 | | Chawla | 2022-11-30 - Fargey, Micah - Decision (Default) (MC) |
| 12. | Fox, Richard | SBC25O30550 | | | Chawla | 2025-12-02 - Fox, Richard - Decision (SBC25O30550) (MC) |

**Ex. 4:1**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 13. | Friedman, Stanley | SBC24O30743 | 2025-11-18 | | Chawla | 2025-11-18 - Friedman, Stanley - Decision (SBC24O30743) (MC) |
| | G* | | | | | |
| 14. | Greer, Phillip | SBC25O30222 | 2025-09-30 | | Chawla | 2025-09-30 - Greer, Phillip - Decision (SBC25O30222) (MC) |
| | H* | | | | | |
| 15. | Harris, Jeffrey | 16O10299 | 2019-07-08 | | Chawla | 2019-07-08 - Harris, Jeffrey - Decision (16O10299) (MC) |
| 16. | Hassan, Allen | SBC22O30969 | 2023-06-07 | | Chawla | 2023-06-07 - Hassan, Allen - Decision (SBC22O30969) (MC) |
| | I* | | | | | |
| | | | | | | |
| | J* | | | | | |
| | | | | | | |
| | K* | | | | | |
| 17. | Kagel, David | SBC22O30016 | 2022-12-02 | | Chawla | 2022-12-02 - Kagel, David - Decision (Default) (MC) |
| 18. | Katz, Charles | 18H15995 | 2019-07-11 | | Chawla | 2019-07-11 - Katz, Charles - Decision (18H15995) (MC) |
| 19. | Krause, Ernest | SBC23O30409 | 2024-06-11 | | Chawla | 2024-06-11 - Krause, Ernest - Decision (SBC23O30409) (MC) |
| | L* | | | | | |
| 20. | Leigh, Gilbert | SBC23O31030 | 2025-06-10 | | Chawla | 2025-06-10 - Leigh, Gilbert - Decision (SBC23O31030) (MC) |
| | M* | | | | | |
| 21. | McCann, Robert | SBC22O30110 | 2023-03-07 | | Chawla | 2023-03-07 - McCann, Robert - Decision (SBC22O30110) (MC) |
| 22. | Mitchell, Walter | 18O12028 | 2019-07-19 | | Chawla | 2019-07-09 - Mitchell, Walter - Decision (18O12028) (MC) |
| | N* | | | | | |
| 23. | Na, Sheen | SBC22O30036 | 2022-09-15 | | Chawla | 2022-09-15 - Na, Sheen Myong - Decision (Default) (MC) |
| | O* | | | | | |
| 24. | Obagi, Zein | SBC22O31072 | 2023-12-05 | | Chawla | 2023-12-05 - Obagi, Zein - Decision (SBC22O31072) (MC) |
| 25. | Odell, Donald | SBC25O30078 | 2025-09-10 | | Chawla | 2025-09-10 - Odell, Donald - Decision (SBC25O30078) (MC) |
| 26. | Oliveri, Matthew | SBC22O30792 | 2023-03-10 | | Chawla | 2023-03-10 - Oliveri, Matthew - Decision (SBC22O30792) (MC) |
| | P* | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Ex. 4:2**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  | R* |  |  |  |  |  |
| 27. | Roundy, Ronald | 16O17456 | 2021-01-15 |  | Chawla | 2021-01-15 - Roundy, Ronald R. - Decision (16O17456) (MC) |
|  | S* |  |  |  |  |  |
| 28. | Schwartz, Donald | 16O11694 | 2019-07-02 |  | Chawla | 2019-07-02 - Schwartz, Donald  (16O11694) (MC) |
| 29. | Stein, Charles | SBC24O30023 | 2024-12-19 |  | Chawla | 2024-12-19 - Stein, Charles - Decision (SBC24O30023) (MC) |
|  | T* |  |  |  |  |  |
| 30. | Toran, Zachary | 15N15198 | 2019-11-27 |  | Chawla | 2019-11-27 - Toran, Zachary Alexander - Decision (15N15198) (MC) |
|  | U* |  |  |  |  |  |
| 31. |  |  |  |  |  |  |
|  | V* |  |  |  |  |  |
| 32. | Valencia, Mario Gilberto | SBC23O30821 | 2025-10-01 |  | Chawla | 2025-10-01 - Valencia, Mario Gilberto - Decision (SBC23O30821) (MC) |
|  | W* |  |  |  |  |  |
| 33. | Wright, William | SBC23N30002 | 2023-08-17 |  | Chawla | 2023-08-17 - Wright, William - Decision (Default) (MC) |
|  | Y* |  |  |  |  |  |
| 34. | Yuan, Vivian | SBC22O30806 | 2023-03-06 |  | Chawla | 2023-03-06 - Yuan, Vivian - Decision (Default) (MC) |
| 35. | Young, Fanya | 18H12248 | 2019-05-03 |  | Chawla | 2019-05-03 - Young, Fanya - Decision (18H12248) (MC) |
|  | Z* |  |  |  |  |  |
| 36. | Zorr, Barbara | 17N06605 | 2018-11-21 |  | Chawla | 2018-11-21 - Zorr, Barbara - Decision (17N06605) (MC) |

**Ex. 4:3**

# EXHIBIT 5

# EXHIBIT 5

*ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL*
*ATTORNEY WORK PRODUCT*

# Independent Investigation for the State Bar of California:

## Report of Investigation

**February 4, 2023**



www.halpernmay.com

550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:1**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

# TABLE OF CONTENTS

EXECUTIVE SUMMARY ........................................................................ 3

INVESTIGATION SUMMARY ................................................................ 7

   Scope of Investigation ....................................................................... 8

   Documents Collected and Reviewed.................................................. 9

   Witness Interviews .......................................................................... 11

RELATED INVESTIGATIONS AND REPORTING ........................... 13

   The 2014 Munger, Tolles & Olson Report ...................................... 13

   The Lion Air Litigation and Criminal Indictments ......................... 13

   State Bar Case 21-O-30192 Against Girardi.................................... 14

   Press Reporting on Girardi Connections with the State Bar ........... 14

STATE BAR ORGANIZATION AND RELEVANT STATE BAR
POLICIES AND PRACTICES................................................................. 15

   Prosecutorial Ethics and Conflicts-of-Interest ............................... 15

   Employee Awareness of Policies ..................................................... 16

FACTUAL FINDINGS............................................................................ 18

   Thomas V. Girardi – Background .................................................... 18

   Allegations Against Thomas Girardi and Failure of the State Bar to
   Publicly Discipline Him .................................................................. 20

   Girardi's Connections with the State Bar and the Impact of Those
   Connections ..................................................................................... 21

   Connections at the Executive and Board Level ............................... 25

      Joseph Dunn.............................................................................. 26

      Howard Miller .......................................................................... 30

      Sonja Oehler ............................................................................. 32

      Luis Rodriguez......................................................................... 33

      Other Reported Board Connections........................................... 35

   Connections with OCTC and the State Bar Court ........................... 37

PRIVILEGED / WORK PRODUCT                                    **1** | P a g e

Ex. 5:2

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Murray Greenberg ................................................................................ 37

Thomas Layton .................................................................................... 44

Donald Miles ....................................................................................... 58

Mike Nisperos...................................................................................... 59

John Noonen ........................................................................................ 61

Dale Nowicki....................................................................................... 63

Richard Platel....................................................................................... 64

State Bar's Decision to Not Discipline Girardi After Ninth Circuit
Sanctions ............................................................................................. 68

Prior Representation of Girardi Keese...................................................... 70

Greenberg's Involvement and Closure ..................................................... 71

Efforts to Reopen the Case ..................................................................... 73

Acting Executive Director's Clandestine Involvement in Closing Rule
2201 Cases........................................................................................... 73

Office of General Counsel and Executive Director's Office Failure to
Investigate Reported Girardi Connections at State Bar .................................. 78

2011 Termination of OCTC Management ...................................................... 80

APPENDIX A - OVERVIEW OF THE STATE BAR AND ITS
ORGANIZATION ................................................................................. 83

APPENDIX B - RELEVANT STATE BAR POLICIES AND PRACTICES ...... 86

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

## EXECUTIVE SUMMARY

Halpern May Ybarra Gelberg LLP ("Halpern May") was retained by the Board of Trustees (the "Board") of the State Bar of California (the "State Bar" or the "Bar") to conduct an independent, attorney-client privileged and confidential investigation into whether the State Bar's handling of past discipline complaints against Thomas V. Girardi ("Girardi") was affected by Girardi's connections to or influence at the State Bar and identifying actions by anyone with ties to the State Bar that may constitute malfeasance in how discipline complaints against Girardi were handled.   Based upon our investigation, we find that the State Bar's handling of past discipline complaints against Girardi was more likely than not affected by Girardi's connections to and influence at the State Bar, and that there were multiple State Bar insiders who did not properly disclose their connections to Girardi, including employees who handled Girardi discipline cases.

As set forth in detail in the following report, we found that Girardi maintained an extensive network of connections at all levels of the State Bar.  As one witness told us, "[i]t's almost like Girardi became part of the fabric at the State Bar."  Our investigation determined that Girardi cultivated contacts on the Board, in the Executive Director's Office, and in the Office of Chief Trial Counsel ("OCTC"), both at the managerial and line prosecutor and investigator level.  Girardi's ties to the State Bar spanned decades and appear to have been intentional.  We found evidence indicating that Girardi was involved in the appointment of at least one State Bar Court judge and the attempted appointment of a Chief Trial Counsel ("CTC").  And we also found evidence that Girardi made offers of career assistance to people in State Bar leadership, apparently seeking to make additional connections when and where he could.   We have evidence—both documentary and testimonial—showing that at least nine former State Bar employees or Board members had connections to or accepted items of value, travel, or meals from Girardi while they were working at the State Bar or State Bar Court or were on the Board, although not all of these individuals were involved in the handling of cases against Girardi.  We did not find any connections between Girardi and any current State Bar employees, jurists, or Board members.

As detailed below, Girardi's relationship with former OCTC employee Thomas Layton was particularly remarkable.  Girardi is the godfather to Layton's daughter and the two were close friends and had what was described by one witness as a "father-son" type relationship.  According to records from Girardi's law firm, Girardi Keese, Layton, his wife, and a business entity they ran together received over $600,000 in payments from Girardi Keese while Layton was employed at the

PRIVILEGED / WORK PRODUCT                                    **3** | P a g e

**Ex. 5:4**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

State Bar. Girardi Keese also leased Layton multiple cars over the years and gave Layton a firm credit card, which he used to pay for routine expenses. Layton also received a large bank loan that Girardi guaranteed and for which Girardi Keese made repayments. Girardi Keese also employed two of Layton's children while Layton was employed at the State Bar. Multiple people we interviewed reported that Girardi and Layton appeared to be together often, during meetings at Girardi Keese or over lunch at Morton's and other restaurants. Layton also appears to have facilitated Girardi's relationships with others at the State Bar, ranging from line investigators to the CTC to Board members. Even though we did not find evidence that Layton was assigned to or made discretionary decisions in any Girardi case, there is evidence suggesting that he assisted Girardi in disciplinary matters in other ways.

As it relates to case handling, we find that two former OCTC employees— Murray Greenberg and John Noonen—had conflicts-of-interest at the time they worked on Girardi cases as a result of their connections to Girardi. The Girardi cases they worked on were closed without public discipline, some under questionable circumstances. We conclude that these employees' conflicts tainted the discretionary decisions they made on behalf of the State Bar and that the Girardi cases they worked on were improperly handled.

Unlike with Layton, OCTC attorney Greenberg's relationship with Girardi was not well known. Greenberg spent three decades at the State Bar and was personally involved in the State Bar's handling of multiple Girardi cases that were closed without any public discipline to Girardi, both directly and by providing training and supervision to other attorneys who worked on Girardi cases. In addition to his involvement with Girardi cases, Greenberg intervened in and closed a case against ███████████████████ and used his personal email account to have apparent backchannel communications with a ███████████ attorney in another pending case. Our investigation revealed that while he was in OCTC, Greenberg met with Girardi at Girardi Keese's offices and attended parties and other social events hosted by Girardi, and he appears to have received concert tickets from Girardi. There is no evidence that he disclosed these connections or benefits to the State Bar even as he was involved in the closure of cases against Girardi and ███████████████ ███████. In April 2019, just two months after Greenberg retired from the State Bar, he submitted a declaration on behalf of Girardi Keese related to the use of client funds, which included the statement, "[a]ll of their [Girardi Keese's] conduct were [sic] in accord with the Rules of Professional Conduct of the State Bar and was totally appropriate." When we deposed Greenberg, he invoked his Fifth

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Amendment right against self-incrimination and refused to answer any questions about his relationship with Girardi or work at the State Bar.

Similarly, OCTC investigator Noonen handled and made discretionary decisions in two Girardi cases that benefited Girardi, while Noonen had conflicts-of-interest. Among other things, Noonen's daughter had worked at Girardi Keese, and Girardi Keese had already handled a personal legal matter for him. Both of the Girardi cases Noonen investigated were closed for insufficient evidence. An auditor's review of those cases found that neither was properly investigated.

We found that over the years, many of Girardi's relationships with State Bar insiders (and the gifts and other things of value exchanged inside of these relationships) were not appropriately disclosed by the State Bar insiders, as part of their conflicts-of-interest disclosures or otherwise. Part of the reason for this failure is the State Bar's historical lack of robust conflicts-of-interest policies and related policies regulating, for example, the receiving of gifts from attorneys. Additionally, there appears to have been little to no formal training on conflicts issues for State Bar staff until recently, and many State Bar employees we interviewed expressed very little familiarity with conflicts-of-interest concepts.

In addition to finding that cases against Girardi were closed by conflicted individuals, we also found that both the Executive Director's Office and the Office of General Counsel received multiple reports of Girardi's inappropriate connections at the State Bar that were not investigated. We also found that former Executive Director, Joseph Dunn, terminated two senior attorneys in OCTC during the same time period when those attorneys were advocating for serious charges to be brought against Girardi in pending State Bar cases. This was an unprecedented move, as the Executive Director's Office is not supposed to interfere in the management or operations of OCTC.

While investigating the handling of Girardi cases, we also discovered a troubling practice by the State Bar's then leader, Deputy and Acting Executive Director Robert Hawley. Pursuant to State Bar Rule 2201, whenever OCTC had a conflict-of-interest it was supposed to refer out any discipline cases to an independent outside attorney to handle. We discovered that Hawley had been ghostwriting case analysis memorandums for conflict cases and passing them off as the work product of the independent conflict counsel, including on a Girardi case. Although we did not find any evidence that Hawley recommended closure of the Girardi case based upon any connection he had to Girardi, Hawley's actions completely undermined

PRIVILEGED / WORK PRODUCT                                                    **5** | P a g e

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

the State Bar's conflict-of-interest procedures and call into question the handling of other conflict cases during Hawley's tenure.

Additionally, we found evidence that on at least one occasion Girardi successfully deployed his connections to the State Bar to discourage people from making State Bar complaints against him in the first instance, with Girardi indicating that any complaint made against him would go nowhere and be pointless. Indeed, Girardi was already prominent in the profession and well-connected politically by the 1990s. His stature in the community likely contributed to the perception that bringing any disciplinary charges against him would be an uphill battle that involved taking on one of the titans of the legal profession. One case file in particular contains a notation regarding █████████████, and the rationale for closing another case included the unsupported idea ███████████████████████████████████████████████.

We also heard of rumors that Girardi could have executive leaders at the State Bar removed at his request, and reports that Girardi could facilitate or prevent judicial appointments. Whether or not true, these rumors are illustrative of the perceived extent of Girardi's enmeshment with State Bar matters or other matters important in the legal profession.

The investigation and findings summarized here are set forth in detail in the accompanying report, which proceeds as follows. First, we provide a summary of our investigation, including the steps we took and the evidence we examined. Next, we provide information about recent events involving Girardi that provide context for our investigation and its findings. Third, we discuss conflict-of-interest policies applicable to the State Bar, which are discussed in more detail in Appendix B. Fourth, we discuss Girardi's connections to individuals at the State Bar, including at the Executive and Board level and in OCTC and the State Bar Court, and to the extent it could be determined, the impacts of those connections on the handling of State Bar cases. We also note the involvement of people with connections to Girardi in the handling of State Bar cases against attorney respondents other than Girardi himself, where those respondents themselves had connections to Girardi. Finally, we identify additional issues with the handling of cases against Girardi that we discovered during the course of our investigation, and to the extent it could be determined, discuss the possible impacts of Girardi's influence on those occurrences.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:7

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

## INVESTIGATION SUMMARY

The State Bar Board engaged Aaron May and the law firm of Halpern May to conduct an independent, attorney-client privileged and confidential investigation into whether the State Bar's handling of past discipline complaints against Girardi was affected by Girardi's connections to or influence at the State Bar. Halpern May was empowered under the Business & Professions Code to issue subpoenas, take testimony of witnesses, and compel the production of documents. As part of its investigation, we issued 23 subpoenas and interviewed, either voluntarily or under compulsion, 74 witnesses. We also collected over 950,000 documents from a variety of sources. We commend the State Bar and the Board for allowing us to conduct an independent investigation. In particular, the State Bar has been cooperative in providing the materials we requested (where available), giving us access to employees, and supporting our efforts to compel recalcitrant witnesses to testify.

The biggest challenge with the investigation was the passage of time and the corresponding unavailability of records and fading memories of witnesses. The disciplinary complaints against Girardi span a 40-year time period and date back to at least 1984, before the advent of email. Further, due to the State Bar's document retention policies and IT constraints, there were significant limitations on what State Bar emails were preserved and available to our investigation. While we were able to get access to some Girardi Keese emails, we understand that Girardi himself did not use email to communicate and instead relied upon in-person meetings and phone calls. In addition, many witnesses could not recall events or details from decades back, which limited our ability to investigate the handling of older Girardi cases. Further, several witnesses to events relevant to our investigation are deceased.

The other significant challenge to the investigation was the nature of the misconduct we were investigating—potential corruption and other illegal activities. Often, those who engage in criminal activity do not memorialize their wrongdoing in writing or, if they do, they do not preserve it or provide it to investigators. Further, experience shows that many perpetrators do not admit to their wrongdoing when questioned and will lie and/or minimize their involvement. And, as was the case here with two individuals, when criminal conduct is involved, witnesses may refuse to answer questions about their conduct on Fifth Amendment grounds.

PRIVILEGED / WORK PRODUCT                                                    **7** | P a g e

**Ex. 5:8**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Despite these significant challenges, we investigated Girardi's influence and connections to the State Bar and assessed his ability to corrupt the disciplinary process, as detailed below.

## Scope of Investigation

We were tasked by the State Bar with investigating whether the State Bar's handling of past discipline complaints against former licensee Girardi was affected by Girardi's connections to or influence at the State Bar and identifying actions by anyone with ties to the State Bar that may constitute malfeasance in how discipline complaints against Girardi were handled.

At the outset, it is important to understand what our investigation did and did not include. As the State Bar previously reported, the State Bar opened 205 disciplinary matters about Girardi over a 40-year period involving allegations of trust accounting violations, theft, perjury, and other serious infractions. It was only in 2021, after Girardi failed to contest a disciplinary complaint, that the State Bar meted out any public discipline against Girardi.

In March 2021, the State Bar engaged Alyse Lazar as outside counsel to independently review the Girardi case files to "determine whether or not there is any information in any of the files showing that the handling of the case to the benefit of Girardi resulted from some type of personal or financial relationship with or benefit to any of the individuals who were involved in the case disposition, including outside special deputy trial counsel as well as State Bar employees."[1]   As

---

[1] During Halpern May's review of the case files, we discovered documents indicating that Lazar, while employed as an attorney for the State Bar, was briefly assigned to work on a Girardi case in 1995. We found no indication she was involved with any decision-making regarding discipline for Girardi in that case. In late 2011 and early 2012, Lazar served as an outside independent auditor for the State Bar and performed a review of a closed Girardi case as part of a random audit; she concluded the case had been incorrectly closed and advocated for it to be reopened. In another case against Girardi, the State Bar provided Lazar's contact information to the outside SDTC assigned to the case as a resource to answer procedural questions; during Halpern May's interview with Lazar, she stated that the SDTC never contacted her to discuss the case. Based on documentary evidence, it appears that Lazar had a brief conversation with someone on the SDTC's team on an issue that did not involve Girardi specifically. Lazar informed us that she did not recall having been involved with any Girardi cases.

PRIVILEGED / WORK PRODUCT                                                      **8** | P a g e

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

of January 2021, there were 130 Girardi cases.[2]  Lazar's review was limited to the four corners of the case files she was given.  Lazar reported that she "found no documentation in any files to support a finding of improper influence by Girardi on either State Bar employees or outside examiners in the resolution of these cases."  Our task was to pick up where Lazar left off to see if there was evidence *outside* the case files of Girardi's improper influence in the handling of his disciplinary cases.  In Lazar's report, she went through case-by-case and provided analysis of the resolution. We reviewed that report and requested case files where Lazar indicated questions or concerns about the resolution of a case, where the underlying complaint related to client trust account concerns, and where Lazar flagged that Girardi may have made misrepresentations to the State Bar.

To be clear, our investigation did not include an assessment into whether Girardi actually misappropriated funds from his clients or committed any other ethical violations or criminal acts.  We also did not analyze whether State Bar disciplinary cases were correctly closed, but instead relied on Lazar's analysis for those determinations.  Additionally, this investigation did not revisit the foci of the 2014 Munger, Tolles & Olson LLP ("MTO") investigation, described in further detail below, except to the extent that investigation revealed information concerning Girardi's connections to the State Bar.  Finally, we were not asked to conduct a general root cause analysis to determine why the State Bar allowed Girardi to practice for so long without publicly disciplining him.  While our task of looking at Girardi's influence at the State Bar gave us some insight into this issue, that was not the question we set out to answer.

## Documents Collected and Reviewed

Through our investigation, we collected and reviewed the following materials:

- **State Bar Case Files.**  As described above, we identified the case files to review based on Lazar's audit report.  We also requested other case files where evidence was developed suggesting issues with a case's handling.  Based upon witness interviews, it is our understanding that under State Bar policy, all critical documents relating to the handling of a case are supposed to be maintained in the case file.

---

[2] Fifteen of the Girardi case files could not be located, so Lazar only reviewed 115 Girardi case files.

PRIVILEGED / WORK PRODUCT                                    **9** | P a g e

**Ex. 5:10**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

- **State Bar Internal Policies.** We requested and received several documents detailing internal policies and practices from the State Bar, including various manuals and administrative memoranda regarding conflict-of-interest policies, ethical screens, and outside employment.

- **Forms 700.** We collected and reviewed the available Forms 700 for relevant individuals. During the time-period at issue, the State Bar required certain designated employees to complete Forms 700. The requirements for which employees were required to complete Form 700 and the required disclosures varied from year to year. Although we requested the State Bar provide us the completed Forms 700 for individuals relevant to our investigation, the State Bar was unable to locate all requested forms. Further, many of the Forms 700 that were in the State Bar's files were incomplete and sometimes not even signed.[3]

- **Emails from Relevant State Bar Employees.** We requested emails for former State Bar employees who were believed to have information relevant to the investigation. Because emails for former employees are archived, and the available archives are almost certainly incomplete, the State Bar had limitations on the availability of relevant emails to our investigation. We were, however, able to obtain additional emails and documents that were previously collected by the State Bar's former outside counsel relating to a different investigation and to suits brought by four former State Bar employees. Using this email set, we applied search terms and limiters to identify and review relevant emails to our investigation.

- **Documents from Girardi Keese.** In 2021, Girardi Keese was placed in involuntary bankruptcy, and a trustee was appointed to oversee its affairs. We subpoenaed the Girardi Keese trustee for documents relevant to our investigation, including emails with State Bar employees and officers and financial documents. Initially the Girardi Keese trustee objected, due to the cost of complying with the subpoena. After negotiations, we entered into a court-approved stipulation with the trustee, and the trustee produced both emails and financial records to us with the State Bar covering the expense of compliance. The Girardi Keese documents were some of the most insightful

---

[3] We discuss the disclosures made on those Forms 700 by certain State Bar employees in further detail below, but note here that by not insisting on its employees completing these forms completely, the State Bar faces increased difficulty in identifying conflicts and holding individuals accountable for not handling conflicts appropriately.

PRIVILEGED / WORK PRODUCT                                    **10** | P a g e

Ex. 5:11

materials we received in the investigation, as they documented cash and gifts flowing from Girardi Keese to State Bar employees and officers.

▪ **Documents from Outside Law Firm.**  As part of our review of the work done by OUTSIDE ATTORNEY C, an SDTC on a Girardi case, we requested any documents related to that case from the successor to the law firm where he worked.

▪ **Subpoenaed Documents.**  Although we subpoenaed documents from many witnesses relating to their relationships with Girardi and/or their handling of Girardi cases, nearly all of them claimed they did not possess any such documents.   A few witnesses voluntarily provided us with relevant documents they maintained, including a former State Bar contractor who worked on a Girardi case.

▪ **Miscellaneous Other Documents.**  As our investigation progressed, we requested documents from the State Bar.  The State Bar always responded to our request, either by providing us with the required documents or by informing us that the documents were not available.

## Witness Interviews

As part of our investigation, we interviewed 74 people.  Our general approach was to first reach out to witnesses to see if they would meet with us voluntarily.  Most witnesses agreed to voluntary interviews.  For those who did not respond to our outreach or refused to speak to us voluntarily, we subpoenaed the witness to compel their testimony.  Once subpoenaed, most witnesses complied, except two former State Bar employees: Layton and Sonja Oehler.  For Layton and Oehler, we had to seek enforcement of their subpoenas in Los Angeles County Superior Court ("Superior Court").  One witness whom we subpoenaed for testimony, former State Bar employee Greenberg, asserted his Fifth Amendment privilege to refuse to answer any questions about his activities and work at the State Bar or his connections to Girardi.  Girardi, through his counsel, informed us that medical professionals and the Superior Court have determined Girardi was not mentally competent and was thus unable to testify.  Girardi's counsel further explained that regardless of his competency issues, he or his conservator on his behalf, would assert his Fifth Amendment privilege in response to all questions asked of him.  As a result, we determined there was no benefit to taking Girardi's testimony.

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

The witnesses we spoke to broke down into the following categories:

▪ Current State Bar employees, officers, or Board members;

▪ Former State Bar employees, officers, or Board members;

▪ Former and current SDTCs;

▪ Former attorneys or employees at Girardi Keese (or predecessor firm); and

▪ Miscellaneous others including individuals who contacted us regarding Girardi, an attorney who was involved in the 2014 MTO report, and a spouse of a State Bar employee who received money from Girardi Keese.

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

## RELATED INVESTIGATIONS AND REPORTING

Below, we provide details on investigations, cases, or reporting that preceded or has paralleled our investigation.  These items informed our investigation, but where relevant, we have taken steps to independently verify details relevant to the scope of our investigation.

### The 2014 Munger, Tolles & Olson Report

On July 31, 2014, the then-Chief Trial Counsel, CTC 2, made a whistleblower complaint about then-Executive Director Dunn and others to then-Deputy Executive Director Hawley.  Her report raised several issues, including the Mongolia trip taken by Dunn, Layton, and Miller; and other matters.  In response to CTC 2's report, the State Bar retained outside counsel Munger, Tolles & Olson LLP ("MTO") to investigate CTC 2's complaints.  MTO's investigation was not focused on OCTC or its resolution of Girardi cases.

MTO produced a report, in which it provided a number of conclusions related to the concerns raised by CTC 2.  As part of its report, MTO flagged that "[t]he frequency with which Girardi's firm has surfaced in matters . . . investigated is striking," and it noted that "the closeness of the relationship between some senior managers and [Girardi Keese] does raise potentially troubling perceptions."  MTO made the following recommendation in its report: "The Board should instruct senior management how important it is to cultivate and maintain a public perception that the Bar represents all attorneys, and that no one law firm or segment of the bar has a special position.  It should further instruct management that its conduct to date may have created an unhealthy perception that Girardi and his firm have special influence or receive special treatment – and that management should take steps to dispel and avoid contributing further to this perception in the future."  MTO also found that Layton approached CTC 2 when she entered a managerial role "to offer assistance from Girardi in helping her to become a judge or achieve some other professional goal," and that Dunn made similar offers to State Bar Board Presidents without mentioning Girardi.

### The Lion Air Litigation and Criminal Indictments

Girardi Keese and Edelson PC served as plaintiffs' counsel in the litigation arising from the crash of Lion Air Flight 610 in October 2018.  The case, which was proceeding in federal court in the Northern District of Illinois, was settled in early 2020.  In December 2020, Edelson sued Girardi, Girardi Keese, and others, alleging

PRIVILEGED / WORK PRODUCT                                          **13** | P a g e

**Ex. 5:14**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

that Girardi and Girardi Keese were "on the verge of financial collapse and locked in a downward spiral of mounting debts and dwindling funds." Edelson further alleged that Girardi "has resorted to embezzling the proceeds of settlements that should have been directed to his clients." In mid-December 2020, an Illinois federal judge found Girardi and Girardi Keese in civil contempt, froze their assets, and referred the matter to the U.S. Attorney's Office for the Northern District of Illinois.

On February 1, 2023, the U.S. Attorney's Offices for the Northern District of Illinois and the Central District of California announced that Girardi had been indicted by grand juries for wire fraud (in both actions) and civil contempt (in the Illinois action).

## State Bar Case 21-O-30192 Against Girardi

In March 2021, the State Bar initiated disciplinary proceedings against Girardi in State Bar Court Case No. SBC-21-O-30192, alleging several violations of the Rules of Professional Conduct stemming from three State Bar cases, including a case arising from the Lion Air litigation. In April 2021, the State Bar moved for an entry of default against Girardi after he failed to file a response to the notice of disciplinary charges, and in November 2021, the State Bar petitioned the State Bar Court for an order recommending Girardi's disbarment. In June 2022, the Supreme Court of California ordered Girardi disbarred. This was the first instance of any public discipline against Girardi.

## Press Reporting on Girardi Connections with the State Bar

There have been multiple reports from investigative journalists concerning Girardi's connections with State Bar employees. Of note, the *Los Angeles Times* released investigative reports in March and July 2021 regarding connections between Girardi and various State Bar employees, including Layton and Dunn. Then, in July 2021, *Law360* released additional reporting on Girardi's connections with Layton. These and other news outlets have followed up on that reporting. We have reviewed the media reports to identify leads and evidence to pursue as part of our investigation and independently verified any facts we relied upon.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:15

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

## STATE BAR ORGANIZATION AND RELEVANT STATE BAR POLICIES AND PRACTICES

In order to put our investigation and findings into context, it is important to understand the organization and structure of the State Bar as well as the conflict-of-interest and other policies that govern the State Bar, especially State Bar Rule 2201 and Forms 700.

To the extent the reader is not familiar with the State Bar's structure and organization, including the function of OCTC, we have prepared an appendix summarizing that information.  (Appendix A.)

Below, we outline the conflict-of-intertest concepts that informed our investigation and conclusions, and make findings regarding State Bar employees' overall awareness of these concepts based on our interviews.  We have also prepared an appendix summarizing in greater detail the relevant conflicts-of-interest concepts and policies, and how applicable policies have changed over the years, including the important changes that went into effect last year.  (Appendix B.)

### Prosecutorial Ethics and Conflicts-of-Interest

All lawyers are subject to ethics rules that prohibit conflicts-of-interest, such as those contained in California's Rules of Professional Conduct.  Prosecutors—government attorneys charged with enforcing the law against others on behalf of the public—are subject to even greater ethical considerations regarding conflicts-of-interest that require them to avoid even the appearance of impropriety.  The existence of the appearance of impropriety is related, to but separate, from the existence of an actual conflict-of-interest, and the appearance of impropriety alone may render a government official's involvement in a case inappropriate even where there is no actual conflict-of-interest under the applicable rules.  This concept is embodied in the case law, ethics opinions, and industry ethical standards that are discussed in Appendix B.

The OCTC's own conflicts-of-interest policies have historically been quite weak, and did not explicitly prohibit, for example, State Bar employees from receiving gifts from the lawyers they are regulating.  As set forth in more detail in Appendix B, the State Bar's principal rule for handling conflicts-of-interest, Rule of Procedure 2201, was until 2016 focused on recusal of the CTC, rather than of line employees in OCTC, and made recusal discretionary in many instances.  Although the State Bar's policies have been recently augmented to account for these

**Ex. 5:16**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

issues, as discussed in the section below, many State Bar employees we interviewed were unfamiliar with or could not easily articulate a more robust understanding of conflicts rules that includes the requirement to avoid the appearance of impropriety, even though this requirement—which is imposed by the common law—applies to State Bar decisionmakers.

The additional ethical considerations imposed by California common law to govern government attorneys and the appearance of impropriety are intended not only to provide for fairness in the actual administration of justice, but to protect and facilitate the public's confidence in the administration of justice and in the government's ability to prosecute cases fairly and objectively. Indeed, disinterested decisionmakers are one of the bedrocks our or legal system and are a fundamental component of the concept of due process. The involvement of a conflicted government official (or apparently conflicted official) in a discretionary decision made on behalf of the public is impermissible and improper because it undermines public confidence in our government and our institutions. Accordingly, where we have found that a conflicted individual made discretionary decisions on behalf of the State Bar in a case involving Girardi, we have concluded that the case was improperly handled.

In the sections that follow, we discuss whether certain individuals had conflicts-of-interest. In those discussions, we are referring to all of the concepts discussed above and in Appendix B.

**Employee Awareness of Policies**

During interviews, numerous OCTC employees identified the California Rules of Professional Conduct as the sole source of ethical considerations that governed their work, and did not identify any additional ethics rules or guidelines that applied to their work enforcing the law against other attorneys on behalf of the public. Indeed, as described in detail below, even the State Bar's then-Deputy Executive Director Hawley analyzed conflict issues involving an SDTC counsel who was appointed to investigate Girardi solely under the California Rules of Professional Conduct, without addressing the conflict rules applicable to government attorneys or the appearance of impropriety.

In interviews conducted before the State Bar's most recent conflicts rules were implemented, numerous OCTC employees stated that they had not received any training on applicable conflicts-of-interest rules and guidelines, and some employees had a poor recollection of, and/or could not meaningfully articulate, the

PRIVILEGED / WORK PRODUCT                                                     16 | P a g e

Ex. 5:17

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

applicable conflicts-of-interest rules after formal training was provided.  Multiple employees also reported handling conflicts on an informal, ad hoc basis, for example by asking a supervisor to reassign a case because they knew someone involved.

PRIVILEGED / WORK PRODUCT                                                17 | P a g e

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:18**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

## FACTUAL FINDINGS

### Thomas V. Girardi – Background

Much has been said, written, and reported about Girardi, and we only summarize some key points here. Girardi was a member of the California Bar between 1965 and 2022.

| Date | License Status ⓘ | Discipline ⓘ | Administrative Action ⓘ |
|---|---|---|---|
| Present | Disbarred | | |
| 7/1/2022 | Disbarred | Disbarment 21-O-30192 ⓘ | |
| 1/13/2022 | Not eligible to practice law in CA | Ordered inactive 21-O-30192 ⓘ | |
| 8/9/2021 | Not eligible to practice law in CA | Ordered inactive 21-O-30192 ⓘ | |
| 7/1/2021 | Not eligible to practice law in CA | | Suspended, failed to pay fees |
| 3/30/2021 | | Disciplinary charges filed in State Bar Court 21-O-30192 ⓘ | |
| 3/9/2021 | Not eligible to practice law in CA | | Ordered inactive |
| 1/13/1965 | Admitted to the State Bar of California | | |

Over time, he became a preeminent plaintiff's lawyer who recovered hundreds of millions of dollars in settlements and judgments. A character based on Girardi was featured in the film *Erin Brockovich*. More recently, Girardi became famous for his appearances on the reality TV show, *The Real Housewives of Beverly Hills*, which featured his then-wife, Erika Jayne.

For a long period of time, Girardi was a powerbroker in the California political sphere. He raised and donated large sums of money for those running at all levels of office, which helped him develop relationships with elected officials. Girardi reportedly advised multiple California governors on judicial appointments and helped numerous lawyers become judges. Girardi also hosted fundraisers, like he

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:19

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

did for Dunn during Dunn's campaigns for the California State Senate. Indeed, the reach of Girardi's political connections was extraordinary. For example, Miller reported to us that if Girardi made a telephone call to California Governor Jerry Brown or to President Clinton, the call would be returned within hours, and the *Los Angeles Times* reported a similar sentiment in March 2021.

> **Los Angeles Times** ✅
> @latimes                                    ...
>
> He could get Govs. Gavin Newsom and Jerry Brown on the phone with ease, associates said.
>
> He and then-wife Erika Jayne regularly traveled to Washington, D.C., where then-Senate Majority Leader Harry Reid appointed him to a Library of Congress board.

The broad reach of Girardi's influence among politicians has been widely reported for years, including a *Los Angeles Times* article about Girardi's connections to President Biden, California Governors Jerry Brown and Gavin Newsom, and former Attorney General Bill Lockyer, not to mention U.S. Senators.

As the press reporting indicates, Girardi's political connections played a significant role in his ability to influence judicial appointments, both state and federal. Miller reported that he believed that at least for certain periods of time, Girardi had the power to prevent someone from becoming a judge if he wanted to. Girardi also made financial donations to judicial election campaigns.

Girardi was not shy about spending money on his well-connected friends or to make new ones. Every year, he hosted multiple lavish parties that were attended by politicians, judges, prominent attorneys, prosecutors, and State Bar employees and officials. He also hosted regular lunches and other meals at Morton's, The Palm, and the Jonathan Club that were attended by politicians, local officials, and State Bar employees. Girardi provided generous gifts and benefits to those he knew or was trying to meet. For example, he had a private jet which he used to fly friends and colleagues for work or pleasure, including several State Bar employees and officials.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:20

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

As described above, we understand that Girardi has recently been diagnosed with Alzheimer's Disease, which has greatly affected his memory and competency. Girardi was not interviewed as part of the investigation because of his competency issues and because Girardi, through his attorney, informed us he would invoke his Fifth Amendment right against self-incrimination to all our questions.

## Allegations Against Thomas Girardi and Failure of the State Bar to Publicly Discipline Him

While Girardi has recently been publicly accused of stealing client funds and cheating his co-counsel out of fees, these allegations are not new to the State Bar. The State Bar was aware of over 200 misconduct complaints against Girardi dating back to at least 1984. In total, between 1982 and January 2021, 130 complaints were made to the State Bar about Girardi, none of which resulted in any public discipline, and the vast majority of which were closed without any discipline. Some cases were resolved with private discipline, such as ███████████ private reprovals, ███████████████████████████████████ ███████████████ Others were resolved with no discipline at all. And until last year, no cases resulted in public discipline.

Dozens of those State Bar complaints against Girardi involved allegations that he stole from his clients or committed some other trust account violation (*e.g.*, he did not properly keep track of client funds, provide accountings when requested by clients, or segregate client funds from firm funds). In several of the cases where Girardi was accused of misappropriating client funds, the facts followed a familiar pattern: Girardi settled a case and received settlement funds but, even after multiple requests from the client, did not pay the client her share of the proceeds. The client would then, out of desperation, file a complaint with the State Bar against Girardi. Shortly after the complaint was filed, Girardi would pay the client what was owed and, as part of the arrangement, the client would drop the complaint. At that point, the State Bar would close the case, even though in many instances the evidence of violations were clear cut. A similar type of complaint was from Girardi's co-counsel, who would allege that Girardi failed to pay them their fair share of settlements. Those complaints were also resolved in a similar manner—after a complaint was filed, Girardi would pay off his co-counsel, co-counsel would withdraw their complaint, and the State Bar would close the case.

On February 1, 2023, the Department of Justice announced two indictments against Girardi charging him with wire fraud, based upon allegations that he stole millions of dollars from his clients as part of a lengthy fraud scheme.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:21

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

### Girardi's Connections with the State Bar and the Impact of Those Connections

Girardi maintained connections to the State Bar at nearly every level. One witness told us, "[i]t's like Girardi became part of the fabric of the State Bar." Our investigation determined that Girardi had connections to the Board, the Executive Director's Office, and OCTC, both at the managerial and line prosecutor and investigator level, and that spanned decades. He appears to have been involved in identifying candidates for the Board, and there is evidence he was involved in the appointment of at least one State Bar Court judge and attempted to influence the appointment of a CTC. Girardi, sometimes acting through a conduit, appears to have invited State Bar employees to meals, parties, concerts, ball games and other events, many of which he seems to have paid for.

In all, we have discovered evidence connecting at least nine State Bar employees or Board members who had connections to or accepted items of value, travel, or meals from Girardi at the time they were at the State Bar, State Bar Court, or the Board. Three of those individuals were involved in the closure of State Bar cases against Girardi, and we conclude that two of these individuals had conflicts-of-interest at the time they handled the cases.

Many of the individuals who appear to have had connections to Girardi presented on panels together at the annual Consumer Attorneys Association of Los Angeles ("CAALA") convention in Las Vegas, which CTC 2 referred to as a "boondoggle." Here are excerpts from a few CAALA flyers advertising the State Bar employees who were speaking at the annual event.

> Avoiding Trouble with the State Bar
> and
> What to Do When an Investigation Opens
> *Hon. Richard Platel, State Bar Judge*
> *Thomas Layton, State Bar Investigator*
> *Murray Greenberg, Supervising Trial*
> *Counsel for the State Bar*

2008 CAALA

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:22

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Avoiding Trouble with the State Bar
*Hon. Richard Platel, State Bar Judge*
*Murray Greenberg, State Bar*
*Supervising Trial Counsel*
*Thomas Layton,*
*State Bar Investigator*

2010 CAALA

**SPECIALTY CREDITS**
**Moderator: Shawn McCann**

Legal Ethics (1 hour)

Avoiding Trouble with the State Bar
*Joe Dunn, Murray Greenberg,*
*Thomas Layton, Hon. Donald Miles,*
*Hon. Richard Platel*

2013 CAALA

Avoiding Trouble with the State Bar
Senator Joseph Dunn (Ret.), CEO,
California State Bar
Richard Platel, Supervising Hearing Judge,
California State Bar Court
Donald Miles, Hearing Judge,
California State Bar Court
Murray Greenberg, Senior Attorney,
Office of the Chief Trial Counsel
Thomas Layton, Judicial Liaison,
Office of Public Protection

2014 CAALA

We understand that Girardi was well connected with CAALA, and that his firm threw a party at the CAALA convention each year that multiple State Bar employees attended.

In addition to Girardi's connections to specific individuals affiliated with the State Bar, witnesses reported that Girardi often threw parties attended by OCTC personnel above and beyond the individuals that we detail below as well as by many federal and state judges and other prominent lawyers from leading law firms. Multiple witnesses spoke about how judges and other prominent lawyers or politicians at these events would rave about how highly they thought of Girardi.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:23

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

One witness reported that Girardi had always valued his connections with people, and that Girardi would cultivate relationships through his hosting large events with many invitees.  As the witness described it, to Girardi, "relationships were the key to everything."   Based on Girardi's pattern of conduct, and the details outlined below in this report, it appears that Girardi's cultivation of relationships at the State Bar and with related individuals and institutions was intentionally designed to increase his influence at the State Bar.

As an example, a witness who served for several years on the State Bar's Board, eventually serving as its President, reported to us that during his time at the State Bar, there was background chatter about Girardi and how well connected he was, politically and otherwise.  For example, Girardi was at many prominent sponsorship events relating to the legal community.  Another former Board member and President of the Board recounted an encounter that he had with Girardi (first to MTO during their investigation in 2014 and then to us).  The former Board member said that after he decided to run for president of the Board, the outgoing President, Luis Rodriguez, told him that he should meet with Layton because (as MTO recounted) "Layton was not yet sure if he would throw his support to [the former Board member]."  The former Board member reported that he found the suggestion strange, because Layton was just a State Bar employee, but nonetheless agreed.  He reported that when he arrived at the meeting, Girardi came to the table to speak with him and Layton.  The former Board member reported that the conversation was limited to small talk, and that Girardi did not ask for or offer anything of value related to the witness's possible election as President.

Another witness also reported to us that there were rumors that Girardi had certain Bar employees or executives removed from their positions.  Whether or not this is actually true (and we were unable to corroborate this particular witness's account), the mere fact that people affiliated with the State Bar believed that Girardi had such power and influence is illustrative of his perceived influence and power.

Keeping with Girardi's reported focus on building relationships, multiple witnesses reported that Layton offered Girardi's assistance in the development of their careers, particularly if they were seeking judicial seats in the future.  One witness reported to us that because of Girardi's perceived connections at all levels of the State Bar, he believed that there was no place within the State Bar to report concerns about Girardi.

PRIVILEGED / WORK PRODUCT                                                                **23** | P a g e

**Ex. 5:24**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Additionally, State Bar employees and officers accepted gifts, including meals at Girardi's regular table at Morton's, knowing that Girardi was paying. Other State Bar employees and officers accepted meals and other gifts for which they claimed not to know the source. These individuals reported to us that they were not completely sure who paid for their free meals and thus could not be sure it had been Girardi, though they were sure they themselves did not pay and they did not name anyone else as having possibly paid.

As discussed above, Girardi was already prominent in the profession by the 1990s. His stature in the community may have contributed to the perception that bringing any disciplinary charges against him would be an uphill battle that involved taking on one of the leaders of the legal profession. Indeed, at least one case file contains a notation regarding ███████████████ and the rationale for closing another case included ████████████████████

We also found evidence showing that Girardi exploited his connections with the State Bar to deter someone from even filing complaints with the State Bar in the first place. As described below, a witness reported that, after ██ threatened to report Girardi to the State Bar, Girardi invited ██ to a dinner that Layton also attended. ██ understood this to be an attempt to intimidate ██ with Layton's State Bar connections in an effort to deter ██ from filing a State Bar complaint. Girardi also name-dropped Layton on at least one occasion to an attorney who complained about his conduct in what appears to be an attempt to get the upper hand in litigation (also described in further detail below).

Further, Girardi referenced his connections inside the State Bar to State Bar employees or SDTCs who were working on investigations against him as part of his advocacy. ████████████████████████████████ Due to Girard's mental state and assertion of his Fifth Amendment rights, we were not able to ask him who he was referring to in ██ and during his deposition, Layton denied knowing who Girardi was referencing ████████████████████████████████

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:25

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

██████████████████████████████████████████

OCTC, made up of individual attorneys and investigators handling each case, is afforded great discretion in determining whether to close complaints against attorneys. *See* Rule 2601, Rules of Procedure of the State Bar of California ("The Office of Chief Trial Counsel may, in its discretion, close an inquiry, complaint or investigation. The inquiry, complaint or investigation may also be closed with the issuance of a warning letter or a directional letter or by any other appropriate manner not constituting discipline."). Personal connections to Girardi by State Bar employees exercising this discretion create conflicts-of-interest and the appearance of impropriety, and thus taint the handling of the cases and the discretionary decision to close the cases without public discipline. In total, our investigation revealed that at least nine Girardi cases were handled by OCTC employees who had a connection to, or appear to have received benefits from, Girardi and/or his law firm at some point in time. All of these cases were closed without public discipline. Eight of those nine cases were closed by individuals whom we determined had conflicts-of-interest at the time they worked on the cases. We conclude that the involvement of conflicted individuals in these cases taints the discretionary decisions made in those cases and means that they were improperly handled.

In the sections that follow, we detail, *inter alia*, the connections that were reported to us by State Bar employees, past and present, and other witnesses, but note that not all reported allegations regarding Girardi were corroborated. Nevertheless, we have included the reports we discuss below in our confidential and attorney-client privileged report because they are relevant to the Board's understanding of Girardi's influence at the State Bar, which appears to have perpetuated itself in part through rumors regarding Girardi's connections to State Bar leaders.

### Connections at the Executive and Board Level

Over the years, Girardi had connections to multiple people on the State Bar's Board and in its Executive Director's Office.[4] Our investigation did not reveal any

---

[4] Because Layton began his employment at the State Bar in OCTC and spent the majority of his time inside OCTC before being reassigned to the Executive Director's Office, his connections to Girardi are detailed in the section regarding OCTC employees, below.

PRIVILEGED / WORK PRODUCT                                          25 | P a g e

Ex. 5:26

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

material connections between Girardi and any current Board executive or Board member.

### *Joseph Dunn*

Joseph Dunn served as the Executive Director of the State Bar from November 2010 to November 2014, when he was terminated for misconduct and false representations he made to the Board.  Together with Layton, Oehler, and Noonen, Dunn sued the State Bar after his termination, alleging, *inter alia*, wrongful termination and retaliation.  Dunn's suit went to arbitration, and the arbitrator ultimately found in favor of the State Bar.  In July 2022, the State Bar, by and through an SDTC appointed under State Bar Rule 2201, initiated disciplinary proceedings against Dunn, alleging acts of moral turpitude in connection with his role at the State Bar.  Those disciplinary proceedings are currently ongoing.

Dunn has personal and professional connections to Girardi and others in Girardi's orbit, including Miller and Layton.  Dunn told us that he first met Girardi sometime in the 1990s, when both were members of the plaintiff's counsel bar.  According to Dunn, Girardi held fundraisers for and donated to both of Dunn's California State Senate campaigns, in 1998 and 2002.  Dunn knew both Miller and Layton before Dunn joined the State Bar in 2010.  In 2013, Dunn moved Layton from his longstanding position as an investigator in OCTC into a newly created position in the Executive Director's Office, where Layton reported directly to Dunn.  CTC 2 suggested that this transfer occurred because she was planning to give Layton a negative performance review.

Dunn and Girardi maintained a personal and professional relationship after Dunn left the State Bar; for example, Dunn and Girardi explored working together as attorneys in private practice around 2018.  According to Dunn, he and Girardi last spoke sometime in the fall of 2020.

During his tenure at the State Bar, Dunn was invited to and attended lunches with Girardi, including at Morton's and the Jonathan Club, and parties hosted by Girardi, like Girardi's Superbowl and Christmas parties, as well as other events hosted and paid for by Girardi.  Dunn's office, by and through his secretary Oehler, was even involved in assisting a third-party who wanted to attend one of Girardi's parties.  When asked which State Bar employees he recalled seeing at Girardi's parties, Dunn identified only Layton.  When asked if he had seen Greenberg or Richard Platel at Girardi's parties, Dunn stated that he had a vague recollection of seeing them at parties, but could not place them at specific parties on specific

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:27**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

dates. In 2012, an email shows that Dunn planned to attend the dedication of the "Thomas V. Girardi Chair" at Loyola Law School.

> **Subject:** FYI...Sen. Joe Dunn will be attending the May 2nd dedication of the Thomas V. Girardi Chair.

And in 2013, Dunn—along with Layton—was included on Girardi Keese's guest list for an ASCDC (likely the Association of Southern California Defense Counsel) event.

Dunn flew on Girardi's private plane before, during, and after his tenure at the State Bar. During his sworn deposition, Dunn admitted to the flights before and after his time at the State Bar, but stated that he had only taken one trip on the plane during his time at the State Bar—the trip he took together with Luis Rodriguez. However, this appears to be inconsistent with documentary evidence indicating that Dunn flew on Girardi's plane at least five times while he was the Executive Director of the State Bar.

> **Subject:** Departure for tomorrow will be 4:30 pm for Sacramento; 4 passengers: Tom, ███████ Tom Layton, Joe Dunn going to a 6:30 dinner at Cafeterial 15L, 1116 15th St., Sacramento - question below

According to records from Girardi Keese, it appears that Girardi Keese donated $25,000 to Dunn's campaign for the California State Senate in 2000.

**Check History Report**
**Sorted By Check Number**
**Activity From: 1/1/2000 to 12/31/2020**

Girardi & Keese (GIR)

Bank Code: A Operating - CBB #0045/0312

| Check Number | Check Date | Vendor Number | Name | | Check Amount | Check Type |
|---|---|---|---|---|---|---|
| 090218 | 12/29/2000 | 1DUNN | JOE DUNN FOR STATE SENATE | | 25,000.00 | Manual |
| | | | | Bank A Total: | 25,000.00 | |
| | | | | Report Total: | 25,000.00 | |

Girardi Keese apparently paid $240,000 to the Law Offices of Joseph Dunn over 2009 and 2010, before Dunn joined the State Bar.

PRIVILEGED / WORK PRODUCT                                          27 | P a g e

Ex. 5:28

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

**Check History Report**
**Sorted By Check Number**
**Activity From: 1/1/2000 to 12/31/2020**

Girardi & Keese (GIR)

Bank Code: A  Operating - CBB #0045/0312

| Check Number | Check Date | Vendor Number | Name | Check Amount | Check Type |
|---|---|---|---|---|---|
| 147255 | 9/11/2009 | 1DUNJOE | LAW OFFICES OF JOSEPH DUNN | 40,000.00 | Manual |
| 147659 | 10/5/2009 | 1DUNJOE | LAW OFFICES OF JOSEPH DUNN | 40,000.00 | Manual |
| 148845 | 12/1/2009 | 1DUNJOE | LAW OFFICES OF JOSEPH L. DUNN | 40,000.00 | Manual |
| 149013 | 12/4/2009 | 1DUNJOE | LAW OFFICES OF JOSEPH L. DUNN | 40,000.00 | Manual |
| 150169 | 2/3/2010 | 1DUNJOE | LAW OFFICES OF JOSEPH L. DUNN | 40,000.00 | Manual |
| 150369 | 2/10/2010 | 1DUNJOE | LAW OFFICES OF JOSEPH L. DUNN | 40,000.00 | Manual |
| | | | **Bank A Total:** | 240,000.00 | |
| | | | **Report Total:** | 240,000.00 | |

During his sworn deposition, Dunn was asked about, but did not disclose, any payments or gifts from Girardi Keese.

Dunn also appears to have received gifts from Girardi in the form of hotels and entertainment in Las Vegas. Based on an email sent by a Girardi Keese employee to Dunn's assistant, it appears that Girardi paid for hotel expenses and concert tickets for Dunn in 2012, while Dunn was still working for the State Bar.

**Subject:** RE: Tom & Erika Girardi Holiday Party

Hi Sonja,

Rooms have been booked at The Wynn Tower Suites: 1 room for Joe Dunn for arrival 12/14 & out on 12/16; 1 room for you and your daughter for same dates.

I have reserved 3 tickets to the Faith Hill/Tim McGraw 8 pm show at the Venetian. We'll probably have a reception Friday before the concert at maybe 5 pm.

Anyone golfing on Saturday?

Dunn also corresponded with a Girardi Keese employee in 2010 about another Las Vegas trip. Dunn asked the Girardi Keese employee about tickets to a show and the Girardi Keese employee confirmed that the tickets had been procured and provided Dunn with check-in details for a suite at the Wynn, suggesting that Girardi had arranged for the trip.

We got the 3 tickets for the 7:30 p.m. show for "O" at the Bellagio. You will have your tickets upon check in at The Tower Suites registration in the Wynn.

Ex. 5:29

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Dunn attended annual CAALA conventions in Las Vegas in at least 2013 and 2014, and Dunn reportedly clashed with CTC 2 over OCTC attorney Greenberg's attendance. Dunn also attended the State Bar trip to Mongolia, together with Miller and Layton. This trip was a subject of the 2014 MTO investigation and was detailed in their results. MTO concluded that Dunn misled the Board about whether State Bar funds would be used to pay for the trip, and found that after the use of State Bar funds had come to light, Girardi Keese made a payment and/or donation to the State Bar as a potential reimbursement.[5] Miller and another Girardi Keese attorney donated to Dunn's congressional campaign after Dunn left the State Bar.

Approximately nineteen Girardi cases were closed during Dunn's tenure as Executive Director. Although, as Executive Director, Dunn was not supposed to have a role in the State Bar's disciplinary function—something he admitted—we found evidence that Dunn nevertheless inserted himself into OCTC management in a way that inured to Girardi's benefit. As discussed in detail below, Dunn was involved in the termination of four senior OCTC attorneys, including two who were advocating for discipline against Girardi. During his deposition, Dunn admitted he was involved in the termination but described his involvement as at most ministerial.

By reviewing emails, we learned that in 2013—after Dunn moved Layton to the Executive Director's Office—Dunn's office received a letter flagging that Layton may have some inappropriate involvement in State Bar cases against Girardi. Dunn was shown the letter during his sworn deposition, but he stated he had no recollection and thus could not comment. This letter was later forwarded to Deputy Executive Director Hawley, and Hawley's handling of the allegations is discussed in further detail below. Dunn denied that he even heard anything about Layton interceding in cases on behalf of Girardi during Dunn's time with the State Bar.

Dunn submitted Forms 700 for the years 2010, 2011, and 2013. The State Bar does not have a Form 700 for Dunn for the years 2012 or 2014, and there are other irregularities with the records. For example, Dunn's form for 2013 is incomplete and unsigned, and the form for 2010 is dated as having been completed in 2013. Dunn did not disclose any gifts or things of value from Girardi or Girardi Keese in any of the Forms 700 we were provided. When asked whether he disclosed things of value he received from Girardi during his time at the State Bar, Dunn stated that

---

[5] Dunn's representations to the Board regarding the Mongolia trip form part of the basis for the current disciplinary charges pending against Dunn.

PRIVILEGED / WORK PRODUCT                                        **29** | P a g e

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

he did not recall, because he considered the disclosures an administrative issue and left them to his assistant Oehler to handle, even though he was required to sign them himself under penalty of perjury. During her sworn deposition, Oehler testified that she did not complete any Forms 700 for Dunn, that she did not keep track of items that Dunn was to disclose on his Form 700, and that she did not recall her job responsibilities as having included tracking items of value for Dunn to disclose.

### *Howard Miller*

Howard Miller served on the State Bar Board of Trustees (formerly known as the Board of Governors) from 2006 to 2010, serving as its President from 2009 to 2010. Concurrent with his tenure on the Board, Miller was also an attorney at Girardi Keese with the title "partner." While Miller had the title of "partner" at Girardi Keese, he was not a true partner of the firm. Based upon what Miller told us, Girardi was the sole owner of the firm, and Miller and other attorneys were essentially employees of Girardi Keese. Miller and Girardi worked together to varying extents on Girardi Keese cases during Miller's sixteen years at Girardi's law firm (2002 to 2018).

Miller and Girardi also interacted socially during these years. Miller flew on Girardi's private jet. Additionally, they attended many lunches together at Morton's and elsewhere. Girardi always paid for everything at the lunches. Miller reported that Layton was frequently at these lunches, and that Dunn was sometimes in attendance as well, though less frequently than Layton. Miller reported that although Layton was often present, Miller did not know any substantive details about Layton's relationship with Girardi. Miller heard rumors that Layton was acting as the "gatekeeper" to Girardi but did not believe that to be true. It appears that Miller and Layton may have an interpersonal relationship. A witness reported hearing Miller and Layton frequently speak by phone while Miller was State Bar President, which he viewed as unusual, and the two also exchanged multiple emails.

At least one large event was thrown by Girardi in Miller's honor, a formal lunch to celebrate Miller's election as State Bar Board President, with approximately 200 people attending, including many people affiliated with the State Bar. The State Bar's official agenda for Board of Governors Meetings and Events at the 82nd State Bar Annual Meeting in September 2009 prominently features a notation indicating that the luncheon was "hosted by Girardi Keese."

PRIVILEGED / WORK PRODUCT                                    **30** | P a g e

**Ex. 5:31**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

---

### Saturday, September 12, 2009

11:30 AM - 1:30 PM    **California Judges Association (CJA)/State Bar Board of Governors**
Swearing-in Ceremony and Installation Luncheon
Lunch hosted by Girardi Keese.  RSVP required.  *Use the Annual Meeting Pre-registration Form to reserve your tickets.*

---

Miller joined the State Bar's Board in 2006 after being elected according to the election structure that existed then.  At that time, Miller reported that Girardi was a member of a group of prominent attorneys who would make endorsements for Board member elections, and Miller discussed his intention to run for a Board seat with Girardi before announcing his candidacy and seeking an endorsement from the group.  Miller stated that although Girardi was supportive of Miller's decision to run for President in 2009, Girardi did not campaign on Miller's behalf.  Miller told us that he never had any discussions or communications with Girardi about State Bar issues while Miller was on the Board.

Miller understood that he had disclosure obligations during the time he served on the Board, but told us that he did not report his attendance at Girardi events because Miller's association with Girardi Keese was open and apparent.

In 2012, as discussed above, after Miller left the State Bar and during a time period when Miller worked at Girardi Keese but had no formal relationship with the State Bar, Miller was part of a State Bar delegation on a trip to Mongolia with Layton and Dunn.

We understand that all State Bar Board members were required to complete Forms 700.  However, the State Bar has no record of any Forms 700 completed by Miller.

There were approximately 11 Girardi cases opened while Miller was on the Board.  We understand based on review of case files and documents that OCTC referred Girardi cases to SDTCs pursuant to Rule 2201 while Miller was President of the Board from 2009-2010.  We do not have any evidence that Miller had any involvement in the handling or resolution of Girardi cases during his time on the Board.

PRIVILEGED / WORK PRODUCT                                                    31 | P a g e

**Ex. 5:32**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

### *Sonja Oehler*

Sonja Oehler served as Dunn's executive assistant while Dunn was Executive Director of the State Bar, from 2010 to 2014. Oehler had been Dunn's assistant at the organization at which he was employed before moving to the State Bar, and Dunn negotiated for Oehler to continue serving as his assistant when he joined the State Bar. After the State Bar terminated Oehler's employment in November 2014, she filed a lawsuit against the State Bar. Oehler was represented by Girardi Keese in the litigation. Oehler asked Girardi personally to assist her in her dispute with the State Bar, and considers Girardi to have been her personal attorney.

In her role as Dunn's assistant, Oehler facilitated communications between Girardi and his office, and Dunn and his office. Oehler also communicated regularly with Layton, and sometimes with others with connections to Dunn and Girardi, including Rodriguez. In her role as Dunn's assistant, Oehler received a complaint made to Dunn that Layton was inappropriately interceding in a State Bar case against Girardi. Oehler claimed to have no memory of this.

During her sworn deposition, Oehler was asked about Layton's role in the Executive Director's Office, where the two of them worked. Oehler did not provide any details about Layton's activities, stating that she did not recall anything about what Layton did other than "attend meetings." When pressed for details about the meetings, she was unable to provide any. Despite repeated questioning, Oehler did not provide any further details about what Layton did while the two of them worked together for Dunn in the Executive Director's Office. Oehler stated that she has maintained a relationship with Layton since they left the State Bar and they speak occasionally.

In 2014, before Dunn was terminated, Oehler emailed the Foundation for Democracy and Justice to inform it that Girardi would be making a $25,000 donation, and telling the Foundation that Dunn requested that correspondence related to Girardi's donation be routed through Oehler, so that Oehler could "ensure it gets to the right person at the law firm."

We found that while employed at the State Bar, Oehler received gifts and things of value from Girardi and Girardi Keese. For example, in 2012, Oehler admitted to attending Girardi's holiday party in Las Vegas with her daughter and Dunn. In addition to the party itself, Oehler told us that her accommodation costs at the Wynn as well as tickets for a concert at the Venetian were covered by Girardi Keese.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:33**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

During her sworn deposition, Oehler was asked if she received gifts and other items of value from Girardi and Girardi Keese, and she answered no. After reviewing emails that we showed her, Oehler admitted that she had attended a conference in Las Vegas, and a couple of lunches at Morton's and the Jonathan Club, and holiday parties, and that Girardi likely paid for these. When specifically asked if she had received concert tickets from Girardi, she said that she had not, until she was shown an email from her personal email account indicating otherwise. Later in the deposition, Oehler admitted that she had also flown on Girardi's private plane and stayed at the St. Regis Hotel in Washington, D.C. at Girardi's expense. Oehler then disclosed that in addition to the concert tickets, she also received tickets to a basketball game from Girardi, though she could not recall the time frame for when she received the basketball game tickets and it may have been after she left the State Bar. Oehler admitted that she did not disclose any of this on any Form 700 she submitted to the State Bar.

Oehler did submit Forms 700 for the years 2012 and 2013. The State Bar has no record of Forms 700 for Oehler for the years 2010 or 2011; the form for 2013 appears to also cover 2014, but seems to be incomplete. All of Oehler's Forms 700 are dated as having been completed in 2014, and the 2013 form is not signed. During her sworn deposition, Oehler admitted that she knew that "gifts and travel" were required to be disclosed on Forms 700. Nevertheless, Oehler did not disclose any gifts, travel, or other things of value from Girardi or Girardi Keese in any of the Forms 700 on file at the State Bar.

We are unaware of Oehler having any involvement in the handling of any discipline cases involving Girardi.

### *Luis Rodriguez*

Luis Rodriguez served on the State Bar Board from 2010 through 2014 and as its President from 2013 to 2014.[6] Rodriguez initially resisted participating in an interview for purposes of this investigation, and it took multiple attempts to effectuate service on him. After we informed Rodriguez, through his attorney, that the State Bar would seek to compel his compliance with the subpoena issued for his

---

[6] After leaving the State Bar, Rodriguez made a demand for $100,000 to the State Bar for alleged defamation. Unlike Layton, Dunn, Oehler, and Noonen, however, Rodriguez did not actually file suit against the State Bar.

Ex. 5:34

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

testimony, Rodriguez agreed to a limited interview in which he disclosed that he met and socialized with Girardi multiple times during his time with the State Bar.

When asked about the nature of his interactions with Girardi during his time with the State Bar, Rodriguez stated that they were limited to social interactions at events like county bar dinners or political fundraisers, which he recalled happened a couple of times a year. Rodriguez stated that he was not aware of any disciplinary case against Girardi pending at any time during which he was involved with the State Bar. During the course of the interview, Rodriguez added that he had attended two holiday luncheons thrown by Girardi. Another witness reported seeing Rodriguez at Girardi's table at Morton's, during which time Rodriguez and Girardi discussed Rodriguez possibly serving as the Public Defender. In 2013, Rodriguez was interviewed by Girardi on his AM radio show (Champions of Justice) about Rodriguez serving as State Bar President. Email correspondence suggests Rodriguez and Girardi may have been involved in jointly advocating for certain political candidates, but Rodriguez had no recollection of the discussions.

When asked if he had flown on Girardi's private jet during his time with the State Bar, Rodriguez confirmed that he took two trips on Girardi's private plane while with State Bar—one within California and one to Washington, D.C. Girardi was on the plane on both occasions, and Dunn was also on the plane on one occasion. When asked if the plane rides were disclosed to the State Bar, Rodriguez stated that they were reported to the Executive Director's Office, which did not express any concern. The Executive Director at the time was Dunn, who, as noted above, was also on Girardi's plane with Rodriguez. During his sworn deposition, Dunn stated that as Executive Director, he reported to the State Bar's Board, of which Rodriguez was a member and then President.

Rodriguez knows Layton, Greenberg, Noonen, Dunn, Oehler, and Miller, but the full extent of Rodriguez's relationships with these individuals is unknown. One witness reported that Rodriguez had a close relationship with Layton, Dunn, and Miller. It is unclear whether Rodriguez interacted with Girardi indirectly, for example through Layton. For instance, Rodriguez denied having spoken to Girardi about the State Bar President position during his campaign for President, but acknowledged that he likely spoke to Layton about it. Rodriguez could not recall the contents or context of his discussion with Layton about his campaign. A former Board member and President of the Board recounted to MTO in 2014 and then to us that Rodriguez told him he should meet with Layton to discuss the role of State Bar President, and when the witness arrived at the meeting, Girardi was present. Rodriguez told us that he did not know the nature of Layton's relationship

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

with Girardi, but that he recalled that Layton and Girardi were together at almost every social occasion. Rodriguez knew Layton before Rodriguez joined the State Bar.

According to records we received from Girardi Keese, Rodriguez appears to have received three payments totaling $3,000 from Girardi Keese while with the State Bar, in the form of yearly $1,000 checks in 2011, 2012, and 2013 (in December each time).

**Check History Report**
**Sorted By Check Number**
**Activity From: 1/1/2000 to 12/31/2020**

Girardi & Keese (GIR)

Bank Code: G  Torrey General Account

| Check Number | Check Date | Vendor Number | Name | | Check Amount | Check Type |
|---|---|---|---|---|---|---|
| 202633 | 12/21/2011 | 1RODLUI | LUIS RODRIGUEZ | | 1,000.00 | Manual |
| 209938 | 12/28/2012 | 1RODLUI | LUIS RODRIGUEZ | | 1,000.00 | Auto |
| 216391 | 12/23/2013 | 1RODLUI | LUIS RODRIGUEZ | | 1,000.00 | Manual |
| | | | | Bank G Total: | 3,000.00 | |
| | | | | Report Total: | 3,000.00 | |

Rodriguez did not disclose these payments to us during his interview and we were not aware of them at the time of his interview. Rodriguez was asked whether he witnessed Girardi, Girardi Keese, or any affiliate of Girardi offer anything of value to anyone affiliated with the State Bar, and answered no. After discovering the payments, we provided Rodriguez the opportunity to reinterview to explain the newly found evidence, but Rodriguez, through his attorney, declined to do so.

We understand that all Board members were required to complete Forms 700. However, the State Bar has no record of any Forms 700 completed by Rodriguez.

We do not have any evidence that Rodriguez had any involvement in the handling or resolution of Girardi cases during his time on the Board.

### *Other Reported Board Connections*

As discussed in Appendix A, prior to 2018, State Bar Board members were not appointed but instead were elected by licensed lawyers in California. We were informed that local committees of prominent lawyers would meet to consider candidates and make endorsements for these elections, and Girardi was a member

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:36

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

of the local committee in Los Angeles. We understand that many candidates would meet with the local committee to seek its endorsement for the election, like Miller did when he sought and obtained a Board seat in 2006. Emails from Dunn's time as Executive Director appear to indicate that Girardi remained involved in suggesting possible candidates for the State Bar's Board years later.

It is unclear what, if any, influence Girardi was able to exert on State Bar cases against him through the relationships he built by participating the selection process for State Bar Board members, but one former OCTC investigator informed us that a Board member may have intervened in a case against Girardi in the 1990s. This allegation, however, could not be corroborated.

According to the witness, an OCTC investigator employed by the State Bar in the 1990s, ▆ recalled working on a case against Girardi that ▆ believed warranted discipline. The investigator ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆ later learned that the prosecution would not result in any public discipline. According to the witness, ▆▆▆▆▆▆



Girardi was accompanied by a sitting member of the State Bar's Board of Governors (as the Board of Trustees was formerly known). The witness could not recall which member of the Board it had been, but believed it was a male. According to the investigator, ▆▆▆▆▆▆▆▆▆▆ ▆▆▆ which was unusual. According to the witness, although it was not said expressly, the witness got the impression that because of interest in the case from the Board and the CTC, the case would not result in public discipline to Girardi.

The OCTC attorney and ▆ supervisor were interviewed about this allegation, but neither recalled it having happened, and neither recalled ever having been approached by a CTC or member of the Board about a specific case against Girardi. The CTC denied knowing that there were any cases against Girardi pending during his time as CTC and stated that he could not have interceded in a case he was not aware existed. We are not aware of any connections between the CTC at that time and Girardi. Acknowledging that the passage of time can affect people's memories and the availability of documentary evidence, we reviewed the case file and other available evidence, and asked interviewees about the allegation, but were not able to corroborate the OCTC investigator's allegation.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:37

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

## Connections with OCTC and the State Bar Court

Over the years, Girardi appears to have had a number of connections to OCTC attorneys and investigators, as well as State Bar Court judges. We did not find evidence of any material connections between Girardi and any current OCTC employees or State Bar Court judges.

### *Murray Greenberg*

Murray Greenberg worked in OCTC from 1989 to February 2019.[7] Greenberg started as an investigator in 1989, then moved into an attorney position after passing the bar in 1989. He worked in several sections of OCTC during his tenure, including a managerial role in the Intake Unit. We deposed Greenberg in January 2023, but he asserted his Fifth Amendment right and refused to answer any questions about his work at the State Bar and his connections to Girardi and Layton and largely limited his testimony to his post-Bar work. As such, the following discussion of Greenberg's connections to Girardi is based on documentary evidence and statements from other interviewees.

Greenberg appears to have had a many-year relationship with Girardi, although we do not know how or exactly when they met. According to documentary evidence, Greenberg knew Girardi by at least June 2008, as Greenberg presented a gift to Girardi that Girardi described in June 2008 as "extraordinary" in a thank you note.

---

Dear Murray:

I have never received such an extraordinary gift. It's massively appreciated.

The nice thing about a gift like this is you think of the guy who gave it to you every time you look at it.

With kind personal regards,


THOMAS V. GIRARDI
TVG/kc

---

[7] Due to funding issues, the State Bar terminated the majority of its staff from 1998-1999. To the extent individuals we discuss in this section were part of the 1998 termination and then were rehired in 1999, our discussion of time spent at the Bar will not reflect that brief termination.

PRIVILEGED / WORK PRODUCT                                        37 | P a g e

Ex. 5:38

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Based on what we learned from a former Girardi Keese employee, it appears that Greenberg's gift giving was not a single occurrence. The former Girardi Keese employee told us that Greenberg gave her and Girardi bottles of wine maybe twice a year over many years.

According to the sworn testimony of a witness who worked at Girardi Keese, Greenberg met with Girardi at the Girardi Keese offices while he was employed by the State Bar with some frequency. The witness's recollection was that Greenberg requested meetings with Girardi, then met with him for about 30 minutes per session. The witness did not know what Girardi and Greenberg discussed during these closed-door meetings. We also reviewed emails corroborating that Greenberg went to the Girardi Keese office while at the State Bar. Additionally, we heard from a witness that Greenberg went to lunches with Girardi at Morton's, and our understanding based on witness interviews is that Girardi paid for those lunches, although we do not have any evidence of that apart from witness testimony.

While employed by the State Bar, Greenberg was invited to parties thrown by Girardi and Girardi Keese, such as Superbowl, Christmas, and Thanksgiving parties. He was also included on Girardi Keese's guest lists for events such as the Jack Webb Award dinner and the National Italian American Foundation West Coast Gala. Emails also show that Greenberg accepted two tickets to an Adele concert in 2016, and an unknown quantity of Santana tickets in January 2019 from Girardi Keese.

We also have documentary evidence showing that Greenberg spoke on panels related to professional ethics and discipline at the annual CAALA convention in Las Vegas in 2007, 2009-2012 and 2018, and a former Girardi Keese employee told us that Greenberg attended the parties thrown by Girardi during the event. Greenberg's attendance of the 2014 CAALA convention was a source of conflict between Dunn and CTC 2, as discussed above.

Additionally, emails collected from Girardi Keese suggest that Greenberg referred a legal malpractice case to Girardi Keese while he was still employed by the State Bar. We do not know how he became aware of the case or if he received a referral fee from Girardi Keese.

Greenberg submitted Forms 700 for several years. He submitted a Form 700 on March 11, 2014 upon assuming the position of Senior Trial Counsel on January 11, 2014 and additional Forms 700 as follows: March 2, 2015 (for the period January 1-December 31, 2014); March 14, 2016 (for the period January 1-December 31,

PRIVILEGED / WORK PRODUCT                                      **38** | P a g e

**Ex. 5:39**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

2015); March 21, 2017 (for the period January 1-December 31, 2016); and March 5, 2018 (for the period January 1-December 31, 2017). On February 13, 2019, Greenberg submitted a Form 700 upon his departure from the State Bar. For all applicable years, we understand that Greenberg was required to disclose all "gifts, loans, and other payments received" from sources subject to the regulatory, permit, or licensing authority of the State Bar. On all of these Forms 700, Greenberg signed under penalty of perjury that he had no reportable interests. However, based on the documentary and testimonial evidence summarized above, it does not appear that this was accurate for all years. As described above, emails that we collected indicate that, at the very least, Greenberg accepted concert tickets from Girardi Keese in 2016 and January 2019.

After he retired, Greenberg appears to have performed work that supported Girardi. In April 2019, two months after his retirement, Greenberg signed a sworn declaration on behalf of Girardi Keese related to the use of client funds, which included the statement, "[a]ll of their [Girardi Keese's] conduct were [sic] in accord with the Rules of Professional Conduct of the State Bar and was totally appropriate."

**DECLARATION OF MURRAY GREENBERG**

I have spent 30-1/2 years with the State Bar with extensive background in analyzing appropriate conduct of lawyers and evaluation of moral character, violations of honesty and integrity and violation of trust account rules and regulations.

My experience includes instructing State Bar trial counsel on a wide variety of topics involving client trust funds. There are several issues the Court should consider in this case:

4.  The law firm of Girardi|Keese followed the law by holding these funds in a trust account in which the small amounts of interest went to the State Bar pursuant to the Business and Professions Code section 6211.

5.  All of their conduct were in accord with the Rules of Professional Conduct of the State Bar and was totally appropriate.

6.  The law firm itself received no benefit from any interest under fees or costs advanced.

7.  Every penny went directly to the State Bar according to the rules of the State Bar regarding interest on lawyers trust accounts.

Ex. 5:40

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

In 2020, Greenberg's name also appears in connection with advocacy on Girardi's behalf in an active State Bar case. ███████████ ████████████████████████████████████████████████ Greenberg did not invoke his Fifth Amendment rights with regards to this topic during his deposition. He testified that he was paid to consult with Girardi's lawyer to assist "in providing some information with respect to the particular rule or procedure that was involved" in the State Bar proceeding.

We have evidence that Greenberg was involved in closing six Girardi cases without public discipline, as well as cases opened against ███████████ and ████████████████. Given his connections to Girardi, Greenberg had a conflict-of-interest, or, at the very least there were substantial doubts about his impartiality, and thus he should have recused himself from any involvement in the cases. We conclude that Greenberg's connections to Girardi taint the handling of these cases and the discretionary decisions to close them without public discipline.

In addition, we located evidence appearing to show that Greenberg, while employed by the State Bar, had an off-the-record conversation with an attorney who represented Girardi in relation to Girardi's disciplinary matters. Based on the evidence, it appears that Girardi's attorney discussed what appears to be a Girardi disciplinary case with Greenberg, and Greenberg reportedly told Girardi's attorney that the case should be dismissed. Girardi's attorney asked Greenberg to submit a declaration in support of Girardi, but Greenberg was unwilling to do so. The exact case that they were discussing is unknown, and based on our evidence, it does not appear that Greenberg was assigned to it.

Below, we discuss a selection of cases related to Girardi that Greenberg was involved in resolving. The following is based on materials from the State Bar's confidential case files unless otherwise noted.

**Case 11-18676.** In May 2011, the State Bar opened Case 11-18676 against Girardi based on ongoing litigation against Girardi by former clients alleging misappropriation of client funds. On June 7, 2011, OCTC ATTORNEY 1, ███████████████████████████████████████████████████ also flagged the case as a 2201 case, which we understand to indicate the presence of a conflict within OCTC. ███████████████████████████████████████████.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:41

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

The case was not sent out to an SDTC. According to a terse memorandum in the file authored by Greenberg and dated July 5, 2011, he stated that ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Based on the information available to us, it does not appear that a new State Bar case was ever opened regarding the facts underlying this case.



When interviewed, OCTC ATTORNEY 1 did not recall working on this case and was unable to answer any of our questions about it. Greenberg refused to answer any questions about State Bar cases, asserting his Fifth Amendment right. Lazar opined that the case could have moved forward despite the ongoing court proceedings but that it was within the discretion of State Bar policies to close the case pending the outcome of a Superior Court action.

The memorandum and closure are suspicious for multiple reasons.

*First*, it is concerning to us that, even after the case was flagged as a 2201 conflict case, OCTC staff was involved in deciding to close the case. When we asked OCTC ATTORNEY 1 about this, ▇▇ said that the practice was to only send a case to an SDTC if OCTC staff thought there was something to prosecute. This may have been permissible under OCTC policy at the time, but even if permissible, to afford this level of discretion to a conflicted OCTC seems to violate the common law prohibition regarding government attorneys' conflicts-of-interest. The State Bar has since rectified this obvious policy flaw by revising Rule 2201 to prohibit OCTC staff from disposing of conflict cases.

Ex. 5:42

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

*Second*, putting aside the general OCTC conflict, given Greenberg's connections to Girardi, he should have been recused from working on the case in any capacity, and he should not have been authoring the ████████████ for the case.

*Third*, it is hard to understand why Greenberg intervened in this case █ ████████████████████████████████████████████████████ ████████████████████████████████. It is unclear why Greenberg intervened in this case in the first instance and why he drafted the ████ ████████ for the case.

**Cases** ████████████████████████ In 2012 and 2013, three complaints were made to the State Bar about ████████ RESPONDENT, all related to the same litigation. ████████████████████████████████, we discovered that Greenberg was communicating from his personal email address with █ RESPONDENT about these cases. According to the case files, Greenberg was assigned to one of these cases ████████, one of the cases was assigned to an attorney whom he supervised ████████, and the other case was assigned to different OCTC personnel, although Greenberg still appears to have been involved in it in some capacity.

In April 2013, █ RESPONDENT emailed correspondence related to the cases to Greenberg's personal email address. Greenberg—using his personal email—and █ RESPONDENT exchanged several emails about the State Bar matters. In one exchange, Greenberg forwarded materials from the complaining witness from his State Bar email account to his personal email account. He then sent those materials from his personal email account to █ RESPONDENT. We could not locate the correspondence between █ RESPONDENT and Greenberg's personal email in the case files for these cases; we only had access to them from another source.

We asked █ RESPONDENT about █ off-the-record communications with Greenberg. █ admitted to knowing Greenberg and said that █ believed █ met Greenberg at a CAALA convention in Las Vegas. █ told us that █ did not recall how █ got Greenberg's personal email or why █ reached out to Greenberg personally. █ RESPONDENT also denied that █ interactions with Greenberg were anything but standard responses to requests from Greenberg. Greenberg refused to answer any questions about cases he worked on at the State Bar, instead asserting his Fifth Amendment right against self-incrimination.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:43**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Regardless of the propriety of the closure of these cases (and Lazar opined that closure without disciplinary action was appropriate), Greenberg should not have been emailing ███ RESPONDENT about the State Bar cases using his personal email account. We asked Lazar to review these case files and the correspondence between Greenberg's personal email and ███ RESPONDENT, and she explained as follows:

> It is not normal practice for OCTC employees to provide any persons involved in a State Bar matter personal contact information for a State Bar employee. Not only does this create a risk of inadvertent disclosure of confidential State Bar information, but also could create a risk to the safety of a State Bar employee through actions taken by a disgruntled Respondent or complainant. OCTC cannot require all staff attorneys to limit the information on the State Bar's website in the attorney's personal profile to a State Bar email address, but disclosure of such information on a professional website would certainly be ill-advised.
> How and why Respondent was provided with Greenberg's private email is not disclosed in the file. By engaging in these communications, it could have resulted in confidential information being accidently accessed by a hack to Greenberg's private server or some other individual not employed by the State Bar having access to this email account. More troubling is the fact that there is no way of knowing whether or not there were additional emails between Respondent and Greenberg that were not copied and put into the State Bar file.
>
> An additional area of concern is the appearance of bias in favor of the Respondent due to the fact that only Respondent was provided with Greenberg's personal email information whereas none of the complainants involved in the matter were treated similarly.

**Case** ███████     During the investigation, we received information about a State Bar case against a ██████████████ MEMBER that was closed without any public discipline under questionable circumstances. ████████████ MEMBER is still a licensed attorney in California.

In 2014, a witness ("Reporting Witness") reported ████████ MEMBER ████████████████████████████████████████████ The Reporting Witness told us that ████ then received a telephone call from the OCTC attorney prosecuting the case, who said that even though the ████████████ MEMBER had clearly lied to the State Bar during the investigation, the OCTC attorney was closing the case without any public discipline because ███ felt pressured to do so by ███ supervisor. The case was then closed.

PRIVILEGED / WORK PRODUCT                                        43 | P a g e

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:44**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT



We interviewed the OCTC attorney who investigated the case. ███ told us that ████████████████████████████████████████████████████████████████████████ ████████████████████ The OCTC attorney told us that Greenberg directed ███ to "settle" the case or "make it go away." The OCTC attorney said this was the only case ██ ever worked on where a supervisor directed ███ to close a case in this manner.

Greenberg's involvement in the case is confirmed in the case file, ████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████ As noted, we were not able to ask Greenberg about this case because he invoked his Fifth Amendment right against self-incrimination.

The ████████████████ MEMBER was interviewed but disclaimed any memory of the case, which ██ attributed to a medical issue affecting memory. ██ stated that ██ has not been close with Girardi for twenty years and had no knowledge of Girardi's connections to the State Bar or of any use of those connections to help in resolving ██ case.

### *Thomas Layton*

Thomas Layton started working at the State Bar in 1999 as an investigator in OCTC. As discussed above, CTC 2 told us that Executive Director Dunn moved Layton into the Executive Director's Office in 2013 after she planned to give Layton a negative performance review. Layton worked there until he was placed on leave in November 2014 and terminated in 2015. He reported to Dunn, and while his official title was Public Information Officer, Layton told us that was not his position. Instead, he considered himself to be the "law enforcement and judicial liaison." Layton reportedly had frequent lunches with Girardi during the work week at Girardi's favorite restaurants. He was also reportedly spotted with regularity at Girardi Keese's offices, where he was known by many people who worked there.

Girardi's connections to Layton run deep and wide. One witness described them as having a "father-son relationship," although Layton disputed that characterization. Girardi is the godfather to one of Layton's children and employed

---

████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:45

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

another two of them while Layton worked at the State Bar. Layton admitted to us in a sworn deposition that Girardi was his "very good friend." Layton told us that he has known Girardi for about 20 years and that he met him while he was doing law enforcement endorsements for judicial and political positions.[9] Layton stated that he last spoke to Girardi just a few days before we deposed him in December 2022.

In addition to the personal connections, we found evidence indicating that Girardi, through his law firm, gave Layton and his family cash and things of value that we estimate total over a million dollars. This includes cash as well as payment for Layton's expenses, car payments, travel, legal representation, and meals. Many of these benefits were provided to Layton while he worked at the State Bar. Below is a summary of notable things of value that Girardi provided Layton during his State Bar employment.

- **Payments to Layton and His Wife.** Based upon Girardi Keese financial records, the firm paid Layton and his wife over $600,000 while he was employed by the State Bar. Some of these payments were made out to Layton directly, some to his wife, and the bulk to an entity named "Layton & Layton," which Layton stated was a business he and his wife had.

  o *Payments to Layton.* Girardi Keese records show the firm paying Layton over $153,000 from 2005-2011, while he was employed by the State Bar and working in OCTC. Layton also appears to have received a 1099 tax form from Girardi Keese in 2009 for $50,000 paid to him during the year. When asked about these payments and the 1099 from Girardi Keese, Layton had no explanation. For example, when asked why he received a check for $25,000 from Girardi in 2006, Layton said that he did not know why.

---

[9] Before working at the State Bar, Layton was a Sheriff's Deputy for Los Angeles County.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

**Check History Report**
**Sorted By Check Number**
**Activity From: 1/1/2000 to 12/31/2020**

Girardi & Keese (GIR)

Bank Code: A Operating - CBB #0045/0312

| Check Number | Check Date | Vendor Number | Name | Check Amount | Check Type |
|---|---|---|---|---|---|
| 122513 | 10/4/2005 | 1LAYTON | THOMAS LAYTON | 1,100.00 | Manual |
| 125499 | 4/7/2006 | 1LAYTON | THOMAS LAYTON | 660.80 | Manual |
| 129177 | 11/16/2006 | 1LAYTON | THOMAS LAYTON | 50,000.00 | Manual |
| 133669 | 8/30/2007 | 1LAYTON | THOMAS LAYTON | 1,800.06 | Manual |
| 137368 | 4/15/2008 | 1LAYTON | THOMAS LAYTON | 25,000.00 | Manual |
| 138065 | 5/19/2008 | 1LAYTON | THOMAS LAYTON | 777.00 | Manual |
| 138065 | 5/19/2008 | 1LAYTON | THOMAS LAYTON | 777.00- | Reversal |
| 141657 | 12/8/2008 | 1LAYTON | THOMAS LAYTON | 5,000.00 | Manual |
| 144238 | 4/23/2009 | 1LAYTON | THOMAS LAYTON | 50,000.00 | Manual |
| 149785 | 1/7/2010 | 1LAYTON | THOMAS LAYTON | 1,352.28 | Manual |
| 154819 | 9/10/2010 | 1LAYTON | THOMAS LAYTON | 3,373.07 | Manual |
| 159240 | 4/18/2011 | 1LAYTON | THOMAS LAYTON | 10,000.00 | Manual |
| 159303 | 4/21/2011 | 1LAYTON | THOMAS LAYTON | 5,000.00 | Manual |
| | | | **Bank A Total:** | 153,286.21 | |

o  *Payments to Rose Layton.* Girardi Keese records show Layton's wife, Rose Layton, a professor of clinical accounting, being paid $2,500 by Girardi Keese in 2002 (while Layton was working in OCTC) and $4,800 in 2013 (while Layton was working in the Executive Director's Office). We asked Rose Layton about these payments, and she could not provide any details regarding them, other than saying that she performed services for Girardi Keese that may have included research.

**Check History Report**
**Sorted By Check Number**
**Activity From: 1/1/2000 to 12/31/2020**

Girardi & Keese (GIR)

Bank Code: A Operating - CBB #0045/0312

| Check Number | Check Date | Vendor Number | Name | Check Amount | Check Type |
|---|---|---|---|---|---|
| 100431 | 5/28/2002 | 3LAYTON | PROF. ROSE LAYTON | 2,500.00 | Manual |
| | | | **Bank A Total:** | 2,500.00 | |

**Check History Report**
**Sorted By Check Number**
**Activity From: 1/1/2000 to 12/31/2020**

Girardi & Keese (GIR)

Bank Code: G Torrey General Account

| Check Number | Check Date | Vendor Number | Name | Check Amount | Check Type |
|---|---|---|---|---|---|
| 213810 | 8/1/2013 | 3LAYTON | ROSE LAYTON | 4,800.00 | Manual |

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:47

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

- o *Payments to Layton & Layton.* According to Girardi Keese financial records, the firm paid "Layton & Layton"[10] $461,000 from 2006 to 2014 (all while Layton was working for the State Bar, with most of that money being paid while Layton was working in OCTC). During his deposition, Layton admitted that he was associated with "Layton & Layton." He told us that "Layton & Layton" provided services to Girardi Keese, mainly consulting services provided by his wife. However, he did not provide details of the type of services provided by Layton & Layton to Girardi Keese, and told us that he did not know what the services were.

  We also asked Rose Layton in a sworn deposition about the payments, and she claimed they were for unspecified services "related to the financial aspects of a case" that she provided to Girardi Keese, but told us that she could not give any examples of what this meant. When asked further, she said that the general type of work she did was "[p]robably defining things like – maybe like what potential income would be." She said she had no documentary evidence of the services she provided —no checks, no contracts, no tax forms, no correspondence, and no work product. She told us that she communicated orally with Girardi and hand-delivered her work product to him.

---

[10] We have not found any public record of a business called "Layton & Layton." Rose Layton told us that Layton & Layton was a fictitious business name registered in Los Angeles County, and that there was no official entity with that name.

PRIVILEGED / WORK PRODUCT                                    **47** | P a g e

**Ex. 5:48**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

**Check History Report**
**Sorted By Check Number**
**Activity From: 1/1/2000 to 12/31/2020**

Girardi & Keese (GIR)

Bank Code: A  Operating - CBB #0045/0312

| Check Number | Check Date | Vendor Number | Name | Check Amount | Check Type |
|---|---|---|---|---|---|
| 126357 | 5/26/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 126357 | 5/26/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00- | Reversal |
| 126358 | 5/26/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 126358 | 5/26/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00- | Reversal |
| 126434 | 6/1/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 126435 | 6/1/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 126509 | 6/5/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 126510 | 6/5/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 127676 | 8/4/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 128066 | 9/5/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 128502 | 10/2/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 129069 | 11/6/2006 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 131604 | 4/18/2007 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 132075 | 5/22/2007 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 132312 | 6/7/2007 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 138821 | 7/8/2008 | 3LAYLAY | LAYTON & LAYTON | 11,000.00 | Manual |
| 139676 | 8/22/2008 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 139677 | 8/22/2008 | 3LAYLAY | LAYTON & LAYTON | 25,000.00 | Manual |
| 140571 | 10/9/2008 | 3LAYLAY | LAYTON & LAYTON | 15,000.00 | Manual |
| 150030 | 1/25/2010 | 3LAYLAY | LAYTON & LAYTON | 30,000.00 | Manual |
| | | | **Bank A Total:** | **381,000.00** | |

**Check History Report**
**Sorted By Check Number**
**Activity From: 1/1/2000 to 12/31/2020**

Girardi & Keese (GIR)

Bank Code: G  Torrey General Account

| Check Number | Check Date | Vendor Number | Name | Check Amount | Check Type |
|---|---|---|---|---|---|
| 204738 | 4/9/2012 | 3LAYLAY | LAYTON & LAYTON | 50,000.00 | Manual |
| 211842 | 4/12/2013 | 3LAYLAY | LAYTON & LAYTON | 10,000.00 | Manual |
| 216829 | 1/17/2014 | 3LAYLAY | LAYTON & LAYTON | 5,000.00 | Manual |
| 300643 | 4/11/2014 | 3LAYLAY | LAYTON & LAYTON | 15,000.00 | Manual |
| | | | **Bank G Total:** | **80,000.00** | |
| | | | **Report Total:** | **461,000.00** | |

- **Girardi Keese Credit Card.** In 2011, it appears that Girardi provided Layton with a Girardi Keese American Express card. An internal Girardi Keese email suggests that, when Layton first received the card, he reportedly asked to have the name "Girardi Keese" removed from the face of the card.

> **Sent:** Tue May 10 18:07:19 2011
> **Subject:** I got Tom Layton's Gold Card. He just told me it cannot have GK on the card. Has to have only his name. Can you take care of it and I'll give you the card we received.

Layton admitted to us that he did not disclose that he had a Girardi Keese credit card to the State Bar. His wife claimed that she did not recall Layton having a Girardi Keese credit card. During the first day of his deposition,

PRIVILEGED / WORK PRODUCT

48 | P a g e

Ex. 5:49

Layton admitted to receiving a Girardi Keese credit card and using it for personal expenses. He further admitted that he did not pay the bills for the card, as the statements went directly to Girardi Keese. When asked to explain why Girardi Keese was paying for his personal expenses, he initially refused to answer, claiming "attorney-client privilege." Layton also said Girardi gave him the card as part of a confidential oral agreement with Girardi to resolve a dispute they had.

After we threatened to seek court intervention to compel answers to these questions, Layton agreed to come back for a second day of testimony. During this second day of testimony, Layton told us that he used the credit card for expenses related to driving Girardi, such as gas and meals. Layton vacillated between telling us that the reason he had the card was to cover Girardi-related expenses, and that Girardi gave him the card to compensate him for the mishandling of several personal legal matters. Layton's testimony on this point was difficult to understand.

We were unable to determine how much Layton charged to his Girardi Keese credit card while he was employed by the State Bar. In the Girardi Keese Chapter 7 Trustee's lawsuit against Layton, the Trustee alleges that Layton charged $315,114 on his Girardi Keese American Express card between December 18, 2013 and December 18, 2020, which is approximately $45,000 a year.

- **Car Payments.** Layton testified that Girardi paid for Layton's leased cars (a BMW X5, a BMW 5 Series, and a Cadillac Escalade), during a time period including when Layton was employed by the State Bar and after he was terminated. While Layton was unable to pinpoint the year Girardi started making his car payments, we have documentary evidence suggesting Girardi Keese was making payments in 2011. In his first day of testimony, Layton said Girardi paid for his cars pursuant to his confidential, oral agreement with Girardi. In his second day of testimony, Layton said Girardi paid for his cars because Layton was driving him around. Layton admitted Girardi had a personal driver during this time, and that he was employed at the State Bar for some of this time. When asked, Layton's wife said that she did not know Girardi paid for Layton's cars.

- **Loan Guarantee and Payments.** Girardi guaranteed a bank loan of $150,000 to Layton and, through his law firm, made payments on the loan. Based on documents we obtained, Girardi appears to have guaranteed

**Ex. 5:50**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

the loan for Layton in 2006, and Girardi Keese seems to have made payments on the loan in at least 2007, 2011, 2012, and 2013.  Layton admitted that Girardi guaranteed the loan and made payments on the loan, and he told us that the loan was for home renovations.  Layton alternated between asserting that Girardi cosigned the loan as part of the confidential agreement that he could not discuss, and that Girardi made payments on the loan because the bank did "something wrong."  Either way, Layton admitted that Girardi made payments on the loan.

▪ **Meals**.  Layton ate with Girardi at restaurants such as Morton's, The Palm, and the Jonathan Club, and Layton admitted that Girardi paid for most of these meals.  We have emails showing that on a couple of occasions Layton paid for meals and then was reimbursed from Girardi and/or Girardi Keese, although Layton told us that he did not remember that occurring.  Further, one witness reported to us that Layton had "signing authority" for Girardi at Morton's, so he could sign the bill, which would be added to Girardi's tab.  We were not able to corroborate this account.

▪ **Private Jet Flights.**  Layton flew on Girardi's private jet while he worked at the State Bar.  We have documentary evidence suggesting that Layton flew on Girardi's private jet in at least 2012, 2013, and 2014.  For at least one of these flights, it appears Layton intended to or did actually bring family members.  During his deposition, Layton admitted to flying on Girardi's jet, and he admitted that it was "possible" that he flew on Girardi's private jet to and from the CAALA conventions in Las Vegas.  Layton also admitted that he did not pay for any portion of his flights on Girardi's private jet.

▪ **Other Travel Expenses.**  Girardi also appears to have paid for some of Layton's personal travel.  For example, in 2011 (while Layton was working for OCTC), it appears that Girardi paid for four rooms for Layton at the Orleans hotel in Las Vegas, and a witness reported to us that this was a trip that Layton took with his parents.  The witness informed us that Girardi was not involved in this trip, other than by paying for the accommodations.  This witness also informed us that Girardi paid for other personal trips for Layton, and Layton admitted to this in his deposition.

▪ **Tickets.**  Layton accepted tickets from Girardi Keese for box seats at the Staples Center for events such as concerts and sports games.  During his interview, Layton admitted to accepting tickets to a "few" Lakers and Clippers games.  A witness reported seeing Layton and his son in the Girardi

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:51**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Keese box during an NBA game in 2001. In 2013, Layton emailed Girardi's assistant to request ten Rose Parade bleacher seats for his entire family. We do not have evidence of whether Girardi agreed to this request.

> **From:** Thomas Layton < ████████████ >
> **Sent:** Wed, 27 Nov 2013 11:44:22 -0800
> **To:** ██████████ < █████ @girardikeese.com>
> **Subject:** Rose parade
>
> My son ████ is marching in the Rose Parade. Can we get 10 bleacher seats. Oort whole family would like to watch

- **Charitable Contributions.** Additionally, Layton appears to have asked Girardi Keese for money to support his participation in charity golf tournaments or attendance at charity dinners. In 2012, Layton forwarded Girardi's assistant an email regarding information concerning a charity dinner and wrote, "Can I get some $$."

> **From:** "Layton, Thomas" <Thomas.Layton@calbar.ca.gov>
> **Sent:** Wed, 10 Oct 2012 18:42:42 +0000
> **To:** ██████████ < █████ @girardikeese.com>
> **Subject:** FW: Reserve Forces Bureau Annual Recognition Dinner - October 25, 2012 - California Commerce Casino
> **Attachments:**
> · RFB Sponsor Brochure 2012.pdf *(745 kb)*
>
> Can I get some $$

Similarly, in 2013, Layton forwarded a flyer for a golf tournament to Girardi's assistant, writing "For abused kids. Can I get $1,500."

> **From:** "Layton, Thomas" <Thomas.Layton@calbar.ca.gov>
> **Sent:** Thu, 25 Apr 2013 00:13:18 +0000
> **To:** ██████████ < █████ @girardikeese.com>
> **Subject:** FW: gold flyer
> **Attachments:**
> · 2013 SVB Golf Flyer.pdf *(331 kb)*
>
> For abused kids. Can I get $1,500

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:52

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

- **Parties.** Layton was invited to and attended many Girardi Keese parties, as well as parties that were thrown by Girardi. These parties included Christmas, Thanksgiving, and Fourth of July parties, as well as Superbowl parties. Some of these parties were "destination events," and Layton admitted to attending at least one such party in Mexico that Girardi paid for. Layton was also asked by Girardi Keese to review a Christmas party guest list for "additions or subtractions" to the list, which included State Bar employees Greenberg, Platel, and Dunn.

- **Gifts.** Layton admitted to receiving birthday and Christmas presents from Girardi but denied recalling any specific presents. According to another witness, Layton received a gift basket from Girardi for one Christmas that included a first edition book.

- **Legal Representation.** Girardi Keese represented Layton in four legal matters while he worked at the State Bar. We were aware of two of these matters, as they were publicly filed, but the other two matters do not appear to have become public, and Layton refused to disclose any further details about them. Layton informed us that Girardi Keese handled the four matters on contingency.

On top of the financial ties, Layton had additional connections to Girardi and Girardi Keese.

- **Girardi Keese's Employment of Layton's Children.** Girardi Keese employed two of Layton's children while he worked at the State Bar.

- **Layton's Involvement with Girardi Keese.** Layton spent time at the Girardi Keese office while he was working at the State Bar.

  Evidence shows that Layton referred cases to Girardi Keese while he was working at the State Bar, and he may have learned about at least some of these cases from information obtained on the job. During his deposition, Layton admitted to referring one case to Girardi Keese, but documentary evidence suggests that he referred at least three. Layton denied receiving any referral fees from Girardi Keese.

  Layton also appears to have assisted Girardi Keese attorneys with litigation while he was working at the State Bar. Girardi Keese emails show that

PRIVILEGED / WORK PRODUCT                                    **52** | P a g e

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Layton helped Girardi Keese attorneys procure law enforcement reports for their cases on more than one occasion.

Layton also appears to have helped Girardi Keese attorneys or employees with personal issues. As an example, in 2010, a Girardi Keese employee asked Layton for help with a traffic ticket "for no license plate and no proof of insurance," as well as a ticket for being on his cell phone. Layton said in response, "I will take care of it." Another Girardi Keese employee told us that she got a traffic ticket, and Girardi told her to "tell Layton, he can fix it for you."

▪ **Introduction of Girardi to State Bar Employees.** As part of our investigation, we heard from witnesses that Layton introduced Girardi to State Bar employees and invited people to events or meals with Girardi. For example, former CTC Mike Nisperos, discussed in further detail below, reported to us that he met Girardi through Layton. Former State Bar investigator Noonen told us that he met Girardi through Layton, although Layton denied ever seeing Noonen and Girardi together.

In addition, certain former State Bar employees reported to us that Layton approached them with offers of career help. CTC 2 reported to us that after she was appointed to a higher-profile position, Layton came into her office and stated that Girardi was asking about her and wanted to know what her career aspirations were, implying that he could help her. Layton denied that this occurred during his deposition. Former CTC Nisperos also reported that Layton offered Girardi's assistance to advance his career, and Girardi in fact made a donation to Nisperos' judicial campaign thereafter. Layton denied offering Girardi's assistance with a judicial campaign to Nisperos.

In 2014, Layton was required to submit a Form 700. Specifically, Layton was required to disclose all "gifts, loans, and other payments received" from sources subject to the regulatory, permit, or licensing authority of the State Bar.[11] On April 11, 2014, Layton signed, under penalty of perjury, a Form 700 for the period of January 1-December 31, 2013, stating that he did not have anything to report. However, it appears that this was not accurate, as we have evidence that, in 2013, Layton received at least the following items from Girardi and/or Girardi Keese:

---

[11] Layton was required to report "the name and address of each source of income aggregating five hundred dollars ($500) or more in value, or fifty ($50) or more in value if the income was a gift."

PRIVILEGED / WORK PRODUCT                                           **53** | P a g e

payments of $10,400; car payments of approximately $12,000; payment of credit card expenses; at least three flights on Girardi's private jet; at least four concert tickets; and many meals.[12]

When he started at the State Bar in 1999, Layton also signed a "Conflict of Interest Disclosure" form, which provided as follows:

We did not find any evidence that Layton ever amended this disclosure to disclose any work he performed for Girardi or Girardi Keese while employed by the State Bar.

Though Layton was an OCTC investigator from 1999 to 2013, we did not find any evidence that he was assigned to any Girardi cases. There was nothing in case files or other documents indicating Layton worked on any Girardi cases, and interviewees did not recall Layton officially handling any Girardi cases. During his deposition, Layton testified he did not work on any Girardi cases. Layton also testified that he did not take any actions to influence the resolution of a Girardi case or any State Bar case against other Girardi Keese attorneys. He further testified that he did not recall doing anything to influence resolution of a State Bar case against

_____

[12] During his deposition, Layton acknowledged that the signature on this Form 700 appeared to be his, but he denied having any memory of completing the form.

Ex. 5:55

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

an attorney at Girardi's request.  As such, we cannot establish that Layton's connections to Girardi directly influenced the outcome of any Girardi case.

Although we could not find any direct evidence of Layton's involvement on a particular Girardi case, there is evidence suggesting that he assisted Girardi in other ways with disciplinary matters.

- **Communications Regarding Complaints About** ▮▮▮▮▮▮ **Attorneys.**  A former OCTC employee told us that one of Girardi's attorneys for State Bar cases faxed Girardi's responses to State Bar correspondence to Layton, even though Layton was not assigned to the matters.  We did not find direct evidence corroborating this statement, but we did find evidence of a ▮▮▮▮▮▮ attorney sending information about ▮ pending State Bar case to Layton's personal email address, which does somewhat corroborate the witness's statement.  At the time this email was sent, Layton was working in the Executive Director's Office, not in OCTC, so he was not assigned to the case.  In other words, it does not appear that there was any legitimate reason for the ▮▮▮▮▮▮ attorney to forward the correspondence to him.  We asked Layton about this incident, and he stated that he did not recall receiving this information, and he did not know why the ▮▮▮▮▮▮ attorney sent him the case information.  He further asserted that he did not help the ▮▮▮▮ attorney "in any way" and that there was "nothing [he] could do."

  Given the evidence that Layton was communicating with attorneys about pending Girardi and ▮▮▮▮▮▮ cases while employed at the State Bar, we cannot rule out the possibility that Layton was providing some sort of assistance to Girardi and ▮▮▮▮▮▮ in the handling of disciplinary matters.  That said, we were unable to establish what that assistance may have actually been.

- **Girardi's Use of Layton to Dissuade Complaints and Resolve Disputes.**  We received a report suggesting that Layton helped Girardi to deter people from even filing complaints with the State Bar in the first place.  We were contacted by an attorney witness regarding ▮ interaction with Girardi, and the witness's account of this interaction follows.  The witness was co-counsel with Girardi and believed that he was inflating his costs to skim money from settlements.  The witness demanded an accounting and informed Girardi that ▮ would make a complaint to the State Bar if he did not provide such an accounting.  After ▮ made this demand, Girardi invited the witness to lunch at Morton's in Downtown Los Angeles.  After the witness arrived at the

Ex. 5:56

restaurant, Layton joined ███ The witness had never met Layton before and did not know he would be attending the lunch. Girardi then arrived and introduced Layton as his good friend who was the head of ethics investigations at the State Bar. Layton told the witness that Girardi was godfather to one of his children.[13] Girardi further—and falsely—told the witness that all State Bar complaints went through Layton.

The witness felt intimidated and threatened by this encounter, and ███ believed that it was intended to deter ███ from filing a State Bar complaint against Girardi. The witness did not ultimately receive the accounting from Girardi, and ███ did not file a State Bar complaint against him. During his sworn deposition, we asked Layton whether he ever spoke to an attorney who was threatening to file a complaint against Girardi before ███ filed it, and Layton responded that he did not believe so.

We also found evidence that Girardi referenced his connections with Layton to try to gain credibility in litigation. In 2014, ███████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████ While being deposed in the underlying litigation, Girardi stated that he thought the State Bar would agree with his opinion regarding the ethicality of certain actions, and when questioned further as to the basis for that belief, Girardi stated that he had given a hypothetical set of facts to Layton after "bump[ing] into him at some bar event." When asked if he had any other "dealings" with Layton, Girardi stated "no," which was clearly false.[14]

---

[13] Layton confirmed at his deposition that Girardi was the godfather to his child. The fact that this witness knew this intimate detail regarding Layton's and Girardi's relationship helps to corroborate the witness's account of events.

[14] ███████████████████████████████████████
███████████████████████████████

Ex. 5:57

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Q     Have you had other dealings with Mr. Layton?

A     No.

Q     Why did you call Mr. Layton?

A     Oh, I just bumped into him at some bar event.

Q     You knew him from before?

A     Oh, I knew who he is, sure.

- **Layton Reportedly Met with Attorney About State Bar Investigation at Girardi's Request.**   Further, Girardi also appears to have used his connection to Layton to give the impression to attorneys outside of Girardi Keese that he had the ability to influence the resolution of State Bar cases.  An attorney ("ATTORNEY A") who did not work at Girardi Keese but knew Girardi from previously acting as co-counsel, was the subject of client complaints ███████████████████████ made to the State Bar in ███████████. According to ATTORNEY A, ██ had the impression that the State Bar was taking the complaints against ██ very seriously and intended to pursue disciplinary charges against ████.

ATTORNEY A told us that ██ was concerned about how this would affect ██ career, so ██ discussed the State Bar cases with another attorney, who recommended that ██ contact Girardi, as he was known to have a good relationship with the State Bar.  ATTORNEY A reported that ██ then met in-person with Girardi and Layton to discuss the State Bar cases.  Girardi reportedly asked ATTORNEY A to describe the State Bar cases against ███ and to identify the State Bar personnel assigned to them.  Although Layton was in the room, he reportedly did not speak during the meeting and Girardi did not identify him a State Bar employee.

After the Girardi/Layton meeting, ATTORNEY A reported that the State Bar seemingly changed its position and offered to stipulate with ATTORNEY A to resolve the cases on more favorable terms, to which ATTORNEY A agreed. ████████████████████████████████████████ We have not found any evidence, however, that either Girardi or Layton was involved in the ██████████ or took any other steps to help ATTORNEY A get a favorable resolution of the cases.  We interviewed several of the OCTC attorneys who

PRIVILEGED / WORK PRODUCT                                                57 | Page

Ex. 5:58

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

handled the case, but all denied that Girardi or Layton had any involvement or influence.

### *Donald Miles*

Donald Miles was a State Bar Court judge from 2006 to 2018. He was appointed to that position by Governor Arnold Schwarzenegger for a six-year term, and he was then reappointed in 2012 by Governor Jerry Brown. Miles served as a judge in the hearing department of the State Bar Court.

A witness reported that Layton may have been involved in Miles's reappointment. In a sworn deposition, Miles stated that he did not remember speaking to Layton about his appointment or reappointment. Miles also disclaimed any knowledge of involvement by Girardi in his reappointment as a State Bar Court judge. We were unable to corroborate the report.

Miles does appear to have had ties to Layton and Girardi while he was on the State Bar Court bench. Miles admitted to having conversations with Layton while on the bench, and he explained that they did a number of "programs together" and that their sons went to college together. He further stated that he was "sure" that some of the conversations he had with Layton involved Girardi as a topic. Miles also admitted that he knew Girardi, and he interacted with him at Bar events.

Miles told us that he was a panelist at the CAALA convention several times, and that he attended the Girardi Keese party during the conventions. After further questioning about Girardi's parties, Miles stated that he remembered attending one additional party, a Girardi Keese Superbowl party. He said that he did not recall attending any other Girardi or Girardi Keese parties. Documentary evidence confirms that Miles was a panelist at the CAALA convention in at least 2009 and 2011-2014. There is no evidence that Miles flew on Girardi's private jet to the CAALA convention, and Miles denied doing so during his deposition. Additionally, a Girardi Keese guest list indicates that "Judge Don Miles" RSVPed "yes" to the Girardi Keese Christmas Eve luncheon in 2013 (which Layton, Dunn, and Rodriguez also apparently RSVPed "yes" for). "Don Miles," who we presume to be the Miles we are discussing, was included on Girardi Keese's guest lists for the 2013 Jack Webb Award dinner and the 2016 Inner City Law Center luncheon.

Miles completed Forms 700 in at least 2012 (for the period January 1-December 31, 2011), 2014 (for the period January 1-December 31, 2013), 2015 (for the period

**Ex. 5:59**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

January 1-December 31, 2014), 2017 (for the period January 1-December 31, 2016), and 2018 (for the period January 1, 2017-October 31, 2017). Miles disclosed that CAALA reimbursed him for travel expenses for the convention in Las Vegas in 2014 ($532) and 2013 ($500), but otherwise did not disclose any gifts, travel payments, advances, or reimbursements. We do not have any evidence suggesting that Miles omitted any gifts or things of value received from Girardi or Girardi Keese on his Forms 700.

Miles did not work on any filed Girardi cases as a State Bar Court judge because the State Bar never filed any cases against Girardi while Miles was on the bench. However, Miles did handle a pre-filing Girardi matter



iles told us that Layton did not have any *ex parte* communications about the case with Girardi, and that Layton did not communicate with him about the case.

When asked whether he had a conflict-of-interest that should have precluded him from handling ▮▮▮▮▮▮, Miles stated that he did not, because "[his] relationship with Girardi was not such that within the purview of being a conflict of interest that would require [him] to disclose a relationship or that would disqualify [him] from handling it; so [he] had no sense of any conflict." ▮▮▮▮▮ We thus did not find any evidence that Miles used his position to benefit Girardi. We also note that, in further discussion, he explained that there was no formal process or policy if a State Bar Court judge knew the complainant or respondent in a particular case.

### *Mike Nisperos*

Mike Nisperos joined the State Bar as CTC in March 2001 and left the office in 2005. In May 2001, Nisperos and his son attended an NBA semifinals playoff game with free tickets provided to them by Layton. Nisperos told us that when he and his son arrived at the basketball game, Girardi and other guests, including Layton and his son, were in attendance. Nisperos told us that at that point, he learned that the tickets had been provided by Girardi, and he socialized with Girardi at the game. Nisperos told us that he did not report his receipt of the tickets, on a Form

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:60

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

700 or otherwise, and did not include Girardi in his conflicts-of-interest information provided to the State Bar thereafter.

When asked about the decision not to identify Girardi on his personal conflicts-of-interest list, Nisperos stated that he was not included because he met Girardi after the list was created, and the list was not updated. Nisperos explained that he would have considered Girardi a conflict "in his head" because of the basketball tickets, and would have referred cases against Girardi to a different prosecutor such as his deputy if any crossed his desk. Nisperos said he was not familiar with any formal process regarding how to handle cases when a conflict-of-interest existed, but would have left the decision regarding how to proceed to his deputy.

Nisperos reported meeting with Girardi personally for a second time in 2005, shortly before Nisperos left the State Bar. Nisperos said that he and Girardi met over breakfast so that Nisperos could thank Girardi for Girardi's offer of assistance to Nisperos, which Nisperos said had been previously communicated to him by Layton. Layton denied communicating to Nisperos an offer from Girardi to assist with becoming a judge. Two witnesses reported that Nisperos and Layton had a close relationship while they were working at the State Bar. One of these witnesses reported that Layton used to act as a chauffeur for Nisperos, and another witness reported that the two would attend social gatherings like barbeques and that Nisperos would supposedly refer to Layton as his "political guy." During his deposition, Layton said that he drove Nisperos "on occasion." One witness reported that Layton may have played a role in the State Bar's decision to promote Platel in August 2001 by advocating for Platel's promotion to Nisperos. During his interview with us, Nisperos stated he recalled Platel trying to curry favor with him, and that he only discovered after leaving the State Bar that Platel had a close relationship with Girardi.

During Nisperos's time as CTC, there were approximately seven Girardi cases closed by his office. Nisperos denied knowing that his office handled multiple cases against Girardi during his tenure as CTC. None of those cases were sent out to conflicts counsel under Rule 2201, but instead were closed by State Bar staff. This includes Case 01-O-03204, a case closed under suspicious circumstances that is discussed in detail below, which was closed by State Bar staff including Platel, in April 2002.

In 2006, after Nisperos had left the State Bar, Girardi endorsed Nisperos's campaign for superior court judge. Girardi Keese donated $1,000 to Nisperos's 2006 judicial campaign. In 2009, a Girardi Keese attorney wrote an email to

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Nisperos to ask for two attorney referrals.  Nisperos recalled providing the requested referrals to the Girardi Keese attorney but stated that they had no further interactions on that case and that he never worked with anyone at Girardi Keese on any cases.

As a CTC, Nisperos should have completed a Form 700 during each year of his tenure as CTC.  However, the State Bar was unable to locate any Forms 700 for Nisperos.  As noted above, during his interview, Nisperos told us that he did not disclose the basketball tickets that he received from Girardi on a Form 700.

### *John Noonen*

John Noonen was an investigator at the State Bar from 1987 until his termination in 2015.  From 2012 to 2015, Noonen served as the Managing Director of Investigations.[15]  Noonen and Layton worked together as investigators for many years at the State Bar, and they appear to have had a close relationship.  Layton reportedly introduced Noonen to Girardi around 2001 or 2002.

Noonen had multiple connections to Girardi Keese.  A resume sent to the State Bar shows that Noonen's daughter worked at Girardi Keese from 2010-2011, while Noonen was at the State Bar.  Additionally, Girardi Keese represented Noonen in a legal matter around 2002.  According to a former Girardi Keese attorney, Girardi Keese also represented Noonen's sister in a matter in the 2004 to 2007 timeframe.

A former Girardi Keese employee told us that Noonen visited the Girardi Keese office, although he did so with less frequency than Greenberg.  Noonen attended lunches at Morton's with Layton, and he admitted that Girardi was sometimes also present.  During his interview with us, Noonen stated that he did not know who paid for his lunches at Morton's, but he conceded that he did not pay for them himself.  In September 2014, while serving as the Managing Director of Investigations for the State Bar, Noonen accepted eight tickets to a UCLA sports game from Girardi Keese.  Noonen told us that he learned of the tickets through Layton, and it appears that Noonen went to the Girardi Keese office to pick up the tickets.

---

[15] After his termination, Noonen sued the State Bar for retaliation and defamation.  Before his termination, Noonen took photographs of documents.  We did not investigate this occurrence, except to review certain of the documents to determine whether they related to Girardi.  We also asked Noonen during his interview whether his actions related to Girardi.  Our review did not reveal that the documents related to Girardi, and Noonen denied that his actions had anything to do with Girardi.

PRIVILEGED / WORK PRODUCT                                            **61** | P a g e

**Ex. 5:62**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Noonen also appears to have attended several Girardi and/or Girardi Keese parties, such as a 2010 Christmas party. During our interview with Noonen, he denied going to any of Girardi's Superbowl parties, but documentary evidence shows that he RSVPed "yes" for the 2013 Superbowl party (along with Greenberg). Documentary evidence also shows that Noonen RSVPed "yes" to the 2012 Girardi Keese Thanksgiving luncheon (along with Greenberg and Dunn). Noonen was included on Girardi Keese's guest list for a 2016 Inner City Law Center luncheon.

Noonen told us he received an invitation by mail in 2013 to go to the Bahamas for a Girardi or Girardi Keese party. Noonen reported that Layton knew about the invitation, because Layton asked Noonen if he had received anything in the mail around the time of the invitation. Noonen told us that he did not accept the invitation to the party.

Noonen submitted Forms 700 in at least 2014 (for the period January 1-December 31, 2013) and 2015 (for the period January 1-December 31, 2014). On all his Forms 700, Noonen stated under penalty of perjury that he had no reportable interests. However, it does not appear that this was accurate for at least the 2015 Form 700, as Noonen accepted eight UCLA tickets from Girardi Keese in September 2014.

Noonen was assigned as an investigator to two Girardi cases while at the State Bar, both of which were closed without discipline. Case 12-O-16066, involved allegations of misappropriation, misrepresentations to the court, trust account issues and the commission of a crime, and was closed in 2012 for insufficient evidence.[16] Case 12-O-15515 involved allegations of failure to perform, delay, abandonment of client, lack of/failure to communicate, and withdrawal from employment and was closed in 2013 also for lack of evidence. Lazar reviewed these cases and found that neither was properly investigated, thus calling into question their closures.

We discussed the cases with both Noonen and a State Bar attorney who worked on the cases with him. Noonen disclaimed any memory of the cases and could not answer any questions about the investigative decisions he made. When asked whether he should have recused himself from the cases due to his relationship with

---

[16] Interestingly, Greenberg was also involved in the handling of Case 12-O-16066, ████████████████████████████████████████████. Based on the case file, this is the only involvement that Greenberg had the in the case.

PRIVILEGED / WORK PRODUCT                                    62 | P a g e

Ex. 5:63

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Girardi and Girardi Keese, Noonen said that he did not believe he had a conflict-of-interest because all of his interactions with Girardi were through Layton.

The OCTC attorney who worked on both cases with Noonen did not specifically recall the cases and was not aware that Noonen had been represented by Girardi Keese before working on this case, and ███ was also not aware that Noonen's daughter had worked for Girardi Keese. The attorney disclaimed having any connection to Girardi, other than taking a class from him in the 1980s. After being informed of Noonen's possible connections to Girardi Keese, the OCTC attorney said that Noonen should have recused himself rather than working the Girardi cases. If the OCTC attorney had known about Noonen's connections at the time, ███ would not have allowed Noonen to work on the cases. Although, with hindsight, the attorney raised questions about some of the investigative steps taken by Noonen and indicated that ███ may expect different handling of the cases today, the attorney said that ultimately, ███ as the attorney assigned to the cases, was responsible for the decision to close the cases.

As Noonen had familial and personal connections to Girardi at the time that he worked on these two cases, he had a conflict-of-interest and should not have handled the investigations. We conclude that Noonen's connections to Girardi taint the handling of these cases and the discretionary decisions to close them without public discipline.

### *Dale Nowicki*

Dale Nowicki was hired by the State Bar in June 2020, and he worked as an OCTC attorney until October 2021.[17] After a media inquiry in October 2021, the State Bar became aware that Nowicki had an ongoing private practice in which he co-counseled with David Lira, a former Girardi Keese attorney and Girardi's son-in-law. We understand that Nowicki did not disclose his work in private practice to the State Bar or get approval to continue working on outside cases while employed at the State Bar. He also did not disclose any outside income to the State Bar on a Form 700 that he submitted in 2021.

After leaving the State Bar, Noonen worked with Nowicki at the Metropolitan Transportation Authority. We understand from Noonen that he introduced Nowicki to Layton when Nowicki was looking for an attorney referral to handle a wrongful

---

[17] We did not interview Nowicki, as he had already resigned from the Bar by the time we learned about his Girardi connections and because he did not work on any Girardi cases.

PRIVILEGED / WORK PRODUCT                                                 63 | P a g e

Ex. 5:64

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

death case.  Noonen told us he believed that Layton referred Nowicki to someone at Girardi Keese.  Noonen denied having any involvement in getting Nowicki a job at the State Bar.  By the time Nowicki was hired by the State Bar, Noonen had not worked there in years.

We have no evidence that Nowicki was involved in any Girardi cases while he worked at the State Bar.

### *Richard Platel*

Richard Platel joined the State Bar as an attorney in June 1999.  In August 2001, Nisperos, then the CTC, promoted Platel to an Assistant Chief Trial Counsel (ACTC) position.  Several people whom we interviewed commented on how quickly Platel was promoted.  One witness told us that he understood that Layton, who had reportedly ingratiated himself with Nisperos, advocated for Platel's promotion to Nisperos.

In 2004, Platel was appointed to the State Bar Court by California State Assembly Speaker Fabian Nuñez.  Many witnesses told us that Layton was involved in or directly responsible for Platel's appointment.  One witness reported being privy to a conversation with Platel and Layton before Platel's appointment was finalized, during which Layton reportedly said that Girardi was close with Nuñez and was pushing for Platel to be appointed.  One witness said it was an "open secret" that Layton helped Platel to get the State Bar Court position.  During our interview of Platel, he denied discussing his interest in the State Bar Court appointment with Girardi, and he said that he had no knowledge of what Girardi did or did not do on his behalf.  He admitted to discussing the appointment with Layton, but said that he did not recall what they discussed.  During Layton's sworn deposition he stated that he couldn't remember having discussions with Platel or otherwise discussing Platel's appointment to the State Bar Court and that his only involvement in Platel's appointment was telling "everybody he applied."  Layton further denied contacting anyone involved in the appointment process on Platel's behalf.

Additionally, after his appointment to the State Bar Court in 2004, a reception was held in Platel's honor at the Walt Disney Concert Hall.  We heard from multiple witnesses that Girardi sponsored this reception.  Platel vehemently denied that Girardi sponsored the reception, saying he paid for it himself.  Platel claimed that he did not have any receipts for the reception.  Platel did admit that he invited Girardi to the celebration because Girardi called to congratulate him.  On December

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

20, 2004, a Girardi Keese receptionist invited all Girardi Keese attorneys to Platel's reception.

> Sent: Mon, 20 Dec 2004 17:19:29 +0000
> To: Attorneys <Atty@girardikeese.com>
> Subject: Judge Richard Platel
>
> You are all cordially invited to a reception for Judge Richard Platel at the Disney Concert Hall from 4:00 to 5:30 PM. It will be in the BP Hall (Founders Room).

Although we have not found documentary evidence showing that Girardi ultimately paid for the reception, we find it unusual that all Girardi Keese attorneys would be invited to the reception absent Girardi's involvement in sponsoring the event. One witness told us that he heard from Layton that Girardi sponsored the reception. Additionally, we learned from a former Girardi Keese employee, who asserted that she attended the reception, that she understood that Girardi or Girardi Keese paid for the event.

Platel told us that he met Girardi around 2004 when he was introduced to him at a restaurant. He described the relationship as cordial acquaintances. However, Nisperos identified Platel as Girardi's other connection (besides Layton) in OCTC. Platel denied ever having lunch with Girardi, although he admitted that he saw Girardi at lunch at Morton's a few times, when both happened to be there. He denied that Girardi paid for his meals. One witness reported that Platel had a close relationship with Layton, Greenberg, and Noonen and that they would have lunch together.[18]

Platel also denied attending Girardi's Christmas parties, and he admitted to attending only one Girardi Superbowl party. Documentary evidence shows that Platel appears to have been invited to the Christmas party thrown by Girardi and/or Girardi Keese in at least 2010, 2011, 2013-2014, and 2018-2019. He also appears to have been invited to the Girardi Superbowl party in at least 2009, 2011-2012, 2014, and 2018-2019. Additionally, Platel and his wife (another State Bar employee)[19] were included on Girardi Keese's guest list for the 2013 Jack Webb

---

[18] One former Girardi Keese attorney told us that Platel's "son's then-fiancée" worked at Girardi Keese for many years as a law clerk. Platel did not mention anything about this connection during his testimony.

[19] Platel's wife worked at the State Bar as an investigator until April 2015. We do not have any evidence that she worked on Girardi cases.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:66

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Award dinner.  Like many of the individuals discussed above, Platel told us that he was a panelist at the CAALA convention in Las Vegas several times, starting around 2004.  Platel also told us that he attended the Girardi Keese dinner during the conventions.

Platel served two terms on the State Bar Court, and he was not reappointed for a third.  He left the State Bar Court in October 2014, and in 2015, he moved to Hawaii to work at the Hawaii State Bar.  He then returned to California in March 2017.  We received reports that Platel tried several times to get back into OCTC.  Platel told us that he applied to be CTC in 2008 or 2009, and a witness reported to us that Layton wanted Dunn to select Platel to replace CTC 1 as CTC in 2011.  According to a May 2016 privileged email sent by a then-Board member, Girardi called the Board member and told him that Platel should be brought in as CTC (at the time, the CTC position was vacant).  Girardi reportedly said that Platel was "Chief Trial Counsel in Hawaii" and "would like to come back to California." He also reportedly said that bringing Platel back as the State Bar's CTC "could avoid pressure to disband the Bar."  Shortly before this call occurred, emails show that Layton sent what appears to be Platel's then-current resume to Girardi (via a Girardi Keese employee).  We asked Platel about whether he talked to Girardi about applying for the CTC position in 2016.  Platel admitted that he applied for the CTC position in 2016, but he denied talking to Girardi about it.  He stated that he did not recall whether he spoke to Layton about his application.  However, as noted above, Layton had a copy of his resume.

Platel told us he was approached by Girardi in 2017 and asked to help with a case that Girardi Keese was litigating.  Platel admitted to flying on Girardi's private jet to and from a hearing, along with his wife.  Platel told us that he was not compensated by Girardi for his involvement in the matter.  Platel denied taking any other flights on Girardi's jet, and we do not have any evidence that he flew with Girardi during his time at the State Bar or State Bar Court.

Platel completed Forms 700 in at least 2012 (for January 1-December 31, 2011), and 2014 (for January 1-December 31, 2013).  In 2012, Platel did not report anything on his Form 700, and in 2013 and 2014, Platel reported that he was reimbursed for travel expenses by CAALA.

Platel was involved in at least one Girardi case while working in OCTC.  He was not involved in any Girardi cases while on the State Bar Court bench because there were no Girardi cases filed by OCTC during that time.  While in OCTC, Platel appears to have intervened and closed a Girardi case (Case 01-O-03204) in 2002

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

involving allegations of trust accounting violations. Multiple witnesses commented that the handling of the case was suspicious. Lazar concluded the case was improperly resolved and that Girardi should have been disbarred or suspended if it were properly handled.

Initially, the case was assigned to an OCTC investigator, who ██████ ████████████████████████████████████████████ While ████████████████████████████████████████████████████ Platel, who was the investigator's supervisor, reportedly took the case away from the investigator without any explanation. In █ interview, the investigator recalled this case specifically before any prompting as it was very unusual to █ In █ 10 plus years at the State Bar, only twice had a case ever been taken away from █.

The Investigator was not aware of this at the time, but after Platel reportedly took the case from █ another OCTC attorney reviewed the case (along with another active Girardi case). ████████████████████████████████████████ ████████████████████████████████████████████████ This statement is both legally and factually incorrect. ████████████████████████████████████████████

Platel then closed the case ████████████████. We heard that this in and of itself was very unusual, as he was not the attorney assigned to the case and he was a high-level manager. Usually, the investigator on a case—not the ACTC—was responsible for ████████████████████.

After the case was reportedly taken away from █, the investigator received ████████████████████████████████ told us that Platel came into her office and took those █████ from █

When asked about these cases, Platel said ████████████████████ He added that the OCTC attorney told him that Girardi was a powerful man, and his impression was that the State Bar was afraid of Girardi. Platel also told us that he did not know Girardi at this time. The OCTC attorney told us that █ did not recall the case or how █ came to ████████████.

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Given the passage of time, we had minimal access to documents and other evidence from the time period when this case was closed (2002) and we did not find evidence that Platel had any connections to Girardi at the time. We do know, however, that within a few years of the case closure Platel did have a relationship to Girardi, as discussed above. Given the strangeness around how Platel interacted with this case and the benefits that he received from Girardi later in time, we cannot rule out that Platel had a conflict-of-interest that tainted the handling of this case.

**State Bar's Decision to Not Discipline Girardi After Ninth Circuit Sanctions**

In December 2010, OUTSIDE ATTORNEY C, acting as SDTC, determined that the State Bar would not pursue any additional discipline against Girardi for misconduct that resulted in Girardi (and other attorneys) being disciplined by the Ninth Circuit (*In Re Girardi*, 611 F.3d 1027 (9th Cir. 2010)). The decision to not impose discipline on Girardi came under fire both inside and outside the State Bar. Similarly, Lazar concluded that OUTSIDE ATTORNEY C misapplied the law and closed the case in error. As this was such a contested result, we looked into this case specifically to determine whether Girardi's influence at the State Bar was a factor. As discussed in further detail below, there are many concerning aspects about the way the case was handled, but we did not find any evidence that the ultimate decision to impose no further discipline on Girardi was made as a result of Girardi's influence.

In June 2008—and after an investigation led by Ninth Circuit Judge Wallace Tashima found that Girardi and other attorneys misled the Court—the Ninth Circuit appointed an independent prosecutor, Professor Rory Little, to conduct further disciplinary proceedings. At the same time, the State Bar opened an investigation (Case 08-O-12613) into the matter, but after discussions that, according to the case file, appear to have involved Greenberg, ██████████████████

PRIVILEGED / WORK PRODUCT                                         68 | P a g e

Ex. 5:69

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

In July 2010, after Little completed his investigation, the Ninth Circuit concluded as follows:

> **4. Conclusion**
>
> Respondents in this case have been respected members of the bar, and each has presented significant mitigating evidence. Their conduct in this case, however, cannot be excused on that basis, given their culpability and the substantial injury their conduct caused the opposing parties and this court. We have carefully considered the *1040 recommendations of Judge Tashima and Professor Little, who have made our task substantially easier and whose assistance we gratefully acknowledge. We impose discipline as follows:
>
> THOMAS V. GIRARDI is formally reprimanded.

*In Re Girardi*, 611 F.3d 1027, 1039-40 (9th Cir. 2010)

The State Bar then proceeded with its ▉▉▉▉ investigation. At the time, Miller,[20] a Girardi Keese attorney, was President of the State Bar Board, and accordingly, CTC 1 recused himself and his office under Rule 2201.

CTC 1 appointed OUTSIDE ATTORNEY C, a respected appellate litigator and appellate specialist at OUTSIDE LAW FIRM, as the SDTC to investigate the case. OUTSIDE ATTORNEY C had never served as an SDTC before and was not on the pre-approved Rule 2201 counsel list. Although a titan of the appellate bar, by his own admission OUTSIDE ATTORNEY C had very limited experience in State Bar matters.[21] OUTSIDE ATTORNEY C worked on the case with his partner, OUTSIDE ATTORNEY D,[22] as well as other OUTSIDE LAW FIRM attorneys. OUTSIDE ATTORNEY C provided his services on a *pro bono* basis, but the other OUTSIDE LAW FIRM attorneys billed for their time, pursuant to the terms of a written engagement agreement. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ We understand that upon being informed of OUTSIDE ATTORNEY C's conclusion, Girardi and/or the other attorneys made the outcome public.

---

[20] Miller was initially included in the Ninth Circuit's proceedings, but in 2006, he was exonerated and discharged. The Ninth Circuit did not impose any discipline against him.

[21] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

[22] OUTSIDE ATTORNEY D later became a member of the Board.

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

By all accounts, OUTSIDE ATTORNEY C mishandled the case and improperly determined that no discipline should be imposed. Among other issues, OUTSIDE ATTORNEY C stated in his memorandum that ███████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ However, that statement is not supported by any relevant law, and the version of California Business and Professions Code section 6049.1 that was in effect at the time contradicts OUTSIDE ATTORNEY C's reasoning, providing, "In any disciplinary proceeding under this chapter, a certified copy of a final order made by any court of record or any body authorized by law or by rule of court to conduct disciplinary proceedings against attorneys, of the United States or of any state or territory of the United States or of the District of Columbia, determining that a member of the State Bar committed professional misconduct in such other jurisdiction shall be conclusive evidence that the member is culpable of professional misconduct in this state . . . .'" During our interview of OUTSIDE ATTORNEY C, he stated ███████████████████ ██████████████████████████████████ that he was horrified by what the attorneys did, but he also thought that justice had been done and the attorneys had been "humiliated" enough by the Ninth Circuit's imposition of discipline.

Beyond the legal incorrectness of OUTSIDE ATTORNEY C's conclusion, there are a series of issues that arose as a result of OUTSIDE ATTORNEY C's work on the Girardi case, and we discuss each in turn below.

### *Prior Representation of Girardi Keese*

In 2006 (before OUTSIDE ATTORNEY C accepted the Girardi case as an SDTC), an OUTSIDE LAW FIRM partner represented Girardi Keese in a case brought by a former Girardi Keese client ("GIRARDI CLIENT LITIGATION"). OUTSIDE LAW FIRM's prior representation of Girardi Keese would *at best* make it a bad choice to be the firm appointed to investigate whether Girardi committed misconduct, given the obvious appearance of impropriety issues in having a client's former counsel investigate the client; at worst, it was a serious conflict-of-interest that should have been disclosed to the State Bar before the firm was engaged.

We did not find any evidence suggesting that OUTSIDE ATTORNEY C or OUTSIDE ATTORNEY D were involved in GIRARDI CLIENT LITIGATION or

PRIVILEGED / WORK PRODUCT                                              70 | P a g e

Ex. 5:71

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

even knew the case existed. OUTSIDE ATTORNEY C told us that a conflicts check would have been run before he agreed to accept the SDTC position, but he did not specifically recall it or whether it picked up the GIRARDI CLIENT LITIGATION matter. OUTSIDE ATTORNEY D disclaimed any involvement in the conflicts check for the matter, but stated that if a check was run, it should have identified the GIRARDI CLIENT LITIGATION case.

OUTSIDE ATTORNEY C also did not recall if he made any certification to the State Bar regarding conflicts-of-interest before being appointed SDTC for the Girardi case, and we did not locate any such certification in the State Bar's case file. We obtained documents and communications from OUTSIDE LAW FIRM's successor firm related to OUTSIDE ATTORNEY C's work as SDTC, and we did not find any documentary evidence showing the conflicts check or a discussion of potential conflicts or of GIRARDI CLIENT LITIGATION.

When asked if the GIRARDI CLIENT LITIGATION case was a conflict that should have disqualified him from serving as SDTC on a Girardi case, OUTSIDE ATTORNEY C stated that it did not look good, but he did not believe it was a conflict because the matter was unrelated to the State Bar Girardi case. OUTSIDE ATTORNEY D stated that it may be a conflict. In 2011, the State Bar was informed of OUTSIDE LAW FIRM's prior representation of Girardi Keese in GIRARDI CLIENT LITIGATION, and Hawley (then Deputy Executive Director) ██████████████████████████████████████████████ Hawley told us that he did not recall why this project was assigned to him. ████████████████████████████████████████████████

Based on the evidence available to us, we conclude that given OUTSIDE LAW FIRM's prior representation of Girardi Keese, OUTSIDE ATTORNEY C should not have been selected as the SDTC as it casts substantial doubt on his impartiality. That being said, given that we found no evidence that OUTSIDE ATTORNEY C knew of his firm's prior representation, we conclude that the prior representation did not influence the outcome of OUTSIDE ATTORNEY C's handling of the case.

### *Greenberg's Involvement and Closure*

Even though this was a case referred out to an SDTC, Greenberg had a role in its handling. We understand that, at the time, Greenberg provided administrative support for Rule 2201 cases. Even though he had a pre-existing relationship with

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:72

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Girardi, described in detail above, he did not recuse himself from that role on this case. As explained below, a witness claimed that in his opinion, Greenberg actually took credit for making the case go away.

As a primary matter, Greenberg appears to have been involved in 2008 discussions about ███████████████████████████████████ ██████████████████████. Given Greenberg's relationship with Girardi, he probably should not have had any role in the process. In fact, that same year Girardi wrote Greenberg a thank you note for the most "extraordinary gift" he had ever received.

After the Ninth Circuit concluded its disciplinary proceedings, the State Bar's investigation resumed, and Greenberg signed the letter confirming OUTSIDE ATTORNEY C's appointment. He also trained OUTSIDE ATTORNEY C and his team on rules and procedures for handling State Bar cases before they began their investigation. Witnesses did not recall the substance of the training, and Greenberg refused to testify, so it is unknown whether Greenberg gave instructions to OUTSIDE ATTORNEY C that influenced the case's outcome. Greenberg also stayed in contact with OUTSIDE ATTORNEY C and his team as they conducted the investigation, as he was their point of contact with the State Bar.

A former OCTC employee reported to us that ██ overheard Greenberg discussing the closure of this case with attorneys at the 2010 Girardi Christmas party, and the witness got the impression that the attorneys were "patting" Greenberg on the back related to the closure of the case. We do not have any corroborating evidence for this, and indeed, the witness reported that ██ recollection was more like a "feeling," rather than any clear statements. However, the timing (OUTSIDE ATTORNEY C closed the case on December 15, and the witness reported hearing Greenberg discuss it at a Christmas party) does align with the witness's recollection.

Greenberg's relationship with Girardi, his involvement with the controversial case, and its improper outcome raise serious doubts about whether the case was properly handled. It is certainly suspicious that Greenberg was involved with the ██████ of the case and was the one who provided the training to the SDTC team, and the SDTC thereafter failed to properly apply the State Bar's rules and procedures and improperly failed to impose any discipline on Girardi. On the other hand, OUTSIDE ATTORNEY C denied that Greenberg had any role in his decision to close the case and told us that the decision not to impose discipline on Girardi was entirely his. While we cannot rule out that Greenberg may have improperly

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:73

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

influenced the outcome of the case, given OUTSIDE ATTORNEY C's acceptance for the decision-making in the case, we cannot conclude that it is more likely than not that he did. That said, given Greenberg's relationship with Girardi, he had a conflict-of-interest and should not have been involved in the handling of the case in any manner.

### *Efforts to Reopen the Case*

Several OCTC attorneys vehemently disagreed with OUTSIDE ATTORNEY C's decision to close the case.

In June 2011, OCTC ATTORNEY 2 contacted the State Bar's Board to As described in further detail below, OCTC ATTORNEY 2 was fired on July 6, 2011, and the case was not reopened.

### Acting Executive Director's Clandestine Involvement in Closing Rule 2201 Cases

In the course of our investigation, we became aware of a shocking issue involving former Deputy and Acting Executive Director Hawley's handling of a Rule 2201 case involving Girardi ⬛⬛⬛ (Case 14-28979). As we lay out in detail below, CTC 2 recused OCTC from handling the State Bar complaint because the complaint involved allegations concerning ⬛⬛⬛. Even though Hawley knew of this conflict, he hand-selected an SDTC whom he knew and then ghostwrote a memorandum for the SDTC, ⬛⬛⬛ which the SDTC presented as ⬛ own. Hawley then recommended to the Board that they accept the "SDTC's" recommendation, without informing the Board he was the one who prepared it. That this would happen for any case is troubling, but it is especially concerning because the complaint implicated ⬛⬛⬛, and Hawley's actions (whether or not this was the intention) helped protect the State Bar and ⬛⬛⬛.

In October 2014, an attorney made a complaint to the State Bar, alleging that Girardi threatened to report someone to the State Bar if they did not acquiesce to his

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:74

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

demands and that Girardi made misrepresentations to the court by giving false testimony in a deposition ███████████████████████████████. Because the complaint involved ██████████████████████████, CTC 2 recused OCTC from the matter and requested appointment of a SDTC to handle the complaint pursuant to Rule 2201. CTC 2 gave the following explanation as to why she was recusing herself:

> Pursuant to rule 2201(i), I recuse myself with respect to a complaint alleging professional misconduct by Thomas Girardi. I am aware of facts that might reasonably entertain a doubt that I could be able to be impartial. More specifically, I have reported professional concerns about Thomas Girardi's relationship with State Bar employee Thomas Layton and former Executive Director Joseph Dunn, which may give the appearance of partiality.

As described in additional detail in the section below, CTC 2 had herself made a report to Hawley regarding inappropriate connections between Girardi and Layton she was aware of and had requested an internal investigation of the issue. CTC 2 then requested an investigation into the facts alleged in the State Bar complaint that had been made by the outside attorney.

In February 2015, Deputy and Acting Executive Director Hawley emailed an attorney he previously worked with in private practice ("OUTSIDE ATTORNEY B"), and asked if ██ would be willing to "take a pro bono assignment" as an SDTC. Hawley stated that the "assignment should only take a few hours and should be limited to file review." Hawley further said that he could and would "assist [with] authorities and guidance." OUTSIDE ATTORNEY B told us that ██ did not have any experience with professional responsibility or State Bar disciplinary cases, and that Hawley told ██ that he would answer any questions that ██ had.

Hawley then emailed the Board to recommend that OUTSIDE ATTORNEY B be appointed the SDTC for the case. In his email to the Board, Hawley mischaracterized CTC 2's rationale for recusing herself from the case as follows:

> The other files are from individuals represented by Girardi & Keese. These complaints pertain to Thomas Girardi's representation of parties in litigation totally unrelated to the State Bar. Girardi & Keese is the firm that former State Bar President Howard Miller is with. This, and the fact that Miller has represented former ED Joseph Dunn regarding Dunn's separation from the State Bar resulted in the CTC's recusal from these cases.

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Regardless of his intention, this mischaracterization had the effect of hiding CTC 2's complaints about Girardi's connections at the State Bar from the Board.

A Board member questioned Hawley's proposal of OUTSIDE ATTORNEY B as an SDTC, asking if ▮ had the right expertise and noting that ▮ "doesn't seem to have any ethics, prosecutorial or other related experience." The Board member added, "[i]f these claims [complaints] are simple ones then that's fine, but if they have any sensitivity or complexity (which I imagine they might) then we might be better off with someone who has more expertise." Hawley pushed for the appointment of OUTSIDE ATTORNEY B, arguing back to the Board member, among other things, that it was difficult to find SDTCs as the appointment is *pro bono*; that Los Angeles-based attorneys did not wish to take on a case involving Girardi; that the case files were "rudimentary"; and that OUTSIDE ATTORNEY B's task would be to determine if the file should be closed. Ultimately, OUTSIDE ATTORNEY B was appointed in March 2015 to handle four Girardi cases[23] and one additional, unrelated case.

Even though the case had been assigned to OUTSIDE ATTORNEY B to conduct an independent investigation and assessment of the Girardi complaint, Hawley was the one who actually handled it and made the recommendation to close it. ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

---

[23] OUTSIDE ATTORNEY B was also appointed SDTC to review three complaints against Girardi, all related to each other, that did not have to do with allegations of connections between Girardi and ▮▮▮ (Cases 14-30049, 14-30061, and 14-30269). ▮ ultimately recommended closure of all three cases. Based on documentary evidence, it appears that OUTSIDE ATTORNEY B wrote ▮▮▮▮▮ recommending closure of these cases ▮▮ Lazar concluded the closures were appropriate and we have no evidence to the contrary. We also do not have any evidence that OUTSIDE ATTORNEY B had any connections to Girardi, and ▮ disclaimed any such connections.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:76

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Hawley's analysis follows:



Ultimately, Hawley wrote ███████████████████████
████████████████

OUTSIDE ATTORNEY B ████████████████████████
████████████ made a sarcastic remark about the fact that Hawley was doing the actual work on the case in OUTSIDE ATTORNEY B's name.

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

In May 2015, and without telling the Board that he ghostwrote it, Hawley sent the memorandum to the Board, along with a memorandum in his own name recommending the Board approve the closure of the case, and the Board accepted the recommendation. ████████████████████████████
███████████████

We only discovered Hawley's involvement in the case after conducting a review of his emails. The official case file did not contain materials showing how heavily Hawley was involved in the case or that he essentially made the decision to close the case himself.

When Hawley was interviewed, he provided confusing and inconsistent information about his involvement in the Girardi case. When we asked Hawley about his role in SDTC matters generally, he referred to himself as a "resource" to

Ex. 5:77

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

the SDTCs and said that he would provide his thoughts to SDTCs only if asked. He added that he always made it clear to an SDTC that the result should be the SDTC's independent decision. He did not mention writing the reports on behalf of SDTCs. However, once we showed Hawley the emails and documents we found in his emails showing he ghostwrote materials for OUTSIDE ATTORNEY B, Hawley admitted to writing the materials, and said he wrote reports for *all* SDTC cases he was involved with, not just the Girardi case. When asked whether he told anyone about his ghostwriting of SDTC memoranda, Hawley said that the Board knew about it, but we have not found any evidence to support that. Because our investigation was focused on Girardi-related cases, we did not vet Hawley's statement that he routinely wrote SDTC reports in all cases. We found evidence that Hawley appears to have ghostwritten one other report for OUTSIDE ATTORNEY B (for an unrelated complaint against a different attorney), but we did not find evidence that he ghostwrote any other reports, and it does not appear that he wrote the materials for the other cases against Girardi handled by OUTSIDE ATTORNEY B.

When we interviewed OUTSIDE ATTORNEY B, ▓ initially said that Hawley provided ▓ with a "skeleton" report, and that no one at the State Bar attempted to influence ▓ decision regarding whether to impose discipline on Girardi. Additionally, when first shown the report ▓▓▓▓▓▓▓ OUTSIDE ATTORNEY B stated unequivocally that ▓ drafted the report and that no one assisted ▓ in drafting its contents. However, after we showed ▓ the documentary evidence showing otherwise, ▓ apologized and told us that ▓ did not recall that Hawley drafted the report, and admitted that Hawley in fact had done so. ▓ also told us that ▓ probably did not review the materials cited in the report supporting the recommendation ▓▓▓▓▓, as ▓ would have just accepted what Hawley sent ▓ ▓ admitted that the decision to close the case was not an independent one, and that ▓ had deferred to Hawley's assessment of how to handle the allegations.

While Hawley's intervention in the Girardi ▓▓▓ case is troubling on many levels, we did not find any evidence indicating that Hawley's actions were motivated by connections to Girardi or a desire to protect him. As far as we could determine, Hawley did not have any relationship to Girardi and did not receive anything of value from him or anyone connected to him. When asked about his relationship to Girardi, Hawley stated that he had never met him.

Hawley's intervention into this Girardi case is a clear breach of Rule 2201, as well as of the separation between the Executive Director's Office and OCTC. The

PRIVILEGED / WORK PRODUCT                                         77 | P a g e

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:78

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

case was referred out to independent counsel because it directly implicated the State Bar ███████████████████████████. CTC 2 determined that independence was needed in the handling of the case, and that someone outside the State Bar should handle it. The fact that someone inside the State Bar handled this case is alone troubling; that it was the Acting Executive Director of the State Bar is frankly shocking. The Executive Director is not supposed to make recommendations in discipline cases, and especially not Rule 2201 cases. The effect of Hawley's intervention in the case—especially when considered in conjunction with the decision to close without investigating CTC 2's requests for an internal investigation into overlapping issues—had the effect of protecting Girardi and keeping hidden his ████████████████████████████. It is especially striking that one of the allegations that was covered up by Hawley's actions was that ████████████████████████████████████████████████████████.

**Office of General Counsel and Executive Director's Office Failure to Investigate Reported Girardi Connections at State Bar**

Both the Executive Director's Office and the Office of General Counsel received reports from both internal and external sources of Girardi's influence at the State Bar and connections to Layton and others, but failed to investigate the complaints in good faith.

In December 2013, an outside attorney wrote a letter to Executive Director Dunn that raised concerns about Layton's connections with Girardi and his involvement in Girardi disciplinary matters. From what we can determine, Dunn did nothing with the letter. In January 2014, the outside attorney forwarded the letter to Deputy Director Hawley after being referred to him by Oehler.

We were not able to find any documentary evidence showing that Dunn or Hawley did anything to follow up on the letter. When we spoke to Hawley, he said that he did not recall the letter, but he would not have done anything after receiving the letter other than talk to CTC 2.

Later in 2014, CTC 2 received a voicemail from a woman claiming to be a licensed attorney in Washington who wanted to speak to someone about Executive Director Dunn and Girardi. The caller claimed to have first-hand knowledge of financial dealings involving Dunn and Girardi. CTC 2 forwarded the voicemail to Hawley for handling, stating that she was not going to return the call unless Hawley

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:79

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

instructed her otherwise. Hawley informed us that he did not recall receiving this email from CTC 2 or taking any action after receiving it.

In November 2014, as discussed in further detail in the section above, OCTC received a complaint against Girardi alleging that Girardi threatened to report someone to the State Bar if they did not acquiesce to his demands and that Girardi gave false testimony in a deposition ███████████████████████ ████ CTC 2 recused OCTC from the matter pursuant to Rule 2201 and asked Hawley, who was then the Deputy and Acting Executive Director of the State Bar, to appoint an SDTC to investigate. Hawley's improper handling of the case sent to the SDTC is discussed in detail in the section above. Concurrently with her recusal, CTC 2 also requested the State Bar's human resources office conduct an internal investigation into the allegations regarding Layton.

Hawley sent CTC 2's request for an internal investigation to the State Bar's Office of General Counsel, where it was assigned to the ███████ general counsel. The ████████ general counsel reviewed the materials and determined that there were not "sufficient facts at this time to go forward with an internal investigation." ██ noted, however, that "if there are additional facts linking Girardi and Layton that might implicate an inappropriate relationship, or if there are other complaints or allegations against Layton that suggest a pattern of using his position as an OCTC investigator to benefit third parties, further inquiry may be appropriate."

Also in November 2014, CTC 2 separately reported her own concerns to Hawley that Layton was receiving meals, plane rides on Girardi's private jet, legal representation, and other things of value from Girardi, while Layton was employed at the State Bar and in violation of the State Bar's policies. CTC 2 requested an internal investigation into these issues, ██████████████████████ ████████████████████████████ stating that it should be easy to verify allegations such as one that Girardi represented Layton in litigation while Layton was employed at the State Bar. CTC 2 also identified Dunn, Platel, Miles, and Noonen as potentially also having received inappropriate gifts from Girardi. CTC 2 also made this report to Hawley.

Hawley sent CTC 2's second investigation request to the same ████████ general counsel who had reviewed CTC 2's first complaint, asking ███ to review and to determine whether the new information changed ██ conclusion about whether any kind of internal investigation into the allegations was warranted. Despite the fact that ██ had earlier concluded that additional allegations

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

linking Girardi and Layton would warrant an investigation, the ███████ general counsel did not conduct any investigation into CTC 2's allegations, and did not take any steps to verify or disprove any information provided by CTC 2. Instead, the ████████ general counsel determined that an investigation was not warranted because CTC 2 had not substantiated her allegations with evidence. The ████████ general counsel advised that several of CTC 2's allegations, if true, could raise serious concerns, but because the allegations were only allegations, no action needed to be taken. Stated differently, the ████████ general counsel determined that because the allegations were only allegations, no internal investigation should be conducted to determine whether the allegations were true.

We interviewed the ████████ general counsel who prepared these analyses, and ██ did not recall ever having worked on anything involving Girardi. ██ stated that ██ had no recollection of preparing any analysis regarding a possible internal investigation into Girardi's gifts to Layton and other State Bar employees, even after being shown the analysis ██ wrote. ██ also stated that ██ had no personal knowledge of any State Bar employee receiving anything of value from Girardi.

The ████████ general counsel's advice that no investigation was warranted because the allegations were only allegations was provided to the Executive Director's Office by written memorandum in May 2015, and no further action was taken to investigate Girardi's gifts and other connections to Layton and others. During this same time period (April to June 2015), and as described in the section above, Deputy and Acting Executive Director Hawley ghostwrote and submitted to the Board for approval a report purportedly from the SDTC assigned to investigate the outside complaint about Girardi ████████, which similarly recommended closing without investigation a complaint alleging inappropriate connections between Girardi ████████.

## 2011 Termination of OCTC Management

We were told by many witnesses, including former Executive Director Dunn, that the Executive Director's Office is not supposed to interfere or have any involvement in the affairs of OCTC. There is supposed to be a wall between the two offices of the State Bar, which is why Dunn's termination of four senior OCTC attorneys, two of whom were advocating for cases against Girardi around the time of their termination, raises questions about whether the firings were motivated in part or in whole to assist Girardi.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:81

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Dunn started as Executive Director in November 2010, and CTC 1 started as CTC in July 2010. According to CTC 1, Dunn approached him during the first half of 2011 and told him that he needed to fire some of his staff. CTC 1 told Dunn that OCTC staffing was "none of his business" and CTC 1 refused to fire anyone.

At the same time, Dunn also made it known to Hawley, his Deputy Executive Director, that he wanted OCTC ATTORNEY 2 gone. OCTC ATTORNEY 2 recounted to us that Hawley told ███ in April or May 2011 that Dunn wanted to terminate ███, adding that there were no complaints about ███ performance and that he (Hawley) believed that OCTC ATTORNEY 2 was doing a great job. As described in further detail above, OCTC ATTORNEY 2 at the time was a vocal critic of the decision made by OUTSIDE ATTORNEY C not to discipline Girardi and had been advocating to upper management and the Board to reopen the case.

CTC 1 was only in his position as CTC for one year, as the California Senate never confirmed him. His last day in the office was Friday, July 1, 2011. On July 6, 2011, Dunn and Hawley terminated OCTC ATTORNEY 2 along with three other ██████████ in OCTC including OCTC ATTORNEY 1. A month earlier, OCTC ATTORNEY 1 █████████████████ against Girardi based on allegations he had stolen funds from his client. Nearly simultaneously with ███ firing, Greenberg drafted a ████████████ dated July 5, 2011. We did not find any evidence that the other two fired OCTC attorneys had been working on any Girardi matters.

When interviewed, Dunn said that he approved the terminations, but he was simply rubber-stamping the decision that his deputy, Hawley, recommended. He could not recall why the four were terminated but believed it was performance related. A review of the four attorneys' personnel files revealed nothing explaining why they were terminated. The employees' separation agreements that were recovered all indicate that the employees were involuntarily separated, without any explanation as to why. In the press at the time, it was reported that according to a spokesperson for the State Bar, the termination decisions were "vested in Executive Director Joseph Dunn" and were part of an effort to "improve the State Bar's operations."

Hawley was also interviewed, but his memory was poor. He did not remember details about the terminations and made inconsistent statements about the impetus for them. It is clear, however, that Hawley was the one who communicated the firings to the employees and handled the attendant paperwork.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:82

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT



The evidence shows that Dunn signed off on the firings and Hawley implemented them, including by signing the separation agreements. Everyone with whom we spoke about this issue also agreed that only Dunn could have approved the actual terminations. However, there are disagreements about the details beyond this. In his deposition, Dunn claimed that the recommendation to fire the four OCTC attorneys came from Hawley, but Hawley does not remember details about the terminations and made inconsistent statements about the impetus for them.

Considering all of the evidence, we believe that it is more likely than not that Dunn was the driving force behind the terminations. Further, there is reason to believe the firing may have been motivated by Dunn's connections to Girardi. We understand that this was the first time the Executive Director's Office directed the termination of OCTC employees, and that this has not happened again. If you credit CTC 1's and OCTC ATTORNEY 2's statements, Dunn was seeking to fire OCTC attorneys, but CTC 1 was a roadblock to do so. Within days of CTC 1's leaving office, the Executive Director's Office fired the OCTC employees. This was a significant break in protocol that, as far as we can discern, did not happen before and has not happened since Dunn's tenure. When you combine these facts with Dunn's connections to Girardi and the fact that two of the fired attorneys had recently advocated for discipline against Girardi, there is reason to believe the terminations were based, at least in part, on Girardi's influence at the State Bar.

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:83

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

## APPENDIX A
## OVERVIEW OF THE STATE BAR AND ITS ORGANIZATION

The State Bar of California is the regulatory arm of the California Supreme Court. Its mission is to protect the public and includes the primary functions of licensing, regulation, and discipline of attorneys; the advancement of the ethical and competent practice of law; and support of efforts for greater access to, and inclusion in, the legal system. The State Bar of California is the largest state bar in the United States, and it licenses more than 250,000 attorneys, investigates approximately 16,000 complaints of attorney misconduct annually, and distributes over $78 million in grants to legal aid organizations.

The organization and structure of the State Bar has changed several times since the State Bar was founded in 1927. The following is a brief overview of its operations.[24]

The State Bar is governed by a Board of Trustees (formerly called the Board of Governors) (the "Board") composed of thirteen members. Currently, five of these members are attorneys appointed by the California Supreme Court, and two are attorneys appointed by the California Legislature, one each by the Senate Committee on Rules and the Speaker of the Assembly. The other six members are non-attorney "public" members, four of whom are appointed by the Governor, one of whom is appointed by the Senate Committee on Rules, and one of whom is appointed by the Speaker of the Assembly. The Board has standing committees composed only of Board members, two of which are statutorily mandated: the Board Executive Committee and the Regulation and Discipline ("RAD") Committee. Currently, the entire Board sits as the RAD Committee.

Prior to 2018, attorney Board members were not appointed but instead were elected. The State Bar divided California into several districts, and Board members were elected by the licensed lawyers in each district. At least in Los Angeles, there was an informal committee of prominent lawyers, colloquially referred to as the "Breakfast Club," that would review the candidates from the district, identify the individuals they would back, and make endorsements. Girardi played a prominent role in this committee, including when fellow Girardi Keese attorney Miller ran for and was elected to the Board.

The Board oversees the two main branches of the State Bar: OCTC, which handles the disciplinary function, and the Executive Director's Office, which is responsible for the State Bar's other functions including attorney admissions, finances, and administrative issues. OCTC and the Executive Director's Office are separate, each reporting directly to the

---

[24] This information is based on information provided by interviewees and information publicly available on the State Bar's website, and is not intended to be a fulsome description of the nuances of the State Bar's organization or activities, past or present.

PRIVILEGED / WORK PRODUCT                                              83 | P a g e

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Board, and the Executive Director is not supposed to interfere with OCTC's administration of the discipline system. The Office of General Counsel also reports directly to the Board.

OCTC's discipline process proceeds in stages. Although the process has changed over time, in general and at a high level, Intake is the starting point for those seeking to file a complaint against an attorney. Complaints are initially evaluated at Intake to determine if they involve a violation of California's professional standards. If a formal investigation is warranted by the alleged misconduct in the complaint, the file moves to the Investigations stage. If the matter is not resolved at the Investigation stage, for example through private discipline negotiated between the State Bar and the attorney, a State Bar attorney prepares a formal Notice of Disciplinary Charges and files it with the State Bar's court system. The matter then proceeds to trial on the disciplinary charges. If at any point in the process OCTC determines a conflict-of-interest exists, the State Bar utilizes the procedures in State Bar Rule of Procedure 2201, discussed in detail below, for the appointment of an outside attorney to handle the complaint.



Figure 1.1 – General Discipline Case Flow

The State Bar's court system, the State Bar Court, hears all disciplinary cases brought by OCTC and SDTCs against licensed attorneys. California is the only state with an independent professional Court dedicated to ruling on attorney discipline cases. The State Bar Court has the authority to recommend that the California Supreme Court suspend or disbar attorneys found to have committed acts of professional misconduct or to have been convicted of serious

www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:85

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

crimes. For lesser offenses, the State Bar Court can issue public or private reprovals. The State Bar Court also can temporarily remove lawyers from practice when they are deemed to pose a substantial threat of harm to clients or the public. Lawyers may seek review of State Bar Court decisions in the California Supreme Court.

Since 1989, the State Bar Court has used fulltime judges appointed by the California Supreme Court, the Legislature, and the Governor. The Court is divided into two departments: a Hearing Department and a Review Department, headed by a presiding judge. The Hearing Department is the trial level of the State Bar Court. Five fulltime judicial positions are split between Los Angeles and San Francisco. The Supreme Court appoints two of the hearing judges, while the Governor, the Speaker of the Assembly, and the Senate Committee on Rules appoint one hearing judge each. The Review Department is the appellate level of the State Bar Court, consisting of the presiding judge and two other review judges. All review judges are appointed by the Supreme Court.

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

## APPENDIX B
## RELEVANT STATE BAR POLICIES AND PRACTICES

### Conflicts-of-Interest/Gifts and Rule 2201

Until 2019, the State Bar of California did not have a robust policy relating to conflicts-of-interest, gifts from outside sources, or outside employment.  Thus, for most of the time during which State Bar employees were receiving, investigating, and closing complaints against Girardi, the State Bar did not have formal policies that clearly restricted many of the activities through which Girardi built relationships and influence, including providing free meals and event tickets to State Bar employees.  Although the State Bar has long had a formal policy on conflicts-of-interest, past iterations of the policy were limited in scope and focused on an employee's individual financial ties, rather than on issues of the appearance of impropriety for the State Bar as an organization.

Starting in November 2019, the State Bar began issuing various policy directives with the aim of improving and clarifying rules and procedures.  In June 2022, after the issues with Girardi and the State Bar had been widely reported on, the State Bar implemented a new, robust policy that supplements previous policies and procedures applicable to OCTC employees.  As discussed below, the new policy added for the first time significant restrictions on receiving gifts from attorneys, and clarified the expectations for how employees are to handle conflicts-of-interest.

Below we provide an overview of current policies and practices with regard to conflicts-of-interest, with a particular focus on State Bar Rule of Procedure 2201, which governs the use of outside attorneys as "Special Deputy Trial Counsel" in cases where OCTC is recused because of a conflict-of-interest.  We also identify some material differences in the current policies and practices as compared with historical policies and practices as they existed during relevant time periods.

This information is intended to provide background, and to underscore the significance of the recent rule changes implemented by the State Bar.  It is not intended to explain all of the nuances in all of the State Bar's conflicts policies and practices.

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

### Rule 2201

Rule 2201 sets forth the requirements for when and how to assign disciplinary complaints or inquiries to outside counsel when OCTC recuses itself from the matter. The State Bar's internal procedures for referring matters to an SDTC or implementing an ethical screen once a conflict-of-interest has been identified are set out in detail in the State Bar's Policy Directive 2016-01, Ethical Screens (June 27, 2016, revised Sept. 2, 2021). As of June 2022, the State Bar's procedures for identifying, tracking, and addressing conflicts-of-interest in OCTC go significantly beyond what is required by Rule 2201.

The current version of Rule 2201 outlines two categories of OCTC recusals: mandatory and discretionary. The circumstances under which OCTC's recusal is mandatory are laid out in Rule 2201(a). This includes inquiries, complaints, or matters that are about the CTC, an attorney employed by the State Bar, an attorney member of the Board, or an attorney that has had any personal, financial, or professional relationship with the CTC within the past 12 months. Also included are matters the CTC believes will create the appearance that OCTC may not exercise its discretionary functions in an evenhanded manner, thus rendering it unlikely that an attorney will receive fair treatment or that the public will not be protected.

The second prong of Rule 2201 grants the CTC discretion to recuse OCTC where the inquiry, complaint, or matter is about an attorney who, within the past 12 months, has had a personal, financial, or professional relationship to the State Bar, its employees (other than the CTC), a member of the Board, or an attorney member of a State Bar committee or commission. The CTC may also recuse OCTC to avoid the appearance of impropriety.

### Procedures for Determining Conflicts

The State Bar relies on its employees to identify potential conflicts-of-interest at all stages. On an annual basis, the State Bar requires its employees to complete a questionnaire in which they disclose personal, financial, and professional relationships they have with licensed California attorneys. As of June 2022, all supervising attorneys, Assistant CTCs, Deputy CTCs, Special Assistants to the CTC, and the CTC are required to update their conflict-of-interest forms more frequently, on a quarterly basis. The State Bar then adds all identified attorneys to a list ("conflicts list") in its electronic case management system.

PRIVILEGED / WORK PRODUCT                                      87 | P a g e

550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:88**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Upon receipt of a State Bar matter, the employee processing the complaint is required to check whether the complainant or respondent is listed in the conflicts list. If so, action is taken in accordance with Policy Directive 2016-1, Ethical Screens. The completion of the conflict check is noted in the database for each complaint.

Next, according to recent revisions to the process, intake attorneys are required to review the matter and determine whether a potential conflict exists. OCTC investigators or attorneys receiving cases from intake are required to review the matter for any potential conflict before they do any work on the matter. This includes checking the current conflict-of-interest database, answering a series of prompts, and checking off that an "OCTC Conflict Check" has been completed. If the matter moves to an appeal, the appeals attorney assigned must also complete a conflict check and record it in the database.

The obligation to check for conflicts now continues throughout the duration of the matter. State Bar policy requires that employees notify their supervisors as soon as possible if a potential conflict arises or becomes known at any stage after a case has been opened. Finally, prior to closing or otherwise resolving the matter, any OCTC investigator or attorney assigned to the matter must again review the matter for conflicts, and again record the conflicts check in the database.

**<u>Appointment of Outside Attorneys under Rule 2201</u>**

As indicated above, when the State Bar identifies a conflict, OCTC can follow the process laid out in Rule 2201 to assign the case to outside examiners ("OEX") (attorneys contracted by the State Bar, also called SDTCs) or, in certain situations, recuse only those employees who have a connection to the case.

When the CTC determines that recusal is appropriate, the matter is referred to the SDTC Administrator ("Administrator"). The Administrator conducts a preliminary review of the inquiry, complaint, or matter. If the Administrator determines that no violation occurred, or that one cannot be proven, the Administrator closes the matter. Otherwise, the Administrator assigns the matter to an SDTC to further investigate. This preliminary review of inquiries and complaints must be completed within sixty days. A complainant may request a review of the

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Administrator's decision to close a complaint or inquiry; such a request for review is referred to an SDTC.

Once the Administrator refers the matter to an SDTC, the SDTC conducts the investigation. The Administrator and SDTC act in place of OCTC regarding any inquiry, complaint, or other matter and any resulting investigation or prosecution. Upon being contacted about the potential case, the SDTC is provided the name of the respondent, the complaining witness, and any potential witnesses by the Administrator. The SDTC is then required to confirm, in writing, whether they have any conflicts. If none, the SDTC is then provided the case materials to begin working on the assignment. If the SDTC notes a conflict, he or she is recused from the matter and another SDTC who is conflict-free is appointed to handle the complaint.

Should the SDTC decide to close the matter, a complainant can request a review of the SDTC's decision. That request is handled by the Administrator, who refers it to a different SDTC than was originally assigned to the matter. This (different) SDTC then determines whether to recommend to the Administrator that the matter be reopened for investigation or stay closed.

## Historical Practices and Prior Iterations of Rule 2201

The State Bar's current policies and practices regarding conflicts-of-interest represent a significant improvement on prior iterations of those policies. Regarding Rule of Procedure 2201 in particular, the current iteration of the rule, issued in December 2021, differs significantly from the prior iterations from 2006, 2016, January 2019 and November 2019. These material differences include:

- *Mandatory recusal*. Before 2019, Rule 2201 did not provide for the mandatory recusal of the entire OCTC when there was a conflict. Additionally, prior iterations provided the CTC with the discretion to recuse herself in certain situations that would be considered mandatory recusal situations under the current version of the rule. For example, in the 2006 version of Rule 2201, the CTC had the discretion (but was not required) to appoint an SDTC in investigations involving any member who had "a current or recent personal, financial, or professional relationship" to the State Bar, its employees, or a member of the Board. In the current version, a relationship with the CTC makes recusal mandatory.

550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:90

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

- *Administrator*. The role of Administrator was created in 2016. Prior to the creation of the Administrator role, the CTC or their designee conducted the preliminary review to determine whether an SDTC should be appointed to investigate the complaint or whether the case should be closed. The creation of the Administrator role represents a significant change from prior practice because OCTC employees are no longer performing preliminary reviews of cases that have been identified as conflicts cases. Formal procedures allowing a complainant to request review of a closed complaint were also added in 2016.

- *Oversight*. Beginning in 2016, the Chairperson of the Board's RAD Committee was empowered to designate the State Bar's Office of General Counsel to monitor all referrals to the Administrator and SDTC to maintain impartiality and confidentiality. Currently, the Administrator and/or Office of General Counsel periodically reports to the Board the number, nature, and disposition of inquiries, complaints, and investigations for which an SDTC has been appointed. Prior iterations of the Rule required the CTC to make these reports, but only upon the Board's request.

**Additional Policies**

As indicated above, the State Bar's new policies and procedures regarding conflicts-of-interest, implemented in June 2022, after our investigation began, go significantly beyond what is required by Rule 2201 and include prohibitions focused on the appearance of impropriety. As of June 2022, under Policy Directive 2022-05, no OCTC employee may participate (either directly or indirectly) in the review, investigation, or prosecution of any matter falling within the below categories:

A matter involving the CTC; a state bar employee; a member of the Board; or a person with a personal, financial, or professional relationship to the CTC.

- A matter involving any individual with whom the employee has (or has had in the past 12 months) a personal or professional relationship.

PRIVILEGED / WORK PRODUCT                                                    90 | P a g e

550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:91**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

- A matter involving a person whom the employee is aware has (or has had in the past 12 months), a personal or professional relationship with the State Bar or any other State bar employee, committee- or commission-member.[25]

- The employee holds (or has held in the past 12 months) a financial interest that could be affected by the resolution of the matter.

- The employee is aware that any other Bar employee holds, or within the last 12 months held, a financial interest that could be affected by the resolution of the matter.

- The matter could create the appearance that OCTC may not exercise its discretionary functions in an evenhanded manner or apply fair treatment.

Moreover, the new policies now go further in defining certain key terms (*i.e.*, what constitutes a "professional relationship") and provide helpful examples of scenarios that would present a conflict. For example, an individual would be deemed to have a "professional relationship" with a person if both the individual and the person share the same employer.

The rules regarding the acceptance of gifts have also been significantly widened. Prior to 2022, gifts from persons or organizations seeking to do business with the State Bar or whose activities are regulated or controlled by the State Bar were prohibited only where it could be ascertained that the gift was intended to influence the employee in their official duties. Now, no OCTC employee can receive any gift from any person or organization doing or seeking to do any business with the State Bar or whose activities are regulated or controlled by the State Bar. No OCTC attorney or investigator is allowed to accept any gift from any licensed California attorney unless there is a pre-existing personal or professional relationship between them that would have required the imposition of an ethical screen, regardless of the gift. Acceptance of any such gift will require that licensed California attorney to be listed on the OCTC employee's conflicts form.

---

[25] An exception exists where the employee has reported the potential conflict to their supervisor and a determination is made that either no conflict exists or that the employee with the conflict has been screened from the matter. Policy Directive 2022-05; *see also* Policy Directive 2016-01, Ethical Screening.

PRIVILEGED / WORK PRODUCT                                     91 | P a g e

550 South Hope Street | Suite 2330 | Los Angeles, California 90071

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

There have also been additional clarifications about permissible outside employment and business or volunteer relationships by OCTC attorneys. OCTC attorneys are generally not permitted to engage in the outside practice of law, with two limited exceptions: (1) providing non-criminal legal services to certain family members (assuming no interference with OCTC duties); and (2) assisting a pro bono legal services program with non-criminal pro bono legal services. Any OCTC attorney working with a legal services program is required to list each attorney employed by the established program—not just the attorneys on the matter in which they are assisting—on their conflicts form.

**Form 700**

In California, a public employee who "makes or influences governmental decisions" is required to complete and sign a Form 700 (Statement of Economic Interest). According to the California Fair Political Practices Commission, the Form 700 "provides necessary information to the public about an official's personal financial interests to ensure that officials are making decisions in the best interest of the public and not enhancing their personal finances." The form further "serves as a reminder to the public official of potential conflicts of interest so the official can abstain from making or participating in governmental decisions that are deemed conflicts of interest." The Forms 700 are required to be signed under penalty of perjury.

**Prosecutorial Ethics**

In addition to Rule 2201, internal procedures, and California's Rules of Professional Conduct that apply to all lawyers, government attorneys have additional conflict-of-interest rules and ethical obligations they must abide by. Prosecutors—government attorneys charged with enforcing the law against others on behalf of the public—are subject to even greater ethical considerations regarding conflicts-of-interest that require them to avoid even the appearance of impropriety. The existence of the appearance of impropriety is related to but separate from the existence of an actual conflict-of-interest, and the appearance of impropriety alone may render a government attorney's involvement in a case inappropriate even where there is no actual conflict-of-interest under the applicable rules. This is because the additional ethical considerations governing government attorneys' conflicts-of-interest are intended not only to provide for fairness in the actual administration of justice, but to protect and facilitate the public's confidence

www.halpernmay.com

550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:93

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

in the administration of justice and in the government's ability to prosecute cases fairly and objectively. This concept is embodied in case law, ethics opinions, and industry ethical standards.

California common law prohibits conflicts-of-interest in government actors that go beyond actual conflicts to relationships that create the appearance of impropriety. Under the common law, "[a] public officer is impliedly bound to exercise the powers conferred on him with disinterested skill, zeal, and diligence and primarily for the benefit of the public …. Actual injury is not the principle the law proceeds on. Fidelity in the agent is what is aimed at, and as a means of securing it the law will not permit him to place himself in a position in which he may be tempted by his own private interests to disregard those of his principal. This doctrine is generally applicable to private agents and trustees, but to public officers it applies with greater force, and sound policy requires that there be no relaxation of its stringency in any case that comes within its reason …." *Clark v. City of Hermosa Beach*, 48 Cal. App. 4th 1152, 1170–71 (1996) (quoting *Noble v. City of Palo Alto*, 89 Cal. App. 47, 51 (1928)).

Numerous decisions, including the State Bar's own ethics opinions, confirm that with respect to government attorneys, the appearance of impropriety in the handling of their duties can in and of itself be unethical and must be avoided. *See, e.g.*, State Bar Opinion 1981-63; California Attorney General's Office Opinion No. 07-807; *see also* California Attorney General's Office, Conflicts of Interest, *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/publications/coi.pdf. As discussed above, in recognition of the importance of avoiding the appearance of impropriety, the State Bar in 2022 implemented new policies that focus on the appearance of impropriety and restrict things like State Bar employees accepting outside employment or receiving gifts and other things of value from California attorneys.

Prosecutorial ethical standards can also be found in published guidance documents such as those from the American Bar Association and the United States Department of Justice.

The American Bar Association's Criminal Justice Standards for the Prosecution Function (Fourth Edition, 2017) provides model guidance that seeks to address these concerns. Standard 3-1.7, Conflicts of Interest, provides several applicable model rules. Subsection (a), for instance, requires that the "prosecutor [] know and abide by the ethical rules regarding conflicts of interest that apply in the jurisdiction, and

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

be sensitive to facts that may raise conflict issues." *Id*. Subsection (f) provides that "[t]he prosecutor should not permit the prosecutor's professional judgment or obligations to be affected by the prosecutor's personal, political, financial, professional, business, property, or other interests or relationships. A prosecutor should not allow interests in personal advancement or aggrandizement to affect judgments regarding what is in the best interests of justice in any case." *Id*. Finally, subsection (g) provides that "[t]he prosecutor should disclose to appropriate supervisory personnel any facts or interests that could reasonably be viewed as raising a potential conflict of interest." *Id*.

Applying these and related principles, the U.S. Department of Justice prohibits its employees not just "from participating in any matter in which he has a financial interest" but also "from participating in a criminal investigation or prosecution if he has a personal or political relationship with any person or organization substantially involved in the conduct that is the subject of the investigation or prosecution, or any person or organization which he knows has a specific and substantial interest that would be directly affected by the outcome of the investigation or prosecution." U.S. Department of Justice, Departmental Ethics Office, Conflicts, *available at* https://www.justice.gov/jmd/conflicts; *see also* San Francisco District Attorney's Office, Policy Directive – Conflicts of Interest, *available at* https://sfdistrictattorney.org/wp-content/uploads/2020/11/Conflicts-of-Interest.pdf.

California's Rules of Professional Conduct, Rule 1.7, establishes conflicts rules for all California lawyers including prosecutors. Subsection (b) of that Rule states that "[a] lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests." *Id*.; *see also* Rule 1.11, Special Conflicts of Interest for Former and Current Government Officials and Employees.

**Ex. 5:95**

*ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL*
*ATTORNEY WORK PRODUCT*

**Independent Investigation for the State Bar of California:**

**Addendum
to
Report of Investigation**

**February 23, 2023**



www.halpernmay.com
550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:96**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

# **INTRODUCTION**

Halpern May Ybarra Gelberg LLP ("Halpern May") was retained by the Board of Trustees (the "Board") of the State Bar of California (the "State Bar" or the "Bar") to conduct an independent, attorney-client privileged and confidential investigation into whether the State Bar's handling of past discipline complaints against Thomas V. Girardi ("Girardi") was affected by Girardi's connections to or influence at the State Bar and to identify actions by anyone with ties to the State Bar that may constitute malfeasance in how discipline complaints against Girardi were handled. We delivered the Report of Investigation to the State Bar on February 4, 2023. We now submit this addendum to our Report of Investigation, through which we correct typographical and other errors in our original Report of Investigation and add additional information regarding certain State Bar policies. None of the changes or additions contained herein affect the substantive findings of our investigation or the conclusions that we reached based on factual findings.

www.halpernmay.com

550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:97**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

## **TYPOGRAPHICAL AND OTHER CORRECTIONS**

Halpern May identifies the following errors, typographical or otherwise, in the Report of Investigation, and the corrections to those errors:

- Page 5: the sentence stating, "We discovered that Hawley had been ghostwriting case analysis **memorandums** for conflict cases and passing them off as the work product of the independent conflict counsel, including on a Girardi case" is amended to state, "We discovered that Hawley had been ghostwriting case analysis **memoranda** for conflict cases and passing them off as the work product of the independent conflict counsel, including on a Girardi case."

- Page 24: the sentence stating, "Due to **Girard's** mental state and assertion of his Fifth Amendment rights . . . ." is amended to state, "Due to **Girardi's** mental state and assertion of his Fifth Amendment rights . . . ."

- Page 36: the sentence stating, "It is unclear what, if any, influence Girardi was able to exert on State Bar cases against him through the relationships he built by **participating** the selection process for State Bar Board members, but one former OCTC investigator informed us that a Board member may have intervened in a case against Girardi in the 1990s" is amended to state, "It is unclear what, if any, influence Girardi was able to exert on State Bar cases against him through the relationships he built by **participating in** the selection process for State Bar Board members, but one former OCTC investigator informed us that a Board member may have intervened in a case against Girardi in the 1990s."

- Page 35 and Appendix A (page 83) state that attorney members of the State Bar's Board of Trustees were elected until 2018, after which time they were appointed. These assertions are amended to state that the State Bar's Board of Trustees transitioned from an elected board to an appointed board over a period of time. Pursuant to SB 36, which was signed into law in 2017, all board members are appointed (though some members had been appointed, rather than elected, prior to SB 36 going into full effect).

550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:98**

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

## ADDITIONAL INFORMATION REGARDING STATE BAR CONFLICTS-OF-INTEREST POLICIES APPLICABLE OUTSIDE THE OFFICE OF CHIEF TRIAL COUNSEL

In Appendix B to our report, we detailed information regarding the State Bar's conflicts-of-interest policies and how those policies have changed over time, focusing on those policies that would have applied to employees in the Office of Chief Trial Counsel ("OCTC"), who were responsible for the handling of Girardi cases. Below, we provide additional information regarding conflicts-of-interest policies that apply to State Bar employees, officers, and affiliates outside OCTC. As with the information provided in our Report of Investigation, the information below is intended to provide background and to underscore the significance of the recent rule changes implemented by the State Bar. It is not intended to explain all of the nuances in all of the State Bar's conflicts policies and practices.

In 2021, the State Bar put into place an Incompatible Activities policy that applies to all State Bar employees and clarifies that State Bar employees are subject to the requirements of Section 19990 of the Government Code, which provides in part that "a state officer or employee shall not engage in any employment, activity, or enterprise which is clearly inconsistent, incompatible, in conflict with, or inimical to his or her duties as a state officer or employee." This policy prohibits, *inter alia*, the misuse of the employee's State Bar position, outside employment, and the receiving of gifts, particularly from lawyers or others with business before the State Bar.

Additionally, the State Bar has maintained a Conflict-of-Interest Code that applies to all designated employees. The Code has been revised over the years and currently includes decisionmakers from across the State Bar's offices, including in the Executive Director's Office, the Office of the General Counsel, and the Office of Chief Trial Counsel. The Code mandates that certain disclosures be made, including through the regular filing of statements of financial interest. In 2022, the State Bar launched an online portal for the filing of statements of economic interests (*i.e.*, the financial disclosures in the Forms 700). The Code also contains restrictions on the acceptance of gifts. Importantly, the Code contains standards for disqualification of a designated employee from participating in certain decision-making on behalf of the State Bar where the employee has specified connections to a person or entity affected by the decision-making.

www.halpernmay.com

550 South Hope Street | Suite 2330 | Los Angeles, California 90071

Ex. 5:99

HALPERN MAY YBARRA GELBERG LLP
ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL
ATTORNEY WORK PRODUCT

Board members are subject to Business and Professions Code section 6036, which requires board members to disqualify themselves from matters in which they have a financial interest or a personal nonfinancial interest.  In addition, they are subject to a Conflict-of-Interest Code and are also required to file statements of economic interest (*i.e.*, Forms 700).

www.halpernmay.com

550 South Hope Street | Suite 2330 | Los Angeles, California 90071

**Ex. 5:100**

# EXHIBIT 6

# EXHIBIT 6

# A TEXTBOOK
# PROBATE CONSPIRACY



**RAY & MARI BYRNES**
RENTERS – FACING EVICTION[1] – WANT PB RESIDENCE[2]

Carson and Byrnes take Teresa to lawyer in initial attempt to change the beneficiaries.[20]

Byrnes & Munda secretly opening Teresa's mail, investigating her finances, and poisoning her against the Willis family.[3]

**CHRISTINE MUNDA**
NEIGHBOR–DRUG DEALER[4]
SEES AN OPPORTUNITY

Carson to sell PB property to Byrnes.[5]

Byrnes arranges for Teresa's airline tickets to kidnap Teresa to Carson's home in Indiana.[8]

All co-conspirators actively isolate Teresa from Willis faction and talk to each other.[21]

Carson kidnaps Teresa and secretes her at Munda's house.[7]

Carson and Munda "hire" Stoffel for Teresa.[9]

**BARBARA CARSON**
ESTRANGED IN SISTER[10]
DESPERATE FOR MONEY[11]
HISTORY OF SEEKING TO GAIN CONTROL OF OTHERS[12]

Carson uses Munda to fly Teresa back to Indiana.[8]

Stoffel effectively representing Carson[13]

**JAMES STOFFEL**
PROBATE ATTORNEY
MASTER OF "THE GAME"

Carson closes Teresa's bank accounts and steals her papers.[22]

Stoffel buries medical report establishing Teresa's total incompetency, pretending to "represent" her. His illegal trust lawsuit is vehicle used to drain Teresa's estate.[15]

Carson leaves note in PB planning to sell Teresa's home.[14] She has no estate interest. Grunow later tries to evict Myzsa from that home, to clear out its occupant anticipatory to a probate sale.

Carson, Munda, and Stoffel work together on bogus TRO's to separate Teresa from Willis family.[23] Carson, in control of Teresa, and Stoffel unwind the estate plan that had been in place for 12 years.[6]

Stoffel coordinates bogus *ex parte* motion with Grunow to remove Myzsa as trustee and seize control of the estate.[25]

Teresa's cash disappears.[16]

**PATRICIA FISTER**
PROBATE "DUMMY" CLIENT: REPLACEMENT TRUSTEE; DOES WHAT SHE'S TOLD BY LAWYERS[17]

Common plan is to extract as much money and assets as they can get away with, aka, "steal the estate"[18]

**LINDA GRUNOW**
PROBATE ATTORNEY – REPRESENTS FISTER KNOWS JUDGE[19]

Grunow utilizes Fister as dummy client as replacement trustee for Myzsa.[17]

Ex. 6:1

# EXHIBIT 7

# EXHIBIT 7

# TERESA McCLAIN IN 2015

## UTTERLY INCOMPETENT TO MAKE
## ANY SERIOUS DECISION



**SEVERE MEMORY LOSS[1]**

**EASY TO MANIPULATE[2]**

**UNABLE TO COOK/ FEED HERSELF[3]**

**UNABLE TO CLOTHE HERSELF[4]**

**PROHIBITED BY ESTATE ATTORNEY FROM CHANGING ESTATE PLAN[5]**

**NEEDS 24-HOUR SUPERVISION FOR HER OWN SAFETY[6]**

**CANNOT ARTICULATE MORE THAN A FEW SENTENCES AT A TIME[7]**

**MUST BE TOLD TO SHOWER[8]**

**SCORES 2/30 ON MONTREAL COMPETENCY EXAM[9]**

**DEEMED SEVERELY INCOMPETENT BY MEDICAL DOCTOR (9/15)[10]**

**UNFIT TO MANAGE FINANCES[11]**

**UNABLE TO DRIVE/ DISORIENTED[12]**

**INTELLECTUALLY CRIPPLED: E.G., ASKED WHAT MONTH IT IS, ANSWERS "34"[13]**

**EASY TO GET HER TO SIGN ANY DOCUMENT[14]**

**CAN BE EASILY LIED TO: THINKS TRIP TO INDIANA IS A TRIP TO HAWAII TO SEE BILLENA[17]**

**NUMEROUS WITNESSES: MEMORY LAPSES, RECYCLING CONVERSATIONS, CAN'T IDENTIFY FAMILY MEMBERS[16]**

**PARANOID RE MONEY[19]**

**SUFFERING FROM DEMENTIA[18]**

**Ex. 7:1**

# EXHIBIT 8

# EXHIBIT 8

# COST CERTIFICATE TABLE

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| **2012*** | | | |
| 1. | 2012-11-28 | Petersen, Paul Cost Certificate 11O12503 | $14,989.42 |
| | | | |
| **2013*** | | | |
| | | | |
| | | | |
| **2014*** | | | |
| | | | |
| | | | |
| **2015*** | | | |
| 2. | 2015-03-25 | Seeman, Paul Cost Certificate 12C14468 | $2,392.00 |
| | | | |
| | | | |
| **2018*** | | | |
| 3. | 2018-05-09 | Sizemore, Patrick Cost Certificate 15O15715 | $3,215.00 |
| 4. | 2018-11-07 | Howell, James Cost Certificate 17O03191 | $7,998.00 |
| 5. | 2018-11-07 | Kang, Stephen Cost Certificate 15C14232 | $2,567.00 |
| 6. | 2018-11-07 | Tabor, Allan Cost Certificate 15O15448 | $21,774.84 |
| 7. | 2018-11-14 | Ibold, James Cost Certificate 17C04069 | $2,699.00 |
| 8. | 2018-11-14 | Kimmel, Stanley Cost Certificate 16O12311 | $3,857.00 |
| 9. | 2018-11-14 | Raynsford, Rick Cost Certificate 16O11865 | $18,877.57 |
| 10. | 2018-11-21 | Nikkhoo, Sanam Cost Certificate 17C06508 | $14,029.52 |
| 11. | 2018-12-12 | Ellis, Mark Cost Certificate 17O06529 | $6,114.00 |
| 12. | 2018-12-12 | Wallace, Jonathan Cost Certificate 17C07003 | $5,789.00 |
| 13. | 2018-12-19 | Baker, Brian Cost Certificate 17O04441 | $3,857.00 |
| 14. | 2018-12-19 | Sodhi, Jakrun Cost Certificate 15O13337 | $20,033.08 |
| 15. | 2018-12-19 | Stanton, Paul Cost Certificate 17H04125 | $10,583.00 |
| **2019*** | | | |
| 16. | 2019-01-16 | Odgers, Matthew Cost Certificate 18O11318 | $5,963.00 |
| 17. | 2019-01-16 | Paik, Judy Cost Certificate 18C10191 | $3,232.00 |
| 18. | 2019-01-16 | Price, Stuart Cost Certificate 17O06877 | $3,857.00 |
| 19. | 2019-01-16 | Wallace, Alexander Cost Certificate 16O12638 | $4,910.00 |
| 20. | 2019-01-16 | Wang, Adam Cost Certificate 16O14942 | $7,998.00 |
| 21. | 2019-01-16 | Zorr, Barbara Cost Certificate 17N06605 | $7,534.00 |
| 22. | 2019-01-23 | Brown, Michael Cost Certificate 16O17764 | $5,693.00 |
| 23. | 2019-01-23 | Huprich, Joseph Cost Certificate 18O11543 | $3,300.00 |
| 24. | 2019-02-13 | Block, Victor Cost Certificate 18O11200 | $5,406.00 |
| 25. | 2019-02-13 | Hackett, Kyle Cost Certificate 17O02962 | $4,790.00 |
| 26. | 2019-02-13 | Hamilton, Mark Cost Certificate 18J11755 | $2,585.00 |
| 27. | 2019-02-13 | Medina, Edelmira Cost Certificate 18H16384 | $2,585.00 |
| 28. | 2019-02-13 | Menn, William II Cost Certificate 17O07313 | $4,790.00 |
| 29. | 2019-02-13 | Pearson, Matthew Cost Certificate 18O10733 | $4,353.00 |

**Ex. 8:1**

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| 30. | 2019-02-13 | Seegmiller, William Cost Certificate 17O00123 | $9,671.60 |
| 31. | 2019-02-14 | Libby, Thomas Cost Certificate 17O01582 | $4,353.00 |
| 32. | 2019-02-20 | Pabros, Steven Cost Certificate 17O05369 | $3,300.00 |
| 33. | 2019-02-27 | Coats, Richard Cost Certificate 18O17940 | $3,300.00 |
| 34. | 2019-02-27 | Contos, John Cost Certificate 17O00634 | $6,983.00 |
| 35. | 2019-02-27 | Holmes, Mark Cost Certificate 17O05682 | $3,300.00 |
| 36. | 2019-02-27 | Kaplan, Mark Cost Certificate 16O10922 | $6,757.92 |
| 37. | 2019-02-27 | Lee, Edward Cost Certificate 16O18002 | $3,522.00 |
| 38. | 2019-02-27 | Na, Sheen Cost Certificate 15O15994 | $26,987.74 |
| 39. | 2019-02-27 | Salem, Edmond Cost Certificate 16O17243 | $8,125.00 |
| 40. | 2019-02-27 | Sizemore, Patrick Cost Certificate 15O15449 | $6,459.00 |
| 41. | 2019-03-06 | Lee, Terrence Cost Certificate 18C12812 | $2,699.00 |
| 42. | 2019-03-06 | Smith, Spencer Cost Certificate 17O00668 | $21,612.50 |
| 43. | 2019-03-13 | Ganz, Andrew Cost Certificate 14O02363 | $19,749.68 |
| 44. | 2019-03-20 | Broidy, Alan Cost Certificate 17O03155 | $7,167.00 |
| 45. | 2019-03-20 | Dervaes, R. Scott Cost Certificate 17C06638 | $3,232.00 |
| 46. | 2019-03-20 | Weidinger, Christopher Cost Certificate 15O14147 | $7,756.45 |
| 47. | 2019-03-27 | Albert, Lenore Cost Certificate 16O12958 | $18,841.90 |
| 48. | 2019-03-27 | Amezaga, Rafael Cost Certificate 18C12888 | $7,998.00 |
| 49. | 2019-03-27 | Davis, Steven Cost Certificate 16C12076 | $2,649.59 |
| 50. | 2019-03-27 | Koppelman, David Cost Certificate 17O01256 | $3,857.00 |
| 51. | 2019-03-27 | Langmuir-Logan, Garfield Cost Certificate 16O10267 | $8,022.00 |
| 52. | 2019-03-27 | Thomason, Kevin Cost Certificate 15C11251 | $2,699.00 |
| 53. | 2019-04-03 | Liang, Ken Cost Certificate 15C12444 | $2,602.00 |
| 54. | 2019-04-03 | Machado, Robert Cost Certificate 16C13277 | $5,640.00 |
| 55. | 2019-04-03 | Silva, David Cost Certificate 16O11358 | $5,409.63 |
| 56. | 2019-04-10 | Henderson, Shannon Cost Certificate 17O05536 | $3,857.00 |
| 57. | 2019-04-10 | McGhee, Perfisity Cost Certificate 17O03361 | $7,998.00 |
| 58. | 2019-04-10 | Perez, George Cost Certificate 17O06790 | $4,910.00 |
| 59. | 2019-04-10 | Ratzlaff, Ruth Cost Certificate 17O00109 | $3,857.00 |
| 60. | 2019-04-10 | Ronca, Stephen Cost Certificate 18O14047 | $4,790.00 |
| 61. | 2019-04-17 | Anderson, Ernest Cost Certificate 17O04749 | $18,142.00 |
| 62. | 2019-04-17 | Astan, Adam Cost Certificate 17O05894 | $6,114.00 |
| 63. | 2019-04-17 | Rafalovich, Steven Cost Certificate 16C10200 | $3,232.00 |
| 64. | 2019-04-17 | Smith, Sandra Cost Certificate 17O01968 | $7,157.00 |
| 65. | 2019-04-17 | Thompson, Trent Cost Certificate 15O15763 | $4,697.25 |
| 66. | 2019-04-24 | Koiman, Daniela Cost Certificate 18O10871 | $4,910.00 |
| 67. | 2019-04-24 | Ramos, Jannette Cost Certificate 16O11939 | $4,667.00 |
| 68. | 2019-04-24 | Swinder, Jimmy Cost Certificate 16O17926 | $13,633.42 |
| 69. | 2019-04-29 | Astan, Adam Cost Certificate 17O05894 | $3,857.00 |
| 70. | 2019-05-01 | Burlison, Robert Cost Certificate 18O10501 | $3,857.00 |
| 71. | 2019-05-01 | Conkle, Christopher Cost Certificate SBC19O30044 | $3,300.00 |
| 72. | 2019-05-01 | Dorey, Dee Cost Certificate 17O02894 | $4,790.00 |
| 73. | 2019-05-01 | Krupnick, Matthew Cost Certificate 15O12906 | $4,351.88 |
| 74. | 2019-05-01 | Nguyen, Keith Cost Certificate 18H16147 | $2,585.00 |
| 75. | 2019-05-02 | Ringquist, Julie Cost Certificate 18O11220 | $7,998.00 |

**Ex. 8:2**

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| 76. | 2019-05-08 | Contreras, Anthony Cost Certificate 16O14293 | $3,857.00 |
| 77. | 2019-05-08 | Goulding, Suzanne Cost Certificate 17O04328 | $3,857.00 |
| 78. | 2019-05-08 | Ostrove, Kenneth Cost Certificate 16O13656 | $7,167.00 |
| 79. | 2019-05-08 | Pagkas, Anthony Cost Certificate 16N13168 | $8,313.00 |
| 80. | 2019-05-08 | Palik, Anthony Cost Certificate 14O05621 | $13,263.00 |
| 81. | 2019-05-10 | Martinez, Carlos Cost Certificate 17O05632 | $7,998.00 |
| 82. | 2019-05-15 | Christensen, Terry Cost Certificate 06C10695 | $2,699.00 |
| 83. | 2019-05-15 | Donahue, Matthew Cost Certificate 18C16471 | $2,699.00 |
| 84. | 2019-05-15 | Gerber-Gressier, Pamela Cost Certificate 14C02964 | $3,232.00 |
| 85. | 2019-05-15 | Lindquist, Theodore Cost Certificate 17O06639 | $7,998.00 |
| 86. | 2019-05-15 | Renshaw, Steven Cost Certificate 18O10073 | $7,609.00 |
| 87. | 2019-05-15 | Sarian, Saro Cost Certificate 16C14610 | $3,339.00 |
| 88. | 2019-05-16 | Amaya, Maria Cost Certificate 16O15037 | $3,758.00 |
| 89. | 2019-05-16 | Thurbon, Robert Cost Certificate 12O11672 | $7,998.00 |
| 90. | 2019-05-22 | Boles, James Cost Certificate 17O04960 | $11,008.00 |
| 91. | 2019-05-22 | Colman, Phyllis Cost Certificate 18O13544 | $3,857.00 |
| 92. | 2019-05-22 | Crane, Robert Cost Certificate 17O00213 | $4,790.00 |
| 93. | 2019-05-22 | Meizlik, James Cost Certificate 16O17366 | $3,857.00 |
| 94. | 2019-05-22 | Reynolds, Kathryn Cost Certificate 15O11352 | $4,790.00 |
| 95. | 2019-05-22 | Shoemaker, Douglas Cost Certificate 18N14227 | $10,742.00 |
| 96. | 2019-05-22 | White, Louis Cost Certificate 18C11038 | $2,699.00 |
| 97. | 2019-05-22 | Wilson, Matthew Cost Certificate 18J14406 | $2,660.00 |
| 98. | 2019-05-29 | Golden, Stephen Cost Certificate 17O06078 | $9,414.00 |
| 99. | 2019-06-05 | Amponsah, Leslie Cost Certificate 17O06931 | $24,497.00 |
| 100. | 2019-06-05 | Beck, William Cost Certificate 17O05016 | $3,970.21 |
| 101. | 2019-06-05 | Brodsky, Michael Cost Certificate 18C16786 | $9,583.35 |
| 102. | 2019-06-05 | Carruthers, Dennis Cost Certificate 16O14594 | $3,857.00 |
| 103. | 2019-06-05 | Falah, Mona Cost Certificate 17C03018 | $2,629.00 |
| 104. | 2019-06-05 | Fletcher, Charles Cost Certificate 17O04082 | $9,273.00 |
| 105. | 2019-06-05 | Fuess, William Cost Certificate 18J13808 | $2,585.00 |
| 106. | 2019-06-05 | Gallagher, Mark Cost Certificate 18O13772 | $4,790.00 |
| 107. | 2019-06-05 | Mascott, Owen Cost Certificate 18O10561 | $3,857.00 |
| 108. | 2019-06-12 | Adams, Benjamin Cost Certificate 16C15841 | $2,699.00 |
| 109. | 2019-06-12 | Bobus, Richard Cost Certificate 16O14185 | $30,315.23 |
| 110. | 2019-06-12 | Haddon, Mark Cost Certificate 16O14295 | $22,278.05 |
| 111. | 2019-06-12 | Valdivia, Raul Cost Certificate 16C15305 | $2,757.00 |
| 112. | 2019-06-18 | Crowley, John Cost Certificate 16O13071 | $19,286.25 |
| 113. | 2019-06-19 | DeBose, Keith Cost Certificate 16C13277 | $5,640.00 |
| 114. | 2019-06-19 | Lewis, Michael Cost Certificate 17O07153 | $4,790.00 |
| 115. | 2019-06-19 | Perez, Carlos Cost Certificate 17C03403 | $3,232.00 |
| 116. | 2019-06-19 | Young, Fanya Cost Certificate 18H12248 | $2,518.00 |
| 117. | 2019-06-25 | Thiel, Adam Cost Certificate 18C14945 | $2,699.00 |
| 118. | 2019-06-26 | Atwater, Bruce Cost Certificate 15O15635 | $3,669.00 |
| 119. | 2019-06-26 | Bedford, Carol Cost Certificate 17O06709 | $4,810.11 |
| 120. | 2019-06-26 | Ramirez, Mina Cost Certificate 17O00962 | $15,085.00 |
| 121. | 2019-07-03 | Gillis, Thomas Cost Certificate 16O10780 | $8,250.00 |

**Ex. 8:3**

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| 122. | 2019-07-03 | Iler, Douglas Cost Certificate 16O13006 | $22,865.50 |
| 123. | 2019-07-03 | Maki, Lisa Cost Certificate 16O13110 | $24,831.45 |
| 124. | 2019-07-03 | Miller, Dane Cost Certificate 17N07478 | $2,744.00 |
| 125. | 2019-07-03 | Mitts, Gregory Cost Certificate 13O10003 | $11,406.73 |
| 126. | 2019-07-03 | Sandoval, Arturo Cost Certificate 15C15734 | $2,629.00 |
| 127. | 2019-07-03 | Small, Warren Cost Certificate 12O15334 | $7,223.73 |
| 128. | 2019-07-03 | Weiss, Mogeeb Cost Certificate 16O17184 | $23,105.73 |
| 129. | 2019-07-17 | Dunne, Anthony Cost Certificate 17O06606 | $4,790.00 |
| 130. | 2019-07-17 | Gomes, Timothy Cost Certificate 18PM18139 | $2,585.00 |
| 131. | 2019-07-24 | Boasberg, Albert Cost Certificate 18C13619 | $2,699.00 |
| 132. | 2019-07-24 | Lavender, Jason Cost Certificate 18C16261 | $2,903.50 |
| 133. | 2019-07-24 | O'Keefe, Sean Cost Certificate 16C10692 | $2,660.00 |
| 134. | 2019-07-24 | Spirtos, Nicholas Cost Certificate 17O05707 | $4,790.00 |
| 135. | 2019-07-31 | Klugman, Steven Cost Certificate 17O05345 | $7,998.00 |
| 136. | 2019-08-01 | Fuller, Chad Cost Certificate 17C02077 | $2,699.00 |
| 137. | 2019-08-07 | Shankin-Murphy, Hilary Cost Certificate 18O13562 | $4,790.00 |
| 138. | 2019-08-14 | Broiles, Gregory Cost Certificate 18O15323 | $5,843.00 |
| 139. | 2019-08-14 | Schwartz, Donald Cost Certificate 16O11694 | $20,866.00 |
| 140. | 2019-08-21 | Khaliq, Imran Cost Certificate 17C05540 | $21,562.82 |
| 141. | 2019-08-28 | Aviles, Moises Cost Certificate 18O13124 | $18,328.44 |
| 142. | 2019-09-11 | Hanley, Terri Cost Certificate 18N12313 | $7,534.00 |
| 143. | 2019-09-11 | Harris, Jeffrey Cost Certificate 16O10299 | $13,004.86 |
| 144. | 2019-09-11 | Katz, Charles Cost Certificate 18H15995 | $2,718.32 |
| 145. | 2019-09-18 | Geilim-Morales, Gilbert Cost Certificate 17O00029 | $19,090.00 |
| 146. | 2019-09-18 | Gulden, Michael Cost Certificate 17O02646 | $10,134.84 |
| 147. | 2019-09-25 | Coleridge, Peter Cost Certificate 16O10870 | $7,228.36 |
| 148. | 2019-09-25 | Diab, Tony Cost Certificate 17O04174 | $4,859.18 |
| 149. | 2019-09-25 | Esposito, Edward Cost Certificate 18O16416 | $4,790.00 |
| 150. | 2019-09-25 | Stein, Douglas Cost Certificate 18O16529 | $3,797.00 |
| 151. | 2019-10-08 | Tran, Oanh Cost Certificate 18C12747 | $2,699.00 |
| 152. | 2019-10-09 | Kent, William Cost Certificate 17O03016 | $4,790.00 |
| 153. | 2019-10-09 | Lu, David Cost Certificate 17O04346 | $5,843.00 |
| 154. | 2019-10-30 | Ginther, Fergus Cost Certificate 16O13049 | $4,790.00 |
| 155. | 2019-10-30 | Reed, Michael Cost Certificate 18C12370 | $7,598.00 |
| 156. | 2019-10-30 | Wood, Frederick Cost Certificate 18O17578 | $4,949.00 |
| 157. | 2019-11-06 | Khishaveh, Klayton Cost Certificate 18O12251 | $4,790.00 |
| 158. | 2019-11-27 | Mitchell, Walter Cost Certificate 18O12028 | $8,043.00 |
| 159. | 2019-11-27 | Reyes, Carlo Cost Certificate 18O10145 | $5,843.00 |
| 160. | 2019-11-27 | Vo, Phuong Cost Certificate 16C15305 | $2,757.00 |
| 161. | 2019-11-27 | Weinkauf, Steven Cost Certificate 18C10645 | $5,976.00 |
| 162. | 2019-12-04 | Baratta, James Cost Certificate 18C11063 | $2,864.00 |
| 163. | 2019-12-04 | Wiseblood, David Cost Certificate 17O01338 | $7,949.00 |
| 164. | 2019-12-11 | Vinzant, Dayle Cost Certificate 15C15997 | $2,567.00 |
| **2020*** | | | |
| 165. | 2020-01-15 | Toran, Zachary Cost Certificate 15N15198 | $2,599.00 |
| 166. | 2020-03-04 | Hoffman, Nathan Cost Certificate 12C16181 | $13,935.50 |

**Ex. 8:4**

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| 167. | 2020-03-18 | Jackson, Michele Cost Certificate 15O13011 | $5,671.00 |
| 168. | 2020-03-18 | Medina, Richard Cost Certificate 14C06112 | $2,567.00 |
| 169. | 2020-04-29 | Willis, Richard Cost Certificate 17O05973 | $4,790.00 |
| 170. | 2020-05-06 | Brock, Kenneth Cost Certificate 17C00153 | $4,681.00 |
| 171. | 2020-05-06 | Hinkle, Larry Cost Certificate 18O11352 | $6,037.00 |
| 172. | 2020-05-13 | Rumery, Richard Cost Certificate 16O16588 | $4,457.00 |
| 173. | 2020-06-10 | Richmond, Michael Cost Certificate 16C14610 | $3,339.00 |
| 174. | 2020-06-10 | Terbeek, Marc Cost Certificate 17C01402 | $21,667.40 |
| 175. | 2020-06-24 | Mendelsohn, Richard Cost Certificate 16O16352 | $4,790.00 |
| 176. | 2020-07-22 | Boyajian, Berj Cost Certificate 18C14167 | $6,508.00 |
| 177. | 2020-07-29 | Beury, Donald Cost Certificate 17O01111 | $22,315.65 |
| 178. | 2020-07-29 | Hamza, Moataz Cost Certificate 16O11708 | $8,763.41 |
| 179. | 2020-08-03 | Abdullah, Aliyah Cost Certificate 16C12076 | $2,649.59 |
| 180. | 2020-10-28 | Field, B. Harlan Cost Certificate 18C12607 | $2,699.00 |
| 181. | 2020-11-04 | Leigh, Gilbert Cost Certificate 16O10691 | $14,975.00 |
| 182. | 2020-11-18 | Sahni, Ajay Cost Certificate 17C05732 | $2,699.00 |
| 183. | 2020-12-02 | Schwarcz, David Cost Certificate 17C00851 | $19,386.00 |
| | | **2021*** | |
| 184. | 2021-02-03 | Lindner, Charles Cost Certificate 15O15400 | $7,658.00 |
| 185. | 2021-02-24 | Bayrooti, Haley Cost Certificate 13C15985 | $7,885.00 |
| 186. | 2021-02-24 | Koebel, Philip Cost Certificate 15O13356 | $23,357.40 |
| 187. | 2021-03-17 | Roundy, Ronald Cost Certificate 16O17456 | $8,069.00 |
| 188. | 2021-03-17 | Shohet, George Cost Certificate 18C13540 | $2,399.00 |
| 189. | 2021-03-26 | Shohet, George Cost Certificate 18C13540 | $2,699.00 |
| 190. | 2021-04-14 | Salas, Victor Cost Certificate 16O10058 | $10,198.00 |
| 191. | 2021-05-05 | Lamarre, David Cost Certificate 18C10230 | $11,187.00 |
| 192. | 2021-05-19 | Darvish, Alon Cost Certificate 17O00800 | $18,256.00 |
| 193. | 2021-07-21 | Lopez De Tirado, Sergio Cost Certificate 18O18422 | $4,949.00 |
| 194. | 2021-09-15 | Wilson, Andrew Cost Certificate 18C10110 | $2,736.00 |
| 195. | 2021-10-06 | Pridham, Grenville Cost Certificate 17O04373 | $10,175.00 |
| 196. | 2021-11-24 | Miller, James Cost Certificate 17C05406 | $2,683.00 |
| | | **2022*** | |
| 197. | 2022-01-05 | Farrace, Robert Cost Certificate 15C12988 | $2,699.00 |
| 198. | 2022-01-12 | Stein, Mitchell Cost Certificate 11C19532 | $2,487.76 |
| 199. | 2022-03-02 | Chan, Victoria Cost Certificate 17C06796 | $2,629.00 |
| 200. | 2022-03-09 | Wells, Michael Cost Certificate SBC22O30009 | $3,558.00 |
| 201. | 2022-05-05 | Urias, Gabriel Cost Certificate SBC22O30013 | $4,159.00 |
| 202. | 2022-06-22 | Kaufman, David Cost Certificate SBC22H30001 | $8,624.00 |
| 203. | 2022-07-27 | Lund, Eric Cost Certificate 16C17802 | $2,699.00 |
| 204. | 2022-08-03 | Bartlett, Robert Cost Certificate 17O05188 | $7,167.00 |
| 205. | 2022-08-10 | Verbeck, Alexander Cost Certificate SBC22O30089 | $11,308.00 |
| 206. | 2022-09-14 | Coghlan, Stephen Cost Certificate SBC22O30084 | $11,308.00 |
| 207. | 2022-09-14 | De Gerold, Jehu Cost Certificate 15C15789 | $2,830.20 |
| 208. | 2022-09-14 | Valera, Viterbo Cost Certificate SBC22O30629 | $3,693.00 |
| 209. | 2022-10-12 | Tabor, Allan Cost Certificate SBC22O30192 | $8,952.00 |
| 210. | 2022-10-19 | Salzwedel, William Cost Certificate 15O15162 | $22,029.40 |

**Ex. 8:5**

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| 211. | 2022-10-21 | Jonoubi, Soheila Cost Certificate 17O03217 | $11,691.00 |
| 212. | 2022-11-02 | Moreno, Kathleen Cost Certificate SBC22O30441 | $4,317.00 |
| 213. | 2022-11-02 | Na, Sheen Cost Certificate SBC22O30036 | $5,362.00 |
| 214. | 2022-11-02 | Sweigart, Stephen Cost Certificate SBC20O30550 | $10,916.00 |
| 215. | 2022-11-09 | Vanderschuit, Kent Cost Certificate SBC22O30092 | $5,362.00 |
| 216. | 2022-11-23 | Ham, James Cost Certificate SBC22O30632 | $5,495.00 |
| 217. | 2022-11-23 | James, David Cost Certificate SBC22H30645 | $2,893.00 |
| 218. | 2022-11-23 | Manock, Charles Cost Certificate SBC22O30632 | $5,495.00 |
| 219. | 2022-11-23 | Oganesyan, Gevork Cost Certificate SBC22N30194 | $6,736.00 |
| 220. | 2022-11-23 | Silva, David Cost Certificate SBC22O30137 | $5,362.00 |
| 221. | 2022-11-23 | White, James Cost Certificate SBC22O30019 | $6,843.00 |
| 222. | 2022-12-07 | Austin, Leroy Cost Certificate SBC22O30190 | $25,000.00 |
| 223. | 2022-12-07 | Nguyen, Caryn Cost Certificate SBC22O30911 | $5,574.00 |
| 224. | 2022-12-12 | Gilburg, Alexander Cost Certificate SBC22O30401 | $4,317.00 |
| 225. | 2022-12-14 | Brown, Charles Cost Certificate SBC22H30144 | $8,405.00 |
| 226. | 2022-12-14 | Hasan, Shahed Cost Certificate SBC22O30570 | $4,317.00 |
| 227. | 2022-12-14 | Marchetti, Albert Cost Certificate SBC22O30349 | $4,317.00 |
| 228. | 2022-12-14 | Schenck, Douglas Cost Certificate 17C00855 | $2,629.00 |
| 229. | 2022-12-28 | Dudensing, Janice Cost Certificate SBC22O30633 | $10,207.00 |
| | | **2023*** | |
| 230. | 2023-01-11 | Chang, Steve Cost Certificate SBC22O30886 | $4,317.00 |
| 231. | 2023-01-11 | Fargey, Micah Cost Certificate SBC22O30347 | $5,362.00 |
| 232. | 2023-01-11 | Kagel, David Cost Certificate SBC22O30016 | $5,165.00 |
| 233. | 2023-01-11 | Tu, Yu-Ching Cost Certificate SBC22O30793 | $6,843.00 |
| 234. | 2023-01-11 | Yang, Elizabeth Cost Certificate SBC22J30501 | $2,893.00 |
| 235. | 2023-01-13 | Shegerian, Cortney Cost Certificate SBC22O30567 | $4,317.00 |
| 236. | 2023-01-18 | Folland, Brian Nicholas Cost Certificate SBC22O30935 | $9,329.60 |
| 237. | 2023-02-01 | Cox, Lawrence Jay Cost Certificate SBC22O30928 | $4,317.00 |
| 238. | 2023-02-01 | Welch, Michael Cost Certificate SBC22O30043 | $5,362.00 |
| 239. | 2023-02-08 | Comfort, Naomi Cost Certificate SBC22O30445 | $5,362.00 |
| 240. | 2023-02-08 | Ortiz, Salvador Cost Certificate SBC22O30141 | $13,167.25 |
| 241. | 2023-02-15 | Kohnen, Marc Cost Certificate SBC22O30894 | $4,382.00 |
| 242. | 2023-02-15 | Williams, Kelly Cost Certificate SBC22O30161 | $24,154.00 |
| 243. | 2023-02-22 | Jeffries, David Cost Certificate SBC22O30214 | $5,362.00 |
| 244. | 2023-03-01 | Bailey, Steven Cost Certificate SBC22O30888 | $6,843.00 |
| 245. | 2023-03-03 | Pavone, Benjamin - Cost Certificate SBC2OO30496 | $24,700.00 |
| 246. | 2023-03-08 | Lubliner, Leora Cost Certificate SBC22O30556 | $5,362.00 |
| 247. | 2023-03-15 | Buck, Frank Cost Certificate SBC22N30106 | $6,367.00 |
| 248. | 2023-03-22 | Bachman, Robert Lewis Cost Certificate SBC23O30184 | $3,693.00 |
| 249. | 2023-03-22 | Benson, John Leonard Cost Certificate SBC22O30945 | $4,407.00 |
| 250. | 2023-03-22 | Dykes, Alyson Cost Certificate SBC22O30650 | $5,403.83 |
| 251. | 2023-03-29 | Vargas, George Cost Certificate SBC22O30478 | $5,362.00 |
| 252. | 2023-04-05 | Cannon, Justin Cost Certificate SBC22N30278 | $9,583.00 |
| 253. | 2023-04-05 | Goldblatt, Lewis Cost Certificate 18C12466 | $20,548.90 |
| 254. | 2023-04-05 | Gutierrez, David Cost Certificate SBC22O30931 | $6,921.00 |
| 255. | 2023-04-05 | Hansen, Elizabeth Cost Certificate SBC22O30995 | $7,916.00 |

**Ex. 8:6**

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| 256. | 2023-04-12 | Cook, Peter Louis Cost Certificate SBC22O30965 | $8,952.00 |
| 257. | 2023-04-12 | Motallebi, Shahin Cost Certificate SBC23O30226 | $5,127.70 |
| 258. | 2023-04-19 | Adams, Joseph Cost Certificate SBC22O30930 | $8,952.00 |
| 259. | 2023-04-19 | Castellanos, Gabriel Cost Certificate SBC22O30916 | $9,886.00 |
| 260. | 2023-04-19 | Kumar, Matthew Cost Certificate SBC23O30433 | $3,758.00 |
| 261. | 2023-04-19 | Lee, Jason Wook Cost Certificate SBC23O30181 | $3,693.00 |
| 262. | 2023-04-19 | Mortier, Raymond Cost Certificate SBC22O30794 | $20,405.00 |
| 263. | 2023-04-19 | Zuidema, Jeffrey Cost Certificate SBC22O30791 | $26,852.00 |
| 264. | 2023-04-25 | Schubert, Paul Cost Certificate SBC22O30913 | $4,317.00 |
| 265. | 2023-04-26 | Yuan, Vivian Cost Certificate SBC22O30806 | $6,540.00 |
| 266. | 2023-05-03 | Huynh, Richard Cost Certificate SBC22O30960 | $5,495.00 |
| 267. | 2023-05-03 | Morawski, Debbie Cost Certificate SBC22O30885 | $5,362.00 |
| 268. | 2023-05-03 | Tavakoli, Neema Cost Certificate SBC23O30272 | $3,043.00 |
| 269. | 2023-05-10 | Richards, Leslie Cost Certificate SBC23O30434 | $17,342.00 |
| 270. | 2023-05-17 | Davis, Lawrence Cost Certificate SBC23O30463 | $3,693.00 |
| 271. | 2023-05-17 | Dickerson, Shawn Cost Certificate SBC22O30189 | $17,023.70 |
| 272. | 2023-05-17 | Gladkov, Sergfei Cost Certificate SBC23O30441 | $4,871.00 |
| 273. | 2023-05-17 | Nguyen, James Cost Certificate SBC23O30466 | $3,693.00 |
| 274. | 2023-05-17 | Salazar, Margarita Cost Certificate SBC22O30880 | $34,794.72 |
| 275. | 2023-05-24 | Klopfenstein, John Cost Certificate SBC23O30445 | $3,693.00 |
| 276. | 2023-05-31 | Estavillo, Jason Cost Certificate SBC22O30652 | $9,199.00 |
| 277. | 2023-05-31 | Henderson, Shannon Cost Certificate SBC22N30213 | $4,221.00 |
| 278. | 2023-05-31 | Hogan, Brian Cost Certificate SBC23O30489 | $4,924.00 |
| 279. | 2023-06-07 | Duncan, Frank Cost Certificate SBC22N30936 | $9,583.00 |
| 280. | 2023-06-07 | Westmoreland, Leslie Wayne Cost Certificate SBC22O30893 | $5,362.00 |
| 281. | 2023-06-12 | Ashley, William Cost Certificate SBC23O30446 | $4,871.00 |
| 282. | 2023-06-14 | Cohen, Herman Cost Certificate SBC22O30083 | $20,393.00 |
| 283. | 2023-06-14 | Mitchell, Andrew Cost Certificate SBC22O30809 | $3,040.00 |
| 284. | 2023-06-14 | Tepper, Nicholas Cost Certificate SBC22O31061 | $19,494.12 |
| 285. | 2023-06-28 | Gevertz, Michael Cost Certificate SBC22O30875 | $5,362.00 |
| 286. | 2023-06-28 | Luke, Victor Cost Certificate SBC22O30878 | $6,843.00 |
| 287. | 2023-07-12 | Bambl, Richard Cost Certificate SBC23H30224 | $3,026.00 |
| 288. | 2023-07-12 | Deitch, Philip Cost Certificate SBC23O30183 | $00.00 |
| 289. | 2023-07-12 | Mabee, Brian Cost Certificate SBC23O30053 | $9,365.00 |
| 290. | 2023-07-13 | Wagner, Charles Cost Certificate SBC23O30464 | $3,693.00 |
| 291. | 2023-07-14 | Kaufman, David Cost Certificate SBC22O30992 | $4,317.00 |
| 292. | 2023-07-25 | Sherman, Drew Cost Certificate SBC22O31028 | $8,952.00 |
| 293. | 2023-08-02 | Altholz, Andrew Peter Cost Certificate SBC22O30963 | $23,881.24 |
| 294. | 2023-08-02 | Hassan, Allen Clarence Cost Certificate SBC22O30969 | $8,952.00 |
| 295. | 2023-08-02 | Lawson, Janet Cost Certificate SBC23O30443 | $9,365.00 |
| 296. | 2023-08-09 | Allen, Emry Cost Certificate SBC23H30230 | $3,026.00 |
| 297. | 2023-08-16 | Kozich, S. David Cost Certificate SBC22O30926 | $10,074.00 |
| 298. | 2023-08-23 | Ji, Ming Cost Certificate SBC23O30458 | $5,749.00 |
| 299. | 2023-08-30 | Crane, Richard Jr. Cost Certificate SBC22O31029 | $23,076.00 |
| 300. | 2023-08-30 | Storey, Chelsea Cost Certificate SBC22O31042 | $8,128.00 |
| 301. | 2023-09-13 | Peluso, Larry Cost Certificate SBC23O30601 | $9,365.00 |

**Ex. 8:7**

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| 302. | 2023-09-20 | Bral, S. Cost Certificate SBC23O30574 | $7,158.00 |
| 303. | 2023-09-20 | Gelegan, Jacob Cost Certificate SBC23H30438 | $3,026.00 |
| 304. | 2023-09-27 | Gil, Robert Cost Certificate SBC21O30355 | $10,993.00 |
| 305. | 2023-09-27 | Keen, Carol Cost Certificate SBC22O30802 | $5,666.00 |
| 306. | 2023-10-04 | Kellar, Kevin Cost Certificate SBC23O30022 | $8,075.00 |
| 307. | 2023-10-04 | McFarlin, Timothy Cost Certificate SBC23O30024 | $8,075.00 |
| 308. | 2023-10-04 | Torres, Edward Cost Certificate SBC23O30573 | $4,516.00 |
| 309. | 2023-10-04 | Wells Trigger, Michelle Cost Certificate SBC23O30408 | $11,022.00 |
| 310. | 2023-10-11 | Luna, Joe Cost Certificate SBC23O30599 | $7,158.00 |
| 311. | 2023-10-11 | Vontersch, Glenn Cost Certificate SBC22O31065 | $11,789.00 |
| 312. | 2023-10-18 | Singh, Rooh Cost Certificate SBC22O31056 | $6,540.00 |
| 313. | 2023-10-25 | Wright, William Cost Certificate SBC23O30001 | $8,793.00 |
| 314. | 2023-11-01 | Behesnilian, Daniel Cost Certificate SBC23O30457 | $4,570.00 |
| 315. | 2023-11-08 | Nuchi, Ondine Cost Certificate SBC22O30566 | $6,843.00 |
| 316. | 2023-11-15 | Brooks-Montgomery, Cristina Cost Certificate SBC22O31067 | $17,862.00 |
| 317. | 2023-11-15 | Thibault, Elana Cost Certificate SBC22O30033 | $24,983.45 |
| 318. | 2023-11-29 | Brifman, Marc Cost Certificate SBC23O30223 | $5,609.00 |
| 319. | 2023-11-29 | LaCava, Richard Anthony Cost Certificate SBC23O30273 | $6,842.00 |
| 320. | 2023-12-06 | Chan, Carolyn Cost Certificate SBC23O30324 | $5,609.00 |
| 321. | 2023-12-06 | Vijayraghavan, Vasumathi Cost Certificate SBC22O30883 | $15,129.00 |
| 322. | 2023-12-13 | Martens, Christopher Cost Certificate SBC23O30618 | $10,598.00 |
| 323. | 2023-12-20 | LaMoure, Nathan Cost Certificate SBC23O30452 | $5,609.00 |
| | | **2024*** | |
| 324. | 2024-01-03 | McClintock, Douglas Cost Certificate SBC23O30417 | $5,609.00 |
| 325. | 2024-01-03 | Safavi, Hamid Cost Certificate SBC23O30598 | $5,609.00 |
| 326. | 2024-01-08 | Sussman, David Cost Certificate SBC23O30696 | $4,516.00 |
| 327. | 2024-01-10 | Mills, James Cost Certificate SBC23O30682 | $12,302.00 |
| 328. | 2024-01-17 | Ceballos, Samuel Alberto Cost Certificate SBC23O30222 | $29,352.00 |
| 329. | 2024-01-17 | Coberly, Richard Cost Certificate SBC23O30699 | $9,624.00 |
| 330. | 2024-01-17 | Donboli, John Cost Certificate SBC22O30351 | $7,843.00 |
| 331. | 2024-01-24 | Smith, Spencer Cost Certificate 12C14836 | $19,204.60 |
| 332. | 2024-01-24 | Vermazen, Richard Cost Certificate SBC23O30891 | $4,516.00 |
| 333. | 2024-01-31 | Johnston, Thomas Cost Certificate SBC23N30610 | $3,184.00 |
| 334. | 2024-02-14 | McCann, Robert Cost Certificate SBC22O30110 | $28,058.70 |
| 335. | 2024-02-26 | Cavin, Kenneth Cost Certificate SBC24O30773 | $5,947.00 |
| 336. | 2024-02-28 | Vargas, Brenda Cost Certificate SBC23O30838 | $14,626.95 |
| 337. | 2024-03-13 | Holguin, Alex Cost Certificate SBC23O30897 | $4,516.00 |
| 338. | 2024-03-13 | Sambhi, Bimal Cost Certificate SBC23O30698 | $16,706.00 |
| 339. | 2024-03-13 | Smith, Jeffrey Cost Certificate SBC23O30934 | $4,516.00 |
| 340. | 2024-03-13 | Vanderveen, Jeffrey Cost Certificate SBC23O30852 | $9,725.00 |
| 341. | 2024-03-20 | Chaix, John Cost Certificate SBC24O30027 | $3,864.00 |
| 342. | 2024-03-20 | Jue, Craig Cost Certificate SBC23O30659 | $5,609.00 |
| 343. | 2024-03-20 | Luetto, Adam Cost Certificate SBC23O30799 | $5,609.00 |
| 344. | 2024-03-20 | Miyamoto, Lynn Cost Certificate SBC24O30048 | $3,864.00 |
| 345. | 2024-04-03 | Capozzi, Nicholas Cost Certificate SBC24O30062 | $22,514.00 |
| 346. | 2024-04-10 | Albert, Lenore Cost Certificate SBC22O30348 | $27,055.00 |

**Ex. 8:8**

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| 347. | 2024-04-10 | Gomes, Timothy Cost Certificate SBC24O30058 | $3,864.00 |
| 348. | 2024-04-24 | Bulloch, Kent Cost Certificate SBC22O30108 | $4,317.00 |
| 349. | 2024-04-24 | Gold, Michelle Cost Certificate SBC22O30558 | $5,362.00 |
| 350. | 2024-05-08 | Davis, Lauren Cost Certificate SBC24O30083 | $8,933.00 |
| 351. | 2024-05-08 | Endres, Kirk Cost Certificate SBC23O30840 | $9,365.00 |
| 352. | 2024-05-15 | Batara, Augustine Cost Certificate SBC23O30979 | $4,516.00 |
| 353. | 2024-05-15 | Garcia, John Cost Certificate SBC23O30820 | $7,158.00 |
| 354. | 2024-05-22 | Alspaugh, Eric Cost Certificate SBC23J30962 | $3,026.00 |
| 355. | 2024-05-29 | Chivinski, Andrew Cost Certificate SBC23O30958 | $10,839.27 |
| 356. | 2024-05-29 | Lustgarten, Alfred Cost Certificate SBC24O30120 | $13,731.68 |
| 357. | 2024-06-05 | Oliveri, Matthew Cost Certificate SBC22O30792 | $26,097.80 |
| 358. | 2024-06-05 | Riemer, Robert Cost Certificate SBC23O30514 | $5,609.00 |
| 359. | 2024-06-05 | Tajon, Joan Cost Certificate SBC23O30858 | $21,247.16 |
| 360. | 2024-06-12 | Daly, Stephen Cost Certificate SBC24O30026 | $3,293.00 |
| 361. | 2024-06-12 | Gerges, Motaz Cost Certificate SBC23O30860 | $11,417.08 |
| 362. | 2024-06-12 | Loftis, Gary Cost Certificate SBC24O30178 | $3,997.00 |
| 363. | 2024-06-12 | Sax, Richard Cost Certificate SBC24O30017 | $8,101.20 |
| 364. | 2024-06-12 | Vargas, Fernando Cost Certificate SBC22O30280 | $25,928.35 |
| 365. | 2024-06-26 | Ardite, Dante Cost Certificate SBC23O30701 | $9,308.00 |
| 366. | 2024-06-26 | Garcia Hernandez, Erick Cost Certificate SBC24O30207 | $7,822.00 |
| 367. | 2024-06-26 | Gurley, Adam Cost Certificate SBC24O30230 | $5,410.00 |
| 368. | 2024-06-26 | Kumar, Matthew Cost Certificate SBC23O30864 | $11,022.00 |
| 369. | 2024-07-03 | Bennett, Jerald Cost Certificate SBC24O30055 | $4,672.00 |
| 370. | 2024-07-03 | Champion, Kiarash Shamloo Cost Certificate SBC23O30232 | $3,997.00 |
| 371. | 2024-07-10 | Awad, Randall Cost Certificate SBC23O30662 | $20,738.40 |
| 372. | 2024-07-17 | Campbell, Randel Cost Certificate SBC24O30277 | $3,997.00 |
| 373. | 2024-07-17 | Chang, Steve Cost Certificate SBC23O30952 | $5,609.00 |
| 374. | 2024-07-17 | Daughetee, Renee Cost Certificate SBC23O30661 | $9,365.00 |
| 375. | 2024-07-17 | Ramirez, Sergio Valdovinos Cost Certificate SBC22O30976 | $25,843.21 |
| 376. | 2024-07-31 | Cowan, John Cost Certificate SBC24O30420 | $15,472.00 |
| 377. | 2024-07-31 | Jeang, Evie Cost Certificate SBC24O30082 | $5,096.53 |
| 378. | 2024-07-31 | Martinez, Carlos Cost Certificate SBC22O30103 | $4,317.00 |
| 379. | 2024-08-02 | Jeang, Evie Cost Certificate SBC24O30082 | $4,672.00 |
| 380. | 2024-08-05 | Patel, Ashishkuma Cost Certificate SBC24O30172 | $4,030.47 |
| 381. | 2024-08-07 | Antognini, Richard Cost Certificate SBC24O30412 | $3,997.00 |
| 382. | 2024-08-07 | Montero, Felix Cost Certificate SBC23O30993 | $5,609.00 |
| 383. | 2024-08-14 | Barkin, Steven Cost Certificate SBC24O30068 | $8,497.00 |
| 384. | 2024-08-14 | Severo, Raoul Cost Certificate SBC24O30031 | $18,879.00 |
| 385. | 2024-08-14 | Wettig, Gretchen Cost Certificate SBC23O31002 | $5,647.00 |
| 386. | 2024-08-21 | Kessler, Andrew Cost Certificate SBC23O31022 | $5,699.00 |
| 387. | 2024-08-21 | Mullins, Joyce Cost Certificate SBC23O31011 | $5,609.00 |
| 388. | 2024-08-21 | Olano, Miguel Cost Certificate SBC24O30016 | $21,845.00 |
| 389. | 2024-08-28 | Lacher, Pamela Cost Certificate SBC22O30551 | $25,264.42 |
| 390. | 2024-08-28 | Manning, Joseph Cost Certificate SBC24O30471 | $3,997.00 |
| 391. | 2024-09-11 | Lucero, Linda Cost Certificate SBC22O30025 | $32,846.65 |
| 392. | 2024-09-11 | Ribeiro, Irina Carmen Cost Certificate SBC22O30994 | $6,540.00 |

**Ex. 8:9**

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| 393. | 2024-09-25 | Allen, Mark Cost Certificate SBC24O30039 | $5,802.00 |
| 394. | 2024-09-25 | Castro, Mark Cost Certificate SBC22O30173 | $6,673.00 |
| 395. | 2024-10-02 | Capata, Julian Cost Certificate SBCH30439 | $5,609.00 |
| 396. | 2024-10-16 | Look, William Cost Certificate SBC24O30175 | $9,686.00 |
| 397. | 2024-10-23 | Esbin, Louis Cost Certificate SBC23O30942 | $21,154.00 |
| 398. | 2024-10-30 | Krause, Ernest Cost Certificate SBC23O30409 | $27,589.00 |
| 399. | 2024-11-06 | Cargnelutti, Daniel Cost Certificate SBC24O30419 | $8,497.00 |
| 400. | 2024-11-13 | Fernandes, Luiz Cost Certificate SBC24O30084 | $7,077.00 |
| 401. | 2024-11-13 | Sabol, Cristopher Cost Certificate SBC24O30074 | $7,077.00 |
| 402. | 2024-11-20 | Cha, Je Myung Cost Certificate SBC24O30103 | $9,831.50 |
| 403. | 2024-11-27 | Salzwedel, William Cost Certificate SBC24N30415 | $11,972.00 |
| 404. | 2024-12-04 | Griffin, Keith Cost Certificate SBC23O30691 | $26,522.50 |
| 405. | 2024-12-11 | Ivosevic, Jovan Cost Certificate SBC22O30224 | $10,351.00 |
| 406. | 2024-12-11 | Vargas Valencia, Everardo Cost Certificate SBC24O30796 | $8,587.00 |
| 407. | 2024-12-11 | Vosskuhler, Derek Cost Certificate SBC22O30018 | $4,317.00 |
| 408. | 2024-12-18 | Jaques, Bruce Cost Certificate SBC24O30124 | $5,802.00 |
| 409. | 2024-12-30 | Loethen, Christopher Cost Certificate SBC22O30038 | $5,545.00 |
| **2025*** | | | |
| 410. | 2025-01-08 | Carrillo, Rafael Cost Certificate SBC24O30171 | $6,162.18 |
| 411. | 2025-01-08 | March, Daniel Cost Certificate SBC23O30976 | $9,308.00 |
| 412. | 2025-01-08 | Richards, Michael Cost Certificate 18C10427 | $5,507.00 |
| 413. | 2025-01-08 | Scarcella, Christopher Cost Certificate SBC24O30653 | $5,992.00 |
| 414. | 2025-01-15 | Alaei, Mehran Cost Certificate SBC24O30652 | $10,172.00 |
| 415. | 2025-01-15 | Liberty, Louis Cost Certificate SBC24O30118 | $8,352.00 |
| 416. | 2025-01-15 | Ricci, John Cost Certificate SBC24O30515 | $18,914.00 |
| 417. | 2025-01-15 | Richards, Marc Cost Certificate SBC24H30282 | $4,672.00 |
| 418. | 2025-01-28 | Kamran, Mir-Houtan Tony Amended Cost Certificate SBC22O30919 | $24,976.50 |
| 419. | 2025-01-29 | Haltom, Victor Cost Certificate SBC24N30229 | $9,095.00 |
| 420. | 2025-01-29 | Pratt, Chad Cost Certificate SBC23O30724 | $27,900.84 |
| 421. | 2025-02-12 | Kostiv, Petro Cost Certificate SBC22O31036 | $30,420.15 |
| 422. | 2025-02-12 | Schouten, Nienke Cost Certificate SBC24O30206 | $5,802.00 |
| 423. | 2025-02-26 | Amparan, Robert Cost Certificate SBC22O30648 | $25,347.00 |
| 424. | 2025-02-26 | Cook, Alfred Cost Certificate SBC24N30104 | $9,095.00 |
| 425. | 2025-02-26 | Hoekstra, Nicolette Cost Certificate SBC24O30723 | $3,997.00 |
| 426. | 2025-02-26 | Mitchell, Rossana Cost Certificate SBC23N30325 | $35,095.90 |
| 427. | 2025-02-26 | Welch, Christopher Cost Certificate SBC25O30012 | $8,011.00 |
| 428. | 2025-03-12 | Castorina, Bryan Cost Certificate SBC24O30744 | $10,961.00 |
| 429. | 2025-03-19 | Bramzon, Daniel Cost Certificate SBC24O30971 | $4,672.00 |
| 430. | 2025-03-19 | Collins, Sherry Cost Certificate SBC24O30204 | $8,352.00 |
| 431. | 2025-03-19 | McLurkin, Reed Cost Certificate SBC23O30779 | $5,674.00 |
| 432. | 2025-04-02 | Klein, Douglas Cost Certificate SBC25O30080 | $2,494.00 |
| 433. | 2025-04-02 | Olin, Jeffrey Cost Certificate SBC23O30674 | $28,092.75 |
| 434. | 2025-04-09 | Sloan, Alfred Cost Certificate SBC24O30235 | $9,686.00 |
| 435. | 2025-04-23 | Applbaum, Marc Cost Certificate SBC25O30285 | $2,494.00 |
| 436. | 2025-04-23 | Ramos, Michael Anthony Cost Certificate SBC25O30219 | $2,494.00 |

**Ex. 8:10**

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| 437. | 2025-04-23 | Trimarche, Gregory Cost Certificate SBC23O30827 | $27,594.25 |
| 438. | 2025-04-30 | Sanders, Renee Cost Certificate SBC25O30345 | $5,947.00 |
| 439. | 2025-05-07 | Carss, William Taylor Cost Certificate SBC25O30322 | $2,494.00 |
| 440. | 2025-05-09 | Callahan, Rachael Cost Certificate SBC25O30056 | $2,494.00 |
| 441. | 2025-05-21 | Folke, Duane Cost Certificate SBC24O30514 | $22,319.60 |
| 442. | 2025-05-21 | Gordon, Amber Cost Certificate SBC25O30520 | $4,308.00 |
| 443. | 2025-05-21 | Sullivan Guzman, Erin Cost Certificate SBC24O30728 | $5,802.00 |
| 444. | 2025-05-28 | Wilson-Tancreto, Jennifer Cost Certificate SBC25O30350 | $7,357.00 |
| 445. | 2025-06-18 | Jester, Alexander Cost Certificate SBC22O30800 | $7,360.00 |
| 446. | 2025-06-18 | Man, Alan Cost Certificate SBC24O30845 | $5,802.00 |
| 447. | 2025-06-25 | Tepper, Nicholas Cost Certificate SBC24N30747 | $3,293.00 |
| 448. | 2025-07-02 | Galanter, Douglas Cost Certificate SBC23O30974 | $9,365.00 |
| 449. | 2025-07-02 | Hammon, David Cost Certificate SBC24O30797 | $8,352.00 |
| 450. | 2025-07-09 | Eastman, John Cost Certificate SBC23O30029 | $55,608.27 |
| 451. | 2025-07-09 | Johal, Jugjit Cost Certificate SBC24O30843 | $5,937.00 |
| 452. | 2025-07-09 | Osborne, Todd Cost Certificate SBC25O30352 | $4,995.00 |
| 453. | 2025-07-09 | Smith, David Cost Certificate SBC24O30850 | $7,452.00 |
| 454. | 2025-07-09 | Spolin, Aaron Cost Certificate SBC24O30844 | $8,669.00 |
| 455. | 2025-07-16 | Speckman, David Cost Certificate SBC24J17706 | $3,130.00 |
| 456. | 2025-07-23 | Kuenstler, Konrad Cost Certificate SBC24O30873 | $8,352.00 |
| 457. | 2025-07-23 | Leigh, Gilbert Cost Certificate SBC23O31030 | $9,365.00 |
| 458. | 2025-07-30 | Armstrong, Stephen Cost Certificate SBC24O30806 | $12,177.00 |
| 459. | 2025-07-30 | Manning, Joseph Cost Certificate SBC25O30346 | $4,995.00 |
| 460. | 2025-07-30 | Thomas-Mallery, Tamara Cost Certificate SBC25O30150 | $12,761.00 |
| 461. | 2025-08-06 | Grigoryan, Hayk Cost Certificate SBC25O30287 | $5,317.95 |
| 462. | 2025-08-13 | Bindman, Boris Cost Certificate SBC25O30157 | $4,995.00 |
| 463. | 2025-08-27 | Brodey, Jeffrey Cost Certificate SBC24O30901 | $5,802.00 |
| 464. | 2025-09-03 | Chen, Edward Cost Certificate SBC24O30802 | $11,909.00 |
| 465. | 2025-09-03 | Zoolalian, Britt Cost Certificate SBC25O30079 | $3,118.00 |
| 466. | 2025-09-10 | Bulloch, Kent Cost Certificate SBC24N30926 | $3,293.00 |
| 467. | 2025-09-12 | Beling, Craig Cost Certificate SBC25O30152 | $4,995.00 |
| 468. | 2025-09-17 | Ricks, Gregory Cost Certificate SBC25O30282 | $6,809.00 |
| 469. | 2025-09-24 | Kenner, David Cost Certificate SBC25O30519 | $6,809.00 |
| 470. | 2025-10-01 | Bickford, James Cost Certificate SBC25O30284 | $12,486.00 |
| 471. | 2025-10-08 | Aguirre, Leticia Cost Certificate 18C13730 | $7,971.56 |
| 472. | 2025-10-08 | Givens, Dermot Cost Certificate SBC24O30854 | $13,520.00 |
| 473. | 2025-10-08 | Nejadpour, Fari Cost Certificate SBC23O305888 | $28,323.82 |
| 474. | 2025-10-15 | Radogna, Anthony Cost Certificate SBC25N30838 | $6,809.00 |
| 475. | 2025-10-15 | Sanai, Cyrus Cost Certificate SBC23N31004 | $3,184.00 |
| 476. | 2025-10-22 | Halpern, Jesse Cost Certificate SBC25O30433 | $7,920.00 |
| 477. | 2025-10-22 | Nelson, Arne Cost Certificate SBC25O30589 | $10,437.00 |
| 478. | 2025-10-29 | Holguin, Alex Cost Certificate SBC25N30000 | $4,977.00 |
| 479. | 2025-11-05 | Coulston, Todd Cost Certificate SBC22O30653 | $14,155.00 |
| 480. | 2025-11-05 | Thandi, Navpreet Cost Certificate SBC25O30297 | $15,176.00 |
| 481. | 2025-11-05 | Valencia, Mario Cost Certificate SBC23O30821 | $8,623.00 |
| 482. | 2025-11-12 | White, Claire Cost Certificate SBC25O30585 | $15,404.90 |

**Ex. 8:11**

| NO. | DATE | NAME / CASE NO. | FINES |
|---|---|---|---|
| 483. | 2025-11-19 | Hilts, Todd Cost Certificate SBC25O30738 | $9,734.00 |
| 484. | 2025-11-19 | Karpeles, Jack Cost Certificate SBC24O30657 | $15,974.00 |
| 485. | 2025-12-03 | Carlin, Gary Cost Certificate SBC25O30590 | $8,010.00 |
| 486. | 2025-12-10 | Lacher, Pamela Cost Certificate SBC22O30551 | $25,264.42 |
| 487. | 2025-12-17 | Byberg, Gregory Cost Certificate SBC25O30918 | $17,693.00 |
| 488. | 2025-12-17 | Jang, Kevin Hee Young Cost Certificate SBC25O30347 | $19,573.33 |
| 489. | 2025-12-23 | Garcia, Raul Cost Certificate SBC23O31019 | $4,995.00 |
| 490. | 2025-12-23 | Stein, Charles Cost Certificate SBC24O30023 | $15,245.40 |
| 491. | 2026-02-04 | Pavone, Benjamin Cost Certificate SBC23O30854 | $18,445.00 |
| | | **Total** | $4,327,305.76 |
| | | **Average per 491 cases** | **$8,813** |

**Ex. 8:12**

# EXHIBIT 9

# EXHIBIT 9

# JUSTICE HONN – REVIEW DEPT.
## (Discipline Cases)

| NO. | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|
| **2026-02-09 – Status** 208 opinions from 2004-present 7 cases out of 208 defeated the fines (96.6%) 2/208 unrepresented: 1% 5/208 represented: 2.4% There has never been a case with over three culpability findings at the trial level where a self-represented attorney avoided the fines, in the current pool. Gender: 26/208 = 87.5% against men **Cases that Won** Represented Unrepresented. 2017-01-23 2018-06-27 2018-11-21 2020-03-10 2021-04-05 2021-09-07 2024-04-22 | | | |
| 1. | | 2004-01-06 - Silverton, Ronald | |
| 2. | | 2004-04-14 - Laden, Richard | |
| 3. | | 2004-05-28 - Tenner, Alvin | |
| 4. | | 2008-02-28 - Esau, Gregory | |
| 5. | | 2014-02-07 - Wyatt, Robert | |
| 6. | | 2004-05-28 - Tenner, Alvin | |
| 7. | | 2008-02-08 - Conner, Eric W. | |
| 8. | | 2008-02-28 - Esau, Gregory | |
| 9. | | 2009-10-20 - Downey, Stephen | |
| 10. | | 2014-02-07 - Wyatt, Robert | |
| 11. | | 2014-08-06 - Ferko, Richard | |
| 12. | | 2014-09-04 - Lazo, Marc | |

Ex. 9:1

| NO. | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|
| 13. | | 2014-09-05 - Foster, Steven | |
| 14. | | 2014-09-09 - Hernandez, Cynthia | |
| 15. | | 2014-10-01 - Missud, Patrick | |
| 16. | | 2014-10-22 - Tishgart, Kenneth | |
| 17. | | 2014-10-31 - Galland, Scott | |
| 18. | | 2014-11-06 - Elkins, John | |
| 19. | | 2014-12-12 - Felger, Warren | |
| 20. | | 2014-12-12 - Kinney, Charles | |
| 21. | | 2015-01-16 - Cayce, Christopher | |
| 22. | | 2015-02-05 - Huber, Mark | |
| 23. | | 2015-02-05 - Parish, Clinton | |
| 24. | | 2015-02-06 - Moore, Jamilla | |
| 25. | | 2015-04-10 - Teel, James | |
| 26. | | 2015-04-30 - Romano, Lynne | |
| 27. | | 2015-05-18 - Bolanos, Aldon | |
| 28. | | 2015-05-18 - Bradley, Vernon | |
| 29. | | 2015-05-19 - Guillory, Marc | |
| 30. | | 2015-06-12 - Boles, James | |
| 31. | | 2015-06-12 - Graham, Albert | |
| 32. | | 2015-06-12 - Haddix, Kenneth | |
| 33. | | 2015-10-01 - Henrioulle, Stevan | |
| 34. | | 2015-10-09 - Eldridge, Deborah | No findings of culpability in lower court. SBC appeals. Reversed for SBC, returned to trial court. Represented by Aarons. |
| 35. | | 2015-10-20 - Dryovage, Mary | |
| 36. | | 2015-10-21 - Wittenberg, Malcolm | |
| 37. | | 2015-11-06 - Anderson, Robert | |
| 38. | | 2015-11-16 - Marchiondo, Philip | |
| 39. | | 2015-12-02 - Engel, Julius | |
| 40. | | 2016-01-05 - Brown, Lloyd | |
| 41. | | 2016-01-06 - Palmer, Joseph | |
| 42. | | 2016-01-25 - Elstead, John | |
| 43. | | 2016-03-03 - Coombs, Richard | |
| 44. | | 2016-03-07 - Taylor, Johnnie | |
| 45. | | 2016-03-07 - Willoughby, Anthony | |
| 46. | | 2016-05-03 - Lotta, Michael | |

**Ex. 9:2**

| NO. | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|
| 47. | | 2016-05-10 - Declue, Joseph | |
| 48. | | 2016-05-10 - Jorgensen, Barry | |
| 49. | | 2016-06-06 - Samovar, Phillip | |
| 50. | | 2016-06-23 - Robertson, Wade | |
| 51. | | 2016-07-27 - Dongell, Richard | |
| 52. | | 2016-08-04 - Hubbard, Lynn | |
| 53. | | 2016-09-28 - Scheer, Marilyn | |
| 54. | | 2016-09-29 - Filice, Gerald | |
| 55. | | 2016-10-05 - Cameron, Nicholas | |
| 56. | | 2016-10-11 - Murray, Robert | |
| 57. | | 2016-10-15 - Chavez, Fernando | |
| 58. | | 2016-10-18 - Reed, Brian | |
| 59. | | 2016-10-28 - Sklar, Lori | |
| 60. | | 2016-11-22 - Reinder, Martin | |
| 61. | | 2017-01-12 - Klugman, Steven | |
| 62. | | 2017-01-23 - Sack, Robert | NDC: Count 1: 2 charges; NDC (A): Count 1: 2 charges; Unrepresented. |
| 63. | | 2017-01-26 - Hasan, Shameen | |
| 64. | | 2017-02-24 – Nia, Tina | |
| 65. | | 2017-04-20 - Moriarty, Leo | |
| 66. | | 2017-05-12 - Miller, Raymond | |
| 67. | | 2017-05-17 - Deetman, Bernard | |
| 68. | | 2017-04-24 - Kun, Albert | |
| 69. | | 2017-05-17 - Deetman, Bernard | |
| 70. | | 2017-06-07 - Edwards, John | |
| 71. | | 2017-06-12 - Bolanos, Aldon | |
| 72. | | 2017-06-30 - Albert, Lenore | |
| 73. | | 2017-09-28 - Bennett, Michael | |
| 74. | | 2017-10-02 - Faulk, Ronald | |
| 75. | | 2017-12-08 - Van Dusen, Jan | |
| 76. | | 2017-12-26 - Fletcher, Freddie | |
| 77. | | 2017-12-26 - Gentino, Robert | |
| 78. | | 2018-02-15 - Shafer, David | |
| 79. | | 2018-03-13 - Sganga, Michael | |
| 80. | | 2018-03-28 - Collins, Joseph | |
| 81. | | 2018-04-04 - Li, James | |

**Ex. 9:3**

| NO. | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|
| 82. | | 2018-04-09 - Kitay, Robert | |
| 83. | | 2018-04-24 - Khishaveh, Klayton | |
| 84. | | 2018-04-24 - Tanden, Raj | |
| 85. | | 2018-05-08 - Weiner, Steven | |
| 86. | | 2018-05-16 - Goffney, Keith | |
| 87. | | 2018-05-30 - Golden, Stephen | |
| 88. | | 2018-06-08 - Lewiston, Jeffrey | |
| 89. | | 2018-06-27 - Mahdessian, Rita | Represented. Represented by Gerry |
| 90. | | 2018-07-05 - Metoyer, Delia | |
| 91. | | 2018-07-24 - Sprouls, Frank | |
| 92. | | 2018-08-06 - Luti, Anthony | |
| 93. | | 2018-08-23 - O'Connell, Dennis | |
| 94. | | 2018-09-07 - Nassar, Sandra | |
| 95. | | 2018-09-21 - Kun, Albert | |
| 96. | | 2018-10-31 - Gordon, Chance | |
| 97. | | 2018-11-21 - Hanson, Roger | NDC: two counts, per review department opinion. Irregularities in docket. No documents. Recusal motions not uploaded. Not represented. |
| 98. | | 2019-01-07 - Clark, Diddo | |
| 99. | | 2019-02-01 - Na, Sheen | |
| 100. | | 2019-02-12 - Smith, Spencer | |
| 101. | | 2019-03-08 - Gurevich, Yelena | Case dismissed at trial, affirmed on appeal. |
| 102. | | 2019-03-29 - Fuery, John | |
| 103. | | 2019-04-18 - Haddon, Mark | |
| 104. | | 2019-04-22 - Amponsah, Leslie | |
| 105. | | 2019-05-01 – Bhardwah, Sanjay | |
| 106. | | 2019-06-07 - Weiss, Mogeeb | |
| 107. | | 2019-06-07 - Maki, Lisa | |
| 108. | | 2019-06-12 - Khaliq, Imran | |
| 109. | | 2019-06-15 - Wanland, Donald | |
| 110. | | 2019-06-26 - Lee, Raymond | |
| 111. | | 2019-07-10 - Cunningham, Archie | |
| 112. | | 2019-07-15 - Wanland, Donald | |

**Ex. 9:4**

| NO. | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|
| 113. | | 2019-07-30 - Bradshaw, Drexel | Represented at trial.  Not on appeal.  Costs overturned.  Disbarred.  Awarded against him. |
| 114. | | 2019-08-27 - Lingwood, Rita | |
| 115. | | 2019-09-05 - Foster, Steven | |
| 116. | | 2019-10-09 - Engel, Julius | |
| 117. | | 2019-10-11 - Khakshooy, Bob | |
| 118. | | 2019-10-25 - Cohen, Lottie | |
| 119. | | 2019-10-29 - Speckman, David | |
| 120. | | 2020-01-13 - Rodriguez, Patricia | |
| 121. | | 2020-01-17 - Partington, Earle | |
| 122. | | 2020-02-11 - Haynes, Gregory | |
| 123. | | 2020-03-10 - Paquin, David | NDC: Seven counts: Hearing: Three counts to RD. Exonerated.  Represented. |
| 124. | | 2020-03-16 - Foster, Richard | |
| 125. | | 2020-04-10 - Smart, Dean | |
| 126. | | 2020-04-14 - Harper, Gregory | |
| 127. | | 2020-05-12 - Tarbeek, Marc | |
| 128. | | 2020-05-13 - Hubbard, Scottlynn | |
| 129. | | 2020-06-05 - Arbel, Gil | |
| 130. | | 2020-06-08 - Beury, Donald | |
| 131. | | 2020-06-26 - Saxon, Bret | Remanded w-o costs, subsequently disbarred, costs imposed |
| 132. | | 2020-08-14 - Schwartz, Ivan | |
| 133. | | 2020-08-18 - Singh, Kulvinder | |
| 134. | | 2020-08-24 - Ali, Zulu | |
| 135. | | 2020-08-27 - Roshan, Peyman | |
| 136. | | 2020-09-18 - Braun, Dennis | |
| 137. | | 2020-09-22 - Harris, Jamie | |
| 138. | | 2020-09-30 - Martin, Joseph | |
| 139. | | 2020-10-22 - Campbell, Renee | |
| 140. | | 2020-11-06 - Schwarcz, David | |
| 141. | | 2020-11-13 - Caplin, Nicholas | |
| 142. | | 2020-11-20 - Orchan, Edward | |
| 143. | | 2020-12-28 - Stewart, Troy | |
| 144. | | 2021-01-04 - Rothstein, Larry | |

**Ex. 9:5**

| NO. | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|
| 145. | | 2021-01-12 - Li, James | |
| 146. | | 2021-01-22 - Robinson, Russell | |
| 147. | | 2021-02-23 - Chavez, Fernando | |
| 148. | | 2021-03-03 - Clevenger, Ty | |
| 149. | | 2021-03-04 - Rubin, Michael | |
| 150. | | 2021-03-19 - Herich, Emil | |
| 151. | | 2021-04-05 - Benice, Jeffrey | NDC: Four Counts.  Hearing: Four counts. Represented by Pansky. |
| 152. | | 2021-04-16 - Rubin, Michael | |
| 153. | | 2021-06-25 - Lanphier, Steele | |
| 154. | | 2021-09-07 - Passaglia, John (BB) | NDC: Three counts. Hearing: culpable on all 3, admonition only. Represented by Public Defender. No costs per admonition.  Aff'd. |
| 155. | | 2021-11-04 - Greer, Phillip | |
| 156. | | 2021-11-10 - Shkolnikov, Edward | |
| 157. | | 2022-01-22 - Robinson, Russell | |
| 158. | | 2022-02-11 - Jones, Derek | |
| 159. | | 2022-03-14 - Rodriguez, Robert | |
| 160. | | 2022-03-22 - Edgar, Donald | |
| 161. | | 2022-04-06 - Genis, Darryl | |
| 162. | | 2022-04-26 - Thomas, Jeffrey | |
| 163. | | 2022-05-25 - Isola, David | |
| 164. | | 2022-08-10 - Erwin, Chris | |
| 165. | | 2022-08-26 - Thomas, Jeffrey | |
| 166. | | 2022-09-14 - Shahbaz, Jacob | |
| 167. | | 2022-09-16 - Salzwedel, William | |
| 168. | | 2022-10-06 - Kurtrubes, Peter | |
| 169. | | 2022-12-05 - Fisher, Lisa | |
| 170. | | 2022-12-17 - Iler, Douglas | |
| 171. | | 2022-12-28 - Madden, Alison | |
| 172. | | 2023-02-07 - Lacher, Pamela | |
| 173. | | 2023-02-14 - Kieler, Tyler | |
| 174. | | 2023-02-17 - Kim, Seong | Remanded, costs imposed. |
| 175. | | 2023-02-21 - Pavone, Benjamin | |
| 176. | | 2023-03-13 - Goldblatt, Lewis | |

Ex. 9:6

| NO. | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|
| 177. | | 2023-03-16 - Kimmel, Stanley (SBC20O30782) | |
| 178. | | 2023-04-14 - Purcell, Gilbert | |
| 179. | | 2023-06-12 - Dubin, Adam | |
| 180. | | 2023-08-15 - Abdeljawad, Eyad | |
| 181. | | 2023-09-20 - Bradshaw, Drexel | |
| 182. | | 2023-10-02 - Respondent CC (ADP) | Accepted into ADP to avoid disbarment.  Probably still disciplined and costs imposed. |
| 183. | | 2023-10-17 - Thibault, Elana | |
| 184. | | 2023-10-25 - Spielbauer, Thomas | OCTC petition for review granted. |
| 185. | | 2023-12-07 - Derieg, George | |
| 186. | | 2024-01-02 - Smith, Spencer | |
| 187. | | 2024-01-23 - Loomis, Shane | |
| 188. | | 2024-01-24 - McCann, Robert | |
| 189. | | 2024-03-11 - Albert, Lenore | |
| 190. | | 2024-04-22 – Resp. DD | Admonition only. Margolis. |
| 191. | | 2024-04-30 - Oliveri, Matthew | |
| 192. | | 2024-05-06 - Vargas, Fernando | |
| 193. | | 2024-06-16 - Lacher, Pamela | |
| 194. | | 2024-06-28 - Ramirez, Sergio | |
| 195. | | 2024-08-13 - Lucero, Linda | |
| 196. | | 2024-09-17 - Scarcella, Christopher | |
| 197. | | 2024-11-08 - Griffin, Keith | |
| 198. | | 2024-11-26 - Olin, Jeffrey | |
| 199. | | 2024-12-13 - Kostiv, Petro | |
| 200. | | 2024-12-26 - Kamran, Mir-Houtan | |
| 201. | | 2025-01-06 - Pratt, Chad | |
| 202. | | 2025-01-31 - Mitchell, Rossana | |
| 203. | | 2025-02-05 - Quigg, Vincent | |
| 204. | | 2025-03-17 - Trimarche, Gregory | |
| 205. | | 2025-06-13 - Eastman, John | |
| 206. | | 2025-07-02 - Dunn, Joseph | |
| 207. | | 2025-09-25 - Nejadpour, Fari | |
| 208. | | 2025-11-25 - Pavone, Benjamin | |

**Ex. 9:7**

**Laden, Richard**          **01PM05232**                    **Honn**

**Ex. 9:8**

# EXHIBIT 10

# EXHIBIT 10

# McGILL, W. KEARSE
## Case Tracker

| NO. | Won on Appeal | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|---|
| | | | **2026-02-09 – Status** 141 traditional discipline cases 6/141 = 95.7% 6 cases resulted in avoidance of the fines.  4.3% 2 non-represented cases avoided the fines. 1.4% 11 represented.  2.7% 2 cases where the attorney was not disciplined at the hearing level and that decision was not disturbed on review. 21/143 = 85% men  Represented Unrepresented. | |
| 1. | 2017-01-23 | | 2016-10-19 - Prevost, Mary | |
| 2. | 2018-11-21 | | 2016-10-31 - Barry, Patricia | |
| 3. | 2020-03-10 | | 2016-12-06 - Schooler, Jane | |
| 4. | 2021-04-05 | | 2017-01-23 - Sack, Robert | NDC: Count 1: 2 charges; NDC (A): Count 1: 2 charges; Unrepresented. |
| 5. | 2021-06-25 | | 2017-02-24 – Nia, Tina | |

**Ex. 10:1**

| NO. | Won on Appeal | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|---|
| 6. | 2024-04-22 | | 2017-04-24 - Kun, Albert | |
| 7. | | | 2017-05-12 - Miller, Raymond | |
| 8. | | | 2017-05-17 - Deetman, Bernard | |
| 9. | | | 2017-06-12 - Bolanos, Aldon | |
| 10. | | | 2017-09-28 - Bennett, Michael | |
| 11. | | | 2017-10-02 - Faulk, Ronald | |
| 12. | | | 2017-12-08 - Van Dusen, Jan | |
| 13. | | | 2017-12-26 - Fletcher, Freddie | |
| 14. | | | 2017-12-26 - Gentino, Robert | |
| 15. | | | 2018-01-29 - Peters, Jordan | |
| 16. | | | 2018-02-15 - Shafer, David | |
| 17. | | | 2018-03-13 - Sganga, Michael | |
| 18. | | | 2018-04-04 - Li, James | |
| 19. | | | 2018-04-09 - Kitay, Robert | |
| 20. | | | 2018-04-24 - Khishaveh, Klayton | |
| 21. | | | 2018-04-24 - Tanden, Raj | |
| 22. | | | 2018-05-08 - Weiner, Steven | |
| 23. | | | 2018-05-16 - Goffney, Keith | |
| 24. | | | 2018-05-30 - Golden, Stephen | |
| 25. | | | 2018-06-08 - Lewiston, Jeffrey | |
| 26. | | | 2018-07-05 - Metoyer, Delia | |
| 27. | | | 2018-07-24 - Sprouls, Frank | |
| 28. | | | 2018-08-06 - Luti, Anthony | |
| 29. | | | 2018-08-23 - O'Connell, Dennis | |
| 30. | | | 2018-09-07 - Nassar, Sandra | |

**Ex. 10:2**

| NO. | Won on Appeal | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|---|
| 31. | | | 2018-09-21 - Kun, Albert | |
| 32. | | | 2018-10-15 - Deaguilera, James | |
| 33. | | | 2018-10-31 - Gordon, Chance | |
| 34. | | | 2018-11-08 - Gonzalez, Manuel | |
| 35. | | | 2018-11-21 - Hanson, Roger | NDC: two counts, per review department opinion. Irregularities in docket. No documents. Recusal motions not uploaded. Not represented. |
| 36. | | | 2018-12-06 - Baric, Drago | |
| 37. | | | 2019-01-07 - Clark, Diddo | |
| 38. | | | 2019-02-12 - Smith, Spencer | |
| 39. | | | 2019-03-08 - Gurevich, Yelena | NDC: four counts Dismissed in lower court. Represented. Affirmed on appeal to not impose discipline. |
| 40. | | | 2019-03-29 - Fuery, John | |
| 41. | | | 2019-04-18 - Haddon, Mark | |
| 42. | | | 2019-04-22 - Amponsah, Leslie | |
| 43. | | | 2019-05-01 – Bhardwah, Sanjay | |
| 44. | | | 2019-06-07 - Weiss, Mogeeb | |
| 45. | | | 2019-06-07 - Maki, Lisa | |
| 46. | | | 2019-06-12 - Khaliq, Imran | |
| 47. | | | 2019-06-15 - Wanland, Donald | |
| 48. | | | 2019-07-10 - Cunningham, Archie | |
| 49. | | | 2019-07-15 - Wanland, Donald | |
| 50. | | | 2019-07-30 - Bradshaw, Drexel | Represented at trial. Not on appeal. Costs overturned. Disbarred. Awarded against him. |

**Ex. 10:3**

| NO. | Won on Appeal | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|---|
| 51. | | | 2019-08-27 - Lingwood, Rita | |
| 52. | | | 2019-09-05 - Foster, Steven | |
| 53. | | | 2019-10-09 - Engel, Julius | |
| 54. | | | 2019-10-11 - Khakshooy, Bob | |
| 55. | | | 2019-10-25 - Cohen, Lottie | |
| 56. | | | 2019-10-29 - Speckman, David | |
| 57. | | | 2020-01-13 - Rodriguez, Patricia | |
| 58. | | | 2020-01-17 - Partington, Earle | |
| 59. | | | 2020-02-11 - Haynes, Gregory | |
| 60. | | | 2020-03-10 - Paquin, David | NDC: Seven counts: Hearing: Three counts to Review Dept. Exonerated.  Represented by Gerry. |
| 61. | | | 2020-03-16 - Foster, Richard | |
| 62. | | | 2020-04-08 - Hoffman, Peter | |
| 63. | | | 2020-04-10 - Smart, Dean | |
| 64. | | | 2020-04-14 - Harper, Gregory | |
| 65. | | | 2020-05-12 - Tarbeek, Marc | |
| 66. | | | 2020-05-13 - Hubbard, Scottlynn | |
| 67. | | | 2020-06-05 - Arbel, Gil | |
| 68. | | | 2020-06-08 - Beury, Donald | |
| 69. | | | 2020-06-26 - Saxon, Bret | Remanded w-o costs, subsequently disbarred, costs imposed |
| 70. | | | 2020-08-14 - Schwartz, Ivan | |
| 71. | | | 2020-08-18 - Singh, Kulvinder | |
| 72. | | | 2020-08-24 - Ali, Zulu | |
| 73. | | | 2020-08-27 - Roshan, Peyman | |

**Ex. 10:4**

| NO. | Won on Appeal | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|---|
| 74. | | | 2020-09-18 - Braun, Dennis | |
| 75. | | | 2020-09-22 - Harris, Jamie | |
| 76. | | | 2020-09-30 - Martin, Joseph | |
| 77. | | | 2020-10-22 - Campbell, Renee | |
| 78. | | | 2020-11-06 - Schwarcz, David | |
| 79. | | | 2020-11-13 - Caplin, Nicholas | |
| 80. | | | 2020-11-20 - Orchan, Edward | |
| 81. | | | 2020-12-28 - Stewart, Troy | |
| 82. | | | 2021-01-04 - Rothstein, Larry | |
| 83. | | | 2021-01-12 - Li, James | |
| 84. | | | 2021-01-22 - Robinson, Russell | |
| 85. | | | 2021-02-23 - Chavez, Fernando | |
| 86. | | | 2021-03-03 - Clevenger, Ty | |
| 87. | | | 2021-03-04 - Rubin, Michael | |
| 88. | | | 2021-03-19 - Herich, Emil | |
| 89. | | | 2021-04-05 - Benice, Jeffrey | NDC: Four Counts.  Hearing: Four counts. Represented by Pansky. |
| 90. | | | 2021-06-25 - Lanphier, Steele | |
| 91. | | | 2021-09-07 - Passaglia, John (BB) | NDC: Three counts. Hearing: culpable on all 3, admonition only. Represented by Public Defender.  No costs per admonition.  Affirmed. |
| 92. | | | 2021-11-04 - Greer, Phillip | |
| 93. | | | 2021-11-10 - DeAguilera, James | |
| 94. | | | 2021-11-10 - Shkolnikov, Edward | |
| 95. | | | 2022-01-22 - Robinson, Russell | |

**Ex. 10:5**

| NO. | Won on Appeal | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|---|
| 96. | | | 2022-02-11 - Jones, Derek | |
| 97. | | | 2022-03-14 - Rodriguez, Robert | |
| 98. | | | 2022-03-22 - Edgar, Donald | |
| 99. | | | 2022-04-06 - Genis, Darryl | |
| 100. | | | 2022-04-26 - Thomas, Jeffrey | |
| 101. | | | 2022-05-25 - Isola, David | |
| 102. | | | 2022-08-10 - Erwin, Chris | |
| 103. | | | 2022-08-26 - Thomas, Jeffrey | |
| 104. | | | 2022-09-14 - Shahbaz, Jacob | |
| 105. | | | 2022-09-16 - Salzwedel, William | |
| 106. | | | 2022-10-06 - Kurtrubes, Peter | |
| 107. | | | 2022-11-08 - Jimenez, Eric | |
| 108. | | | 2022-12-05 - Fisher, Lisa | |
| 109. | | | 2022-12-17 - Iler, Douglas | |
| 110. | | | 2022-12-28 - Madden, Alison | |
| 111. | | | 2023-02-07 - Lacher, Pamela | |
| 112. | | | 2023-02-14 - Kieler, Tyler | |
| 113. | | | 2023-02-17 - Kim, Seong | Remanded, costs imposed |
| 114. | | | 2023-02-21 - Pavone, Benjamin | |
| 115. | | | 2023-03-13 - Goldblatt, Lewis | |
| 116. | | | 2023-04-14 - Purcell, Gilbert | |
| 117. | | | 2023-06-12 - Dubin, Adam | |
| 118. | | | 2023-08-15 - Abdeljawad, Eyad | |
| 119. | | | 2023-09-20 - Bradshaw, Drexel | |

**Ex. 10:6**

| NO. | Won on Appeal | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|---|
| 120. | | | 2023-10-02 - Respondent CC (ADP) | Accepted into ADP to avoid disbarment. Probably still disciplined and costs imposed. |
| 121. | | Green | 2023-10-17 - Thibault, Elana | |
| 122. | | Green | 2023-10-25 - Spielbauer, Thomas | OCTC petition for review granted. |
| 123. | | Green | 2023-12-07 - Derieg, George | |
| 124. | | Green | 2024-01-02 - Smith, Spencer | |
| 125. | | Green | 2024-01-23 - Loomis, Shane | |
| 126. | | Green | 2024-01-24 - McCann, Robert | |
| 127. | | Green | 2024-03-11 - Albert, Lenore | |
| 128. | | Red | 2024-04-22 – Resp. DD | Admonition only. Represented by Margolis. |
| 129. | | Green | 2024-05-06 - Vargas, Fernando | |
| 130. | | Green | 2024-06-28 - Ramirez, Sergio | |
| 131. | | Green | 2024-08-13 - Lucero, Linda | |
| 132. | | Green | 2024-09-17 - Scarcella, Christopher | |
| 133. | | Green | 2024-11-08 - Griffin, Keith | |
| 134. | | Green | 2024-11-26 - Olin, Jeffrey | |
| 135. | | Green | 2024-12-13 - Kostiv, Petro | |
| 136. | | Green | 2024-12-26 - Kamran, Mir-Houtan | |
| 137. | | Green | 2025-01-06 - Pratt, Chad | |
| 138. | | Green | 2025-01-31 - Mitchell, Rossana | |
| 139. | | Green | 2025-02-05 - Quigg, Vincent | |
| 140. | | Green | 2025-06-13 - Eastman, John | |
| 141. | | Green | 2025-07-02 - Dunn, Joseph | |
| 142. | | Green | 2025-09-25 - Nejadpour, Fari | |
| 143. | | Green | 2025-11-25 - Pavone, Benjamin | |

**Ex. 10:7**

**Ex. 10:8**

# EXHIBIT 11

# EXHIBIT 11

# REVIEW DEPT. TRACKER
# (Discipline Cases)

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| | | | |

**SUMMARY INFORMATION**

**2026-02-03 – Status**

408 total opinions from 2000-2025

403 opinions where costs imposed (96.7%)

13 cases resulted in avoidance of the fines. (3.3%)

9 represented attorneys avoided the fines. (2.2%)

4 self-represented cases avoided the fines. (1.1%)

4 cases where the attorney was not disciplined at the hearing level and that decision was not disturbed on review.

1 ADP case, hard to track outcome.

No known case where with over three culpability findings at the trial level where self-represented attorney avoided the fines.

### Victorious Cases

| Represented (9) | Self-represented. (4) |
|---|---|
| 2013-10-11 – Johnson | 2011-03-25 – DeBiase (3 charges) |
| 2015-08-07 – Bowman | 2017-01-23 – Sack (2 charges) |
| 2015-08-07 – Harwell | 2018-11-21 – Hanson (2 charges) |
| 2015-09-22 – Seuthe | 2001-06-05 – Wu (3 charges) |
| 2018-06-27 – Mahdessian | |
| 2020-03-10 – Paquin | |
| 2021-04-05 – Benice | |
| 2021-06-25 – Lanphier | |
| 2024-04-22 – Resp. DD | |

**Ex. 12:1**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 1. | | 2000-02-24 - Stansbury, John | |
| 2. | | 2000-03-07 - Torres, Felix | |
| 3. | | 2000-04-17 - Lais, Ronald | |
| 4. | | 2000-04-24 - Lantz, Thomas | |
| 5. | | 2000-08-07 - Jenkins, Leon | |
| 6. | | 2000-10-25 - Chesnut, Daniel | |
| 7. | | 2000-10-26 - Johnson, Alan | |
| 8. | | 2000-10-26 - Kittrell, Bolden | Remanded, costs awarded subsequently (2003-11-18 - Kittrell, Bolden - Review Dept., 4 Cal. State Bar Ct. Rptr. 615) |
| 9. | | 2001-03-06 - Kauffman, Neil | |
| 10. | | 2001-03-16 - Bailey, Shere | |
| 11. | | 2001-05-14 - Petilla, Rodolfo | |
| 12. | | 2001-05-22 - Silverton, Ronald | State Bar appeal; reversed in favor of Bar; second Review Dept opinion (2004-01-06 - Silverton, Ronald - Review Dept.) imposed costs. |
| 13. | | 2001-06-05 - Wu, Kuojen | Not a discipline case itself, but references an unpublished opinion in which he was exonerated of all charges. |
| 14. | | 2001-07-09 - Dahlz, Justin | |
| 15. | | 2001-07-30 - Taggart, Timothy | |
| 16. | | 2001-10-04 - Phillips, Emir | |
| 17. | | 2001-10-30 - Freydl, Thomas | |
| 18. | | 2002-04-15 - Gillis, Thomas | |
| 19. | | 2002-04-15 - McCarthy, Charles | |
| 20. | | 2002-05-24 - Bloom, Melanie | |
| 21. | | 2002-08-26 - Gadda, Miguel | |
| 22. | | 2002-10-25 - Scott, Carey | |

**Ex. 12:2**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 23. | | 2002-11-22 - Kreitenberg, Mitchell | |
| 24. | | 2002-12-13 - Peavey, William | |
| 25. | | 2002-12-31 - Valinoti, James | |
| 26. | | 2003-07-10 - Gorman, Robert | |
| 27. | | 2003-08-06 - Davis. James | |
| 28. | | 2003-11-18 - Kittrell, Bolden | |
| 29. | | 2003-12-26 - Malek-Yonan, Monica | |
| 30. | | 2004-01-06 - Silverton, Ronald | |
| 31. | | 2004-03-15 - Lindmark, Roger | |
| 32. | | 2004-04-14 - Laden, Richard | |
| 33. | | 2004-05-28 - Tenner, Alvin | |
| 34. | | 2004-07-16 - Oheb, Tamir | |
| 35. | | 2004-12-10 - Luis, Rolando | |
| 36. | | 2005-01-13 - Pasyanos, Demetra | |
| 37. | | 2005-01-14 - Maloney, Patrick | |
| 38. | | 2005-02-08 - Van Sickle, David | |
| 39. | | 2005-08-08 - Regan, James | |
| 40. | | 2005-12-05 - Wells, Stephine | |
| 41. | | 2006-02-16 - Hove, Richard | |
| 42. | | 2006-03-07 - Rivera, Eduardo | |
| 43. | | 2006-04-27 - Oheb, Tamir | |
| 44. | | 2006-05-06 - Dale, Joshua | |
| 45. | | 2006-05-15 - Brockway, David | |
| 46. | | 2006-05-18 - Shalant, Joseph | |
| 47. | | 2006-07-12 - Thomson, Thomas | |
| 48. | | 2006-08-24 - Van Sickle, David | |

**Ex. 12:3**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 49. | | 2006-12-21 - Wolff, Julie | |
| 50. | | 2007-10-07 - Geyer, Mark | |
| 51. | | 2007-11-07 - Loftus, Donald | |
| 52. | | 2007-12-21 - Hove, Richard | |
| 53. | | 2007-12-27 - Esau, Gregory | |
| 54. | | 2008-02-28 - Esau, Gregory | |
| 55. | | 2008-10-17 - Sternberg, Caroline | |
| 56. | | 2008-19-19 - Fine, Richard | |
| 57. | | 2008-12-04 - Casey, Clifford | |
| 58. | | 2009-03-06 - Fahy, Francis | |
| 59. | | 2009-10-20 - Downey, Stephen | |
| 60. | | 2009-11-17 - Elkins, John | |
| 61. | | 2010-02-12 - Field, Benjamin | |
| 62. | | 2010-07-01 - Thompson, Kris | |
| 63. | | 2010-07-01 - Venie, David | |
| 64. | | 2010-08-11 - Borne, Edgar | |
| 65. | | 2010-08-11 - Sprouls, Frank | |
| 66. | | 2010-08-12 - Sullivan, Harold | |
| 67. | | 2010-09-17 - Koehler, Henry | |
| 68. | | 2010-09-30 - Rosenberg, James | |
| 69. | | 2010-10-06 - Tipler, James | |
| 70. | | 2010-10-06 - Wanland, Donald | |
| 71. | | 2010-11-09 - Wells, William | |
| 72. | | 2010-11-19 - Allen, Marie | Affirmed lower court decision to not impose discipline. |
| 73. | | 2010-12-02 - Robinson, Benjamin | |
| 74. | | 2010-12-03 - Wells, Stephine | |

**Ex. 12:4**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 75. | | 2010-12-29 - Mendoza, Ricardo | |
| 76. | | 2011-02-07 - Doan, Thinh | |
| 77. | | 2011-02-07 - Nownejad, Cyrus | |
| 78. | | 2011-03-02 - Dickson, Roy | |
| 79. | | 2011-03-03 - Jordan, James | |
| 80. | | 2011-03-04 - Phillips, Willie | |
| 81. | | 2011-03-24 - Goddard, Kimber | |
| 82. | | 2011-03-25 - DeBiase, Nicholas | 3 charges; exonerated. |
| 83. | | 2011-04-01 - London, Adam | |
| 84. | | 2011-05-05 - Teel, James | |
| 85. | | 2011-05-26 - Dowd, Robert | |
| 86. | | 2011-06-14 - Ryan, Kim | |
| 87. | | 2011-07-15 - Stanwyck, Steven | |
| 88. | | 2011-06-29 - Howard, Sean | |
| 89. | | 2011-08-10 - Ardalan, Kaveh | |
| 90. | | 2011-09-08 - Juarez, George | |
| 91. | | 2011-09-12 - Grant, Gary | |
| 92. | | 2011-09-27 - Nelson, James | |
| 93. | | 2011-10-04 - Dahlin, Tore | |
| 94. | | 2011-10-04 - Eytan, Mattaniah | Affirmed lower court dismissal |
| 95. | | 2011-11-04 - Wolf, Mervyn | |
| 96. | | 2012-01-13 - Jaroscak, Maureen | |
| 97. | | 2012-01-13 - Lenard, Richard | |
| 98. | | 2012-01-13 - Oxman, Rickey | |
| 99. | | 2012-02-07 - Gregory, Patrick | |
| 100. | | 2012-02-29 - Graham, Albert | |

**Ex. 12:5**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 101. | | 2012-03-07 - DeFiore, John | |
| 102. | | 2012-04-03 - Parks, Joseph | |
| 103. | | 2012-04-05 - Lowney, Linda | |
| 104. | | 2012-04-11 - Artz, Jaeffrey | |
| 105. | | 2012-05-09 - Seltzer, Margaret | |
| 106. | | 2012-05-09 - Witte, Thomas | |
| 107. | | 2012-05-23 - Hays, William | |
| 108. | | 2012-06-11 - Schmid, Frear | |
| 109. | | 2012-06-17 - Elstead, John | |
| 110. | | 2012-06-19 - Seltzer, Margaret | |
| 111. | | 2012-06-26 - Healy, Kevin | |
| 112. | | 2012-08-07 - Heurlin, John | |
| 113. | | 2012-08-09 - Levine, Howard | |
| 114. | | 2012-10-03 - Nadim, Mohammad | |
| 115. | | 2012-10-03 - Reiss, James | |
| 116. | | 2012-11-01 - Spadaro, Charlotte | |
| 117. | | 2012-11-07 - Ottosi, Paul | |
| 118. | | 2012-11-09 - Taylor, Swazi | |
| 119. | | 2012-12-06 - Isaacson, Lon | |
| 120. | | 2012-12-11 - Schweizer, William | |
| 121. | | 2013-02-07 - Schoth, Karl | |
| 122. | | 2013-02-07 - Stannard, Gregory | |
| 123. | | 2013-03-06 - Matthews, Eugene | |
| 124. | | 2013-03-11 - Halton, Victor | |
| 125. | | 2013-03-12 - Lawrence Arthur | |
| 126. | | 2013-04-15 - Donrad, Sean | |

**Ex. 12:6**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 127. | | 2013-04-15 - Lenard, Richard | |
| 128. | | 2013-04-16 - Seltzer, Margaret | |
| 129. | | 2013-05-10 - Song, John | |
| 130. | | 2013-06-14 - Davis, Breyon | |
| 131. | | 2013-06-16 - Chandler, James | |
| 132. | | 2013-08-08 - Parsa, James | |
| 133. | | 2013-08-13 - Jovich, Linda | |
| 134. | | 2013-09-19 - Robinson, Russell | Affirmed Hearing Dept. dismissal.  Did not timely respond to Bar letter. |
| 135. | | 2013-09-20 - Jenson, Bradley | |
| 136. | | 2013-09-23 - Afari, Daniel | |
| 137. | | 2013-10-10 - Scholl, Verne | |
| 138. | | 2013-10-11 - Johnson, David | Represented by Aarons.  3 charges in NDC 1; 2 charges in NDC 2. |
| 139. | | 2013-10-18 - Lanphier, Steele | |
| 140. | | 2013-12-04 - Morris, James | |
| 141. | | 2013-12-05 - Sargetis, John | |
| 142. | | 2013-12-05 - Schwartz, Donald | |
| 143. | | 2013-12-26 - Stalcup, Theodore | |
| 144. | | 2014-01-02 - Karnazes, Elizabeth | |
| 145. | | 2014-01-16 - Huang, Jack | |
| 146. | | 2014-02-03 - Diaz, Mario | |
| 147. | | 2014-02-07 - Wyatt, Robert | |
| 148. | | 2014-02-14 - Bravo, Nicholas | |
| 149. | | 2014-02-28 - Nunes, Glenn | |
| 150. | | 2014-03-04 - Phillips, Willie | |
| 151. | | 2014-03-07 - Look, William | |

**Ex. 12:7**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 152. | | 2014-03-08 - Sheer, Marilyn | |
| 153. | | 2014-04-01 - Kaye, David | |
| 154. | | 2014-04-02 - Butterfield, Ilse | |
| 155. | | 2014-04-17 - Clarambeau, Adlore | |
| 156. | | 2014-04-17 - Heeger, Phillip | |
| 157. | | 2014-04-30 - Alexander, Jon | |
| 158. | | 2014-05-03 - Hewitt, Robbin | |
| 159. | | 2014-05-12 - Guzman, Henry | |
| 160. | | 2014-05-13 - Hewitt, Robbin | |
| 161. | | 2014-05-14 - Petilla, Rodolfo | |
| 162. | | 2014-05-16 - Smithwick, George | |
| 163. | | 2014-05-21 - Yee, Anna | |
| 164. | | 2014-05-27 - Kitay, Robert | |
| 165. | | 2014-07-30 - Cisneros, Michael | |
| 166. | | 2014-08-06 - Ferko, Richard | |
| 167. | | 2014-08-20 - McDougal, Harold | |
| 168. | | 2014-09-04 - Lazo, Marc | |
| 169. | | 2014-09-05 - Foster, Steven | |
| 170. | | 2014-09-09 - Hernandez, Cynthia | |
| 171. | | 2014-10-01 - Missud, Patrick | |
| 172. | | 2014-10-03 - Burke, Gregory | |
| 173. | | 2014-10-22 - Tishgart, Kenneth | |
| 174. | | 2014-10-31 - Galland, Scott | |
| 175. | | 2014-11-06 - Carver, Michael | |
| 176. | | 2014-11-06 - Elkins, John | |
| 177. | | 2014-12-12 - Felger, Warren | |

**Ex. 12:8**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 178. | | 2014-12-12 - Kinney, Charles | |
| 179. | | 2015-01-16 - Cayce, Christopher | |
| 180. | | 2015-01-26 - Wenzel, Mark | |
| 181. | | 2015-02-05 - Huber, Mark | |
| 182. | | 2015-02-05 - Parish, Clinton | |
| 183. | | 2015-02-06 - Moore, Jamilla | |
| 184. | | 2015-02-12 - Scurrah, Robert | |
| 185. | | 2015-03-13 - Genis, Darryl | |
| 186. | | 2015-03-16 - Anyiam, Christian | |
| 187. | | 2015-04-10 - Teel, James | |
| 188. | | 2015-04-30 - Prevost, Mary | |
| 189. | | 2015-04-30 - Romano, Lynne | |
| 190. | | 2015-05-18 - Bolanos, Aldon | |
| 191. | | 2015-05-18 - Bradley, Vernon | |
| 192. | | 2015-05-18 – Ozekhome, Ilugbekhai | |
| 193. | | 2015-05-19 - Ezor, Edward | |
| 194. | | 2015-05-19 - Guillory, Marc | |
| 195. | | 2015-06-12 - Boles, James | |
| 196. | | 2015-06-12 - Graham, Albert | |
| 197. | | 2015-06-12 - Haddix, Kenneth | |
| 198. | | 2015-06-25 - Comstock, Victor | |
| 199. | | 2015-07-07 - Giovanazzi, Joseph | |
| 200. | | 2015-07-15 - Dickstein, Jeffrey | |
| 201. | | 2015-08-05 - McKee, Scott | |
| 202. | | 2015-08-06 - Altenberg, George | |
| 203. | | 2015-08-07 - Bowman, Robert | One charge in NDC.  Represented by Locks. |

**Ex. 12:9**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 204. | | 2015-08-07 - Harwell, Lee | Two charges in NDC (Pansky) |
| 205. | | 2015-08-26 - Li, James | |
| 206. | | 2015-08-28 - Smith, Phillip | |
| 207. | | 2015-09-08 - Dickson, Lorraine | |
| 208. | | 2015-09-22 - Seuthe, Eric | Five charges in NDC (Pansky) |
| 209. | | 2015-10-01 - Henrioulle, Stevan | |
| 210. | | 2015-10-09 - Eldridge, Deborah | No findings of culpability in lower court. SBC appeals. Reversed for SBC, returned to trial court.  Represented by Aarons. |
| 211. | | 2015-10-20 - Dryovage, Mary | |
| 212. | | 2015-11-06 - Anderson, Robert | |
| 213. | | 2015-11-16 - Marchiondo, Philip | |
| 214. | | 2015-11-25 - Lopez, Anthony | |
| 215. | | 2015-12-02 - Engel, Julius | |
| 216. | | 2015-12-11 - Greenfield, Bruce | |
| 217. | | 2015-12-22 - Stone, Michael | |
| 218. | | 2016-01-05 - Brown, Lloyd | |
| 219. | | 2016-01-06 - Palmer, Joseph | |
| 220. | | 2016-01-25 - Elstead, John | |
| 221. | | 2016-02-11 - Quinn, Andrew | |
| 222. | | 2016-02-16 - Choe, Gene | |
| 223. | | 2016-03-03 - Coombs, Richard | |
| 224. | | 2016-03-07 - Taylor, Johnnie | |
| 225. | | 2016-03-07 - Willoughby, Anthony | |
| 226. | | 2016-04-12 - Carver, Michael | |
| 227. | | 2016-05-03 - Lotta, Michael | |
| 228. | | 2016-05-10 - Declue, Joseph | |

**Ex. 12:10**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 229. | | 2016-05-10 - Jorgensen, Barry | |
| 230. | | 2016-05-25 - Zhang, Qin | |
| 231. | | 2016-06-03 - Burke, Gregory | |
| 232. | | 2016-06-06 - Samovar, Phillip | |
| 233. | | 2016-06-23 - Robertson, Wade | |
| 234. | | 2016-07-07 - Mason, Reginald | |
| 235. | | 2016-07-27 - Dongell, Richard | |
| 236. | | 2016-08-04 - Hubbard, Lynn | |
| 237. | | 2016-08-09 - Collins, Mansfield | |
| 238. | | 2016-09-02 - Derparsheghian, Mary | |
| 239. | | 2016-09-14 - Hansen, Kimberly | |
| 240. | | 2016-09-28 - Scheer, Marilyn | |
| 241. | | 2016-09-29 - Filice, Gerald | |
| 242. | | 2016-10-05 - Cameron, Nicholas | |
| 243. | | 2016-10-11 - Huber, Mark | |
| 244. | | 2016-10-11 - Kaplan, Steven | |
| 245. | | 2016-10-11 - Murray, Robert | |
| 246. | | 2016-10-15 - Chavez, Fernando | |
| 247. | | 2016-10-18 - Reed, Brian | |
| 248. | | 2016-10-19 - Prevost, Mary | |
| 249. | | 2016-10-28 - Sklar, Lori | |
| 250. | | 2016-10-31 - Barry, Patricia | |
| 251. | | 2016-11-22 - Reinder, Martin | |
| 252. | | 2016-12-06 - Schooler, Jane | |
| 253. | | 2017-01-12 - Klugman, Steven | |

**Ex. 12:11**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 254. | | 2017-01-23 - Sack, Robert | NDC: Count 1: 2 charges; NDC (A): Count 1: 2 charges; Unrepresented. |
| 255. | | 2017-01-26 - Hasan, Shameen | |
| 256. | | 2017-02-24 – Nia, Tina | |
| 257. | | 2017-04-20 - Moriarty, Leo | |
| 258. | | 2017-04-24 - Kun, Albert | |
| 259. | | 2017-04-25 - Kim, David | |
| 260. | | 2017-05-12 - Miller, Raymond | |
| 261. | | 2017-05-17 - Deetman, Bernard | |
| 262. | | 2017-06-07 - Edwards, John | |
| 263. | | 2017-06-12 - Bolanos, Aldon | |
| 264. | | 2017-06-27 - Brandt, Benjamin | |
| 265. | | 2017-06-29 - Genis, Darryel | |
| 266. | | 2017-06-30 - Albert, Lenore | |
| 267. | | 2017-08-02 - Eldridge, Deborah | |
| 268. | | 2017-09-28 - Bennett, Michael | |
| 269. | | 2017-10-02 - Faulk, Ronald | |
| 270. | | 2017-12-07 - Partington, Earle | |
| 271. | | 2017-12-08 - Van Dusen, Jan | |
| 272. | | 2017-12-26 - Fletcher, Freddie | |
| 273. | | 2017-12-26 - Gentino, Robert | |
| 274. | | 2018-01-29 - Peters, Jordan | |
| 275. | | 2018-02-15 - Shafer, David | |
| 276. | | 2018-03-13 - Sganga, Michael | |
| 277. | | 2018-03-28 - Collins, Joseph | |
| 278. | | 2018-04-04 - Li, James | |

**Ex. 12:12**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 279. | | 2018-04-09 - Kitay, Robert | |
| 280. | | 2018-04-24 - Khishaveh, Klayton | |
| 281. | | 2018-04-24 - Tanden, Raj | |
| 282. | | 2018-05-08 - Weiner, Steven | |
| 283. | | 2018-05-16 - Goffney, Keith | |
| 284. | | 2018-05-30 - Golden, Stephen | |
| 285. | | 2018-06-08 - Lewiston, Jeffrey | |
| 286. | | 2018-06-27 - Mahdessian, Rita | Represented. Represented by Gerry |
| 287. | | 2018-07-05 - Metoyer, Delia | |
| 288. | | 2018-07-24 - Sprouls, Frank | |
| 289. | | 2018-08-06 - Luti, Anthony | |
| 290. | | 2018-08-23 - O'Connell, Dennis | |
| 291. | | 2018-09-07 - Nassar, Sandra | |
| 292. | | 2018-09-21 - Kun, Albert | |
| 293. | | 2018-10-15 - Deaguilera, James | |
| 294. | | 2018-10-31 - Gordon, Chance | |
| 295. | | 2018-11-08 - Gonzalez, Manuel | |
| 296. | | 2018-11-21 - Hanson, Roger | NDC: two counts, per review department opinion. Irregularities in docket. No documents. Recusal motions not uploaded. Not represented. |
| 297. | | 2018-12-06 - Baric, Drago | |
| 298. | | 2019-01-07 - Clark, Diddo | |
| 299. | | 2019-02-12 - Smith, Spencer | |
| 300. | | 2019-03-08 - Gurevich, Yelena | Case dismissed at trial, affirmed on appeal. |
| 301. | | 2019-03-29 - Fuery, John | |
| 302. | | 2019-04-18 - Haddon, Mark | |

**Ex. 12:13**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 303. | | 2019-04-22 - Amponsah, Leslie | |
| 304. | | 2019-05-01 – Bhardwah, Sanjay | |
| 305. | | 2019-06-07 - Weiss, Mogeeb | |
| 306. | | 2019-06-07 - Maki, Lisa | |
| 307. | | 2019-06-12 - Khaliq, Imran | |
| 308. | | 2019-06-15 - Wanland, Donald | |
| 309. | | 2019-07-10 - Cunningham, Archie | |
| 310. | | 2019-07-15 - Wanland, Donald | |
| 311. | | 2019-07-30 - Bradshaw, Drexel | Represented at trial.  Not on appeal.  Disbarred.  Costs imposed. |
| 312. | | 2019-08-27 - Lingwood, Rita | |
| 313. | | 2019-09-05 - Foster, Steven | |
| 314. | | 2019-10-09 - Engel, Julius | |
| 315. | | 2019-10-11 - Khakshooy, Bob | |
| 316. | | 2019-10-25 - Cohen, Lottie | |
| 317. | | 2019-10-29 - Speckman, David | |
| 318. | | 2020-01-13 - Rodriguez, Patricia | |
| 319. | | 2020-01-17 - Partington, Earle | |
| 320. | | 2020-02-11 - Haynes, Gregory | |
| 321. | | 2020-03-10 - Paquin, David | NDC: Seven counts: Hearing: Three counts to RD. Exonerated. Represented. |
| 322. | | 2020-03-16 - Foster, Richard | |
| 323. | | 2020-04-08 - Hoffman, Peter | |
| 324. | | 2020-04-10 - Smart, Dean | |
| 325. | | 2020-04-14 - Harper, Gregory | |
| 326. | | 2020-05-12 - Tarbeek, Marc | |
| 327. | | 2020-05-13 - Hubbard, Scottlynn | |

**Ex. 12:14**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 328. | | 2020-06-05 - Arbel, Gil | |
| 329. | | 2020-06-08 - Beury, Donald | |
| 330. | | 2020-06-26 - Saxon, Bret | Remanded w-o costs, subsequently disbarred, costs imposed |
| 331. | | 2020-08-14 - Schwartz, Ivan | |
| 332. | | 2020-08-18 - Singh, Kulvinder | |
| 333. | | 2020-08-24 - Ali, Zulu | |
| 334. | | 2020-08-27 - Roshan, Peyman | |
| 335. | | 2020-09-18 - Braun, Dennis | |
| 336. | | 2020-09-22 - Harris, Jamie | |
| 337. | | 2020-09-30 - Martin, Joseph | |
| 338. | | 2020-10-22 - Campbell, Renee | |
| 339. | | 2020-11-06 - Schwarcz, David | |
| 340. | | 2020-11-13 - Caplin, Nicholas | |
| 341. | | 2020-11-20 - Orchan, Edward | |
| 342. | | 2020-12-28 - Stewart, Troy | |
| 343. | | 2021-01-04 - Rothstein, Larry | |
| 344. | | 2021-01-12 - Li, James | |
| 345. | | 2021-01-22 - Robinson, Russell | |
| 346. | | 2021-02-23 - Chavez, Fernando | |
| 347. | | 2021-03-03 - Clevenger, Ty | |
| 348. | | 2021-03-04 - Rubin, Michael | |
| 349. | | 2021-03-19 - Herich, Emil | |
| 350. | | 2021-04-05 - Benice, Jeffrey | NDC: Four Counts.  Hearing: Four counts. Represented by Pansky. |
| 351. | | 2021-04-16 - Rubin, Michael | |
| 352. | | 2021-06-25 - Lanphier, Steele | |

**Ex. 12:15**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 353. | | 2021-09-07 - Passaglia, John (BB) | NDC: Three counts. Hearing: culpable on all 3, admonition only. Represented by Public Defender.  No costs per admonition.  Affirmed. |
| 354. | | 2021-11-04 - Greer, Phillip | |
| 355. | | 2021-11-10 - DeAguilera, James | |
| 356. | | 2021-11-10 - Shkolnikov, Edward | |
| 357. | | 2022-01-22 - Robinson, Russell | |
| 358. | | 2022-02-11 - Jones, Derek | |
| 359. | | 2022-03-14 - Rodriguez, Robert | |
| 360. | | 2022-03-22 - Edgar, Donald | |
| 361. | | 2022-04-06 - Genis, Darryl | |
| 362. | | 2022-04-26 - Thomas, Jeffrey | |
| 363. | | 2022-05-25 - Isola, David | |
| 364. | | 2022-08-10 - Erwin, Chris | |
| 365. | | 2022-08-26 - Thomas, Jeffrey | |
| 366. | | 2022-09-14 - Shahbaz, Jacob | |
| 367. | | 2022-09-16 - Salzwedel, William | |
| 368. | | 2022-10-06 - Kurtrubes, Peter | |
| 369. | | 2022-11-08 - Jimenez, Eric | |
| 370. | | 2022-12-05 - Fisher, Lisa | |
| 371. | | 2022-12-17 - Iler, Douglas | |
| 372. | | 2022-12-28 - Madden, Alison | |
| 373. | | 2023-02-07 - Lacher, Pamela | |
| 374. | | 2023-02-14 - Kieler, Tyler | |
| 375. | | 2023-02-17 - Kim, Seong | Remanded, costs imposed |
| 376. | | 2023-02-21 - Pavone, Benjamin | |
| 377. | | 2023-03-13 - Goldblatt, Lewis | |

**Ex. 12:16**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 378. | | 2023-04-14 - Purcell, Gilbert | |
| 379. | | 2023-06-12 - Dubin, Adam | |
| 380. | | 2023-08-15 - Abdeljawad, Eyad | |
| 381. | | 2023-09-20 - Bradshaw, Drexel | |
| 382. | | 2023-10-02 - Respondent CC (ADP) | Accepted into ADP to avoid disbarment.  Probably costs still imposed. |
| 383. | | 2023-10-17 - Thibault, Elana | |
| 384. | | 2023-10-25 - Spielbauer, Thomas | OCTC petition for review granted. |
| 385. | | 2023-12-07 - Derieg, George | |
| 386. | | 2024-01-02 - Smith, Spencer | |
| 387. | | 2024-01-23 - Loomis, Shane | |
| 388. | | 2024-01-24 - McCann, Robert | |
| 389. | | 2024-03-11 - Albert, Lenore | |
| 390. | | 2024-04-22 – Resp. DD | Admonition only. Represented by Margolis. |
| 391. | | 2024-04-30 - Oliveri, Matthew | |
| 392. | | 2024-05-06 - Vargas, Fernando | |
| 393. | | 2024-06-16 - Lacher, Pamela | |
| 394. | | 2024-06-28 - Ramirez, Sergio | |
| 395. | | 2024-08-13 - Lucero, Linda | |
| 396. | | 2024-09-17 - Scarcella, Christopher | |
| 397. | | 2024-11-08 - Griffin, Keith | |
| 398. | | 2024-11-26 - Olin, Jeffrey | |
| 399. | | 2024-12-13 - Kostiv, Petro | |
| 400. | | 2024-12-26 - Kamran, Mir-Houtan | |
| 401. | | 2025-01-06 - Pratt, Chad | |
| 402. | | 2025-01-31 - Mitchell, Rossana | |

**Ex. 12:17**

| NO. | COSTS IMP. Green=Yes Red=No | CASE NAME/DATE | NOTES |
|---|---|---|---|
| 403. | | 2025-02-05 - Quigg, Vincent | |
| 404. | | 2025-03-17 - Trimarche, Gregory | |
| 405. | | 2025-06-13 - Eastman, John | |
| 406. | | 2025-07-02 - Dunn, Joseph | |
| 407. | | 2025-09-25 - Nejadpour, Fari | |
| 408. | | 2025-11-25 - Pavone, Benjamin | |

**Ex. 12:18**

# EXHIBIT 12

# EXHIBIT 12

# REVIEW DEPT. TRACKER
## (Gender Breakdown)

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
|  |  | **Gender Tally**: 404 Discipline Cases 63 against women 341 against men 84.4% - against men |
| 1. |  | 2000-02-24 - Stansbury, John |
| 2. |  | 2000-03-07 - Torres, Felix |
| 3. |  | 2000-04-17 - Lais, Ronald |
| 4. |  | 2000-04-24 - Lantz, Thomas |
| 5. |  | 2000-08-07 - Jenkins, Leon |
| 6. |  | 2000-10-25 - Chesnut, Daniel |
| 7. |  | 2000-10-26 - Johnson, Alan |
| 8. |  | 2000-10-26 - Kittrell, Bolden |
| 9. |  | 2001-03-06 - Kauffman, Neil |
| 10. |  | 2001-03-16 - Bailey, Shere |
| 11. |  | 2001-05-14 - Petilla, Rodolfo |
| 12. |  | 2001-05-22 - Silverton, Ronald |
| 13. |  | 2001-06-05 - Wu, Kuojen |
| 14. |  | 2001-07-09 - Dahlz, Justin |
| 15. |  | 2001-07-30 - Taggart, Timothy |
| 16. |  | 2001-10-04 - Phillips, Emir |
| 17. |  | 2001-10-30 - Freydl, Thomas |
| 18. |  | 2002-04-15 - Gillis, Thomas |
| 19. |  | 2002-04-15 - McCarthy, Charles |
| 20. |  | 2002-05-24 - Bloom, Melanie |
| 21. |  | 2002-08-26 - Gadda, Miguel |
| 22. |  | 2002-10-25 - Scott, Carey |
| 23. |  | 2002-11-22 - Kreitenberg, Mitchell |
| 24. |  | 2002-12-13 - Peavey, William |
| 25. |  | 2002-12-31 - Valinoti, James |
| 26. |  | 2003-07-10 - Gorman, Robert |
| 27. |  | 2003-08-06 - Davis. James |

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
| 28. | | 2003-11-18 - Kittrell, Bolden |
| 29. | | 2003-12-26 - Malek-Yonan, Monica |
| 30. | | 2004-01-06 - Silverton, Ronald |
| 31. | | 2004-03-15 - Lindmark, Roger |
| 32. | | 2004-04-14 - Laden, Richard |
| 33. | | 2004-05-28 - Tenner, Alvin |
| 34. | | 2004-07-16 - Oheb, Tamir |
| 35. | | 2004-12-10 - Luis, Rolando |
| 36. | | 2005-01-13 - Pasyanos, Demetra |
| 37. | | 2005-01-14 - Maloney, Patrick |
| 38. | | 2005-02-08 - Van Sickle, David |
| 39. | | 2005-08-08 - Regan, James |
| 40. | | 2005-12-05 - Wells, Stephine |
| 41. | | 2006-02-16 - Hove, Richard |
| 42. | | 2006-03-07 - Rivera, Eduardo |
| 43. | | 2006-04-27 - Oheb, Tamir |
| 44. | | 2006-05-06 - Dale, Joshua |
| 45. | | 2006-05-15 - Brockway, David |
| 46. | | 2006-05-18 - Shalant, Joseph |
| 47. | | 2006-07-12 - Thomson, Thomas |
| 48. | | 2006-08-24 - Van Sickle, David |
| 49. | | 2006-12-21 - Wolff, Julie |
| 50. | | 2007-10-07 - Geyer, Mark |
| 51. | | 2007-11-07 - Loftus, Donald |
| 52. | | 2007-12-21 - Hove, Richard |
| 53. | | 2007-12-27 - Esau, Gregory |
| 54. | | 2008-02-28 - Esau, Gregory |
| 55. | | 2008-10-17 - Sternberg, Caroline |
| 56. | | 2008-12-04 - Casey, Clifford |
| 57. | | 2009-03-06 - Fahy, Francis |
| 58. | | 2009-10-20 - Downey, Stephen |
| 59. | | 2009-11-17 - Elkins, John |
| 60. | | 2010-02-12 - Field, Benjamin |
| 61. | | 2010-07-01 - Thompson, Kris |
| 62. | | 2010-07-01 - Venie, David |
| 63. | | 2010-08-11 - Borne, Edgar |
| 64. | | 2010-08-11 - Sprouls, Frank |

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
| 65. | | 2010-08-12 - Sullivan, Harold |
| 66. | | 2010-09-17 - Koehler, Henry |
| 67. | | 2010-09-30 - Rosenberg, James |
| 68. | | 2010-10-06 - Tipler, James |
| 69. | | 2010-10-06 - Wanland, Donald |
| 70. | | 2010-11-09 - Wells, William |
| 71. | | 2010-11-19 - Allen, Marie |
| 72. | | 2010-12-02 - Robinson, Benjamin |
| 73. | | 2010-12-03 - Wells, Stephine |
| 74. | | 2010-12-29 - Mendoza, Ricardo |
| 75. | | 2011-02-07 - Doan, Thinh |
| 76. | | 2011-02-07 - Nownejad, Cyrus |
| 77. | | 2011-03-02 - Dickson, Roy |
| 78. | | 2011-03-03 - Jordan, James |
| 79. | | 2011-03-04 - Phillips, Willie |
| 80. | | 2011-03-24 - Goddard, Kimber |
| 81. | | 2011-03-25 - DeBiase, Nicholas |
| 82. | | 2011-04-01 - London, Adam |
| 83. | | 2011-05-05 - Teel, James |
| 84. | | 2011-05-26 - Dowd, Robert |
| 85. | | 2011-06-14 - Ryan, Kim |
| 86. | | 2011-07-15 - Stanwyck, Steven |
| 87. | | 2011-06-29 - Howard, Sean |
| 88. | | 2011-08-10 - Ardalan, Kaveh |
| 89. | | 2011-09-08 - Juarez, George |
| 90. | | 2011-09-12 - Grant, Gary |
| 91. | | 2011-09-27 - Nelson, James |
| 92. | | 2011-10-04 - Dahlin, Tore |
| 93. | | 2011-10-04 - Eytan, Mattaniah |
| 94. | | 2011-11-04 - Wolf, Mervyn |
| 95. | | 2012-01-13 - Jaroscak, Maureen |
| 96. | | 2012-01-13 - Lenard, Richard |
| 97. | | 2012-01-13 - Oxman, Rickey |
| 98. | | 2012-02-07 - Gregory, Patrick |
| 99. | | 2012-02-29 - Graham, Albert |
| 100. | | 2012-03-07 - DeFiore, John |
| 101. | | 2012-04-03 - Parks, Joseph |

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
| 102. | | 2012-04-05 - Lowney, Linda |
| 103. | | 2012-04-11 - Artz, Jaeffrey |
| 104. | | 2012-05-09 - Seltzer, Margaret |
| 105. | | 2012-05-09 - Witte, Thomas |
| 106. | | 2012-05-23 - Hays, William |
| 107. | | 2012-06-11 - Schmid, Frear |
| 108. | | 2012-06-17 - Elstead, John |
| 109. | | 2012-06-19 - Seltzer, Margaret |
| 110. | | 2012-06-26 - Healy, Kevin |
| 111. | | 2012-08-07 - Heurlin, John |
| 112. | | 2012-08-09 - Levine, Howard |
| 113. | | 2012-10-03 - Nadim, Mohammad |
| 114. | | 2012-10-03 - Reiss, James |
| 115. | | 2012-11-01 - Spadaro, Charlotte |
| 116. | | 2012-11-07 - Ottosi, Paul |
| 117. | | 2012-11-09 - Taylor, Swazi |
| 118. | | 2012-12-06 - Isaacson, Lon |
| 119. | | 2012-12-11 - Schweizer, William |
| 120. | | 2013-02-07 - Schoth, Karl |
| 121. | | 2013-02-07 - Stannard, Gregory |
| 122. | | 2013-03-06 - Matthews, Eugene |
| 123. | | 2013-03-11 - Halton, Victor |
| 124. | | 2013-03-12 - Lawrence Arthur |
| 125. | | 2013-04-15 - Donrad, Sean |
| 126. | | 2013-04-15 - Lenard, Richard |
| 127. | | 2013-04-16 - Seltzer, Margaret |
| 128. | | 2013-05-10 - Song, John |
| 129. | | 2013-06-14 - Davis, Breyon |
| 130. | | 2013-06-16 - Chandler, James |
| 131. | | 2013-08-08 - Parsa, James |
| 132. | | 2013-08-13 - Jovich, Linda |
| 133. | | 2013-09-19 - Robinson, Russell |
| 134. | | 2013-09-20 - Jenson, Bradley |
| 135. | | 2013-09-23 - Afari, Daniel |
| 136. | | 2013-10-10 - Scholl, Verne |
| 137. | Red | 2013-10-11 - Johnson, David |
| 138. | | 2013-10-18 - Lanphier, Steele |

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
| 139. | | 2013-12-04 - Morris, James |
| 140. | | 2013-12-05 - Sargetis, John |
| 141. | | 2013-12-05 - Schwartz, Donald |
| 142. | | 2013-12-26 - Stalcup, Theodore |
| 143. | | 2014-01-02 - Karnazes, Elizabeth |
| 144. | | 2014-01-16 - Huang, Jack |
| 145. | | 2014-02-03 - Diaz, Mario |
| 146. | | 2014-02-07 - Wyatt, Robert |
| 147. | | 2014-02-14 - Bravo, Nicholas |
| 148. | | 2014-02-28 - Nunes, Glenn |
| 149. | | 2014-03-04 - Phillips, Willie |
| 150. | | 2014-03-07 - Look, William |
| 151. | | 2014-03-08 - Sheer, Marilyn |
| 152. | | 2014-04-01 - Kaye, David |
| 153. | | 2014-04-02 - Butterfield, Ilse |
| 154. | | 2014-04-17 - Clarambeau, Adlore |
| 155. | | 2014-04-17 - Heeger, Phillip |
| 156. | | 2014-04-30 - Alexander, Jon |
| 157. | | 2014-05-03 - Hewitt, Robbin |
| 158. | | 2014-05-12 - Guzman, Henry |
| 159. | | 2014-05-13 - Hewitt, Robbin |
| 160. | | 2014-05-14 - Petilla, Rodolfo |
| 161. | | 2014-05-16 - Smithwick, George |
| 162. | | 2014-05-21 - Yee, Anna |
| 163. | | 2014-05-27 - Kitay, Robert |
| 164. | | 2014-07-30 - Cisneros, Michael |
| 165. | | 2014-08-06 - Ferko, Richard |
| 166. | | 2014-08-20 - McDougal, Harold |
| 167. | | 2014-09-04 - Lazo, Marc |
| 168. | | 2014-09-05 - Foster, Steven |
| 169. | | 2014-09-09 - Hernandez, Cynthia |
| 170. | | 2014-10-01 - Missud, Patrick |
| 171. | | 2014-10-03 - Burke, Gregory |
| 172. | | 2014-10-22 - Tishgart, Kenneth |
| 173. | | 2014-10-31 - Galland, Scott |
| 174. | | 2014-11-06 - Carver, Michael |
| 175. | | 2014-11-06 - Elkins, John |

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
| 176. | | 2014-12-12 - Felger, Warren |
| 177. | | 2014-12-12 - Kinney, Charles |
| 178. | | 2015-01-16 - Cayce, Christopher |
| 179. | | 2015-01-26 - Wenzel, Mark |
| 180. | | 2015-02-05 - Huber, Mark |
| 181. | | 2015-02-05 - Parish, Clinton |
| 182. | | 2015-02-06 - Moore, Jamilla |
| 183. | | 2015-02-12 - Scurrah, Robert |
| 184. | | 2015-03-13 - Genis, Darryl |
| 185. | | 2015-03-16 - Anyiam, Christian |
| 186. | | 2015-04-10 - Teel, James |
| 187. | | 2015-04-30 - Prevost, Mary |
| 188. | | 2015-04-30 - Romano, Lynne |
| 189. | | 2015-05-18 - Bolanos, Aldon |
| 190. | | 2015-05-18 - Bradley, Vernon |
| 191. | | 2015-05-18 – Ozekhome, Ilugbekhai |
| 192. | | 2015-05-19 - Ezor, Edward |
| 193. | | 2015-05-19 - Guillory, Marc |
| 194. | | 2015-06-12 - Boles, James |
| 195. | | 2015-06-12 - Graham, Albert |
| 196. | | 2015-06-12 - Haddix, Kenneth |
| 197. | | 2015-06-25 - Comstock, Victor |
| 198. | | 2015-07-07 - Giovanazzi, Joseph |
| 199. | | 2015-07-15 - Dickstein, Jeffrey |
| 200. | | 2015-08-05 - McKee, Scott |
| 201. | | 2015-08-06 - Altenberg, George |
| 202. | Red | 2015-08-07 - Bowman, Robert |
| 203. | Red | 2015-08-07 - Harwell, Lee |
| 204. | | 2015-08-26 - Li, James |
| 205. | | 2015-08-28 - Smith, Phillip |
| 206. | | 2015-09-08 - Dickson, Lorraine |
| 207. | Red | 2015-09-22 - Seuthe, Eric |
| 208. | | 2015-10-01 - Henrioulle, Stevan |
| 209. | | 2015-10-09 - Eldridge, Deborah |
| 210. | | 2015-10-20 - Dryovage, Mary |
| 211. | | 2015-11-06 - Anderson, Robert |
| 212. | | 2015-11-16 - Marchiondo, Philip |

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
| 213. | | 2015-11-25 - Lopez, Anthony |
| 214. | | 2015-12-02 - Engel, Julius |
| 215. | | 2015-12-11 - Greenfield, Bruce |
| 216. | | 2015-12-22 - Stone, Michael |
| 217. | | 2016-01-05 - Brown, Lloyd |
| 218. | | 2016-01-06 - Palmer, Joseph |
| 219. | | 2016-01-25 - Elstead, John |
| 220. | | 2016-02-11 - Quinn, Andrew |
| 221. | | 2016-02-16 - Choe, Gene |
| 222. | | 2016-03-03 - Coombs, Richard |
| 223. | | 2016-03-07 - Taylor, Johnnie |
| 224. | | 2016-03-07 - Willoughby, Anthony |
| 225. | | 2016-04-12 - Carver, Michael |
| 226. | | 2016-05-03 - Lotta, Michael |
| 227. | | 2016-05-10 - Declue, Joseph |
| 228. | | 2016-05-10 - Jorgensen, Barry |
| 229. | | 2016-05-25 - Zhang, Qin |
| 230. | | 2016-06-03 - Burke, Gregory |
| 231. | | 2016-06-06 - Samovar, Phillip |
| 232. | | 2016-06-23 - Robertson, Wade |
| 233. | | 2016-07-07 - Mason, Reginald |
| 234. | | 2016-07-27 - Dongell, Richard |
| 235. | | 2016-08-04 - Hubbard, Lynn |
| 236. | | 2016-08-09 - Collins, Mansfield |
| 237. | | 2016-09-02 - Derparsheghian, Mary |
| 238. | | 2016-09-14 - Hansen, Kimberly |
| 239. | | 2016-09-28 - Scheer, Marilyn |
| 240. | | 2016-09-29 - Filice, Gerald |
| 241. | | 2016-10-05 - Cameron, Nicholas |
| 242. | | 2016-10-11 - Huber, Mark |
| 243. | | 2016-10-11 - Kaplan, Steven |
| 244. | | 2016-10-11 - Murray, Robert |
| 245. | | 2016-10-15 - Chavez, Fernando |
| 246. | | 2016-10-18 - Reed, Brian |
| 247. | | 2016-10-19 - Prevost, Mary |
| 248. | | 2016-10-28 - Sklar, Lori |
| 249. | | 2016-10-31 - Barry, Patricia |

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
| 250. | | 2016-11-22 - Reinder, Martin |
| 251. | | 2016-12-06 - Schooler, Jane |
| 252. | | 2017-01-12 - Klugman, Steven |
| 253. | | 2017-01-23 - Sack, Robert |
| 254. | | 2017-01-26 - Hasan, Shameen |
| 255. | | 2017-02-24 – Nia, Tina |
| 256. | | 2017-04-20 - Moriarty, Leo |
| 257. | | 2017-04-24 - Kun, Albert |
| 258. | | 2017-04-25 - Kim, David |
| 259. | | 2017-05-12 - Miller, Raymond |
| 260. | | 2017-05-17 - Deetman, Bernard |
| 261. | | 2017-06-07 - Edwards, John |
| 262. | | 2017-06-12 - Bolanos, Aldon |
| 263. | | 2017-06-27 - Brandt, Benjamin |
| 264. | | 2017-06-29 - Genis, Darryel |
| 265. | | 2017-06-30 - Albert, Lenore |
| 266. | | 2017-08-02 - Eldridge, Deborah |
| 267. | | 2017-09-28 - Bennett, Michael |
| 268. | | 2017-10-02 - Faulk, Ronald |
| 269. | | 2017-12-07 - Partington, Earle |
| 270. | | 2017-12-08 - Van Dusen, Jan |
| 271. | | 2017-12-26 - Fletcher, Freddie |
| 272. | | 2017-12-26 - Gentino, Robert |
| 273. | | 2018-01-29 - Peters, Jordan |
| 274. | | 2018-02-15 - Shafer, David |
| 275. | | 2018-03-13 - Sganga, Michael |
| 276. | | 2018-03-28 - Collins, Joseph |
| 277. | | 2018-04-04 - Li, James |
| 278. | | 2018-04-09 - Kitay, Robert |
| 279. | | 2018-04-24 - Khishaveh, Klayton |
| 280. | | 2018-04-24 - Tanden, Raj |
| 281. | | 2018-05-08 - Weiner, Steven |
| 282. | | 2018-05-16 - Goffney, Keith |
| 283. | | 2018-05-30 - Golden, Stephen |
| 284. | | 2018-06-08 - Lewiston, Jeffrey |
| 285. | | 2018-06-27 - Mahdessian, Rita |
| 286. | | 2018-07-05 - Metoyer, Delia |

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
| 287. | | 2018-07-24 - Sprouls, Frank |
| 288. | | 2018-08-06 - Luti, Anthony |
| 289. | | 2018-08-23 - O'Connell, Dennis |
| 290. | | 2018-09-07 - Kun, Albert |
| 291. | | 2018-09-07 - Nassar, Sandra |
| 292. | | 2018-10-15 - Deaguilera, James |
| 293. | | 2018-10-31 - Gordon, Chance |
| 294. | | 2018-11-08 - Gonzalez, Manuel |
| 295. | | 2018-11-14 - Mahdessian, Rita |
| 296. | | 2018-11-21 - Hanson, Roger |
| 297. | | 2018-12-06 - Baric, Drago |
| 298. | | 2019-01-07 - Clark, Diddo |
| 299. | | 2019-02-01 - Na, Sheen |
| 300. | | 2019-02-12 - Smith, Spencer |
| 301. | | 2019-03-08 - Gurevich, Yelena |
| 302. | | 2019-03-29 - Fuery, John |
| 303. | | 2019-04-18 - Haddon, Mark |
| 304. | | 2019-04-22 - Amponsah, Leslie |
| 305. | | 2019-05-01 – Bhardwah, Sanjay |
| 306. | | 2019-06-07 - Weiss, Mogeeb |
| 307. | | 2019-06-07 - Maki, Lisa |
| 308. | | 2019-06-12 - Khaliq, Imran |
| 309. | | 2019-06-15 - Wanland, Donald |
| 310. | | 2019-06-26 - Lee, Raymond |
| 311. | | 2019-07-10 - Cunningham, Archie |
| 312. | | 2019-07-15 - Wanland, Donald |
| 313. | | 2019-07-30 - Bradshaw, Drexel |
| 314. | | 2019-08-27 - Lingwood, Rita |
| 315. | | 2019-09-05 - Foster, Steven |
| 316. | | 2019-10-09 - Engel, Julius |
| 317. | | 2019-10-11 - Khakshooy, Bob |
| 318. | | 2019-10-25 - Cohen, Lottie |
| 319. | | 2019-10-29 - Speckman, David |
| 320. | | 2020-01-13 - Rodriguez, Patricia |
| 321. | | 2020-01-17 - Partington, Earle |
| 322. | | 2020-02-11 - Haynes, Gregory |
| 323. | | 2020-03-10 - Paquin, David |

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
| 324. | | 2020-03-16 - Foster, Richard |
| 325. | | 2020-04-08 - Hoffman, Peter |
| 326. | | 2020-04-10 - Smart, Dean |
| 327. | | 2020-04-14 - Harper, Gregory |
| 328. | | 2020-05-12 - Tarbeek, Marc |
| 329. | | 2020-05-13 - Hubbard, Scottlynn |
| 330. | | 2020-06-05 - Arbel, Gil |
| 331. | | 2020-06-08 - Beury, Donald |
| 332. | | 2020-06-26 - Saxon, Bret |
| 333. | | 2020-08-14 - Schwartz, Ivan |
| 334. | | 2020-08-18 - Singh, Kulvinder |
| 335. | | 2020-08-24 - Ali, Zulu |
| 336. | | 2020-08-27 - Roshan, Peyman |
| 337. | | 2020-09-18 - Braun, Dennis |
| 338. | | 2020-09-22 - Harris, Jamie |
| 339. | | 2020-09-30 - Martin, Joseph |
| 340. | | 2020-10-22 - Campbell, Renee |
| 341. | | 2020-11-06 - Schwarcz, David |
| 342. | | 2020-11-13 - Caplin, Nicholas |
| 343. | | 2020-11-20 - Orchan, Edward |
| 344. | | 2020-12-28 - Stewart, Troy |
| 345. | | 2021-01-04 - Rothstein, Larry |
| 346. | | 2021-01-12 - Li, James |
| 347. | | 2021-01-22 - Robinson, Russell |
| 348. | | 2021-02-23 - Chavez, Fernando |
| 349. | | 2021-03-03 - Clevenger, Ty |
| 350. | | 2021-03-04 - Rubin, Michael |
| 351. | | 2021-03-19 - Herich, Emil |
| 352. | Red | 2021-04-05 - Benice, Jeffrey |
| 353. | | 2021-04-16 - Rubin, Michael |
| 354. | | 2021-06-25 - Lanphier, Steele |
| 355. | Red | 2021-09-07 - Passaglia, John (BB) |
| 356. | | 2021-11-04 - Greer, Phillip |
| 357. | | 2021-11-10 - DeAguilera, James |
| 358. | | 2021-11-10 - Shkolnikov, Edward |
| 359. | | 2022-01-22 - Robinson, Russell |
| 360. | | 2022-02-11 - Jones, Derek |

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
| 361. | | 2022-03-14 - Rodriguez, Robert |
| 362. | | 2022-03-22 - Edgar, Donald |
| 363. | | 2022-04-06 - Genis, Darryl |
| 364. | | 2022-04-26 - Thomas, Jeffrey |
| 365. | | 2022-05-25 - Isola, David |
| 366. | | 2022-08-10 - Erwin, Chris |
| 367. | | 2022-08-26 - Thomas, Jeffrey |
| 368. | | 2022-09-14 - Shahbaz, Jacob |
| 369. | | 2022-09-16 - Salzwedel, William |
| 370. | | 2022-10-06 - Kurtrubes, Peter |
| 371. | | 2022-12-05 - Fisher, Lisa |
| 372. | | 2022-12-17 - Iler, Douglas |
| 373. | | 2022-12-28 - Madden, Alison |
| 374. | | 2023-02-07 - Lacher, Pamela |
| 375. | | 2023-02-14 - Kieler, Tyler |
| 376. | | 2023-02-17 - Kim, Seong |
| 377. | | 2023-02-21 - Pavone, Benjamin |
| 378. | | 2023-03-13 - Goldblatt, Lewis |
| 379. | | 2023-04-14 - Purcell, Gilbert |
| 380. | | 2023-06-12 - Dubin, Adam |
| 381. | | 2023-08-15 - Abdeljawad, Eyad |
| 382. | | 2023-09-20 - Bradshaw, Drexel |
| 383. | Red | 2023-10-02 - Respondent CC (ADP) |
| 384. | | 2023-10-17 - Thibault, Elana |
| 385. | | 2023-12-07 - Derieg, George |
| 386. | | 2024-01-02 - Smith, Spencer |
| 387. | | 2024-01-23 - Loomis, Shane |
| 388. | | 2024-01-24 - McCann, Robert |
| 389. | | 2024-03-11 - Albert, Lenore |
| 390. | Red | 2024-04-22 – Resp. DD |
| 391. | | 2024-05-06 - Vargas, Fernando |
| 392. | | 2024-06-28 - Ramirez, Sergio |
| 393. | | 2024-08-13 - Lucero, Linda |
| 394. | | 2024-09-17 - Scarcella, Christopher |
| 395. | | 2024-11-08 - Griffin, Keith |
| 396. | | 2024-11-26 - Olin, Jeffrey |
| 397. | | 2024-12-13 - Kostiv, Petro |

| NO. | COSTS IMP. Green=Yes Red=No | CITE Men Women |
|---|---|---|
| 398. | | 2024-12-26 - Kamran, Mir-Houtan |
| 399. | | 2025-01-06 - Pratt, Chad |
| 400. | | 2025-01-31 - Mitchell, Rossana |
| 401. | | 2025-02-05 - Quigg, Vincent |
| 402. | | 2025-03-17 - Trimarche, Gregory |

# EXHIBIT 13

# EXHIBIT 13

# REVIEW DEPT. TRACKER
## (Tamara Ribas)

| NO. | Won on Appeal | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|---|
| **2026-02-03 – Status**<br>22 opinions<br>1 case resulted in avoidance of the fines. (4.5%)<br>3/21 women: 86% men<br>Represented | | | | |
| 1. | | | 2023-10-02 - Respondent CC (ADP) | Accepted into ADP to avoid disbarment.  Probably still disciplined and costs imposed. |
| 2. | | | 2023-10-17 - Thibault, Elana | |
| 3. | | | 2023-10-25 - Spielbauer, Thomas | OCTC petition for review granted. |
| 4. | | | 2024-01-23 - Loomis, Shane | |
| 5. | | | 2024-01-24 - McCann, Robert | |
| 6. | | | 2024-03-11 - Albert, Lenore | |
| 7. | 2024-04-22 | | 2024-04-22 – Resp. DD | Admonition only. Represented by Margolis. |
| 8. | | | 2024-05-06 - Vargas, Fernando | |
| 9. | | | 2024-06-16 - Lacher, Pamela | |
| 10. | | | 2024-06-28 - Ramirez, Sergio | |
| 11. | | | 2024-09-17 - Scarcella, Christopher | |
| 12. | | | 2024-11-08 - Griffin, Keith | |

**Ex. 13:1**

| NO. | Won on Appeal | COSTS IMP. Green=Yes Red=No | CITE | NOTES |
|---|---|---|---|---|
| 13. | | | 2024-11-26 - Olin, Jeffrey | |
| 14. | | | 2024-12-26 - Kamran, Mir-Houtan | |
| 15. | | | 2025-01-06 - Pratt, Chad | |
| 16. | | | 2025-01-31 - Mitchell, Rossana | |
| 17. | | | 2025-02-05 - Quigg, Vincent | |
| 18. | | | 2025-03-17 - Trimarche, Gregory | |
| 19. | | | 2025-06-13 - Eastman, John | |
| 20. | | | 2025-07-02 - Dunn, Joseph | |
| 21. | | | 2025-09-25 - Nejadpour, Fari | |
| 22. | | | 2025-11-25 - Pavone, Benjamin | |

**Ex. 13:2**

# EXHIBIT 14

# EXHIBIT 14

# SUPREME COURT TRACKER
# (1990-2025)

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| | **1990*** | | |
| 1. | 1990-05-30 - Clepper, Michael - Supreme Court Order (X) | 🟩 | |
| 2. | 1990-05-30 - Elkins, Lawrence - Supreme Court Order (X) | 🟩 | |
| 3. | 1990-05-30 - Gibbons, Tony - Supreme Court Order (X) | 🟩 | |
| 4. | 1990-05-30 - Levinson, David - Supreme Court Order (X) | 🟩 | |
| 5. | 1990-05-30 - Marshall, James - Supreme Court Order (X) | 🟩 | |
| 6. | 1990-05-30 - Martin, Robert - Supreme Court Order (X) | 🟩 | |
| 7. | 1990-05-30 - Parrish, Jefferson - Supreme Court Order (X) | 🟩 | |
| 8. | 1990-05-30 - Smith, Jay - Supreme Court Order (X) | 🟩 | |
| 9. | 1990-05-30 - Teale, Donna - Supreme Court Order (X) | 🟩 | |
| 10. | 1990-05-31 - Elkins, Lawrence - Supreme Court Order (X) | 🟩 | |
| 11. | 1990-06-27 - Altfest, Phillip - Supreme Court Order (X) | 🟩 | |
| 12. | 1990-06-27 - Bivin, Richard - Supreme Court Order (X) | 🟩 | |
| 13. | 1990-06-27 - Dell, Mark - Supreme Court Order (X) | 🟩 | |
| 14. | 1990-06-27 - Gordon, Vade - Supreme Court Order (X) | 🟩 | |
| 15. | 1990-06-27 - Kiefer, Dudley - Supreme Court Order (X) | 🟩 | |
| 16. | 1990-06-27 - Lispi, Paul - Supreme Court Order (X) | 🟩 | |
| 17. | 1990-06-27 - Mosqueda, Rudolph - Supreme Court Order (X) | 🟩 | |
| 18. | 1990-08-15 - Pineda, Lynn - Supreme Court Order (X) | 🟩 | |
| 19. | 1990-08-22 - Buendia, Raymond - Supreme Court Order (X) | 🟩 | |
| 20. | 1990-08-22 - Duarte, Benjamin - Supreme Court Order (X) | 🟩 | |
| 21. | 1990-08-22 - Freeman, Sherwood - Supreme Court Order (X) | 🟩 | |
| 22. | 1990-08-22 - Gallardo, James - Supreme Court Order (X) | 🟩 | |
| 23. | 1990-08-22 - Genovese, Judith - Supreme Court Order (X) | 🟩 | |
| 24. | 1990-08-22 - Glick, Denis - Supreme Court Order (X) | 🟩 | |
| 25. | 1990-08-22 - Helesto, Richard - Supreme Court Order (X) | 🟩 | |
| 26. | 1990-08-22 - Hodge, Robert - Supreme Court Order (X) | 🟩 | |
| 27. | 1990-08-22 - Houston, Gary - Supreme Court Order (X) | 🟩 | |
| 28. | 1990-08-22 - Kerr, Frederick - Supreme Court Order (X) | 🟩 | |
| 29. | 1990-08-22 - Levin, Sidney - Supreme Court Order (X) | 🟩 | |
| 30. | 1990-08-22 - Maya, William - Supreme Court Order (X) | 🟩 | |
| 31. | 1990-08-22 - Murphy, Thomas - Supreme Court Order (X) | 🟩 | |
| 32. | 1990-08-22 - Noronha, Peter - Supreme Court Order (X) | 🟩 | |
| 33. | 1990-08-22 - Ogulnick, Charles - Supreme Court Order (X) | 🟩 | |
| 34. | 1990-08-22 - Pierce, Karen - Supreme Court Order (X) | 🟩 | |
| 35. | 1990-08-22 - Richardson, Donald - Supreme Court Order (X) | 🟩 | |
| 36. | 1990-08-22 - Runyon, William - Supreme Court Order (X) | 🟩 | |

**Ex. 14:1**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 37. | 1990-08-22 - Waltz, John - Supreme Court Order (X) | | |
| 38. | 1990-08-22 - Wold, Heidi - Supreme Court Order (X) | | |
| 39. | 1990-08-22 - Wong, Jackson - Supreme Court Order (X) | | |
| 40. | 1990-08-22 - Yorio, Robert - Supreme Court Order (X) | | |
| 41. | 1990-08-29 - Brumbaugh, Randall - Supreme Court Order (X) | | |
| 42. | 1990-09-19 - Cameron, William - Supreme Court Order (X) | | |
| 43. | 1990-09-19 - Ertola, Clark - Supreme Court Order (X) | | |
| 44. | 1990-09-19 - Jaycox, Stephen - Supreme Court Order (X) | | |
| 45. | 1990-09-19 - Keller, William - Supreme Court Order (X) | | |
| 46. | 1990-09-19 - Moreno, Jose - Supreme Court Order (X) | | |
| 47. | 1990-09-19 - Newton, Peter - Supreme Court Order (X) | | |
| 48. | 1990-09-19 - Stanley, Pamela - Supreme Court Order (X) | | |
| 49. | 1990-09-19 - Warheit, David - Supreme Court Order (X) | | |
| 50. | 1991-02-14 - Dunford, David - Supreme Court Order | | |
| 51. | 1991-02-14 - Miller, William - Supreme Court Order (X) | | |
| 52. | 1994-03-17 - Duncan, Irvine - Supreme Court Order (X) | | |
| 53. | 1994-06-23 - Wilkowski, James - Supreme Court Order (X) | | |
| 54. | 1995-02-02 - Aguiluz, Heroico - Supreme Court Order (X) | | |
| | **2000*** | | |
| 55. | 2000-01-04 - Freydl, Thomas - Supreme Court Order (X) | | |
| 56. | 2000-01-04 - Lloyd, Michael - Supreme Court Order (X) | | |
| 57. | 2000-01-13 - Arnall, Christina - Supreme Court Order (X) | | |
| 58. | 2000-01-13 - Catallo, Frank - Supreme Court Order (X) | | |
| 59. | 2000-01-13 - Fong, Arthur - Supreme Court Order (X) | | |
| 60. | 2000-01-13 - Milestone, Bill - Supreme Court Order (X) | | |
| 61. | 2000-01-13 - Moriarty, Leo - Supreme Court Order (X) | | |
| 62. | 2000-01-13 - Rancourt, David - Supreme Court Order (X) | | |
| 63. | 2000-01-13 - Rub, Martin - Supreme Court Order (X) | | |
| 64. | 2000-01-13 - Talley, David - Supreme Court Order (X) | | |
| 65. | 2000-01-13 - Wilgus, Linda - Supreme Court Order (X) | | |
| 66. | 2000-01-18 - Barnhill, Robert - Supreme Court Order (X) | | |
| 67. | 2000-01-18 - Baumgarten, Joan - Supreme Court Order (X) | | |
| 68. | 2000-01-18 - Finch, Stephen - Supreme Court Order (X) | | |
| 69. | 2000-01-18 - Holder, Kathy - Supreme Court Order (X) | | |
| 70. | 2000-01-18 - Larson, John - Supreme Court Order (X) | | |
| 71. | 2000-01-18 - Lewin, Norman - Supreme Court Order (X) | | |
| 72. | 2000-01-19 - Bakis, James - Supreme Court Order (X) | | |
| 73. | 2000-01-19 - Beaudoin, Brian - Supreme Court Order (X) | | |
| 74. | 2000-01-19 - Friedman, Bruce - Supreme Court Order (X) | | |
| 75. | 2000-01-19 - Harary, Martin - Supreme Court Order (X) | | |
| 76. | 2000-01-19 - Liggins, Keith - Supreme Court Order (X) | | |
| 77. | 2000-01-19 - Roth, David - Supreme Court Order (X) | | |

**Ex. 14:2**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 78. | 2000-01-19 - Wrobel, Harold - Supreme Court Order (X) | | |
| 79. | 2000-01-26 - Mesko, Susan - Supreme Court Order (X) | | |
| 80. | 2000-02-04 - Karow, Alan - Supreme Court Order (X) | | |
| 81. | 2000-02-04 - Nadler, Diane - Supreme Court Order (X) | | |
| 82. | 2000-02-16 - Baker, Michael - Supreme Court Order (X) | | |
| | **2001*** | | |
| 83. | 2001-03-01 - Lesansky, Stuart - Supreme Court Order (X) | | |
| | **2002*** | | |
| 84. | 2002-01-01 - Chang, Te Jung - Supreme Court Order (06013891) | | |
| 85. | 2002-02-13 - Dahlz, Justin - Supreme Court Order (X) | | 🟥 |
| 86. | 2002-03-06 - Spence. Bruce - Supreme Court Order (99011103) | | |
| 87. | 2002-10-11 - Blum, Melanie - Supreme Court Order (X) | | |
| 88. | 2002-10-16 - Gillis, Thomas - Supreme Court Order (X) | | 🟥 |
| 89. | 2002-12-11 - McCarthy, Charles - Supreme Court Order (X) | | 🟥 |
| | **2003*** | | |
| 90. | 2003-01-15 - Olick, David - Supreme Court Order (X) | | 🟥 |
| 91. | 2003-01-24 - Brackens, Sylvester - Supreme Court Order (X) | | |
| 92. | 2003-02-25 - Gill, Keith - Supreme Court Order (X) | | 🟥 |
| 93. | 2003-05-14 - Scott, Carey - Supreme Court Order (X) | | |
| 94. | 2003-06-05 - Valinoti, James - Supreme Court Order (X) | | |
| 95. | 2003-07-23 - Peavey, William - Supreme Court Order (X) | | 🟥 |
| 96. | 2003-09-10 - Westreich, Meir - Supreme Court Order (X) | | |
| 97. | 2003-10-01 - Gorman, Robert - Supreme Court Order (X) | | |
| 98. | 2003-12-23 - Gerdts, Marlene - Supreme Court Order (X) | | 🟥 |
| | **2004*** | | |
| 99. | 2004-02-18 - Davis, James - Supreme Court Order (X) | | 🟥 |
| 100. | 2004-06-10 - Mazza, Steven - Supreme Court Order (X) | | |
| 101. | 2004-06-18 - Malek-Yonan, Monica - Supreme Court Order (X) | | |
| 102. | 2004-06-23 - Kittrell, Bolden - Supreme Court Order (X) | | 🟥 |
| 103. | 2004-07-08 - Laden, Richard - Supreme Court Order (01PM05232) (RG) | | |
| 104. | 2004-07-28 - Dikes, Jayson - Supreme Court Order (X) | | |
| 105. | 2004-11-04 - Agha, Maxwell - Supreme Court Order (X) | | |
| | **2005*** | | |
| 106. | 2005-01-13 - Williams, Tracy Lynn - Supreme Court Order (04PM13529) | | |
| 107. | 2005-01-13 - Williams, Tracy Lynn - Supreme Court Order (04PM13717) | | |
| 108. | 2005-02-16 - Williams, Robert - Supreme Court Order (X) | | |
| 109. | 2005-03-25 - Jones, Cassandra D. - Supreme Court Order (04PM14982) | | |
| 110. | 2005-05-12 - Cohen, Matthew Jeremy - Supreme Court Order (04PM15230) | | |
| 111. | 2005-05-12 - Lafranchi, Robert James - Supreme Court Order (05PM00118) | | |
| 112. | 2005-06-10 - Castrellon, Sue Ellen - Supreme Court Order (04PM14981) | | |
| 113. | 2005-06-15 - Wittenberg, Malcolm - Supreme Court Order (X) | | 🟥 |
| 114. | 2005-06-23 - Silverton, Ronald - Supreme Court Order (X) | | |

**Ex. 14:3**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 115. | 2005-06-28 - Maloney, Patrick - Supreme Court Order (X) | | |
| 116. | 2005-06-28 - Virsik, Thomas - Supreme Court Order (X) | | |
| 117. | 2005-08-29 - Going, James D., Ill - Supreme Court Order (05PM01000) | | |
| 118. | 2005-09-02 - Chacon, Juan - Supreme Court Order (04PM14090) | | |
| 119. | 2005-09-28 - Drum, Joel - Supreme Court Order (X) | | |
| 120. | 2005-10-13 - Railsback, Jon David - Supreme Court Order (05000004; 05001288) | | |
| 121. | 2005-10-18 - Manning, Michael Edwin - Supreme Court Order (05PM00949) | | |
| 122. | 2005-10-21 - Molina, Juan A. - Supreme Court Order (05000160) | | |
| 123. | 2006-11-15 - Parker, Darnel A. - Supreme Court Order (05O02849) | | |
| 124. | 2005-11-16 - Findley, John - Supreme Court Order (X) | | |
| 125. | 2005-11-30 - Virsik, Thomas - Supreme Court Order (X) | | |
| 126. | 2005-12-28 - Davis, Bret Jay - Supreme Court Order (05N01700) | | |
| 127. | 2005-12-28 - Moore, Patsy V. - Supreme Court Order (05H00388) | | |
| | **2006*** | | |
| 128. | 2006-01-04 - Copren, Lisa - Supreme Court Order (X) | | |
| 129. | 2006-01-04 - Dale, Joshua - Supreme Court Order (X) | | |
| 130. | 2006-01-11 - Agha, Maxwell Chuck - Supreme Court Order (05000937) | | |
| 131. | 2006-01-25 - Dorfman, Daniel Blaine - Supreme Court Order (05C01831) | | |
| 132. | 2006-01-25 - Shannon, Terrance - Supreme Court Order (X) | | |
| 133. | 2006-01-27 - Dervaes, R. Scott, Jr. - Supreme Court Order (05PM03997) | | |
| 134. | 2006-02-10 - Wilson, Steven Lee - Supreme Court Order (05H01748) | | |
| 135. | 2006-02-17 - Bernal, Joseph Arthur - Supreme Court Order (05H00520) | | |
| 136. | 2006-02-17 - Garrett, Ann Taylor - Supreme Court Order (05PM03468 | | |
| 137. | 2006-02-17 - Turner, Janis Louise - Supreme Court Order (05003291) | | |
| 138. | 2006-03-10 - Samelson, Lawrence David - Supreme Court Order (06Q10593) | | |
| 139. | 2006-02-23 - Hartwell, Leslie Layton - Supreme Court Order (OSN01517) | | |
| 140. | 2006-03-21 - Hamlin, Richard William - Supreme Court Order (06Q11100) | | |
| 141. | 2006-03-23 - Holt, Eric Lee - Supreme Court Order (05N02147) | | |
| 142. | 2006-03-23 - Isles, Ronald Jeffrey - Supreme Court Order (05H00454) | | |
| 143. | 2006-03-23 - Plummer, Ulysses Grant, Ill - Supreme Court Order (05002276) | | |
| 144. | 2006-03-23 - Serra, J, Tony - Supreme Court Order (05C01374) | | |
| 145. | 2006-04-26 - Nelson, Glenn Dale - Supreme Court Order (05H03307) | | |
| 146. | 2006-05-30 - Crutchfield, John J. - Supreme Court Order (06PM10111) | | |
| 147. | 2006-05-30 - O'Keefe, Christopher J. - Supreme Court Order (06PM10555) | | |
| 148. | 2006-05-30 - Smith, Ward Douglas - Supreme Court Order (05C01791; 05(03549) | | |
| 149. | 2006-05-31 - Browne, David Milton - Supreme Court Order (05000905) | | |
| 150. | 2006-05-31 - Holzinger, Robert Erick - Supreme Court Order (05N03275) | | |
| 151. | 2006-06-05 - McGuire, Terrence - Supreme Court Order (05N03357) | | |
| 152. | 2006-06-09 - Fetterman, David Elias - Supreme Court Order (06PM10545) | | |
| 153. | 2006-06-13 - Galeno, Janet Ann - Supreme Court Order (05002401) | | |

**Ex. 14:4**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 154. | 2006-06-13 - MacMaster, James Edward - Supreme Court Ord.er (OSH04692) | | |
| 155. | 2006-06-14 - Shandler, Jaclyn - Supreme Court Order (X) | | |
| 156. | 2006-06-14 - Wells, Stephine - Supreme Court Order (X) | | |
| 157. | 2006-06-27 - Schuchman, Alan - Supreme Court Order (X) | | |
| 158. | 2006-06-30 - Taggart, Lawrence William - Supreme Court Order (06Q12593) | | |
| 159. | 2006-07-06 - Steele, Regina Delynn - Supreme Court Order (05N03358) | | |
| 160. | 2006-07-12 - McNichols, Steven Frank - Supreme Court Order (OSN04946) | | |
| 161. | 2006-07-18 - Corona Jr., Rudolf - Supreme Court Order (05N04099) | | |
| 162. | 2006-07-18 - Mills, Carleton Sauner - Supreme Court Order (05001465) | | |
| 163. | 2006-07-25 - Blunt, Peter Howe - Supreme Court Order (05J01032) | | |
| 164. | 2006-07-31 - Hutchinson, Hendley Clay - Supreme Court Order (05N04146) | | |
| 165. | 2006-08-09 - Khougaz, Gregory John - Supreme Court Order (05H04322) | | |
| 166. | 2006-08-09 - Titus, Lewis Robert, Jr. - Supreme Court Order (05001952) | | |
| 167. | 2006-08-15 - Johnson, Peter Shawn - Supreme Court Order (05N03928) | | |
| 168. | 2006-08-22 - Fegen, Paul F. - Supreme Court Order (05001082 | | |
| 169. | 2006-09-07 - Brockway, David - Supreme Court Order (X) | | |
| 170. | 2006-09-07 - Glaser, Daniel Scott - Supreme Court Order (05000982;05003433) | | |
| 171. | 2006-09-07 - Marh, David T. - Supreme Court Order (05H04910) | | |
| 172. | 2006-09-07 - Wright, Wyndell John - Supreme Court Order (05N04166) | | |
| 173. | 2006-09-13 - Gerdes, Roger A. - Supreme Court Order (05N04191) | | |
| 174. | 2006-09-13 - Streeter Jr., Daniel Thomas - Supreme Court Order (05000457) | | |
| 175. | 2006-09-13 - Williams, Robert Michael - Supreme Court Order (05O01836) | | |
| 176. | 2006-09-26 - Coscia, Nicholas Francis - Supreme Court Order (05(03762) | | |
| 177. | 2006-09-26 - Manning, Michael Edwin - Supreme Court Order (05003387) | | |
| 178. | 2006-09-26 - Morken, John F. - Supreme Court Order (06H10814) | | |
| 179. | 2006-10-06 - Brock, Kenneth Bryan - Supreme Court Order (05C04114; 06C10207) | | |
| 180. | 2006-10-13 - Hannes, Melodye Sue - Supreme Court Order (050024'f6) | | |
| 181. | 2006-10-13 - Ross, Harold T. - Supreme Court Order (05O02574) | | |
| 182. | 2006-10-25 - Garrett, Ann - Supreme Court Order (05000614; 05001538; 05002173) | | |
| 183. | 2006-10-25 - Neely, Garold Lee - Supreme Court Order (05C04592) | | |
| 184. | 2006-11-15 - Chowdhury, Mashiur Rahman - Supreme Court Order (06J10282) | | |
| 185. | 2006-11-15 - Dell'Osso, Michael Thomas - Supreme Court Order (05H05229) | | |
| 186. | 2006-11-15 - Madison, Mark Edward - Supreme Court Order (05001797) | | |
| 187. | 2006-11-15 - Parker, Darnel A. - Supreme Court Order (05002849) | | |
| 188. | 2006-11-28 - Going, James - Supreme Court Order (05002415) | | |
| 189. | 2006-11-28 - Hernandez. Mauricio Ernesto - Supreme Court Order (05002012) | | |
| 190. | 2006-11-28 - Hutchins, Robert Bruce - Supreme Court Order (05N05l69) | | |
| 191. | 2006-11-28 - Stone, Joseph F. - Supreme Court Order (05000506) | | |
| 192. | 2006-12-12 - Buda, Philip Harvey - Supreme Court Order (06N10280) | | |

**Ex. 14:5**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 193. | 2006-12-12 - Coopet, Michael Warren - Supreme Court Order (06N10791) | | |
| 194. | 2006-12-12 - Guetzkow, Jason S. - Supreme Court Order (05003170) | | |
| 195. | 2006-12-13 - Canalez. James B. - Supreme Court Order (05003754) | | |
| 196. | 2006-12-21 - Galitz, Bernard Edwin - Supreme Court Order (06Q14956) | | |
| | **2007*** | | |
| 197. | 2007-01-18 - Sack, Robert - Supreme Court Order (X) | | |
| 198. | 2007-01-24 - Moore, Mark - Supreme Court Order (X) | | |
| 199. | 2007-01-24 - Van Sickle, David - Supreme Court Order (X) | | |
| 200. | 2007-01-25 - Brossard, Iris Claudette - Supreme Court Order (05004002) | | |
| 201. | 2007-02-14 - Arboles, Monika Margarita - Supreme Court Order (05004288) | | |
| 202. | 2007-02-14 - Hildebrandt, Scott Kendrick - Supreme Court Order (06H10722) | | |
| 203. | 2007-02-14 - Reid, Nancy Wilson - Supreme Court Order (05O03046) | | |
| 204. | 2007-02-14 - Roberts, Walter James IV - Supreme Court Order (06010128) | | |
| 205. | 2007-02-15 - Carr, Bessie Mae - Supreme Court Order (05003047) | | |
| 206. | 2007-02-15 - Valdez, Jeremias Flores - Supreme Court Order (06010213) | | |
| 207. | 2007-02-21 - Kearney, James Michael - Supreme Court Order (05000309) | | |
| 208. | 2007-02-21 - Thomas, Cynthia A. - Supreme Court Order (05003452) | | |
| 209. | 2007-02-21 - Cartelli, Michael A. - Supreme Court Order (05003885) | | |
| 210. | 2007-03-02 - Takasugi, Russell H. - Supreme Court Order (05001451) | | |
| 211. | 2007-03-06 - Agravante, Juvenal Federico - Supreme Court Order (06N10789) | | |
| 212. | 2007-03-06 - McGrew, Francis Joseph - Supreme Court Order (06010266) | | |
| 213. | 2007-03-06 - Moriarty, James Leonard - Supreme Court Order (06N12159) | | |
| 214. | 2007-03-28 - Roland, Robert William - Supreme Court Order (05C02767) | | |
| 215. | 2007-03-29 - Davis, Todd C. - Supreme Court Order (05003670) | | |
| 216. | 2007-03-29 - Guglielmino, Michael John - Supreme Court Order (05002792) | | |
| 217. | 2007-03-29 - Nusbaum, Robert Michael - Supreme Court Order (06N11322) | | |
| 218. | 2007-03-29 - Rose, Ruth Cecilia - Supreme Court Order (06011744) | | |
| 219. | 2007-03-29 - Bramlett, John H. - Supreme Court Order (05003932) | | |
| 220. | 2007-04-13 - Bruno, John Pasquale - Supreme Court Order (06N11711) | | |
| 221. | 2007-04-13 - Coates, John Thomas - Supreme Court Order (06011558) | | |
| 222. | 2007-04-13 - Finch, Judith Anne - Supreme Court Order (06012794) | | |
| 223. | 2007-04-13 - Riggs, Steven Jeffrey - Supreme Court Order (05003913) | | |
| 224. | 2007-05-04 - Alvarez, Jose Jess - Supreme Court Order (05003825) | | |
| 225. | 2007-05-04 - Guittard, Ann - Supreme Court Order (05003826) | | |
| 226. | 2007-05-15 - Woods, Gabrielle - Supreme Court Order (05005134) | | |
| 227. | 2007-05-30 - Horio, Ken Sejima - Supreme Court Order (05O03547) | | |
| 228. | 2007-05-30 - Klopchic, Marie I. - Supreme Court Order (06010219) | | |
| 229. | 2007-05-30 - Whitfield, Jacques Stirling - Supreme Court Order (06O14064) | | |
| 230. | 2007-06-01 - Leyva, Joe Alfred - Supreme Court Order (06010874) | | |
| 231. | 2007-06-09 - Boasberg, Albert Loeb - Supreme Court Order (06O13783) | | |
| 232. | 2007-06-20 - Hartnett, John - Supreme Court Order (X) | | |
| 233. | 2007-05-15 - Wolff, Julie - Supreme Court Order (X) | | |

**Ex. 14:6**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 234. | 2007-05-29 - Parker, Ronald - Supreme Court Order (X) | 🟩 | |
| 235. | 2007-06-20 - Fahey, Francis - Supreme Court Order (X) | 🟩 | 🟥 |
| 236. | 2007-06-20 - Turner, Janis Louise - Supreme Court Order (05005140) | 🟩 | |
| 237. | 2007-06-28 - Davis, Leonie E. - Supreme Court Order (05004649) | 🟩 | |
| 238. | 2007-06-28 - Bumanglag, George - Supreme Court Order (05004749) | 🟩 | |
| 239. | 2007-07-03 - Mason, Randall D. - Supreme Court Order (05000595;05003658) | 🟩 | |
| 240. | 2007-07-03 - Sales, Sassoon - Supreme Court Order (06H12298) | 🟩 | |
| 241. | 2007-07-13 - Gernsbacher, David Laurence - Supreme Court Order (07PM10302) | 🟩 | |
| 242. | 2007-07-17 - Gordon, Robert S. - Supreme Court Order (06C12384) | 🟩 | |
| 243. | 2007-07-17 - Watt, Dennis Richard - Supreme Court Order (05002769) | 🟩 | |
| 244. | 2007-07-18 - Schiro, John Ramsey- Supreme Court Order (050-03399) | 🟩 | |
| 245. | 2007-08-03 - Rayle, Merrick Scott - Supreme Court Order (07J10237) | 🟩 | |
| 246. | 2007-08-03 - Wilson, Steven Lee - Supreme Court Order (06N13680) | 🟩 | |
| 247. | 2007-08-10 - Bramlett, John H. - Supreme Court Order (06011673) | 🟩 | |
| 248. | 2007-08-10 - Bruno, Louis Gordon - Supreme Court Order (05004360) | 🟩 | |
| 249. | 2007-08-10 - Hurley, Richard Roger - Supreme Court Order (05004823) | 🟩 | |
| 250. | 2007-08-10 - Unger, Matthew Stanley- Supreme Court Order (06010557) | 🟩 | |
| 251. | 2007-08-17 - Fetterman, David Elias - Supreme Court Order (06N14173) | 🟩 | |
| 252. | 2007-08-17 - Heisler, Lawrence Alan - Supreme Court Order (05004810) | 🟩 | |
| 253. | 2007-08-17 - Liss, Steven R. - Supreme Court Order (05003676) | 🟩 | |
| 254. | 2007-08-17 - Mascott, Owen T. - Supreme Court Order (06011505) | 🟩 | |
| 255. | 2007-08-24 - Christof, Kevin Francis - Supreme Court Order (06J14347) | 🟩 | |
| 256. | 2007-08-24 - Davis, Todd Clark - Supreme Court Order (06010523) | 🟩 | |
| 257. | 2007-08-24 - Douglass, Robert Spencer - Supreme Court Order (06C13264) | 🟩 | |
| 258. | 2007-08-24 - Hanson, Steven Grant - Supreme Court Order (05000598;06N14328) | 🟩 | |
| 259. | 2007-08-27 - Maya, William - Supreme Court Order (06O14289) | 🟩 | |
| 260. | 2007-08-28 - Smith, Lawrence Gordon - Supreme Court Order (06N12157) | 🟩 | |
| 261. | 2007-09-03 - Griffin, Susanne Anne - Supreme Court Order (05004612) | 🟩 | |
| 262. | 2007-09-05 - Feria, Kenneth Peter - Supreme Court Order (05000721;05000909) | 🟩 | |
| 263. | 2007-09-05 - Molina, Juan Antonio - Supreme Court Order (06010009) | 🟩 | |
| 264. | 2007-09-11 - Bautista, Mario Antonio - Supreme Court Order (06C13800) | 🟩 | |
| 265. | 2007-09-11 - Miller, James R. - Supreme Court Order (05001106) | 🟩 | |
| 266. | 2007-09-19 - Wong, Richard - Supreme Court Order (05001429) | 🟩 | |
| 267. | 2007-10-05 - Bechtold, Bret Dodge - Supreme Court Order (06C12640) | 🟩 | |
| 268. | 2007-10-05 - Jensen, Bradley Lynn - Supreme Court Order (05004598) | 🟩 | |
| 269. | 2007-10-05 - Woo, Corecia Joy - Supreme Court Order (06012824) | 🟩 | |
| 270. | 2007-10-10 - Buckley, Marguerite M. - Supreme Court Order (05004435) | 🟩 | |
| 271. | 2007-10-10 - Lindstrom, Cary Oscar - Supreme Court Order (06O14506) | 🟩 | |
| 272. | 2007-10-10 - Tyrell, Jonathan Regent - Supreme Court Order (05C02759) | 🟩 | |

**Ex. 14:7**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 273. | 2007-10-23 - Prince, David Boyer - Supreme Court Order (05003195) | | |
| 274. | 2007-10-23 - Rainey, Ryan Hefton - Supreme Court Order (06C13188) | | |
| 275. | 2007-10-23 - Williams, Daryl James- Supreme Court Order (06010329) | | |
| 276. | 2007-10-24 - Riordan, Leroy - Supreme Court Order (X) | | |
| 277. | 2007-10-31 - Mintz, Jeffrey S. - Supreme Court Order (06010595) | | |
| 278. | 2007-11-06 - Arredondo, David - Supreme Court Order (05002600) | | |
| 279. | 2007-11-15 - Hernandez, Bernabe - Supreme Court Order (05002680) | | |
| 280. | 2007-11-15 - Robinson, David M. - Supreme Court Order (05002139) | | |
| 281. | 2007-11-30 - Khougaz, Gregory John - Supreme Court Order (07PM12993) | | |
| 282. | 2007-11-30 - Manning, Michael E. - Supreme Court Order (07N10364) | | |
| 283. | 2007-11-30 - Marcus, Richard - Supreme Court Order (X) | | |
| 284. | 2007-11-30 - Sobel, William Alan - Supreme Court Order (05002753) | | |
| 285. | 2007-12-06 - Brookins, Zakeya Leona - Supreme Court Order (06012011) | | |
| 286. | 2007-12-06 - Centers, Judith A. - Supreme Court Order (06O13768) | | |
| 287. | 2007-12-11 - Mora, Augusto A. - Supreme Court Order (05000151) | | |
| 288. | 2007-12-11 - Ng, Henry Liang Chye - Supreme Court Order (05001542) | | |
| 289. | 2007-12-19 - Kastelic, Debra L. - Supreme Court Order (06O15104) | | |
| 290. | 2007-12-20 - Chapnik, Michael - Supreme Court Order (05003886) | | |
| 291. | 2007-12-20 - Gong, Gloria Margaret - Supreme Court Order (06012708) | | |
| 292. | 2007-12-20 - McGrew, Spencer Postal - Supreme Court Order (06013177) | | |
| 293. | 2007-12-20 - Propster, Lisa G. - Supreme Court Order (06012120) | | |
| 294. | 2007-12-20 - Zisblatt, Howard Bernard - Supreme Court Order (06011922) | | |
| | **2008\*** | | |
| 295. | 2008-01-10 - Bajgrowicz, James Joseph - Supreme Court Order (06011578) | | |
| 296. | 2008-01-10 - Hoang, Quincy N. - Supreme Court Order (06012856) | | |
| 297. | 2008-01-10 - Jackson, Gregory Lyle - Supreme Court Order (06C10774) | | |
| 298. | 2008-01-10 - Pixton, James Andrew - Supreme Court Order (07O10807) | | |
| 299. | 2008-01-10 - Truong, Hoa P. - Supreme Court Order (05O02918) | | |
| 300. | 2008-01-16 - Barajas, Katrina Angel - Supreme Court Order (05003459) | | |
| 301. | 2008-01-16 - Kang, Sang H. - Supreme Court Order (06011063) | | |
| 302. | 2008-01-16 - Kasody, Robert Edward - Supreme Court Order (07C11903) | | |
| 303. | 2008-01-23 - Gonzalez, Manuel Eli - Supreme Court Order (05001395) | | |
| 304. | 2008-01-23 - Mackey, Janice L. - Supreme Court Order (07H10820) | | |
| 305. | 2008-01-29 - Oliver, Angela Lynn - Supreme Court Order (06012724) | | |
| 306. | 2008-02-04 - Clark, Miles, Ill - Supreme Court Order (06C10123) | | |
| 307. | 2008-02-04 - Krayevsky, Dmitry David - Supreme Court Order (07PM13018) | | |
| 308. | 2008-02-05 - Dell'Osso, Michael Thomas - Supreme Court Order (06N13425) | | |
| 309. | 2008-02-22 - Madison, Mark E. - Supreme Court Order (07PM13676) | | |
| 310. | 2008-02-13 - Hove, Richard - Supreme Court Order (X) | | |
| 311. | 2008-02-21 - Rodriguez, Stephen A. - Supreme Court Order (07H10071) | | |
| 312. | 2008-03-03 - Wilson, Glenn R. - Supreme Court Order (06O14524) | | |
| 313. | 2008-03-05 - Hughes, Kevin John - Supreme Court Order (06013459) | | |

**Ex. 14:8**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 314. | 2008-03-05 - Safran, Neal Ronald - Supreme Court Order (05001220) | | |
| 315. | 2008-03-13 - Bouzane, John Mark Edward - Supreme Court Order (06011921) | | |
| 316. | 2008-03-18 - Laufer, Bernard Moroko - Supreme Court Order (05C04979) | | |
| 317. | 2008-03-18 - Van Aelstyn, Philip Maximus - Supreme Court Order (07N11695) | | |
| 318. | 2008-04-04 - Fink, Bruce Reuben - Supreme Court Order (06013546) | | |
| 319. | 2008-04-04 - Koven, Debra Lynn - Supreme Court Order (05005175) | | |
| 320. | 2008-04-04 - Nieto, Maribel - Supreme Court Order (07H13335) | | |
| 321. | 2008-04-04 - Stone, Joseph F. - Supreme Court Order (07N11698) | | |
| 322. | 2008-04-04 - Vega, Xavier James - Supreme Court Order (05001314) | | |
| 323. | 2008-04-09 - Jaramillo, George Henry - Supreme Court Order (05C03650) | | |
| 324. | 2008-04-14 - Spence, G. Bruce - Supreme Court Order (07N12149) | | |
| 325. | 2008-04-15 - Chun, Terrie - Supreme Court Order (07O10738) | | |
| 326. | 2008-04-15 - Harris, George Anthony III - Supreme Court Order (07N10223) | | |
| 327. | 2008-04-15 - Marquez, Arturo A. - Supreme Court Order (07O10369) | | |
| 328. | 2008-04-22 - Fox, David G. - Supreme Court Order (06012853) | | |
| 329. | 2008-04-22 - Ross, Harold T. - Supreme Court Order (07N12041) | | |
| 330. | 2008-04-30 - Rezak, Donald - Supreme Court Order (05000321;05001682) | | |
| 331. | 2008-05-07 - Garth, Moylan - Supreme Court Order (X) | | |
| 332. | 2008-05-07 - Scott, Mark - Supreme Court Order (X) | | |
| 333. | 2008-05-13 - Landis, Crane Stephen - Supreme Court Order (07O10037) | | |
| 334. | 2008-05-13 - Moore, Steven John - Supreme Court Order (07O10508) | | |
| 335. | 2008-05-13 - Ortega, David Richard - Supreme Court Order (06O10354) | | |
| 336. | 2008-05-20 - Ogg, Wilson Reid - Supreme Court Order (05004404) | | |
| 337. | 2008-05-20 - Wood, Patrick Joseph - Supreme Court Order (06O15058) | | |
| 338. | 2008-05-29 - Hove, Richard Eric - Supreme Court Order (05004300) | | |
| 339. | 2008-05-29 - Jacoba, Carl Edgar Cabana - Supreme Court Order (06011743) | | |
| 340. | 2008-05-29 - Lusk, Keith William - Supreme Court Order (07O10909) | | |
| 341. | 2008-05-29 - Nesin, Robert Brett - Supreme Court Order (07N10206) | | |
| 342. | 2008-05-29 - Szocs, Steven L. - Supreme Court Order (05005174) | | |
| 343. | 2008-06-06 - Portales, Elias Francisco - Supreme Court Order (07O11534) | | |
| 344. | 2008-06-08 - Ardalan, Kaveh - Supreme Court Order (05001956) | | |
| 345. | 2008-06-12 - Brar, Harpreet S. - Supreme Court Order (05O01086) | | |
| 346. | 2008-06-12 - Millar, John William - Supreme Court Order (06O14076) | | |
| 347. | 2008-06-12 - Winrow, Wayne - Supreme Court Order (05005357) | | |
| 348. | 2008-06-19 - Haase, Edward W. - Supreme Court Order (06J15152) | | |
| 349. | 2008-06-19 - McCann, William - Supreme Court Order (X) | | |
| 350. | 2008-06-26 - Osborne, Carl K. - Supreme Court Order (06C15279) | | |
| 351. | 2008-06-26 - Tammen, Paul - Supreme Court Order (05O03720) | | |
| 352. | 2008-07-01 - Cardenas, Rafael Arturo - Supreme Court Order (06012135) | | |
| 353. | 2008-07-02 - Borthwick, Douglas MacMillan - Supreme Court Order (05005228) | | |

**Ex. 14:9**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 354. | 2008-07-08 - Achen, Alan K. - Supreme Court Order (07C13115; 07C13116; 07C13117) | | |
| 355. | 2008-07-15 - Schwertfeger, Frank Dennis - Supreme Court Order (06O13856) | | |
| 356. | 2008-07-31 - Ghoreichi, Jay Alexander - Supreme Court Order (06012030) | | |
| 357. | 2008-07-31 - Hedges, James - Supreme Court Order (X) | | |
| 358. | 2008-07-31 - Wright, Gordon Randolph - Supreme Court Order (07N10225) | | |
| 359. | 2008-08-08 - Clark, Stephen Craig - Supreme Court Order (07O10350) | | |
| 360. | 2008-08-08 - Espinoza, Richard Allen - Supreme Court Order (06C12759) | | |
| 361. | 2008-08-08 - Kong, Richter Wong - Supreme Court Order (05001072) | | |
| 362. | 2008-08-08 - Wiener, Lewis R. - Supreme Court Order (08PM11072) | | |
| 363. | 2008-08-12 - Rodriguez, Stephen Allan - Supreme Court Order (07PM10444) | | |
| 364. | 2008-08-27 - Andrews, Sean L. - Supreme Court Order (07H11902) | | |
| 365. | 2008-08-27 - Colburn, Laura Joan - Supreme Court Order (06C13230) | | |
| 366. | 2008-08-27 - Dailey, William Harvard - Supreme Court Order (05001019) | | |
| 367. | 2008-08-27 - Drum, Joel Andrew - Supreme Court Order (05N05322) | | |
| 368. | 2008-08-27 - Jacobus, Jay William - Supreme Court Order (07O10463) | | |
| 369. | 2008-08-27 - Kays, Gregg Lee      Supreme Court Order (06O15333) | | |
| 370. | 2008-08-27 - Markley, Paul Robert - Supreme Court Order (06012280) | | |
| 371. | 2008-08-27 - Orejudos, Arthur Patrick - Supreme Court Order (05004811) | | |
| 372. | 2008-08-27 - Pritikin, Martin H. - Supreme Court Order (06011815) | | |
| 373. | 2008-09-04 - Lamson, Donald William - Supreme Court Order (06010371) | | |
| 374. | 2008-09-04 - Schuman, Peter G. - Supreme Court Order (06012349) | | |
| 375. | 2008-09-10 - Allen, Terry L. - Supreme Court Order (07C12017; 08N10350) | | |
| 376. | 2008-09-10 - Stirling, Scot Douglas - Supreme Court Order (07O12140) | | |
| 377. | 2008-09-10 - Turajski, David - Supreme Court Order (07C12877) | | |
| 378. | 2008-09-11 - Reid, Nancy Wilson - Supreme Court Order (07N12921) | | |
| 379. | 2008-09-16 - Bramlett, John Harvey - Supreme Court Order (07N14063) | | |
| 380. | 2008-09-16 - Miller, James R. - Supreme Court Order (06012424) | | |
| 381. | 2008-09-23 - Davis, Todd C. - Supreme Court Order (07N13620) | | |
| 382. | 2008-09-23 - Spahr, Chesterfield A. - Supreme Court Order (05004590) | | |
| 383. | 2008-10-01 - Diaz, A. Bryan Jr. - Supreme Court Order (07O13513) | | |
| 384. | 2008-10-01 - Loftus, Donald - Supreme Court Order (X) | | ■ |
| 385. | 2008-10-01 - Rubin, Andrew Ellis - Supreme Court Order (07H13022) | | |
| 386. | 2008-10-01 - Stavin, Richard A. - Supreme Court Order (06013·674) | | |
| 387. | 2008-10-01 - Thottam, Peter L. - Supreme Court Order (06C11344) | | |
| 388. | 2008-10-07 - Ereth, William James - Supreme Court Order (06C13706) | | |
| 389. | 2008-10-07 - Maiorano, Joseph Guy - Supreme Court Order (06012098) | | |
| 390. | 2008-10-07 - Perez, Ernesto John - Supreme Court Order (07O13732) | | |
| 391. | 2008-10-10 - Tarlow, Richard Gary - Supreme Court Order (06N15111) | | |
| 392. | 2008-10-15 - Morris, Barry L. - Supreme Court Order (07O11363) | | |
| 393. | 2008-10-15 - Presley, Clay Edward - Supreme Court Order (06011624) | | |
| 394. | 2008-10-22 - Smith, Charles E., Jr. - Supreme Court Order (05005173) | | ■ |

**Ex. 14:10**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 395. | 2008-10-24 - Baker, Scott Gregory - Supreme Court Order (07O12155) | | |
| 396. | 2008-10-24 - Clausen, Mark Todd - Supreme Court Order (07O11741) | | |
| 397. | 2008-11-06 - Broady, Earl Clifford, Jr. - Supreme Court Order (06O10117) | | |
| 398. | 2008-11-06 - Coates, John Thomas - Supreme Court Order (08H10482;08O10678) | | |
| 399. | 2008-11-14 - Graham, Robert Francis - Supreme Court Order (06O14355) | | |
| 400. | 2008-11-14 - Kanwar, Tariq A. - Supreme Court Order (06O11151) | | |
| 401. | 2008-11-14 - Silman, Craig M., Jr. - Supreme Court Order (07H11875) | | |
| 402. | 2008-11-21 - Munson, Craig E. - Supreme Court Order (07O12345; 08O11899) | | |
| 403. | 2008-11-21 - Williams, Mark - Supreme Court Order (X) | | |
| 404. | 2008-11-25 - Kim, Edward E. - Supreme Court Order (06O15097) | | |
| 405. | 2008-11-25 - Small, Warren Joseph, Jr. - Supreme Court Order (05O05199) | | |
| 406. | 2008-11-25 - Walter, Victoria Margaret - Supreme Court Order (07H14870) | | |
| 407. | 2008-12-04 - Ferma, Bennie C. - Supreme Court Order (07O11272) | | |
| 408. | 2008-12-04 - Ghahreman, Kyanoush - Supreme Court Order (06O13843) | | |
| 409. | 2008-12-04 - Lazar, Seymour M. - Supreme Court Order (05C03059) | | |
| 410. | 2008-12-04 - Markum, James B. - Supreme Court Order (08O10471) | | |
| 411. | 2008-12-04 - Posner, Laurence P. - Supreme Court Order (06O14912) | | |
| 412. | 2008-12-09 - Centers, Judith A. - Supreme Court Order (08PM12377) | | |
| 413. | 2008-12-10 - Oriakhi, Richard E. - Supreme Court Order (07J11442) | | |
| 414. | 2008-12-10 - Rifkin, Howard Lawrence - Supreme Court Order (06O14390) | | |
| 415. | 2008-12-16 - Williams, Frank Henry, Jr. - Supreme Court Order (06O13323) | | |
| 416. | 2008-12-17 - Jackson, Lisa - Supreme Court Order (X) | | |
| 417. | 2008-12-24 - Simmons, James Michael - Supreme Court Order (07N11696) | | |
| 418. | 2008-12-31 - Lindstrom, Cary O. - Supreme Court Order (08PM12549) | | |
| | **2009\*** | | |
| 419. | 2009-01-01 - Do, Phuc Dinh - Supreme Court Order (06O13969) | | |
| 420. | 2009-01-02 - Niermeyer, Lawrence Timothy - Supreme Court Order (05O02794) | | |
| 421. | 2009-01-14 - Pederson, Brett - Supreme Court Order (X) | | |
| 422. | 2009-01-26 - Bumanglag, George - Supreme Court Order (07N14718) | | |
| 423. | 2009-01-26 - Galeno, Janet Ann - Supreme Court Order (08O10128) | | |
| 424. | 2009-01-26 - Gallinghouse, Carolyn Probasco - Supreme Court Order (07O14934) | | |
| 425. | 2009-01-26 - Gittelson, Patricia Greenwald - Supreme Court Order (06O11096) | | |
| 426. | 2009-01-26 - Mascott, Owen Thomas - Supreme Court Order (07O10804) | | |
| 427. | 2009-01-26 - McGrew, Francis Joseph - Supreme Court Order (07O11512; 07O12712) | | |
| 428. | 2009-01-26 - McPherson, Christina Marie - Supreme Court Order (07O12379; 07O12620) | | |
| 429. | 2009-01-26 - Morken, John F. - Supreme Court Order (05C04451; 06O13422) | | |
| 430. | 2009-01-26 - Rico-Jaramillo, Michele C. - Supreme Court Order (05O04886) | | |

**Ex. 14:11**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 431. | 2009-01-26 - Smith, David Michael - Supreme Court Order (07C11625; 07C12707) | | |
| 432. | 2009-01-26 - Tayac, Robert A. - Supreme Court Order (05O01892).pdf | | |
| 433. | 2009-01-26 - Dolan, Michael Patrick - Supreme Court Order (05003910) | | |
| 434. | 2009-01-29 - Jacoba, Carl Edgar C. - Supreme Court Order (07O11390; 07O13184) | | |
| 435. | 2009-01-29 - Manshardt, Patrick J. - Supreme Court Order (07O10914) | | |
| 436. | 2009-02-03 - Ajetunmobi, Alaba S. - Supreme Court Order (07O10220) | | |
| 437. | 2009-02-03 - Brothers, Kieran Joseph - Supreme Court Order (07O12023; 07O12024) | | |
| 438. | 2009-02-04 - Magruder, Brian Gregory - Supreme Court Order (06013457) | | |
| 439. | 2009-02-04 - Stephenson, Leland Dale - Supreme Court Order (08N11333) | | |
| 440. | 2009-02-10 - Gelegan, Timothy R. - Supreme Court Order (07O10367) | | |
| 441. | 2009-02-10 - Hardy, Lester Florrid - Supreme Court Order (06012903) | | |
| 442. | 2009-02-10 - Kanter, Anne E. H. - Supreme Court Order (08Q13818) | | |
| 443. | 2009-02-10 - Lerach, William S. - Supreme Court Order (07C13619) | | |
| 444. | 2009-02-11 - Kirakosian, Levon - Supreme Court Order (06011012) | | |
| 445. | 2009-02-24 - Viltman, Vladislav P. - Supreme Court Order (07O13710) | | |
| 446. | 2009-03-04 - Arel, Justin Gilbert - Supreme Court Order (07C12861) | | |
| 447. | 2009-03-04 - Chacon, Miguel A. - Supreme Court Order (07H14221) | | |
| 448. | 2009-03-04 - Kwon, Steve Sehaeng - Supreme Court Order (08O12542) | | |
| 449. | 2009-03-04 - McLean, Kevin R. - Supreme Court Order (06O13929) | | |
| 450. | 2009-03-04 - Russell, Lisa M. - Supreme Court Order (06O13789) | | |
| 451. | 2009-03-04 - Sanchez, Ruben D. - Supreme Court Order (05004553) | | |
| 452. | 2009-03-12 - Darrow, Geraldine - Supreme Court Order (05003852) | | |
| 453. | 2009-03-12 - Glaser, Daniel Scott - Supreme Court Order (07O14179) | | |
| 454. | 2009-03-12 - Ouzounian, Tamar - Supreme Court Order (06O14145) | | |
| 455. | 2009-03-18 - Gershfeld, Yana K. - Supreme Court Order (06O14519) | | |
| 456. | 2009-03-18 - Kim, Erica M. - Supreme Court Order (07C13384) | | |
| 457. | 2009-04-03 - Dove, Alan Peter - Supreme Court Order (07O11878; 07O12545) | | |
| 458. | 2009-04-03 - Evans, John W. - Supreme Court Order (08O11094) | | |
| 459. | 2009-04-03 - Silverstein, Cynthia B. - Supreme Court Order (05O00417) | | |
| 460. | 2009-04-03 - Wright, Anthony L. - Supreme Court Order (08C11439) | | |
| 461. | 2009-04-09 - Richter, Michael Philip - Supreme Court Order (06O13915) | | |
| 462. | 2009-04-29 - Garcia, Christine Louise - Supreme Court Order (08PM11584) | | |
| 463. | 2009-04-29 - Gong, Gloria Margaret - Supreme Court Order (08PM12514) | | |
| 464. | 2009-04-29 - O'Keefe, Christopher James - Supreme Court Order (08PM12170) | | |
| 465. | 2009-05-04 - Fegen, Paul F. - Supreme Court Order (08PM12588) | | |
| 466. | 2009-05-04 - Takasugi, Russell H. - Supreme Court Order (08PM12565) | | |
| 467. | 2009-05-04 - Wilson, Glenn R. - Supreme Court Order (08PM13648) | | |
| 468. | 2009-06-03 - Brackey, Thomas A. - Supreme Court Order (06010962) | | |
| 469. | 2009-06-10 - Carter, Patrick John - Supreme Court Order (07O13860) | | |

**Ex. 14:12**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 470. | 2009-06-10 - Grady, Scott Laforce - Supreme Court Order (07O15005) | | |
| 471. | 2009-06-10 - Hamm, Richard - Supreme Court Order (07C13275) | | |
| 472. | 2009-06-10 - Moore, Howard Jr. - Supreme Court Order (05004325) | | |
| 473. | 2009-06-15 - Russell, Lisa M. - Supreme Court Order (Supp.) (06O13789; 06O14272) | | |
| 474. | 2009-06-16 - Austin, Leroy - Supreme Court Order (05O00678; 05O01895; 08O12106;) | | |
| 475. | 2009-06-16 - Avery, Mark James - Supreme Court Order (07C11673) | | |
| 476. | 2009-06-16 - Bosque, Andrew Bello - Supreme Court Order (05002313) | | |
| 477. | 2009-06-16 - Cox, Cynthia Leslie - Supreme Court Order (06O14846) | | |
| 478. | 2009-06-16 - Delcampo, Nolan - Supreme Court Order (08O12090) | | |
| 479. | 2009-06-16 - Hollingsworth, Stephen C. - Supreme Court Order (05O03574) | | |
| 480. | 2009-06-16 - Shayani, Payam Mark - Supreme Court Order (05004028) | | |
| 481. | 2009-06-18 - Leslie, Joel - Supreme Court Order (06O15136) | | |
| 482. | 2009-06-23 - Anderson, Darla Rae - Supreme Court Order (05003058) | | |
| 483. | 2009-06-23 - Guglielmino, Michael John - Supreme Court Order (07O14677) | | |
| 484. | 2009-06-23 - Kim, Hokyung - Supreme Court Order (07O12632) | | |
| 485. | 2009-06-23 - Osmundson, Robert Eugene - Supreme Court Order (08H10305) | | |
| 486. | 2009-06-23 - Schwartz, David Paul - Supreme Court Order (07O13688) | | |
| 487. | 2009-06-23 - Spahr, Chesterfield - Supreme Court Order (07O14109) | | |
| 488. | 2009-06-30 - Baker, Scott G. - Supreme Court Order (07O13461) | | |
| 489. | 2009-06-30 - Sowards, Ray William - Supreme Court Order (07O12794) | | |
| 490. | 2009-07-07 - Donnelly, Patrick J. - Supreme Court Order (06012850) | | |
| 491. | 2009-07-10 - Davis, Daniel Martin - Supreme Court Order (06013115) | | |
| 492. | 2009-07-14 - Spencer, Gordon John - Supreme Court Order (06010954) | | |
| 493. | 2009-07-22 - Abramowitz, Philip Dennis - Supreme Court Order (06(15537) | | |
| 494. | 2009-07-22 - Alexander, Rasheed Shabazz - Supreme Court Order (06O14900) | | |
| 495. | 2009-07-22 - Aver, Raymond Hillel - Supreme Court Order (07O12570) | | |
| 496. | 2009-07-22 - Braun, Michael Lee - Supreme Court Order (08C12532) | | |
| 497. | 2009-07-22 - Bunch, Wayne - Supreme Court Order (07O14169) | | |
| 498. | 2009-07-22 - Christianson, Roger Carl - Supreme Court Order (05003874) | | |
| 499. | 2009-07-22 - Fahy, Frances Thomas - Supreme Court Order (05005123) | | ■ |
| 500. | 2009-07-30 - Chun, Terrie - Supreme Court Order (08N12654) | | |
| 501. | 2009-07-30 - Dresser, William Charles - Supreme Court Order (07O14460) | | |
| 502. | 2009-07-30 - Etmekjian, Garbis Dickran N. - Supreme Court Order (07O14090) | | |
| 503. | 2009-08-04 - Merkle, Gary Lee - Supreme Court Order (07O14114) | | |
| 504. | 2009-08-04 - Miller, Janet Clare - Supreme Court Order (05003562) | | |
| 505. | 2009-08-11 - Hartley, Mary Kathleen - Supreme Court Order (07O12076) | | |
| 506. | 2009-08-11 - Henderlong, Karla Diane - Supreme Court Order (07N13233) | | |
| 507. | 2009-08-11 - Luebkeman, Theodore - Supreme Court Order (X) | | |
| 508. | 2009-08-11 - Mills, Carleton Sauner - Supreme Court Order (07N11195) | | |

Ex. 14:13

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 509. | 2009-08-11 - Royston, Steven Allen - Supreme Court Order (07O13669; 07O14682) | | |
| 510. | 2009-08-18 - Kitt, Eli Alan - Supreme Court Order (05002816) | | |
| 511. | 2009-08-19 - MacEachern, Kelly Ann Walls - Supreme Court Order (09V10466) | | |
| 512. | 2009-08-19 - Velasquez, Jose Angel - Supreme Court Order (08V12548) | | |
| 513. | 2009-08-21 - Strawder, Nujya A. - Supreme Court Order (08PM14265) | | |
| 514. | 2009-08-26 - Casey, Clifford - Supreme Court Order (X) | | |
| 515. | 2009-08-26 - Moore, Jason Paul - Supreme Court Order (05005113) | | |
| 516. | 2009-08-26 - Partridge, James Syme - Supreme Court Order (08H11041) | | |
| 517. | 2009-08-26 - Singh, Khushwant - Supreme Court Order (06010591) | | |
| 518. | 2009-08-27 - Ouzounian, Tamar - Supreme Court Order (Supp.) (06O14145) | | |
| 519. | 2009-09-03 - Hastert, Thomas John - Supreme Court Order (08H11061) | | |
| 520. | 2009-09-04 - Kotto, Natasha Anke - Supreme Court Order (09PM10170) | | |
| 521. | 2009-09-04 - Propster, Lisa Geraldine - Supreme Court Order (08PM14531) | | |
| 522. | 2009-09-03 - Reedy, Michael London - Supreme Court Order (07C12208) | | |
| 523. | 2009-09-09 - Hartson II, Georg David - Supreme Court Order (05003751) | | |
| 524. | 2009-09-09 - Ibarra, Antonio John - Supreme Court Order (06O14156) | | |
| 525. | 2009-09-09 - Korenberg, Dan E. - Supreme Court Order (07C10833) | | |
| 526. | 2009-09-09 - Paiva, Gregory Allen - Supreme Court Order (06O14235) | | |
| 527. | 2009-09-09 - Stearns, Ryan Edward - Supreme Court Order (06O14303) | | |
| 528. | 2009-09-11 - Kerlan, Jason Michael - Supreme Court Order (06011986) | | |
| 529. | 2009-09-17 - Albrecht, Patty Noroian - Supreme Court Order (07O10166) | | |
| 530. | 2009-09-17 - Laughlin, Gregg Steven - Supreme Court Order (06013050) | | |
| 531. | 2009-09-17 - Portugal Leon, Jorge Eduardo - Supreme Court Order (08N13141) | | |
| 532. | 2009-09-17 - Stein, David Nathan - Supreme Court Order (07O13042) | | |
| 533. | 2009-09-18 - Bravos, James - Supreme Court Order (X) | | |
| 534. | 2009-09-28 - Faith, John Randall - Supreme Court Order (07O13895) | | |
| 535. | 2009-09-29 - Anyia, Alfred Oshiomele - Supreme Court Order (05004734) | | |
| 536. | 2009-09-29 - Ardite, Dante Sean - Supreme Court Order (07O14201) | | |
| 537. | 2009-09-29 - Bloomfield, Karl - Supreme Court Order (05000861;05004178;06011024) | | |
| 538. | 2009-09-29 - Currie, David Glenn - Supreme Court Order (07O10314) | | |
| 539. | 2009-09-29 - Hancock, William Franklin, Jr. - Supreme Court Order (05002311) | | |
| 540. | 2009-09-29 - Husted, Earl Wayne III - Supreme Court Order (08O12311) | | |
| 541. | 2009-09-29 - Jackson, Robert Harris - Supreme Court Order (07O12606; 07O12879) | | |
| 542. | 2009-09-29 - Teel, James Allen - Supreme Court Order (07C11834; 07C12541) | | |
| 543. | 2009-09-29 - Wood, Patrick Joseph - Supreme Court Order (08N13042) | | |
| 544. | 2009-10-02 - Obregon, Rigoberto V. - Supreme Court Order (06O15256) | | |

Ex. 14:14

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 545. | 2009-10-06 - Chang, Te Jung - Supreme Court Order (06O13891) | | |
| 546. | 2009-10-06 - Cohen, Howard Michael - Supreme Court Order (05003369) | | |
| 547. | 2009-10-06 - Espinoza, Richard Allen - Supreme Court Order (09N10044) | | |
| 548. | 2009-10-06 - Fraas, Lisa Marie - Supreme Court Order (07O13147) | | |
| 549. | 2009-10-06 - Hale, Richard Lee - Supreme Court Order (07O13332) | | |
| 550. | 2009-10-06 - Schwartz, Justin Daniel - Supreme Court Order (07O12378; 08O10439) | | |
| 551. | 2009-10-06 - Tokarczyk, Gregory John - Supreme Court Order (06O15057) | | |
| 552. | 2009-10-14 - Christenson, G. Scott - Supreme Court Order (08N13625) | | |
| 553. | 2009-10-14 - Hofman, Richard - Supreme Court Order (X) | | |
| 554. | 2009-10-14 - Krueger, Paul Michael - Supreme Court Order (07O10544) | | |
| 555. | 2009-10-14 - Lew, Stephen - Supreme Court Order (X) | | |
| 556. | 2009-10-14 - Nelson, Lewis Nathaniel - Supreme Court Order (07O14750) | | |
| 557. | 2009-10-14 - Martinsen, Cheryl Parkinson - Supreme Court Order (07O12851) | | |
| 558. | 2009-10-14 - Pappenfuss, Herbert - Supreme Court Order (X) | | |
| 559. | 2009-10-14 - Perez, Ernesto J. - Supreme Court Order (09N10064) | | |
| 560. | 2009-10-14 - Trapnell, Heather Diane - Supreme Court Order (06011382) | | |
| 561. | 2009-10-20 - Braa, Michael Wayne Sr. - Supreme Court Order (07O13128) | | |
| 562. | 2009-10-20 - Cavallo, Joseph Gerard - Supreme Court Order (05C04453) | | |
| 563. | 2009-10-20 - Schutmaat, Derk W. - Supreme Court Order (07C12435) | | |
| 564. | 2009-10-27 - Newhouse, Norman Charles - Supreme Court Order (07O11608) | | |
| 565. | 2009-10-27 - Pelcyger, Robert - Supreme Court Order (X) | | |
| 566. | 2009-10-27 - Schwertfeger, Frank Dennis - Supreme Court Order (08N14124) | | |
| 567. | 2009-10-27 - Yong, Hock Loon - Supreme Court Order (06012875) | | |
| 568. | 2009-10-30 - Hofman, Richard - Supreme Court Order (X) | | |
| 569. | 2009-11-03 - Bartley, Daniel Robert - Supreme Court Order (08O13224) | | |
| 570. | 2009-11-03 - Abrams, Gary R. - Supreme Court Order (06012710) | | |
| 571. | 2009-11-03 - Murphy, Tamela J. - Supreme Court Order (07O12138) | | |
| 572. | 2009-11-03 - Perkins, Louis J. - Supreme Court Order (07O14812;08011900) | | |
| 573. | 2009-11-03 - Smith, Jon - Supreme Court Order (X) | | |
| 574. | 2009-11-03 - Weber, Matthew B. - Supreme Court Order (07N12386) | | |
| 575. | 2009-11-03 - Wong, Richard - Supreme Court Order (08N10911) | | |
| 576. | 2009-11-06 - Kays, Gregg Lee - Supreme Court Order (09PM13203) | | |
| 577. | 2009-11-10 - Castaneda, Carlos Eduardo - Supreme Court Order (07O10912) | | |
| 578. | 2009-11-10 - Ehrlich, Robert Lee - Supreme Court Order (05004611) | | |
| 579. | 2009-11-10 - Fearnside, William Lewis - Supreme Court Order (05004676) | | |
| 580. | 2009-11-10 - Manshardt, Patrick J. - Supreme Court Order (08O10265) | | |
| 581. | 2009-11-10 - Mintz, Jeffrey S. - Supreme Court Order (07O13891) | | |
| 582. | 2009-11-10 - Raridan, Julie Helena - Supreme Court Order (08O12763; 08O12764) | | |
| 583. | 2009-11-10 - Reed, Scott Alonso - Supreme Court Order (06011330) | | |
| 584. | 2009-11-10 - Rodriguez, Steven James - Supreme Court Order (07C10856) | | |

Ex. 14:15

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 585. | 2009-11-17 - Callender, Susan Angela - Supreme Court Order (07O14961) | ✓ | |
| 586. | 2009-11-17 - Fazzi, Louis George - Supreme Court Order (06013578) | ✓ | |
| 587. | 2009-11-17 - Henry, Howard David - Supreme Court Order (05003316) | ✓ | |
| 588. | 2009-11-17 - Messer, Paul Jay - Supreme Court Order (06O14595) | ✓ | |
| 589. | 2009-11-17 - Nguyen, Peter Tran - Supreme Court Order (08N12111) | ✓ | |
| 590. | 2009-11-17 - Rifkin, Howard Lawrence - Supreme Court Order (07O13100) | ✓ | |
| 591. | 2009-11-17 - Robinson, Angela Deniese - Supreme Court Order (07O10243) | ✓ | |
| 592. | 2009-11-18 - Gingery, Justin Matthew - Supreme Court Order (07O14008) | ✓ | |
| 593. | 2009-11-24 - Schelly, Paul Alan - Supreme Court Order (05000181) | ✓ | |
| 594. | 2009-11-24 - Stein, David Nathan - Supreme Court Order (08O12175; 08O12295) | ✓ | |
| 595. | 2009-12-02 - Gong, Gloria Margaret - Supreme Court Order (08O10778) | ✓ | |
| 596. | 2009-12-02 - Jones, David Evan - Supreme Court Order (08C10327) | ✓ | |
| 597. | 2009-12-02 - Jordan, James Friend - Supreme Court Order (05000935) | ✓ | |
| 598. | 2009-12-02 - Kumpel, Frederick Carlos - Supreme Court Order (09PM12955) | ✓ | |
| 599. | 2009-12-02 - Ojeda, Bernal Peter - Supreme Court Order (0601 690) | ✓ | |
| 600. | 2009-12-02 - Lee, Benjamin Tae Woun - Supreme Court Order (05004748) | ✓ | |
| 601. | 2009-12-15 - Baran, David Joseph - Supreme Court Order (08N13156) | ✓ | |
| 602. | 2009-12-15 - Brubaker, Gregory Allen - Supreme Court Order (08O14139) | ✓ | |
| 603. | 2009-12-15 - Derdowski, Ryan Emil - Supreme Court Order (08O12604) | ✓ | |
| 604. | 2009-12-15 - Dove, Alan Peter - Supreme Court Order (07O12238; 08O13216) | ✓ | |
| 605. | 2009-12-15 - Lee, Robert Yun - Supreme Court Order (09H12861) | ✓ | |
| 606. | 2009-12-15 - Lenz, Stewart W. - Supreme Court Order (08O11182) | ✓ | |
| 607. | 2009-12-15 - Newson, Neil Cyril - Supreme Court Order (06O14115) | ✓ | |
| 608. | 2009-12-15 - Olsen, Joseph James - Supreme Court Order (06O14241) | ✓ | |
| 609. | 2009-12-15 - Patino, Ana Maria - Supreme Court Order (08N14812) | ✓ | |
| 610. | 2009-12-15 - Rosin, Anita D. - Supreme Court Order (06O15064) | ✓ | |
| 611. | 2009-12-15 - Rowland, Joseph Edward - Supreme Court Order (06010447) | ✓ | |
| 612. | 2009-12-15 - Share, Richard Hudson - Supreme Court Order (06013651) | ✓ | |
| 613. | 2009-12-15 - Thompson, Terrance James - Supreme Court Order (08O12603) | ✓ | |
| 614. | 2009-12-22 - Bennett, James Todd - Supreme Court Order (06J13522) | ✓ | |
| 615. | 2009-12-22 - Christof, Kevin Francis - Supreme Court Order (08N13140) | ✓ | |
| 616. | 2009-12-22 - Daley, William Patrick - Supreme Court Order (05001018) | ✓ | |
| 617. | 2009-12-22 - Dixon, Elliott James - Supreme Court Order (09H13360) | ✓ | |
| 618. | 2009-12-22 - Williams, Mark Henry - Supreme Court Order (06013025) | ✓ | |
| | **2010*** | | |
| 619. | 2010-01-01 - Culpepper, Thaddeus Julian - Supreme Court Order (06013980) | ✓ | |
| 620. | 2010-01-02 - Henricks, Nancy Heatherington - Supreme Court Order (06011647) | ✓ | |
| 621. | 2010-01-08 - Andrews, Sean Lymus - Supreme Court Order (08N14804) | ✓ | |
| 622. | 2010-01-08 - Leonard, Cathye Elaine - Supreme Court Order (08010817) | ✓ | |
| 623. | 2010-01-08 - Twigg, Jay - Supreme Court Order (05001523) | ✓ | |

**Ex. 14:16**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 624. | 2010-01-08 - Call, John Richard - Supreme Court Order (07014462) | | |
| 625. | 2010-01-11 - Ahmed, Sabbir - Supreme Court Order (08J13358) | | |
| 626. | 2010-01-12 - Staten, Jacqueline - Supreme Court Order (06C11615) | | |
| 627. | 2010-01-12 - Barsi, Michael James - Supreme Court Order (08(10958) | | |
| 628. | 2010-01-12 - Sienski, Paul Stanley - Supreme Court Order (08013145; 08014387) | | |
| 629. | 2010-01-12 - Trejo, Charles David - Supreme Court Order (08012444) | | |
| 630. | 2010-01-14 - Bobbitt, Chrystal L. - Supreme Court Order (07012290) | | |
| 631. | 2010-01-14 - Campa, Drago - Supreme Court Order (07010063) | | |
| 632. | 2010-01-15 - Macy, James Allen - Supreme Court Order (07013002) | | |
| 633. | 2010-01-22 - Burns, Don Cameron - Supreme Court Order (06010519) | | |
| 634. | 2010-01-22 - Greenspan, Arthur - Supreme Court Order (05000569; 07013832) | | |
| 635. | 2010-01-22 - Markum, James Brian - Supreme Court Order (09N10730) | | |
| 636. | 2010-01-22 - Saunders, Brian - Supreme Court Order (08C13274) | | |
| 637. | 2010-01-22 - Stoller, Michael Thomas - Supreme Court Order (09J11153) | | |
| 638. | 2010-01-27 - Levy, Andrew - Supreme Court Order (06014203) | | |
| 639. | 2010-01-27 - McNeal, Patrick Dayton - Supreme Court Order (07010023) | | |
| 640. | 2010-01-27 - Humphries, Erin H. - Supreme Court Order (07014589) | | |
| 641. | 2010-02-03 - Robinson, Kurt Kevin - Supreme Court Order (06011510) | | ■ |
| 642. | 2010-02-03 - Venegas, Armando R. - Supreme Court Order (06015274) | | ■ |
| 643. | 2010-02-09 - Collette, Stephen Paul - Supreme Court Order (09010385) | | |
| 644. | 2010-02-10 - McIntosh, Wayne - Supreme Court Order (X) | | ■ |
| 645. | 2010-02-18 - Cossio, Charles Colin - Supreme Court Order (07010996) | | |
| 646. | 2010-02-18 - Crumblish, Martin George - Supreme Court Order (07012295) | | |
| 647. | 2010-02-18 - George, Robert Duane - Supreme Court Order (08012789) | | |
| 648. | 2010-02-19 - Williams, Robert - Supreme Court Order (X) (A) | | ■ |
| 649. | 2010-02-22 - Downey, Stephen - Supreme Court Order (X) | | |
| 650. | 2010-02-22 - Walsh, Jason Robert - Supreme Court Order (08H11721) | | |
| 651. | 2010-02-24 - Chandler, Gregory - Supreme Court Order (07010093) | | |
| 652. | 2010-02-24 - Glasser, Robert Edward - Supreme Court Order (05005168) | | |
| 653. | 2010-02-24 - Mitchell, Susan Ann - Supreme Court Order (06014210) | | |
| 654. | 2010-02-24 - Dove, Alan P,eter - Supreme Court Order (09N13309) | | |
| 655. | 2010-02-24 - Woo, Samuel J. - Supreme Court Order (09C12551) | | |
| 656. | 2010-02-26 - Chacon, Miguel Angel - Supreme Court Order (09PM16028) | | |
| 657. | 2010-03-02 - Gill, Manvinder - Supreme Court Order (08012282) | | |
| 658. | 2010-03-11 - Davis, Douglas William - Supreme Court Order (09012784) | | |
| 659. | 2010-03-11 - Frank, Kevin Joseph - Supreme Court Order (06012425) | | |
| 660. | 2010-03-11 - Speir, Kevin Andrew - Supreme Court Order (05004057) | | |
| 661. | 2010-03-11 - Carter, Patrick John - Supreme Court Order (09N14901) | | |
| 662. | 2010-03-11 - Young, Lawrence Rex - Supreme Court Order (08C13176) | | |
| 663. | 2010-03-15 - Fox, David G. - Supreme Court Order (09PM17062) | | |
| 664. | 2010-03-24 - Orlyn, Barry M. - Supreme Court Order (05004575) | | ■ |

**Ex. 14:17**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 665. | 2010-03-24 - Williams, Mark - Supreme Court Order (X) | | |
| 666. | 2010-03-26 - Baker, Scott G. - Supreme Court Order (09N12464) | | |
| 667. | 2010-03-26 - Bath, Samuel William - Supreme Court Order (09C12013) | | |
| 668. | 2010-03-26 - Dunlap, George Hall Jr. - Supreme Court Order (09N14492) | | |
| 669. | 2010-04-01 - Christianson, Roger Carl - Supreme Court Order (07013831) | | |
| 670. | 2010-04-01 - Cook, Ulysses Lafoy, Jr. - Supreme Court Order (06010243) | | |
| 671. | 2010-04-01 - Hawkins, Early Marlow - Supreme Court Order (06(13875) | | |
| 672. | 2010-04-02 - Dade, Duane DaRoy - Supreme Court Order (05002787) | | |
| 673. | 2010-04-02 - Ganor, Gabriel Scott - Supreme Court Order (05C03292) | | |
| 674. | 2010-04-02 - Roberts IV, Walter James - Supreme Court Order (08010110) | | |
| 675. | 2010-04-02 - Yardley, David Rule - Supreme Court Order (06011142) | | |
| 676. | 2010-04-12 - Cox, Cynthia Leslie - Supreme Court Order (09PM18806) | | |
| 677. | 2010-04-12 - Kwon, Steve Sehaeng - Supreme Court Order (09PM18782) | | |
| 678. | 2010-04-15 - McKinney, Karen L. - Supreme Court Order (08012847; 08013982) | | |
| 679. | 2010-04-16 - Nguyen-Tu Le, Thomas - Supreme Court Order (07010777) | | |
| 680. | 2010-04-16 - Peterson, Roy Earnest - Supreme Court Order (08010639) | | |
| 681. | 2010-04-16 - Hoppes, Carl Jacob - Supreme Court Order (08014270; 09011036) | | |
| 682. | 2010-04-27 - Baade, David Robert - Supreme Court Order (07011227) | | |
| 683. | 2010-04-27 - Hodges, James Marshall - Supreme Court Order (07011294; 09011587) | | |
| 684. | 2010-04-27 - Jansen, Gerald J. - Supreme Court Order (05003161) | | |
| 685. | 2010-04-27 - Mendivel, Joe - Supreme Court Order (X) | | |
| 686. | 2010-04-29 - Miller, Kurt Anthony - Supreme Court Order (06011794) | | |
| 687. | 2010-04-29 - Rhee, John Wongoo - Supreme Court Order (07N14065) | | |
| 688. | 2010-04-30 - Beverly, William James - Supreme Court Order (06013125) | | |
| 689. | 2010-04-30 - Karasik, Olga Alexandra - Supreme Court Order (05004340) | | |
| 690. | 2010-04-30 - Feria, Kenneth Peter - Supreme Court Order (09014108) | | |
| 691. | 2010-04-30 - Williams, Frank Henry Jr. - Supreme Court Order (08012247; 09012375) | | |
| 692. | 2010-05-10 - Streeter, Daniel Thomas Jr. - Supreme Court Order (06015178) | | |
| 693. | 2010-05-14 - Mallory, Kim Foppe - Supreme Court Order (06013305) | | |
| 694. | 2010-05-14 - Zajic, Christopher Allen - Supreme Court Order (07011083) | | |
| 695. | 2010-05-14 - Kastelic, Debra Louise - Supreme Court Order (09N13811) | | |
| 696. | 2010-05-20 - McKee, Scott Cummings - Supreme Court Order (07H11874) | | |
| 697. | 2010-05-21 - Carleo, Frank S. - Supreme Court Order (05003770) | | |
| 698. | 2010-05-21 - Halsey, William Carley- Supreme Court Order (05005164 | | |
| 699. | 2010-05-21 - Paco, Nathan - Supreme Court Order (06014161) | | |
| 700. | 2010-05-21 - Guglielmino, Michael John - Supreme Court Order (09N16571) | | |
| 701. | 2010-05-21 - Steelman, Henry - Supreme Court Order (08J14668) | | |
| 702. | 2010-05-26 - Kiddy, Kenneth Lee - Supreme Court Order (09010959) | | |

**Ex. 14:18**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 703. | 2010-05-26 - Matthews, Eugene Wellington - Supreme Court Order (06012121) | | |
| 704. | 2010-05-26 - Moss, Alan Irving - Supreme Court Order (05001947) | | |
| 705. | 2010-05-26 - Onneflod, Per Christer - Supreme Court Order (07013010) | | |
| 706. | 2010-05-26 - Ortega, David Richard - Supreme Court Order (08N13044) | | |
| 707. | 2010-05-26 - Weber, Matthew Bernard - Supreme Court Order (07010788) | | |
| 708. | 2010-05-28 - Marsh, Gary Lloyd - Supreme Court Order (09J13136) | | |
| 709. | 2010-05-31 - Tarlow, Richard Gary- Supreme Court Order (07015049) | | |
| 710. | 2010-06-04 - Hazelkorn, Ira David - Supreme Court Order (06011423) | | |
| 711. | 2010-06-04 - Rodriguez, Stephen Adrian - Supreme Court Order (06C13026) | | |
| 712. | 2010-06-08 - Applinq, Walter Cortriqht - Supreme Court Order (09H19303) | | |
| 713. | 2010-06-09 - Elkins, John William - Supreme Court Order (05003819) | | |
| 714. | 2010-06-22 - Simonian, Mark Sitrak - Supreme Court Order (09H15878) | | |
| 715. | 2010-06-23 - Clough, William Arthur - Supreme Court Order (07013905) | | |
| 716. | 2010-06-25 - Bray, Keith Hammond - Supreme Court Order (06011728) | | |
| 717. | 2010-06-25 - Brustman, James Joseph - Supreme Court Order (06012467) | | |
| 718. | 2010-06-25 - Ennix, Frank Martin Ill - Supreme Court Order (06012235) | | |
| 719. | 2010-06-25 - Kang, Sang Hyun - Supreme Court Order (07011898; 08011455) | | |
| 720. | 2010-06-25 - Landis, Crane Stephen - Supreme Court Order (07010673; 07014748) | | |
| 721. | 2010-06-25 - Mahacek, Jim Parsons - Supreme Court Order (08010722) | | |
| 722. | 2010-06-25 - Partridge, James Syme - Supreme Court Order (09N18885) | | |
| 723. | 2010-06-25 - Lee, Kathleen Marie - Supreme Court Order (08C13055) | | |
| 724. | 2010-06-25 - Levine, Marc Russell - Supreme Court Order (07014858) | | |
| 725. | 2010-06-25 - Tishgart, Kenneth - Supreme Court Order (X) | | |
| 726. | 2010-06-25 - Turpin, Christopher LaVar - Supreme Court Order (07014363) | | |
| 727. | 2010-06-25 - Yasui, Robert Kei - Supreme Court Order (08014609) | | |
| 728. | 2010-07-02 - Ezeife, Nwabueze Chukwuedoz I. - Supreme Court Order (06012413) | | |
| 729. | 2010-07-02 - Rifkin, Howard Lawrence - Supreme Court Order (09N11616) | | |
| 730. | 2010-07-16 - Hedwall, Laine Edwin - Supreme Court Order (06015376) | | |
| 731. | 2010-07-19 - Evans, John W. - Supreme Court Order (08013899) | | |
| 732. | 2010-07-19 - Papst, Richard John - Supreme Court Order (06010328) | | |
| 733. | 2010-07-22 - Casillas, Mario - Supreme Court Order (08011212) | | |
| 734. | 2010-07-22 - Davidson, Keith M. - Supreme Court Order (07012913) | | |
| 735. | 2010-07-22 - Edwards, Kamau - Supreme Court Order (07013467) | | |
| 736. | 2010-07-22 - Laumbach, Maryellen - Supreme Court Order (08010644) | | |
| 737. | 2010-07-22 - Peters, Wendell Dean Supreme Court Order (06015339) | | |
| 738. | 2010-07-22 - Rossetti, Joseph - Supreme Court Order (05003627) | | |
| 739. | 2010-07-22 - Simonian, Mark Sitrak - Supreme Court Order (09H15878) | | |
| 740. | 2010-07-22 - Song, Joohan - Supreme Court Order (X) | | |
| 741. | 2010-07-22 - Tokarc:zyk, Gregory John - Supreme Court Order (08013627) | | |

**Ex. 14:19**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 742. | 2010-07-22 - Traylor, Michael Steven - Supreme Court Order (07010100) | | |
| 743. | 2010-07-22 - Desbrosses, Fabrice John - Supreme Court Order (09C11920; 09C11922) | | |
| 744. | 2010-07-22 - Graham, Robert Francis - Supreme Court Order (09013288) | | |
| 745. | 2010-07-22 - Koushan, Feriedoun Anthony - Supreme Court Order (09C1S474) | | |
| 746. | 2010-07-22 - Song, Joohan James - Supreme Court Order (07C14337) | | |
| 747. | 2010-07-22 - Wiener, Lewis R. - Supreme Court Order (09N11261) | | |
| 748. | 2010-07-23 - Cooper, Steven Joseph - Supreme Court Order (06013698) | | |
| 749. | 2010-08-03 - Kleeger, Kenneth Sidney - Supreme Court Order (05000236; 05000603) | | |
| 750. | 2010-08-03 - Mendez, David Gerard - 'Supreme Court Order (08010412) | | |
| 751. | 2010-08-03 - Tamura, Ronald Shuji - Supreme Court Order (06C15509) | | |
| 752. | 2010-08-03 - Loya, Phyllis Dianne-Lasater - Supreme Court Order (08014780) | | |
| 753. | 2010-08-09 - Connolly, Chris - Supreme Court Order (08013460) | | |
| 754. | 2010-08-09 - DaAlfonsi, Frank Angelo - Supreme Court Order (09012257) | | |
| 755. | 2010-08-09 - McFadden, Robert James Jr. - Supreme Court Order (09N15800) | | |
| 756. | 2010-08-11 - Field, Benjamin Thomas - Supreme Court Order (05000815) | | |
| 757. | 2010-08-20 - Harley, Jamie Leigh - Supreme Court Order (05003395) | | |
| 758. | 2010-08-25 - Akinyemi, Oyewole - Supreme Court Order (07012731) | | |
| 759. | 2010-08-25 - Bullock-Carrera, Donna - Supreme Court Order (10H00027) | | |
| 760. | 2010-08-25 - Hoodack, Lawrence - Supreme Court Order (05000719) | | |
| 761. | 2010-08-25 - Liss, Steven Robert - Supreme Court Order (07010750;09013027) | | |
| 762. | 2010-08-25 - Rozanski, Stanley Howard - Supreme Court Order (07010590) | | |
| 763. | 2010-08-25 - Sharpe, Michael G. - Supreme Court Order (09012379) | | |
| 764. | 2010-08-25 - Appelblatt, Gary Michael - Supreme Court Order (08C12797) | | |
| 765. | 2010-08-25 - Kim, Hokyung - Supreme Court Order (09N15870) | | |
| 766. | 2010-08-25 - Kock, Arlene Dorothy - Supreme Court Order (05003912) | | |
| 767. | 2010-08-25 - Prendiville, Andrew James - Supreme Court Order (08H10937) | | |
| 768. | 2010-08-25 - Silverstein, Cynthia B. - Supreme Court Order (09N13627) | | |
| 769. | 2010-08-30 - York, Michael Gordon - Supreme Court Order (05004235) | | |
| 770. | 2010-09-11 - Katrinak, Raymond Paul - Supreme Court Order (06010992) | | |
| 771. | 2010-09-15 - Artz, Jaeffrey Jack - Supreme Court Order (08010062) | | |
| 772. | 2010-09-15 - Clegg, Rita Catherine - Supreme Court Order (08013458) | | |
| 773. | 2010-09-15 - Mousalam, Fadlo - Supreme Court Order (07011297; 09013564) | | |
| 774. | 2010-09-15 - Galligan, Michael Francis - Supreme Court Order (09013927) | | |
| 775. | 2010-09-15 - Kritz, Daniel Eugene - Supreme Court Order (09H19146) | | |
| 776. | 2010-09-15 - Ray, Sara Smith - Supreme Court Order (08012726) | | |
| 777. | 2010-09-21 - Bobus, Randall John - Supreme Court Order (06015379) | | |
| 778. | 2010-09-21 - Torrey, Hoyt Michael - Supreme Court Order (09012790) | | |
| 779. | 2010-09-21 - Wright, LaJetta Yvette - Supreme Court Order (05004503) | | |
| 780. | 2010-09-21 - Juarez, George A. - Supreme Court Order (09H12713) | | |

**Ex. 14:20**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 781. | 2010-09-28 - Dade, Duane DaRoy - Supreme Court Order (07012622; 08011058) | ■ | |
| 782. | 2010-09-28 - Matranga, Stacey Annette - Supreme Court Order (06015426) | ■ | |
| 783. | 2010-09-28 - Raridan, Julie Helena - Supreme Court Order (09012139) | ■ | |
| 784. | 2010-09-28 - Fleming, Gilbert Bruce - Supreme Court Order (09013364) | ■ | |
| 785. | 2010-10-01 - Ribakoff, Joseph Meir - Supreme Court Order (06010034) | ■ | |
| 786. | 2010-10-05 - Agajanian, Roger James - Supreme Court Order (06012783) | ■ | |
| 787. | 2010-10-05 - Leech, Ralph Joseph - Supreme Court Order (08011747) | ■ | |
| 788. | 2010-10-05 - Leonard, Cathye Elaine - Supreme Court Order (09010292) | ■ | |
| 789. | 2010-10-05 - Nelson, Jeffrey Alan - Supreme Court Order (06013190) | ■ | |
| 790. | 2010-10-05 - Park, Paul - Supreme Court Order (05002951) | ■ | |
| 791. | 2010-10-05 - Sack, Robert Howard - Supreme Court Order (07013898) | ■ | |
| 792. | 2010-10-05 - Fisher, Paul Etan - Supreme Court Order (09C16599) | ■ | |
| 793. | 2010-10-05 - Nieto, Maribel - Supreme Court Order (08014509; 09011249; 09013664) | ■ | |
| 794. | 2010-10-13 - Geyer, Mark Mitchell - Supreme Court Order (07013418; 08010531) | ■ | |
| 795. | 2010-10-13 - Lenard, Richard Allen - Supreme Court Order (09011271) | ■ | |
| 796. | 2010-10-13 - Logan, Robert Anthony - Supreme Court Order (07011229) | ■ | |
| 797. | 2010-10-13 - Reghabi, Khosro - Supreme Court Order (07013558; 08012255) | ■ | |
| 798. | 2010-10-13 - Ronquillo, David G. - Supreme Court Order (07012701; 07014524) | ■ | |
| 799. | 2010-10-13 - Sekhon, Jagdip Singh - Supreme Court Order (09N18176) | ■ | |
| 800. | 2010-10-13 - Denenberg, Stevan Louis - Supreme Court Order (09C12896; 09C13759) | ■ | |
| 801. | 2010-10-13 - Ram, Ajaipaul - Supreme Court Order (09C13102) | ■ | |
| 802. | 2010-10-21 - Berger, Jeffrey Alan - Supreme Court Order (09011622) | ■ | |
| 803. | 2010-10-21 - Smith, Lori - Supreme Court Order (06012517) | ■ | |
| 804. | 2010-10-26 - Jansezian, Nazareth Vahan - Supreme Court Order (07012070; 07013081) | ■ | |
| 805. | 2010-10-26 - McPayah-Obiamalu, Vivian - Supreme Court Order (06013573) | ■ | |
| 806. | 2010-10-26 - Pettis, John Alroy - Supreme Court Order (08011366) | ■ | |
| 807. | 2010-10-26 - Reynolds, Stephen Michael - Supreme Court Order (09014641) | ■ | |
| 808. | 2010-10-27 - Venie, David - Supreme Court Order (X) | ■ | ■ |
| 809. | 2010-11-03 - Barie, Drago Charles - Supreme Court Order (08014008) | ■ | |
| 810. | 2010-11-09 - Candaux, David lee - Supreme Court Order (05003105) | ■ | |
| 811. | 2010-11-09 - Stringfield, Nolan Charles - Supreme Court Order (09010409) | ■ | |
| 812. | 2010-11-09 - Weston, Christopher George - Supreme Court Order (08010643) | ■ | |
| 813. | 2010-11-09 - Weston, Christopher George - Supreme Court Order (08010643) | ■ | |
| 814. | 2010-11-09 - Guillen, Isaac Estrada - Supreme Court Order (09C13155) | ■ | |
| 815. | 2010-11-09 - Hickey, Sean Curtis - Supreme Court Order (08013173; 08013265) | ■ | |

**Ex. 14:21**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 816. | 2010-11-09 - Thompson, Kris Patrick - Supreme Court Order (08H10952) | | |
| 817. | 2010-11-10 - Brame, Catherine Margaret - Supreme Court Order (09019119) | | |
| 818. | 2010-11-10 - Crabtree, Arthur George - Supreme Court Order (05C00606) | | |
| 819. | 2010-11-10 - Martinsen, Cheryl Parkinson - Supreme Court Order (10N00039) | | |
| 820. | 2010-11-10 - Smith, Todd Christian - Supreme Court Order (10N00037) | | |
| 821. | 2010-11-10 - Kinney, Ernest Scott - Supreme Court Order (08C14328; 08C14555) | | |
| 822. | 2010-11-10 - Taylor, Johnnie lee - Supreme Court Order (09C12634) | | |
| 823. | 2010-11-21 - Christoff, Patrick G. - Supreme Court Order (06014887) | | |
| 824. | 2010-11-22 - Casiano, Vincent Michael - Supreme Court Order (07010776; 09010715) | | |
| 825. | 2010-11-22 - Chandler, Gregory - Supreme Court Order (09012855) | | |
| 826. | 2010-11-22 - Pappas, Mark Basil - Supreme Court Order (07010326) | | |
| 827. | 2010-11-22 - Reedy, Michael London - Supreme Court Order (09N18819) | | |
| 828. | 2010-11-22 - Sabich-Robison, Katharine Jean - Supreme Court Order (05C02150) | | |
| 829. | 2010-11-22 - Smith, Rochelle Anne - Supreme Court Order (10(01361) | | |
| 830. | 2010-11-22 - Yagman, Stephen - Supreme Court Order (06C13000) | | |
| 831. | 2010-11-22 - Bray, Keith Hammond - Supreme Court Order (08013061; 08014778) | | |
| 832. | 2010-11-24 - Johnson, Eric Douglas - Supreme Court Order (09011599) | | |
| 833. | 2010-11-24 - Lima, Richard Anthony - Supreme Court Order (08011604) | | |
| 834. | 2010-11-24 - Moore, Jason Paul - Supreme Court Order (10N00036) | | |
| 835. | 2010-11-24 - Raycraft, Laura Ann - Supreme Court Order (05002912) | | |
| 836. | 2010-11-24 - Smith, Phillip Wayne - Supreme Court Order (10C05909) | | |
| 837. | 2010-11-24 - Tierney, Kent Pearce - Supreme Court Order (08C14618; 10C03931) | | |
| 838. | 2010-12-02 - Brennan, Frederick Hazlitt - Supreme Court Order (08013723) | | |
| 839. | 2010-12-02 - Moriel, David - Supreme Court Order (05000235; 05000784; 05001109) | | |
| 840. | 2010-12-02 - Propster, Lisa Geraldine - Supreme Court Order (09N18965) | | |
| 841. | 2010-12-02 - Reed, Kenneth Alan - Supreme Court Order (07011444; 07011795) | | |
| 842. | 2010-12-02 - Schmidt, Robert Raymond - Supreme Court Order (09010319) | | |
| 843. | 2010-12-02 - Sullivan II, Harold Vincent - Supreme Court Order (08C12029) | | |
| 844. | 2010-12-06 - Brennan, Frederick Hazlitt - Supreme Court Order (Supp.) (08013723) | | |
| 845. | 2010-12-10 - Cabbiness, Peter Jason - Supreme Court Order (07013802) | | |
| 846. | 2010-12-10 - Dulin, Paul Alzona - Supreme Court Order (06014740) | | |
| 847. | 2010-12-10 - Smith, Kathleen Jill - Supreme Court Order (05002615) | | |
| 848. | 2010-12-14 - Biggers, Diane Medina - Supreme Court Order (07012080; 07014235) | | |

**Ex. 14:22**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 849. | 2010-12-14 - Castleman, Mark Patrick - Supreme Court Order (08(10077) | | |
| 850. | 2010-12-14 - Kidwell, Thomas Breen - Supreme Court Order (05002431) | | |
| 851. | 2010-12-14 - Parra, Oscar Cruz - Supreme Court Order 08014736; 09012339; 09011664) | | |
| 852. | 2010-12-14 - Parra, Oscar Cruz - Supreme Court Order (08014736;09012339;09011664) | | |
| 853. | 2010-12-14 - Paya, Bahram Brian - Supreme Court Order (09(11302) | | |
| 854. | 2010-12-21 - Hayward, Scott Bunker - Supreme Court Order (10000132) | | |
| 855. | 2010-12-21 - Kock, Arlene Dorothy - Supreme Court Order (07014196) | | |
| 856. | 2010-12-21 - Rahimi, Fariba K. - Supreme Court Order (05002584) | | |
| 857. | 2010-12-21 - Karpuk, Robert Andrew - Supreme Court Order (09(10309) | | |
| 858. | 2010-12-30 - Allyn IV, Burton Charles - Supreme Court Order (10H00399) | | |
| 859. | 2010-12-30 - Cohen, Howard Michael - Supreme Court Order (10N01428) | | |
| 860. | 2010-12-30 - Garcia-Barron, Gerard - Supreme Court Order (08013195 | | |
| 861. | 2010-12-30 - Garcia-Barron, Gerard Lionel - Supreme Court Order (08013195) | | |
| 862. | 2010-12-30 - Hilts, Todd James - Supreme Court Order (07012819; 07015044; 08012545) | | |
| 863. | 2010-12-30 - Nehmeh, Mohamad Toufic - Supreme Court Order (06013392) | | |
| 864. | 2010-12-30 - Seltzer, Ira - Supreme Court Order (06011780) | | |
| 865. | 2010-12-30 - Smith, Eric Theodore - Supreme Court Order (09017338) | | |
| 866. | 2010-12-30 - Agnew, Jeffrey Alan - Supreme Court Order (07014909) | | |
| 867. | 2010-12-30 - Magruder, Brian Gregory- Supreme Court Order (09N13626) | | |
| 868. | 2010-12-30 - Tencer, Godfrey John - Supreme Court Order (08C13873) | | |
| | **2011*** | | |
| 869. | 2011-01-12 - Borkowski, Michael Frank - Supreme Court Order (05004243) | | |
| 870. | 2011-01-12 - Young, Matthew Richard - Supreme Court Order (05002844) | | |
| 871. | 2011-01-19 - O'Neal, Michael Edwin - Supreme Court Order (06(11912) | | |
| 872. | 2011-01-28 - Sherman, Leslie James - Supreme Court Order (06C13001) | | |
| 873. | 2011-02-18 - Garcia, John Paul - Supreme Court Order (06013226) | | |
| 874. | 2011-03-16 - Wanland, Donald - Supreme Court Order (X) | | |
| 875. | 2011-03-18 - Martorella, Daniel - Supreme Court Order (05001211) | | |
| 876. | 2011-03-24 - Sullivan, William Bransfield - Supreme Court Order (06O10610) | | |
| 877. | 2011-03-30 - Johnson, Allen Edward - Supreme Court Order (05C01520) | | |
| 878. | 2011-03-30 - Murray, James J. - Supreme Court Order (05O03820) | | |
| 879. | 2011-03-30 - Reza, Jill Adrian - Supreme Court Order (06O11360).pdf | | |
| 880. | 2011-03-30 - Robinson, Benjamin - Supreme Court Order (05O03475) | | |
| 881. | 2011-03-30 - Sprouls, Frank - Supreme Court Order (X) | | |
| 882. | 2011-04-04 - Williams, Mark - Supreme Court Order (X) (A) | | |
| 883. | 2011-04-13 - Saffarian, Patrick Esmael - Supreme Court Order (05O02960) | | |
| 884. | 2011-04-27 - Mendoza, Ricardo Lopez - Supreme Court Order (06O10493) | | |
| 885. | 2011-05-11 - Gottschalk, Ronald Norton - Supreme Court Order (06O10336) | | |
| 886. | 2011-05-18 - Wells, Stephine M. - Supreme Court Order (08O13791) | | |

Ex. 14:23

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 887. | 2011-05-19 - Luetto, John Anthony - Supreme Court Order (05O04218) | | |
| 888. | 2011-05-26 - Fitzgerald, Kathleen Margaret - Supreme Court Order (06H12121) | | |
| 889. | 2011-05-26 - Pharis, Allison Renee - Supreme Court Order (05005117) | | |
| 890. | 2011-06-08 - Jones, John Edmund - Supreme Court Order (07O14779; 09O10958) | | |
| 891. | 2011-06-08 - Lemaire, E. Lynette - Supreme Court Order (05004522) | | |
| 892. | 2011-06-08 - Noownejad, Cyrus - Supreme Court Order (X) | | |
| 893. | 2011-06-08 - Scharf, David Joseph - Supreme Court Order (06C12596) | | |
| 894. | 2011-06-11 - Phillips, Ed - Supreme Court Order (X) | | |
| 895. | 2011-06-13 - Doan, Thinh - Supreme Court Order (X) | | |
| 896. | 2011-06-15 - Baric, Drago - Supreme Court Order (X) | | |
| 897. | 2011-06-22 - Lucas, Paul Jeffery - Supreme Court Order (08O14792; 09O14608) | | |
| 898. | 2011-06-27 - Phillips, Willie Ed - Supreme Court Order (05003782) | | |
| 899. | 2011-06-28 - Jordan, James - Supreme Court Order (X) | | |
| 900. | 2011-06-29 - Barry, Patricia Joan - Supreme Court Order (06012210) | | |
| 901. | 2011-07-08 - Knoblock, Kenneth Eugene - Supreme Court Order (05000308) | | |
| 902. | 2011-07-08 - Martin, Craig Kenneth - Supreme Court Order (06010765) | | |
| 903. | 2011-07-12 - Teel, James - Supreme Court Order (X) | | |
| 904. | 2011-07-14 - Goddard, Kimber - Supreme Court Order (X) | | |
| 905. | 2011-07-27 - Robinson, Von Wallace - Supreme Court Order (05001352) | | |
| 906. | 2011-07-28 - London, Adam Mitchell - Supreme Court Order (05002640) | | |
| 907. | 2011-08-10 - Dickson, Roy - Supreme Court Order (X) | | |
| 908. | 2011-08-10 - Falcon, Juan Manuel - Supreme Court Order (05002161) | | |
| 909. | 2011-08-25 - Esqueda, Edward Anthony- Supreme Court Order (06013716) | | |
| 910. | 2011-08-31 - Boag, Patricia Marlene - Supreme Court Order (06012427) | | |
| 911. | 2011-08-31 - Mitchell-Guttman, Christie Bara - Supreme Court Order (07O12021) | | |
| 912. | 2011-10-04 - Quesada, Edward A. - Supreme Court Order (06012100) | | |
| 913. | 2011-10-19 - Dowd, Robert Eaton - Supreme Court Order (07O11955) | | |
| 914. | 2011-10-25 - Folinsky, Stuart Irwin - Supreme Court Order (06012137) | | |
| 915. | 2011-10-25 - Kendall, 'Scott Michael - Supreme Court Order (05004079) | | |
| 916. | 2011-10-04 - Ryan, Kim - Supreme Court Order (X) | | |
| 917. | 2011-10-19 - Dowd, Robert - Supreme Court Order (X) | | |
| 918. | 2011-11-02 - Ruiz, Russell Robert - Supreme Court Order (06C10938) | | |
| 919. | 2011-11-09 - Fairbairn, Sydney Elise - Supreme Court Order (05001317) | | |
| 920. | 2011-11-09 - Thompson, Kris - Supreme Court Order (X) | | |
| 921. | 2011-11-28 - Duskis, Robert Irving - Supreme Court Order (06010766) | | |
| 922. | 2011-11-30 - Ardalan, Kaveh - Supreme Court Order (09O16067) | | |
| 923. | 2011-11-30 - Gjerde, Sean Patrick - Supreme Court Order (Supp.) (08O11776) | | |

Ex. 14:24

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 924. | 2011-12-12 - Evans, Stanley - Supreme Court Order (05000167; 05001242; 05005034) | ✓ | |
| 925. | 2011-12-21 - Tipler, James - Supreme Court Order (X) | ✓ | |
| | **2012*** | | |
| 926. | 2012-01-05 - Schwartz, Ivan Barry - Supreme Court Order (06013672) | ✓ | |
| 927. | 2012-01-05 - Juarez, George - Supreme Court Stay Denial (X) | ✓ | |
| 928. | 2012-01-24 - James, Nelsen - Supreme Court Stay Denial (X) | ✓ | |
| 929. | 2012-01-24 - Lewis, Lawrence George, Jr. - Supreme Court Order (05003450) | ✓ | |
| 930. | 2012-02-15 - Dahlin, Tore Bjorn - Supreme Court Order (05000754) | ✓ | ✗ |
| 931. | 2012-03-21 - Wolf, Mervyn Hillard - Supreme Court Order (06012547) | ✓ | ✗ |
| 932. | 2012-05-17 - Schafer, Dale Carl - Supreme Court Order (05C04285) | ✓ | |
| 933. | 2012-06-13 - Graham, Albert - Supreme Court Order (X) | ✓ | ✗ |
| 934. | 2012-06-20 - Quann, Warren Wendell - Supreme Court Order (09O11763) | ✓ | ✗ |
| 935. | 2012-06-27 - Oxman, Rickey Brian - Supreme Court Order (07O11968; 07O13696;) | ✓ | ✗ |
| 936. | 2012-07-01 - Wong, William Jake Sun - Supreme Court Order (15O15189) | ✓ | |
| 937. | 2012-07-10 - Rubin, Andrew Ellis - Supreme Court Order (06010675) | ✓ | |
| 938. | 2012-07-12 - Jaroscak, Maureen - Supreme Court Order (X) | ✓ | |
| 939. | 2012-07-18 - Spivey, Reuben Alphonso - Supreme Court Order (07O11017) | ✓ | ✗ |
| 940. | 2012-09-05 - Quint, Holly Jean - Supreme Court Order (06012603) | ✓ | |
| 941. | 2012-10-09 - Matthews, Leodis Clyde - Supreme Court Order (05002531) | ✓ | |
| 942. | 2012-10-17 - Artz, Jaeffrey Jack - Supreme Court Order (10N11089) | ✓ | ✗ |
| 943. | 2012-10-24 - Seltzer, Margaret - Supreme Court Order (X) | ✓ | |
| 944. | 2012-11-19 - Stocker, Frederick John - Supreme Court Order (08C14308) | ✓ | |
| 945. | 2012-12-12 - Dozorsky, Wolodymyr Y. - Supreme Court Order (10O04972) | ✓ | ✗ |
| 946. | 2012-12-19 - Willsey, Daniel Patrick - Supreme Court Order (06C15477) | ✓ | |
| | **2013*** | | |
| 947. | 2013-01-16 - Healy, Kevin - Supreme Court Order (X) | ✓ | |
| 948. | 2013-02-20 - Spadaro, Charlotte - Supreme Court Order (X) | ✓ | |
| 949. | 2013-02-27 - Levine, Howard Roy - Supreme Court Order (0917404) | ✓ | ✗ |
| 950. | 2013-02-27 - Taylor, Swazi - Supreme Court Order (X) | ✓ | ✗ |
| 951. | 2013-03-07 - Nadim, Mohammad Reza - Supreme Court Order (08O13001;08O14002) | ✓ | ✗ |
| 952. | 2013-03-26 - Ottosi, Paul - Supreme Court Order (X) | ✓ | ✗ |
| 953. | 2013-04-12 - Schweizer, William - Supreme Court Order (X) | ✓ | |
| 954. | 2013-04-17 - Elstead, John - Supreme Court Order (X) | ✓ | ✗ |
| 955. | 2013-05-10 - Gibbs, Julia Patricia - Supreme Court Order (17006391) | ✓ | |
| 956. | 2013-05-10 - Graham, Justin Drayton - Supreme Court Order (16011526) | ✓ | |
| 957. | 2013-05-31 - Talieh, Shahrzad - Supreme Court Order (16C10247) | ✓ | |
| 958. | 2013-06-24 - Lapin, Sharon - Supreme Court Order (X) | ✓ | ✗ |
| 959. | 2013-06-26 - Dickson, Roy - Supreme Court Order (X) | ✓ | ✗ |
| 960. | 2013-07-09 - Lawrence, Arthur - Supreme Court Order (X) | ✓ | |

**Ex. 14:25**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 961. | 2013-07-10 - Matthews, Eugene - Supreme Court Order (X) | | |
| 962. | 2013-07-31 - Seltzer, Margaret - Supreme Court Order (X) | | |
| 963. | 2013-08-10 - Milliken, Jerry S. - Supreme Court Order (17002155) | | |
| 964. | 2013-08-14 - Donrad, Sean - Supreme Court Order (X) | | |
| 965. | 2013-08-14 - Schoth, Karl - Supreme Court Order (X) | | |
| 966. | 2013-08-21 - Haltom, Victor - Supreme Court Order (X) | | |
| 967. | 2013-08-28 - Song, John - Supreme Court Order (X) | | |
| 968. | 2013-11-13 - Chandler, James - Supreme Court Order (X) | | |
| 969. | 2013-11-14 - Zweirlein, Robert - Supreme Court Order (X) | | |
| 970. | 2013-12-18 - Jovich, Linda - Supreme Court Order (X) | | |
| | **2014*** | | |
| 971. | 2014-01-07 - Afari, Daniel - Supreme Court Order (X) | | |
| 972. | 2014-01-29 - Darden, Timothy - Supreme Court Order (X) | | |
| 973. | 2014-01-15 - Jensen, Bradley - Supreme Court Order (X) | | |
| 974. | 2014-01-23 - Grant, Gary - Supreme Court Order (X) | | |
| 975. | 2014-01-30 - Scholl, Verne - Supreme Court Order (X) | | |
| 976. | 2014-01-30 - Velasco, Jose - Supreme Court Order (X) | | |
| 977. | 2014-02-06 - Lanphiere, Steele - Supreme Court Order (X) | | |
| 978. | 2014-02-19 - Harper, David - Supreme Court Order (X) | | |
| 979. | 2014-03-12 - Lane, Gary - Supreme Court Order (X) | | |
| 980. | 2014-03-26 - Morris, James - Supreme Court Order (X) | | |
| 981. | 2014-03-27 - Wear, Charles Reginald - Supreme Court Order (Supp.) (13PM16064) | | |
| 982. | 2014-04-11 - Sargetis, John - Supreme Court Order (X) | | |
| 983. | 2014-04-11 - Schnitzer, Alan - Supreme Court Order (X) | | |
| 984. | 2014-04-29 - Dobbins, Christopher - Supreme Court Order (X) | | |
| 985. | 2014-04-29 - Stalcup, Theodore - Supreme Court Order (X) | | |
| 986. | 2014-05-14 - Karnazes, Elizabeth - Supreme Court Order (X) | | |
| 987. | 2014-06-09 - Diaz, Mario - Supreme Court Order (X) | | |
| 988. | 2014-06-11 - Aguiluz, Heroico - Supreme Court Order (X) | | |
| 989. | 2014-06-11 - Liberty, Louis - Supreme Court Order (X) | | |
| 990. | 2014-06-11 - Schwartz, Donald - Supreme Court Order (X) | | |
| 991. | 2014-06-18 - Parsa, James - Supreme Court Order (X) | | |
| 992. | 2014-07-09 - Huang, Jack - Supreme Court Order (X) | | |
| 993. | 2014-07-09 - Look, William - Supreme Court Order (X) (A) | | |
| 994. | 2014-07-16 - Scheer, Marilyn - Supreme Court Order (X) | | |
| 995. | 2014-07-31 - Butterfield, Ilse - Supreme Court Order (X) | | |
| 996. | 2014-07-31 - Kaye, David - Supreme Court Order (X) | | |
| 997. | 2014-09-10 - Reiner, Martin - Supreme Court Order (X) | | |
| 998. | 2014-09-16 - Smithwick, George - Supreme Court Order (X) | | |
| 999. | 2014-09-17 - Kucsan, Brian - Supreme Court Order (X) | | |
| 1000. | 2014-10-22 - Alexander, Jon - Supreme Court Order (X) | | |

**Ex. 14:26**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1001. | 2014-10-22 - Hewitt, Robbin - Supreme Court Order (X) | 🟩 | 🟥 |
| 1002. | 2014-10-29 - Kitay, Robert - Supreme Court Order (X) | 🟩 | 🟥 |
| 1003. | 2014-11-20 - Greenlaw, Rosemary Belle - Supreme Court Order (06C12820) | 🟩 | |
| 1004. | 2014-12-09 - Cisneros, Michael - Supreme Court Order (X) | 🟩 | |
| **2015\*** | | | |
| 1005. | 2015-01-03 - Cicconi, Drew Allan - Supreme Court Order (16016321) | 🟩 | |
| 1006. | 2015-01-14 - Ferko, Richard - Supreme Court Order (X) | 🟩 | 🟥 |
| 1007. | 2015-02-15 - Galland, Scott - Supreme Court Order (X) | 🟩 | |
| 1008. | 2015-02-19 - Sasaki, Carolyn Akiyo - Supreme Court Order (15Q13784) | 🟩 | |
| 1009. | 2015-03-03 - Burke, Gregory - Supreme Court Order (X) | 🟩 | |
| 1010. | 2015-03-12 - Hernandez, Cynthia - Supreme Court Order (X) | 🟩 | 🟥 |
| 1011. | 2015-03-18 - Missud, Patrick - Supreme Court Order (X) | 🟩 | 🟥 |
| 1012. | 2015-03-20 - Carver, Michael - Supreme Court Order (X) | 🟩 | |
| 1013. | 2015-04-15 - Lazo, Marc - Supreme Court Order (X) | 🟩 | 🟥 |
| 1014. | 2015-05-07 - Galindo, Stephen Edward - Supreme Court Order (14001277) (A) | 🟩 | |
| 1015. | 2015-05-12 - Smith, Thomas l\lilliam - Supreme Court Order (15PM10116) | 🟩 | |
| 1016. | 2015-05-26 - Huber, Mark - Supreme Court Order (X) | 🟩 | |
| 1017. | 2015-06-24 - Elkins, John - Supreme Court Order (X) | 🟩 | 🟥 |
| 1018. | 2015-07-16 - Toran, Zachary Alexander - Supreme Court Order (15PM10969) | 🟩 | |
| 1019. | 2015-08-07 - Godfrev. Dana Allan - Supreme Court Order (15PM10767) | 🟩 | |
| 1020. | 2015-08-07 - Swihart, Thomas Melvin - Supreme Court Order (15PM11434) | 🟩 | |
| 1021. | 2015-08-19 - Kammerer, Jennifer - Supreme Court Order (X) | 🟩 | 🟥 |
| 1022. | 2015-06-26 - Wenzel, Mark - Supreme Court Order (X) | 🟩 | |
| 1023. | 2015-08-26 - Cayce, Christopher - Supreme Court Order (11O15647) | 🟩 | 🟥 |
| 1024. | 2015-09-09 - Gustin, Dale - Supreme Court Order (X) | 🟩 | 🟥 |
| 1025. | 2015-09-09 - Scurrah, Robert - Supreme Court Order (X) | 🟩 | |
| 1026. | 2015-09-10 - Wenzel, Mark - Supreme Court Order (X) | 🟩 | |
| 1027. | 2015-09-23 - Ezor, Edward - Supreme Court Order (X) | 🟩 | 🟥 |
| 1028. | 2015-09-23 - Prevost, Mary - Supreme Court Order (X) | 🟩 | |
| 1029. | 2015-09-25 - Ozekhome, Ilugbekhai - Supreme Court Order (X) | 🟩 | |
| 1030. | 2015-09-25 - Anyiam, Christian - Supreme Court Order (X) | 🟩 | |
| 1031. | 2015-09-25 - Ozekhome, Ilugbekhai - Supreme Court Order (X) | 🟩 | |
| 1032. | 2015-10-01 - Genis, Darreyl - Supreme Court Order (X) | 🟩 | 🟥 |
| 1033. | 2015-10-19 - Boles, James - Supreme Court Order (X) | 🟩 | |
| 1034. | 2015-10-20 - Guillory, Marc - Supreme Court Order (X) | 🟩 | |
| 1035. | 2015-10-21 - Natanzi, Omid - Supreme Court Order (X) | 🟩 | 🟥 |
| 1036. | 2015-10-28 - Atkin, Jerome William - Supreme Court Order (15Q106l9) | 🟩 | |
| 1037. | 2015-10-28 - Beeler, Gary Brett - Supreme Court Order (15Q10640) | 🟩 | |
| 1038. | 2015-10-28 - Bolanos, Aldon - Supreme Court Order (X) | 🟩 | 🟥 |
| 1039. | 2015-10-28 - Friedman, Nathaniel - Supreme Court Order (X) | 🟩 | 🟥 |
| 1040. | 2015-10-28 - Groves, Michael King - Supreme Court Order (15Q11494) | 🟩 | |
| 1041. | 2015-10-28 - Hernandez, Fernando V. - Supreme Court Order (15Q11117) | 🟩 | |

**Ex. 14:27**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1042. | 2015-11-08 - Leo, Jeffrey Hans - Supreme Court Order (15015941) | | |
| 1043. | 2015-11-08 - Na, Sheen Myong - Supreme Court Order (15015994) | | |
| 1044. | 2015-11-08 - Navarrete, Jorge - Supreme Court Order (15015949) | | |
| 1045. | 2015-11-10 - Dickstein, Jeffrey - Supreme Court Order (X) | | |
| 1046. | 2015-11-18 - Haddix, Kenneth - Supreme Court Order (X) | | |
| 1047. | 2015-12-16 - Heller, Lyndsey Michelle - Supreme Court Order (15PM13165) | | |
| | **2016\*** | | |
| 1048. | 2016-01-07 - Malpass, Theodore - Supreme Court Order (X) | | |
| 1049. | 2016-01-07 - Kun, Albert - Supreme Court Order (X) | | |
| 1050. | 2016-01-07 - Li, James - Supreme Court Order (X) | | |
| 1051. | 2016-01-20 - Haycock, Don - Supreme Court Order (X) | | |
| 1052. | 2016-01-26 - Fergus, Donald Edward Jr. - Supreme Court Order (15Q12836) | | |
| 1053. | 2016-02-04 - Marman, Joseph Henry - Supreme Court Order (10C08329) | | |
| 1054. | 2016-02-17 - Sekhon, Jagdip - Supreme Court Order (06C14843) | | |
| 1055. | 2016-02-17 - Smith, Phillip - Supreme Court Order (X) | | |
| 1056. | 2016-02-17 - Dickson, Lorraine - Supreme Court Order (X) | | |
| 1057. | 2016-02-19 - Sobus, RandallJohn - Supreme Court Order (15Q12026) | | |
| 1058. | 2016-02-24 - Marman, Joseph - Supreme Court Order (X) | | |
| 1059. | 2016-03-16 - Emerich, Melvin - Supreme Court Order (X) | | |
| 1060. | 2016-03-17 - Sekhon, Jagprit Singh - Supreme Court Order (06C14827) | | |
| 1061. | 2016-03-30 - Ostrove, Kenneth Edward - Supreme Court Order (15PM15232) | | |
| 1062. | 2016-01-13 - Graham, Albert - Supreme Court Order (X) | | |
| 1063. | 2016-04-27 - Davis, Gerald - Supreme Court Order (X) | | |
| 1064. | 2016-04-27 - Eldridge, Deborah Ann - Supreme Court Order (06013222) | | |
| 1065. | 2016-04-27 - Greenfield, Bruce Martin - Supreme Court Order (08O10074) | | |
| 1066. | 2016-04-28 - Marchiondo, Philip - Supreme Court Order (X) | | |
| 1067. | 2016-04-28 - Lopez, Anthony - Supreme Court Order (X) | | |
| 1068. | 2016-04-29 - Dryovage, Mary - Supreme Court Order (X) | | |
| 1069. | 2016-05-18 - Gustin, Dale - Supreme Court Order (X) | | |
| 1070. | 2016-05-18 - Palmer, Joseph - Supreme Court Order (X) | | |
| 1071. | 2016-05-18 - Sinton, Starr Jan - Supreme Court Order (l5Q15087) | | |
| 1072. | 2016-05-18 - Sloane, David Michael - Supreme Court Order (15015086) | | |
| 1073. | 2016-05-25 - Kinney, Charles - Supreme Court Order (X) | | |
| 1074. | 2016-06-02 - Beiser, Ryan Eric - Supreme Court Order (15C11637) (Supp.) | | |
| 1075. | 2016-06-03 - Biasella, Joseph Michael Jr. - Supreme Court Order (1SQ15303) | | |
| 1076. | 2016-06-08 - Engel, Julius - Supreme Court Order (X) | | |
| 1077. | 2016-06-08 - Stone, Michael - Supreme Court Order (X) | | |
| 1078. | 2016-06-15 - Wiesenthal, Mark Alan - Supreme Court Order (15014471) | | |
| 1079. | 2016-06-21 - Droegemueller, Beryl Dean - Supreme Court Order (16PM10320) | | |
| 1080. | 2016-07-01 - Peckenpaugh, Thomas D. - Supreme Court Order (15014375) | | |
| 1081. | 2016-07-08 - Harvey, Gerard Brennan - Supreme Court Order (16PM10389) | | |
| 1082. | 2016-07-15 - Ma, Lawrence Tang - Supreme Court Order (16N10332) | | |

**Ex. 14:28**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1083. | 2016-07-19 - Warner, David Lawrence - Supreme Court Order (15014382) | X | |
| 1084. | 2016-07-20 - Elstead, John - Supreme Court Order (X) | X | X |
| 1085. | 2016-07-29 - Coombs, Richard - Supreme Court Order (X) | X | |
| 1086. | 2016-08-17 - Taylor, Johnnie - Supreme Court Order (X) | X | X |
| 1087. | 2016-08-04 - Mello, Elizabeth Ann - Supreme Court Order (16011084) | X | |
| 1088. | 2016-08-04 - Quann, Warren ·Wendell - Supreme Court Order (15013585) | X | |
| 1089. | 2016-08-24 - Crawford, Douglas - Supreme Court Order (X) | X | X |
| 1090. | 2016-08-31 - Carver, Michael - Supreme Court Order (X) | X | X |
| 1091. | 2016-09-15 - Gross, Lee Alan - Supreme Court Order (15014084) | X | |
| 1092. | 2016-09-15 - Negron, Alan Douglas - Supreme Court Order (15013478) | X | |
| 1093. | 2016-09-21 - DeClue, Joseph - Supreme Court Order (X) | X | |
| 1094. | 2016-10-12 - Jorgensen, Barry - Supreme Court Order (X) | X | X |
| 1095. | 2016-10-19 - Greenberg, Mark David - Supreme Court Order (15014225) | X | |
| 1096. | 2016-10-19 - Mor, Ronny - Supreme Court Order (16PM13899) | X | |
| 1097. | 2016-10-21 - Sims, Herchel McCoy- Supreme Court Order (15014260) | X | |
| 1098. | 2016-10-21 - Sweet, Phillips Ranta - Supreme Court Order (15014406) | X | |
| 1099. | 2016-10-26 - Chang, Qin - Supreme Court Order (X) | X | X |
| 1100. | 2016-10-31 - Carruthers, Christopher Wayne - Supreme Court Order (15Q13711) | X | |
| 1101. | 2016-11-04 - Dongell, Richard - Supreme Court Order (X) | X | |
| 1102. | 2016-11-09 - Saldana, Victor - Supreme Court Order (16PM14952) | X | |
| 1103. | 2016-11-29 - Hubbard, Lynn - Supreme Court Order (X) | X | |
| 1104. | 2016-12-02 - Dickson, Roy - Supreme Court Order (X) | X | X |
| 1105. | 2016-12-07 - Shoemaker, Douglas Robert - Supreme Court Order (15014304) | X | |
| 1106. | 2016-12-07 - Taylor, Kevin Renard - Supreme Court Order (16011815) | X | |
| 1107. | 2016-12-07 - Wright, Michael Vance - Supreme Court Order (15014136) | X | |
| 1108. | 2016-12-15 - Lewis, Louise A. - Supreme Court Order (15015209) | X | |
| | **2017\*** | | |
| 1109. | 2017-01-05 - Dupree, Charles Leroy IV - Supreme Court Order (16PMl6372) | X | |
| 1110. | 2017-01-05 - Emory Luther King - Supreme Court Order (15013778) | X | |
| 1111. | 2017-01-05 - Hansen, Kimberly - Supreme Court Order (X) | X | |
| 1112. | 2017-01-30 - Sobus, Richard Lee - Supreme Court Order (1,6010873) | X | |
| 1113. | 2017-01-30 - Gribben, Steven Michael - Supreme Court Order (15015643) | X | |
| 1114. | 2017-01-30 - Hoomiratana, Art - Supreme Court Order (15013476) | X | |
| 1115. | 2017-01-30 - Sarro, James Victor - Supreme Court Order (16014663) | X | |
| 1116. | 2017-01-30 - Seeley, David Andrew - Supreme Court Order (15015177) | X | |
| 1117. | 2017-02-10 - Acosta, William Andrai - Supreme Court Order (16C13196; 16C13197) | X | |
| 1118. | 2017-02-10 - Prevost, Mary - Supreme Court Order (X) | X | |
| 1119. | 2017-02-10 - Reid, Mary Catherine - Supreme Court Order (15014408) | X | |
| 1120. | 2017-02-15 - Engel, Julius - Supreme Court Order (X) | X | X |
| 1121. | 2017-02-15 - Mason, Reginald - Supreme Court Order (X) | X | X |

Ex. 14:29

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1122. | 2017-03-01 - Chase, Alexander - Supreme Court Order (15014896) | | |
| 1123. | 2017-03-01 - Fazli, Katayoun T. - Supreme Court Order (15014014) | | |
| 1124. | 2017-03-01 - Galindo, Stephen Edward - Supreme Court Order (15013901) | | |
| 1125. | 2017-03-01 - Josserand, Peter XIII - Supreme Court Order (16C12700) | | |
| 1126. | 2017-03-01 - Murray, Robert - Supreme Court Order (X) | | |
| 1127. | 2017-03-01 - Robertson, Wade Anthony - Supreme Court Order (09O19259) | | |
| 1128. | 2017-03-01 - Sheer, Marilyn - Supreme Court Order (X) | | |
| 1129. | 2017-03-01 - Swihart, Thomas Melvin - Supreme Court Order (16N10317) | | |
| 1130. | 2017-03-07 - Park, Ellis - Supreme Court Order (15014369) | | |
| 1131. | 2017-03-10 - Chavez, Fernando - Supreme Court Order (X) | | |
| 1132. | 2017-03-10 - Fletcher, Matthew - Supreme Court Order (X) | | |
| 1133. | 2017-03-01 - Robertson, Wade - Supreme Court Order (X) | | |
| 1134. | 2017-03-10 - Klugman, Steven - Supreme Court Order (X) | | |
| 1135. | 2017-03-16 - Counts, Emahn - Supreme Court Order (15014716) | | |
| 1136. | 2017-03-16 - Counts, Emahn - Supreme Court Order (15014756) | | |
| 1137. | 2017-03-16 - Grossman, Chaka H. - Supreme Court Order (1,6PM16601) | | |
| 1138. | 2017-03-16 - Hollingsworth, David Curtis - Supreme Court Order (16PMl6982) | | |
| 1139. | 2017-03-22 - Sklar, Lori - Supreme Court Order (X) | | |
| 1140. | 2017-03-22 - Ward, William - Supreme Court Order (X) | | |
| 1141. | 2017-03-23 - Cameron, Nicholas - Supreme Court Order (X) | | |
| 1142. | 2017-03-28 - Prichard, Donald Lee - Supreme Court Order (15015746) | | |
| 1143. | 2017-04-12 - Partington, Earle - Supreme Court Order (X) | | |
| 1144. | 2017-04-17 - Buenrostro, Federico Rose - Supreme Court Order (13C11553) | | |
| 1145. | 2017-04-17 - Mehrban, Julie A. - Supreme Court Order (15015190) | | |
| 1146. | 2017-04-17 - Nakawaki, Glenn Kazuo - Supreme Court Order (16012757) | | |
| 1147. | 2017-04-17 - O'Keefe, Sean Enrique - Supreme Court Order (16015410) | | |
| 1148. | 2017-04-17 - Shirer, Rae Diane - Supreme Court Order (15014402) | | |
| 1149. | 2017-04-17 - Yianilos, Karen Kerry - Supreme Court Order (15015797) | | |
| 1150. | 2017-04-19 - Blunt, Laurence Calvin Ill - Supreme Court Order (15015844) | | |
| 1151. | 2017-05-10 - Klugman, Steven - Supreme Court Order (X) | | |
| 1152. | 2017-05-17 - Barry, Patricia - Supreme Court Order (X) | | |
| 1153. | 2017-05-17 - Schooler, Jane - Supreme Court Order (X) | | |
| 1154. | 2017-05-23 - Navarette, Victor Manuel - Supreme Court Order (15014725) | | |
| 1155. | 2017-06-02 - Zorr, Barbara Truman - Supreme Court Order (15014301) | | |
| 1156. | 2017-06-06 - Arens, Lauren M. - Supreme Court Order (15014244) | | |
| 1157. | 2017-06-06 - Huffman, Richard - Supreme Court Order (15014763) | | |
| 1158. | 2017-06-09 - Meyer, David Q. - Supreme Court Order (15015106) | | |
| 1159. | 2017-06-12 - Smith, Hayden Gifford - Supreme Court Order (16H16297; 16013081) | | |
| 1160. | 2017-06-13 - Liu, Raymond Chun-i - Supreme Court Order (15015025) | | |
| 1161. | 2017-06-13 - Oberding, Juliet Monique - Supreme Court Order (17001375) | | |
| 1162. | 2017-06-14 - Engel, Julius - Supreme Court Order (X) | | |

**Ex. 14:30**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1163. | 2017-06-23 - Amponsah, Leslie Victor - Supreme Court Order (16014533) | | |
| 1164. | 2017-06-23 - Bristow, Teresa Faye - Supreme Court Order (150142,64) | | |
| 1165. | 2017-06-23 - Coats, Richard Dennis - Supreme Court Order (1601,6422) | | |
| 1166. | 2017-06-23 - Droegemueller, Beryl Dean - Supreme Court Order (16N16784) | | |
| 1167. | 2017-06-23 - Goolsby, Michael Lee - Supreme Court Order (15014340) | | |
| 1168. | 2017-06-23 - Hilland, Donald Arthur - Supreme Court Order (15015855) | | |
| 1169. | 2017-06-23 - Hoffman, Peter Miles - Supreme Court Order (16011779) | | |
| 1170. | 2017-06-23 - Morrison, Geoffrey Carl - Supreme Court Order (16N11047) | | |
| 1171. | 2017-06-23 - Portales, Alejandro - Supreme Court Order (15015794) | | |
| 1172. | 2017-06-23 - Russell, Thomas Osmonde Ill - Supreme Court Order (15014576) | | |
| 1173. | 2017-06-23 - Shankin-Murphy, Hilary Gail - Supreme Court Order (16012986) | | |
| 1174. | 2017-06-23 - Simonian, Mark Sitrak - Supreme Court Order (15014305) | | |
| 1175. | 2017-06-23 - Williams, Mark Henry- Supreme Court Order (16N15063) | | |
| 1176. | 2017-06-26 - Deutch, Roni Lynn - Supreme Court Order (16012282) | | |
| 1177. | 2017-06-26 - Hancock, David Alan - Supreme Court Order (16010803) | | |
| 1178. | 2017-06-26 - Hasan, Shameen - Supreme Court Order (X) | | |
| 1179. | 2017-06-26 - McVay, Donald William - Supreme Court Order (16O10178) | | |
| 1180. | 2017-06-26 - Padilla, Eusevio - Supreme Court Order (15015089) | | |
| 1181. | 2017-07-13 - Nia, Tina - Supreme Court Order (X) | | |
| 1182. | 2017-07-13 - Akhkashian, Khachik - Supreme Court Order (15014487) | | |
| 1183. | 2017-07-13 - Beckker, Bernard - Supreme Court Order (15014452) | | |
| 1184. | 2017-07-13 - Chesbro, Eve Susan - Supreme Court Order (16016444) | | |
| 1185. | 2017-07-13 - Johnson, Kelly Scott - Supreme Court Order (16N12537; 16013434) | | |
| 1186. | 2017-07-13 - Laoteppitaks, Theera - Supreme Court Order (16010126) | | |
| 1187. | 2017-07-13 - Mettias, Jimmy Philip - Supreme Court Order (15013592) | | |
| 1188. | 2017-07-15 - Pricola, Debra Rawls - Supreme Court Order (15014466) | | |
| 1189. | 2017-07-31 - Etmekjian, Garbis Dickran N. - Supreme Court Order (16011270) | | |
| 1190. | 2017-07-31 - Lewis, Michael Ross - Supreme Court Order (15014877) | | |
| 1191. | 2017-07-31 - Newcomb, Michael William - Supreme Court Order (1,6011725) | | |
| 1192. | 2017-07-31 - Scully, Steven Michael - Supreme Court Order (15014345) | | |
| 1193. | 2017-07-31 - Younge, Michael Anthony - Supreme Court Order (15015386) | | |
| 1194. | 2017-08-09 - Kun, Albert - Supreme Court Order (X) | | |
| 1195. | 2017-08-09 - Spira, Samuel Robert - Supreme Court Order (17PM02210) | | |
| 1196. | 2017-08-22 - Davis, Erikson McDonnell - 'Supreme Court Order (16013378) | | |
| 1197. | 2017-08-22 - Faler, Matthew Eli - Supreme Court Order (15014703) | | |
| 1198. | 2017-08-22 - Hendrix, Joseph Alan - Supreme Court Order (16012123-) | | |
| 1199. | 2017-08-25 - Reyes, Arturo Jr. - Supreme Court Order (15015697) | | |
| 1200. | 2017-08-30 - Herring, Ann - Supreme Court Order (X) | | |
| 1201. | 2017-09-01 - Anderson, Evan G. - Supreme Court Order (16011116) | | |
| 1202. | 2017-09-01 - Cummings, Steven Randall - Supreme Court Order (16013511) | | |
| 1203. | 2017-09-01 - Hanley, Terri Raynell - Supreme Court Order (15015603) | | |

**Ex. 14:31**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1204. | 2017-09-01 - Heller, Lyndsey Michelle - Supreme Court Order (l6N12105) | | |
| 1205. | 2017-09-01 - Keller, Martin Edgar - Supreme Court Order (16011023) | | |
| 1206. | 2017-09-01 - Kucsan, Brian Joseph - Supreme Court Order (16010988) | | |
| 1207. | 2017-09-01 - Miller, Dane Paul - Supreme Court Order (17PM02071) | | |
| 1208. | 2017-09-03 - Anderson, Ernest Linford - Supreme Court Order (15015803; 15014109) | | |
| 1209. | 2017-09-05 - Bettis, Portia - Supreme Court Order (15014601) | | |
| 1210. | 2017-09-05 - Brooke, Michele Elaine - Supreme Court Order (16014348) | | |
| 1211. | 2017-09-05 - Christenson, John Peter - Supreme Court Order (16010513) | | |
| 1212. | 2017-09-05 - Miller, Raymond - Supreme Court Order (X) | | |
| 1213. | 2017-09-05 - Fletcher, Matthew - Supreme Court Order (X) | | |
| 1214. | 2017-09-05 - Rozwood, S. Benjamin - Supreme Court Order (15014467) | | |
| 1215. | 2017-09-05 - Triance, Craig Ronald - Supreme Court Order (16014637) | | |
| 1216. | 2017-09-07 - DiPrete, Roberta Ann - Supreme Court Order (15015269) | | |
| 1217. | 2017-09-19 - Mor, Ronny - Supreme Court Order (15015566) | | |
| 1218. | 2017-09-28 - Chapman, Carl Edward - Supreme Court Order (17C01411) | | |
| 1219. | 2017-09-28 - Edwards, John - Supreme Court Order (15013756) | | |
| 1220. | 2017-09-28 - Helton, Victoria Margaret - Supreme Court Order (16012495) | | |
| 1221. | 2017-09-28 - Keefe, Kathleen Marion - Supreme Court Order (16012484) | | |
| 1222. | 2017-09-28 - lamb, David Dale - Supreme Court Order (16(16512) | | |
| 1223. | 2017-09-28 - Negron, Alan Douglas - Supreme Court Order (17N00628) | | |
| 1224. | 2017-09-28 - Quann, Warren Wendell - Supreme Court Order (16C10399) | | |
| 1225. | 2017-09-28 - Schuster, Clifford Nelson - Supreme Court Order (17PM02211) | | |
| 1226. | 2017-09-28 - Wolf, Richard Alan - Supreme Court Order (17C01527) | | |
| 1227. | 2017-09-29 - Halpine-Berger, Chelsea - Supreme Court Order (16C12496; 16C12628) | | |
| 1228. | 2017-10-02 - Noble, William Hardy - Supreme Court Order (15014391) | | |
| 1229. | 2017-10-02 - Traeg, Alice Brown - Supreme Court Order (16016952) | | |
| 1230. | 2017-10-04 - Durst, Lee Humphrey- Supreme Court Order (16N17689) | | |
| 1231. | 2017-10-04 - Vallejos, William Arthur - Supreme Court Order (17N00172) | | |
| 1232. | 2017-10-12 - Chang, Gene W. - Supreme Court Order (16O14103) | | |
| 1233. | 2017-10-12 - Mangum, Jacqueline A. - Supreme Court Order (16O12117) | | |
| 1234. | 2017-10-12 - Marman, Joseph Henry - Supreme Court Order (16N15019) | | |
| 1235. | 2017-10-12 - Quackenbush, Gary Allen - Supreme Court Order (16010738) | | |
| 1236. | 2017-10-12 - Tran, Vi Katerina - Supreme Court Order (16012809) | | |
| 1237. | 2017-10-12 - Wiseblood, David Marvin - Supreme Court Order (16010032) | | |
| 1238. | 2017-10-18 - Bolanos, Alden - Supreme Court Order (X) | | |
| 1239. | 2017-10-18 - Lewis, Michael - Supreme Court Order (17002523) | | |
| 1240. | 2017-10-23 - Salomon, Robert - Supreme Court Order (17002374) | | |
| 1241. | 2017-10-30 - Bove, Kevin Alan - Supreme Court Order (16010953) | | |
| 1242. | 2017-10-30 - Coombs, Richard Edward - Supreme Court Order (17Q00285) | | |
| 1243. | 2017-10-30 - Dowling, James Bernard - Supreme Court Order (17002310) | | |

**Ex. 14:32**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|:---:|:---:|
| 1244. | 2017-10-30 - Givens, Dermot Damian - Supreme Court Order (16012641) | 🟩 | |
| 1245. | 2017-10-30 - Tamases, Peter Joseph - Supreme Court Order (16Q14821) | 🟩 | |
| 1246. | 2017-11-02 - Gerges, Motaz M. - Supreme Court Order (16013269) | 🟩 | |
| 1247. | 2017-11-02 - Ohanian, Shant - Supreme Court Order (16012139) | 🟩 | |
| 1248. | 2017-11-03 - Hanan, Joseph Frieden - Supreme Court Order (l6N15572) | 🟩 | |
| 1249. | 2017-11-03 - Szalonek, Kenneth William - Supreme Court Order (15015835; 16010596) | 🟩 | |
| 1250. | 2017-11-08- Grehl, Michael Todd - Supreme Court Order (16C12113) | 🟩 | |
| 1251. | 2017-11-08 - Leo, Jeffrey Hans - Supreme Court Order (15016043) | 🟩 | |
| 1252. | 2017-11-08 - Schreiber, Kenneth Leon - Supreme Court Order (15015840) | 🟩 | |
| 1253. | 2017-11-15 - Brandt, Benjamin - Supreme Court Order (X) | 🟩 | 🟥 |
| 1254. | 2017-11-29 - Genis, Darryl - Supreme Court Order (X) | 🟩 | 🟥 |
| 1255. | 2017-11-30 - Bruce, Daniel Americo - Supreme Court Order (16010921) | 🟩 | |
| 1256. | 2017-11-30 - Higgins, Gail Judith - Supreme Court Order (16015074) | 🟩 | |
| 1257. | 2017-11-30 - Kagianaris, Alexandros - Supreme Court Order (16017637) | 🟩 | |
| 1258. | 2017-11-30 - Stringer, Zollie S.S. Ill - Supreme Court Order (15014509) | 🟩 | |
| 1259. | 2017-12-04 - Kop, Steven Karlton Wen-Hao - Supreme Court Order (16015704) | 🟩 | |
| 1260. | 2017-12-07 - Davis, Erikson McDonnell - Supreme Court Order (15014599) | 🟩 | |
| 1261. | 2017-12-12 - Swanson, Julia Susanna - Supreme Court Order (15015171) | 🟩 | |
| 1262. | 2017-12-13 - Albert, Lenore - Supreme Court Order (X) | 🟩 | 🟥 |
| 1263. | 2017-12-13 - Goseco, Frank Edward - Supreme Court Order (17PM04034) | 🟩 | |
| 1264. | 2017-12-13 - Halvonik, Megan Martin - Supreme Court Order (16012284) | 🟩 | |
| 1265. | 2017-12-13 - Nguyen, Yen Hoang Thi - Supreme Court Order (16014395) | 🟩 | |
| 1266. | 2017-12-13 - Pacheco, Lauro Nick Jr. - Supreme Court Order (16011838) | 🟩 | |
| 1267. | 2017-12-13 - Prevost, Mary Frances - Supreme Court Order (15014453) | 🟩 | |
| 1268. | 2017-12-20 - Eldridge, Deborah - Supreme Court Order (X) | 🟩 | 🟥 |
| 1269. | 2017-12-29 - Amirian, Kenneth Asher - Supreme Court Order (16012453) | 🟩 | |
| 1270. | 2017-12-29 - Ekstrand, Roy A. - Supreme Court Order (16J15840) | 🟩 | |
| 1271. | 2017-12-29 - Falah, Mona - Supreme Court Order (16010349) | 🟩 | |
| 1272. | 2017-12-29 - Flor, Francesca Angela - Supreme Court Order (15O14252) | 🟩 | |
| 1273. | 2017-12-29 - Luna, David Andrew - Supreme Court Order (17003659) | 🟩 | |
| 1274. | 2017-12-29 - McDonald, Amy Lauren - Supreme Court Order (16011709) | 🟩 | |
| 1275. | 2017-12-29 - Nash, Larry lee - Supreme Court Order (16015241) | 🟩 | |
| 1276. | 2017-12-29 - Shoemaker, Douglas Robert - Supreme Court Order (17PM04290) | 🟩 | |
| | **2018*** | | |
| 1277. | 2018-01-05 - Valencia, Mario Gilberto - Supreme Court Order (15015736) | 🟩 | |
| 1278. | 2018-01-08 - Campbell, Robert Glenn V. - Supreme Court Order (15013606) | 🟩 | |
| 1279. | 2018-01-08 - Eom, John - Supreme Court Order (16014638) | 🟩 | |
| 1280. | 2018-01-08 - Quadra, Jamie Edwards - Supreme Court Order (16011201) | 🟩 | |
| 1281. | 2018-01-08 - Wilheim, Steven C. - Supreme Court Order (16017033) | 🟩 | |

Ex. 14:33

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1282. | 2018-01-08 - Dunn, Reginald Arthur - Supreme Court Order (15015749) | | |
| 1283. | 2018-01-16 - Salmonsen, Eugene Roy Jr. - Supreme Court Order (15014284) | | |
| 1284. | 2018-01-17 - Butler, Brendt Curtis - Supreme Court Order (15014678) | | |
| 1285. | 2018-01-17 - Dzialo, John Thomas - Supreme Court Order (15015474) | | |
| 1286. | 2018-01-17 - Faulk, Ronald Edward - Supreme Court Order (16010248) | | |
| 1287. | 2018-01-18 - Rivas, Steven Christopher - Supreme Court Order (15013859) | | |
| 1288. | 2018-01-29 - O-Keefe, Christopher James - Supreme Court Order (15014409) | | |
| 1289. | 2018-01-31 - Van Dusen, Jan - Supreme Court Order (X) | | 🟥 |
| 1290. | 2018-02-01 - Marquez, Ronald Tan - Supreme Court Order (15015845) | | |
| 1291. | 2018-02-05 - Broiles, Gregory Andrew - Supreme Court Order (16011170) | | |
| 1292. | 2018-02-14 - Labbad, Abraham Antoine - Supreme Court Order (16017022) | | |
| 1293. | 2018-02-14 - VanderSchuit, Kent - Supreme Court Order (17H00689) | | |
| 1294. | 2018-02-27 - Eilenberg, Benjamin A. - Supreme Court Order (16016470) | | |
| 1295. | 2018-02-27 - Galland, Scott Anthony - Supreme Court Order (18011606) | | |
| 1296. | 2018-03-01 - Allen, Joseph Dulles - Supreme Court Order (17000400; 17N00761) | | |
| 1297. | 2018-03-01 - Caldwell, Karen Lee - Supreme Court Order (16013701) | | |
| 1298. | 2018-03-01 - Causey, Ingrid Marie - Supreme Court Order (16017849) | | |
| 1299. | 2018-03-01 - Kirkham, Dan Romaine - Supreme Court Order (17C01261) | | |
| 1300. | 2018-03-01 - Lee, Keon Joong - Supreme Court Order (16014867) | | |
| 1301. | 2018-03-01 - Lewis, Louise A. - Supreme Court Order (17 | | |
| 1302. | 2018-03-01 - Peterson, Mark Allen - Supreme Court Order (17C03534) | | |
| 1303. | 2018-03-01 - Phelps, Joshua Lee - Supreme Court Order (17C00288) | | |
| 1304. | 2018-03-01 - Zelig, Steven - Supreme Court Order (17C01652) | | |
| 1305. | 2018-03-14 - Ahlers, Steven M. - Supreme Court Order (17H02177) | | |
| 1306. | 2018-03-14 - Contreras, Anthony E. - Supreme Court Order (16016748) | | |
| 1307. | 2018-03-14 - Gomes, Timothy Elwood - Supreme Court Order (16014329) | | |
| 1308. | 2018-03-20 - Shirer, Rae Diane - Supreme Court Order (17001372) | | |
| 1309. | 2018-03-21 - Kaighn, Gregory - Supreme Court Order (X) | | 🟥 |
| 1310. | 2018-03-27 - Achord, David Thaddeus - Supreme Court Order (17(02392) | | |
| 1311. | 2018-03-27 - Shellabarger, John Francis - Supreme Court Order (17001373) | | |
| 1312. | 2018-03-27 - Tavlor. Kevin Renard - Supreme Court Order (17N01608) | | |
| 1313. | 2018-03-27 - Wood, Robert Lee - Supreme Court Order (17H02843) | | |
| 1314. | 2018-04-06 - Cohen, Herman Jason - Supreme Court Order (17PM07095) | | |
| 1315. | 2018-04-06 - Graziani, David Gregory-Supreme Court Order (16017719) | | |
| 1316. | 2018-04-06 - Hembrow, Sarah - Supreme Court Order (17N01887) | | |
| 1317. | 2018-04-09 - Newcomb, Michael William - Supreme Court Order (16017468) | | |
| 1318. | 2018-04-13 - Pyfrom, Gregory Coe - Supreme Court Order (15015820) | | |
| 1319. | 2018-04-18 - Dorman, Gabriel Eric - Supreme Court Order (16012104) | | |
| 1320. | 2018-04-18 - Escano, Jose - Supreme Court Order (17003857) | | |
| 1321. | 2018-04-18 - Ritter, Audrey Marie - Supreme Court Order (16017395) | | |
| 1322. | 2018-05-09 - Cole, Bruce - Supreme Court Order (X) | | 🟥 |

**Ex. 14:34**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1323. | 2018-05-02 - Gentino, Robert E. - Supreme Court Order (15013-576) | | |
| 1324. | 2018-05-02 - Kim, EstherM. - Supreme Court Order (16014992) | | |
| 1325. | 2018-05-02 - Gentino, Robert - Supreme Court Order (X) | | |
| 1326. | 2018-05-02 - Kim, Esther M. - Supreme Court Order (16014992) | | |
| 1327. | 2018-05-10 - Cornelius, Byron Grant - Supr,eme Court Order (17000479; 17002544) | | |
| 1328. | 2018-05-10 - Livingston, David Michael - Supreme Court Order (17C02284) | | |
| 1329. | 2018-05-10 - McKinley, Haris Kyle - Supreme Court Order (17(00966) | | |
| 1330. | 2018-05-10 - Neufeld, Daniel Herbert - Supreme Court Order (16013333) | | |
| 1331. | 2018-05-10 - Smedley, Barbara - Supreme Court Order (16011053) | | |
| 1332. | 2018-05-10 - Stepanyan, Izabella - Supreme Court Order (17003730) | | |
| 1333. | 2018-05-10 - Virk, Navinder - Supreme Court Order (17001676) | | |
| 1334. | 2018-05-10 - Vokshori, Nima Stephen - Supreme Court Order (16017720) | | |
| 1335. | 2018-05-15 - Runkle, Michael Joseph - Supreme Court Order (17C03116) | | |
| 1336. | 2018-05-21 - Cornelius, Byron - Supreme Court Order (Supp.) (17000479) | | |
| 1337. | 2018-05-31 - Chaves, Eric Joseph - Supreme Court Order (17C03017) | | |
| 1338. | 2018-05-31 - Knight, Raaqim A.S. - Supreme Court Order {16N15785) | | |
| 1339. | 2018-05-31 - Wahl, Maureen - Supreme Court Order (17000987; 17001642) | | |
| 1340. | 2018-06-13 - Braun, Dennis Earl - Supreme Court Order (18PMl08l0) | | |
| 1341. | 2018-06-21 - Bassis, Lisa Michelle - Supreme Court Order (16012056) | | |
| 1342. | 2018-06-21 - Dupree IV, Charles Leroy- Supreme Court Order (17N02390) | | |
| 1343. | 2018-06-21 - LeBoeuf, Jacques Bernard - Supreme Court Order (17N00173) | | |
| 1344. | 2018-06-21 - Turley, Paul Raymond - Supreme Court Order (17006932) | | |
| 1345. | 2018-06-21 - Verchick, Stephen Henry - Supreme Court Order (17H03756) | | |
| 1346. | 2018-06-21 - Wood, Frederick James - Supreme Court Order (16013517) | | |
| 1347. | 2018-06-27 - Duvernay, Marc Steven - Supreme Court Order (17C05303) | | |
| 1348. | 2018-06-27 - Peters, Jordan - Supreme Court Order (X) | | |
| 1349. | 2018-06-30 - Mello, Elizabeth - Supreme Court Order (17003119) | | |
| 1350. | 2018-07-23 - Kelly, Michael - Supreme Court Order (17003794) | | |
| 1351. | 2018-07-16 - Angulo, George - Supreme Court Order (16C12593) | | |
| 1352. | 2018-07-16 - Nakawaki, Glenn - Supreme Court Order (17N05791) | | |
| 1353. | 2018-07-23 - Aguilar, Benjamin - Supreme Court Order (16016381) | | |
| 1354. | 2018-07-23 - Chase, Alexander - Supreme Court Order (17Q06056) | | |
| 1355. | 2018-07-23 - Egli, David Thomson - Supreme Court Order (17001390) | | |
| 1356. | 2018-07-23 - Kelly, Michael Joel - Supreme Court Order (17003794) | | |
| 1357. | 2018-07-23 - King, Peter D. - Supreme Court Order (16C11128) | | |
| 1358. | 2018-07-23 - Kroetch, James Edward - Supreme Court Order (16C14253) | | |
| 1359. | 2018-07-23 - Mas, Gloria Maria - Supreme Court Order (17Q07538) | | |
| 1360. | 2018-07-23 - Nguyen, Mary Xinh - Supreme Court Order (16017175) | | |
| 1361. | 2018-07-23 - Vargas, Brenda Elizabeth - Supreme Court Order (16010488) | | |
| 1362. | 2018-07-27 - Casale, Gerard Nicholas Jr. - Supreme Court Order (17C01157) | | |
| 1363. | 2018-07-30 - Kitay, Robert - Supreme Court Order (X) | | |

**Ex. 14:35**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1364. | 2018-07-30 - Collins, Joseph - Supreme Court Order (X) | | |
| 1365. | 2018-07-23 - Kelly, Michael Joel - Supreme Court Order (17003794) | | |
| 1366. | 2018-07-23 - King, Peter D. - Supreme Court Order (16C11128) | | |
| 1367. | 2018-07-23 - Kroetch, James Edward - Supreme Court Order (16C14253) | | |
| 1368. | 2018-07-23 - Mas, Gloria Maria - Supreme Court Order (17Q07538) | | |
| 1369. | 2018-07-23 - Nguyen, Mary Xinh - Supreme Court Order (16017175) | | |
| 1370. | 2018-07-23 - Vargas, Brenda Elizabeth - Supreme Court Order (16010488) | | |
| 1371. | 2018-07-27 - Casale, Gerard Nicholas Jr. - Supreme Court Order (17(01157) | | |
| 1372. | 2018-07-30 - Collins, Joseph Patrick - Supreme Court Order (16010339) | | |
| 1373. | 2018-07-30 - Fitzgerald, Kathleen - Supreme Court Order (16016571) | | |
| 1374. | 2018-07-30 - Frisch, Floyd Charles - Supreme Court Order (18Q10154) | | |
| 1375. | 2018-07-30 - Hughes, David Allen - Supreme Court Order (16017596) | | |
| 1376. | 2018-07-30 - Lacy, DeWitt Marcellus - Supreme Court Order (15015213) | | |
| 1377. | 2018-07-30 - Li, James Hsiaosheng - Supreme Court Order (16N12766) | | |
| 1378. | 2018-07-30 - Mello, Elizabeth Ann - Supreme Court Order (17003119) | | |
| 1379. | 2018-07-30 - Mor, Ronny- Supreme Court Order (17N00929) | | |
| 1380. | 2018-07-30 - Mugridge, David Raymond - Supreme Court Order (17005687) | | |
| 1381. | 2018-07-30 - Norris, John Frederick - Supreme Court Order (16017486) | | |
| 1382. | 2018-07-30 - Sizemore, Patrick Arthur - Supreme Court Order (15015715) | | |
| 1383. | 2018-07-30 - St. Pierre, Derek William - Supreme Court Order (16O14788) | | |
| 1384. | 2018-08-03 - Shafer, David - Supreme Court Order (X) | | |
| 1385. | 2018-08-10 - Castro, Elisa Ann - Supreme Court Order (17000754) | | |
| 1386. | 2018-08-10 - Harris, LaShon - Supreme Court Order (17C03168) | | |
| 1387. | 2018-08-10 - Pacheco, Lauro Nick Jr. - Supreme Court Order (16017420) | | |
| 1388. | 2018-08-10 - Petroff, Allen M. - Supreme Court Order (17000648; 17002270) | | |
| 1389. | 2018-08-10 - Virga, Philip Thomas - Supreme Court Order (17J04122) | | |
| 1390. | 2018-08-10 - Tanden, Raj - Supreme Court Order (X) | | |
| 1391. | 2018-08-27 - Simonian, Jeffrey David - Supreme Court Order (16017350) | | |
| 1392. | 2018-08-29 - Weitz, Andrew Mark - Supreme Court Order (14O05994) | | (red) |
| 1393. | 2018-09-07 - Kent, Clayton William - Supreme Court Order (15013787) | | |
| 1394. | 2018-09-19 - Cody, John - Supreme Court Order (X) | | (red) |
| 1395. | 2018-09-26 - Stoller, Michael - Supreme Court Order (X) | | (red) |
| 1396. | 2018-09-27 - Brace. Danny Duane Jr. - Supreme Court Order (15015110) | | |
| 1397. | 2018-09-27 - Bristow, Teresa Faye - Supreme Court Order (17006952) | | |
| 1398. | 2018-09-27 - Craven, Dax Yeophantong - Supreme Court Order (16010291) | | |
| 1399. | 2018-09-27 - Durbrow, Robert Terrill Jr. - Supreme Court Order (17004931) | | |
| 1400. | 2018-09-27 - Hollingsworth, David Curtis - Supreme Court Order (17N03660) | | |
| 1401. | 2018-09-27 - Jacobson, Paul Stephen - Supreme Court Order (17000185) | | |
| 1402. | 2018-09-27 - Khishaveh, Klayton - Supreme Court Order (16011205) | | |
| 1403. | 2018-09-27 - Kitay, Robert Norik - Supreme Court Order (16013940) | | |
| 1404. | 2018-09-27 - Brace. Danny Duane Jr. - Supreme Court Order (15015110) | | |
| 1405. | 2018-09-27 - Craven, Dax Yeophantong - Supreme Court Order (16010291) | | |

**Ex. 14:36**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1406. | 2018-09-27 - Durbrow, Robert Terrill Jr. - Supreme Court Order (17004931) | | |
| 1407. | 2018-09-27 - Hollingsworth, David Curtis - Supreme Court Order (17N03660) | | |
| 1408. | 2018-09-27 - Jacobson, Paul Stephen - Supreme Court Order (17000185) | | |
| 1409. | 2018-09-27 - Khishaveh, Klayton - Supreme Court Order (X) | | |
| 1410. | 2018-09-27 - Kitay, Robert Norik - Supreme Court Order (16013940) | | |
| 1411. | 2018-09-27 - Lewiston, Jeffrey - Supreme Court Order (X) | | |
| 1412. | 2018-09-27 - Lorenzo, Judy Ann - Supreme Court Order (16014659) | | |
| 1413. | 2018-09-27 - McCabe, Noelle Lynn - Supreme Court Order (17000231) | | |
| 1414. | 2018-09-27 - Mettias, Jimmy Philip - Supreme Court Order (17001718) | | |
| 1415. | 2018-09-27 - Perez, Enid - Supreme Court Order (16C16226) | | |
| 1416. | 2018-09-27 - Peterson, Michael David - Supreme Court Order (17C00186) | | |
| 1417. | 2018-09-27 - Reiland, William L. - Supreme Court Order (17007149; 17007669) | | |
| 1418. | 2018-09-27 - Richard, Joel - Supreme Court Order (17001945) | | |
| 1419. | 2018-09-27 - Rickert, alter Damian - Supreme Court Order (16010778) | | |
| 1420. | 2018-09-27 - Rose, Ruth Cecilia - Supreme Court Order (17N05451; 17006215) | | |
| 1421. | 2018-09-27 - Singh, Anil Kumar - Supreme Court Order (16012384) | | |
| 1422. | 2018-09-29 - Weitz, Andrew - Supreme Court Order (X) | | |
| 1423. | 2018-09-27 - Singh, Anil Kumar - Supreme Court Order (16012384) | | |
| 1424. | 2018-10-03 - Goldbeck. Susan Mary - Supreme Court Order (18Q11562) | | |
| 1425. | 2018-10-03 - Henriquez, Francis Rosse - Supreme Court Order (17002329) | | |
| 1426. | 2018-10-03 - Rose, Ruth Cecilia - Supreme Court Order (Supp.) (17N05451; 17006215) | | |
| 1427. | 2018-10-03 - Walde, Paul Douglas - Supreme Court Order (15O14148) | | |
| 1428. | 2018-10-13 - Hoomiratana, Art - Supreme Court Order (16015606) | | |
| 1429. | 2018-10-13 - Levinson, Mark Lawrence - Supreme Court Order (17001182) | | |
| 1430. | 2018-10-13 - Wagner, Nathan James - Supreme Court Order (l8Q12972) | | |
| 1431. | 2018-10-18 - Bader, Douglas - Supreme Court Order (17003152) | | |
| 1432. | 2018-10-18 - Castillo, Gabriel Gerardo - Supreme Court Order (16012015) | | |
| 1433. | 2018-10-18 - Farris, Jennifer Marie - Supreme Court Order (16015552) | | |
| 1434. | 2018-10-18 - James, Charnel Jeanne - Supreme Court Order (15015411) | | |
| 1435. | 2018-10-18 - Lewis, Michael Ross - Supreme Court Order (17002523) | | |
| 1436. | 2018-10-18 - Munoz, George Anthony - Supreme Court Order (15014975) | | |
| 1437. | 2018-10-18 - Munson, Craig Eugene - Supreme Court Order (17001114) | | |
| 1438. | 2018-10-18 - Rothman, Jerry D. - Supreme Court Order (17001872) | | |
| 1439. | 2018-10-23 - Camiling, Eric Moises - Supreme Court Order (16013446) | | |
| 1440. | 2018-10-23 - Gieser, Thomas Matthew - Supreme Court Order (16013443) | | |
| 1441. | 2018-10-23 - Gillinger, Hans Albert - Supreme Court Order (l8Q10612) | | |
| 1442. | 2018-10-23 - Griffin, David Ryan - Supreme Court Order (16016190) | | |
| 1443. | 2018-10-23 - Kim, Justin J. - Supreme Court Order (17C02393) | | |
| 1444. | 2018-10-23 - Maack, Jenna M. - Supreme Court Order (16016589) | | |

**Ex. 14:37**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1445. | 2018-10-23 - Salomon, Robert Michael - 'Supreme Court Order (17002374, 18011081) | | |
| 1446. | 2018-10-23 - Wen, Kaine - Supreme Court Order (15015791) | | |
| 1447. | 2018-10-23 - Williams Gelobter, Sharron S. K. - Supreme Court Order (17H06343) | | |
| 1448. | 2018-10-24 - Weiner, Steven - Supreme Court Order (X) | | |
| 1449. | 2018-10-31 - Smith, Mozell Toney- Supreme Court Order (16013108) | | |
| 1450. | 2018-10-31 - Song, Lawrence Jacob - Supreme Court Order (17(04489) | | |
| 1451. | 2018-11-02 - Arredondo, David - Supreme Court Order (17000142; 17002738) | | |
| 1452. | 2018-11-02 - Dragan, Anton Bru - Supreme Court Order (16017418) | | |
| 1453. | 2018-11-02 - Hutchens, David Paul - Supreme Court Order (16017839) | | |
| 1454. | 2018-11-02 - Johansen, Carla Lou - Supreme Court Order (16017692) | | |
| 1455. | 2018-11-02 - Kelly, Keith Alan - Supreme Court Order (16018035) | | |
| 1456. | 2018-11-02 - Kop, Steven Karlton - Supreme Court Order (18N12054) | | |
| 1457. | 2018-11-02 - Miele, Wendy Lynn Robinson - Supreme Court Order (17000983) | | |
| 1458. | 2018-11-02 - Wilson, Blake Edward - Supreme Court Order (17H04123) | | |
| 1459. | 2018-11-14 - Halpine-Berger, Chelsea - Supreme Court Order (18PM14571) | | |
| 1460. | 2018-11-19 - Alo, Marlon Magdadaro - Supreme Court Order (16016898) | | |
| 1461. | 2018-11-19 - Besneatte, Dane Allen - Supreme Court Order (16O11367) | | |
| 1462. | 2018-11-19 - Cambridge, Carl Michael - Supreme Court Order (17001247) | | |
| 1463. | 2018-11-19 - Harrold, Richard Eugene - Supreme Court Order (18PM14631) | | |
| 1464. | 2018-11-19 - Hayward, Scott - Supreme Court Order (17003617) | | |
| 1465. | 2018-11-19 - Ozols, Laura Anita - Supreme Court Order(16O12062) | | |
| 1466. | 2018-11-19 - Schultz, Charles Timothy - Supreme Court Order (16017157) | | |
| 1467. | 2018-11-19 - Suojanen, Wayne William - Supreme Court Order (17O06470) | | |
| 1468. | 2018-11-19 - Triance, Craig Ronald - Supreme Court Order (18PM14569) | | |
| 1469. | 2018-11-19 - Uchiyama, Karen Yoko - Supreme Court Order (16010033) | | |
| 1470. | 2018-11-20 - Golden, Stephen - Supreme Court Order (X) | | |
| 1471. | 2018-11-20 - Sullivan, Richard J. - Supreme Court Order (14O04451;15O11108) | | |
| 1472. | 2018-12-03 - Bardakjian, Nareg Levon - Supreme Court Order (18C13679) | | |
| 1473. | 2018-12-03 - Goseco, Frank Edward - Supreme Court Order (18N12368) | | |
| 1474. | 2018-12-03 - Kleier, Loren Nicholas - Supreme Court Order (16011119) | | |
| 1475. | 2018-12-12 - Kun, Albert Miklos - Supreme Court Order (15O14554) | | |
| 1476. | 2018-12-12 - Sprouls, Frank - Supreme Court Order (X) | | |
| 1477. | 2018-12-19 - Luti, Anthony - Supreme Court Order (X) | | |
| 1478. | 2018-12-20 - Heisey, James Richard - Supreme Court Order (18(11825) | | |
| 1479. | 2018-12-20 - Miller, Jeffrey Anthony - Supreme Court Order (16O16334) | | |
| 1480. | 2018-12-20 - O'Connell, Dennis P.atrick - Supreme Court Order (15013703) | | |
| 1481. | 2018-12-20 - Tackowiak, Bruce Joseph - Supreme Court Order (16016809) | | |
| 1482. | 2018-12-20 - Weisberg, Michael Charles - Supreme Court Order (17006942; 17007315) | | |

**Ex. 14:38**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1483. | 2018-12-26 - Derosa, Roseann - Supreme Court Order (17002628) | | |
| | **2019*** | | |
| 1484. | 2019-01-02 - Nassar, Sandra - Supreme Court Order (X) | | |
| 1485. | 2019-01-04 - Ahlers, Steven M. - Supreme Court Order (18H10648) | | |
| 1486. | 2019-01-04 - Ballard, Sean James - Supreme Court Order (17C07280) | | |
| 1487. | 2019-01-04 - Baumbach, Vickie Marie - Supreme Court Order (17C01577) | | |
| 1488. | 2019-01-04 - Bergren, David Lee - Supreme Court Order (17C01743) | | |
| 1489. | 2019-01-04 - Datta, Gaurav D. - Supreme Court Order (16015393) | | |
| 1490. | 2019-01-04 - Maina, Samuel Patrick Ouya - Supreme Court Order (16016006) | | |
| 1491. | 2019-01-04 - Richards, Leslie - Supreme Court Order (16013437) | | |
| 1492. | 2019-01-04 - Taylor, Paul Nathan - Supreme Court Order (16012838) | | |
| 1493. | 2019-01-25 - Kilstofte, Stephen Robert - Supreme Court Order (16016177) | | |
| 1494. | 2019-01-25 - Mix, Ronald Jack - Supreme Court Order (16C13639) | | |
| 1495. | 2019-01-30 - Robinson, Kurt - Supreme Court Order (X) | | |
| 1496. | 2019-02-01 - Kimmel, Stanley Howard - Supreme Court Order (16012311) | | |
| 1497. | 2019-02-01 - Long, Kevin Gang - Supreme Court Order (17005036) | | |
| 1498. | 2019-02-01 - Raynsford, Rick L. - Supreme Court Order (16011865) | | |
| 1499. | 2019-02-11 - Watkins, Thomas Lee - Supreme Court Order (17005683; 18011056) | | |
| 1500. | 2019-02-27 - Deaguilera, James - Supreme Court Order (X) | | |
| 1501. | 2019-05-06 - Smith, Spencer - Supreme Court Order (X) | | |
| 1502. | 2019-05-16 - Na, Sheen - Supreme Court Order (X) | | |
| 1503. | 2019-07-10 - Fuery, John - Supreme Court Order (X) | | |
| 1504. | 2019-07-10 - Albert, Lenore - Supreme Court Order (X) | | |
| 1505. | 2019-07-11 - Conkle, Christopher - Supreme Court Order (SBC19O30044) | | |
| 1506. | 2019-10-16 - Haddon, Marc - Supreme Court Order (X) | | |
| 1507. | 2019-10-09 - Weiss, Mogeed - Supreme Court Order (X) | | |
| 1508. | 2019-10-30 - Cunningham, Archibald - Supreme Court Order (X) | | |
| 1509. | 2019-10-31 - Amponsah, Leslie - Supreme Court Order (X) | | |
| 1510. | 2019-12-18 - Khaliq, Imran - Supreme Court Order (X) | | |
| | **2020*** | | |
| 1511. | 2020-01-08 - Esposito, Edward Louis - Supreme Court Order (18016416) | | |
| 1512. | 2020-01-20 - Bhardwaj, Sanjay - Supreme Court Order (X) | | |
| 1513. | 2020-01-20 - Foster, Steven - Supreme Court Order (X) | | |
| 1514. | 2020-01-30 - Khakshooy, Bob - Supreme Court Order (X) | | |
| 1515. | 2020-02-21 - Speckman, David - Supreme Court Order (X) | | |
| 1516. | 2020-02-21 - Cohen, Lottie - Supreme Court Order (X) | | |
| 1517. | 2020-04-01 - Engel, Julius - Supreme Court Order (X) | | |
| 1518. | 2020-04-29 - Rodriguez, Patricia - Supreme Court Order (X) | | |
| 1519. | 2020-07-15 - Foster, Richard - Supreme Court Order (X) | | |
| 1520. | 2020-08-20 - Hoffman, Peter - Supreme Court Order (X) | | |
| 1521. | 2020-09-09 - Smart, Dean - Supreme Court Order (X) | | |

**Ex. 14:39**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1522. | 2020-10-14 - Arbel, Gil - Supreme Court Order (X) | | |
| 1523. | 2020-10-14 - Beury, Donald - Supreme Court Order (X) | | |
| 1524. | 2020-10-21 - Hubbard, Scottlynn - Supreme Court Order (X) | | |
| 1525. | 2020-12-09 - Haynes, Gregory - Supreme Court Order (16J17208) | | |
| | **2021*** | | |
| 1526. | 2021-02-10 - Singh, Kulvinder - Supreme Court Order (16O16374) | | |
| 1527. | 2021-02-21 - Roshan, Peyman - Supreme Court Order (17O01202) | | |
| 1528. | 2021-02-24 - Ali, Zulu - Supreme Court Review Denial (X) | | |
| 1529. | 2021-03-01 - Campbell, Renee - Supreme Court Review Denial (X) | | |
| 1530. | 2021-03-08 - Caplin, Nicholas - Supreme Court Review Denial (X) | | |
| 1531. | 2021-03-22 - Orchon, Edward - Supreme Court Order (X) | | |
| 1532. | 2021-03-30 - Potere, Michael - Supreme Court Order (X) | | |
| 1533. | 2021-04-07 - Harris, Jamie - Supreme Court Order (X) | | |
| 1534. | 2021-04-14 - Schwarcz, David - Supreme Court Order (X) | | |
| 1535. | 2021-05-12 - Albert, Lenore Luann - Supreme Court Order (16O12958; 16O10548) (A) | | |
| 1536. | 2021-06-16 - MacNaughten, Richard - Supreme Court Order (X) | | |
| 1537. | 2021-06-30 - Robinson, Russell - Supreme Court Order (X) | | |
| 1538. | 2021-07-12 - Clevenger, Ty - Supreme Court Order (X) | | |
| 1539. | 2021-07-14 - Stewart, Troy - Supreme Court Order (SBC15O15655) | | |
| 1540. | 2021-07-21 - Chavez, Fernando - Supreme Court Order (SBC19O30131) | | |
| 1541. | 2021-08-11 - Li, James - Supreme Court Order (X) | | |
| 1542. | 2021-11-10 - Healy, Kevin - Supreme Court Order (X) | | |
| 1543. | 2021-12-15 - Herich, Emil - Supreme Court Order (X) | | |
| | **2022*** | | |
| 1544. | 2022-02-22 - Greer, Phillip - Supreme Court Order (X) | | |
| 1545. | 2022-02-23 - Lanphier, Steele - Supreme Court Order (SBC19O30564) | | |
| 1546. | 2022-02-28 - Valera, Viterbo - Supreme Court Order (SBC22O30629) | | |
| 1547. | 2022-04-27 - Shkolnikov, Edward - Supreme Court Order (SBC20O30528) | | |
| 1548. | 2022-05-18 - Deaguilera, James - Supreme Court Order (X) | | |
| 1549. | 2022-07-20 - Jones, Derek - Supreme Court Order (X) | | |
| 1550. | 2022-07-22 - Genis, Darryl - Supreme Court Order (16C17054) | | |
| 1551. | 2022-06-09 - Wells, Michael - Supreme Court Order (SBC22O30009) | | |
| 1552. | 2022-06-29 - Pratt, Chad - Supreme Court Order (X) | | |
| 1553. | 2022-08-02 - Henderson, Shannon - Supreme Court Order (SBC22N30213) | | |
| 1554. | 2022-08-17 - Edgar, Donald - Supreme Court Order (X) | | |
| 1555. | 2022-08-24 - Rodriguez, Robert - Supreme Court Order (X) | | |
| 1556. | 2022-09-01 - Kaufman, David - Supreme Court Order (SBC22H30001) | | |
| 1557. | 2022-09-01 - Isola, David - Supreme Court Order (X) | | |
| 1558. | 2022-09-28 - Carreras, Paul - Supreme Court Order (X) | | |
| 1559. | 2022-10-12 - Lund, Eric - Supreme Court Order (X) | | |
| 1560. | 2022-12-28 - Verbeck. Alexander - Supreme Court Order (SBC22O30089) | | |

**Ex. 14:40**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1561. | 2022-12-28 - Erwin, Christopher - Supreme Court Order (SBC20O30279) | 🟩 | 🟥 |
| 1562. | 2022-12-28 - Tabor, Allan - Supreme Court Order (SBC22030192) | 🟩 | |
| | **2023*** | | |
| 1563. | 2023-01-05 - Altholz, Andrew - Supreme Court Order (SBC22O30554) | 🟩 | |
| 1564. | 2023-01-05 - Keen, Carol - Supreme Court Order (SBC22O30802) | 🟩 | |
| 1565. | 2023-01-05 - Hassan, Allen - Supreme Court Order (SBC22O30969) | 🟩 | |
| 1566. | 2023-01-05 - Iler, Douglas - Supreme Court Order (X) | 🟩 | |
| 1567. | 2023-01-10 - Nuchi, Ondine - Supreme Court Order (SBC22O30566) | 🟩 | |
| 1568. | 2023-01-12 - Jonoubi, Soheila - Supreme Court Order (SBC22O30563) | 🟩 | |
| 1569. | 2023-01-12 - Moreno, Kathleen - Supreme Court Order (SBC22O30441) | 🟩 | |
| 1570. | 2023-01-12 - Na, Sheen - Supreme Court Order (SBC22O30033) | 🟩 | |
| 1571. | 2023-01-18 - Kutrubes, Peter - Supreme Court Order (X) | 🟩 | |
| 1572. | 2023-01-18 - Schwartzberg, Sagi - Supreme Court Order (X) | 🟩 | 🟥 |
| 1573. | 2023-01-18 - Vanderschuit, Kent - Supreme Court Order (SBC22O30092) | 🟩 | |
| 1574. | 2023-01-23 - Thomas, Jeffrey - Supreme Court Order (X) | 🟩 | 🟥 |
| 1575. | 2023-02-01 - Cowan, Keith - Supreme Court Order (X) | 🟩 | |
| 1576. | 2023-02-01 - James, David - Supreme Court Order (SBC22H30645) | 🟩 | |
| 1577. | 2023-02-01 - Oganesyan, Gevork - Supreme Court Order (SBC22N30194) | 🟩 | |
| 1578. | 2023-02-01 - Silva, David - Supreme Court Order (SBC22O30137) | 🟩 | |
| 1579. | 2023-02-01 - Waterman, John - Supreme Court Order (X) | 🟩 | |
| 1580. | 2023-02-01 - White, James - Supreme Court Order (X) | 🟩 | |
| 1581. | 2023-02-15 - Austin, Leroy - Supreme Court Order (SBC22O30190) | 🟩 | |
| 1582. | 2023-02-15 - Carmichael, John - Supreme Court Order (X) | 🟩 | |
| 1583. | 2023-02-15 - Cowan, Kevin - Supreme Court Order (X) | 🟩 | |
| 1584. | 2023-02-15 - Ernaga, Marc - Supreme Court Order (X) | 🟩 | |
| 1585. | 2023-02-15 - Finn, Warren - Supreme Court Order (X) | 🟩 | |
| 1586. | 2023-02-15 - Humphrey, Kevin - Supreme Court Order (X) | 🟩 | |
| 1587. | 2023-02-15 - James, David - Supreme Court Order (X) | 🟩 | |
| 1588. | 2023-02-15 - Jonoubi, Soheila - Supreme Court Order (SBC22O30563) (A) | 🟩 | |
| 1589. | 2023-02-15 - Lucero, Estevan - Supreme Court Order (X) | 🟩 | |
| 1590. | 2023-02-15 - Manock. Charles - Supreme Court Order (SBC22O30632) (A) | 🟩 | |
| 1591. | 2023-02-15 - Moreno, Kathleen - Supreme Court Order (X) | 🟩 | |
| 1592. | 2023-02-15 - Morgan, Steven - Supreme Court Order (X) | 🟩 | |
| 1593. | 2023-02-15 - Nguyen, Caryn - Supreme Court Order (X) | 🟩 | |
| 1594. | 2023-02-15 - Oganesyann, Gevork - Supreme Court Order (X) | 🟩 | |
| 1595. | 2023-02-15 - Ortiz, Salvador - Supreme Court Order (SBC22O30562) | 🟩 | |
| 1596. | 2023-02-15 - Sorahan, Ryan - Supreme Court Order (X) | 🟩 | |
| 1597. | 2023-02-15 - Sweigart, Stephen - Supreme Court Order (SBC22O30550) | 🟩 | |
| 1598. | 2023-02-15 - White, James - Supreme Court Order (SBC22030019) | 🟩 | |
| 1599. | 2023-02-15 - Teti, Eric - Supreme Court Order (X) | 🟩 | |
| 1600. | 2023-02-15 - Velasquez, Diego - Supreme Court Order (X) | 🟩 | |
| 1601. | 2023-02-15 - Waterman, John - Supreme Court Order (X) | 🟩 | |

**Ex. 14:41**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1602. | 2023-02-24 - Maciel, Roberto - Supreme Court Order (X) | | |
| 1603. | 2023-02-24 - Pappas, Mathew - Supreme Court Order (X) | | |
| 1604. | 2023-02-24 - Schenck, Douglas - Supreme Court Order (X) | | |
| 1605. | 2023-02-24 - Schum, John - Supreme Court Order (X) | | |
| 1606. | 2023-02-24 - Skuljan, Zavanko - Supreme Court Order (X) | | |
| 1607. | 2022-02-23 - Lanphier, Steele - Supreme Court Order (SBC19O30564) | | |
| 1608. | 2023-02-24 - Brown, Charles - Supreme Court Order (SBC22N30145) | | |
| 1609. | 2023-02-24 - Hasan, Shahed - Supreme Court Order (SBC22O30570) | | |
| 1610. | 2023-02-24 - Marchetti, Albert - Supreme Court Order (SBC22O30349) | | |
| 1611. | 2023-03-10 - Alemansour, Susan - Supreme Court Order (X) | | |
| 1612. | 2023-03-10 - Dudensing, Janice - Supreme Court Order (SBC22O30633) | | |
| 1613. | 2023-03-10 - Hamilton, Kenneth - Supreme Court Order (X) | | |
| 1614. | 2023-03-10 - Kaplan, David - Supreme Court Order (X) | | |
| 1615. | 2024-03-12 - Thibault, Elana - Supreme Court Order (SBC22O30033) | | 🟥 |
| 1616. | 2023-03-15 - McDonald, Marissa - Supreme Court Order (X) | | |
| 1617. | 2023-03-15 - Sanai, Cyrus - Supreme Court Order (X) | | 🟥 |
| 1618. | 2023-03-15 - Stockler, Paul - Supreme Court Order (X) | | |
| 1619. | 2023-03-22 - Burton, Christopher - Supreme Court Order (X) | | |
| 1620. | 2023-03-22 - Chang, Steve - Supreme Court Order (SBC22O30886) | | |
| 1621. | 2023-03-22 - Fargey, Micah - Supreme Court Order (SBC22O30347) | | |
| 1622. | 2023-03-22 - Hernandez, Erick - Supreme Court Order (X) | | |
| 1623. | 2023-03-22 - Hollingsworth, Gerald - Supreme Court Order (X) | | |
| 1624. | 2023-03-22 - Kagel, David - Supreme Court Order (X) | | |
| 1625. | 2023-03-22 - Matthew, Daniel - Supreme Court Order (X) | | |
| 1626. | 2023-03-22 - Perun, Robert - Supreme Court Order (X) | | |
| 1627. | 2023-03-22 - Tu, Yu-Ching - Supreme Court Order (SBC22O30793) | | |
| 1628. | 2023-03-22 - Yang, Elizabeth - Supreme Court Order (SBC22J30501) | | |
| 1629. | 2023-03-23 - Kagel, David - Supreme Court Order (SBC22030016) | | |
| 1630. | 2023-04-03 - Donboli, John - Supreme Court Order (SBC22O30351) | | |
| 1631. | 2023-04-05 - Burgrun, David - Supreme Court Order (X) | | |
| 1632. | 2023-04-05 - Crhoelman, Granth - Supreme Court Order (X) | | |
| 1633. | 2023-04-05 - Folland, Brian - Supreme Court Order (SBC22O30935) | | |
| 1634. | 2023-04-05 - Iler, Douglas - Supreme Court Order (X) | | |
| 1635. | 2023-04-19 - Comfort, Naomi - Supreme Court Order (SBC22O30445) | | |
| 1636. | 2023-04-19 - Cox, Lawrence - Supreme Court Order (X) | | |
| 1637. | 2023-04-19 - Dobbins, Christopher - Supreme Court Order (X) | | |
| 1638. | 2023-04-19 - Harris, Chad - Supreme Court Order (X) | | |
| 1639. | 2023-04-19 - Newman, Michael - Supreme Court Order (X) | | |
| 1640. | 2023-04-19 - Ortiz, Salvador - Supreme Court Order (X) | | |
| 1641. | 2023-04-19 - Salzwedel, William - Supreme Court Order (15O15162) | | 🟥 |
| 1642. | 2023-04-19 - Savafi, Hamid - Supreme Court Order (X) | | |
| 1643. | 2023-04-19 - Welch, Michael - Supreme Court Order (SBC22O30043) | | |

**Ex. 14:42**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1644. | 2023-04-19 - Cox, Lawrence - Supreme Court Order (SBC22O30928) | 🟩 | |
| 1645. | 2023-04-19 - Klopfenstein, John - Supreme Court Order (SBC23O30445) | 🟩 | |
| 1646. | 2023-04-26 - Adler, Enrique - Supreme Court Order (X) | 🟩 | |
| 1647. | 2023-04-26 - Austin, Leroy - Supreme Court Order (SBC22O30190) | 🟩 | |
| 1648. | 2023-04-26 - Williams, Kelly - Supreme Court Order (SBC22O30161) | 🟩 | |
| 1649. | 2023-04-26 - Kohnen, Marc - Supreme Court Order (SBC22030894) | 🟩 | |
| 1650. | 2023-04-26 - Veracruz, Darren - Supreme Court Order (X) | 🟩 | |
| 1651. | 2023-04-26 - Williams, Kelly - Supreme Court Order (SBC22O30161) | 🟩 | |
| 1652. | 2023-04-28 - Jimenez, Eric - Supreme Court Order (SBC21C30086) | 🟩 | 🟥 |
| 1653. | 2023-05-03 - Bird, Brian - Supreme Court Order (X) | 🟩 | |
| 1654. | 2023-05-03 - Jefferies, David - Supreme Court Order (SBC22O30214) | 🟩 | |
| 1655. | 2023-05-03 - Jimmerson, James - Supreme Court Order (X) | 🟩 | |
| 1656. | 2023-05-03 - Spencer, Terry - Supreme Court Order (X) | 🟩 | |
| 1657. | 2023-05-03 - Steele, Michael - Supreme Court Order (X) | 🟩 | |
| 1658. | 2023-05-07 - Amparan, Robert - Supreme Court Order (SBC22O30648) | 🟩 | |
| 1659. | 2023-05-10 - Baghdassarian, Alex - Supreme Court Order (X) | 🟩 | |
| 1660. | 2023-05-10 - Bailey, Steven - Supreme Court Order (SBC22O30888) | 🟩 | |
| 1661. | 2023-05-10 - Hannon, Marc - Supreme Court Order (X) | 🟩 | |
| 1662. | 2023-05-10 - Lacher, Pamela - Supreme Court Order (X) | 🟩 | |
| 1663. | 2023-05-10 - McCall, Ingrid - Supreme Court Order (X) | 🟩 | |
| 1664. | 2023-05-10 - Simonini, David - Supreme Court Order (X) | 🟩 | |
| 1665. | 2023-05-19 - Bakstad, Paal - Supreme Court Order (X) | 🟩 | |
| 1666. | 2023-05-19 - Stroj, Robert - Supreme Court Order (SBC21C30446) | 🟩 | |
| 1667. | 2023-05-19 - Kieler, Tyler - Supreme Court Order (SBC21O30558) | 🟩 | |
| 1668. | 2023-05-19 - Lubliner, Leora - Supreme Court Order (SBC22O30556) | 🟩 | |
| 1669. | 2023-05-24 - Buck, Frank - Supreme Court Order (SBC22N30106) | 🟩 | |
| 1670. | 2022-06-01 - DeAguilera, James - Supreme Court Order (X) | 🟩 | |
| 1671. | 2023-06-07 - Bachman, Robert - Supreme Court Order (SBC23O30184) | 🟩 | |
| 1672. | 2023-06-07 - Benson, John - Supreme Court Order (SBC22O30945) | 🟩 | |
| 1673. | 2023-06-07 - Coghlan, Stephen - Supreme Court Order (SBC22O30084) | 🟩 | |
| 1674. | 2023-06-07 - Dykes, Alyson - Supreme Court Order (SBC22O30650) | 🟩 | |
| 1675. | 2023-06-07 - Vargas, George - Supreme Court Order (SBC22O30478) | 🟩 | |
| 1676. | 2023-06-07 - Voisenat, Phyllus - Supreme Court Order (X) | 🟩 | |
| 1677. | 2023-06-07 - Zylberglait, Pablo - Supreme Court Order (X) | 🟩 | |
| 1678. | 2022-06-09 - Wells, Michael - Supreme Court Order (SBC22O30009) | 🟩 | |
| 1679. | 2023-06-14 - Madden, Alison - Supreme Court Order (SBC19C30278) | 🟩 | 🟥 |
| 1680. | 2023-06-15 - Gutierrez, Francis - Supreme Court Order (X) | 🟩 | |
| 1681. | 2023-06-15 - Gutierrez, David - Supreme Court Order (SBC22O30931) | 🟩 | |
| 1682. | 2023-06-15 - Hansen, Elizabeth - Supreme Court Order (SBC22O30995) | 🟩 | |
| 1683. | 2023-06-15 - Cannon, Justin - Supreme Court Order (SBC22O30279) | 🟩 | |
| 1684. | 2023-06-15 - Goldblatt, Lewis - Supreme Court Order (X) | 🟩 | |
| 1685. | 2023-06-21 - Sariol, Frank - Supreme Court Order (X) | 🟩 | |

**Ex. 14:43**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1686. | 2023-06-21 - Cook, Peter - Supreme Court Order (SBC22O30965) | | |
| 1687. | 2023-06-21 - Kerns, Edward - Supreme Court Order (X) | | |
| 1688. | 2023-06-21 - Lichter, Katie - Supreme Court Order (X) | | |
| 1689. | 2023-06-21 - Motallebi, Shahin - Supreme Court Order (SBC23O30226) | | |
| 1690. | 2023-06-29 - Adams, Joseph - Supreme Court Order (SBC22O30930) | | |
| 1691. | 2023-06-29 - Batara, Augustine - Supreme Court Order (SBC23O30979) | | |
| 1692. | 2023-06-29 - Castellanos, Gabriel - Supreme Court Order (SBC22N30916) (& 17) | | |
| 1693. | 2023-06-29 - DeMund, Dann - Supreme Court Order (SBC23O30434) | | |
| 1694. | 2023-06-29 - Hyland, John - Supreme Court Order (SBC23O30274) | | |
| 1695. | 2023-06-29 - Kumar, Matthew - Supreme Court Order (SBC23O30434) | | |
| 1696. | 2023-06-29 - Lee, Jason - Supreme Court Order (SBC23O30181) | | |
| 1697. | 2023-06-29 - Morales, Rogelio - Supreme Court Order (SBC23O30434) | | |
| 1698. | 2023-06-29 - Mortier, Raymond - Supreme Court Order (SBC22H30222) | | |
| 1699. | 2023-06-29 - Mortier, Raymond - Supreme Court Order (SBC22O30794) | | |
| 1700. | 2023-06-29 - Murphy, Kevin - Supreme Court Order (SBC23O30434) | | |
| 1701. | 2023-06-29 - Tavakoli, Neema - Supreme Court Order (SBC23O30434) | | |
| 1702. | 2023-06-29 - Zuidema, Jeffrey - Supreme Court Order (SBC22O30791) | | |
| 1703. | 2023-07-11 - Miller, Ronald - Supreme Court Order (SBC23O30434) | | |
| 1704. | 2023-07-14 - Morawski, Debbie Lee - Supreme Court Order (SBC22O30885) | | |
| 1705. | 2023-07-11 - Yuan, Vivian - Supreme Court Order (SBC22O30806) | | |
| 1706. | 2023-07-12 - Halton, Victor - Supreme Court Order (SBC23O30434) | | |
| 1707. | 2023-07-14 - Buckley, Michael - Supreme Court Order (SBC23O30434) | | |
| 1708. | 2023-07-14 - Haddad, Mansour - Supreme Court Order (SBC23O30434) | | |
| 1709. | 2023-07-14 - Huynh, Richard - Supreme Court Order (SBC22030960) | | |
| 1710. | 2023-07-14 - Oei, Richard - Supreme Court Order (SBC23O30434) | | |
| 1711. | 2023-07-14 - Ortiz, Salvador - Supreme Court Order (SBC23O30434) | | |
| 1712. | 2023-07-14 - Singleton, Eric - Supreme Court Order (SBC23O30434) | | |
| 1713. | 2023-07-14 - Tavakoli, Neema - Supreme Court Order (SBC23O30434) (A) | | |
| 1714. | 2023-07-27 - Campbell, Christopher - Supreme Court Order (X) | | |
| 1715. | 2023-07-27 - Davis, Lawrence - Supreme Court Order (SBC23O30463) | | |
| 1716. | 2023-07-27 - Dickerson, Shawn - Supreme Court Order (SBC22O30189) | | |
| 1717. | 2023-07-27 - Gladkov, Sergei - Supreme Court Order (SBC23O30441) | | |
| 1718. | 2023-07-27 - Graham, Robert - Supreme Court Order (SBC23O30434) | | |
| 1719. | 2023-07-27 - Hao, Kathy - Supreme Court Order (X) | | |
| 1720. | 2023-07-27 - Hogan, Brian - Supreme Court Order (SBC23O30489) | | |
| 1721. | 2023-07-27 - Maxfield, Brett - Supreme Court Order (SBC23O30434) | | |
| 1722. | 2023-07-27 - Nguyen, James - Supreme Court Order (SBC23O30466) | | |
| 1723. | 2023-07-27 - Padrick, John - Supreme Court Order (SBC23O30434) | | |
| 1724. | 2023-07-27 - Richards, Leslie - Supreme Court Order (SBC23O30434) | | |
| 1725. | 2023-07-27 - Salazar, Margarita - Supreme Court Order (SBC22O30880) | | |
| 1726. | 2023-08-02 - Estavillo, Jason - Supreme Court Order (SBC22O30652) | | |

**Ex. 14:44**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1727. | 2023-08-02 - Henderson, Shannon - Supreme Court Order (SBC22O30212) | | |
| 1728. | 2023-08-02 - Hogan, Brian - Supreme Court Order (X) | | |
| 1729. | 2023-08-02 - Klopfenstein, John - Supreme Court Order (X) | | |
| 1730. | 2023-08-02 - Purcell, Gilbert - Supreme Court Order (X) | | |
| 1731. | 2023-08-02 - Steele, Patrick - Supreme Court Order (X) | | |
| 1732. | 2023-08-16 - Buckley, Michael - Supreme Court Order (X) | | |
| 1733. | 2023-08-16 - Kimmel, Stanley - Supreme Court Order (SBC20O30782) | | |
| 1734. | 2023-08-16 - Cohen, Herman - Supreme Court Order (SBC22O30083) | | |
| 1735. | 2023-08-16 - Duncan, Frank - Supreme Court Order (SBC22O30937) | | |
| 1736. | 2023-08-31 - Ferrari, Jackie - Supreme Court Order (X) | | |
| 1737. | 2023-08-16 - Mitchell, Andrew - Supreme Court Order (SBC22N30578) | | |
| 1738. | 2023-08-16 - Tepper, Nicholas - Supreme Court Order (X) | | |
| 1739. | 2023-08-16 - Westmoreland, Leslie - Supreme Court Order (SBC22O30893) | | |
| 1740. | 2023-08-29 - Tester, Alexander - Supreme Court Order (SBC22N30799) | | |
| 1741. | 2023-08-31 - Kaemerle, Matthew - Supreme Court Order (X) (A) | | |
| 1742. | 2023-08-31 - Luke, Victor - Supreme Court Order (SBC22N30878) (& 79) | | |
| 1743. | 2023-08-31 - Gevertz, Michael - Supreme Court Order (SBC22O30875) | | |
| 1744. | 2023-09-15 - Boice, Bruce - Supreme Court Order (X) | | |
| 1745. | 2023-09-15 - Cook, Alfred - Supreme Court Order (X) | | |
| 1746. | 2023-09-15 - Kim, Seong - Supreme Court Order (X) | | |
| 1747. | 2023-09-15 - Grant, Joseph - Supreme Court Order (X) | | |
| 1748. | 2023-09-15 - Keenan, Joseph - Supreme Court Order (X) | | |
| 1749. | 2023-09-15 - Liddy, Raymond - Supreme Court Order (X) | | |
| 1750. | 2023-09-15 - Mabee, Brian - Supreme Court Order (SBC23O30053) | | |
| 1751. | 2023-09-15 - McCabe, Michael - Supreme Court Order (X) | | |
| 1752. | 2023-09-15 - Smith, Daniel - Supreme Court Order (X) (A) | | |
| 1753. | 2023-09-20 - Dubin, Adam - Supreme Court Order (X) | | |
| 1754. | 2023-09-20 - Mogan, Michael - Supreme Court Order (X) | | |
| 1755. | 2023-09-20 - Moreno, Kathleen - Supreme Court Order (X) | | |
| 1756. | 2023-09-23 - Bambl, Richard - Supreme Court Order (X) | | |
| 1757. | 2023-09-27 - Biller, Dimitrios - Supreme Court Order (X) | | |
| 1758. | 2023-10-07 - Martinez, Carlos - Supreme Court Order (SBC22O30103) | | |
| 1759. | 2023-10-13 - McCabe, Michael - Supreme Court Order (X) (A) | | |
| 1760. | 2023-10-18 - Stahl, Norbert - Supreme Court Order (X) | | |
| 1761. | 2023-11-08 - Pavone, Benjamin - Supreme Court Order (X) (A) | | |
| 1762. | 2023-12-20 - Abdeljawad, Eyad - Supreme Court Order (X) | | |
| 1763. | 2023-12-20 - Liang, Wonder Jen-Hwa - Supreme Court Order (16C10885) | | |
| | **2024\*** | | |
| 1764. | 2024-01-05 - Allen, Emry - Supreme Court Order (SBC23H30230) | | |
| 1765. | 2024-01-05 - Ballard, Nathan - Supreme Court Order (X) | | |
| 1766. | 2024-01-05 - Behesnilian, Daniel - Supreme Court Order (SBC23O30457) | | |
| 1767. | 2024-01-05 - Bornstein, Daniel - Supreme Court Order (X) | | |

**Ex. 14:45**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1768. | 2024-01-05 - Bral, S. Sean - Supreme Court Order (SBC23O30574) | | |
| 1769. | 2024-01-05 - Brooks, Stephen - Supreme Court Order (X) | | |
| 1770. | 2024-01-05 - Carlson, Jordan - Supreme Court Order (X) | | |
| 1771. | 2024-01-05 - Choi, Howard - Supreme Court Order (X) | | |
| 1772. | 2024-01-05 - Gelegan, Jacob - Supreme Court Order (SBC23H30438) | | |
| 1773. | 2024-01-05 - Gil, Roberto - Supreme Court Order (SBC22O30355) | | |
| 1774. | 2024-01-05 - Gordon, Aaron - Supreme Court Order (X) | | |
| 1775. | 2024-01-05 - Hassan, Alan - Supreme Court Order (X) | | |
| 1776. | 2024-01-05 - Ji, Ming - Supreme Court Order (SBC23O30458) | | |
| 1777. | 2024-01-05 - Kellar, Kevin - Supreme Court Order (SBC23O30022) | | |
| 1778. | 2024-01-05 - King, Tamela - Supreme Court Order (X) | | |
| 1779. | 2024-01-05 - Kozich, S. David - Supreme Court Order (SBC22O30926) | | |
| 1780. | 2024-01-05 - Kutrubes, Peter - Supreme Court Order (X) | | |
| 1781. | 2024-01-05 - Lawson, Janet - Supreme Court Order (SBC23030443) | | |
| 1782. | 2024-01-05 - Luna, Joe - Supreme Court Order (SBC23030599) | | |
| 1783. | 2024-01-05 - Martin, Elizabeth - Supreme Court Order (X)1 | | |
| 1784. | 2024-01-05 - Mayfield, Kristoffer - Supreme Court Order (X) | | |
| 1785. | 2024-01-05 - McAllister, Lynette - Supreme Court Order (X) | | |
| 1786. | 2024-01-05 - McFarlin, Timothy - Supreme Court Order (SBC23030024) | | |
| 1787. | 2024-01-05 - Medby, David - Supreme Court Order (X) | | |
| 1788. | 2024-01-05 - Neal, Glenn - Supreme Court Order (X) | | |
| 1789. | 2024-01-05 - Peluso, Larry - Supreme Court Order (SBC23O30601) | | |
| 1790. | 2024-01-05 - Singh, Rooh - Supreme Court Order (SBC22O31056) | | |
| 1791. | 2024-01-05 - Storey, Chelsea - Supreme Court Order (SBC22O31042) | | |
| 1792. | 2024-01-05 - Torres, Edward - Supreme Court Order (SBC23O30573) | | |
| 1793. | 2024-01-05 - Trigger, Michelle - Supreme Court Order (S8(23030408) | | |
| 1794. | 2024-01-05 - Vontersch, Glenn - Supreme Court Order (SBC2203l065) | | |
| 1795. | 2024-01-05 - Willens, Eric - Supreme Court Order (X) | | |
| 1796. | 2024-01-05 - Wright, William - Supreme Court Order (SBC23N30001) (& 02) | | |
| 1797. | 2024-01-10 - Harper, Gregory - Supreme Court Order (17O01313) | | |
| 1798. | 2024-01-10 - Nichols, Martin - Supreme Court Order (X) | | |
| 1799. | 2024-01-10 - Nuchi, Ondine - Supreme Court Order (X) | | |
| 1800. | 2024-01-10 - Peters, Thomas - Supreme Court Order (X) | | |
| 1801. | 2024-01-10 - Roadarmel, Bonnie - Supreme Court Order (X) | | |
| 1802. | 2024-01-10 - Talwar, Deepa - Supreme Court Order (X) | | |
| 1803. | 2024-01-10 - Towns, Jeffrey - Supreme Court Order (X) | | |
| 1804. | 2024-01-17 - Brooks-Montgomery, Cristina - Supreme Court Order (SBC22031067) | | |
| 1805. | 2024-01-17 - Guisti, Michael - Supreme Court Order (X) | | |
| 1806. | 2024-01-24 - Kelley, Troy - Supreme Court Order (X) | | |
| 1807. | 2024-02-07 - Benninghoff, Melina - Supreme Court Order (X) | | |
| 1808. | 2024-02-07 - Bowden, David - Supreme Court Order (X) | | |

**Ex. 14:46**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1809. | 2024-02-07 - Brifman, Mark - Supreme Court Order (SBC23030223) | | |
| 1810. | 2024-02-07 - Chan, Carolyn - Supreme Court Order (SBC23030324) | | |
| 1811. | 2024-02-07 - Lacava, Richard - Supreme Court Order (SBC23O30273) | | |
| 1812. | 2024-02-07 - Kucera, Frank - Supreme Court Order (SBC23O30275) | | |
| 1813. | 2024-02-07 - Vartanian, Martha - Supreme Court Order (X) | | |
| 1814. | 2024-02-07 - Velasquez, Diego - Supreme Court Order (X) | | |
| 1815. | 2024-02-07 - Vijayraghavan, Vasumathi - Supreme Court Order (SBC22030883) | | |
| 1816. | 2024-02-21 - Depew, Peter - Supreme Court Order (X) | | |
| 1817. | 2024-02-21 - Lamoure, Nathan - Supreme Court Order (SBC23O30452) | | |
| 1818. | 2024-02-21 - Leone, Fernando - Supreme Court Order (SBC23O30539) | | |
| 1819. | 2024-02-21 - Martens, Christopher - Supreme Court Order (SBC23030618) | | |
| 1820. | 2024-02-21 - Narayan, Amy - Supreme Court Order (X) | | |
| 1821. | 2024-02-21 - Turley, William - Supreme Court Order (X) | | |
| 1822. | 2024-02-21 - Wike, Terry - Supreme Court Order (X) | | |
| 1823. | 2024-02-28 - Albert, James - Supreme Court Order (X) | | |
| 1824. | 2024-03-06 - Gelobter, Sharron - Supreme Court Order (X) | | |
| 1825. | 2024-03-06 - McClintock, Douglas - Supreme Court Order (SBC23030417) | | |
| 1826. | 2024-03-06 - Quintilone, Richard - Supreme Court Order (X) | | |
| 1827. | 2024-03-06 - Safavi, Hamid - Supreme Court Order (SBC23O30598) | | |
| 1828. | 2024-03-12 - Thibault, Elana - Supreme Court Order (SBC22O30033) | | |
| 1829. | 2024-03-14 - Franceschi, Ernest - Supreme Court Order (X) | | |
| 1830. | 2024-03-14 - Lindley, Michael - Supreme Court Order (X) | | |
| 1831. | 2024-03-14 - Mills, James - Supreme Court Order (SBC23O30682) | | |
| 1832. | 2024-03-14 - Pratt, Chadd - Supreme Court Order (SBC23O30724) | | |
| 1833. | 2024-03-14 - Single, Randall - Supreme Court Order (X) | | |
| 1834. | 2024-03-17 - March, Daniel - Supreme Court Order (SBC23O30976) | | |
| 1835. | 2024-04-03 - Obagi, Zein - Supreme Court Order (SBC22O31072) | | |
| 1836. | 2024-04-03 - Bambl, Richard - Supreme Court Order (SBC23H30224) | | |
| 1837. | 2024-04-03 - Bradley, John - Supreme Court Order (X) | | |
| 1838. | 2024-04-03 - Coberly, Richard - Supreme Court Order (SBC23O30699) | | |
| 1839. | 2024-04-03 - Ceballos, Samuel - Supreme Court Order (SBC23030222) | | |
| 1840. | 2024-04-03 - Donboli, John - Supreme Court Order (X) | | |
| 1841. | 2024-04-03 - Godin, Randy - Supreme Court Order (X) | | |
| 1842. | 2024-04-03 - Kuznyetsov, Vyacheslaw - Supreme Court Order (X) | | |
| 1843. | 2024-04-03 - Obagi, Zein - Supreme Court Order (X) | | |
| 1844. | 2024-04-03 - Vermazen, Richard - Supreme Court Order (SBC23030891) | | |
| 1845. | 2024-04-10 - Grant, Jeffrey - Supreme Court Order (X) | | |
| 1846. | 2024-04-10 - Johnston, Thomas - Supreme Court Order (SBC23N30610) | | |
| 1847. | 2024-04-10 - Smith, Spencer - Supreme Court Order (X) | | |
| 1848. | 2024-04-10 - Vandervoort, John - Supreme Court Order (X) | | |
| 1849. | 2024-04-10 - Wagner, Nicholas - Supreme Court Order (X) | | |

**Ex. 14:47**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1850. | 2024-04-10 - Wilkins, Lyndol - Supreme Court Order (X) | | |
| 1851. | 2024-04-17 - Loomis, Shane - Supreme Court Order (SBC21C30049) | | |
| 1852. | 2024-04-19 - Ortiz, Salvador - Supreme Court Order (SBC22030141) | | |
| 1853. | 2024-04-24 - Burgren, David - Supreme Court Order (X) | | |
| 1854. | 2024-05-01 - Derieg, George - Supreme Court Order (SBC21O30532) | | |
| 1855. | 2024-05-06 - Miller, Margaret - Supreme Court Order (X) | | |
| 1856. | 2024-05-06 - Vargas, Brenda - Supreme Court Order (SBC23O30838) | | |
| 1857. | 2024-05-06 - Vargas, Brenda - Supreme Court Order (SBC23O30459) | | |
| 1858. | 2024-05-20 - George, Jennifer - Supreme Court Order (X) | | |
| 1859. | 2024-05-20 - Sambhi, Bimal - Supreme Court Order (SBC23O30698) | | |
| 1860. | 2024-05-20 - Vanderveen, Jeffrey - Supreme Court Order (SBC23O30852) | | |
| 1861. | 2024-05-20 - Holguin, Alex - Supreme Court Order (SBC23O30897) | | |
| 1862. | 2024-05-20 - Smith, Jeffrey - Supreme Court Order (SBC23O30934) | | |
| 1863. | 2024-05-29 - Chaix, John - Supreme Court Order (X) | | |
| 1864. | 2024-05-29 - Jue, Craig - Supreme Court Order (SBC23O30659) | | |
| 1865. | 2024-05-29 - Luetto, Adam - Supreme Court Order (SBC23O30799) | | |
| 1866. | 2024-05-29 - Miyamoto, Lynn - Supreme Court Order (X) | | |
| 1867. | 2024-06-10 - Capozzi, Nicholas - Supreme Court Order (SBC23H30777) | | |
| 1868. | 2024-06-12 - Abbott, Howard - Supreme Court Order (X) | | |
| 1869. | 2024-06-12 - Al-Haqq, Wazir - Supreme Court Order (X) | | |
| 1870. | 2024-06-12 - Campbell, Brooke - Supreme Court Order (X) | | |
| 1871. | 2024-06-12 - Gomes, Timothy - Supreme Court Order (X) | | |
| 1872. | 2024-06-12 - Hughes, Scott - Supreme Court Order (X) | | |
| 1873. | 2024-06-17 - Albert, Lenore - Supreme Court Order (SBC22030348) | | |
| 1874. | 2024-06-26 - Bulloch, Kent - Supreme Court Order (SBC22030108) | | |
| 1875. | 2024-06-26 - Gold, Michelle - Supreme Court Order (SBC22030558) | | |
| 1876. | 2024-07-14 - Tavakoli, Neema - Supreme Court Order (SBC23O30272) | | |
| 1877. | 2024-07-15 - Acuna, Fernando - Supreme Court Order (X) | | |
| 1878. | 2024-07-15 - Endres, Kirk - Supreme Court Order (SBC23O30840) | | |
| 1879. | 2024-07-15 - Davis, Lauren - Supreme Court Order (SBC.23N31013) (& 14) | | |
| 1880. | 2024-07-17 - Batara, Augustine - Supreme Court Order (X) | | |
| 1881. | 2024-07-17 - Garcia, John - Supreme Court Order (SBC23O30820) | | |
| 1882. | 2024-07-23 - Gordon, Amber - Supreme Court Order (SBC25O30520) | | |
| 1883. | 2024-07-24 - Tweedy, Charles- Supreme Court Order (SBC23O30843) | | |
| 1884. | 2024-07-24 - Alspaugh, Eric - Supreme Court Order (SBC23J30962) | | |
| 1885. | 2024-07-24 - McCann, Robert - Supreme Court Order (SBC22O30110) | | |
| 1886. | 2024-07-24 - Sargsyan, Edgar - Supreme Court Order (X) | | |
| 1887. | 2024-08-05 - Chivinski, Andrew - Supreme Court Order (SBC23O30958) | | |
| 1888. | 2024-08-05 - Lustgarten, Alfred - Supreme Court Order (X) | | |
| 1889. | 2024-08-12 - Munoz, George - Supreme Court Order (X) | | |
| 1890. | 2024-08-12 - Riemer, Robert - Supreme Court Order (SBC23O30514) | | |
| 1891. | 2024-08-14 - Daly, Stephen - Supreme Court Order (X) | | |

Ex. 14:48

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1892. | 2024-08-14 - Finn, Warren - Supreme Court Order (X) | 🟩 | |
| 1893. | 2024-08-14 - Gerges, Motaz - Supreme Court Order (SBC23O30860) | 🟩 | |
| 1894. | 2024-08-14 - Loftis, Gary - Supreme Court Order (X) | 🟩 | |
| 1895. | 2024-08-14 - Sax. Richard - Supreme Court Order (SBC24030017) | 🟩 | |
| 1896. | 2024-08-14 - Steele, Patrick - Supreme Court Order (X) | 🟩 | |
| 1897. | 2024-09-04 - Bird, Brian - Supreme Court Order (X) | 🟩 | |
| 1898. | 2024-09-04 - Kumar, Matthew - Supreme Court Order (SBC23O30864) (& 116) | 🟩 | |
| 1899. | 2024-09-04 - Ardite, Dante - Supreme Court Order (SBC23O30701) | 🟩 | |
| 1900. | 2024-09-04 - Ganong, Phillip - Supreme Court Order (X) | 🟩 | |
| 1901. | 2024-09-04 - Gurley, Adam - Supreme Court Order (X) | 🟩 | |
| 1902. | 2024-09-04 - Hernandez, Erick - Supreme Court Order (X) | 🟩 | |
| 1903. | 2024-09-04 - Schierer, Marc - Supreme Court Order (X) | 🟩 | |
| 1904. | 2024-09-09 - Bennett, Jerald - Supreme Court Order (X) | 🟩 | |
| 1905. | 2024-09-09 - Champion, Kiarash - Supreme Court Order (SBC23O30232) | 🟩 | |
| 1906. | 2024-09-09 - Mrich, Lotfy - Supreme Court Order (X) | 🟩 | |
| 1907. | 2024-09-11 - Tajon, Joan - Supreme Court Order (SBC23O308S8) | 🟩 | |
| 1908. | 2024-09-16 - Huizar, Jose - Supreme Court Order (X) | 🟩 | |
| 1909. | 2024-09-16 - Kaplan, Alan - Supreme Court Order (X) | 🟩 | |
| 1910. | 2024-09-18 - Campbell, Randall - Supreme Court Order (X) | 🟩 | |
| 1911. | 2024-09-18 - Chang, Steve - Supreme Court Order (SBC23O30952) | 🟩 | |
| 1912. | 2024-09-18 - Daughetee, Renee - Supreme Court Order (SBC23O30661) | 🟩 | |
| 1913. | 2024-09-18 - Ramjrez, Sergio - Supreme Court Order (SBC22O30976) | 🟩 | |
| 1914. | 2024-09-25 - Andion, James - Supreme Court Order (X) | 🟩 | |
| 1915. | 2024-09-25 - Eilenberg, Benjamin - Supreme Court Order (X) | 🟩 | |
| 1916. | 2024-09-25 - Erausquin, Matthew - Supreme Court Order (X) | 🟩 | |
| 1917. | 2024-09-25 - Tom, Richard - Supreme Court Order (X) | 🟩 | |
| 1918. | 2024-10-07 - Chen, Clifford - Supreme Court Order (X) | 🟩 | |
| 1919. | 2024-10-07 - Cowan, John - Supreme Court Order (X) | 🟩 | |
| 1920. | 2024-10-07 - Jeang, Evie - Supreme Court Order (SBC24O30082) | 🟩 | |
| 1921. | 2024-10-07 - Martinez, Carlos - Supreme Court Order (X) | 🟩 | |
| 1922. | 2024-10-07 - Zu, Kai - Supreme Court Order (X) | 🟩 | |
| 1923. | 2024-10-16 - Oliveri, Matthew - Supreme Court Order (SBC22O30792) | 🟩 | 🟥 |
| 1924. | 2024-10-18 - Tajon, Joan - Supreme Court Order (X) | 🟩 | 🟥 |
| 1925. | 2024-10-23 - Awad, Randall - Supreme Court Order (SBC23O30662) | 🟩 | |
| 1926. | 2024-11-26 - Vargas, Fernando - Supreme Court Order (SBC22O30280) | 🟩 | 🟥 |
| | **2025*** | | |
| 1927. | 2025-01-06 - Allen, Mark - Supreme Court Order (X) | 🟩 | |
| 1928. | 2025-01-06 - Antognini, Richard - Supreme Court Order (X) | 🟩 | |
| 1929. | 2025-01-06 - Avenatti, John - Supreme Court Order (X) | 🟩 | |
| 1930. | 2025-01-06 - Barkin, Steven - Supreme Court Order (X) | 🟩 | |
| 1931. | 2025-01-06 - Capata, Julian - Supreme Court Order (SBC23H30439) | 🟩 | |

**Ex. 14:49**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1932. | 2025-01-06 - Esbin, Louis - Supreme Court Order (SBC23O30942) | | |
| 1933. | 2025-01-06 - Harris, Jeffrey - Supreme Court Order (X) | | |
| 1934. | 2025-01-06 - Jackson, Gregory - Supreme Court Order (X) | | |
| 1935. | 2025-01-06 - Kessler, Andrew - Supreme Court Order (X) | | |
| 1936. | 2025-01-06 - Klinck, Jonathan - Supreme Court Order (X) | | |
| 1937. | 2025-01-06 - Levoff, Gene - Supreme Court Order (X) | | |
| 1938. | 2025-01-06 - Look, William - Supreme Court Order (SBC2403017S) | | |
| 1939. | 2025-01-06 - Lucero, Linda - Supreme Court Order (X) | | |
| 1940. | 2025-01-06 - Martinez, Daniel - Supreme Court Order (X) | | |
| 1941. | 2025-01-06 - Minassian, Fred - Supreme Court Order (X) | | |
| 1942. | 2025-01-06 - Montero, Felix - Supreme Court Order (SBC23O30993) | | |
| 1943. | 2025-01-06 - Mullins, Joyce - Supreme Court Order (X) | | |
| 1944. | 2025-01-06 - Nowicki, Dale - Supreme Court Order (X) | | |
| 1945. | 2025-01-06 - Olano, Miguel - Supreme Court Order (SBC24O30016) | | |
| 1946. | 2025-01-06 - Radogna, Anthony - Supreme Court Order (X) | | |
| 1947. | 2025-01-06 - Ribeiro, Irina - Supreme Court Order (SBC23O30215) | | |
| 1948. | 2025-01-06 - Scarcella, Christopher - Supreme Court Order (X) | | |
| 1949. | 2025-01-06 - Severo, Rauol - Supreme Court Order (X) | | |
| 1950. | 2025-01-06 - Slater, Robert - Supreme Court Order (X) | | |
| 1951. | 2025-01-06 - Wettig, Gretchen - Supreme Court Order (SBC23O31002) | | |
| 1952. | 2025-01-06 - Wilbar, Willam - Supreme Court Order (X) | | |
| 1953. | 2025-01-15 - Cargnelutti, Daniel - Supreme Court Order (SBC24O30419) | | |
| 1954. | 2025-01-15 - Fernandes, Luiz - Supreme Court Order (SBC24O30084) | | |
| 1955. | 2025-01-15 - Knops, Jennifer - Supreme Court Order (X) | | |
| 1956. | 2025-01-15 - Ramirez, Mina - Supreme Court Order (X) | | |
| 1957. | 2025-01-15 - Sabol, Cristopher - Supreme Court Order (SBC24O30074) | | |
| 1958. | 2025-01-15 - Sayegh, Fahed - Supreme Court Order (X) | | |
| 1959. | 2025-01-27 - Cha, Je - Supreme Court Order (X) | | |
| 1960. | 2025-01-27 - Reynoso, Edgar - Supreme Court Order (X) | | |
| 1961. | 2025-01-29 - Dorman, Gabriel - Supreme Court Order (X) | | |
| 1962. | 2025-01-29 - Dudley, Christopher - Supreme Court Order (X) | | |
| 1963. | 2025-01-29 - Fobi, Emmanuel - Supreme Court Order (X) | | |
| 1964. | 2025-01-29 - Salzwedel, William - Supreme Court Order (SBC24O30416) | | |
| 1965. | 2025-02-05 - Cullison, Claudia - Supreme Court Order (X) | | |
| 1966. | 2025-02-19 - Canciamilla, Joseph - Supreme Court Order (X) | | |
| 1967. | 2025-02-19 - Henderson, Dennise - Supreme Court Order (X) | | |
| 1968. | 2025-02-19 - Huber, John - Supreme Court Order (X) | | |
| 1969. | 2025-02-19 - lvosevic, Jovan - Supreme Court Order (SBC22O30224) | | |
| 1970. | 2025-02-19 - Molina, Jesse - Supreme Court Order (X) | | |
| 1971. | 2025-02-19 - Valencia, Everardo - Supreme Court Order (SBC24O30796) | | |
| 1972. | 2025-02-19 - Vogel, Lucie - Supreme Court Order (X) | | |
| 1973. | 2025-02-19 - Vosskuhler, Derek - Supreme Court Order (SBC22030018) | | |

**Ex. 14:50**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 1974. | 2025-02-24 - Connor, Michael - Supreme Court Order (X) | | |
| 1975. | 2025-02-24 - Jaques, Bruce - Supreme Court Order (SBC24O30124) | | |
| 1976. | 2025-03-12 - Krause, Ernest - Supreme Court Order (SBC23O30697) | | |
| 1977. | 2025-03-17 - Anderson, Patrick - Supreme Court Order (X) | | |
| 1978. | 2025-03-17 - Carrillo, Rafael - Supreme Court Order (SBC24030171) | | |
| 1979. | 2025-03-17 - March, Daniel - Supreme Court Order (SBC23030976) | | |
| 1980. | 2025-03-17 - McCrea, Justin - Supreme Court Order (X) | | |
| 1981. | 2025-03-17 - Richards, Michael - Supreme Court Order (X) | | |
| 1982. | 2025-03-17 - Scarcella, Christopher - Supreme Court Order (X) | | |
| 1983. | 2025-03-17 - Virgilio, Joseph - Supreme Court Order (X) | | |
| 1984. | 2025-03-19 - Alaei, Mehran - Supreme Court Order (SBC24030652) | | |
| 1985. | 2025-03-19 - Demanski, David - Supreme Court Order (X) | | |
| 1986. | 2025-03-19 - Dimitriou, Andrew - Supreme Court Order (X) | | |
| 1987. | 2025-03-19 - Liberty, Louis - Supreme Court Order (X) | | |
| 1988. | 2025-03-19 - Ricci, John - Supreme Court Order (X) | | |
| 1989. | 2025-03-19 - Richards, Marc - Supreme Court Order (SBC24H30282) | | |
| 1990. | 2025-04-09 - Douglas, Dana - Supreme Court Order (X) | | |
| 1991. | 2025-04-09 - Haltom, Victor - Supreme Court Order (SBC24030228) | | |
| 1992. | 2025-04-17 - Freestone, Carrie - Supreme Court Order (X) | | |
| 1993. | 2025-04-17 - Schouten, Neinke - Supreme Court Order (X) | | |
| 1994. | 2025-04-17 - Voorhees, Michael - Supreme Court Order (X) | | |
| 1995. | 2025-05-07 - Aron, Donald - Supreme Court Order (X) | | |
| 1996. | 2025-05-07 - Callahan, Rachael - Supreme Court Order (SBC25O30056) | | |
| 1997. | 2025-05-07 - Cook, Alfred - Supreme Court Order (X) | | |
| 1998. | 2025-05-07 - Harbaugh, Brian - Supreme Court Order (X) | | |
| 1999. | 2025-05-07 - Hoekstra, Nicolette - Supreme Court Order (X) | | |
| 2000. | 2025-05-07 - Welch, Christopher - Supreme Court Order (SBC25O30012) | | |
| 2001. | 2025-05-07 - Cavin, Kenneth - Supreme Court Order (SBC24O30773) | | |
| 2002. | 2025-05-07 - Mitchell, Rossana - Supreme Court Order (SBC23030326) | | |
| 2003. | 2025-05-07 - Quigg, Vincent - Supreme Court Order (SBC22C30002) | | |
| 2004. | 2025-05-14 - Castorina, Bryan - Supreme Court Order (SBC24O30744) | | |
| 2005. | 2025-05-27 - Collins, Sherry - Supreme Court Order (SBC24030204) | | |
| 2006. | 2025-05-27 - Bramzon, Daniel - Supreme Court Order (SBC24O30971) | | |
| 2007. | 2025-05-27 - McLurjkjn, Reed - Supreme Court Order (SBC23O30779) | | |
| 2008. | 2025-05-28 - Metsch, Paul - Supreme Court Order (X) | | |
| 2009. | 2025-06-11 - Griffin, Keith - Supreme Court Order (X) | | |
| 2010. | 2025-06-11 - Klein, Douglas - Supreme Court Order (SBC25O30080) | | |
| 2011. | 2025-06-11 - Sloan, Alfred - Supreme Court Order (X) | | |
| 2012. | 2025-06-11 - Stull, Adam - Supreme Court Order (X) | | |
| 2013. | 2025-06-11 - Zeiler, Kerry - Supreme Court Order (X) | | |
| 2014. | 2025-06-18 - Trimarche, Gregory - Supreme Court Order (SBC23O30827) | | |
| 2015. | 2025-06-25 - Ramos, Michael - Supreme Court Order (SBC25O30219) | | |

Ex. 14:51

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 2016. | 2025-06-25 - Applbaum, Marc - Supreme Court Order (SBC25O30285) | | |
| 2017. | 2025-07-07 - Sanders, Renee - Supreme Court Order (SBC24O30845) | | |
| 2018. | 2025-07-07 - Provis, Timothy - Supreme Court Order (X) | | |
| 2019. | 2025-07-07 - Strojnik, Peter - Supreme Court Order (X) | | |
| 2020. | 2025-07-09 - Carss, William - Supreme Court Order (SBC25O30322) | | |
| 2021. | 2025-07-09 - Malpert, Rodney - Supreme Court Order (X) | | |
| 2022. | 2025-07-09 - Pratt, Chad - Supreme Court Order (X) | | ■ |
| 2023. | 2025-07-16 - Bradshaw, Drexel - Supreme Court Opinion (16O15558) | | |
| 2024. | 2025-07-23 - Gordon, Amber - Supreme Court Order (X) | | |
| 2025. | 2025-07-23 - Sullivan-Guzman, Erin - Supreme Court Order (SBC24030728) | | |
| 2026. | 2025-07-30 - Devlin, Jacqueline - Supreme Court Order (X) | | |
| 2027. | 2025-07-30 - Everett, Daniel - Supreme Court Order (X) | | ■ |
| 2028. | 2025-07-30 - Folke, Duane - Supreme Court Order (SBC24030514) | | ■ |
| 2029. | 2025-07-30 - Kostiv, Petro - Supreme Court Order (X) | | ■ |
| 2030. | 2025-07-30 - Krall, Noreen - Supreme Court Order (X) | | |
| 2031. | 2025-07-30 - Wilson-Tancreto, Jennifer - Supreme Court Order (SBC24O30928) | | |
| 2032. | 2025-08-07 - Corry, Robert - Supreme Court Order (X) | | |
| 2033. | 2025-08-07 - Giron, Lionel - Supreme Court Order (X) | | |
| 2034. | 2025-08-07 - McKim, David - Supreme Court Order (X) | | |
| 2035. | 2025-08-07 - Reitkopp, Edward - Supreme Court Order (X) | | |
| 2036. | 2025-08-20 - Du Wors, David - Supreme Court Order (X) | | ■ |
| 2037. | 2025-08-29 - Jester, Alexander - Supreme Court Order (X) | | |
| 2038. | 2025-08-29 - Man, Alan - Supreme Court Final Order (SBC24030845) | | |
| 2039. | 2025-08-29 - Tepper, Nicholas - Supreme Court Order (SBC24N30747) | | |
| 2040. | 2025-09-03 - Babra, Neil - Supreme Court Order (X) | | |
| 2041. | 2025-09-03 - Bagrham, Oshin - Supreme Court Order (X) | | |
| 2042. | 2025-09-03 - Lewis, David - Supreme Court Order (SBC25O30016) | | |
| 2043. | 2025-09-03 - Hammon, David - Supreme Court Order (SBC24O30797) | | |
| 2044. | 2025-09-03 - Galanter, Douglas - Supreme Court Order (SBC23030974) | | |
| 2045. | 2025-09-03 - Olin, Jeffrey - Supreme Court Order (X) | | ■ |
| 2046. | 2025-09-03 - Soberal, Jake - Supreme Court Order (X) | | |
| 2047. | 2025-09-11 - Spolin, Aaron - Supreme Court Order (SBC24030656) | | |
| 2048. | 2025-09-16 - Osborne, Todd - Supreme Court Order (SBC25O30352) | | |
| 2049. | 2025-09-16 - Smith, David - Supreme Court Order (SBC24O30850) | | |
| 2050. | 2025-09-16 - Johal, Jugjit - Supreme Court Order (SBC24O30843) | | |
| 2051. | 2025-09-17 - Speckman, David - 'Supreme Court Order (SBC24J30970) | | |
| 2052. | 2025-09-24 - Griffin, David - Supreme Court Order (X) | | |
| 2053. | 2025-09-24 - Leigh, Gilbert - Supreme Court Order (SBC23031030) | | |
| 2054. | 2025-09-24 - Kuenstler, Konrad - Supreme Court Order (SBC24O30873) | | |
| 2055. | 2025-10-06 - Kessler, Andrew - Supreme Court Order (SBC23031022) | | |
| 2056. | 2025-10-07 - Armstrong, Stephen - Supreme Court Order (SBC24030806) | | |

**Ex. 14:52**

| NO. | CASE | COSTS IMP. | PET. DEN'D |
|---|---|---|---|
| 2057. | 2025-10-07 - Manning, Joseph - Supreme Court Order (SBC25O30346) | | |
| 2058. | 2025-10-07 - Thomas-Mallery, Tamara - Supreme Court Order (SBC25O30150) | | |
| 2059. | 2025-10-07 - Noto, Henry - Supreme Court Order (X) | | |
| 2060. | 2025-10-07 - Abbott, Todd - Supreme Court Order (X) | | |
| 2061. | 2025-10-07 - Thomas-Mallery, Tamara - Supreme Court Order (X) | | |
| 2062. | 2025-12-01 - Bindman, Boris - Supreme Court Order (SBC25O30157) | | |
| 2063. | 2025-12-01 - Brodey, Jeffrey - Supreme Court Order (SBC24O30901) | | |
| 2064. | 2025-12-01 - Bui, Vi - Supreme Court Order (X) | | |
| 2065. | 2025-12-01 - Bulloch, Kent - Supreme Court Order (X) | | |
| 2066. | 2025-12-01 - Chang, Dennis - Supreme Court Order (X) | | |
| 2067. | 2025-12-01 - Chen, Edward - Supreme Court Order (SBC24O30802) | | |
| 2068. | 2025-12-01 - Do, Andrew - Supreme Court Order (X) | | |
| 2069. | 2025-12-01 - Elstein, Matthew - Supreme Court Order (X) | | |
| 2070. | 2025-12-01 - Garrido, Anthony - Supreme Court Order (X) | | |
| 2071. | 2025-12-01 - Gordon, Aaron - Supreme Court Order (X) | | |
| 2072. | 2025-12-01 - Grigoryan, Hayk - Supreme Court Order (X) | | |
| 2073. | 2025-12-01 - King, Sara - Supreme Court Order (X) | | |
| 2074. | 2025-12-01 - Luna, Joe - Supreme Court Order (X) | | |
| 2075. | 2025-12-01 - Oder, Donald - Supreme Court Order (X) | | |
| 2076. | 2025-12-01 - Ricks, Gregory - Supreme Court Order (SBC25O30282) | | |
| 2077. | 2025-12-01 - Kenner, David - Supreme Court Order (SBC25O30519) | | |
| 2078. | 2025-12-01 - Watson, Mark - Supreme Court Order (X) | | |
| 2079. | 2025-12-01 - Zoolalian, Britt - Supreme Court Order (X) | | |
| 2080. | 2025-12-10 - Culpepper, Thaddeus - Supreme Court Order (SBC22C31038) | | (red) |
| 2081. | 2025-12-17 - Givens, Dermot - Supreme Court Order (SBC24O30854) | | |
| **Pending Matters** | | | |
| 2082. | 2024-12-23 – Castro, Mark - Supreme Court Order (SBC22O30173) | (yellow) | |
| 2083. | | | |
| 2084. | | | |
| 2085. | | | |

**Ex. 14:53**

# EXHIBIT 15

# EXHIBIT 15

# VALENZUELA, CYNTHIA – (Contested Decisions)

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | 19/20 imposing costs: 95% | | | | | Gender Statistics: 16/20 = 80% |
| | A* | | | | | |
| 1. | Aviles, Moises | 18O13124 | 2019-07-15 | | Valenzuela | 2019-07-15 - Aviles, Moises - Decision (18O13124) (CV) |
| | B* | | | | | |
| 2. | Beury, Donald | 17O01111 | 2019-04-30 | | Valenzuela | 2019-04-30 - Beury, Donald - Decision (17O01111) (CV) |
| 3. | Boles, James | 17O04960 | 2019-04-02 | | Valenzuela | 2019-04-02 - Boles, James - Decision (17O04960) (CV) |
| | C* | | | | | |
| 4. | Cha, Je | SBC24O30103 | 2024-10-09 | | Valenzuela | 2024-10-09 - Cha, Je - Decision (SBC24O30103) (CV) |
| | D* | | | | | |
| | | | | | | |
| | E* | | | | | |
| | | | | | | |
| | F* | | | | | |
| | | | | | | |
| | G* | | | | | |
| 5. | Geilim-Morales, Gilbert | 17O00029 | 2019-03-04 | | Valenzuela | 2019-03-04 - Geilim-Morales, Gilbert - Decision (17O00029) (CV) |
| 6. | Gurevich, Yelena | 17O03494 | 2020-03-13 | | Valenzuela | 2020-03-13 - Gurevich, Yelena - Decision (17O03494) (CV) |
| | H* | | | | | |
| 7. | Hoffman, Nathan | 12C16181 | 2020-01-15 | | Valenzuela | 2020-01-15 - Hoffman, Nathan - Decision (12C16181) (CV) |
| | I* | | | | | |

**Ex. 15:1**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 8. | Iler, Douglas | 16O13006 | 2019-05-10 | | Valenzuela | 2019-05-10 - Iler, Douglas - Decision (16O13006) (CV) |
| | J* | | | | | |
| | | | | | | |
| | K* | | | | | |
| 9. | Kamran, Mir-Houtan | SBC22O30919 | 2023-12-21 | | | 2023-12-21- Kamran, Mir-Houtan – Decision (SBC22O30919) (CV) |
| 10. | Kostiv, Petro | SBC22O31036 | 2024-02-09 | | Valenzuela | 2024-02-09 - Kostiv, Petro - Decision (SBC22O31036) (CV) |
| | L* | | | | | |
| 11. | Lindner, Charles | 15O15400 | 2020-12-22 | | Valenzuela | 2020-12-22- Lindner, Charles - Decision (15O15400) (CV) |
| | M* | | | | | |
| | | | | | | |
| | N* | | | | | |
| | | | | | | |
| | O* | | | | | |
| | | | | | | |
| | P* | | | | | |
| 12. | Pavone, Benjamin | SBC20O30496 | 2022-02-10 | | Valenzuela | 2022-02-10 - Pavone, Benjamin (SBC20O30496CV) (CV) |
| | R* | | | | | |
| 13. | Reyes, Carlo | 18O10145 | 2019-10-07 | | Valenzuela | 2019-10-07 - Reyes, Carlo - Decision (Default) (18O10145) (CV) |
| 14. | Rossana, Mitchell | SBC23N30325 | 2024-04-30 | | Valenzuela | 2024-04-30 - Rossana, Mitchell - Decision (SBC23N30325) (CV) |
| | S* | | | | | |
| 15. | Shoemaker, Douglas | 18N14227 | 2019-04-02 | | Valenzuela | 2019-04-02 - Shoemaker, Douglas - Decision (18N14227) (CV) |
| | T* | | | | | |
| | | | | | | |
| | V* | | | | | |
| | | | | | | |
| | W* | | | | | |
| 16. | Williams, Kelly | SBC22O30161 | 2023-01-05 | | Valenzuela | 2023-01-05 - Williams, Kelly - Decision (SBC22O30161) (CV) |
| 17. | Wilson, Matthew | 18J14406 | 2019-04-15 | | Valenzuela | 2019-04-15 - Wilson, Matthew - Decision (18J14406) (CV) |
| | Y* | | | | | |

**Ex. 15:2**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 18. | Yang, Elizabeth | SBC22J30501 | | | Valenzuela | 2022-12-01 - Yang, Elizabeth - Decision (SBC22J30501) (CV) |
| | Z* | | | | | |
| 19. | Zuidema, Jeffrey | SBC22O30791 | 2023-03-14 | | Valenzuela | 2023-03-14 - Zuidema, Jeffrey - Decision (SBC22O30791) (CV) |

**Ex. 15:3**

# EXHIBIT 16

# EXHIBIT 16

# SUPREME COURT TRACKER
## (Review Denied)
## (1990-2025)

| NO. | CASE | PET. DEN'D |
|---|---|---|
|  |  |  |
|  | **1990s** |  |
| 1. | 1990-03-15 - Jackson, Gordon - Supreme Court Order (X) | ■ |
| 2. | 1992-01-08 - Burns, Thomas - Supreme Court Order (X) | ■ |
| 3. | 1994-03-17 - Duncan, Irvine - Supreme Court Order (X) | ■ |
| 4. | 1994-06-23 - Wilkowski, James - Supreme Court Order (X) | ■ |
| 5. | 1995-02-02 - Aguiluz, Heroico - Supreme Court Order (X) | ■ |
|  | **2000*** |  |
|  |  |  |
|  | **2001*** |  |
|  |  |  |
|  | **2002*** |  |
| 6. | 2002-02-13 - Dahlz, Justin - Supreme Court Order (X) | ■ |
| 7. | 2002-10-16 - Gillis, Thomas - Supreme Court Order (X) | ■ |
| 8. | 2002-12-11 - McCarthy, Charles - Supreme Court Order (X) | ■ |
|  | **2003*** |  |
| 9. | 2003-01-15 - Olick, David - Supreme Court Order (X) | ■ |
| 10. | 2003-02-25 - Gill, Keith - Supreme Court Order (X) | ■ |
| 11. | 2003-07-23 - Peavey, William - Supreme Court Order (X) | ■ |
| 12. | 2003-12-23 - Gerdts, Marlene - Supreme Court Order (X) | ■ |
|  | **2004*** |  |
| 13. | 2004-02-18 - Davis, James - Supreme Court Order (X) | ■ |
| 14. | 2004-06-23 - Kittrell, Bolden - Supreme Court Order (X) | ■ |
|  | **2005*** |  |
| 15. | 2005-06-15 - Wittenberg, Malcolm - Supreme Court Order (X) | ■ |
| 16. | 2005-09-28 - Drum, Joel - Supreme Court Order (X) | ■ |
|  | **2006*** |  |
| 17. | 2006-01-04 - Dale, Joshua - Supreme Court Order (X) | ■ |
| 18. | 2006-01-25 - Shannon, Terrance - Supreme Court Order (X) | ■ |
| 19. | 2006-06-14 - Wells, Stephine - Supreme Court Order (X) | ■ |
| 20. | 2006-09-07 - Wright, Wyndell John - Supreme Court Order (05N04166) | ■ |
| 21. | 2006-11-15 - Parker, Darnel A. - Supreme Court Order (05O02849) | ■ |
|  | **2007*** |  |

**Ex. 16:1**

| NO. | CASE | PET. DEN'D |
|---|---|---|
| 22. | 2007-01-24 - Van Sickle, David - Supreme Court Order (X) | |
| 23. | 2007-03-28 - Roland, Robert William - Supreme Court Order (05C02767) | |
| 24. | 2007-06-20 - Fahey, Francis - Supreme Court Order (X) | |
| 25. | 2007-10-24 - Riordan, Leroy - Supreme Court Order (X) | |
| | **2008*** | |
| 26. | 2008-02-13 - Hove, Richard - Supreme Court Order (X) | |
| 27. | 2008-10-01 - Loftus, Donald - Supreme Court Order (X) | |
| 28. | 2008-10-22 - Smith, Charles E., Jr. - Supreme Court Order (05O05173) | |
| 29. | 2008-12-17 - Jackson, Lisa Jane - Supreme Court Order (05J05031) | |
| | **2009*** | |
| 30. | 2009-01-14 - Pedersen, Brett Alexander - Supreme Court Order (05O02315) | |
| 31. | 2009-07-22 - Fahy, Frances Thomas - Supreme Court Order (05O05123) | |
| 32. | 2009-10-14 - Pappenfuss, Herbert - Supreme Court Order (X) | |
| 33. | 2009-10-30 - Hofman, Richard - Supreme Court Order (X) | |
| | **2010*** | |
| 34. | 2010-02-03 - Robinson, Kurt Kevin - Supreme Court Order (06O11510) | |
| 35. | 2010-02-03 - Venegas, Armando R. - Supreme Court Order (06O15274) | |
| 36. | 2010-02-10 - McIntosh, Wayne - Supreme Court Order (X) | |
| 37. | 2010-02-19 - Williams, Robert - Supreme Court Order (X) (A) | |
| 38. | 2010-03-24 - Orlyn, Barry M. - Supreme Court Order (05O04575) | |
| 39. | 2010-06-09 - Elkins, John William - Supreme Court Order (05O03819) | |
| 40. | 2010-08-11 - Field, Benjamin Thomas - Supreme Court Order (05O00815) | |
| 41. | 2010-08-20 - Harley, Jamie Leigh - Supreme Court Order (05O03395) | |
| 42. | 2010-10-27 - Venie, David - Supreme Court Order (X) | |
| | **2011*** | |
| 43. | 2011-03-16 - Wanland, Donald - Supreme Court Order (08O13238) | |
| 44. | 2011-03-30 - Sprouls, Frank Patrick - Supreme Court Order (06J15200) | |
| 45. | 2011-04-04 - Williams, Mark - Supreme Court Order (A) (S153990) | |
| 46. | 2011-05-11 - Gottschalk, Ronald - Supreme Court Order (06O10336) | |
| 47. | 2011-05-18 - Wells, Stephine M. - Supreme Court Order (08O13791) | |
| 48. | 2011-06-08 - Lemaire, E. Lynette - Supreme Court Order (05O04522) | |
| 49. | 2011-06-08 - Jones, John Edmund - Supreme Court Order (07O14779) | |
| 50. | 2011-06-15 - Baric, Drago Charles - Supreme Court Order (07O13120) | |
| 51. | 2011-06-22 - Lucas, Paul Jeffery - Supreme Court Order (08O14792) | |
| 52. | 2011-06-29 - Barry, Patricia Joan - Supreme Court Order (06O12210) | |
| 53. | 2011-08-10 - Dickson, Roy - Supreme Court Order (X) | |
| 54. | 2011-08-10 - Falcon, Juan Manuel - Supreme Court Order (05O02161) | |
| 55. | 2011-08-31 - Mitchell-Guttman, Christie - Supreme Court Order (07O12021) | |
| 56. | 2011-10-19 - Dowd, Robert Eaton - Supreme Court Order (07O11955) | |
| 57. | 2011-11-30 - Gjerde, Sean Patrick - Supreme Court Order (Supp.) (08O11776) | |
| | **2012*** | |

Ex. 16:2

| NO. | CASE | PET. DEN'D |
|---|---|---|
| 58. | 2012-02-15 - Dahlin, Tore Bjorn - Supreme Court Order (05O00754) | |
| 59. | 2012-03-21 - Wolf, Mervyn Hillard - Supreme Court Order (06O12547) | |
| 60. | 2012-06-13 - Graham, Albert - Supreme Court Order (X) | |
| 61. | 2012-06-20 - Quann, Warren Wendell - Supreme Court Order (09O11763) | |
| 62. | 2012-06-27 - Oxman, Rickey - Supreme Court Order (07O11968; 07O13696) | |
| 63. | 2012-07-18 - Spivey, Reuben Alphonso - Supreme Court Order (07O11017) | |
| 64. | 2012-10-17 - Artz, Jaeffrey Jack - Supreme Court Order (10N11089) | |
| 65. | 2012-10-24 - Seltzer, Margaret Alice - Supreme Court Order (08O13227) | |
| 66. | 2012-11-19 - Stocker, Frederick - Supreme Court Order (08C14308) | |
| 67. | 2012-12-12 - Dozorsky, Wolodymyr - Supreme Court Order (10O04972) | |
| | **2013*** | |
| 68. | 2013-01-16 - Healy, Kevin - Supreme Court Order (X) | |
| 69. | 2013-02-20 - Spadaro, Charlotte - Supreme Court Order (X) | |
| 70. | 2013-02-27 - Levine, Howard Roy - Supreme Court Order (0917404) | |
| 71. | 2013-02-27 - Taylor, Swazi - Supreme Court Order (X) | |
| 72. | 2013-03-26 - Ottosi, Paul - Supreme Court Order (X) | |
| 73. | 2013-03-27 - Nadim, Mohammad - Supreme Court Order (08O13001;08O14002) | |
| 74. | 2013-04-17 - Elstead, John Clifton - Supreme Court Order (08O11040) | |
| 75. | 2013-06-24 - Lapin, Sharon - Supreme Court Order (X) | |
| 76. | 2013-06-26 - Dickson, Roy - Supreme Court Order (X) | |
| 77. | 2013-07-10 - Matthews, Eugene - Supreme Court Order (X) | |
| 78. | 2013-08-14 - Schoth, Karl - Supreme Court Order (X) | |
| 79. | 2013-08-21 - Haltom, Victor - Supreme Court Order (X) | |
| 80. | 2013-08-28 - Song, John - Supreme Court Order (X) | |
| | **2014*** | |
| 81. | 2014-01-29 - Darden, Timothy - Supreme Court Order (X) | |
| 82. | 2014-02-11 - Davis, Breyon - Supreme Court Order (X) | |
| 83. | 2014-02-19 - Harper, David - Supreme Court Order (X) | |
| 84. | 2014-03-12 - Lane, Gary - Supreme Court Order (X) | |
| 85. | 2014-05-14 - Karnazes, Elizabeth - Supreme Court Order (X) | |
| 86. | 2014-06-11 - Aguiluz, Heroico - Supreme Court Order (X) | |
| 87. | 2014-06-11 - Liberty, Louis - Supreme Court Order (X) | |
| 88. | 2014-06-11 - Schwartz, Donald - Supreme Court Order (X) | |
| 89. | 2014-06-18 - Parsa, James - Supreme Court Order (X) | |
| 90. | 2014-07-09 - Huang, Jack - Supreme Court Order (X) | |
| 91. | 2014-07-09 - Look, William - Supreme Court Order (X) | |
| 92. | 2014-07-16 - Scheer, Marilyn - Supreme Court Order (X) | |
| 93. | 2014-09-10 - Reiner, Martin - Supreme Court Order (X) | |
| 94. | 2014-09-17 - Kucsan, Brian - Supreme Court Order (X) | |
| 95. | 2014-10-22 - Alexander, Jon - Supreme Court Order (X) | |
| 96. | 2014-10-22 - Hewitt, Robbin - Supreme Court Order (X) | |

**Ex. 16:3**

| NO. | CASE | PET. DEN'D |
|---|---|---|
| 97. | 2014-10-29 - Kitay, Robert - Supreme Court Order (X) | |
| | **2015\*** | |
| 98. | 2015-01-14 - Ferko, Richard - Supreme Court Order (X) | |
| 99. | 2015-01-14 - Naegele, Timothy - Supreme Court Order (X) | |
| 100. | 2015-03-12 - Hernandez, Cynthia - Supreme Court Order (A) (X) | |
| 101. | 2015-03-18 - Missud, Patrick - Supreme Court Order (X) | |
| 102. | 2015-04-15 - Lazo, Marc - Supreme Court Order (X) | |
| 103. | 2015-04-22 - Shieh, Liang - Supreme Court Order (X) | |
| 104. | 2015-06-24 - Elkins, John - Supreme Court Order (X) | |
| 105. | 2015-08-19 - Kammerer, Jennifer - Supreme Court Order (X) | |
| 106. | 2015-08-26 - Cayce, Christopher - Supreme Court Order (11O15647) | |
| 107. | 2015-08-27 - Dencer, Frederick - Supreme Court Order (X) | |
| 108. | 2015-09-09 - Genis, Darryl - Supreme Court Order (X) | |
| 109. | 2015-09-09 - Gustin, Dale - Supreme Court Order (X) | |
| 110. | 2015-09-09 - Scurrah, Robert - Supreme Court Order (X) | |
| 111. | 2015-09-09 - Toledano, James - Supreme Court Order (X) | |
| 112. | 2015-09-23 - Ezor, Edward - Supreme Court Order (X) | |
| 113. | 2015-09-30 - Berglund, George - Supreme Court Order (X) | |
| 114. | 2015-10-01 - Genis, Darreyl - Supreme Court Order (A) (X) | |
| 115. | 2015-10-21 - Natanzi, Omid - Supreme Court Order (S227815) | |
| 116. | 2015-10-28 - Bolanos, Aldon - Supreme Court Order (X) | |
| 117. | 2015-10-28 - Friedman, Nathaniel - Supreme Court Order (X) | |
| 118. | 2015-11-10 - Dickstein, Jeffrey - Supreme Court Order (X) | |
| 119. | 2015-11-18 - Haddix, Kenneth - Supreme Court Order (X) | |
| | **2016\*** | |
| 120. | 2016-01-20 - Haycock, Don - Supreme Court Order (X) | |
| 121. | 2016-02-17 - Dickson, Lorraine - Supreme Court Order (X) | |
| 122. | 2016-02-17 - Smith, Phillip - Supreme Court Order (X) | |
| 123. | 2016-02-24 - Marman, Joseph - Supreme Court Order (X) | |
| 124. | 2016-03-16 - Emerich, Melvin - Supreme Court Order (X) | |
| 125. | 2016-04-13 - Gordon, Robert - Supreme Court Order (X) | |
| 126. | 2016-04-27 - Davis, Gerald - Supreme Court Order (X) | |
| 127. | 2016-04-27 - Greenfield, Bruce - Supreme Court Order (08O10074) | |
| 128. | 2016-05-25 - Kinney, Charles - Supreme Court Order (X) | |
| 129. | 2016-06-08 - Engel, Julius - Supreme Court Order (X) | |
| 130. | 2016-07-20 - Elstead, John - Supreme Court Order (X) | |
| 131. | 2016-08-17 - Taylor, Johnnie - Supreme Court Order (X) | |
| 132. | 2016-08-24 - Crawford, Douglas - Supreme Court Order (X) | |
| 133. | 2016-08-31 - Carver, Michael - Supreme Court Order (X) | |
| 134. | 2016-10-12 - Jorgensen, Barry - Supreme Court Order (X) | |
| 135. | 2016-10-26 - Chang, Qin - Supreme Court Order (X) | |

**Ex. 16:4**

| NO. | CASE | PET. DEN'D |
|---|---|---|
| 136. | 2016-12-02 - Dickson, Roy - Supreme Court Order (X) | |
| | **2017*** | |
| 137. | 2017-02-15 - Engel, Julius - Supreme Court Order (X) | |
| 138. | 2017-02-15 - Mason, Reginald - Supreme Court Order (X) | |
| 139. | 2017-02-16 - Smith, Phillip - Supreme Court Order (X) | |
| 140. | 2017-03-01 - Robertson, Wade - Supreme Court Order (X) | |
| 141. | 2017-03-01 - Sheer, Marilyn - Supreme Court Order (X) | |
| 142. | 2017-03-10 - Klugman, Steven - Supreme Court Order (X) | |
| 143. | 2017-03-22 - Sklar, Lori - Supreme Court Order (X) | |
| 144. | 2017-03-22 - Ward, William - Supreme Court Order (X) | |
| 145. | 2017-04-12 - Partington, Earle - Supreme Court Order (X) | |
| 146. | 2017-05-10 - Klugman, Steven - Supreme Court Order (X) | |
| 147. | 2017-05-17 - Barry, Patricia - Supreme Court Order (X) | |
| 148. | 2017-05-17 - Schooler, Jane - Supreme Court Order (X) | |
| 149. | 2017-06-14 - Engel, Julius - Supreme Court Order (X) | |
| 150. | 2017-07-26 - Luti, Anthony - Supreme Court Order (X) | |
| 151. | 2017-08-09 - Kun, Albert - Supreme Court Order (X) | |
| 152. | 2017-08-30 - Herring, Ann - Supreme Court Order (X) | |
| 153. | 2017-10-18 - Bolanos, Alden - Supreme Court Order (X) | |
| 154. | 2017-11-15 - Brandt, Benjamin - Supreme Court Order (X) | |
| 155. | 2017-11-29 - Genis, Darryl - Supreme Court Order (X) | |
| 156. | 2017-12-13 - Albert, Lenore - Supreme Court Order (X) | |
| 157. | 2017-12-20 - Eldridge, Deborah - Supreme Court Order (X) | |
| | **2018*** | |
| 158. | 2018-01-31 - Van Dusen, Jan - Supreme Court Order (X) | |
| 159. | 2018-03-21 - Kaighn, Gregory - Supreme Court Order (X) | |
| 160. | 2018-05-09 - Cole, Bruce - Supreme Court Order (X) | |
| 161. | 2018-06-27 - Peters, Jordan - Supreme Court Order (X) | |
| 162. | 2018-08-29 - Weitz, Andrew Mark - Supreme Court Order (14O05994) | |
| 163. | 2018-09-19 - Cody, John - Supreme Court Order (X) | |
| 164. | 2018-09-26 - Stoller, Michael - Supreme Court Order (X) | |
| 165. | 2018-10-24 - Weiner, Steven - Supreme Court Order (X) | |
| 166. | 2018-11-20 - Golden, Stephen - Supreme Court Order (X) | |
| 167. | 2018-11-20 - Sullivan, Richard - Supreme Court Order (X) | |
| 168. | 2018-12-12 - Kun, Albert - Supreme Court Order (X) | |
| 169. | 2018-12-18 - Sprouls, Frank - Supreme Court Order (X) | |
| 170. | 2018-12-19 - Luti, Anthony - Supreme Court Order (X) | |
| | **2019*** | |
| 171. | 2019-01-02 - Nassar, Sandra - Supreme Court Order (X) | |
| 172. | 2019-01-30 - Robinson, Kurt - Supreme Court Order (X) | |
| 173. | 2019-02-27 - Deaguilera, James - Supreme Court Order (X) | |

**Ex. 16:5**

| NO. | CASE | PET. DEN'D |
|---|---|---|
| 174. | 2019-07-10 - Albert, Lenore - Supreme Court Order (X) | |
| 175. | 2019-07-10 - Fuery, John - Supreme Court Order (X) | |
| 176. | 2019-10-09 - Weiss, Mogeed - Supreme Court Order (X) | |
| 177. | 2019-10-16 - Haddon, Marc - Supreme Court Order (X) | |
| 178. | 2019-10-30 - Cunningham, Archibald - Supreme Court Order (X) | |
| 179. | 2019-12-11 - Esposito, Edward Louis - Supreme Court Order (18016416) | |
| 180. | 2019-12-18 - Khaliq, Imran - Supreme Court Order (X) | |
| | **2020*** | |
| 181. | 2020-01-20 - Bhardwaj, Sanjay - Supreme Court Order (X) | |
| 182. | 2020-04-01 - Engel, Julius - Supreme Court Order (X) | |
| 183. | 2020-05-27 - Harris, Barbara - Review Denial (X) | |
| 184. | 2020-08-20 - Hoffman, Peter - Supreme Court Order (X) | |
| 185. | 2020-09-09 - Smart, Dean - Supreme Court Order (X) | |
| 186. | 2020-10-21 - Hubbard, Scottlynn - Supreme Court Order (X) | |
| 187. | 2020-12-09 - Haynes, Gregory - Supreme Court Order (16J17208) | |
| | **2021*** | |
| 188. | 2021-02-10 - Singh, Kulvinder - Supreme Court Order (16O16374) | |
| 189. | 2021-02-21 - Roshan, Peyman - Supreme Court Order (17O01202) | |
| 190. | 2021-03-30 - Potere, Michael - Supreme Court Order (X) | |
| 191. | 2021-04-14 - Schwarcz, David - Supreme Court Order (X) | |
| 192. | 2021-05-26 - Pavone, Benjamin - Supreme Court Order (X) | |
| 193. | 2021-06-16 - MacNaughten, Richard - Supreme Court Order (X) | |
| 194. | 2021-06-30 - Robinson, Russell - Supreme Court Order (X) | |
| 195. | 2021-07-14 - Stewart, Troy - Supreme Court Order (SBC15O15655) | |
| 196. | 2021-07-21 - Chavez, Fernando - Supreme Court Order (SBC19O30131) | |
| 197. | 2021-08-11 - Li, James - Supreme Court Order (X) | |
| 198. | 2021-09-22 - Thomas, Jeffrey - Supreme Court Review Denial (SBC15O14870) | |
| 199. | 2021-11-10 - Healy, Kevin - Supreme Court Order (X) | |
| 200. | 2021-12-15 - Herich, Emil - Supreme Court Order (X) | |
| | **2022*** | |
| 201. | 2022-02-23 - Lanphier, Steele - Supreme Court Order (SBC19O30564) | |
| 202. | 2022-04-27 - Shkolnikov, Edward - Supreme Court Order (SBC20O30528) | |
| 203. | 2022-05-18 - Deaguilera, James - Supreme Court Order (X) | |
| 204. | 2022-06-29 - Pratt, Chad - Supreme Court Order (X) | |
| 205. | 2022-07-20 - Jones, Derek - Supreme Court Order (X) | |
| 206. | 2022-07-22 - Genis, Darryl - Supreme Court Order (16C17054) | |
| 207. | 2022-08-17 - Edgar, Donald - Supreme Court Order (X) | |
| 208. | 2022-08-24 - Rodriguez, Robert - Supreme Court Order (X) | |
| 209. | 2022-09-28 - Carreras, Paul - Supreme Court Order (X) | |
| 210. | 2022-10-12 - Lund, Eric - Supreme Court Order (X) | |
| 211. | 2022-11-16 - Deaguilera, James - Supreme Court Order (S276687) | |

**Ex. 16:6**

| NO. | CASE | PET. DEN'D |
|---|---|---|
| 212. | 2022-11-16 - Raimondo, Anthony - Supreme Court Order (X) | |
| 213. | 2022-12-28 - Erwin, Christopher - Supreme Court Order (SBC20O30279) | |
| | **2023*** | |
| 214. | 2023-01-18 - Schwartzberg, Sagi - Supreme Court Order (X) | |
| 215. | 2023-01-23 - Thomas, Jeffrey - Supreme Court Order (X) | |
| 216. | 2023-03-15 - Sanai, Cyrus - Supreme Court Order (X) | |
| 217. | 2023-04-12 - Madhessian, Rita - Supreme Court Order (X) | |
| 218. | 2023-04-19 - Salzwedel, William - Supreme Court Order (15O15162) | |
| 219. | 2023-04-28 - Jimenez, Eric - Supreme Court Order (SBC21C30086) | |
| 220. | 2023-06-14 - Madden, Alison - Supreme Court Order (SBC19C30278) | |
| 221. | 2023-07-12 - Raimondo, Anthony - Supreme Court Order (X) | |
| 222. | 2023-08-16 - Kimmel, Stanley - Supreme Court Order (SBC20O30782) | |
| 223. | 2023-09-20 - Mogan, Michael - Supreme Court Order (X) | |
| 224. | 2023-10-18 - Stahl, Norbert - Supreme Court Order (X) | |
| 225. | 2023-11-08 - Pavone, Benjamin - Supreme Court Order (X) (A) | |
| 226. | 2023-12-20 - Abdeljawad, Eyad - Supreme Court Order (X) | |
| | **2024*** | |
| 227. | 2024-01-10 - Harper, Gregory - Supreme Court Order (17O01313) | |
| 228. | 2024-01-24 - Kelley, Troy - Supreme Court Order (X) | |
| 229. | 2024-03-12 - Thibault, Elana - Supreme Court Order (SBC22O30033) | |
| 230. | 2024-04-10 - Smith, Spencer - Supreme Court Order (X) | |
| 231. | 2024-05-01 - Derieg, George - Supreme Court Order (SBC21O30532) | |
| 232. | 2024-06-17 - Albert, Lenore - Supreme Court Order (SBC22030348) | |
| 233. | 2024-07-10 - Spielbauer, Thomas - Supreme Court Order | |
| 234. | 2024-07-24 - McCann, Robert - Supreme Court Order (SBC22O30110) | |
| 235. | 2024-10-16 - Oliveri, Matthew - Supreme Court Order (SBC22O30792) | |
| 236. | 2024-10-18 - Tajon, Joan - Supreme Court Order (X) | |
| 237. | 2024-11-26 - Vargas, Fernando - Supreme Court Order (SBC22O30280) | |
| | **2025*** | |
| 238. | 2025-03-12 - Krause, Ernest - Supreme Court Order (SBC23O30697) | |
| 239. | 2025-06-11 - Griffin, Keith - Supreme Court Order (X) | |
| 240. | 2025-06-18 - Trimarche, Gregory - Supreme Court Order (SBC23O30827) | |
| 241. | 2025-07-09 - Pratt, Chad - Supreme Court Order (X) | |
| 242. | 2025-07-30 - Everett, Daniel - Supreme Court Order (X) | |
| 243. | 2025-07-30 - Folke, Duane - Supreme Court Order (SBC24030514) | |
| 244. | 2025-07-30 - Kostiv, Petro - Supreme Court Order (X) | |
| 245. | 2025-08-20 - Du Wors, David - Supreme Court Order (X) | |
| 246. | 2025-09-03 - Olin, Jeffrey - Supreme Court Order (X) | |
| 247. | 2025-12-10 - Culpepper, Thaddeus - Supreme Court Order (SBC22C31038) | |

**Ex. 16:7**

# EXHIBIT 17

# EXHIBIT 17

# STATE BAR SALARY TABLE

| NO. | YEAR | EMPLOYEE | SALARY | TOTAL COMP. |
|---|---|---|---|---|
| 1. | 2024 | Cardona, George | $346,769 | $404,406 |
| 2. | 2024 | Carling, Duncan | $192,161 | $232,192 |
| 3. | 2024 | Chan, Cindy | $223,492 | $267,265 |
| 4. | 2024 | Chawla, Manjari | $223,413 | $251,786 |
| 5. | 2024 | Ellis, Mia | $263,225 | $292,663 |
| 6. | 2024 | Grunberg, Rachel | $188,525 | $227,024 |
| 7. | 2024 | Hackert, Alex | $197,571 | $224,992 |
| 8. | 2024 | Hershkowitz, Donna | $328,652 | $378,722 |
| 9. | 2024 | Honn, Richard | $248,784 | $283,326 |
| 10. | 2024 | Jagard, Christopher | $300,431 | $330,012 |
| 11. | 2024 | Kumar, Anand | $240,267 | $286,115 |
| 12. | 2024 | Lawrence, Melanie | $278,648 | $359,702 |
| 13. | 2024 | Massey, Drew | $240,267 | $289,883 |
| 14. | 2024 | McFarlane, Sherell | $271,617 | $316,783 |
| 15. | 2021 | Moawad, Steven | $259,298 | $343,117 |
| 16. | 2024 | Morgenstern, Eli | $239,097 | $273,388 |
| 17. | 2024 | Ribas, Tamara | $243,287 | $282,739 |
| 18. | 2020 | Ritsema, Kristin | $185,124 | $229,198 |
| 19. | 2024 | Roland, Yvette | $227,053 | $277,835 |
| 20. | 2024 | Saab, Dennis | $224,421 | $280,184 |
| 21. | 2024 | Vasicek, Andrew | $181,037 | $209,497 |
| 22. | 2024 | Wang, Phong | $222,443 | $266,070 |
| 23. | 2024 | Worthington, Alison | $215,730 | $310,955 |

# EXHIBIT 18

# EXHIBIT 18

# HEARING DEPARTMENT DECISIONS
## (Richard A. Honn - Contested)

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | 2026-04-01:<br>32/33 contested discipline cases costs imposed: 97%. | | | | Gender: 27/33 men: 82% | |
| | A* | | | | | |
| 1. | Agnew, Jeffrey | 07O10024 | 2011-05-04 | | Honn | 2011-05-04 - Agnew, Jeffrey - Decision (07010024) (RAH) |
| 2. | Allen, Marie | 06O13329 | 2008-09-24 | | Honn | 2008-09-24 - Allen, Marie - Decision (06O13329) (RAH) |
| | B* | | | | | |
| 3. | Bloomfield, Karl | 05O00861 | 2008-10-14 | | Honn | 2008-10-14 - Bloomfield, Karl - Decision (05O00861) (RAH) |
| 4. | Boag, Patricia | 06O12427 | 2011-05-11 | | Honn | 2011-05-11 - Boag, Patricia - Decision (06O12427) (RAP) |
| | C* | | | | | |
| 5. | Campa, Drago | 07O10063 | 2009-08-25 | | Honn | 2009-08-25 - Campa, Drago - Decision (07O10063) (RAH) |
| 6. | Cook, Ulysses | 06O10243 | 2008-12-02 | | Honn | 2008-12-02 - Cook, Ulysses - Decision (06O10243) (RAH) |
| | D* | | | | | |
| 7. | Downey, Stephen | 05O04653 | 2008-10-08 | | Honn | 2008-10-08 - Downey, Stephen - Decision (05O04653) (RAH) |
| | E* | | | | | |
| | | | | | | |
| | F* | | | | | |
| 8. | Fazzi, Louis | 06O13578 | 2009-06-11 | | Honn | 2009-06-11 - Fazzi, Louis - Decision (06O13578) (RAH) |
| | G* | | | | | |
| 9. | Glaser, Daniel | 07O14179 | 2008-10-24 | | Honn | 2008-10-24 - Glaser, Daniel - Decision (07O14179) (RAH) |
| | H* | | | | | |

**Ex. 18:1**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 10. | Hildebrant, Scott | 06H10722 | 2006-10-02 | | Honn | 2006-10-02 - Hildebrant, Scott - Decision (06H10722) (RAH) |
| 11. | Huang, Daniel | 06O15355 | 2009-12-02 | | Honn | 2009-12-02 - Huang, Daniel - Decision (06O15355) (RAH) |
| | I* | | | | | |
| 12. | Isaacson, Lon | 08O10684 | 2012-02-06 | | Honn | 2012-02-06 - Isaacson, Lon - Decision (08O10684) (RAH) |
| | J* | | | | | |
| 13. | Jensen, Bradley | 06O13965 | 2010-12-06 | | Honn | 2010-12-06 - Jensen, Bradley - Decision (06O13965) (RAH) |
| | K* | | | | | |
| 14. | Kerlan, Jason | 06O11986 | 2008-02-07 | | Honn | 2008-02-07 - Kerlan, Jason - Decision (06O11986) (RAH) |
| | L* | | | | | |
| 15. | Lewis, Lawrence | 05O03450 | 2011-09-27 | | Honn | 2011-09-27 - Lewis, Lawrence - Decision (05O03450) (RAH) |
| | M* | | | | | |
| 16. | Matranga, Stacey | 06O15426 | 2010-05-07 | | Honn | 2010-05-07 - Matranga, Stacey - Decision (06O15426) (RAH) |
| 17. | Miller, James | 06O12424 | 2008-05-14 | | Honn | 2007-10-15 - Miller, James - Decision (06O12424) (Default) (RAH) |
| | N* | | | | | |
| | | | | | | |
| | O* | | | | | |
| 18. | Ortega, David | 08N13044 | 2010-01-29 | | Honn | 2010-01-29 - Ortega, David - Decision (08N13044) (RAH) |
| | P* | | | | | |
| | | | | | | |
| | Q* | | | | | |
| 19. | Quesada, Edward | 06O12100 | 2011-06-12 | | Honn | 2011-06-12 - Quesada, Edward - Decision (06O12100) (RAH) |
| | R* | | | | | |
| 20. | Robinson, Juliette | 06O14335 | 2010-08-30 | | Honn | 2010-08-30 - Robinson, Juliette - Decision (06O14335) (RAH) |
| 21. | Rodriguez, Rosemary | 06O14476 | 2012-02-08 | | Honn | 2012-02-08 - Rodriguez, Rosemary - Decision (06O14476 (RAH)) |
| 22. | Regolo, Attilio | 08O13116 | 2009-07-13 | | Honn | 2009-07-13 - Regolo, Attilio - Decision (08O13116) (RAH) |
| 23. | Rudnick, Robert D. | 03R03557 | | | Honn | 2007-02-08 - Rudnick, Robert D. - Review Dept. (03R03557) |
| | S* | | | | | |
| 24. | Schweizer, William | 08O12108 | 2012-02-16 | | Honn | 2012-02-16 - Schweizer, William - Decision (08O12108) (RAH) |
| 25. | Silva, David | 08N12671 | 2011-07-28 | | Honn | 2011-07-28 - Silva, David - Decision (08N12671) (RAH) |

**Ex. 18:2**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 26. | Smith, Evan | 08O10983 | 2011-10-21 | | Honn | 2011-10-21 - Smith, Evan - Decision (08O10983) (RAH) |
| 27. | Smith, Jon | 05O05201 | 2008-05-21 | | Honn | 2008-05-21 - Smith, Jon - Decision (05O05201) (RAH) |
| 28. | Smith, Jon | 07O13699 | 2011-07-28 | | Honn | 2011-07-28 - Smith, Jon - Decision (07O13699) (RAH) |
| 29. | Staten, Jacqueline | 06O14466 | 2010-12-21 | | Honn | 2010-12-21 - Staten, Jacqueline - Decision (06O14466) (RAH) |
| 30. | Stocker, Frederick | 08C14308 | 2011-09-13 | | Honn | 2011-09-13 - Stocker, Frederick - Decision (08C14308) (RAH) |
| 31. | Sullivan, Harold | 08C12029 | 2009-08-14 | | Honn | 2009-08-14 - Sullivan, Harold - Decision (08C12029) (RAH) |
| | T* | | | | | |
| 32. | Tamura, Ronald | 06C15509 | 2010-04-07 | | Honn | 2010-04-07 - Tamura, Ronald - Decision (06C15509) (RAH) |
| | V* | | | | | |
| 33. | | | | | | |
| | W* | | | | | |
| 34. | | | | | | |
| | Y* | | | | | |
| 35. | | | | | | |
| | Z* | | | | | |
| 36. | | | | | | |
| | V* | | | | | |

**Ex. 18:3**

# EXHIBIT 19

# EXHIBIT 19

# HEARING DEPARTMENT DECISIONS
## (Patricia McElroy)

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | Contested decisions 12/15: 80% | | | | | Gender: 24/29 men: 83% |
| | A* | | | | | |
| 1. | Arras, Christopher | 10O09894 | 2012-10-04 | 🟩 | McElroy | 2012-10-04 - Arras, Christopher - Decision (10O09894) (PEM) |
| | B* | | | | | |
| 2. | Baer, David Walter | 06C14253 | 2007-06-22 | 🟥 | McElroy | 2007-06-22 - Baer, David Walter - Decision (06C14253) (PEM) |
| 3. | Barone, Michael | 06R12337 | 2008-03-12 | ⬜ | McElroy | 2008-03-12 - Barone, Michael - Decision (Reinstatement) (06R12337) (PEM) |
| | C* | | | | | |
| 4. | Cavallo, Joseph | 10V09261 | 2011-01-11 | ⬜ | McElroy | 2011-01-11 - Cavallo, Joseph - Decision (10V09261) (Reinstatement) (PEM) |
| 5. | Chang, Te Jung | 06O13891 | 2009-04-07 | ⬜ | McElroy | 2009-04-07 - Chang, Te Jung - Decision (Default) (06O13891) (PEM) |
| 6. | Cline, Jeffrey | 06V14745 | 2009-06-24 | ⬜ | McElroy | 2009-06-24 - Cline, Jeffrey - Decision (Reinstatement) (06V14745) (PEM) |
| | D* | | | | | |
| 7. | Do, Michael | 04V10608 | 2004-05-13 | ⬜ | McElroy | 2004-05-13 - Do, Michael H. - Decision (Reinstatement) (04V10608) (PEM) |
| | E* | | | | | |
| 8. | Eldridge, Deborah | 12O13553 | 2016-08-29 | 🟩 | McElroy | 2016-08-29 - Eldridge, Deborah - Decision (12O13553) (PEM) |
| | F* | | | | | |
| 9. | Field, Benjamin | 05O00815 | 2009-02-01 | 🟩 | McElroy | 2009-02-01 - Field, Benjamin T. - Decision (05O00815) (PEM) |
| | G* | | | | | |
| 10. | Goldman, Ronald | 06O11449 | 2008-01-03 | 🟥 | McElroy | 2008-01-03 - Goldman, Ronald Paul - Decision (06O11449) (PEM) |
| | H* | | | | | |
| 11. | Haycock, Douglas | 10O09632 | 2012-10-16 | 🟩 | McElroy | 2012-10-16 - Haycock, Douglas - Decision (10O09632) (PEM) |

**Ex. 19:1**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 12. | Hoang, Quincy | 06O12856 | 2007-08-15 | | McElroy | 2007-08-15 - Hoang, Quincy N. - Decision (Default) (06O12856) (PEM) |
| | I* | | | | | |
| 13. | | | | | | |
| | J* | | | | | |
| 14. | Johnson, David | 11O11316 | 2012-11-30 | | McElroy | 2012-11-30 - Johnson, David - Decision (11O11316) (PEM) |
| | K* | | | | | |
| 15. | | | | | | |
| | L* | | | | | |
| 16. | Lemaire, E. Lynette | 05O04522 | 2011-02-11 | | McElroy | 2011-02-11 - Lemaire, E. Lynette - Decision (Default) (05O04522) (PEM) |
| | M* | | | | | |
| 17. | Marquez, Francisco | 11O16244 | 2014-04-10 | | McElroy | 2014-04-10 - Marquez, Francisco - Decision (11O16244) (PEM) |
| 18. | McGrew, Spencer | 06O13177 | 2007-08-09 | | McElroy | 2007-08-09 - McGrew, Spencer - Decision (Default) (06O13177) (PEM) |
| | N* | | | | | |
| 19. | Nesin, Robert | 05O01687 | 2006-02-08 | | McElroy | 2006-02-08 - Nesin, Robert Brett - Decision (Default) (05O01687) (PEM) |
| | O* | | | | | |
| 20. | | | | | | |
| | P* | | | | | |
| 21. | Palik, Anthony | 10O09103 | 2012-09-13 | | McElroy | 2012-09-13 - Palik, Anthony - Decision (10O09103) (PEM) |
| 22. | Peterson, Paul | 10O11347 | 2012-09-17 | | McElroy | 2012-09-17 - Peterson, Paul - Decision (10O11347) (PEM) |
| | R* | | | | | |
| 23. | | | | | | |
| | S* | | | | | |
| 24. | Sack, Robert | 13O14697 | 2015-09-22 | | McElroy | 2015-09-22 - Sack, Robert - Decision (13O14697) (PEM) |
| 25. | Schoth, Kenneth | 110O10777 | 2012-05-19 | | McElroy | 2012-05-19 - Schoth, Kenneth - Decision (110O10777) (PEM) |
| 26. | Silverstein, Cynthia | 05O00417 | 2008-11-13 | | McElroy | 2008-11-13 - Silverstein, Cynthia B. - Decision (Default) (05O00417) (PEM) |
| 27. | Smith, Charles | 05O05173 | 2008-03-25 | | McElroy | 2008-03-25 - Smith, Charles E., Jr. - Decision (05O05173) (PEM) |
| 28. | Spence, G. Bruce | 06O10113 | 2006-09-22 | | McElroy | 2006-09-22 - Spence, G. Bruce - Decision (Default) (06O10113) (PEM) |
| 29. | Sprouls, Frank | 06J15200 | 2009-08-13 | | McElroy | 2009-08-13 - Sprouls, Frank - Decision (06J15200) (PEM) |
| | T* | | | | | |

**Ex. 19:2**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 30. | Taherian, Saman | 05R02248 | 2006-02-28 | | McElroy | 2006-02-28 - Taherian, Saman - Decision (Reinstatement) (05R02248) (PEM) |
| | U* | | | | | |
| 31. | Unger, Matthew | 06O10557 | 2007-03-26 | | McElroy | 2007-03-26 - Unger, Matthew S. - Decision (Default) (06O10557) (PEM) |
| | W* | | | | | |
| 32. | Winspur, Michelle | 10O09340 | 2014-04-28 | | McElroy | 2014-04-28 - Winspur, Michelle – Stipulation (10O09340) (PEM) |
| 33. | Wood, Patrick | 06O15058 | 2007-12-19 | | McElroy | 2007-12-19 - Wood, Patrick - Decision (Default) (06O15058) (PEM) |
| | Y* | | | | | |
| 34. | | | | | | |
| | Z* | | | | | |

**Ex. 19:3**

# EXHIBIT 20

# EXHIBIT 20

# HEARING DEPARTMENT DECISIONS
# (RICHARD PLATEL)

| NO. | LAST, FIRST | CASE NO. | DECS'N DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | 14 decisions<br>11 disciplinary/cost contested decisions<br>11/11 impose costs<br>100% rate of imposing costs. | | | | | Gender: 13/14 men: 93% |
| | A* | | | | | |
| 1. | | | | | | |
| | B* | | | | | |
| 2. | Boag, Patricia | 06O12427 | 2011-05-11 | | Platel | 2011-05-11 - Boag, Patricia - Decision (06O12427) (RAP) |
| | C* | | | | | |
| 3. | Cohen, Matthew | 10V05459 | 2010-09-08 | | Platel | 2010-09-08 - Cohen, Matthew - Reinstatement Decision (10V05459) (RAP) |
| | D* | | | | | |
| 4. | | | | | | |
| | E* | | | | | |
| 5. | | | | | | |
| | F* | | | | | |
| 6. | Feldman, William | 10O09958 | 2012-07-12 | | Platel | 2012-07-12 - Feldman, William - Decision (10O09958) (RAP) |
| | G* | | | | | |
| 7. | Gonzalez, Zachary | 10TE02282 | 2010-08-13 | | Platel | 2010-08-13 - Gonzalez, Zachary - Decision (Inactive) (10TE02282) (RAP) |
| | H* | | | | | |
| 8. | Hollingsworth, Stephen | 05003574 | 2008-10-27 | | Platel | 2008-10-27 - Hollingsworth, Stephen - Decision (05003574) (RAP) |
| 9. | Hurley, Richard | 10V03643 | 2010-06-19 | | Platel | 2010-06-19 - Hurley, Richard - Reinstatement Decision (10V03643) (RAP) |

**Ex. 20:1**

| NO. | LAST, FIRST | CASE NO. | DECS'N DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | I* | | | | | |
| 10. | | | | | | |
| | J* | | | | | |
| 11. | | | | | | |
| | K* | | | | | |
| 12. | | | | | | |
| | L* | | | | | |
| 13. | Lee, Benjamin | 05O04748 | 2009-06-19 | | Platel | 2009-06-19 - Lee, Benjamin - Decision (05O04748) (RAP) |
| 14. | Luetto, John | 05004218 | 2011-01-18 | | Platel | 2011-01-18 - Luetto, John - Decision (05004218) (RAP) |
| | M* | | | | | |
| 15. | Muck, Curtis | 10O08958 | 2010-10-11 | | Platel | 2010-10-11 - Muck, Curtis - Decision (10O08958) (RAP) |
| | N* | | | | | |
| 16. | Nikas, Richard | 10O11074 | 2010-08-13 | | Platel | 2010-08-13 - Nikas, Richard - Decision (10O11074) (RAP) |
| | O* | | | | | |
| 17. | | | | | | |
| | P* | | | | | |
| 18. | | | | | | |
| | R* | | | | | |
| 19. | Rucker, Fred | 10O11036 | 2012-10-26 | | Platel | 2012-10-26 - Rucker, Fred - Decision (10O11036) (RAP) |
| | S* | | | | | |
| 20. | Schroth, Robert | 05C03326 | 2010-06-28 | | Platel | 2010-06-28 - Schroth, Robert - Decision (05C03326) (RAP) |
| 21. | Seuthe, Eric | 11O19427 | 2014-02-05 | | Platel | 2014-02-05 - Seuthe, Eric - Decision (11O19427) (RAP) |
| | T* | | | | | |
| 22. | | | | | | |
| | V* | | | | | |
| 23. | | | | | | |
| | W* | | | | | |
| 24. | | | | | | |
| | Y* | | | | | |

Ex. 20:2

| NO. | LAST, FIRST | CASE NO. | DECS'N DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 25. | York, Michael | 05O04605 | 2010-05-05 | | Platel | 2010-05-05 - York, Michael - Decision (05O04605) (RAH) |
| | Z* | | | | | |
| 26. | | | | | | |

**Ex. 20:3**

# EXHIBIT 21

# EXHIBIT 21

# ROLAND, YVETTE – CASE TRACKER (Contested)

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | Contested Cases 76 total cases 75/76 costs: 98.6% costs | | | | | Gender Notes: 16/76 men: 78.9% |
| | A* | | | | | |
| 1. | Albert, Lenore | 15O11311 | 2016-10-19 | | Roland | 2016-10-19 - Albert, Lenore - Decision (15O11311) (YR) |
| 2. | Albert, Lenore | 16O12958 | 2019-01-09 | | Roland | 2019-01-09 - Albert, Lenore - Decision (16O12958) (YDR) |
| 3. | Anderson, Ernest | 17O04749 | 2019-03-05 | | Roland | 2019-03-05 - Anderson, Ernest - Decision (17O04749) (YR) |
| | B* | | | | | |
| 4. | Bartlett, Robert | 17O05188 | 2022-07-06 | | Roland | 2022-07-06 - Bartlett, Robert - Decision (17O05188) (YR) |
| 5. | Barilla, Frank | 15O12570 | 2016-09-23 | | Roland | 2016-09-23 - Barilla, Frank - Decision (15O12570) (YDR) |
| 6. | Bayrooti, Haley | 13C15985 | 2021-01-28 | | Roland | 2021-01-28 - Bayrooti, Haley - Decision (13C15985) (YDR) |
| 7. | Bradshaw, Drexel | 16O15558 | 2018-08-30 | | Roland | 2018-08-30 - Bradshaw, Drexel - Decision (16O15558) (YR) |
| 8. | Burke, Gregory | 12O17622 | 2015-04-16 | | Roland | 2015-04-16 - Burke, Gregory Molina - Decision (12O17622) (YDR) |
| 9. | Butner, Brooke Lee | 17O04805 | 2018-12-19 | | Roland | 2018-12-19 - Butner, Brooke Lee - Decision (17O04805) (YDR) |
| | C* | | | | | |
| 10. | Castellanos, Gabriel | 15O14755 | 2018-12-21 | | Roland | 2018-12-21 - Castellanos, Gabriel - Decision (15O14755) (YDR) |
| 11. | Castro, Mark | SBC22O30173 | 2025-11-07 | | Roland | 2025-11-07 - Castro, Mark - Decision (ADP) (A) (YDR) |
| 12. | Castro, Elisa Ann | 17O00754 | 2018-04-05 | | Roland | 2018-04-05 - Castro, Elisa Ann - Decision (17O00754) (YDR) |
| 13. | Cohen, Ira | 17O01304 | 2018-12-13 | | Roland | 2018-12-13 - Cohen, Ira – Decision (Default) (17O01304) (YDR) |
| | D* | | | | | |
| 14. | Diaz, Mayvelyn Garvida | 15C15370 | 2017-12-28 | | Roland | 2017-12-28 - Diaz, Mayvelyn Garvida - Decision (15C15370) (YDR) |

**Ex. 21:1**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 15. | Deetman, Bernard Richard | 14O06274 | 2016-04-14 | | Roland | 2016-04-14 - Deetman, Bernard Richard - Decision (14O06274) (YDR) |
| 16. | Dongell, Richard Alan | 14C02141 | 2015-09-10 | | Roland | 2015-09-10 - Dongell, Richard Alan - Decision (14C02141) (YDR) |
| 17. | Donahue, Cari | 14O00897 | 2016-03-08 | | Roland | 2016-03-08 - Donahue, Cari - Decision (14O00897) (YDR) |
| 18. | Dunn, Joseph | SBC22O30655 | 2024-07-24 | | Roland | 2024-07-24 - Dunn, Joseph - Decision (SBC22O30655) (YR) |
| | E* | | | | | |
| 19. | Eastman, John | SBC23O30023 | 2024-03-27 | | Roland | 2024-03-27 - Eastman, John - Decision (SBC23O30029) (YR) |
| 20. | Esbin, Louis Jay | SBC24O30085 | 2024-09-17 | | Roland | 2024-09-17 - Esbin, Louis - Decision (SBC23O30942) (YR) |
| | F* | | | | | |
| 21. | Falah, Mona | 16O10349 | 2017-07-06 | | Roland | 2017-07-06 - Falah, Mona - Decision (16O10349) (YDR) |
| 22. | Flores, Aldo | SBC23O30225 | 2026-02-13 | | Roland | 2026-02-13 - Flores, Aldo - Decision (SBC23O30225) (PW) |
| 23. | Futter, Cynthia Ann | 16J10342 | 2017-09-08 | | Roland | 2017-09-08 - Futter, Cynthia Ann - Decision (16J10342) (YDR) |
| | G* | | | | | |
| 24. | Ganz, Andrew Michael | 14O02363 | 2019-01-11 | | Roland | 2019-01-11 - Ganz, Andrew Michael - Decision (A) (14O02363) (YDR) |
| 25. | Garcia, Raul Benjamin | SBC23N30055 | 2025-11-17 | | Roland | 2025-11-17 - Garcia, Raul - Decision (SBC23N30055) (YR) |
| 26. | Gerber-Gressier, Pamela | 14C02964 | 2019-03-29 | | Roland | 2019-03-29 - Gerber-Gressier, Pamela – Decision (Default) (14C02964) (YDR) |
| 27. | Gentino, Robert | 15O13576 | 2017-01-24 | | Roland | 2017-01-24 - Gentino, Robert E. - Decision (15O13576) (YDR) |
| 28. | Gerges, Motaz M | SBC24O30026 | 2024-05-01 | | Roland | 2024-05-01 - Gerges, Motaz - Decision (Trial) (YR) |
| | H* | | | | | |
| 29. | Hilland, Donald Arthur | 15O15855 | 2017-01-31 | | Roland | 2017-01-31 - Hilland, Donald Arthur - Decision (15O15855) (YDR) |
| 30. | Holguin, Alex | SBC25N30000 | 2025-09-24 | | Roland | 2025-09-24 - Holguin, Alex - Decision (Default (SBC25N30000) (YR) |
| 31. | Hurley, Richard Roger | 15O12905 | 2017-08-30 | | Roland | 2017-08-30 - Hurley, Richard Roger - Decision (15O12905) (YDR) |
| | I* | | | | | |
| | | | | | | |
| | J* | | | | | |
| 32. | Jackson, Michele | 15O13011 | 2020-02-12 | | Roland | 2020-02-12 - Jackson, Michele – Decision (ADP) (15O13011) (YDR) |
| | K* | | | | | |
| 33. | Kaplan, Alexander | 14C03389 | 2017-08-22 | | Roland | 2017-08-22 - Kaplan, Alexander – Decision (ADP) (14C03389) (YDR) |
| 34. | Khishaveh, Klayton | 16O11205 | 2017-06-14 | | Roland | 2017-06-14 - Khishaveh, Klayton - Decision (16O11205) (YDR) |
| 35. | Kim, Justin | 17C02393 | 2018-06-29 | | Roland | 2018-06-29 - Kim, Justin J. - Decision (17C02393) (YDR) |

**Ex. 21:2**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 36. | Kleier, Loren | 16O11119 | 2018-08-24 | | Roland | 2018-08-24 - Kleier, Loren - Decision (ADP) (16O11119) (YDR) |
| 37. | Klugman, Steven | 17O05345 | 2019-06-18 | | Roland | 2019-06-18 - Klugman, Steven - Decision (17O05345) (YR) |
| 38. | Koebel, Philip | 15O13356 | 2021-01-05 | | Roland | 2021-01-05 - Koebel, Philip - Decision (15O13356) (YR) |
| 39. | Kun, Albert Miklos | 14O05418 | 2016-06-02 | | Roland | 2016-06-02 - Kun, Albert Miklos - Decision (14O05418) (YDR) |
| 40. | Kyle, David | 14O02080 | 2015-12-07 | | Roland | 2015-12-07 - Kyle, David - Decision (14O02080) (YDR) |
| | L* | | | | | |
| 41. | Lacher, Pamela | SBC22O30551 | 2023-06-14 | | Roland | 2023-06-14 - Lacher, Pamela - Decision (Trial) (YR) |
| 42. | Lengyel-Leahu, Pal | SBC25O30354 | 2025-12-12 | | Roland | 2025-12-12 - Lengyel-Leahu, Pal - Decision (SBC25O30354) (YR) |
| 43. | Lewis, Michael Ross | 15O14877 | 2017-03-17 | | Roland | 2017-03-17 - Lewis, Michael Ross - Decision (15O14877) (YDR) |
| 44. | Libman, Michael Jacob | SBC24O30284 | 2025-01-28 | | Roland | 2025-01-28 - Libman, Michael - Decision (Trial) (YR) (2) |
| 45. | Lucero, Linda | SBC21O30658 | 2022-08-16 | | Roland | 2022-08-16 - Lucero, Linda Darlene - Decision (Trial) (YR) |
| | M* | | | | | |
| | | | | | | |
| | N* | | | | | |
| 46. | Nassar, Sandra Lee | 14O00027 | 2017-10-10 | | Roland | 2017-10-10 - Nassar, Sandra Lee - Decision (14O00027) (YDR) |
| 47. | Nia, Tina Amouei | 14O04592 | 2016-04-01 | | Roland | 2016-04-01 - Nia, Tina Amouei - Decision (14O04592) (YDR) |
| 48. | Nicholson, Timothy | 14C02867 | 2016-12-09 | | Roland | 2016-12-09 - Nicholson, Timothy Alan - Decision (14C02867) (YDR) |
| 49. | Nunez, Rene Chavez | 14N04548 | 2016-03-01 | | Roland | 2016-03-01 - Nunez, Rene Chavez - Decision (14N04548) (YDR) |
| | O* | | | | | |
| 50. | O'Connell, Dennis Patrick | 15O13703 | 2017-09-07 | | Roland | 2017-09-07 - O'Connell, Dennis Patrick - Decision (15O13703) (YDR) |
| 51. | O'Keefe, Christopher | 15O14409 | 2017-09-11 | | Roland | 2017-09-11 - O'Keefe, Christopher J. - Decision (15O14409) (YDR) |
| 52. | Ostrove, Kenneth Edward | 15O10800 | 2016-08-23 | | Roland | 2016-08-23 - Ostrove, Kenneth Edward - Decision (15O10800) (YDR) |
| | P* | | | | | |
| 53. | Pacheco, Lauro | 16O11838 | 2017-07-27 | | Roland | 2017-07-27 - Pacheco, Lauro Nick Jr. - Decision (16O11838) (YDR) |
| 54. | Pavone, Benjamin | SBC23O30854 | 2024-10-23 | | Roland | 2024-10-23 - Pavone, Benjamin L. - Decision (YR) |
| 55. | Perry, Allan | SBC24O30876 | 2025-08-20 | | Roland | 2025-08-20 - Perry, Allan - Decision (SBC24O30876) (YR) |
| 56. | Pereau, C. Dana | 15C12539 | 2016-12-21 | | Roland | 2016-12-21 - Pereau, C. Dana – Decision (Default) (15C12539) (YDR) |
| 57. | Peters, Jordan | 13C16396 | 2017-04-21 | | Roland | 2017-04-21 - Peters, Jordan - Decision (13C16396) (YDR) |
| 58. | Prevost, Mary Frances | 14O04539 | 2015-11-10 | | Roland | 2015-11-10 - Prevost, Mary Frances - Decision (14O04539) (YDR) |

**Ex. 21:3**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 59. | Prevost, Mary Frances | 15O14453 | 2017-07-27 | | Roland | 2017-07-27 - Prevost, Mary Frances - Decision (15O14453) (YDR) |
| | R* | | | | | |
| 60. | Ramirez, Sergio | SBC22O30976 | 2023-07-12 | | Roland | 2023-07-12 - Ramirez, Sergio - Decision (SBC22O30976) (YR) |
| 61. | Reed, Michael | 18C12370 | 2019-09-19 | | Roland | 2019-09-19 - Reed, Michael - Decision (18C12370) (YR) |
| 62. | Reilly, Charles | 15O11103 | 2015-12-28 | | Roland | 2015-12-28 - Reilly, Charles Printy - Decision (15O11103) (YDR) |
| | S* | | | | | |
| 63. | Sahni, Ajay | 17C05732 | 2020-10-21 | | Roland | 2020-10-21 - Sahni, Ajay - Decision (17C05732) (YR) |
| 64. | Salem, Edmond Elias | 16O17243 | 2018-12-11 | | Roland | 2018-12-11 - Salem, Edmond Elias - Decision (16O17243) (YDR) |
| 65. | Saxon, Bret | 17O0125 | 2021-05-26 | | Roland | 2021-05-26 - Saxon, Bret - Decision (17O01259) (YR) |
| 66. | Seuthe, Eric | 11O19427 | 2016-09-14 | | Roland | 2016-09-14 - Seuthe, Eric - Decision (11O19427) (YR) |
| 67. | Shirer, Rae Diane | 17O01372 | 2018-08-09 | | Roland | 2018-08-09 - Shirer, Rae Diane - Decision (17O01372) (YDR) |
| 68. | Sibilia, Robert | 12O16308 | 2015-10-20 | | Roland | 2015-10-20 - Sibilia, Robert - Decision (12O16308) (YDR) |
| 69. | Singh, Rooh | SBC22O31056 | 2023-09-06 | | Roland | 2023-09-06 - Singh, Rooh - Decision (SBC22O31056) (YR) |
| 70. | Sterling, Randall | 12O13212 | 2015-08-06 | | Roland | 2015-08-06 - Sterling, Randall - Decision (12O13212) (YDR) |
| | T* | | | | | |
| 71. | Taylor, Kevin Renard | 17N01608 | 2017-11-27 | | Roland | 2017-11-27 - Taylor, Kevin Renard - Decision (17N01608) (YDR) |
| 72. | Terbeek, Marc Lawrence | 17C01402 | 2019-07-11 | | Roland | 2019-07-11 - Terbeek, Marc Lawrence - Decision (17C01402) (YDR) |
| 73. | Trimarche, Gregory Daniel | SBC23C30994 | 2024-05-29 | | Roland | Trimarche, Gregory - Decision (SBC23O30827) (YR) |
| | V* | | | | | |
| 74. | Vargas, Fernando | SBC24O30412 | 2023-06-16 | | Roland | 2023-06-16 - Vargas, Fernando - Decision (SBC22O30280) (YR) |
| 75. | Vinzant, Dayle | 15C15997 | 2019-11-05 | | Roland | 2019-11-05 - Vinzant, Dayle - Decision (15C15997) (YDR) |
| | W* | | | | | |
| 76. | White, Kevin Michael | 11O17873 | 2016-10-14 | | Roland | 2016-10-14 - White, Kevin Michael - Decision (11O17873) (YDR) |
| | Y* | | | | | |
| 77. | | | | | | |
| | Z* | | | | | |
| 78. | | | | | | |

**Ex. 21:4**

# EXHIBIT 22

# EXHIBIT 22

# HEARING DEPARTMENT TRIAL DECISIONS

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | **Summary of Information**<br>2026-04-03:<br>302 total decisions<br>293/302 contested cases, imposed costs: 97%<br>Gender Notes: 253/302 men: 83.7%<br>Chawla, Saab never exonerated a man of the costs in this pool. | | | | | **Costs Key:**<br>Costs: costs imposed after a contested proceeding.<br>Costs: costs not imposed after a contested proceeding. |
| | A* | | | | | |
| 1. | Afari, Daniel H. | 09O16850 | 2012-11-28 | | Miles | 2012-11-28 - Afari, Daniel H. - Decision (09O16850) (DFM) |
| 2. | Agnew, Jeffrey | 07O10024 | 2011-05-04 | | Honn | 2011-05-04 - Agnew, Jeffrey - Decision (07O10024) (RAH) |
| 3. | Albert, Lenore | 15O11311 | 2016-10-19 | | Roland | 2016-10-19 - Albert, Lenore - Decision (15O11311) (YDR) |
| 4. | Albert, Lenore | 16O12958 | 2019-01-09 | | Roland | 2019-01-09 - Albert, Lenore - Decision (16O12958) (YDR) |
| 5. | Albert, Lenore | SBC22O30348 | 2023-04-03 | | Saab | 2023-04-03 - Albert, Lenore - Decision (SBC22O30348) (DS) |
| 6. | Allen, Marie | 06O13329 | 2008-09-24 | | Honn | 2008-09-24 - Allen, Marie - Decision (06O13329) (RAH) [exonerated] |
| 7. | Alemansour, Sousan | 15O10928 | 2016-08-22 | | Miles | 2016-08-22 - Alemansour, Sousan - Decision (15O10928) (DFM) |
| 8. | Alspaugh, Eric | SBC23J30962 | 2024-04-15 | | Saab | 2024-04-15 - Alspaugh, Eric - Decision (SBC23J30962) (DS) |
| 9. | Amezaga, Rafael | 18C12888 | 2019-02-14 | | Chawla | 2019-02-14 - Amezaga, Rafael - Decision (18C12888) (MC) |
| 10. | Anderson, Ernest | 17O04749 | 2019-03-05 | | Roland | 2019-03-05 - Anderson, Ernest - Decision (17O04749) (YR) |
| 11. | Annen, Richard James | 14O00949 | 2018-04-03 | | Miles | 2018-04-03 - Annen, Richard James - Decision (14O00949) (DFM) |
| 12. | Anyiam, Christian | 13O11694 | 2014-01-24 | | Miles | 2014-01-24 - Anyiam, Christian U. - Decision (13O11694) (DFM) |
| 13. | Arakelian, Leon | 11O17733 | 2013-07-25 | | Miles | 2013-07-25 - Arakelian, Leon - Decision (11O17733) (DFM) |
| 14. | Arras, Christopher | 10O09894 | 2012-10-04 | | McElroy | 2012-10-04 - Arras, Christopher - Decision (10O09894) (PEM) |

**Ex. 22:1**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 15. | Artz, Jaeffrey Jack | 10N11089 | 2011-05-12 | | Miles | 2011-05-12 - Artz, Jaeffrey Jack - Decision (10N11089) (DFM) |
| 16. | Aviles, Moises | 18O13124 | 2019-07-15 | | Valenzuela | 2019-07-15 - Aviles, Moises - Decision (18O13124) (CV) |
| | B* | | | | | |
| 17. | Baer, David Walter | 06C14253 | 2007-06-22 | | McElroy | 2007-06-22 - Baer, David Walter - Decision (06C14253) (PEM) |
| 18. | Ball, Robert Michael | 13O17308 | 2015-01-22 | | Miles | 2015-01-22 - Ball, Robert Michael - Decision (13O17308) (DFM) |
| 19. | Ball, Robert Michael | 14O03862 | 2015-05-28 | | Miles | 2015-05-28 - Ball, Robert Michael - Decision (14O03862) (DFM) |
| 20. | Bander, Joel Richard | 17O01945 | 2018-05-04 | | Miles | 2018-05-04 - Bander, Joel Richard - Decision (17O01945) (DFM) |
| 21. | Baric, Steven | SBC24O30902 | 2025-06-11 | | Saab | 2025-06-11- Baric, Steven - Decision (SBC24O30902) (DS) |
| 22. | Baric, Drago | 11O11689 | 2017-06-06 | | Miles | 2017-06-06 - Baric, Drago - Decision (11O11689) (DFM) |
| 23. | Barilla, Frank | 15O12570 | 2016-09-23 | | Roland | 2016-09-23 - Barilla, Frank - Decision (15O12570) (YDR) |
| 24. | Bartlett, Robert | 17O05188 | 2022-07-06 | | Roland | 2022-07-06 - Bartlett, Robert - Decision (17O05188) (YR) |
| 25. | Bassis, Lisa Michelle | 16O12056 | 2018-02-14 | | Miles | 2018-02-14 - Bassis, Lisa Michelle - Decision (16O12056) (DFM) |
| 26. | Bavar, Reza | 12O15664 | 2014-04-21 | | Miles | 2014-04-21 - Bavar, Reza - Decision (12O15664) (DFM) |
| 27. | Bayrooti, Haley | 13C15985 | 2021-01-28 | | Roland | 2021-01-28 - Bayrooti, Haley - Decision (13C15985) (YDR) |
| 28. | Beury, Donald | 17O01111 | 2019-04-30 | | Valenzuela | 2019-04-30 - Beury, Donald - Decision (17O01111) (CV) |
| 29. | Bloomfield, Karl | 05O00861 | 2008-10-14 | | Honn | 2008-10-14 - Bloomfield, Karl - Decision (05O00861) (RAH) |
| 30. | Bloomfield, Karl | 05O00861 | 2008-10-14 | | Honn | 2008-10-14 - Bloomfield, Karl - Decision (05O00861) (RAH) |
| 31. | Boag, Patricia | 06O12427 | 2011-05-11 | | Platel | 2011-05-11 - Boag, Patricia - Decision (06O12427) (RAP) |
| 32. | Bobus, Richard | 16O14185 | 2019-04-11 | | Chawla | 2019-04-11 - Bobus, Richard - Decision (16O14185) (MC) |
| 33. | Boles, James | 17O04960 | 2019-04-02 | | Valenzuela | 2019-04-02 - Boles, James - Decision (17O04960) (CV) |
| 34. | Bradshaw, Drexel | SBC24O30022 | 2024-09-13 | | Wang | 2024-09-13 - Bradshaw, Drexel - Decision (SBC24O30022) (PW) |
| 35. | Braun, Dennis | 18PM10810 | 2018-04-03 | | Miles | 2018-04-03 - Braun, Dennis - Decision (Revocation) (18PM10810) (DFM) |
| 36. | Braun, Dennis | 14O06193 | 2016-05-25 | | Miles | 2016-05-25 - Braun, Dennis - Decision (14O06193) (DFM) |
| 37. | Bravos, James William | 08PM10984 | 2008-07-23 | | Miles | 2008-07-23 - Bravos, James William - Decision (08PM10984) (DFM) |
| 38. | Brustman, James | 06O12467 | 2011-02-02 | | Miles | 2011-02-02 - Brustman, James - Decision (06O12467) (DFM) |
| 39. | Burke, Gregory Molina | 11O17393 | 2013-07-01 | | Miles | 2013-07-01 - Burke, Gregory Molina - Decision (11O17393) (DFM) |
| 40. | Burke, Gregory | 12O17622 | 2015-04-16 | | Roland | 2015-04-16 - Burke, Gregory Molina - Decision (12O17622) (YDR) |
| 41. | Butner, Brooke Lee | 17O04805 | 2018-12-19 | | Roland | 2018-12-19 - Butner, Brooke Lee - Decision (17O04805) (YDR) |
| 42. | Burke, Kimberly Renae | 12O17175 | 2015-08-06 | | Miles | 2015-08-06 - Burke, Kimberly Renae - Decision (12O17175) (DFM) |

**Ex. 22:2**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | C* | | | | | |
| 43. | Campa, Drago | 07O10063 | 2009-08-25 | | Honn | 2009-08-25 - Campa, Drago - Decision (07O10063) (RAH) |
| 44. | Cannon, Jamaul Dmitri | 14O00863 | 2016-08-22 | | Miles | 2016-08-22 - Cannon, Jamaul Dmitri - Decision (14O00863) (DFM) |
| 45. | Cannon, Justin | BC22N30278 | 2023-02-15 | | Saab | 2023-02-15 - Cannon, Justin - Decision (BC22N30278) (DS) |
| 46. | Carey, Diane Bernadette | 12O12244 | 2013-05-01 | | Miles | 2013-05-01 - Carey, Diane Bernadette - Decision (12O12244) (DFM) |
| 47. | Carver, Michael R. | 11H16868 | 2013-06-26 | | Miles | 2013-06-26 - Carver, Michael R. - Decision (11H16868) (DFM) |
| 48. | Castellanos, Gabriel | 15O14755 | 2018-12-21 | | Roland | 2018-12-21 - Castellanos, Gabriel - Decision (15O14755) (YDR) |
| 49. | Castro, Elisa Ann | 17O00754 | 2018-04-05 | | Roland | 2018-04-05 - Castro, Elisa Ann - Decision (17O00754) (YDR) |
| 50. | Castro, Mark | SBC22O30173 | 2025-11-07 | | Roland | 2025-11-07 - Castro, Mark - 2nd Amended Decision (ADP) (YR) |
| 51. | Cha, Je | SBC24O30103 | 2024-10-09 | | Valenzuela | 2024-10-09 - Cha, Je - Decision (SBC24O30103) (CV) |
| 52. | Choe, Gene Wook | 11O14497 | 2013-10-31 | | Miles | 2013-10-31 - Choe, Gene Wook - Decision (11O14497) (DFM) |
| 53. | Cohen, Herman | SBC22O30083 | 2023-04-27 | | Wang | 2023-04-27 - Cohen, Herman - Decision (SBC22O30083) (PW) |
| 54. | Cohen, Herman | 17PM07095 | 2018-01-29 | | Miles | 2018-01-29 - Cohen, Herman - Decision (Rev'n) (17PM07095) (DFM) |
| 55. | Cohen, Herman Jason | 13O15706 | 2016-04-25 | | Miles | 2016-04-25 - Cohen, Herman Jason - Decision (13O15706) (DFM) |
| 56. | Cohen, Ira | 17O01304 | 2018-12-13 | | Roland | 2018-12-13 - Cohen, Ira – Decision (Default) (17O01304) (YDR) |
| 57. | Colton, Roland Clark | 06C15151 | 2012-10-23 | | Miles | 2012-10-23 - Colton, Roland Clark - Decision (06C15151) (DFM) |
| 58. | Cook, Ulysses | 06O10243 | 2008-12-02 | | Honn | 2008-12-02 - Cook, Ulysses - Decision (06O10243) (RAH) |
| 59. | Cossio, Charles Colin | 12O18065 | 2014-12-02 | | Miles | 2014-12-02 - Cossio, Charles Colin - Decision (12O18065) (DFM) |
| 60. | Crane, Richard | SBC22O31029 | 2023-06-26 | | Saab | 2023-06-26 - Crane, Richard - Decision (SBC22O31029) (DS) |
| 61. | Crowley, John | 16O13071 | 2019-05-06 | | Chawla | 2019-05-06 - Crowley, John - Decision (16O13071) (MC) |
| | D* | | | | | |
| 62. | Dahlin, Tore | 05O00754 | 2009-03-13 | | Miles | 2009-03-13 - Dahlin, Tore - Decision (05O00754) (DFM) |
| 63. | Daughetee, Renee | SBC23O30661 | 2024-05-28 | | Chawla | 2024-05-28 - Daughetee, Renee - Decision (SBC23O30661) (MC) |
| 64. | Davis, Douglas William | 12O14104 | 2012-11-09 | | Miles | 2012-11-09 - Davis, Douglas William - Decision (12O14104) (DFM) |
| 65. | Derparseghian, Mary | 13O17168 | 2015-10-06 | | Miles | 2015-10-06 - Derparseghian, Mary - Decision (13O17168) (DFM) |
| 66. | Diaz, Mayvelyn Garvida | 15C15370 | 2017-12-28 | | Roland | 2017-12-28 - Diaz, Mayvelyn Garvida - Decision (15C15370) (YDR) |
| 67. | Diamond, Stephen | 05O04605 | 2008-04-10 | | Miles | 2008-04-10 - Diamond, Stephen - Decision (05O04605) (DFM) |
| 68. | Donahue, Cari | 14O00897 | 2016-03-08 | | Roland | 2016-03-08 - Donahue, Cari - Decision (14O00897) (YDR) |
| 69. | Dongell, Richard Alan | 14C02141 | 2015-09-10 | | Roland | 2015-09-10 - Dongell, Richard Alan - Decision (14C02141) (YDR) |

**Ex. 22:3**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 70. | Dowd, Robert Eaton | 11C14946 | 2012-08-28 | | Miles | 2012-08-28 - Dowd, Robert Eaton - Decision (11C14946) (DFM) |
| 71. | Dunn, Joseph | SBC22O30655 | 2024-07-24 | | Roland | 2024-07-24 - Dunn, Joseph - Decision (SBC22O30655) (YR) |
| 72. | Downey, Stephen | 05O04653 | 2008-10-08 | | Honn | 2008-10-08 - Downey, Stephen - Decision (05O04653) (RAH) |
| | E* | | | | | |
| 73. | Eastman, John | SBC23O30023 | 2024-03-27 | | Roland | 2024-03-27 - Eastman, John - Decision (SBC23O30029) (YR) |
| 74. | Eldridge, Deborah | 12O13553 | 2016-08-29 | | McElroy | 2016-08-29 - Eldridge, Deborah - Decision (12O13553) (PEM) |
| 75. | Elkins, John William | 05O03819 | 2008-07-03 | | Miles | 2008-07-03 - Elkins, John William - Decision (05O03819) (DM) |
| 76. | Esbin, Louis Jay | SBC24O30085 | 2024-09-17 | | Roland | 2024-09-17 - Esbin, Louis - Decision (SBC23O30942) (YR) |
| | F* | | | | | |
| 77. | Falah, Mona | 16O10349 | 2017-07-06 | | Roland | 2017-07-06 - Falah, Mona - Decision (16O10349) (YDR) |
| 78. | Falk, Gregory | 11O16456 | 2012-12-14 | | Miles | 2012-12-14 - Falk, Gregory – Decision (Stipulation) (11O16456) (DFM) |
| 79. | Fazzi, Louis | 06O13578 | 2009-06-11 | | Honn | 2009-06-11 - Fazzi, Louis - Decision (06O13578) (RAH) |
| 80. | Feldman, William | 10O09958 | 2012-07-12 | | Platel | 2012-07-12 - Feldman, William - Decision (10O09958) (RAP) |
| 81. | Field, Benjamin | 05O00815 | 2009-02-01 | | McElroy | 2009-02-01 - Field, Benjamin T. - Decision (05O00815) (PEM) |
| 82. | Fink, Steven Alan | 13O12756 | 2014-07-03 | | Miles | 2014-07-03 - Fink, Steven Alan - Decision (13O12756) (DFM) |
| 83. | Flores, Aldo | SBC23O30225 | 2026-02-13 | | Roland | 2026-02-13 - Flores, Aldo - Decision (SBC23O30225) (PW) |
| 84. | Folinsky, Stuart | 06O12137 | 2011-06-29 | | Miles | 2011-06-29 - Folinsky, Stuart - Decision (06O12137) (DFM) |
| 85. | Folke, Duane | SBC22O30224 | 2025-04-14 | | Saab | 2025-04-14 - Folke, Duane - Decision (SBC22O30224) (DS) |
| 86. | Fox, Richard | SBC25O30550 | | | Chawla | 2025-12-02 - Fox, Richard - Decision (SBC25O30550) (MC) |
| 87. | Frantz, William Michael | 05O04193 | 2009-12-16 | | Miles | 2009-12-16 - Frantz, William Michael - Decision (05O04193) (DFM) |
| 88. | Friedman, Stanley | SBC24O30743 | 2025-11-18 | | Chawla | 2025-11-18 - Friedman, Stanley - Decision (SBC24O30743) (MC) |
| 89. | Futter, Cynthia Ann | 16J10342 | 2017-09-08 | | Roland | 2017-09-08 - Futter, Cynthia Ann - Decision (16J10342) (YDR) |
| | G* | | | | | |
| 90. | Galindo, Stephen | 15O13901 | 2016-10-26 | | Miles | 2016-10-26 - Galindo, Stephen - Decision and Order (15O13901) (DFM) |
| 91. | Ganor, Gabriel | 05C03292 | 2009-11-17 | | Miles | 2009-11-17 - Ganor, Gabriel - Decision (05C03292) (DFM) |
| 92. | Ganz, Andrew Michael | 14O02363 | 2019-01-11 | | Roland | 2019-01-11 - Ganz, Andrew Michael - Decision (A) (14O02363) (YDR) |
| 93. | Garcia, Raul Benjamin | SBC23N30055 | 2025-11-17 | | Roland | 2025-11-17 - Garcia, Raul - Decision (SBC23N30055) (YR) |
| 94. | Garibay, Javier | SBC23O30317 | 2023-10-13 | | Wang | 2023-10-13 - Garibay, Javier - Decision (SBC23O30317) (PW) |
| 95. | Geilim-Morales, Gilbert | 17O00029 | 2019-03-04 | | Valenzuela | 2019-03-04 - Geilim-Morales, Gilbert - Decision (17O00029) (CV) |

**Ex. 22:4**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 96. | Gentino, Robert | 15O13576 | 2017-01-24 | | Roland | 2017-01-24 - Gentino, Robert E. - Decision (15O13576) (YDR) |
| 97. | Gerges, Motaz M | SBC24O30026 | 2024-05-01 | | Roland | 2024-05-01 - Gerges, Motaz - Decision (Trial) (YR) |
| 98. | Givens, Dermot | SBC24O30854 | 2025-08-29 | | Saab | 2025-08-29 - Givens, Dermot - Decision (SBC24O30854) (DS) |
| 99. | Glaser, Daniel | 07O14179 | 2008-10-24 | | Honn | 2008-10-24 - Glaser, Daniel - Decision (07O14179) (RAH) |
| 100. | Glasser, Robert | 05O05168 | 2009-11-02 | | Miles | 2009-11-02 - Glasser, Robert - Decision (05O05168) (DFM) |
| 101. | Goldblatt, Lewis | 18C12466 | 2022-04-15 | | Wang | 2022-04-15 - Goldblatt, Lewis - Decision (18C12466) (PW) |
| 102. | Goldman, Ronald | 06O11449 | 2008-01-03 | | McElroy | 2008-01-03 - Goldman, Ronald Paul - Decision (06O11449) (PEM) |
| 103. | Gonzalez, Manuel Angel | 11PM18515 | 2012-02-03 | | Miles | 2012-02-03 - Gonzalez, Manuel Angel - Decision (11PM18515) (DFM) |
| 104. | Gonzalez, Zachary | 10TE02282 | 2010-08-13 | | Platel | 2010-08-13 - Gonzalez, Zachary - Decision (10TE02282) (RAP) |
| 105. | Gortler, Hugh P. | 11C12562 | 2012-10-29 | | Miles | 2012-10-29 - Gortler, Hugh P. - Decision (11C12562) (DFM) |
| 106. | Greer, Phillip | SBC25O30222 | 2025-09-30 | | Chawla | 2025-09-30 - Greer, Phillip - Decision (SBC25O30222) (MC) |
| 107. | Griffin, Keith | SBC23O30691) | 2024-01-19 | | Wang | 2024-01-19 - Griffin, Keith - Decision (SBC23O30691) (PW) |
| 108. | Gustin, Dale Irving | 11O17015 | 2013-04-19 | | Miles | 2013-04-19 - Gustin, Dale Irving - Decision (11O17015) (DFM) |
| 109. | Gurevich, Yelena | 17O03494 | 2020-03-13 | | Valenzuela | 2020-03-13 - Gurevich, Yelena - Decision (17O03494) (CV) |
| | H* | | | | | |
| 110. | Halsey, William | 05O05164 | 2010-01-14 | | Miles | 2010-01-14 - Halsey, William - Decision (05O05164) (DFM) |
| 111. | Harris, Jeffrey | 16O10299 | 2019-07-08 | | Chawla | 2019-07-08 - Harris, Jeffrey - Decision (16O10299) (MC) |
| 112. | Hartson, George | 14O02314 | 2017-03-06 | | Miles | 2017-03-06 - Hartson, Georg - Decision (14O02314) (DFM) |
| 113. | Hasan, Shameem | 14O00143 | 2016-03-03 | | Miles | 2016-03-03 - Hasan, Shameem - Decision (14O00143) (DFM) |
| 114. | Hassan, Allen | SBC22O30969 | 2023-06-07 | | Chawla | 2023-06-07 - Hassan, Allen - Decision (SBC22O30969) (MC) |
| 115. | Hawkins, Early | 06C13875 | 2009-12-02 | | Miles | 2009-12-02 - Hawkins, Early - Decision (06C13875) (DFM) |
| 116. | Haycock, Douglas | 10O09632 | 2012-10-16 | | McElroy | 2012-10-16 - Haycock, Douglas - Decision (10O09632) (PEM) |
| 117. | Hildebrant, Scott | 06H10722 | 2006-10-02 | | Honn | 2006-10-02 - Hildebrant, Scott - Decision (06H10722) (RAH) |
| 118. | Hildebrant, Scott | 06H10722 | 2006-10-02 | | Honn | 2006-10-02 - Hildebrant, Scott - Decision (06H10722) (RAH) |
| 119. | Hilland, Donald Arthur | 15O15855 | 2017-01-31 | | Roland | 2017-01-31 - Hilland, Donald Arthur - Decision (15O15855) (YDR) |
| 120. | Hoffman, Nathan | 12C16181 | 2020-01-15 | | Valenzuela | 2020-01-15 - Hoffman, Nathan - Decision (12C16181) (CV) |
| 121. | Holguin, Alex | SBC25N30000 | 2025-09-24 | | Roland | 2025-09-24 - Holguin, Alex - Decision (Default (SBC25N30000) (YR) |
| 122. | Hollingsworth, Stephen | 05003574 | 2008-10-27 | | Platel | 2008-10-27 - Hollingsworth, Stephen - Decision (05003574) (RAP) |
| 123. | Hoodack, Lawrence | 05O00719 | 2010-04-21 | | Miles | 2010-04-21 - Hoodack, Lawrence - Decision (05O00719) (DFM) |

**Ex. 22:5**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 124. | Huang, Daniel | 06O15355 | 2009-12-02 | | Honn | 2009-12-02 - Huang, Daniel - Decision (06O15355) (RAH) |
| 125. | Hubbard, Lynn | 11O14081 | 2015-02-18 | | Miles | 2015-02-18 - Hubbard, Lynn - Decision (11O14081) (DFM) |
| 126. | Hurley, Richard Roger | 15O12905 | 2017-08-30 | | Roland | 2017-08-30 - Hurley, Richard Roger - Decision (15O12905) (YDR) |
| | I* | | | | | |
| 127. | Iler, Douglas | 16O13006 | 2019-05-10 | | Valenzuela | 2019-05-10 - Iler, Douglas - Decision (16O13006) (CV) |
| 128. | Isaacson, Lon | 08O10684 | 2012-02-06 | | Honn | 2012-02-06 - Isaacson, Lon - Decision (08O10684) (RAH) |
| 129. | Ivosevic, Jovan | SBC22O30224 | 2024-11-13 | | Saab | 2024-11-13 - Ivosevic, Jovan - Decision (SBC22O30224) (DS) |
| | J* | | | | | |
| 130. | Jackson, Michele | 15O13011 | 2020-02-12 | | Roland | 2020-02-12 - Jackson, Michele – Decision (ADP) (15O13011) (YDR) |
| 131. | Jang, Kevin | SBC25O30347 | 2025-11-07 | | Saab | 2025-11-07 - Jang, Kevin - Decision (SBC25O30347) (DS) |
| 132. | Jelin, Frederick T. | 12H17270 | 2013-11-04 | | Miles | 2013-11-04 - Jelin, Frederick T. - Decision (12H17270) (DFM) |
| 133. | Jensen, Bradley | 06O13965 | 2010-12-06 | | Honn | 2010-12-06 - Jensen, Bradley - Decision (06O13965) (RAH) |
| 134. | Johnson, David | 11O11316 | 2012-11-30 | | McElroy | 2012-11-30 - Johnson, David - Decision (11O11316) (PEM) |
| 135. | Johnson, Eric | 10TE00615 | 2010-03-18 | | Honn | 2010-03-18 - Johnson, Eric - Decision |
| | K* | | | | | |
| 136. | Kaplan, Alexander | 14C03389 | 2017-08-22 | | Roland | 2017-08-22 - Kaplan, Alexander – Decision (ADP) (14C03389) (YDR) |
| 137. | Katz, Charles | 18H15995 | 2019-07-11 | | Chawla | 2019-07-11 - Katz, Charles - Decision (18H15995) (MC) |
| 138. | Kazandjian, Yeznik Ohannes | 12O12181 | 2014-02-13 | | Miles | 2014-02-13 - Kazandjian, Yeznik Ohannes - Decision (12O12181) (DFM) |
| 139. | Kerlan, Jason | 06O11986 | 2008-02-07 | | Honn | 2008-02-07 - Kerlan, Jason - Decision (06O11986) (RAH) |
| 140. | Khishaveh, Klayton | 16O11205 | 2017-06-14 | | Roland | 2017-06-14 - Khishaveh, Klayton - Decision (16O11205) (YDR) |
| 141. | Kim, Eugene Dukjoon | 12O11308 | 2013-07-29 | | Miles | 2013-07-29 - Kim, Eugene Dukjoon - Decision (12O11308) (DFM) |
| 142. | Kim, Justin | 17C02393 | 2018-06-29 | | Roland | 2018-06-29 - Kim, Justin J. - Decision (17C02393) (YDR) |
| 143. | Kleier, Loren | 16O11119 | 2018-08-24 | | Roland | 2018-08-24 - Kleier, Loren - Decision (ADP) (16O11119) (YDR) |
| 144. | Klugman, Steven Mark | 13O17015 | 2016-01-27 | | Miles | 2016-01-27 - Klugman, Steven Mark - Decision (13O17015) (DFM) |
| 145. | Klugman, Steven | 17O05345 | 2019-06-18 | | Roland | 2019-06-18 - Klugman, Steven - Decision (17O05345) (YR) |
| 146. | Koebel, Philip | 15O13356 | 2021-01-05 | | Roland | 2021-01-05 - Koebel, Philip - Decision (15O13356) (YR) |
| 147. | Kostiv, Petro | SBC22O31036 | 2024-02-09 | | Valenzuela | 2024-02-09 - Kostiv, Petro - Decision (SBC22O31036) (CV) |
| 148. | Krause, Ernest | SBC23O30409 | 2024-06-11 | | Chawla | 2024-06-11 - Krause, Ernest - Decision (SBC23O30409) (MC) |
| 149. | Kranzdorf, Jeffrey Paul | 12O13730 | 2015-10-30 | | Miles | 2015-10-30 - Kranzdorf, Jeffrey Paul - Decision (12O13730) (DFM) |

**Ex. 22:6**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 150. | Kucsan, Brian Joseph | 16O10988 | 2017-04-14 | | Miles | 2017-04-14 - Kucsan, Brian Joseph - Decision (16O10988) (DFM) |
| 151. | Kun, Albert Miklos | 15O14554 | 2017-09-26 | | Miles | 2017-09-26 - Kun, Albert Miklos - Decision (15O14554) (DFM) |
| | L* | | | | | |
| 152. | Lacher, Pamela | SBC22O30551 | 2023-06-14 | | Roland | 2023-06-14 - Lacher, Pamela - Decision (Trial) (YR) |
| 153. | Lee, Benjamin | 05O04748 | 2009-06-19 | | Platel | 2009-06-19 - Lee, Benjamin - Decision (05O04748) (RAP) |
| 154. | Leigh, Gilbert | SBC23O31030 | 2025-06-10 | | Chawla | 2025-06-10 - Leigh, Gilbert - Decision (SBC23O31030) (MC) |
| 155. | Lengyel-Leahu, Pal | SBC25O30354 | 2025-12-12 | | Roland | 2025-12-12 - Lengyel-Leahu, Pal - Decision (SBC25O30354) (YR) |
| 156. | Leone, Fernando | SBC23O30539 | 2023-11-03 | | Saab | 2023-11-03 - Leone, Fernando - Decision (SBC23O30539) (DS) |
| 157. | Leslie, Joel | 06O15136 | 2009-06-18 | | Miles | 2009-06-18 - Leslie, Joel - Decision (06O15136) (DFM) |
| 158. | Levine, Marc Russell | 12N14547 | 2012-11-29 | | Miles | 2012-11-29 - Levine, Marc Russell - Decision (12N14547) (DFM) |
| 159. | Lewis, Lawrence | 05O03450 | 2011-09-27 | | Honn | 2011-09-27 - Lewis, Lawrence - Decision (05O03450) (RAH) |
| 160. | Lewis, Michael Ross | 15O14877 | 2017-03-17 | | Roland | 2017-03-17 - Lewis, Michael Ross - Decision (15O14877) (YDR) |
| 161. | Lewiston, Jeffrey A. | 15O10933 | 2017-10-06 | | Miles | 2017-10-06 - Lewiston, Jeffrey A. - Decision (15O10933) (DFM) |
| 162. | Liberty, Louis Allen | 11O17476 | 2013-07-12 | | Miles | 2013-07-12 - Liberty, Louis Allen - Decision (11O17476) (DFM) |
| 163. | Libman, Michael Jacob | SBC24O30284 | 2025-01-28 | | Roland | 2025-01-28 - Libman, Michael - Decision (Trial) (YR) (2) |
| 164. | Lindner, Charles | 15O15400 | 2020-12-22 | | Valenzuela | 2020-12-22 - Lindner, Charles - Decision (15O15400) (CV) |
| 165. | Linehan, Andrew Francis | 12O14553 | 2013-07-16 | | Miles | 2013-07-16 - Linehan, Andrew Francis - Decision (12O14553) (DFM) |
| 166. | Lotta, Michael Anthony | 13O16289 | 2015-02-17 | | Miles | 2015-02-17 - Lotta, Michael Anthony - Decision (13O16289) (DFM) |
| 167. | Lucero, Linda | SBC21O30658 | 2022-08-16 | | Roland | 2022-08-16 - Lucero, Linda Darlene - Decision (Trial) (YR) |
| 168. | Lucero, Linda | SBC22O30025 | 2022-08-16 | | Roland | 2022-08-16 - Lucero, Linda Darlene - Decision (Trial) (YR) |
| 169. | Luetto, John | 05O04218 | 2011-01-18 | | Platel | 2011-01-18 - Luetto, John - Decision (05O04218) (RAP) |
| | M* | | | | | |
| 170. | Mahdessian, Rita | 11O11759 | 2017-08-29 | | Miles | 2017-08-29 - Mahdessian, Rita - Decision (11O11759) (DFM) |
| 171. | Maki, Lisa Lynn | 16O13110 | 2018-08-21 | | Miles | 2018-08-21 - Maki, Lisa Lynn - Decision (16O13110) (DFM) |
| 172. | Marchiondo, Philip Lorin | 12O13556 | 2014-06-30 | | Miles | 2014-06-30 - Marchiondo, Philip Lorin - Decision (12O13556) (DFM) |
| 173. | Marquez, Francisco | 11O16244 | 2014-04-10 | | McElroy | 2014-04-10 - Marquez, Francisco - Decision (11O16244) (PM) |
| 174. | Matranga, Stacey | 06O15426 | 2010-05-07 | | Honn | 2010-05-07 - Matranga, Stacey - Decision (06O15426) (RAH) |
| 175. | McCann, Robert | SBC22O30110 | 2023-03-07 | | Chawla | 2023-03-07 - McCann, Robert - Decision (SBC22O30110) (MC) |
| 176. | McGrew, Spencer | 06O13177 | 2007-08-09 | | McElroy | 2007-08-09 - McGrew, Spencer - Decision (Default) (06O13177) (PEM) |

**Ex. 22:7**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 177. | McMahon, Brian D. | 12O17244 | 2013-10-24 | | Miles | 2013-10-24 - McMahon, Brian D. - Decision (12O17244) (DFM) |
| 178. | Metoyer, Delia | 15O12907 | 2017-09-15 | | Miles | 2017-09-15 - Metoyer, Delia - Decision (15O12907) (DFM) |
| 179. | Mitchell, Walter | 18O12028 | 2019-07-19 | | Valenzuela | 2019-07-19 - Mitchell, Walter - Decision (18O12028) (CV) |
| 180. | Motamedi, Ashkan Alex | 10O06207 | 2011-11-01 | | Miles | 2011-11-01 - Motamedi, Ashkan Alex - Decision (10O06207) (DFM) |
| 181. | Motamedi, Ashkan Alex | 10O07616 | 2012-12-06 | | Miles | 2012-12-06 - Motamedi, Ashkan Alex - Decision (10O07616) (DFM) |
| 182. | Muck, Curtis | 10O08958 | 2010-10-11 | | Platel | 2010-10-11- Muck, Curtis - Decision (10O08958) (RAP) |
| 183. | Mullaly, Andrew P. | 12H13428 | 2012-10-02 | | Miles | 2012-10-02 - Mullaly, Andrew P. - Decision (12H13428) (DFM) |
| 184. | Murray, Robert Alan | 14O00412 | 2015-12-16 | | Miles | 2015-12-16 - Murray, Robert Alan - Decision (14O00412) (DFM) |
| | N* | | | | | |
| 185. | Nassar, Sandra Lee | 14O00027 | 2017-10-10 | | Roland | 2017-10-10 - Nassar, Sandra Lee - Decision (14O00027) (YDR) |
| 186. | Nia, Tina Amouei | 14O04592 | 2016-04-01 | | Roland | 2016-04-01 - Nia, Tina Amouei - Decision (14O04592) (YDR) |
| 187. | Nicholson, Timothy | 14C02867 | 2016-12-09 | | Roland | 2016-12-09 - Nicholson, Timothy Alan - Decision (14C02867) (YDR) |
| 188. | Nikas, Richard | 10O11074 | 2010-08-13 | | Platel | 2010-08-13 - Nikas, Richard - Decision (10O11074) (RAP) |
| 189. | Nunez, Rene Chavez | 14N04548 | 2016-03-01 | | Roland | 2016-03-01 - Nunez, Rene Chavez - Decision (14N04548) (YDR) |
| | O* | | | | | |
| 190. | Obagi, Zein | SBC22O31072 | 2023-12-05 | | Chawla | 2023-12-05 - Obagi, Zein - Decision (SBC22O31072) (MC) |
| 191. | O'Brien, Tara | 09C18483 | 2012-08-08 | | Miles | 2012-08-08 - O'Brien, Tara - Decision (09C18483) (DFM) |
| 192. | O'Connell, Dennis Patrick | 15O13703 | 2017-09-07 | | Roland | 2017-09-07 - O'Connell, Dennis Patrick - Decision (15O13703) (YDR) |
| 193. | Odell, Donald | SBC25O30078 | 2025-09-10 | | Chawla | 2025-09-10 - Odell, Donald - Decision (SBC25O30078) (MC) |
| 194. | O'Keefe, Christopher | 15O14409 | 2017-09-11 | | Roland | 2017-09-11 - O'Keefe, Christopher J. - Decision (15O14409) (YDR) |
| 195. | Olano, Miguel | SBC24O30016 | 2024-07-19 | | Saab | 2024-07-19 - Olano, Miguel - Decision (SBC24O30016) (DS) |
| 196. | Olin, Jeffrey | SBC23O30674 | 2024-01-24 | | Wang | 2024-01-24 - Olin, Jeffrey - Decision (SBC23O30674) (PW) |
| 197. | Oliveri, Matthew | SBC22O30792 | 2023-03-10 | | Chawla | 2023-03-10 - Oliveri, Matthew - Decision (SBC22O30792) (MC) |
| 198. | Ortega, David | 08N13044 | 2010-01-29 | | Honn | 2010-01-29 - Ortega, David - Decision (08N13044) (RAH) |
| 199. | Ostrove, Kenneth Edward | 15O10800 | 2016-08-23 | | Roland | 2016-08-23 - Ostrove, Kenneth Edward - Decision (15O10800) (YDR) |
| | P* | | | | | |
| 200. | Pacheco, Lauro | 16O11838 | 2017-07-27 | | Roland | 2017-07-27 - Pacheco, Lauro Nick Jr. - Decision (16O11838) (YDR) |
| 201. | Palik, Anthony | 10O09103 | 2012-09-13 | | McElroy | 2012-09-13 - Palik, Anthony - Decision (10O09103) (PEM) |
| 202. | Pavone, Benjamin | SBC23O30854 | 2024-10-23 | | Roland | 2024-10-23 - Pavone, Benjamin - Decision (SBC23O30854) (YR) |

**Ex. 22:8**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 203. | Pavone, Benjamin | SBC20O30496 | 2022-02-10 | | Valenzuela | 2022-02-10 - Pavone, Benjamin - Decision (SBC20O30496) (CV) |
| 204. | Peckham, Edward John | 14O00859 | 2015-08-07 | | Miles | 2015-08-07 - Peckham, Edward John - Decision (14O00859) (DFM) |
| 205. | Pena, Otto Ivan | 07O10401 | 2010-10-22 | | Miles | 2010-10-22 - Pena, Otto Ivan - Decision (07O10401) (DFM) |
| 206. | Pensanti, Louisa | SBC25O30153 | 2025-08-08 | | Saab | 2025-08-08 - Pensanti, Louisa - Decision (SBC25O30153) (DS) |
| 207. | Pereau, C. Dana | 15C12539 | 2016-12-21 | | Roland | 2016-12-21 - Pereau, C. Dana – Decision (Default) (15C12539) (YDR) |
| 208. | Perry, Allan | SBC24O30876 | 2025-08-20 | | Roland | 2025-08-20 - Perry, Allan - Decision (SBC24O30876) (YR) |
| 209. | Peterson, Paul | 10O11347 | 2012-09-17 | | McElroy | 2012-09-17 - Peterson, Paul - Decision (10O11347) (PEM) |
| 210. | Prevost, Mary Frances | 14O04539 | 2015-11-10 | | Roland | 2015-11-10 - Prevost, Mary Frances - Decision (14O04539) (YDR) |
| 211. | Prevost, Mary Frances | 15O14453 | 2017-07-27 | | Roland | 2017-07-27 - Prevost, Mary Frances - Decision (15O14453) (YDR) |
| 212. | Pritikin, Martin Howard | 06O11815 | 2008-03-05 | | Miles | 2008-03-05 - Pritikin, Martin Howard - Decision (06O11815) (DFM) |
| | Q* | | | | | |
| 213. | Quesada, Edward | 06O12100 | 2011-06-12 | | Honn | 2011-06-12 - Quesada, Edward - Decision (06O12100) (RAH) |
| | R* | | | | | |
| 214. | Ramirez, Manuel Luis | 15C11520 | 2018-09-11 | | Miles | 2018-09-11 - Ramirez, Manuel Luis - Decision (15C11520) (DFM) |
| 215. | Ramirez, Sergio | SBC22O30976 | 2023-07-12 | | Roland | 2023-07-12 - Ramirez, Sergio - Decision (SBC22O30976) (YR) |
| 216. | Reed, Michael | 18C12370 | 2019-09-19 | | Roland | 2019-09-19 - Reed, Michael - Decision (18C12370) (YR) |
| 217. | Regolo, Attilio | 08O13116 | 2009-07-13 | | Honn | 2009-07-13 - Regolo, Attilio - Decision (08O13116) (RAH) |
| 218. | Rifkin, Howard | 06O14390 | 2008-07-28 | | Miles | 2008-07-28 - Rifkin, Howard - Decision (06O14390) (DM) |
| 219. | Rivas, Steven Christopher | 15O13859 | 2017-07-26 | | Miles | 2017-07-26 - Rivas, Steven Christopher - Decision (15O13859) (DFM) |
| 220. | Robinson, Juliette | 06O14335 | 2010-08-30 | | Honn | 2010-08-30 - Robinson, Juliette - Decision (06O14335) (RAH) |
| 221. | Robinson, Raymond | SBC25O30595 | 2025-12-12 | | Wang | 2025-12-12 - Robinson, Raymond  - Decision - (SBC25O30595) (PW) |
| 222. | Robinson, Von | 05O01352 | 2011-03-16 | | Miles | 2011-03-16 - Robinson, Von - Decision (05O01352) (DFM) |
| 223. | Rodriguez, Rosemary | 06O14476 | 2012-02-08 | | Honn | 2012-02-08 - Rodriguez, Rosemary - Decision (06O14476 (RAH)) |
| 224. | Roman, Robert | 12O17810 | 2014-01-31 | | Miles | 2014-01-31 - Roman, Robert - Decision (12O17810) (DFM) |
| 225. | Romano, Lynne Margery | 12J15277 | 2013-08-07 | | Miles | 2013-08-07 - Romano, Lynne Margery - Decision (12J15277) (DFM) |
| 226. | Rossana, Mitchell | SBC23N30325 | 2024-04-30 | | Valenzuela | 2024-04-30 - Rossana, Mitchell - Decision (SBC23N30325) (CV) |
| 227. | Royston, Gregory | SBC25O30600 | 2025-12-12 | | Wang | 2025-12-12 - Royston, Gregory - Decision - (SBC25O30600) (PW) |
| 228. | Rucker, Fred | 10O11036 | 2012-10-26 | | Platel | 2012-10-26 - Rucker, Fred - Decision (10O11036) (RAP) |
| 229. | Russell, Thomas Osmonde | 15O14576 | 2017-01-10 | | Miles | 2017-01-10 - Russell, Thomas Osmonde III - Decision (15O14576) (DFM) |

**Ex. 22:9**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | S* | | | | | |
| 230. | Sack, Robert | 13O14697 | 2015-09-22 | | McElroy | 2015-09-22 - Sack, Robert - Decision (13O14697) (PEM) |
| 231. | Sahni, Ajay | 17C05732 | 2020-10-21 | | Roland | 2020-10-21 - Sahni, Ajay - Decision (17C05732) (YR) |
| 232. | Salem, Edmond Elias | 16O17243 | 2018-12-11 | | Roland | 2018-12-11 - Salem, Edmond Elias - Decision (16O17243) (YDR) |
| 233. | Salmonsen, Eugene | 15O14284 | 2018-01-19 | | Miles | 2018-01-19 - Salmonsen, Eugene Roy Jr. - Decision (15O14284) (DFM) |
| 234. | Sangary, Svitlana E. | 13O13838 | 2014-09-11 | | Miles | 2014-09-11 - Sangary, Svitlana E. - Decision (13O13838) (DFM) |
| 235. | Sanz, Rene William | 11O14208 | 2012-09-12 | | Miles | 2012-09-12 - Sanz, Rene William - Decision (11O14208) (DFM) |
| 236. | Saxon, Bret | 17O0125 | 2021-05-26 | | Roland | 2021-05-26 - Saxon, Bret - Hearing Dept. Decision (YR) |
| 237. | Scheer, Sue Marilyn | 11O10888 | 2013-02-22 | | Miles | 2013-02-22 - Scheer, Sue Marilyn - Decision (11O10888) (DFM) |
| 238. | Scheer, Marilyn Sue | 12O14071 | 2015-02-02 | | Miles | 2015-02-02 - Scheer, Marilyn Sue - Decision (12O14071) (DFM) |
| 239. | Schooler, Jane L. | 12O11554 | 2015-10-28 | | Miles | 2015-10-28 - Schooler, Jane L. - Decision (12O11554) (DFM) |
| 240. | Schwartz, Donald | 16O11694 | 2019-07-02 | | Chawla | 2019-07-02 - Schwartz, Donald (16O11694) (MC) |
| 241. | Schwartz, Ivan | 06O13672 | 2011-09-06 | | Miles | 2011-09-06 - Schwartz, Ivan - Decision (06O13672) (DFM) |
| 242. | Schoth, Kenneth | 110O10777 | 2012-05-19 | | McElroy | 2012-05-19 - Schoth, Kenneth - Decision (110O10777) (PEM) |
| 243. | Schroth, Robert | 05C03326 | 2010-06-28 | | Platel | 2010-06-28 - Schroth, Robert - Decision (05C03326) (RAP) |
| 244. | Schweizer, William | 08O12108 | 2012-02-16 | | Honn | 2012-02-16 - Schweizer, William - Decision (08O12108) (RAH) |
| 245. | Seegmiller, William West | 06J11086 | 2008-12-17 | | Miles | 2008-12-17 - Seegmiller, William West - Decision (06J11086) (DFM) |
| 246. | Seuthe, Eric | 11O19427 | 2014-02-05 | | Platel | 2014-02-05 - Seuthe, Eric - Decision (11O19427) (RAP) |
| 247. | Shellabarger, John Francis | 14H04090 | 2015-10-13 | | Miles | 2015-10-13 - Shellabarger, John Francis - Decision (14H04090) (DFM) |
| 248. | Shellabarger, John Francis | 17O01373 | 2017-10-18 | | Miles | 2017-10-18 - Shellabarger, John Francis - Decision (17O01373) (DFM) |
| 249. | Sheridan, Nathan Joseph | 08C10826 | 2011-12-01 | | Miles | 2011-12-01 - Sheridan, Nathan Joseph - Decision (08C10826) (DFM) |
| 250. | Shen, Stanley | SBC23O30416 | 2023-09-11 | | Wang | 2023-09-11 - Shen, Stanley - Decision (SBC23O30416) (PW) |
| 251. | Shilberg, Nathan M. | 11O15464 | 2012-06-21 | | Miles | 2012-06-21 - Shilberg, Nathan M. - Decision (11O15464) (DFM) |
| 252. | Simas, Gina Marie | 13C15519 | 2015-01-07 | | Miles | 2015-01-07 - Simas, Gina Marie - Decision (13C15519) (DFM) |
| 253. | Shirer, Rae Diane | 17O01372 | 2018-08-09 | | Roland | 2018-08-09 - Shirer, Rae Diane - Decision (17O01372) (YDR) |
| 254. | Shoemaker, Douglas | 18N14227 | 2019-04-02 | | Valenzuela | 2019-04-02 - Shoemaker, Douglas - Decision (18N14227) (CV) |
| 255. | Sibilia, Robert | 12O16308 | 2015-10-20 | | Roland | 2015-10-20 - Sibilia, Robert - Decision (12O16308) (YDR) |
| 256. | Silva, David | 08N12671 | 2011-07-28 | | Honn | 2011-07-28 - Silva, David - Decision (08N12671) (RAH) |
| 257. | Singh, Rooh | SBC22O31056 | 2023-09-06 | | Roland | 2023-09-06 - Singh, Rooh - Decision (SBC22O31056) (YR) |

Ex. 22:10

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 258. | Skoog, William Arthur | 13O16053 | 2014-09-25 | | Miles | 2014-09-25 - Skoog, William Arthur - Decision (13O16053) (DFM) |
| 259. | Sloan, Alfred | SBC24O30235 | 2025-02-28 | | Wang | 2025-02-28 - Sloan, Alfred - Decision (SBC24O30235) (PW) |
| 260. | Smith, Charles | 05O05173 | 2008-03-25 | | McElroy | 2008-03-25 - Smith, Charles E., Jr. - Decision (05O05173) (PEM) |
| 261. | Smith, Evan | 08O10983 | 2011-10-21 | | Honn | 2011-10-21 - Smith, Evan - Decision (08O10983) (RAH) |
| 262. | Smith, Jason Allan | 12O11922 | 2013-10-08 | | Miles | 2013-10-08 - Smith, Jason Allan - Decision (12O11922) (DFM) |
| 263. | Smith, Jon | 05O05201 | 2008-05-21 | | Honn | 2008-05-21 - Smith, Jon - Decision (05O05201) (RAH) |
| 264. | Smith, Jon | 07O13699 | 2011-07-28 | | Honn | 2011-07-28 - Smith, Jon - Decision (07O13699) (RAH) |
| 265. | Smith, Lori | 06O12517 | 2010-06-11 | | Miles | 2010-06-11 - Smith, Lori - Decision (06O12517DFM) (DFM) |
| 266. | Smith, Phillip Monroe | 12O14723 | 2014-06-09 | | Miles | 2014-06-09 - Smith, Phillip Monroe - Decision (12O14723) (DFM) |
| 267. | Smith, Spencer | 12C14836 | 2020-11-02 | | Wang | 2020-11-02 - Smith, Spencer - Decision (12C14836) (PW) |
| 268. | Song, John Y. | 11O11436 | 2012-07-31 | | Miles | 2012-07-31 - Song, John Y. - Decision (11O11436) (DFM) |
| 269. | Speir, Kevin A. | 05O04057 | 2009-10-23 | | Miles | 2009-10-23 - Speir, Kevin A. - Decision (05O04057) (DMF) |
| 270. | Sprouls, Frank | 06J15200 | 2009-08-13 | | McElroy | 2009-08-13 - Sprouls, Frank - Decision (06J15200) (PEM) |
| 271. | Stark, Jerome D. | 12C10773 | 2012-11-02 | | Miles | 2012-11-02 - Stark, Jerome D. - Decision (12C10773) (DFM) |
| 272. | Staten, Jacqueline | 06O14466 | 2010-12-21 | | Honn | 2010-12-21 - Staten, Jacqueline - Decision (06O14466) (RAH) |
| 273. | Stein, Charles | SBC24O30023 | 2024-12-19 | | Chawla | 2024-12-19 - Stein, Charles - Decision (SBC24O30023) (MC) |
| 274. | Stocker, Frederick | 08C14308 | 2011-09-13 | | Honn | 2011-09-13 - Stocker, Frederick - Decision (08C14308) (RAH) |
| 275. | Sullivan, Harold | 08C12029 | 2009-08-14 | | Honn | 2009-08-14 - Sullivan, Harold - Decision (08C12029) (RAH) |
| 276. | Sweeney, Daniel Joseph | 11O17979 | 2013-05-23 | | Miles | 2013-05-23 - Sweeney, Daniel Joseph - Decision (11O17979) (DFM) |
| | T* | | | | | |
| 277. | Tabor, Allan | SBC22O30192 | 2022-09-02 | | Wang | 2022-09-02 - Tabor, Allan - Decision (SBC22O30192) (PW) |
| 278. | Tajon, Joan | SBC23O30858 | 2024-02-13 | | Saab | 2024-02-13 - Tajon, Joan - Decision (SBC23O30858) (DS) |
| 279. | Tamura, Ronald | 06C15509 | 2010-04-07 | | Honn | 2010-04-07 - Tamura, Ronald - Decision (06C15509) (RAH) |
| 280. | Tanaka, Jeannie E. | 12C16547 | 2015-12-30 | | Miles | 2015-12-30 - Tanaka, Jeannie E. - Decision (12C16547) (DFM) |
| 281. | Taylor, Kevin Renard | 17N01608 | 2017-11-27 | | Roland | 2017-11-27 - Taylor, Kevin Renard - Decision (17N01608) (YDR) |
| 282. | Terbeek, Marc Lawrence | 17C01402 | 2019-07-11 | | Roland | 2019-07-11 - Terbeek, Marc Lawrence - Decision (17C01402) (YDR) |
| 283. | Thibault, Elana | SBC22O30033 | 2022-10-17 | | Wang | 2022-10-17 - Thibault, Elana - Decision (SBC22O30033) (PW) |
| 284. | Thottam, Peter L. | 06C11344 | 2008-05-23 | | Miles | 2008-05-23 - Thottam, Peter L. - Decision (06C11344) (DFM) |
| 285. | Trimarche, Gregory Daniel | SBC23C30994 | 2024-05-29 | | Roland | 2024-05-29 - Trimarche, Gregory - Decision (SBC23O30827) (YR) |

**Ex. 22:11**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | U* | | | | | |
| | | | | | | |
| | V* | | | | | |
| 286. | Van Son, Christopher | 15N14241 | 2016-08-31 | | Miles | 2016-08-31 - Van Son, Christopher J. - Decision (15N14241) (DFM) |
| 287. | Vargas, Fernando | SBC24O30412 | 2023-06-16 | | Roland | 2023-06-16 - Vargas, Fernando - Decision (SBC22O30280) (YR) |
| 288. | Velasco, Jose Alberto | 11O19379 | 2012-11-28 | | Miles | 2012-11-28 - Velasco, Jose Alberto - Decision (11O19379) (DFM) |
| 289. | Victor, Robert M. | 11O13464 | 2012-09-21 | | Miles | 2012-09-21 - Victor, Robert M. - Decision (11O13464) (DFM) |
| 290. | Vinzant, Dayle | 15C15997 | 2019-11-05 | | Roland | 2019-11-05 - Vinzant, Dayle - Decision (15C15997) (YDR) |
| | W* | | | | | |
| 291. | Wang, Natalie | 10O09334 | 2013-03-01 | | Miles | 2013-03-01 - Wang, Natalie - Decision (10O09334) (DFM) |
| 292. | Weber, Matthew B. | 07N12386 | 2008-04-07 | | Miles | 2008-04-07 - Weber, Matthew B. - Decision (07N12386) (DFM) |
| 293. | Weiner, Bruce Steven | 11O18657 | 2012-11-01 | | Miles | 2012-11-01 - Weiner, Bruce Steven - Decision (11O18657) (DFM) |
| 294. | White, Kevin Michael | 11O17873 | 2016-10-14 | | Roland | 2016-10-14 - White, Kevin Michael - Decision (11O17873) (YDR) |
| 295. | Williams, Kelly | SBC22O30161 | 2023-01-05 | | Valenzuela | 2023-01-05 - Williams, Kelly - Decision (SBC22O30161) (CV) |
| 296. | Williams, Robert Michael | 06O14164 | 2008-08-05 | | Miles | 2008-08-05 - Williams, Robert Michael - Decision (06O14164) (DFM) |
| 297. | Wilson, Matthew | 18J14406 | 2019-04-15 | | Valenzuela | 2019-04-15 - Wilson, Matthew - Decision (18J14406) (CV) |
| | X* | | | | | |
| | | | | | | |
| | Y* | | | | | |
| 298. | Yang, Elizabeth | SBC22J30501 | | | Valenzuela | 2022-12-01 - Yang, Elizabeth - Decision (SBC22J30501) (CV) |
| 299. | Yong, Hock | 06O12875 | 2009-04-14 | | Miles | 2009-04-14 - Yong, Hock - Decision (06O12875) (DFM) |
| 300. | York, Michael | 05O04605 | 2010-05-05 | | Platel | 2010-05-05 - York, Michael - Decision (05O04605) (RAH) |
| 301. | Young, Fanya | 18H12248 | 2019-05-03 | | Chawla | 2019-05-03 - Young, Fanya - Decision (18H12248) (MC) |
| | Z* | | | | | |
| 302. | Zorr, Barbara | 17N06605 | 2018-11-21 | | Chawla | 2018-11-21 - Zorr, Barbara - Decision (17N06605) (MC) |

**Ex. 22:12**

# EXHIBIT 23

# EXHIBIT 23

# HEARING DEPARTMENT DECISIONS
## (Donald F. Miles)

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS[1] | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | 2026-04-11<br>Total Cases: 137<br>Contested Cases: 111<br>Costs imposed: 110/111 = 99% | | | | | Gender Notes: 116/137 = 84% |
| | A* | | | | | |
| 1. | Afari, Daniel H. | 09O16850 | 2012-11-28 | | Miles | 2012-11-28 - Afari, Daniel H. - Decision (09O16850) (DFM) |
| 2. | Allen, Joseph Dulles | 17O00400 | 2017-10-13 | | Miles | 2017-10-13 - Allen, Joseph Dulles - Decision (17O00400) (DFM) |
| 3. | Alemansour, Sousan | 15O10928 | 2016-08-22 | | Miles | 2016-08-22 - Alemansour, Sousan - Decision (15O10928) (DFM) |
| 4. | Amirian, Kenneth Asher | 16O12453 | 2017-08-11 | | Miles | 2017-08-11 - Amirian, Kenneth Asher - Decision (16O12453) (DFM) |
| 5. | Annen, Richard James | 14O00949 | 2018-04-03 | | Miles | 2018-04-03 - Annen, Richard James - Decision (14O00949) (DFM) |
| 6. | Anyiam, Christian | 13O11694 | 2014-01-24 | | Miles | 2014-01-24 - Anyiam, Christian U. - Decision (13O11694) (DFM) |
| 7. | Appling, Walter | 09H19303 | 2011-01-26 | | Miles | 2011-01-26 - Appling, Walter - Decision (Default) (09H19303) (DFM) |
| 8. | Arakelian, Leon | 11O17733 | 2013-07-25 | | Miles | 2013-07-25 - Arakelian, Leon - Decision (11O17733) (DFM) |
| 9. | Artz, Jaeffrey Jack | 10N11089 | 2011-05-12 | | Miles | 2011-05-12 - Artz, Jaeffrey Jack - Decision (10N11089) (DFM) |
| | B* | | | | | |
| 10. | Baade, David Robert | 12O15031 | 2015-02-26 | | Miles | 2015-02-26 - Baade, David Robert - Decision (12O15031) (DFM) |
| 11. | Ball, Robert Michael | 13O17308 | 2015-01-22 | | Miles | 2015-01-22 - Ball, Robert Michael - Decision (13O17308) (DFM) |
| 12. | Ball, Robert Michael | 14O03862 | 2015-05-28 | | Miles | 2015-05-28 - Ball, Robert Michael - Decision (14O03862) (DFM) |
| 13. | Bander, Joel Richard | 17O01945 | 2018-05-04 | | Miles | 2018-05-04 - Bander, Joel Richard - Decision (17O01945) (DFM) |
| 14. | Baric, Drago | 11O11689 | 2017-06-06 | | Miles | 2017-06-06 - Baric, Drago - Decision (11O11689) (DFM) |
| 15. | Bassis, Lisa Michelle | 16O12056 | 2018-02-14 | | Miles | 2018-02-14 - Bassis, Lisa Michelle - Decision (16O12056) (DFM) |
| 16. | Bavar, Reza | 12O15664 | 2014-04-21 | | Miles | 2014-04-21 - Bavar, Reza - Decision (12O15664) (DFM) |

---

[1] Costs imposed in a contested proceeding.
Uncontested proceeding.

**Ex. 23:1**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS[1] | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 17. | Belsito, Floyd George | 14O01245 | 2015-09-22 | | Miles | 2015-09-22 - Belsito, Floyd George - Decision (14O01245) (DFM) |
| 18. | Braun, Dennis | 18PM10810 | 2018-04-03 | | Miles | 2018-04-03 - Braun, Dennis - Decision (Revocation) (18PM10810) (DFM) |
| 19. | Braun, Dennis | 14O06193 | 2016-05-25 | | Miles | 2016-05-25 - Braun, Dennis - Decision (14O06193) (DFM) |
| 20. | Bravos, James William | 08PM10984 | 2008-07-23 | | Miles | 2008-07-23 - Bravos, James William - Decision (08PM10984) (DFM) |
| 21. | Brustman, James | 06O12467 | 2011-02-02 | | Miles | 2011-02-02 - Brustman, James - Decision (06O12467) (DFM) |
| 22. | Burke, Gregory Molina | 11O17393 | 2013-07-01 | | Miles | 2013-07-01 - Burke, Gregory Molina - Decision (11O17393) (DFM) |
| 23. | Burke, Kimberly Renae | 12O17175 | 2015-08-06 | | Miles | 2015-08-06 - Burke, Kimberly Renae - Decision (12O17175) (DFM) |
| | C* | | | | | |
| 24. | Camiling, Eric Moises | 16O13446 | 2018-06-25 | | Miles | 2018-06-25 - Camiling, Eric Moises - Decision (16O13446) (DFM) |
| 25. | Cannon, Jamaul Dmitri | 14O00863 | 2016-08-22 | | Miles | 2016-08-22 - Cannon, Jamaul Dmitri - Decision (14O00863) (DFM) |
| 26. | Carey, Diane Bernadette | 12O12244 | 2013-05-01 | | Miles | 2013-05-01 - Carey, Diane Bernadette - Decision (12O12244) (DFM) |
| 27. | Carver, Michael R. | 11H16868 | 2013-06-26 | | Miles | 2013-06-26 - Carver, Michael R. - Decision (11H16868) (DFM) |
| 28. | Choe, Gene Wook | 11O14497 | 2013-10-31 | | Miles | 2013-10-31 - Choe, Gene Wook - Decision (11O14497) (DFM) |
| 29. | Cicconi, Drew Allan | 16O16321 | 2017-09-06 | | Miles | 2017-09-06 - Cicconi, Drew Allan - Decision (16O16321) (DFM) |
| 30. | Cohen, Herman | 17PM07095 | 2018-01-29 | | Miles | 2018-01-29 - Cohen, Herman - Decision (Rev'n) (17PM07095) (DFM) |
| 31. | Cohen, Herman Jason | 13O15706 | 2016-04-25 | | Miles | 2016-04-25 - Cohen, Herman Jason - Decision (13O15706) (DFM) |
| 32. | Cohen, Howard | 05O03369 | 2009-03-24 | | Miles | 2009-03-24 - Cohen, Howard - Decision (Default) (05O03369) (DM) |
| 33. | Colton, Roland Clark | 06C15151 | 2012-10-23 | | Miles | 2012-10-23 - Colton, Roland Clark - Decision (06C15151) (DFM) |
| 34. | Congdon, Byron | 14N02738 | 2015-03-23 | | Miles | 2015-03-23 - Congdon, Byron - Decision (14N02738) (DFM) |
| 35. | Cossio, Charles Colin | 12O18065 | 2014-12-02 | | Miles | 2014-12-02 - Cossio, Charles Colin - Decision (12O18065) (DFM) |
| 36. | Crosby, Michael Howard | 11O13513 | 2012-06-01 | | Miles | 2012-06-01 - Crosby, Michael Howard - Decision (11O13513) (DFM) |
| | D* | | | | | |
| 37. | Dahlin, Tore | 05O00754 | 2009-03-13 | | Miles | 2009-03-13 - Dahlin, Tore - Decision (05O00754) (DFM) |
| 38. | Davis, Douglas William | 12O14104 | 2012-11-09 | | Miles | 2012-11-09 - Davis, Douglas William - Decision (12O14104) (DFM) |
| 39. | Derparseghian, Mary | 13O17168 | 2015-10-06 | | Miles | 2015-10-06 - Derparseghian, Mary - Decision (13O17168) (DFM) |
| 40. | Diamond, Stephen | 05O04605 | 2008-04-10 | | Miles | 2008-04-10 - Diamond, Stephen - Decision (05O04605) (DFM) |
| 41. | Dowd, Robert Eaton | 11C14946 | 2012-08-28 | | Miles | 2012-08-28 - Dowd, Robert Eaton - Decision (11C14946) (DFM) |
| 42. | Dzialo, John Thomas | 15O15474 | 2017-09-11 | | Miles | 2017-09-11 - Dzialo, John Thomas - Decision (15O15474) (DFM) |
| | E* | | | | | |

**Ex. 23:2**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS[1] | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 43. | Elkins, John William | 05O03819 | 2008-07-03 | | Miles | 2008-07-03 - Elkins, John William - Decision (05O03819) (DM) |
| 44. | Escobar, Patricia | 09O13080 | 2011-05-26 | | Miles | 2011-05-26 - Escobar, Patricia - Decision (Default) (09O13080) (DFM) |
| | F* | | | | | |
| 45. | Falk, Gregory | 11O16456 | 2012-12-14 | | Miles | 2012-12-14 - Falk, Gregory – Decision (Stipulation) (11O16456) (DFM) |
| 46. | Fink, Steven Alan | 13O12756 | 2014-07-03 | | Miles | 2014-07-03 - Fink, Steven Alan - Decision (13O12756) (DFM) |
| 47. | Folinsky, Stuart | 06O12137 | 2011-06-29 | | Miles | 2011-06-29 - Folinsky, Stuart - Decision (06O12137) (DFM) |
| 48. | Frantz, William Michael | 05O04193 | 2009-12-16 | | Miles | 2009-12-16 - Frantz, William Michael - Decision (05O04193) (DFM) |
| | G* | | | | | |
| 49. | Galindo, Stephen | 15O13901 | 2016-10-26 | | Miles | 2016-10-26 - Galindo, Stephen - Decision and Order (15O13901) (DFM) |
| 50. | Ganor, Gabriel | 05C03292 | 2009-11-17 | | Miles | 2009-11-17 - Ganor, Gabriel - Decision (05C03292) (DFM) |
| 51. | Glasser, Robert | 05O05168 | 2009-11-02 | | Miles | 2009-11-02 - Glasser, Robert - Decision (05O05168) (DFM) |
| 52. | Gonzalez, Manuel Angel | 11PM18515 | 2012-02-03 | | Miles | 2012-02-03 - Gonzalez, Manuel Angel - Decision (11PM18515) (DFM) |
| 53. | Gortler, Hugh P. | 11C12562 | 2012-10-29 | | Miles | 2012-10-29 - Gortler, Hugh P. - Decision (11C12562) (DFM) |
| 54. | Gustin, Dale Irving | 11O17015 | 2013-04-19 | | Miles | 2013-04-19 - Gustin, Dale Irving - Decision (11O17015) (DFM) |
| | H* | | | | | |
| 55. | Halsey, William | 05O05164 | 2010-01-14 | | Miles | 2010-01-14 - Halsey, William - Decision (05O05164) (DFM) |
| 56. | Harrold, Richard Eugene | 18PM14631 | 2018-09-17 | | Miles | 2018-09-17 - Harrold, Richard Eugene - Decision (18PM14631) (DFM) |
| 57. | Hartson, George | 14O02314 | 2017-03-06 | | Miles | 2017-03-06 - Hartson, Georg - Decision (14O02314) (DFM) |
| 58. | Hasan, Shameem | 14O00143 | 2016-03-03 | | Miles | 2016-03-03 - Hasan, Shameem - Decision (14O00143) (DFM) |
| 59. | Hawkins, Early | 06C13875 | 2009-12-02 | | Miles | 2009-12-02 - Hawkins, Early - Decision (06C13875) (DFM) |
| 60. | Hayward, Scott Bunker | 17O03617 | 2018-07-23 | | Miles | 2018-07-23 - Hayward, Scott Bunker - Decision (17O03617) (DFM) |
| 61. | Hoodack, Lawrence | 05O00719 | 2010-04-21 | | Miles | 2010-04-21 - Hoodack, Lawrence - Decision (05O00719) (DFM) |
| 62. | Hubbard, Lynn | 11O14081 | 2015-02-18 | | Miles | 2015-02-18 - Hubbard, Lynn - Decision (11O14081) (DFM) |
| 63. | Hutchens, David Paul | 16O17839 | 2018-02-21 | | Miles | 2018-02-21 - Hutchens, David Paul - Decision (16O17839) (DFM) |
| | I* | | | | | |
| 64. | | | | | | |
| | J* | | | | | |
| 65. | Jelin, Frederick T. | 12H17270 | 2013-11-04 | | Miles | 2013-11-04 - Jelin, Frederick T. - Decision (12H17270) (DFM) |
| | K* | | | | | |

**Ex. 23:3**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS[1] | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 66. | Kastelic, Debra | 06O15104 | 2007-12-19 | | Miles | 2007-12-19 - Kastelic, Debra - Decision (Default) (06O15104) (DFM) |
| 67. | Kazandjian, Yeznik Ohannes | 12O12181 | 2014-02-13 | | Miles | 2014-02-13 - Kazandjian, Yeznik Ohannes - Decision (12O12181) (DFM) |
| 68. | Kim, Eugene Dukjoon | 12O11308 | 2013-07-29 | | Miles | 2013-07-29 - Kim, Eugene Dukjoon - Decision (12O11308) (DFM) |
| 69. | Klugman, Steven Mark | 13O17015 | 2016-01-27 | | Miles | 2016-01-27 - Klugman, Steven Mark - Decision (13O17015) (DFM) |
| 70. | Kranzdorf, Jeffrey Paul | 12O13730 | 2015-10-30 | | Miles | 2015-10-30 - Kranzdorf, Jeffrey Paul - Decision (12O13730) (DFM) |
| 71. | Kucsan, Brian Joseph | 16O10988 | 2017-04-14 | | Miles | 2017-04-14 - Kucsan, Brian Joseph - Decision (16O10988) (DFM) |
| 72. | Kun, Albert Miklos | 15O14554 | 2017-09-26 | | Miles | 2017-09-26 - Kun, Albert Miklos - Decision (15O14554) (DFM) |
| | L* | | | | | |
| 73. | Leslie, Joel | 06O15136 | 2009-06-18 | | Miles | 2009-06-18 - Leslie, Joel - Decision (06O15136) (DFM) |
| 74. | Lester, Charles G. | 09V11354 | 2009-10-13 | | Miles | 2009-10-13 - Lester, Charles G. - Decision (Reinstatement) (09V11354) (DFM) |
| 75. | Levine, Marc Russell | 12N14547 | 2012-11-29 | | Miles | 2012-11-29 - Levine, Marc Russell - Decision (12N14547) (DFM) |
| 76. | Lewiston, Jeffrey A. | 15O10933 | 2017-10-06 | | Miles | 2017-10-06 - Lewiston, Jeffrey A. - Decision (15O10933) (DFM) |
| 77. | Liberty, Louis Allen | 11O17476 | 2013-07-12 | | Miles | 2013-07-12 - Liberty, Louis Allen - Decision (11O17476) (DFM) |
| 78. | Linehan, Andrew Francis | 12O14553 | 2013-07-16 | | Miles | 2013-07-16 - Linehan, Andrew Francis - Decision (12O14553) (DFM) |
| 79. | Lotta, Michael Anthony | 13O16289 | 2015-02-17 | | Miles | 2015-02-17 - Lotta, Michael Anthony - Decision (13O16289) (DFM) |
| | M* | | | | | |
| 80. | Mahdessian, Rita | 11O11759 | 2017-08-29 | | Miles | 2017-08-29 - Mahdessian, Rita - Decision (11O11759) (DFM) |
| 81. | Maki, Lisa Lynn | 16O13110 | 2018-08-21 | | Miles | 2018-08-21 - Maki, Lisa Lynn - Decision (16O13110) (DFM) |
| 82. | Marchiondo, Philip Lorin | 12O13556 | 2014-06-30 | | Miles | 2014-06-30 - Marchiondo, Philip Lorin - Decision (12O13556) (DFM) |
| 83. | McMahon, Brian D. | 12O17244 | 2013-10-24 | | Miles | 2013-10-24 - McMahon, Brian D. - Decision (12O17244) (DFM) |
| 84. | Metoyer, Delia | 15O12907 | 2017-09-15 | | Miles | 2017-09-15 - Metoyer, Delia - Decision (15O12907) (DFM) |
| 85. | Miller, Jeffrey Anthony | 16O16334 | 2018-08-21 | | Miles | 2018-08-21 - Miller, Jeffrey Anthony - Decision (16O16334) (DFM) |
| 86. | Mor, Ronny | 17N00929 | 2018-03-21 | | Miles | 2018-03-21 - Mor, Ronny - Decision (17N00929) (DFM) |
| 87. | Motamedi, Ashkan Alex | 10O06207 | 2011-11-01 | | Miles | 2011-11-01 - Motamedi, Ashkan Alex - Decision (10O06207) (DFM) |
| 88. | Motamedi, Ashkan Alex | 10O07616 | 2012-12-06 | | Miles | 2012-12-06 - Motamedi, Ashkan Alex - Decision (10O07616) (DFM) |
| 89. | Mullaly, Andrew P. | 12H13428 | 2012-10-02 | | Miles | 2012-10-02 - Mullaly, Andrew P. - Decision (12H13428) (DFM) |
| 90. | Munson, Craig Eugene | 17O01114 | 2018-06-14 | | Miles | 2018-06-14 - Munson, Craig Eugene - Decision (17O01114) (DFM) |
| 91. | Murray, Robert Alan | 14O00412 | 2015-12-16 | | Miles | 2015-12-16 - Murray, Robert Alan - Decision (14O00412) (DFM) |
| | N* | | | | | |

**Ex. 23:4**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS[1] | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 92. | | | | | | |
| | O* | | | | | |
| 93. | O'Brien, Tara | 09C18483 | 2012-08-08 | | Miles | 2012-08-08 - O'Brien, Tara - Decision (09C18483) (DFM) |
| | P* | | | | | |
| 94. | Peckham, Edward John | 14O00859 | 2015-08-07 | | Miles | 2015-08-07 - Peckham, Edward John - Decision (14O00859) (DFM) |
| 95. | Pena, Otto Ivan | 07O10401 | 2010-10-22 | | Miles | 2010-10-22 - Pena, Otto Ivan - Decision (07O10401) (DFM) |
| 96. | Pritikin, Martin Howard | 06O11815 | 2008-03-05 | | Miles | 2008-03-05 - Pritikin, Martin Howard - Decision (06O11815) (DFM) |
| | R* | | | | | |
| 97. | Ramirez, Manuel Luis | 15C11520 | 2018-09-11 | | Miles | 2018-09-11 - Ramirez, Manuel Luis - Decision (15C11520) (DFM) |
| 98. | Reedy, Michael | 07C12208 | 2008-08-26 | | Miles | 2008-08-26 - Reedy, Michael - Decision (Default) (07C12208) (DFM) |
| 99. | Rifkin, Howard | 06O14390 | 2008-07-28 | | Miles | 2008-07-28 - Rifkin, Howard - Decision (Default) (06O14390) (DFM) |
| 100. | Rivas, Steven Christopher | 15O13859 | 2017-07-26 | | Miles | 2017-07-26 - Rivas, Steven Christopher - Decision (15O13859) (DFM) |
| 101. | Robinson, Von | 05O01352 | 2011-03-16 | | Miles | 2011-03-16 - Robinson, Von - Decision (05O01352) (DFM) |
| 102. | Roman, Robert | 12O17810 | 2014-01-31 | | Miles | 2014-01-31 - Roman, Robert - Decision (12O17810) (DFM) |
| 103. | Romano, Lynne Margery | 12J15277 | 2013-08-07 | | Miles | 2013-08-07 - Romano, Lynne Margery - Decision (12J15277) (DFM) |
| 104. | Russell, Thomas Osmonde | 15O14576 | 2017-01-10 | | Miles | 2017-01-10 - Russell, Thomas Osmonde III - Decision (15O14576) (DFM) |
| | S* | | | | | |
| 105. | Salmonsen, Eugene | 15O14284 | 2018-01-19 | | Miles | 2018-01-19 - Salmonsen, Eugene Roy Jr. - Decision (15O14284) (DFM) |
| 106. | Sangary, Svitlana E. | 13O13838 | 2014-09-11 | | Miles | 2014-09-11 - Sangary, Svitlana E. - Decision (13O13838) (DFM) |
| 107. | Sanz, Rene William | 11O14208 | 2012-09-12 | | Miles | 2012-09-12 - Sanz, Rene William - Decision (11O14208) (DFM) |
| 108. | Sawyer, Leonard | 11C16691 | 2016-01-25 | | Miles | 2016-01-25 - Sawyer, Leonard - Decision (11C16691) (DFM) |
| 109. | Scheer, Sue Marilyn | 11O10888 | 2013-02-22 | | Miles | 2013-02-22 - Scheer, Sue Marilyn - Decision (11O10888) (DFM) |
| 110. | Scheer, Marilyn Sue | 12O14071 | 2015-02-02 | | Miles | 2015-02-02 - Scheer, Marilyn Sue - Decision (12O14071) (DFM) |
| 111. | Schooler, Jane L. | 12O11554 | 2015-10-28 | | Miles | 2015-10-28 - Schooler, Jane L. - Decision (12O11554) (DFM) |
| 112. | Seegmiller, William West | 06J11086 | 2008-12-17 | | Miles | 2008-12-17 - Seegmiller, William West - Decision (06J11086) (DFM) |
| 113. | Seegmiller, William West | 15O11411 | 2016-07-01 | | Miles | 2016-07-01 - Seegmiller, William West - Decision (15O11411) (DFM) |
| 114. | Shellabarger, John Francis | 14H04090 | 2015-10-13 | | Miles | 2015-10-13 - Shellabarger, John Francis - Decision (14H04090) (DFM) |
| 115. | Shellabarger, John Francis | 17O01373 | 2017-10-18 | | Miles | 2017-10-18 - Shellabarger, John Francis - Decision (17O01373) (DFM) |
| 116. | Sheridan, Nathan Joseph | 08C10826 | 2011-12-01 | | Miles | 2011-12-01 - Sheridan, Nathan Joseph - Decision (08C10826) (DFM) |

Ex. 23:5

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS[1] | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 117. | Shilberg, Nathan M. | 11O15464 | 2012-06-21 | | Miles | 2012-06-21 - Shilberg, Nathan M. - Decision (11O15464) (DFM) |
| 118. | Schwartz, Ivan | 06O13672 | 2011-09-06 | | Miles | 2011-09-06 - Schwartz, Ivan - Decision (06O13672) (DFM) |
| 119. | Simas, Gina Marie | 13C15519 | 2015-01-07 | | Miles | 2015-01-07 - Simas, Gina Marie - Decision (13C15519) (DFM) |
| 120. | Singh, Anil Kumar | 16O12384 | 2018-05-16 | | Miles | 2018-05-16 - Singh, Anil Kumar - Decision (16O12384) (DFM) |
| 121. | Skoog, William Arthur | 13O16053 | 2014-09-25 | | Miles | 2014-09-25 - Skoog, William Arthur - Decision (13O16053) (DFM) |
| 122. | Smith, Jason Allan | 12O11922 | 2013-10-08 | | Miles | 2013-10-08 - Smith, Jason Allan - Decision (12O11922) (DFM) |
| 123. | Smith, Lori | 06O12517 | 2010-06-11 | | Miles | 2010-06-11 - Smith, Lori - Decision (06O12517DFM) (DFM) |
| 124. | Smith, Phillip Monroe | 12O14723 | 2014-06-09 | | Miles | 2014-06-09 - Smith, Phillip Monroe - Decision (12O14723) (DFM) |
| 125. | Song, John Y. | 11O11436 | 2012-07-31 | | Miles | 2012-07-31 - Song, John Y. - Decision (11O11436) (DFM) |
| 126. | Speir, Kevin A. | 05O04057 | 2009-10-23 | | Miles | 2009-10-23 - Speir, Kevin A. - Decision (05O04057) (DMF) |
| 127. | Stark, Jerome D. | 12C10773 | 2012-11-02 | | Miles | 2012-11-02 - Stark, Jerome D. - Decision (12C10773) (DFM) |
| 128. | Sweeney, Daniel Joseph | 11O17979 | 2013-05-23 | | Miles | 2013-05-23 - Sweeney, Daniel Joseph - Decision (11O17979) (DFM) |
| | T* | | | | | |
| 129. | Tanaka, Jeannie E. | 12C16547 | 2015-12-30 | | Miles | 2015-12-30 - Tanaka, Jeannie E. - Decision (12C16547) (DFM) |
| 130. | Thottam, Peter L. | 06C11344 | 2008-05-23 | | Miles | 2008-05-23 - Thottam, Peter L. - Decision (06C11344) (DFM) |
| | V* | | | | | |
| 131. | Van Son, Christopher | 15N14241 | 2016-08-31 | | Miles | 2016-08-31 - Van Son, Christopher J. - Decision (15N14241) (DFM) |
| 132. | Velasco, Jose Alberto | 11O19379 | 2012-11-28 | | Miles | 2012-11-28 - Velasco, Jose Alberto - Decision (11O19379) (DFM) |
| 133. | Victor, Robert M. | 11O13464 | 2012-09-21 | | Miles | 2012-09-21 - Victor, Robert M. - Decision (11O13464) (DFM) |
| | W* | | | | | |
| 134. | Wang, Natalie | 10O09334 | 2013-03-01 | | Miles | 2013-03-01 - Wang, Natalie - Decision (10O09334) (DFM) |
| 135. | Weber, Matthew B. | 07N12386 | 2008-04-07 | | Miles | 2008-04-07 - Weber, Matthew B. - Decision (07N12386) (DFM) |
| 136. | Weiner, Bruce Steven | 11O18657 | 2012-11-01 | | Miles | 2012-11-01 - Weiner, Bruce Steven - Decision (11O18657) (DFM) |
| 137. | Williams, Robert Michael | 06O14164 | 2008-08-05 | | Miles | 2008-08-05 - Williams, Robert Michael - Decision (06O14164) (DFM) |
| | Y* | | | | | |
| 138. | Yong, Hock | 06O12875 | 2009-04-14 | | Miles | 2009-04-14 - Yong, Hock - Decision (06O12875) (DFM) |
| | Z* | | | | | |
| 139. | Zhang, Qin | 13O11380 | 2015-05-08 | | Miles | 2015-05-08 - Zhang, Qin - Decision (13O11380) (DFM) |

**Ex. 23:6**

# EXHIBIT 24

# EXHIBIT 24

# SAAB, DENNIS G.
# CASE TRACKER

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | 15/15 contested: 100% | | | | | Gender Notes: 4 out of 21 female. 81% male. |
| | A* | | | | | |
| 1. | Albert, Lenore | SBC22O30348 | 2023-04-03 | | Saab | 2023-04-03 - Albert, Lenore - Decision (SBC22O30348) (DS) |
| 2. | Alspaugh, Eric | SBC23J30962 | 2024-04-15 | | Saab | 2024-04-15 - Alspaugh, Eric - Decision (SBC23J30962) (DS) |
| | B* | | | | | |
| 3. | Baric, Steven | SBC24O30902 | 2025-06-11 | | Saab | 2025-06-11- Baric, Steven - Decision (SBC24O30902) (DS) |
| 4. | Brifman, Mark | SBC23O30223 | 2023-10-11 | | Saab | 2023-10-11 - Brifman, Mark - Decision (Default) (DS) |
| 5. | Bundy, Thomas | SBC25O30681 | 2025-12-01 | | Saab | 2025-12-01 - Bundy, Thomas - Decision (SBC25O30681) (DS) |
| | C* | | | | | |
| 6. | Cannon, Justin | BC22N30278 | 2023-02-15 | | Saab | 2023-02-15 - Cannon, Justin - Decision (BC22N30278) (DS) |
| 7. | Crane, Richard | SBC22O31029 | 2023-06-26 | | Saab | 2023-06-26 - Crane, Richard - Decision (SBC22O31029) (DS) |
| | D* | | | | | |
| | | | | | | |
| | E* | | | | | |
| | | | | | | |
| | F* | | | | | |
| 8. | Folke, Duane | SBC22O30224 | 2025-04-14 | | Saab | 2025-04-14 - Folke, Duane - Decision (SBC22O30224) (DS) |
| | G* | | | | | |
| 9. | Givens, Dermot | SBC24O30854 | 2025-08-29 | | Saab | 2025-08-29 - Givens, Dermot - Decision (SBC24O30854) (DS) |
| 10. | Guzman, Erin | SBC24O30728 | 2025-04-15 | | Saab | 2025-04-15 - Guzman, Erin - Decision (Default) (DS) |
| | H* | | | | | |

**Ex. 24:1**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | | | | | | |
| | I* | | | | | |
| 11. | Ivosevic, Jovan | SBC22O30224 | 2024-11-13 | | Saab | 2024-11-13 - Ivosevic, Jovan - Decision (SBC22O30224) (DS) |
| | J* | | | | | |
| 12. | Jang, Kevin | SBC25O30347 | 2025-11-07 | | Saab | 2025-11-07 - Jang, Kevin - Decision (SBC25O30347) (DS) |
| | K* | | | | | |
| 13. | Karpeles, Jack | SBC24O30657 | 2025-10-15 | | Saab | 2025-10-15- Karpeles, Jack - Decision (Default) (DS) |
| | L* | | | | | |
| 14. | Albert, Lenore | SBC22O30348 | 2023-04-03 | | Saab | 2023-04-03 - Albert, Lenore - Decision (SBC22O30348) (DS) |
| 15. | Leone, Fernando | SBC23O30539 | 2023-11-03 | | Saab | 2023-11-03 - Leone, Fernando - Decision (SBC23O30539) (DS) |
| | M* | | | | | |
| | | | | | | |
| | N* | | | | | |
| | | | | | | |
| | O* | | | | | |
| 16. | Olano, Miguel | SBC24O30016 | 2024-07-19 | | Saab | 2024-07-19 - Olano, Miguel - Decision (SBC24O30016) (DS) |
| | P* | | | | | |
| 17. | Pensanti, Louisa | SBC25O30153 | 2025-08-08 | | Saab | 2025-08-08 - Pensanti, Louisa - Decision (SBC25O30153) (DS) |
| | R* | | | | | |
| | | | | | | |
| | S* | | | | | |
| 18. | Sabol, Christopher | SBC24O30074 | 2024-10-04 | | Saab | 2024-10-04- Sabol, Christopher - Decision (Default) (DS) |
| 19. | Sambhi, Bimal | SBC23O30698 | 2024-01-31 | | Saab | 2024-01-31 - Sambhi, Bimal - Decision (Default) (DS) |
| | T* | | | | | |
| 20. | Tajon, Joan | SBC23O30858 | 2024-02-13 | | Saab | 2024-02-13 - Tajon, Joan - Decision (SBC23O30858) (DS) |
| 21. | Tepper, Nicholas | SBC24N30747 | 2025-05-13 | | Saab | 2025-05-13 - Tepper, Nicholas - Decision (Default) (DS) |
| | V* | | | | | |
| | | | | | | |
| | W* | | | | | |

**Ex. 24:2**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  | Y* |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  | Z* |  |  |  |  |  |
|  |  |  |  |  |  |  |

**Ex. 24:3**

# EXHIBIT 25

# EXHIBIT 25

# PHONG WANG – CASE TRACKER

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | Contested: 18/20 = 90% | | | | | Gender Notes: 4/28 female. 85.7% male. |
| | A* | | | | | |
| | | | | | | |
| | B* | | | | | |
| 1. | Boice, Bruce | SBC23O30620 | 2023-05-16 | | Wang | 2023-06-07 - Boice, Bruce – Stipulation (SBC23O30620) PW |
| 2. | Bradshaw, Drexel | SBC24O30022 | 2024-09-13 | | Wang | 2024-09-13 - Bradshaw, Drexel - Decision (SBC24O30022) (PW) |
| | C* | | | | | |
| 3. | Cohen, Herman | SBC22O30083 | 2023-04-27 | | Wang | 2023-04-27 - Cohen, Herman - Decision (SBC22O30083) (PW) |
| | D* | | | | | |
| 4. | | | | | | |
| | E* | | | | | |
| 5. | | | | | | |
| | F* | | | | | |
| 6. | Endres, Kirk | SBC23O30840 | 2024-03-20 | | Wang | 2024-03-20 - Endres, Kirk - Decision (SBC23O30840) (Default) (PW) |
| | G* | | | | | |
| 7. | Garibay, Javier | SBC23O30317 | 2023-10-13 | | Wang | 2023-10-13 - Garibay, Javier - Decision (SBC23O30317) (PW) |
| 8. | Goldblatt, Lewis | 18C12466 | 2022-04-15 | | Wang | 2022-04-15 - Goldblatt, Lewis - Decision (18C12466) (PW) |
| 9. | Griffin, Keith | SBC23O30691 | 2024-01-19 | | Wang | 2024-01-19 - Griffin, Keith - Decision (SBC23O30691) (PW) |
| | H* | | | | | |
| 10. | Hamza, Moataz Sayed | 16O11708 | 2020-06-04 | | Wang | 2020-06-04 - Hamza, Moataz Sayed - Decision (Default) (16O11708) (PW) |
| 11. | Henderson, Shannon | SBC22N30213 | 2023-04-14 | | Wang | 2023-04-14 - Henderson, Shannon - Decision (SBC22N30213) (Default) (PW) |

**Ex. 25:1**

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| 12. | I* | | | | | |
| 13. | | | | | | |
| 14. | J* | | | | | |
| 15. | Jeffries, David | SBC22O30214 | 2023-01-10 | | Wang | 2023-01-10 - Jeffries, David - Decision (Default) (PW) |
| | K* | | | | | |
| 16. | Kellar, Kevin | SBC23O30022 | 2023-08-17 | | Wang | 2023-08-17 - Kellar, Kevin T. - Decision (Default) (SBC23O30022) (PW) |
| | L* | | | | | |
| 17. | Lamarre, David Richard | 18C10230 | 2021-02-19 | | Wang | 2021-02-19 - Lamarre, David Richard - Decision (18C10230) (PW) |
| | M* | | | | | |
| 18. | | | | | | |
| | N* | | | | | |
| 19. | Nguyen, Mary | SBC19O30209` | 2019-10-09 | | Wang | 2019-10-09 - Nguyen, Mary - Decision (SBC19O30209) (PW) |
| | O* | | | | | |
| 20. | Olin, Jeffrey | SBC23O30674 | 2024-01-24 | | Wang | 2024-01-24 - Olin, Jeffrey - Decision (SBC23O30674) (PW) |
| | P* | | | | | |
| 21. | | | | | | |
| | R* | | | | | |
| 22. | Ribeiro, Irina Carmen | SBC23O30215 | 2023/02/17 | | Wang | 2024-08-02 - Ribeiro, Irina - Decision (Default) (SBC22O30994) (PW) |
| 23. | Richards, Michael | 16C11371 | 2024-12-13 | | Wang | 2024-12-13 - Richards, Michael - Decision (16C11371) (PW) |
| 24. | Robinson, Raymond | SBC25O30595 | 2025-12-12 | | Wang | 2025-12-12 - Robinson, Raymond - Decision - (SBC25O30595) (PW) |
| 25. | Royston, Gregory | SBC25O30600 | 2025-12-12 | | Wang | 2025-12-12 - Royston, Gregory - Decision - (SBC25O30600) (PW) |
| | S* | | | | | |
| 26. | Safavi, Hamid | SBC23O30598 | 2023/04/28 | | Wang | 2023-11-17 - Safavi, Hamid - Decision (Default) (SBC23O30598) (PW) |
| 27. | Shen, Stanley | SBC23O30416 | 2023-09-11 | | Wang | 2023-09-11 - Shen, Stanley - Decision (SBC23O30416) (PW) |
| 28. | Sloan, Alfred | SBC24O30235 | 2025-02-28 | | Wang | 2025-02-28 - Sloan, Alfred - Decision (SBC24O30235) (PW) |
| 29. | Smith, Spencer | 12C14836 | 2020-11-02 | | Wang | 2020-11-02 - Smith, Spencer - Decision (12C14836) (PW) |
| | T* | | | | | |
| 30. | Tabor, Allan | SBC22O30192 | 2022-09-02 | | Wang | 2022-09-02 - Tabor, Allan - Decision (SBC22O30192) (PW) |
| 31. | Thibault, Elana | SBC22O30033 | 2022-10-17 | | Wang | 2022-10-17 - Thibault, Elana - Decision (SBC22O30033) (PW) |

Ex. 25:2

| NO. | LAST, FIRST | CASE NO. | DECISION DATE | COSTS | JUDGE | CASE NOTES |
|---|---|---|---|---|---|---|
| | V* | | | | | |
| 32. | Voorhees, Michael Alan | SBC23O30703 | | | Wang | |
| 33. | Vosskuhler, Derek | SBC22O30018 | 2024-11-08 | | Wang | 2024-11-08 - Vosskuhler, Derek - Decision (SBC22O30018) (PW) |
| | W* | | | | | |
| | | | | | | |
| | Y* | | | | | |
| | | | | | | |
| | Z* | | | | | |
| | | | | | | |

**Ex. 25:3**